No. 25-1853

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

### IN RE: ALECTO HEALTHCARE SERVICES, LLC

*Debtor*,

### THE REED ACTION JUDGMENT CREDITORS,

*Appellants*,

v.

### ALECTO HEALTHCARE SERVICES, LLC,

*Appellee.*

---

On Appeal from the United States District Court for the District of Delaware,
Cause No. 1:24-cv-00494-GBW (lead) and 1:23-cv-1442-GBW (consolidated)
Judge: Honorable Gregory B. Williams

---

### JOINT APPENDIX – VOLUME 4, pp. 1996–2919

---

Bren J. Pomponio, Esquire
Colten L. Fleu, Esquire
**Mountain State Justice, Inc.**
1217 Quarrier Street
Charleston, WV 25301
Tel.: (304) 326-0188
Email: colten@msjlaw.org
         bren@msjlaw.org


and

William D. Sullivan, Esq. (No. 2820)
William A. Hazeltine, Esq. (No. 3294)
**Sullivan Hazeltine Allinson LLC**
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel.: (302) 428-8191
Email: bsullivan@sha-llc.com
         whazeltine@sha-llc.com

Maureen Davidson-Welling, Esquire
PA ID No. 206751
John Stember, Esquire
PA ID No. 23643
**Stember Cohn &**
        **Davidson-Welling, LLC**
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA  15219
Tel.: (412) 338-1445
Email: mdw@stembercohn.com
        jstember@stembercohn.com

*Attorneys for Appellants the Reed Action Judgment Creditors*

# TABLE OF CONTENTS

| JX No. | Document Description | Appendix Page No. |
|---|---|---|
| | **VOLUME 1** | |
| 1 | Notice of Appeal filed by the Reed Action Judgment Creditors, Dated April 30, 2025 | JA0001 |
| 2 | Order of the Hon. Gregory B. Williams Appealed From, Dated March 31, 2025 (ECF No. 22) | JA0038 |
| 3 | Memorandum Opinion of the Hon. Gregory B. Williams Appealed From, Dated March 31, 2025 (ECF No. 21) | JA0039 |
| 4 | Bankruptcy Court Order Denying Objection of the Reed Action Judgment Creditors to Debtor's Designation of this Case as a Subchapter V Case and Motion to Revoke Debtor's Designation as a Subchapter V Debtor, [Bankr. Ct. D.I. 243] | JA0070 |
| 5 | Hearing Transcript, 12/01/2023 | JA0072 |
| 6 | Bankruptcy Court's Findings of Facts and Conclusions of Law Confirming Small Business Debtor's Plan of Reorganization (with Exhibits A and B), [Bankr. Ct. D.I. 354] | JA0084 |
| | **VOLUME 2** | |
| 7 | Docket Report from the U.S. Bankruptcy Court for the District of Delaware, Bankruptcy Petition #: 23-10787-JKS | JA0409 |
| 8 | Docket Report from the U.S. District Court for the District of Delaware, C.A. No. 1:23-cv-01442 | JA0444 |
| 9 | Docket Report from the U.S. District Court for the District of Delaware, C.A. No. 1:24-cv-00494 | JA0449 |

| JX No. | Document Description | Appendix Page No. |
|---|---|---|
| 10 | Objection of the Reed Action Judgment Creditors to Debtor's Designation of this Case as a Subchapter V Case and Motion to Revoke Debtor's Designation as a Subchapter V Debtor (*without exhibits B through L*) | JA0454 |
| 11 | Preliminary Response of the Debtor in Opposition to the Objection of the Reed Action Judgment Creditors to Debtor's Designation of this Case as a Subchapter V Case and Motion to Revoke Debtor's Designation as a Subchapter V Debtor | JA0468 |
| 12 | Reply in Response to Preliminary Response of the Debtor in Opposition to the Objection of the Reed Action Judgment Creditors to Debtor's Designation of this Case as a Subchapter V Case and Motion to Revoke Debtor's Designation as a Subchapter V Debtor | JA0655 |
| 13 | Notice of Appeal (Designation Appeal) | JA0694 |
| 14 | Schedules D and E/F (Exhibit B to Plan) | JA0700 |
| 15 | Reed Judgment Creditors Claim No. 19-1 | JA0714 |
| 16 | LHP Hospital Group, Inc. Claim No. 15-1 | JA0721 |
| 17 | Lease Agreement, dated August 21, 2012 (Ambulatory Surgery Center) | JA0809 |
| 18 | Lease Agreement, dated August 21, 2012 (Existing Physician Suites) | JA0852 |
| 19 | Lease Agreement, dated August 21, 2012 (Master Lease – Existing Space) | JA0897 |
| 20 | Lease Agreement, dated August 21, 2012 (Hospital Occupied Common Areas) | JA0941 |
| 21 | Lease Agreement, dated August 21, 2012 (Master Lease – Shell Space) | JA0985 |
| 22 | Bates No. 0080–0084 – Altera Highland, LLC Invoice Dated 3/01/2022 | JA1030 |

| JX No. | Document Description | Appendix Page No. |
|---|---|---|
| 23 | Bates No. 0085–0088 – Altera Highland, LLC Invoice Dated 3/28/2022 | JA1035 |
| 24 | Bates No. 0089–0092 – Altera Highland, LLC Invoice Dated 4/29/2022 | JA1039 |
| 25 | Bates No. 0093–0097 – Altera Highland, LLC Invoice Dated 5/31/2022 | JA1043 |
| 26 | Bates No. 0098–0101 – Altera Highland, LLC Invoice Dated 6/28/2022 | JA1048 |
| 27 | Bates No. 0102–0108 – Altera Highland, LLC Invoice Dated 8/29/2022 | JA1052 |
| 28 | Bates No. 0109–0113 – Altera Highland, LLC Invoice Dated 9/29/2022 | JA1059 |
| 29 | Bates No. 0114–0117 – Altera Highland, LLC Invoice Dated 10/20/2022 | JA1064 |
| 30 | Bates No. 0118–0125 – Altera Highland, LLC Invoice Dated 7/20/2022 | JA1068 |
| 31 | Bates No. 0126–0129 – Altera Highland, LLC Invoice Dated 11/21/2022 | JA1076 |
| 32 | Bates No. 0130–0133 – Altera Highland, LLC Invoice Dated 01/19/2023 | JA1080 |
| 33 | Bates No. 0134–0137 – Altera Highland, LLC Invoice Dated 12/22/2022 | JA1084 |
| 34 | Bates No. 0138–0141 – Altera Highland, LLC Invoice Dated 02/19/2023 | JA1088 |
| 35 | Bates No. 0142–0145 – Altera Highland, LLC Invoice Dated 03/19/2023 | JA1092 |
| 36 | Bates No. 0146–0158 – Altera Highland, LLC Invoice Dated 04/19/2023 | JA1096 |
| 37 | Bates No. 0159–0162 – Altera Highland, LLC Invoice Dated 05/22/2023 | JA1109 |

| JX No. | Document Description | Appendix Page No. |
|---|---|---|
| 38 | Payment Summary (LHP Payments to Altera Highland 2-17-22 to 11-1-23) | JA1113 |
| 39 | *LHP Hospital Group, Inc. v. Alecto Healthcare Services LLC and Alecto Healthcare Services Sherman LLC,* Case No. N21C-01-146 PJW CCLD | JA1114 |
| **VOLUME 3** | | |
| 40 | Small Business Debtor's Plan of Reorganization Proposed by the Debtor | JA1127 |
| 41 | Objection of the Reed Action Judgment Creditors to Confirmation of the Small Business Debtor's Plan of Reorganization Proposed by the Debtor | JA1419 |
| 42 | Supplemental to the Objection of the Reed Action Judgment Creditors to Confirmation of the Small Business Debtor's Plan of Reorganization Proposed by the Debtor | JA1438 |
| 43 | Declaration of Michael Sarrao, Executive Vice President, General Counsel, and Secretary of Alecto Healthcare Services LLC, in Support of First Day Motions (JTX 63) | JA1446 |
| 44 | First Supplemental Declaration of Michael Sarrao in Support of: (I) Application for Entry of an Order Authorizing the Retention and Employment of Shulman Bastian Friedman & Bui LLP as Bankruptcy Counsel to the Debtor Nunc Pro Tunc to the Petition Date Through August 14, 2023, and (II) Application for Entry of an Order Authorizing the Retention and Employment of the Rosner Law Group LLC as Delaware Bankruptcy Counsel to the Debtor Nunc Pro Tunc to the Petition Date Through August 14, 2023 (without exhibits) (JTX 70) | JA1468 |
| 45 | August 7, 2023 Written Consent (JTX 67) | JA1575 |
| 46 | August 19, 2023 Written Consent (JTX 69) | JA1578 |

| JX No. | Document Description | Appendix Page No. |
|--------|---------------------|-------------------|
| 47 | Alecto Healthcare Services LLC Tax Returns for 2019 (JTX 1) (*excerpt*) | JA1580 |
| 48 | Alecto Healthcare Services LLC Balance Sheet Summary 12/31/2019 (JTX 41) | JA1622 |
| 49 | Alecto Healthcare Services LLC Balance Sheet Summary 12/31/2020 (JTX 44) | JA1625 |
| 50 | Alecto Healthcare Services LLC Balance Sheet Summary 12/31/2021 (JTX 50) | JA1628 |
| 51 | Alecto Healthcare Services LLC Balance Sheet Summary 12/31/2022 [ALECTO_00005930–00005932] (JTX 56) | JA1630 |
| 52 | Alecto Healthcare Services LLC YTD Income Statement, Balance Sheet and Statement of Cash Flows as of April 30, 2023 [ALECTO_00005933–00005935] (JTX 62) | JA1633 |
| 53 | The UCLA Health Transaction (JTX 113) | JA1636 |
| 54 | Judgment Order in *Reed v. Alecto Healthcare Services LLC*, Case No. 5:19-CV-263 in the United States District Court for the Northern District of West Virginia (JTX 54) | JA1640 |
| 55 | Centers for Medicare & Medicaid Services, U.S. Department of Health and Human Services Claim No. 21-1 (JTX 73) | JA1642 |
| 56 | Hearing Transcript, 03/04/2024 | JA1674 |
| 57 | Hearing Transcript, 03/05/2024 | JA1800 |
| **VOLUME 4** | | |
| 58 | Confirmation Ruling | JA1996 |
| 59 | Notice of Appeal (Confirmation Appeal) (w/o exhibits A and B) | JA2014 |
| 60 | Hearing Transcript, 11/29/2023 | JA2018 |

| JX No. | Document Description | Appendix Page No. |
|--------|---------------------|-------------------|
| 61 | Hearing Transcript, 03/13/2024 | JA2152 |
| 62 | Declaration of Steven Balasiano, Independent Director/Manager, in Support of Confirmation of the Debtor's Small Business Subchapter V Plan of Reorganization Dated December 19, 2023 | JA2267 |
| 63 | Declaration of Michael Sarrao, Executive Vice President, General Counsel, and Secretary of Alecto Healthcare Services LLC, in Support of Confirmation of the Debtor's Small Business Subchapter V Plan of Reorganization Dated December 19, 2023 | JA2275 |
| 64 | Notice of Entry of Order Confirming, and Occurrence of Effective Date of Small Business Debtor's Plan of Reorganization Dated December 19, 2023 | JA2754 |
| 65 | Alecto Healthcare Services LLC Month to Month Financials for 2019 (JX 2) | JA2758 |
| 66 | Alecto Healthcare Services LLC Month to Month Financials for 2020 (JX 4) | JA2764 |
| 67 | Appellant's Opening Brief | JA2770 |
| 68 | Appellee's Responsive Brief | JA2826 |
| 69 | Appellant's Reply Brief | JA2891 |



**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

J. KATE STICKLES
JUDGE

824 N. MARKET STREET
WILMINGTON, DELAWARE
(302) 252-3820

March 20, 2024

RE:   *In re Alecto Healthcare Services, LLC*, Case No. 23-10787
      **Confirmation Ruling**

Dear Counsel:

This is the Court's ruling following the March 4, 5, and 13, 2024 hearing[1] (the "Confirmation Hearing") on confirmation of the *Small Business Debtor's Plan of Reorganization* (the "Plan").[2] The Court is writing for the benefit of the parties and assumes familiarity with the facts as well as the bankruptcy case.

The Debtor commenced this bankruptcy case under subchapter V of Title 11 on June 16, 2023 (the "Petition Date").  On September 14, 2023, the Debtor filed its Plan,[3] which was subsequently modified.[4]  The Plan provides that Classes 1 (Priority Non-Tax Claims), 2 (Secured Claims), and 4 (Equity Interests) are unimpaired, and Class 3 (General Unsecured Claims) is impaired.  The Debtor forwent solicitation of votes on the Plan and seeks confirmation pursuant to 11 U.S.C. § 1191(b).

## A.  Record and Evidence Presented

In preparation for the Confirmation Hearing, the Court reviewed and considered, among other things, the Plan, including the exhibits, the reservation of rights filed by the Subchapter V Trustee and the United States Trustee (the "U.S. Trustee"),[5] the objection and amended objection filed by the United States of America,[6] and the objection and supplemental objection filed by the

---

[1]  The Transcripts of the March 4, 5, and 13, 2024 proceedings are docketed at D.I. 330, 331, and 342, respectively. The Transcripts are cited herein as "Date Tr. page:line (witness)."

[2]  D.I. 261 (the "Plan").

[3]  D.I. 154.

[4]  D.I. 261.

[5]  D.I. 295 and 298.

[6]  D.I. 279 and 297.

Reed Action Judgment Creditors (the "Reed Creditors").[7] The Court also reviewed the declarations of Michael Sarrao and Steven Balasiano in support of the confirmation of the Plan,[8] as well as the Debtor's memorandum in support of confirmation.[9]

At the Confirmation Hearing, the Court listened to the witnesses, who were subject to cross-examination, and reviewed the documents admitted into evidence.[10] Witnesses in support of confirmation of the Plan included: (i) Jeff McCutcheon, Debtor's executive compensation expert; (ii) Leanne Gould, Gould Consulting Services ("GCS"), Debtor's forensic investigation consultant; (iii) Steven Balasiano, Debtor's independent director/manager,[11] and (iv) Michael Sarrao, Debtor's Vice President, General Counsel, and Secretary.

Following the close of evidence, on March 13, 2024, the Court heard arguments presented by counsel for the Debtor, the Reed Creditors, the U.S. Trustee, and the United States of America, as well as the recommendation of the Subchapter V Trustee.[12]

**B. The Confirmation Standards**

The Plan is non-consensual and does not satisfy sections 1129(a)(8) and (10) of the Bankruptcy Code. Section 1191(b) of the Bankruptcy Code, however, allows a plan to be confirmed on a non-consensual basis, provided that, the requirements of section 1129(a), other than subsections (8), (10), and (15), are satisfied, and the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

Under section 1191(c), the fair and equitable requirement imposes a projected disposable income requirement, a feasibility finding, and appropriate remedies if payments are not made. Here, as discussed below, the Plan satisfies those requirements.

---

[7] D.I. 299 and 315.

[8] D.I. 307 and 308, respectively. The Balasiano Declaration was not admitted into evidence. *See* D.I. 329.

[9] D.I. 310.

[10] D.I. 329.

[11] 03/04/2024 Tr. 70:10-73:4 (Balasiano); 03/04/2024 Tr. 73:15-16 (Balasiano) ("I was initially retained to perform an analysis of a settlement between Sherman/Grayson and Alecto."); 03/04/2024 Tr. 74:16-22 (Balasiano) ("Later in August, it might be a week or two weeks later . . . my charge expanded to review the Alecto bankruptcy and in particular look at potential fraudulent conveyance actions and director and officer or any type of breach of fiduciary duties that the directors or officers may have acted with during the course prior to the bankruptcy."); 03/04/2024 Tr. 74:25-75:4 (Balasiano) ("I have been charged with the duty of investigation or have the investigation performed as well as to the extent there are findings of malfeasance in any way, shape or form that I would commence that litigation.").

[12] The Subchapter V Trustee supports confirmation under section 1191(b), however, does not take a position with respect to the proposed Debtor Releases or the best interests of creditors. The Court views the Subchapter V Trustee's recommendation as neutral.

JA1997

The Debtor bears the burden of establishing the Plan's compliance with 11 U.S.C. §§ 1129(a) and 1191 by a preponderance of the evidence, whereas the objectors to the Plan bear the burden of producing evidence to support their objections.[13]

### 1. Projected Disposable Income

The projected disposable income requirement in section 1191(c)(2) requires that the Plan provide that all of the projected disposable income of the debtor to be received in the three-year period after the first payment under the plan is due, or such longer period not to exceed 5 years as the Court may fix, will be applied to make payments under the plan. Alternatively, the plan may provide that the value of property to be distributed under the plan within the plan period is not less than the projected disposable income of the debtor.

The Plan, including the revised Income Statement[14] at Exhibit C (the "Income Statement"), satisfies the projected disposable income requirement. The Plan provides that all of the Debtor's disposable income in the three-year period following the Effective Date of the Plan will be applied to make payments under the Plan in accordance with section 1191(c)(2).[15] Mr. Sarrao also testified that payments will include any excess disposable income beyond projections[16] and the Debtor is prepared to file post-confirmation reports reflecting the Debtor's income and expenses.[17]

### 2. Feasibility

Section 1191(c)(3) of Bankruptcy Code sets forth the subchapter V feasibility requirement that "(A) [t]he debtor will be able to make all payments under the plan; or (B)(i) there is a reasonable likelihood that the debtor will be able to make all payments under the plan . . . ."[18]

The feasibility requirement of section 1191(c)(3) "fortifies the more relaxed feasibility test that section 1129(a)(11) contains."[19] The feasibility test set forth in section 1129(a)(11) requires only

---

[13] *See In re Exide Techs.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003).

[14] D.I. 316 (Notice of Filing of Amended Exhibits C and G to Small Business Debtor's Plan of Reorganization Proposed by the Debtor) at Exs. 1 (Clean) and 2 (Blackline).

[15] 03/05/2024 Tr. 22:22-25 (Sarrao) (the Plan provides for "all of the debtor's disposable income.").

[16] 03/05/2024 Tr. 22:22-25 (Sarrao) ("[I]t's all of the debtor's disposable income. ... [I]n the case of this, if we didn't have to pay, the disposable income would increase, it would be more. ... [I]t's whatever the disposal income is.").

[17] 03/05/2024 Tr. 74:24-75:1 (Sarrao) (Q: "Is the debtor prepared to file reports with the company's income and expenses after confirmation?" A: "Yes.").

[18] 11 U.S.C. § 1191(c)(3)(A-B(i)) (emphasis added).

[19] *In re Samurai Martial Sports, Inc.*, 644 B.R. 667, 698 (Bankr. S.D. Tex. 2022) (footnote omitted); *see also In re Pearl Res. LLC*, 622 B.R. 236, 269 (Bankr. S.D. Tex. 2020) (footnotes and citations omitted) ("Section 1191(c)(3) adds two additional factors to the "fair and equitable" analysis. First, § 1191(c)(3)(A) requires that the debtor be able to make all payments under the plan, or that there is a reasonable likelihood that the debtor will be able to make all payments under the plan. The new requirement fortifies the more relaxed feasibility test that § 1129(a)(11) contains.) Section 1129(a)(11) requires only that confirmation is not likely to be followed by liquidation or the need

3

that the Bankruptcy Court determine that the Plan may be implemented and has a "reasonable assurance of success."[20]  "[I]t is not necessary for plan success to be guaranteed, nor is the feasibility requirement generally viewed as rigorous."[21]

The Debtor's Income Statement[22] projects Debtor's net income in years 1, 2 and 3 of the Plan, in the amount of $463,913, $748,514, and $704,083, respectively. Mr. Sarrao testified the vast majority of Debtor's revenue comes from the management contract with St. Rose Hospital that runs through May 31, 2025, subject to a two-year renewal through May 31, 2027.[23]  He believes the contract will be extended through 2027.[24]

Mr. Sarrao also explained that the Income Statement reflects more available income than initially projected as a result of certain reduced operating expenses, including: Dr. Reddy's reduced salary;[25] reduced payroll taxes, salary, and PTO due to the termination and/or retirement of employees; reduced tax preparation fees due to eliminated entities; and reduced insurance expenses due to the closing of the sale of the Wilson N. Jones Hospital ("WNJ") operated by Sherman/Grayson Hospital, LLC, an affiliate of the Debtor.[26]

In addition, Mr. Sarrao testified that the Income Statement reflects an increase in bankruptcy professional fees and the addition of a control group reserve, a contingent liability, related to a pension plan that is sponsored by Alecto Healthcare Services Ohio Valley.[27]  He explained that any contingent liability not paid becomes disposable income to be distributed under the Plan.[28]

The Court finds, based on the Plan, Income Statement, and Mr. Sarrao's testimony, the Debtor has, by a preponderance of the evidence, carried its burden of demonstrating that there is a

---

for further reorganization unless the plan proposes it. … The feasibility requirement for confirmation requires a showing that the debtor can realistically carry out its plan. Though a guarantee of success is not required, the bankruptcy court should be satisfied that the reorganized debtor can stand on its own two feet.")

[20] *In re Indianapolis Downs LLC*, 486 B.R. 286, 298 (Bankr. D. Del. 2013) (citing *Kane v. Johns-Manville Corp.* (*In re Johns–Manville Corp.*), 843 F.2d 636, 649 (2d Cir. 1988)),

[21] *In re Applied Safety, Inc.*, 200 B.R. 576, 584 (Bankr. E.D. Pa. 1996) (citations omitted).

[22] D.I. 316 (Notice of Filing of Amended Exhibits C and G to Small Business Debtor's Plan of Reorganization Proposed by the Debtor) at Exs. 1 (Clean) and 2 (Blackline).

[23] JX12 (Amended Management Services Agreement St. Rose Hospital, Hayward, CA); 03/05/2024 Tr. 18:6-8 (Sarrao).

[24] 03/05/2024 Tr. 17:7-22 (Sarrao).

[25] The Reed Creditors and the U.S. Trustee objected to the proposed compensation of the Debtor's post-confirmation officers, as set forth in Art. VIII.7 of the Plan. At the commencement of the Confirmation Hearing, the Debtor announced that the CEO's proposed salary had been reduced from $750,000 to $550,000 per year and that Messrs. Reddy and Williams would not receive any salary increase in the next 3 years.

[26] 03/05/2024 Tr. 19:11-21:2 (Sarrao). Sherman/Grayson Hospital, LLC ("Sherman/Grayson") is also in bankruptcy in this Court. Case No. 23-10810. In that case, the sale of WNJ closed on January 1, 2024; however, prior to closing, the purchaser operated WNJ. *See* Del. Bankr. Case No. 23-10810, D.I. 60, 161, and 314.

[27] 03/05/2024 Tr. 20:9-13; 21:3-22:16 (Sarrao).

[28] 03/05/2024 Tr. 22:20-25 (Sarrao).

reasonable likelihood that the Debtor will be able to make all payments under the Plan. Thus, the Plan meets the feasibility requirements of sections 1129(a)(11) and 1191(c)(3)(A).

### 3. <u>Remedies</u>

Section 1191(c)(3)(B) requires that the plan provide appropriate remedies if the debtor does not make required payments under a plan. Article VII.5 of the Plan provides remedies upon default in satisfaction of section 1191(c)(3)(B).

### 4. <u>Unfair Discrimination</u>

Under the Plan, Class 1 (Allowed Priority Non-Tax Claims) and Class 2 (Allowed Secured Claims) will receive a 100% recovery; Class 3 (Allowed General Unsecured Claims) will receive a pro rata share of the Debtor's projected disposable income, an approximate 3–10% recovery of the total general unsecured claims; and Class 4 (Equity Interest Holders) will retain their equity ownership interest in the Debtor. The Plan's treatment of Claims and Equity Interests is proper because all similarly situated holders of Claims and Equity Interests will receive substantially similar treatment. No party has challenged the proposed classification and/or treatment under the Plan. The Court finds that the Plan does not discriminate unfairly and meets the requirements of 11 U.S.C. §§ 1191(b) and 1129(b)(1).

### C. <u>Best Interests of Creditors - 11 U.S.C. § 1129(a)(7)</u>

A plan satisfies the best interest of creditors when, "with respect to each impaired class of claims or interests . . . each holder of a claim or interest of such class . . . will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 . . . ."[29]

Exhibit G to the Plan, the Revised Liquidation Analysis,[30] dated March 3, 2023 (the "<u>Liquidation Analysis</u>"), projects that $265,338 will be available for payment of claims in chapter 7, while $2,079,010 will be available for payment of claims under the Plan.[31] No evidence has been presented to refute the Debtor's projections. Mr. Sarrao testified creditors would receive more in a chapter 11 than chapter 7, stating: "I think very little, if anything, would be distributed to the creditors if there was a Chapter 7."[32] Moreover, no credible evidence validates a finding that conversion to chapter 7 would be in the best interests of creditors.

---

[29] 11 U.S.C. § 1129(a)(7)(A)(ii).

[30] D.I. 316 (Notice of Filing of Amended Exhibits C and G to Small Business Debtor's Plan of Reorganization Proposed by the Debtor) at Exs. 3 (Clean) and 4 (Blackline).

[31] *Id.*

[32] 3/5/2024 Tr. 24:6-9; 25:12-21 (Sarrao).

JA2000

## D. Confirmation Objections

Numerous Plan objections have been resolved and those resolutions are included in a revised proposed confirmation order (the "Proposed Confirmation Order")[33] or noted on the record at the Confirmation Hearing. Below is the Court's ruling with respect to each pending objection.

### 1. U.S. Trustee Objection to the Process Regarding Amended Proofs of Claim

The U.S. Trustee objects to Article IV.3.f. of the Plan and paragraph 50 of the Proposed Confirmation Order that prohibit amendments to claims and automatically disallows post-Effective Date amendments to claims. Paragraph 50 of the Proposed Confirmation Order[34] provides, in part: "Any amendment to a proof of Claim filed after the Effective Date shall be ineffective unless approved by the Bankruptcy Court after notice and an opportunity for hearing."

The U.S. Trustee argues that the proposed language violates 11 U.S.C. § 502 because a claim is deemed allowed until objected to and it is a debtor's responsibility to object to late-filed amended claims. The U.S. Trustee contends that replacing the phrase "disallowed in full and expunged" with the term "ineffective," does not resolve the procedural deficiency.

The Debtor argues against an unlimited right to file and/or amend a claim and maintains that finality is required in the claims administration process. The Debtor further contends that while the issue is procedural; it could have a substantive impact because "real money" is spent to defend claims and late filed claims could increase the claims pool and cause disgorgement of claims already paid. The Debtor cites various cases in support of its position.

The cases cited in support of the Debtor's position, which bar the filing of an amended claim post-Effective Date, are inapposite. In *Holstein v. Brill*[35] and *IRT Partners, L.P. v. Winn-Dixie Stores, Inc.*,[36] the Seventh and Eleventh Circuits, respectively, held that *res judicata* should preclude post-confirmation amendment of claims absent some compelling reason. Likewise, in *Kaiser Group International*,[37] the debtor sought to estimate a claim and cited to the *Holstein* holding in a footnote. None of those cases involved a procedure or addressed a plan provision that automatically expunged, disallowed, or deemed "ineffective" an amended claim filed after the Effective Date.

A properly filed proof of claim is deemed allowed unless a party in interest objects, at which point the court must determine the amount of the claim to be allowed.[38] Section 502(b) requires

---

[33] D.I. 334.

[34] *Id.*

[35] *Holstein v. Brill*, 987 F.2d 1268 (7th Cir.1993).

[36] *IRT Partners, L.P. v. Winn-Dixies Stores, Inc. (In re Winn-Dixie Stores, Inc.)*, 639 F.3d 1053, 1056 (11th Cir. 2011).

[37] *In re Kaiser Grp. Int'l, Inc.*, 289 B.R. 597 (Bankr. D. Del. 2003).

[38] 11 U.S.C.A. § 502(a), (b).

JA2001

"notice and a hearing" prior to the disallowance of a claim. The language at issue in paragraph 50 is inconsistent with the Bankruptcy Code. For these reasons, the Court sustains the U.S. Trustee's objection.

### 2. Reed Creditors

The Reed Creditors object to the proposed Debtor Releases and Injunction provisions in the Plan and assert that the Plan was not filed in good faith. Each issue will be addressed.

### a. Debtor Releases

The Reed Creditors object to the proposed Debtor Releases, Plan Art. VII.2, that release Debtor's insiders in consideration for payment of $25,000 (the "Settlement Consideration"), a sum they argue will yield no benefit to creditors. They argue that they have identified at least two potential causes of action against the members of Alecto Healthcare Services, LLC (the "Alecto Members"): (1) a $22 million fraudulent conveyance claim involving the Debtor's transfer of Sunrise Real Estate Holdings, LLC to the Alecto Members while the Debtor was insolvent, for which GCS acknowledges in its report (the "GCS Report") that reasonably equivalent value was not received in that transaction; and (2) breach of fiduciary duty claims against Alecto Members arising from Alecto's advancement of funds to affiliates while it was insolvent or in the zone of insolvency instead of making payment to Alecto's creditors.

Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may provide for the "settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[39] Further, a debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[40]

The Court determines if the released claims fall into the lowest point of reasonableness for a settlement.[41] "When determining whether to approve a settlement, the bankruptcy court should consider: (1) the probability of success in the litigation; (2) the complexity, expense, and delay of the litigation involved; (3) the possible difficulties in collection; and (4) the paramount interests of creditors."[42] "The court does not have to be convinced that the settlement is the best possible

---

[39] *In re Coram Healthcare Corp.*, 315 B.R. 321, 334-35 (Bankr. D. Del. 2004).

[40] *In re Spansion, Inc.*, 426 B.R. 114, 143 (Bankr. D. Del. 2010) (footnote and citation omitted).

[41] *Coram Healthcare Corp.*, 315 B.R. at 330 (citations omitted).

> Where a compromise is part of a plan of reorganization, however, the court has the duty "to determine that a proposed compromise forming part of a reorganization plan is fair and equitable." The standards for approval of a settlement under section 1123 are generally the same as those under Rule 9019, though the court should consider all factors relevant to a "full and fair assessment of the wisdom of the proposed compromise."

*Id.* at 334–35 (citations omitted).

[42] *Coram Healthcare Corp.*, 315 B.R. at 330 (citations omitted); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996)).

JA2002

compromise, but only that the settlement falls within a reasonable range of litigation possibilities."[43] Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision.[44]

In determining the reasonableness of the settlement, the Court reviews the underlying claims alleged by the Reed Creditors that were investigated by the independent director.

### 1) Fraudulent Conveyance Action[45]

The Reed Creditors assert that the June 2019 transfer of Sunrise REH and Plaza MOB (the "Sunrise Transfer") was a fraudulent conveyance. The GCS Report concludes that the Sunrise Transfer was completed "without receiving reasonably equivalent value in exchange."[46]

The Debtor responds that *even if* there was not reasonably equivalent value for the Sunrise Transfer, it does not matter because the Debtor was not insolvent in June 2019, as required by California law.

The California Fraudulent Transfer Act contains two possible applications in determining whether the Sunrise Transfer was a fraudulent conveyance. California Civil Code section 3439.04 applies to present and future creditors and section 3439.05 applies only to present creditors. The parties did not distinguish between the two statutes in their papers or arguments. The Court reviews both.

Section 3439.04, provides that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . .[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."[47] No evidence was presented indicating that the Debtor intended or, in fact, would become insolvent as a result of the Sunrise Transfer.[48]

Section 3439.05 states a fraudulent transfer is "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without

---

[43] *In re Wash. Mut, Inc.*, 442 B.R. 314, 338 (Bankr. D. Del. 2011) (citations omitted).

[44] *Martin*, 91 F.3d at 3953.

[45] The Debtor argued that only the California Uniform Fraudulent Transfer Act could be applicable to the Reed Creditors' assertion, and the Reed Creditors argue solvency under the Uniform Fraudulent Transfer Act applies. California Civil Code 3439.05 and the Uniform Fraudulent Transfer Act, for the purposes of the Court's analysis are substantially similar. As validity of the claim hinges on solvency, under either statute, the result would be the same.

[46] JX96.003.

[47] Cal. Civ. Code § 3439.04.

[48] 03/04/2024 Tr. 29:3-31:34 (Sarrao).

receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."[49] Under California law:

> (a) A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets.
> ...
> (c) Assets under this section do not include property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this chapter.
> (d) Debts under this section do not include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset.[50]

Mr. Balasiano, the Debtor's independent director responsible for examining the transaction, testified that he conducted an investigation as to potential fraudulent conveyance claims, including discussions with Ms. Gould (who had performed an analysis of the transactions going back four years prior to the bankruptcy filing),[51] his counsel, and Debtor's counsel.[52] He also reviewed the GCS Report, P&L balance sheet, cash flow, and tax returns.[53] Mr. Balasiano relied upon the Debtor's 2019 balance sheet, which reflects the Debtor had an equity value of at least $9.4 million;[54] and the Debtor's 2019 tax returns, which show assets in excess of $18 million.[55] He concluded the Debtor had a positive balance sheet for 2019 (and 2020) and was able to pay its debts as they became due.[56] Both the balance sheet reflecting assets in excess of liabilities and the payment of debts as they become due are acceptable methods for calculating solvency under the California fraudulent conveyance statute.[57]

Based on his investigation, Mr. Balasiano concluded that "there was no actionable cause of action that could be brought as a result of that transaction [Sunrise Transfer]" because "[t]he company was solvent."[58] He reasoned that: "In order to bring a fraudulent conveyance action

---

[49] Cal. Civ. Code § 3439.05(a).

[50] Cal. Civ. Code § 3439.02. *See also In re Beverly*, 374 B.R. 221, 238 n. 18 (B.A.P. 9th Cir. 2007), *aff'd in part, dismissed in part*, 551 F.3d 1092 (9th Cir. 2008) (applying this statute to a fraudulent transfer analysis).

[51] JX96.002 (GCS Report).

[52] 03/04/2024 Tr. 76:25-77:20 (Balasiano).

[53] 03/04/2024 Tr. 78:4-14 (Balasiano).

[54] 03/04/2024 Tr. 89:11-24 (Balasiano); 03/05/2024 Tr. 33:22-35:5; 44:17-46:21 (Sarrao); JX2 (Alecto Healthcare Services, LLC Income Statement FY19).

[55] JX1.010 (2019 Tax Return for Alecto Healthcare Services LLC prepared by MossAdams) and JX41 (Alecto Healthcare Services Balance Sheet Summary (in millions), dated 12/31/2019).

[56] 03/04/2024 Tr. 80:11 (Balasiano).

[57] Cal. Civ. Code § 3439.02. *See also In re Beverly*, 374 B.R. at 238.

[58] 03/04/2024 Tr. 80:3-16 (Balasiano).

JA2004

there are two factors. One is there has to be a transfer for lack of reasonably equivalent value and, number two, the company has to be insolvent at the time of that transfer. Clearly, the second fact[or] of the test was not satisfied her[e].”[59]

The burden of proving insolvency is on the creditor by a preponderance of the evidence.[60] “As a general rule 'solvency and not insolvency is presumed.'”[61] Here, the Reed Creditors did not carry their burden to prove by a preponderance of the evidence that the Debtor was insolvent at the time of the Sunrise Transfer.

The Court finds that Mr. Balasiano's determination that there is “no actionable cause of action that could be brought” for fraudulent conveyance is a reasonable basis for the settlement.[62]

### 2) Breach of Fiduciary Duties

Next, the Reed Creditors assert that the Debtor is releasing viable claims against the Alecto Members for Breach of Fiduciary Duties arising from Alecto's advancement of funds to its affiliates while Alecto was allegedly insolvent or in the zone of insolvency instead of making payment to its creditors. The crux of this allegation is that more than $5 million was advanced to Sherman/Grayson after the Reed Creditors obtained their approximately $3.2 million judgment against Alecto in November 2022, and before the Petition Date. Essentially, the Reed Creditors allege that the Debtor favored propping-up Sherman/Grayson, it's affiliate, over the Reed Creditors, it's creditor.

In Delaware, “limited liability company managers owe fiduciary duties akin to those owed by directors of a corporation.”[63] “Without language in an LLC agreement to the contrary, the managers of a Delaware LLC owe traditional fiduciary duties of care and loyalty.”[64]

“The fiduciary duty of due care requires that directors of a Delaware corporation both: (1) use that amount of care which ordinarily careful and prudent men would use in similar

---

[59] 03/04/2024 Tr. 80:11-16 (Balasiano). The Debtor asserted that *even if* the Sunrise Transfer was a fraudulent conveyance, the property was transferred back to the Debtor in 2021. And, as the 2021 transfer resulted in more equity for the Debtor than the 2019 Sunrise Transfer, such transfer should be “set off” against the 2021 transfer back to the Debtor. The Court is *not* assessing the merits of the Sunrise Transfer (nor the 2021 return transfer). Here, the Court is determining whether the settlement of the causes of action in the Releases (in exchange for the Settlement Consideration) is in “the lowest point in the range of reasonableness.” *Wash. Mut., Inc.*, 442 B.R. at 328 (citations omitted). As a result, the Court need not address the “set off” argument.

[60] *See Stearns v. Los Angeles City Sch. Dist.*, 53 Cal. Rptr. 482, 509 (Cal. Ct. App. 1966) (citations omitted); *Whitehouse v. Six Corp.*, 48 Cal. Rptr. 2d 600, 606 (Cal. Ct. App. 1995), *as modified* (Nov. 29, 1995), *as modified on denial of reh'g* (Dec. 19, 1995).

[61] *Stearns*, 53 Cal. Rptr. at 509 (citing *Hasenjeager v. Voth*, 267 P. 146, 147 (Cal. Ct. App. 1928)).

[62] 03/04/2024 Tr. 80:3-9 (Balasiano); *Wash. Mut., Inc.*, 442 B.R. at 328 (citations omitted).

[63] *Mehra v. Teller*, No. CV 2019-0812-KSJM, 2021 WL 300352, at *28 (Del. Ch. Jan. 29, 2021) (footnote omitted).

[64] *77 Charters, Inc. v. Gould*, No. CV 2019-0127-JRS, 2020 WL 2520272, at *9 (Del. Ch. May 18, 2020) (citations omitted).

JA2005

circumstances; and (2) consider all material information reasonably available."[65] The business judgment standard is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."[66] A court will not disturb the business decisions of loyal and informed directors "if they can be attributed to any rational business purpose."[67]

The fiduciary duty of loyalty "mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally."[68] A director is "being independent only when the director's decision is based entirely on the corporate merits of the transaction and is not influenced by personal or extraneous considerations."[69]

Mr. Balasiano also investigated the breach of fiduciary duty claims[70] and concluded:

> [there were] no breach of fiduciary duties, no breach of duty -- no breach of loyalty, and no breach of duty of care by the directors and the officers in this case. All of the activities that were done, all the funds that were allocated to the different subsidiaries, especially to the Sherman/Grayson, which I believe is the biggest issue in the case right here, right now, especially to Sherman/Grayson were allocated in a fashion with the appropriate judicious business judgment. The actions that the business members took were daily conversations, daily decisions that were undertaken in order to keep Sherman/Grayson Hospital afloat to enable to sell it as a going concern.[71]

After speaking with his counsel, the Debtor's counsel, and officers and employees of the Debtor; examining documents, including those related to Sherman/Grayson;[72] and reviewing the decisions made by the Alecto Members, Mr. Balasiano determined that the Alecto Members acted within their business judgment.[73] He reasoned that a going concern sale is typically better for a company than a liquidation or closure, and in this case, the Alecto Members were cognizant of approximately $30 million in collateral liabilities (such "Springing Liabilities" are discussed

---

[65] *Bridgeport Holdings Inc. Liquidating Tr. v. Boyer (In re Bridgeport Holdings, Inc.)*, 388 B.R. 548, 568 (Bankr. D. Del. 2008) (citation omitted).

[66] *Gantler v. Stephens*, 965 A.2d 695, 705–06 (Del. 2009) (footnote omitted).

[67] *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del.1971).

[68] *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993), *decision modified on reargument*, 636 A.2d 956 (Del. 1994) (citations omitted).

[69] *Id.* at 364 (citations omitted).

[70] 03/04/2024 Tr. 74:14-75:3 (Balasiano).

[71] 03/04/2024 Tr. 83:4-16 (Balasiano).

[72] 03/04/2024 Tr. 80:20-82:1 (Balasiano).

[73] 03/04/2024 Tr. 83:2-16 (Balasiano).

JA2006

below) from the potential closure of WNJ.[74]  The Alecto Member's determined that supporting WNJ would allow a purchaser to assume many, if not all, of these Springing Liabilities.[75]  Based on his investigation, Mr. Balasiano concluded that the Alecto Members acted within their fiduciary duties and pursuant to their business judgment.  Mr. Balasiano concluded that there was no valid cause of action for breach of fiduciary duties and the release of such claims appropriate.[76]

In addition, Mr. Balasiano testified about the costs of potential litigation.  He said litigation could give rise to indemnification under the Operating Agreement which would further deplete assets of Alecto.[77]  Although there is insurance, the insurer would be entitled to review for coverage.[78]  Mr. Balasiano concluded the financial resources of the Debtor could be drained.[79]

Mr. Balasiano's reasoning is supported by Mr. Sarrao who testified that Alecto Managers spoke nearly every business day regarding the oversight and management of the business[80] and were aware of the potential harm to Alecto if it stopped funding the affiliates.[81]  He explained the following Springing Liabilities were considered in the Alecto Members' decision-making process:

- Alecto guaranteed the real estate lease at the WNJ facility.  This lease obligation would be an approximate $7.2 million liability of Alecto.[82]

- Alecto, as guarantor, would be liable under a "put option" for the hypothetical fair market value of a facility adjacent to WNJ if it did not operate for 12 months.[83]  Mr. Sarrao estimates this liability between $13-15 million.[84]

---

[74] 03/04/2024 Tr. 83:17-84:14 (Balasiano).

[75] 03/05/2024 Tr. 52:20-53:2 (Sarrao).

[76] 03/04/2024 Tr. 83:2-84:4 (Balasiano).

[77] 03/04/2024 Tr. 107:12-16 (Balasiano).

[78] 03/04/2024 Tr. 107:22-108:17 (Balasiano).

[79] 03/04/2024 Tr. 85:3-9 (Balasiano).

[80] 03/05/2024 Tr. 15:17-16:5 (Sarrao).

[81] *See, e.g.,* 03/05/2024 Tr. 52:20-53:17 (Sarrao) (describing obligations from Sherman/Grayson that the Debtor would become liable for without providing funding to Sherman/Grayson); *see also Asmussen v. Quaker City Corp.,* 156 A. 180, 181 (Del. Ch. 1931) (holding that directors of insolvent corporations may appropriately prefer particular creditors); *Pennsylvania Co. for Insurances on Lives and Granting Annuities v. South Broad St. Theatre Co.,* 174 A. 112, 115-16 (Del. Ch.1934) (finding that the board's preference of one creditor over another could be a breach of fiduciary duty if motivated by self-interest).  *See also Nelson v. Emerson,* No. CIV.A. 2937-VCS, 2008 WL 1961150, at *9 n. 59 (Del. Ch. May 6, 2008).

[82] 03/05/2024 Tr. 53:8-17 (Sarrao).  JX18 (Lease Agreement between MPT of Sherman Alecto Hospital, LLC and Sherman/Grayson Hospital, LLC dated Oct. 31, 2014).

[83] 03/05/2024 Tr. 55:13-22 (Sarrao).

[84] 03/05/2024 Tr. 55:3-22; 58:2-15 (Sarrao). 03/04/2024 Tr. 84:7-12 (Balasiano).  JX10 (Ground Lease Agreement for 300 N. Highland Dr., Sherman, TX); JX19 (Assumption and Assignment of MOB Ground Lease); JX20 (Guaranty).

JA2007

- During the COVID-19 pandemic, WNJ was a recipient of Medicare advance payments under the CAAP program from CMS. [85]  Mr. Sarrao believes CMS would pursue Alecto for return of these advance payments if WNJ did not pay them.[86]  Mr. Sarrao estimates this liability to be over $5 million if WNJ closed.[87]

- Mr. Sarrao testified that, at any given time, there is approximately $800,000 of accrued payroll at WNJ and that such payroll would become the responsibility of Alecto if WNJ did not pay the accrued payroll.[88]

- Mr. Sarrao believes that there is approximately $1 million of accrued pay roll taxes that would become the responsibility of Alecto.[89]

- Mr. Sarrao testified that WNJ accrued approximately $775,000 in PTO (paid time off) for its employees that would become the responsibility of Alecto if WNJ closed.[90]

- Mr. Sarrao testified that Alecto would be liable for up to $500,000 in accrued real estate taxes if WNJ closed and did not pay its taxes.[91]

- Mr. Sarrao testified if WNJ closed (i) there would be wind-down costs associated with the computer systems and paper records at WNJ which contain protected health records; (ii) pharmaceuticals, including radioactive materials, would have to be handled in accordance with applicable law; (iii) WNJ patients would have to be transferred to other facilities; and (iv) WNJ's facility secured and equipment disposed of during closure.  Mr. Sarrao estimates these expenses would be approximately $3 million.[92]

- Mr. Sarrao testified approximately $1 million of personal property taxes would be due and owning and would become the responsibility of Alecto.[93]

- Mr. Sarrao testified Alecto would face approximately $3-3.2 million of possible WARN Act claims if WNJ closed without any advance notice to employees.[94]

---

[85] 03/05/2024 Tr. 58:16-22 (Sarrao).  Referring to the "COVID-19 Accelerated and Advance Payment" from the Centers for Medicare & Medicaid Services.  *See* https://www.cms.gov/medicare/payment/covid-19/covid-19-accelerated-and-advance-payments/covid-19-accelerated-and-advance-payment-caap-and-repayment-reporting.

[86] 03/05/2024 Tr. 59:3-5 (Sarrao).

[87] 03/05/2024 Tr. 58:18-59:12 (Sarrao).

[88] 03/05/2024 Tr. 59:15-21 (Sarrao).

[89] 03/05/2024 Tr. 61:5-8 (Sarrao).

[90] 03/05/2024 Tr. 59:18-21 (Sarrao).

[91] 03/05/2024 Tr. 59:25-60:7 (Sarrao).

[92] 03/05/2024 Tr. 60:8-24 (Sarrao).

[93] 03/05/2024 Tr. 60:25-61:5 (Sarrao).

[94] 03/05/2024 Tr. 61:10-62:3 (Sarrao).

JA2008

Mr. Sarrao testified that in his business judgment, and the business judgment of the board of managers, when Alecto found a buyer for WNJ, the sale would absorb many of the Springing Liabilities[95] (which indeed occurred in the Sherman/Grayson bankruptcy case).

Mr. Sarrao further testified about the negative impact of the COVID-19 pandemic on hospital operations and profits, including (i) increased labor and supply costs (particularly, traveling nurses and respiratory therapist); (ii) static reimbursement rates from insurance and Medicare; (iii) decreased patients; (iv) closure of more profitable hospital departments, such as the psychiatric in-patient ward and elective surgeries.[96] These COVID-related pressures, and resulting decline in profits, were considered and impacted the Alecto Managers' exercise of their business judgment in determining how to expend limited financial resources.[97]

There is no evidence that the Alecto Managers did not consider all information reasonably available to them, or that they were negligent in determining whether to make transfers to Sherman/Grayson. Similarly, no evidence was presented that the managers acted in their own self-interests rather than the interests of Debtor.

### 3) *Zenith* Factors

In addition to analyzing the Debtor Releases under the business judgment standard, some courts within the Third Circuit assess the propriety of a debtor release under the five *Zenith* factors:

> (1) an identity of interest between the debtor and non-debtor such that a suit against the non-debtor will deplete the estate's resources; (2) a substantial contribution to the plan by the non-debtor; (3) the necessity of the release to the reorganization; (4) the overwhelming acceptance of the plan and release by creditors and interest holders; and (5) the payment of all or substantially all of the claims of the creditors and interest holders under the plan.[98]

No one *Zenith* factor is dispositive, nor is a plan proponent required to establish each factor for the release to be approved.[99] Applying *Zenith*, two factors are neutral. Factor 1, whether there is an identity of interest between the Debtor and non-debtors, is neutral because it is subject to debate[100] and the parties have not provided sufficient evidence on the issue. Similarly, factor 4 is neutral because no creditors voted to accept or reject the Plan.

---

[95] 03/05/2024 Tr. 64:16-23 (Sarrao). The Sherman/Grayson sale of the WNJ hospital closed on January 1, 2024. Del. Bankr. Case No. 23-19810, D.I. 314.

[96] 03/05/2024 Tr. 178:15-81:12 (Sarrao).

[97] 03/05/2024 Tr. 178:6-183:4 (Sarrao).

[98] *Coram Healthcare Corp.*, 315 B.R. at 335 (*citing In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999)).

[99] *In re Wash. Mut. Inc.*, 442 B.R. at 346.

[100] JX13 (Alecto Healthcare Services LLC Amended and Restated Operating Agreement, § 7.8) (specifying certain indemnification obligations that the Debtor has in relation to the Released Parties).

Two factors weigh in favor of releases. Factor 2, the substantial contribution factor, weighs in favor because the "Released Parties" are contributing the Settlement Consideration for distribution to the creditors under the Plan.[101] Mr. Balasiano, the independent director tasked with reviewing claims, determined in his business judgment that the alleged claims were not actionable;[102] under the circumstances, the Court finds the contribution to be substantial. Factor 3, the uncontroverted testimony established that, absent the releases, the Debtor would not proceed with the Plan.[103] If this case is converted to Chapter 7, the Liquidation Analysis reflects no recovery for unsecured creditors.[104]

Factor 5 weighs against releases. All claim holders will be paid in full except those in Class 3 who will receive a pro rata recovery over a three-year plan period.[105]

On balance, the *Zenith* factors favor approval of the Debtor Releases.

### 4)  Conclusion Regarding Debtor Releases

In sum, Mr. Balasiano, the Debtor's independent director, determined in his business judgment and based on his independent investigation, that there was not an actionable claim for fraudulent conveyance or breach of fiduciary duties, and that the release of such claims was appropriate. No contrary evidence was presented.

Based on the evidence, and considering the *Zenith* standard, the Court finds that the proposed settlement falls within a reasonable range of litigation possibility. Under the *Martin* factors, the claims have very little probability of success on the merits, if any.[106] Absent the settlement, the Debtor would face increased expense, inconvenience and delay attending to litigation.[107] These are complex claims that could cause delay in the distribution of any assets to the creditors. Additionally, the creditors will receive the Settlement Consideration as part of the disposable income of the Debtor. There was no evidence regarding the possibility of collection on any

---

[101] Plan (D.I. 261) at Art. IV.5; Sarrao Declaration (D.I. 307) at ¶ 69; 03/04/2024 Tr. 80:3-9, 83:2-7 (Balasiano); 03/05/2024 Tr. 176:2-4 (Sarrao).

[102] 03/04/2024 Tr. 80:3-9; 83:2-7.

[103] 03/05/2024 Tr. 73:18-74:1 (Sarrao) ("Q. Are the releases in conjunction and exculpation each an (indiscernible) part of the debtor[']s plan? A. From my view, yes. Q. And has the board considered whether to proceed with the plan if each of those provisions is not approved? A. It has. Q. And what would the [board] do if these were not approved? A. It would likely not proceed with the plan as it's structured right now.").

[104] Plan (D.I. 261) at Art. IV.5; *see also* 03/05/2024 Tr. 22:20-25 (Sarrao).

[105] Plan (D.I. 261) at Art. IV.1-2.

[106] *See generally In re World Health Alts., Inc.*, 344 B.R. 291, 302 (Bankr. D. Del. 2006) ("Factor one favors settlement because there is a low probability of litigation success. A sufficient degree of uncertainty exists as to whether the Committee, or a chapter 7 trustee, could prevail on any of the potential causes of action against CapSource. Moreover, the Court finds that the probability of successfully challenging CapSource's liens is low.")

[107] *Id.* ("Substantial expenditure of money may not be warranted in light of the low probability of success and the estate's limited resources.")

JA2010

judgment, so this factor is neutral. The other three *Martin* factors weigh in favor of approving the settlement.

The Settlement Consideration is a substantial contribution because there are no actionable causes of action that could be brought based on these purported claims. As a result, the Debtor Releases are a valid exercise of the Debtor's business judgment, are fair, reasonable, and in the best interest of the Debtor's estate. The sole remaining objection to the Debtor Releases is overruled.

### b. Injunction

The Reed Creditors object to the Injunction in Section VII.4 of the Plan. They argue the Injunction creates the equivalent of non-consensual third-party release because it enjoins creditors from pursuing the Released Parties.[108] Paragraph 69 of the Proposed Confirmation Order, which was revised to resolve certain objections, states: "Nothing in the Plan or herein shall be interpreted to provide any third-party releases, however no party may bring a derivative claim of the Debtor or its estate against any of the Released Parties for any Claim arising prior to the Effective Date."[109]

As a general matter, creditors, such as the Reed Creditors, of an insolvent corporation (or a corporation operating in the zone of insolvency) cannot bring direct causes of action (including fraudulent conveyance and breach of fiduciary duty claims) against such corporation's officers and directors.[110] Such claims must be brought derivatively.[111]

As the Court finds that the Debtor's settlement by release of the above-described claims is appropriate and the only way for the Reed Creditors to bring such claims is derivatively (i.e., standing in the shoes of the Debtor), the objection to the proposed injunction is overruled.

### c. Good Faith - 11 U.S.C. §1129(a)(3)

Section 1129(a)(3) requires a plan to be "proposed in good faith and not by any means forbidden by law." At the Confirmation Hearing, the Reed Creditors argued the Debtor cannot satisfy the good faith requirement.

First, the Reed Creditors argue that this case involves process, evidence, and legal failures in the Debtor's efforts to obtain releases through the Plan in favor of its insiders. They assert that the independent director could not fulfill his role as a fiduciary to creditors because he failed to evaluate the potential causes of action independently, engaged in a "cursory" analysis, and was unable to articulate why he determined those claims were not viable. They also argue that Mr. Sarrao is not an expert on solvency and is conflicted as a potential target of a possible breach of fiduciary duty claim. As detailed above, Mr. Balasiano, an independent director, with fiduciary

---

[108] Plan (D.I. 261) at Art. VII.4.

[109] D.I. 334.

[110] *N. Am. Cath. Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 100–01 (Del. 2007).

[111] *Id.* at 101.

JA2011

duties, investigated and analyzed the potential claims and concluded there were no actionable causes of actions that could be brought.[112]  Likewise, Mr. Sarrao relied upon documents prepared in the ordinary course of business and his experience with the Debtor's business.  The Court found both Messrs. Balasiano's and Sarrao's testimony to be credible.

Second, the Reed Creditors argue the $25,000 consideration for the release of claims will "yield no benefit to creditors."  They argue this recovery is "paltry" compared to a potential $1.9 million recovery if the fraudulent conveyance and breach of fiduciary duty claims were successfully prosecuted.  Again, considering Mr. Balasiano's determination regarding the claims, $25,000 for the release of the purported claims is substantial and yields a recovery to creditors.

Finally, the Reed Creditors argue that preserving causes of action for the Reorganized Debtor amounts to benefitting the insiders.  However, the Reed Creditors never presented any evidence or otherwise explained how the plan fails to satisfy section 1129(a)(3).  In contrast, the evidence shows that the Plan "comports with . . . [the] principal purpose of the Bankruptcy Code," which "is to grant a fresh start to debtors."[113]

For these reasons, the Court finds that the Plan "has been proposed in good faith and not by any means forbidden by law."[114]  The Reed Creditors' objection is overruled.

## E.  Conclusion

Based on the record before the Court, and as explained above, the Court finds that the Plan satisfies the requirements of the Bankruptcy Code.  The Court will confirm the Plan, subject to modification of the Proposed Confirmation Order.  A hearing will be held on **March 25, 2024, at 11:00 am (Prevailing Eastern Time)** to discuss the language of the Proposed Confirmation Order.[115]

Regards,

J. Kate Stickles
United States Bankruptcy Judge

cc: Counsel on attached Service List via E-mail

---

[112] Mr. Balasiano, an attorney, serves as trustee and independent director in bankruptcy cases, including evaluating potential causes of action.

[113] *See City of Chicago v. Fulton*, 141 S. Ct. 585, 593 (2021) (citation omitted).

[114] 11 U.S.C. § 1129(a)(3).

[115] To the extent unresolved, the Court will address the objection of the United States of America and the U.S. Trustee to Article VI.c. of the Plan and paragraph 53 of the Proposed Confirmation Order relating to forfeiture of undeliverable or unclaimed distributions.

17

## Service List

**Counsel to the Debtor**
Jeffrey R. Waxman, Esquire
Tara C. Pakrouh, Esquire
Christopher M. Donnelly, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
jwaxman@morris.james.com
tpakrouh@morrisjames.com
cdonnelly@morrisjames.com

**Counsel for Debtor's Independent
Director/Manager**
Justin R. Alberto, Esquire
Cole Schotz P.C.
500 Delaware Ave., Suite 1410
Wilmington, DE 19801
JAlberto@coleschotz.com

**Subchapter V Trustee**
Jami Nimeroff, Esquire
Brown McGarry Nimeroff LLC
919 N. Market Street, Suite 420
Wilmington, DE 19801
JNimeroff@bmnlawyers.com

**United States Trustee**
Linda Casey, Esquire
Office of the United States Trustee
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
Linda.Casey@usdoj.gov

**Counsel for the United States of America**
Brian M. Boynton, Esquire
Kirk T. Manhardt, Esquire
Marc S. Sacks, Esquire
Stanton C. Mcmanus, Esquire
U.S. Department of Justice –
    Civil Division Commercial
Litigation Branch
P.O. Box 875, Ben Franklin Station
Washington, DC 20044
stanton.c.mcmanus@usdoj.gov

-and-

Leah V. Lerman, Esquire
U.S. Department of Justice Civil Division
P.O. Box 875 Ben Franklin Station
Washington, DC 20044-0875
Leah.V.Lerman@usdoj.gov

**Counsel for the Reed Action Judgment Creditors**
William D. Sullivan, Esquire
William A. Hazeltine, Esquire
Sullivan Hazeltine Allinson LLC
919 North Market Street, Suite 420
Wilmington, DE 19801
bsullivan@sha-llc.com
whazeltine@sha-llc.com

-and-

Colten L. Fleu, Esquire
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
colten@msjlaw.org

-and-

John Stember, Esquire
Maureen Davidson-Welling, Esquire
Stember Cohn & Davidson-Welling, LLC
The Harley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
jstember@stembercohn.com
mdavidsonwelling@stembercohn.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Alecto Healthcare Services LLC, [1] | ) | Case No. 23-10787 (JKS) |
| | ) | |
| Debtor. | ) | **Related Docket Nos. 343, 354** |

<u>**NOTICE OF APPEAL**</u>

The Reed Action Judgment Creditors, by and through their undersigned counsel, hereby appeal to the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 158(a) and Rules 8002 and 8003 of the Federal Rules of Bankruptcy Procedure, from the *Confirmation Ruling* issued by the U.S. Bankruptcy Court for the District of Delaware (Stickles, J.) on March 20, 2024 (D.I. 343) and the *Finding of Facts and Conclusions of Law Confirming Small Business Debtor's Plan of Reorganization* entered by the Bankruptcy Court on April 4, 2024 (Doc No. 354) (the "<u>Confirmation Order</u>").

A copy of the Confirmation Ruling issued by the Bankruptcy Court on March 20, 2024, which sets forth the basis for the Court's approval of the Debtor's Plan of Reorganization, is annexed hereto as **<u>Exhibit A</u>**.

A copy of the Confirmation Order is annexed hereto as **<u>Exhibit B.</u>**

The parties to the Confirmation Order appealed from, and the names, addresses, and telephone numbers of their respective attorneys are as follows:

---

[1] The last four digits of the Debtor's federal tax identification number is 9723. The Debtor's address is 101 N Brand Boulevard, Suite 1920, Glendale, CA 91203.

| Party | Attorneys |
|-------|-----------|
| The Reed Action Judgment Creditors | **SULLIVAN · HAZELTINE · ALLINSON LLC**<br>William D. Sullivan (No. 2820)<br>William A. Hazeltine (No. 3294)<br>919 North Market Street, Suite 420<br>Wilmington, DE 19801<br>Tel: (302) 428-8191<br>Email: bsullivan@sha-llc.com<br>      whazeltine@sha-llc.com<br><br>-and-<br><br>Bren J. Pomponio, Esq.<br>Colten L. Fleu, Esq.<br>Mountain State Justice, Inc.<br>1217 Quarrier St.<br>Charleston, WV 25301<br>Tel: (304) 326-0188<br>Email:  bren@msjlaw.org<br>      colten@msjlaw.org<br><br>-and-<br><br>John Stember, Esq.<br>Maureen Davidson-Welling, Esq.<br>Stember Cohn & Davidson-Welling, LLC<br>The Harley Rose Building<br>425 First Avenue, 7th Floor<br>Pittsburgh, PA 15219<br>Tel: 412-338-1445<br>Email: jstember@stembercohn.com<br>      mdavidsonwelling@stembercohn.com |
| Alecto Healthcare Services LLC | **Morris James LLP**<br>Jeffrey R. Waxman, Esq.<br>Brya M. Keilson, Esq.<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Tel: 302-658-9200<br>jwaxman@morrisjames.com<br>bkeilson@morrisjames.com |

| Party | Attorneys |
|---|---|
| Steven Balasiano, Independent Director | **Cole Schotz P.C.**<br>Justin R. Alberto, Esq.<br>500 Delaware Ave., Suite 1410<br>Wilmington, DE  19801<br>Tel. 302-652-3131<br>JAlberto@coleschotz.com |
| Subchapter V Trustee | **Brown McGarry Nimeroff LLC**<br>Jami Nimeroff, Esq.,<br>919 N. Market Street, Suite 420<br>Wilmington, DE 19801<br>Tel: 402-428-8142<br>JNimeroff@bmnlawyers.com |
| Office of the United States Trustee | Linda Casey<br>Office of the United States Trustee<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, DE 19801<br>Tel: 302-573-6491<br>Linda.Casey@usdoj.gov |

Dated: April 18, 2024
     Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
     whazeltine@sha-llc.com

-and-

Bren J. Pomponio, Es.
Colten L. Fleu, Esq.
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Tel: (304) 326-0188
Email:  bren@msjlaw.org
     colten@msjlaw.org

-and-

**JA2016**

John Stember, Esq.
Maureen Davidson-Welling, Esq.
The Harley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
Tel: 412-338-1445
Email:  jstember@stembercohn.com
            mdavidsonwelling@stembercohn.com

*Counsel for The Reed Action Judgment Creditors*

```
                   UNITED STATES BANKRUPTCY COURT
                      DISTRICT OF DELAWARE


                                    .  Chapter 11 (Subchapter V)
        IN RE:                      .
                                    .  Case No. 23-10787(JKS)
        ALECTO HEALTHCARE SERVICES, .
        LLC,                        .
                                    .
                                    .  824 Market Street
                                    .  Wilmington, Delaware 19801
                      Debtor.  .
        . . . . . . . . . . . . . .  .  Wednesday, November 29, 2023


                     TRANSCRIPT OF HEARING RE:
         OBJECTION OF THE REED ACTION JUDGMENT CREDITORS TO DEBTOR'S
        DESIGNATION OF THIS CASE AS A SUBCHAPTER V CASE AND MOTION TO
            REVOKE DEBTOR'S DESIGNATION AS A SUBCHAPTER V DEBTOR
                  BEFORE THE HONORABLE J. KATE STICKLES
                    UNITED STATES BANKRUPTCY JUDGE


        APPEARANCES:

        For the Debtor:              Jeffrey R. Waxman, Esq.
                                     MORRIS JAMES, LLP
                                     500 Delaware Avenue, Suite 1500
                                     Wilmington, Delaware 19801


        For the U.S. Trustee:        Linda Casey, Esq.
                                     OFFICE OF THE U.S. TRUSTEE
                                     844 King Street, Suite 2207
                                     Wilmington, Delaware 19801


        Subchapter V Trustee:        Jami Nimeroff, Esq.
                                     BROWN MCGARRY NIMEROFF, LLC
                                     919 North Market Street
                                     Suite 420
                                     Wilmington, Delaware 19801


        (Appearances Continued)

        Audio Operator:              Electronically Recorded
                                     by Sean Moran, ECRO


        Transcription Company:       Reliable
                                     1007 N. Orange Street
                                     Wilmington, Delaware 19801
                                     (302)654-8080
                                     Email:  gmatthews@reliable-co.com


        Proceedings recorded by electronic sound recording,
        transcript produced by transcription service.
```

APPEARANCES:  (Continued)

For the Reed Action
Judgment Creditors:                William D. Sullivan, Esq.
                                   William A. Hazeltine, Esq.
                                   SULLIVAN HAZELTINE ALLINSON, LLC
                                   919 North Market Street
                                   Suite 420
                                   Wilmington, Delaware 19801

For LHP Hospital Group:            Mark Minuti, Esq.
                                   SAUL EWING, LLP
                                   1201 North Market Street
                                   Suite 2300
                                   Wilmington, Delaware 19899

APPEARANCES VIA ZOOM:

For the Debtor:                    Brya M. Keilson, Esq.
                                   MORRIS JAMES, LLP

For the Reed Action
Judgment Creditors:                Maureen Davidson-Welling, Esq.
                                   STEMBER, COHN & DAVIDSON-WELLING,
                                    LLC

                                   Colten Fleu, Esq.
                                   MOUNTAIN STATE JUSTICE

For Sherman/Grayson
Hospital, LLC:                     Alan Friedman, Esq.
                                   SHULMAN, BASTIAN, FRIEDMAN
                                    & BUI, LLP

For Medical Properties
Trust, Inc., et al:                Sasha Gurvitz, Esq.
                                   KTBS LAW, LLP

For Medical Properties
Trust, Inc.:                       David M. Klauder, Esq.
                                   BIELLI & KLAUDER, LLC

For the United States:             Leah Lerman, Esq.
                                   U.S. DEPARTMENT OF JUSTICE

For the Pension Benefit
Guaranty Corporation:              Zoe Wadge, Esq.
                                   PENSION BENEFIT GUARANTY
                                    CORPORATION

(Appearances Continued)

APPEARANCES VIA ZOOM:  (Continued)

Also Appearing:                Vince Sullivan
                               LAW 360

                               Paula Subda
                               U.S. BANKRUPTCY COURT

INDEX

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|
| FOR THE MOVANTS | | | | |
| MICHAEL SARRAO | 14 | 49 | 61 | 71 |

|  | PAGE |
|--|------|
| ARGUMENT BY MR. SULLIVAN | 80 |
| ARGUMENT BY MR. WAXMAN | 97 |
| COMMENTS BY MR. MINUTI | 119 |
| FURTHER ARGUMENT | 122 |
| COURT DECISION | (Reserved) |

| EXHIBIT | IDENT. | EVID. |
|---------|--------|-------|
| Exhibit 67    Payment Summary | 8 | |
| Exhibit 68    Statements at Docket Number 79 | 71 | 79 |
| Exhibits 2 through 66 | | 79 |

5

1      (Proceedings commence at 10:07 a.m.)

2          THE COURT:  -- in Alecto Healthcare Services, LLC,

3   Case Number 23-10787.

4          Good morning, Mr. Waxman.

5      **(No Recording Microphones at Counsel Table and Lectern)**

6          MR. WAXMAN:  Good morning, Your Honor.  May it

7   please the Court, Jeff Waxman of Morris James on behalf of

8   the debtor.

9          With me today in court is Mr. Sarrao, Senior Vice

10  President and General Counsel for the debtor.

11         Your Honor, we have two matters on the agenda

12  today.  The first one is really more of a status report, and

13  I think it's appropriate for that to be heard after the Court

14  issues its decision with respect to the second matter, which

15  is the motion of the Reed Creditors.  And because it's their

16  motion, Your Honor, I think it's appropriate to turn over the

17  podium.

18         Before I do, first, I do want to apologize for

19  getting the binder to you so late yesterday.  The Reed

20  Creditors and the debtor were working through the issues with

21  respect to the underlying documents, and so I do apologize.

22         I also want to apologize because there was an error

23  with respect to the binders and Mr. Sullivan told me about it

24  this morning, so we didn't have a chance to remedy it.  There

25  is -- Number 25 has the wrong proof of claim in it, and we

6

1      provided Mr. Lugano with a copy of the correct Number 25.

2              THE COURT:  Okay.

3              MR. WAXMAN:  But I did want to alert Your Honor to

4      that.

5              Also, you'll see that there are binders on the

6      witness stand.  One of those binders is open.  The reason for

7      that is we've removed 25 and replaced it with the correct

8      one, but we didn't bring a hole punch with us, so --

9              THE COURT:  Oh --

10             MR. WAXMAN:  -- rather than just trying to fashion

11     a hole, we just left it in.

12             THE COURT:  Okay.

13             MR. WAXMAN:  And I just wanted to explain that to

14     Your Honor.

15             With that, I will turn over the podium to Mr.

16     Sullivan (indiscernible)

17             THE COURT:  Okay.  Great.  Thank you.

18             And I appreciate -- I didn't necessarily need the

19     exhibit binder.  What I wanted was the identity of witnesses

20     for today, so that was helpful to know.

21             MR. WAXMAN:  Your Honor, we do have a full binder,

22     if Your Honor would like.

23             THE COURT:  I have --

24             MR. WAXMAN:  If not --

25             THE COURT:  -- what you --

7

1          MR. WAXMAN:  -- we will give --

2          THE COURT:  -- deliver.

3          MR. WAXMAN:  If not, we will certainly give it to

4   Ms. Werkheiser, if she would --

5          THE COURT:  Yeah, that would be terrific.  Thank

6   you.

7          MR. WAXMAN:  All right.

8          THE COURT:  Mr. Sullivan, can you bear with me one

9   second?

10         MR. SULLIVAN:  Yes.

11         THE COURT:  I want to get a hole punch in here --

12         MR. SULLIVAN:  Okay.

13         THE COURT:  -- so that's not lost.

14         MR. WAXMAN:  If I may approach Ms. Werkheiser, Your

15  Honor.

16         THE COURT:  Certainly.

17      (Pause in proceedings)

18         THE COURT:  Okay.  Yes.

19         MR. SULLIVAN:  Good morning, Your Honor.

20         THE COURT:  Good morning.

21         MR. SULLIVAN:  Bill Sullivan of Sullivan Hazeltine

22  Allinson on behalf of the Reed Action Judgment Creditors.

23         Your Honor, with respect to the exhibit list,

24  there's also a summary exhibit of the payment information

25  provided at Exhibits, I guess, 47 to 66 that I can -- shared

8

1    with Mr. Waxman yesterday.  But basically, just a summary of

2    -- regarding payments that are identified in those.  And I

3    can hand it up now or you -- I can -- you -- we can wait

4    until I examine Mr. Sarrao.  But it's probably beneficial for

5    the Court to have it now.

6              THE COURT:  Okay.

7              MR. SULLIVAN:  I would propose that we mark it as

8    Exhibit 67 and we can talk about admitting it later

9    (indiscernible)

10             THE COURT:  Okay.

11             MR. SULLIVAN:  So can I ...

12             THE COURT:  Yes, please.

13        (Participants confer)

14        (Payment Summary marked Exhibit 67 for identification)

15             THE COURT:  Thank you, Mr. Lugano.  Thank you, Mr.

16   Sullivan.

17        (Participants confer)

18             MR. SULLIVAN:  And then the last exhibit issue,

19   Your Honor, is we have a replacement Exhibit 1 because

20   there's one additional claim that has been added.

21             THE COURT:  Okay.

22             MR. SULLIVAN:  So, Your Honor, I'll just hand that

23   one up

24             THE COURT:  Thank you.

25        (Pause in proceedings)

1      MR. SULLIVAN:  And Your Honor, with that, I hope

2  that's -- those are the only holes in my presentation today.

3      Your Honor, we're here today on the debtor -- on

4  the Reed Creditors' objection to the debtor's election to

5  proceed under Subchapter V of the Bankruptcy Code and the

6  corresponding motion to revoke that designation.

7      Your Honor, this is a case of clear statutory

8  interpretation.  Section 1182 of the Bankruptcy Code limits

9  Subchapter V to debtors that have less than 7.5 million in

10  liquidated and non-contingent debts as of the petition date.

11      Exhibit A to the objection motion, which is Exhibit

12  1 in the binder, is the chart that shows the schedule and

13  then the filed claims that superseded the scheduled claims

14  against the debtor that total, as attached to the motion, it

15  was 7.89 million.  As totaled on the amended Exhibit 1, which

16  I just handed up to Your Honor, the total is 8.1 million.

17      The amendment simply adds one claim that is

18  referenced in the motion; that is Claim 18.1 of the claim

19  filed on behalf of Alecto Healthcare Services Ohio Valley,

20  LLC Health Plan by the ESPA, which is a division of the

21  Department of Labor.  Your Honor, that change is not

22  material, in terms of the outcome of the case, from our

23  perspective, but we did want to update the exhibit

24  appropriately.

25      The debtor's response to the objection motion

1    (indiscernible) since the last motion is generally limited to

2    contesting the claim of LHP Hospital (indiscernible) which is

3    Claim Number 15.1, and which was asserted in the amount of

4    approximately $3.74 million.  The debtors submitted a

5    response and we submitted a reply that is generally directed

6    to those issues.

7            THE COURT:  Well, so let me ask you, Mr. Sullivan.

8    Does your client agree that whether LHP is unliquidated or

9    contingent controls the whole eligibility determination here,

10   or are there other claims the Court should be taking into

11   consideration?

12           MR. SULLIVAN:  No, Your Honor.  We believe that

13   that is the claim that controls it.  It was -- if it's not

14   contingent and liquidated, then they're not eligible.  And if

15   the Court finds otherwise, then there's (indiscernible) they

16   would be.

17           Your Honor, as we set forth in the reply and in the

18   cases relevant to this issue, the claim is not contingent

19   because contingent claims depend on a future event for fixing

20   liability, which is not the case with respect to the LHP

21   claim.

22           And secondly, the claim is not unliquidated because

23   it is readily subject to calculation.  And in fact, Your

24   Honor has evidence of the amount that LHP has paid and for

25   which the debtor has agreed to guarantee in the record, in

1    terms of both the payments that were made and the obligations

2    of the debtor that accrued as of the petition date.  So we

3    believe the evidence will show that the LHP claim will be

4    either contingent or unliquidated and must be included in the

5    calculation for the determination of eligibility.

6        Your Honor, as noted in our opening brief, it is

7    the debtor's burden to prove that it is eligible for the

8    election that it made on the petition form.  But with that,

9    we are prepared to move forward.

10       I do have some examination of Mr. Redding [sic] and

11   would propose to move forward with that, unless Your Honor

12   wants to hear any --

13       THE COURT:  Well, let me just ask you a question,

14   Mr. Sullivan.  So, neither the Bankruptcy Code, nor the

15   Bankruptcy Rules provide a standard for evaluating a motion

16   to revoke a Subchapter V election.  What would be your

17   position?  What standard should the Court be imposing here?

18       MR. SULLIVAN:  So I think it -- you know, if you're

19   talking about the business plan, it's the standard of

20   preponderance of the evidence, as far as -- as far as the

21   issue of whether the debtor has -- meets its burden or -- and

22   whether we're able to overcome that or prevent the debtor

23   from meeting that burden.

24       But with respect to the issues, Your Honor, I think

25   the case are fairly clear that we're not -- you're not

1    limited to looking at the debtor's schedules; that you're

2    looking at what are the debtor's obligations as of the

3    petition date.  And it is -- you're entitled to look at the

4    claims that have been asserted.  And I think we also

5    indicated that, just because a claim may be disputed does not

6    mean it is either contingent or unliquidated, so ...

7            THE COURT:  Okay.  Thank you.

8            MR. SULLIVAN:  All right.  Well, I would propose to

9    call Mr. Sarrao as --

10           THE COURT:  Okay.  Let me just say the Judicial

11   Conference of the United States approved a change to the

12   broadcasting policy that affects the ability of public

13   attendees to access bankruptcy proceedings via remote means.

14   So judges presiding over bankruptcy proceedings are permitted

15   to provide the public, including members of the media, with

16   audio-only access to proceedings that do not involve witness

17   testimony.  So this means that members of the public that

18   wish to observe hearings containing witness testimony must

19   attend the hearing in person at the courthouse.

20           So, to the extent that there are parties who are on

21   Zoom who cannot listen to this proceeding, I'm going to ask,

22   before Mr. Sarrao is sworn in, that the ECRO take the

23   appropriate means to ensure there's no broadcasting.

24           Okay.  All right.  Any objection to calling Mr.

25   Sarrao?

1        MR. WAXMAN:  I don't -- Jeff Waxman of Morris James

2   on behalf of the debtor.

3        We have no objection to that, subject to the right

4   to cross, I guess --

5        THE COURT:  Certainly.

6        MR. WAXMAN:  -- our own witness.

7        I didn't know if Your Honor wanted to hear opening

8   statements from the debtor first, or we're happy to

9   (indiscernible)

10        THE COURT:  I mean, I don't -- do you have an

11   opening statement?

12        MR. WAXMAN:  We do, but --

13        THE COURT:  I'm happy to hear it.

14        MR. WAXMAN:  We do, but we're -- the debtor is fine

15   reserving until after evidence for oral argument.

16        THE COURT:  Okay.  Well, let me ask.  Is -- are the

17   only parties participating in this the Reed Judgment

18   Creditors and the debtor?  Does -- is the U.S. Trustee or any

19   other party wishing to be heard today?

20        MR. SULLIVAN:  I'm not aware that either the U.S.

21   Trustee or the --

22        THE COURT:  Or the --

23        MR. SULLIVAN:  -- or the Subchapter V Trustee --

24        THE COURT:  Okay.

25        MR. SULLIVAN:  -- wants to take a position.

```
1              THE COURT:  All right.  Okay.

2              Yes, sir.

3         MICHAEL SARRAO, WITNESS FOR THE MOVANTS, AFFIRMED

4              THE ECRO:  Can you please state your full name and

5    spell your last name for the record?

6              THE WITNESS:  Michael Sarrao, S-a-r-r-a-o.

7              THE ECRO:  Thanks.  Have a seat.

8              THE COURT:  Mr. Sarrao and Mr. Sullivan, we're

9    having a little difficulty picking you up on microphones.  So

10   can you please make sure that, A, you keep your voice up;

11   and, B, that you're close to the microphone?  Thank you.

12                      DIRECT EXAMINATION

13   BY MR. SULLIVAN:

14   Q    Good morning, Mr. Sarrao.

15   A    Good morning, Mr. Sullivan.

16   Q    Mr. Sarrao, do you have the binder of exhibits in front

17   of you?

18   A    Is the exhibit binder the bigger binder?

19   Q    Yes.

20   A    I do have it, I do have it in front of me.

21   Q    Okay.  And have you looked at the exhibits that are in

22   that binder before the hearing today?

23   A    Before today, yes.

24   Q    Okay.  So you're generally familiar with the documents

25   that have been referred to in the pleadings filed by the
```

1    parties in this case.

2    A    I necessarily wouldn't say that.  I'm familiar with what

3    the exhibits are in here.  Some of the documents I'm familiar

4    with; some, I mean, I'm less familiar with.

5    Q    Okay.  Were you employed by the debtor at the time of

6    Alecto Sherman's purchase of the Sherman/Grayson Hospital?

7    A    I have never been employed by the debtor.  I was an

8    officer of the debtor at that time.

9    Q    Okay.  So you were an officer of the debtor.

10        Did you have any role with respect to Alecto Sherman or

11   with the Sherman/Grayson Hospital?

12   A    It depends on the time frame.

13        With respect to Alecto Sherman, yes, I was the Executive

14   Vice President of Alecto Sherman.

15   Q    Were you involved in the negotiation and documentation

16   of the transaction by which Alecto Sherman acquired the

17   Sherman/Grayson Hospital from a subsidiary of LHP Hospital?

18   A    Slight correction.  It wasn't the hospital, it was the

19   membership interest.

20        But yes, I was involved in that transaction.  I was

21   involved in the negotiation of the documents that consummated

22   that transaction.

23   Q    Okay.  So, if I turn your attention to Exhibit 11 in the

24   binder, which is the purchase agreement dated September 23rd,

25   2014, you're familiar with that document, correct?

16

1    A    I am familiar with it, yes.

2    Q    All right.  And in connection with that purchase,

3    Sherman/Grayson took an assignment of a ground lease and five

4    space leases in a medical office building, correct?

5    A    With respect to the five space leases, yes.

6         I don't recall whether the assignment of the ground

7    lease went straight to MPT of Sherman or it ran through

8    Sherman/Grayson Hospital.  But as it sits there today, the

9    ground lessor is an MPT entity.

10   Q    Okay.  So let's focus on the assignment of the five

11   leases in the medical office building.

12        I want to refer your attention to Exhibit 15 in your

13   binder.

14   A    Okay.

15   Q    And that's a document that's titled "Assignment and

16   Assumption of Leases," dated October 31st, 2014, correct?

17   A    Yes.

18   Q    So this is executed about six weeks after the purchase

19   agreement was signed that was contemplated at the time of

20   purchase, correct?

21   A    Yeah.  October 31st, 2014 was the day of the closing, so

22   it was --

23   Q    Okay.

24   A    The purchase agreement was signed before the closing

25   occurred.

17

1    Q    Okay.  Thank you.

2         And that's your signature on behalf of the assignee, the

3    Sherman/Grayson Hospital, on Page 5 of 8 of the document,

4    correct?

5    A    The 5 of 8 on top?  Yes, that's my signature.

6    Q    Okay.  And it says that you're an Executive Vice

7    President of Sherman/Grayson Hospital at that time.

8    A    No.  I was the Executive Vice President of Alecto

9    Healthcare Services Sherman --

10   Q    Oh, I see.

11   A    -- which was the sole member.

12   Q    Gotcha.  Okay.  Thank you.

13        All right.  And then the premises that were assigned to

14   Sherman/Grayson Hospital are listed on Exhibit A, correct?

15   A    Yes.

16   Q    And then Exhibit B is the schedule of guarantees,

17   correct?

18   A    That's what Exhibit B is, yes.

19   Q    And the guarantees that it's referring to are the

20   guarantees provided by LHP system -- LHP Hospital Group,

21   correct?

22   A    I believe so.  I'm -- I don't recall specifically what

23   LHP entity gave the guarantees.

24   Q    Okay.  And so let me refer you to -- now to the --

25   Exhibits 17, 18, 19, and 20 and 21, which I'll represent to

1    you are five separate lease agreements.

2            THE COURT:  Did you say Exhibits 17 through 21?

3            MR. SULLIVAN:  Yes.

4            THE WITNESS:  Okay.

5    BY MR. SULLIVAN:

6    Q    And do you recognize these as the lease agreements that

7    Sherman/Grayson Hospital took assignment of pursuant to the

8    assignment and assumption of the lease?

9    A    I just want to look at each one.  Hold on a second.

10        Yes, these are the leases that are referred to in -- was

11   it Exhibit 15 that we looked at?  Exhibit A, yes.

12   Q    Okay.  And Sherman/Grayson Hospital occupied the spaces

13   that it leases pursuant to the five leases for a period of

14   about six years.  Is that right?

15   A    That's not correct.

16   Q    Okay.  How long did Sherman/Grayson Hospital occupy the

17   spaces in the leases?

18   A    Some of the spaces were empty, they may still be empty

19   today.  Some of those spaces were then subleased to Sherman

20   MD Provider.  But a significant amount of the space was never

21   occupied.

22   Q    Okay.  Did there come a time when Sherman/Grayson

23   Hospital gave up the right to occupy those leases?

24   A    There was an agreed-upon judgment with re -- action

25   brought by the landlord with respect to possession.  I just -

19

1     - it's either 2020 or 2021.

2     Q    So let me turn you to Exhibit 22.

3     A    Okay.

4     Q    Is that the agreed judgment for possession that you've

5     referenced?

6     A    It is.

7     Q    Okay.  And then, if -- in the second paragraph of this -

8     - first of all, the date of the agreed judgment is on Page 3

9     of the document.  It's September 16th of 2020, correct?

10    A    Yes.

11    Q    Okay.  And it says "in order to" -- in the second

12    paragraph, it says:

13              "In order to resolve issues relating to the

14              possession of the leased premises, defendant has

15              agreed to pay plaintiff $100,000 on or before 5

16              p.m. Central Daylight Time on September 23rd, 2020,

17              in exchange for the right to surrender premises of

18              the leased premises as of 5 p.m. Central Daylight

19              Time on October 15th, 2020, and has further agreed

20              to surrender the leased premises as of September

21              24th, 2020, in the event that such payment is not

22              made."

23          Did I read that correctly?

24    A    You did read it correctly.

25    Q    Okay.  And is that the time frame when Sherman/Grayson

1  Hospital gave up possession of all five of the leased

2  premises covered by the five leases that we just referred to?

3  A    My recollection is that that October 15th date was

4  extended by two to four weeks, with an additional -- I

5  believe it was a fifty-thousand-dollar payment.  So there was

6  a -- like a two-to-four-week extension after that October 15,

7  2020 date that was agreed upon be -- by Sherman/Grayson

8  Hospital and the landlord.

9  Q    Is it fair to say that, by January 1st of 2021,

10  possession of the space -- spaces had been returned to the

11  landlord?

12  A    Yes.

13  Q    Did the return of possession to the landlord eliminate

14  Sherman/Grayson Hospital's obligation to pay rent?

15  A    I don't believe so.

16  Q    Did Sherman/Grayson Hospital make any rent payments

17  after it gave up possession of the premises?

18  A    Again, there was a -- I think a fifty-thousand-dollar

19  payment.  I don't recall the timing of that payment, but I

20  don't believe so, but I -- I don't know for sure.

21  Q    All right.  Well, let's restrict it to from January 1st

22  of 2021 to the -- to Sherman/Grayson Hospital's petition

23  date.

24      Did Sherman/Grayson Hospital make any of the monthly

25  payments of rent to the landlord under the leases?

```
 1   A    I don't know for sure, but I don't believe so.

 2   Q    Okay.  Now LHP Hospital sued the debtor and Alecto

 3   Sherman from the Delaware Superior Court with respect to

 4   unpaid amounts on those leased premises, correct?

 5   A    I don't believe they sued for the unpaid amounts on the

 6   leased premises.  They brought a claim for breach of contract

 7   under the purchase agreement and a guarantee.  So I don't

 8   necessarily know it was for the unpaid rent, technically.

 9   Q    Well, the amount that they were claiming was the amount

10   of unpaid rent on those premises, correct?

11   A    No, that's not correct.

12   Q    Okay.  Let's look at Exhibit 10, which is the LHP

13   complaint filed on January 20th of 2021.  Do you see that?

14   A    Give me a second.  Okay.

15   Q    Okay.  Can I refer you to Paragraph 24?

16        (Pause in proceedings)

17   A    Okay.  And it says, Paragraph 24:

18             "As a result of Sherman/Grayson's defaults under

19             the lease agreements and Alecto Sherman's breaches

20             of the purchase agreement, LHP has been required to

21             pay Altera" --

22        Who is the landlord, correct?

23   A    Correct.

24   Q        "-- the following sums as of January 13th, 2021."

25        And it lists months paid and amounts.  Do you see that?
```

22

1    A    I see that.

2    Q    And those amounts, months paid and amounts, are amounts

3    that are due under the lease agreements that Sherman/Grayson

4    Hospital took an assumption of, correct?

5    A    I don't know that.

6         But your question was whether LHP sued us for the unpaid

7    rent.  LHP was not the landlord.  They sued us because they

8    alleged they paid these amounts, that's what they sued for,

9    the amounts they paid, not for the unpaid rent.

10        They didn't have a right to sue for the unpaid rent.

11   They had a separate action, they tried to do that and that

12   case got dismissed.

13   Q    Okay.  So it's fair to say that LHP sued you for amounts

14   that it paid to the landlord in its capacity as the guarantor

15   of the lease obligations for the five leases that

16   Sherman/Grayson Hospital took an assumption, right?

17   A    LHP sued based on allegations that they paid amounts to

18   the landlord under their guarantee, and they sued based on a

19   guarantee by the debtor, yes, and then a provision in the

20   purchase agreement by what I call "Alecto Sherman."

21   Q    Okay.  Now the lawsuit also included a counterclaim that

22   was made by Alecto Sherman relating to a net working capital

23   calculation.  Is that correct?

24   A    That's correct.  And other claims, as well.

25   Q    Okay.

23

1    A    But that was --

2    Q    All right.

3    A    -- the primary claim.

4    Q    Okay.  And all of the claims in that lawsuit were

5    settled under a settlement agreement, correct?

6    A    That's correct.

7    Q    Okay.  And that settlement agreement is attached as

8    Exhibit 12.  I'm going to ask you to take a look at that.

9         (Pause in proceedings)

10   A    Okay.

11   Q    And were you involved in the negotiation of the

12   settlement agreement?

13   A    I was involved in the negotiate -- the mediation that

14   resulted in the settlement.

15   Q    Okay.

16   A    And then I was involved in providing comments to

17   counsel.  I think LHP drafted the settlement agreement and we

18   provided comments and it -- they went back and forth.  I

19   didn't have direct communication with LHP or their counsel

20   about the terms of the settlement agreement, it was through

21   counsel.

22        The settlement was actually reached at a mediation

23   before Judge Rocanelli.

24   Q    But you were familiar with the negotiations, in your

25   capacity as an officer of the debtor and (indiscernible)

24

1    A    Yes.

2    Q    And you signed the agreement on behalf of all three

3    entities that are covered in the settlement agreement.  That

4    would be:  The debtor, Alecto Sherman, and Sherman/Grayson

5    Hospital.  Correct?

6    A    Yes.

7    Q    All right.  Now, if I'm looking at the signature on Page

8    9 of this document for Sherman/Grayson Hospital, LLC, it

9    lists you as executive vice president and does not indicate

10   that your signing it on behalf of its sole member, right?

11   A    (No verbal response)

12   Q    Was there a change in your position, so that you became

13   the Executive Vice President for Sherman/Grayson Hospital,

14   LLC?

15   A    Yeah, sometime in 2014, after the sale agreement.  When

16   the purchase was completed, I became the Executive Vice

17   President of Sherman/Grayson Hospital, LLC.

18   Q    Okay.  The -- I want to turn your attention to Paragraph

19   9 of the settlement agreement --

20   A    Okay.

21   Q    -- which is headed "Power to Confess Judgment."  Do you

22   see that?

23   A    I do.

24   Q    Okay.  Was there a confess judgment right in the leases?

25   A    I don't believe so, no.  I'd have to go back and look at

1    the leases.

2    Q    Okay.  Well, I'll represent to you that I looked for one

3    and couldn't find one.  Do you want to take a look and see if

4    there's a confess judgment right in the lease?

5    A    I didn't draft the leases, I didn't -- wasn't involved

6    when we took the leases over.  But I'm not arguing with you

7    that there is or is not.  I -- I just don't know as a

8    certainty.  I'd be surprised if there was.

9    Q    Okay.  So, with respect to the -- and this settlement --

10   that right to confess judgment relates to Paragraphs 6, 7,

11   and 8 of this agreement, which deal with future expenses,

12   correct?

13   A    Well, 6 -- 6 and 7.  8 is the forbearance period, so,

14   arguably, it could or could not.  But 6 and 7, definitely.

15   Q    Okay.  And so the power to confess judgment exists with

16   respect to the future obligations that both the Alecto

17   Defendants and Sherman/Grayson Hospital owe to LHP Hospital

18   Group, correct?

19   A    Well, may owe if certain conditions are met.

20   Q    What do you mean "may owe"?

21   A    Well, there's conditions that have to be met before

22   there's an obligation to pay under the settlement agreement.

23   Q    Okay.  So, with respect to the exercise of the power to

24   confess judgment, I think -- let me just read this.  It says

25   -- in the first paragraph of Paragraph 9, it says:

1          "In the event that the future expenses are not paid

2          in full with 15 days of notice from LHP to the

3          Alecto Defendants and/or Sherman/Grayson of the

4          amount due and subject to the provisions of

5          Paragraph 68 of" -- "6 through 8 of this agreement"

6          --

7    And then it goes on to say that the Alecto Defendants

8  authorize the confession of judgment against them, correct?

9  A   That's what it reads, yes.

10  Q   Okay.  And before they can exercise their right to

11  confess judgment against the Alecto Defendants, there's a

12  procedure that they have to follow outlined in Paragraph 6,

13  correct?

14  A   Well, I would say it's more than a procedure; it's a

15  condition precedent.

16    But Paragraph 6 relates to the Alecto Defendants, yes.

17  Q   Okay.  Well, let me just refer you to Paragraph 6 and to

18  the sixth line -- one, two, three, four, five -- sixth line

19  down that says:

20          "Accordingly, the Alecto Defendants agree to the

21          following procedure for payment of future

22          expenses."

23    Did I read that correctly?

24  A   You read it correctly.

25  Q   Okay.  And then Subpart (a) says:

27

1          "LHP shall make a written demand upon the Alecto
2          Defendants for a specified amount in accordance
3          with the forbearance schedule set forth in
4          Paragraph 8."
5       Correct?
6   A   That's correct.  You read it correctly.
7   Q   All right.  And then Subpart (b) says:
8          "The Alecto Defendants shall make payment of the
9          specific amount within 15 days of such demand."
10      Correct?
11  A   You read it correctly.
12  Q   All right.  And then Paragraph (c) says that:
13         "If the Alecto Defendants dispute the amount, LHP
14         is entitled to the confession of judgment in the
15         form of Exhibit C hereto."
16      Correct?
17  A   There's some other language in there, but generally you
18  read it correctly.
19  Q   All right.  And then Subpart (d) says that:
20         "The only matter that the Alecto Defendants may
21         contest in connection with such proceeding is the
22         computation and payment of the principal, interest,
23         fees, and costs of the judgment.  All other
24         defenses are hereby expressly waived and disclaimed
25         by the Alecto Defendants, including, but not

28

1            limited to prior material breach, failure to

2            mitigate, unclean hands, offset, and failure to

3            state a claim."

4        Correct?

5   A    That's what it reads, correct.

6   Q    Okay.  And then I want to turn your attention to Page 4,

7   the following page, the first new paragraph, which says:

8            "LHP's obligation to pay Altera expenses only

9            occurs after Sherman/Grayson fails to meet its

10            obligations."

11        Did I read that correctly?

12   A    Yes.

13   Q    Okay.  Now you indicated that there was a Texas action

14   where LHP had pursued Sherman/Grayson Hospital directly that

15   was dismissed.

16        And I want to refer you to the fifth whereas clause of

17   the settlement agreement.

18   A    Yes.

19   Q    And it says:

20            "Whereas, in the Texas action, LHP seeks recovery

21            of the current damages by way of a breach of

22            contract claim against Sherman/Grayson, such claim

23            being assigned to LHP by non-party Altera Highland,

24            LLC."

25        Did I read that correctly?

1    A    You read it correctly.

2    Q    All right.  Have you ever seen an assignment from Altera

3    to LHP of the right to pursue claims against Sherman/Grayson

4    Hospital for breach of the lease agreement (indiscernible)

5    A    I believe there was a settlement agreement between LHP

6    Hospital and Altera that included an assignment.  That Texas

7    action, they sued as an assignee of Altera.  So I believe

8    there was a settlement agreement between Altera and LHP back

9    like in 2020 or 2021.

10    Q    And did that settlement agreement provide that LHP would

11    have an assignment going forward with respect to future

12    damages?

13    A    I don't -- I don't know.

14    Q    Okay.  Is it fair to say that Sherman/Grayson Hospital

15    made the payment required in the settlement agreement?

16    A    The settlement payment was made, yes.

17    Q    Okay.  After making this settlement agreement -- after

18    making the settlement payment -- and I believe that's

19    documented in the record at Exhibit 27.  Let's just look at

20    the date of that.

21        (Pause in proceedings)

22    Q    Okay.  The date on this is February 24th, 2022.

23    A    Yes.

24    Q    After making that payment, did Sherman/Grayson Hospital

25    make any other payments of the lease obligations up to and

1  including the petition date?

2  A    I don't believe Sherman/Grayson Hospital made any

3  payments of the lease obligations to the landlord.  No, I

4  don't believe that occurred.

5  Q    You said you don't remember.

6       Would you be in position to know if Sherman/Grayson

7  Hospital made payments to Altera or LHP under the lease

8  requirements?

9  A    I believe I said "I don't believe," rather that I don't

10  remember.  I don't believe that they made any payments.

11  Q    Okay.  All right.  So, with respect to the obligations

12  of Sherman/Grayson Hospital under the five leases, is it

13  correct that the obligations of Alecto Sherman arise from the

14  purchase agreement?

15  A    Obligations of Alecto Sherman to LHP?

16  Q    Yes.

17  A    They would arise under the purchase agreement, correct.

18  Q    Okay.  So let's just take a look at that briefly.

19       (Pause in proceedings)

20  A    What exhibit number, Mr. Sullivan?

21  Q    Exhibit 11.

22  A    Okay.

23  Q    And I'm looking at Page 46, Paragraph 9.3.

24  A    The numbers at the top, 46, right, or --

25  Q    I'm looking at the bottom.

1    A    Okay.

2    Q    It's easier because the top are so (indiscernible)

3    A    Okay.  I got it.

4              MR. WAXMAN:  I'm sorry.  What page, Mr. Sullivan?

5              MR. SULLIVAN:  46.  Okay.  So --

6              THE COURT:  I'm sorry, Mr. Sullivan.  Can you say

7    that again?

8              MR. SULLIVAN:  So I'm looking at Page 46 --

9              THE COURT:  46.  Okay.

10              MR. SULLIVAN:  -- of the purchase agreement, using

11    the page numbers at the bottom --

12              THE COURT:  Bottom.  Okay.

13              MR. SULLIVAN:  -- of the document --

14              THE COURT:  Sorry.

15              MR. SULLIVAN:  -- not the --

16              THE COURT:  I'm there.

17              MR. SULLIVAN:  -- not the --

18              THE COURT:  Thank you.

19              MR. SULLIVAN:  -- court-stamped numbers.

20    BY MR. SULLIVAN:

21    Q    Okay.  And so Section 9.3 reads "Indemnification by the

22    Purchase," correct?

23    A    It does.

24    Q    And that's -- the purchaser is Alecto Sherman?

25    A    It is.

1   Q    All right.  And it says:

2               "The purchaser shall indemnify and hold harmless

3               the seller, the seller guarantors, or any affiliate

4               of the seller guarantors."

5        And LHP is a seller guarantor, correct?

6   A    I believe they're defined as a seller guarantor, yes.

7   I'd have to ... yes, it is a seller guarantor.

8   Q    Okay.  And so -- and what it's indemnifying -- so Alecto

9   Sherman is indemnifying LHP from Items (a), (b), (c), (d),

10  and (e).  And I want to focus on E on Page 47, which says:

11              "Any liabilities related to the MOB" --

12       Which is medical office building.

13              "-- in respect of (i) seller's post-closing lease

14              obligations on the space of the leases or (ii)

15              LHP's guarantees of the ground lease and the space

16              leases."

17       Did I read that correctly?

18  A    You did.

19       But this was superseded by the terms of the settlement

20  agreement I think we looked at earlier.

21  Q    Okay.  Well, that -- I just ask you if I've -- if we've

22  read that correctly?

23  A    You read it correctly.  The document is the document, so

24  ...

25  Q    Okay.  And so that Section 9.3(e) was the basis that LHP

1   sued Alecto Sherman in the Delaware Superior Court, correct?

2   A    That was the basis of the lawsuit, generally, yes.

3   Q    Okay.

4        MR. WAXMAN:  Your Honor, Jeff Waxman, Morris James,

5   on behalf of the debtor.

6        THE COURT:  Mr. Waxman, I think we're not picking

7   you up.  Sorry.

8        MR. WAXMAN:  Is this better?

9        THE COURT:  Yes.

10       MR. WAXMAN:  Okay.

11       THE COURT:  Thank you.

12       MR. WAXMAN:  Thank you.

13       Your Honor, I don't mean to interject myself into

14  Mr. Sullivan's direct, but I think we're kind of running far

15  afield.

16       I think the debtor is willing to stipulate that it

17  was liable for obligations to LHP under the guarantee and the

18  purchase agreement originally.  But all of that, as Mr.

19  Sarrao alluded to, was superseded by the settlement

20  agreement.  And we've been at it for 45 minutes,

21  approximately, and I don't know that any of this line of

22  inquiry is relevant, considering that all of the liabilty has

23  -- under the purchase agreement, at lease, again, is

24  superseded by the subsequent agreement between the parties.

25       Again, if Mr. Sullivan wants to continue his

1  direct, that's fine.  But time is running, Your Honor, and I

2  just don't know what any of this is necessarily relevant to

3  the issues immediately before the Court.

4       MR. SULLIVAN:  Your Honor, I guess Mr. Waxman has

5  now made his opening statement that he said he didn't need to

6  make.  That's not an objection to my question.

7       I'm going through the underlying documents that

8  relate to the LHP claim.  And they've stated a legal position

9  that may or may not be relevant to Your Honor's

10  consideration, so they can make it when they need to make it.

11  I respectfully -- you know, I'm two-thirds of the way through

12  what I had planned to ask this witness, but I believe it's

13  appropriate to go through the documents that underlie these

14  claims.

15       THE COURT:  Okay.  You may proceed.

16       MR. SULLIVAN:  Thank you, Your Honor.

17  BY MR. SULLIVAN:

18  Q    Now, with respect to the obligations of the debtor to

19  LHP, those obligations are governed by the guarantee, which

20  is shown at Exhibit 14.

21  A    Well, they were.  And then, from my perspective, they

22  were modified by the terms of the settlement agreement.

23  Q    Okay.  So let's focus on, first of all, at the time that

24  we get to -- at the time that LHP sued the debtor in the

25  Delaware Superior Court, their allegations against the debtor

1   and the debtor's liability for the claims they made in their

2   complaint that we looked at earlier are based on this

3   guarantee, correct?

4   A    Correct.  It was a breach of contract claim.  And the

5   contract they alleged that was breached was the guarantee.

6   Q    Okay.  And this guarantee in Paragraph 2(a) states that

7   it's a guarantee that -- it's an unconditional guarantee of

8   payment and performance and not of collection, correct?

9   A    That's what the document says, yes.

10  Q    And in Section 2(b), starting at Line 7, it says:

11          "The guarantor agrees that the obligation of the

12          guarantor hereunder shall not be released or

13          discharged in whole or in part or otherwise

14          affected by the failure of the guarantee parties to

15          assert any claim or demand or to enforce any right

16          or remedy against or to join purchaser to any suit

17          arising under the guarantee."

18      Correct?

19  A    That's what the guarantee says, correct.

20  Q    Okay.  And it also -- if we turn to Page 2 of the

21  guarantee, I'm going to say about the fifteenth line down,

22  there's a sentence that begins on the far right with "the,"

23  and it says:

24          "The guarantor waives promptness, diligence, notice

25          of the acceptance of his guarantee and of the

1          obligations, presentment, demand for payment,

2          notice of nonperformance, default, dishonor, and

3          protest, notice of any obligations incurred, and

4          all other notices."

5     Did I read that correctly?

6  A    I believe so, yes.

7  Q    Okay.  And is it fair to say that Alecto Sherman has no

8  independent operations?

9  A    Alecto Sherman serves -- I guess "independent

10 operations" is what I'm struggling with.  It serves as a

11 parent company of Sherman/Grayson Hospital, LLC and then

12 Sherman/Grayson Sponsor, LLC, which has some operations.  So

13 it doesn't do anything.  It just holds as a -- it's a holding

14 company, effectively.

15 Q    Right.

16     But if there's money to pay lease expenses, it's either

17 going to come from Sherman/Grayson Hospital's operations or

18 from the debtor, correct?

19 A    No, that's not correct.

20 Q    Okay.  Does Sherman -- does Alecto Sherman have any

21 financials that are not related to the subsidiaries?

22 A    Well, again, there's other subsidiaries other than

23 Sherman/Grayson Hospital.  There's Sherman M.D. Provider and

24 Sherman Anesthesia --

25 Q    Okay.

37

1    A    -- which are two different entities, and they each have

2    collections and revenue.

3    Q    Okay.  So Sherman -- if Sherman Alecto -- if Alecto

4    Sherman wanted to pay the lease expenses, they would have to

5    get the money from one of the subsidiaries -- one of its

6    subsidiaries or from its parent, correct?

7    A    Or a different -- or a different affiliate, correct.

8    Q    Okay.

9         (Pause in proceedings)

10   Q    So, under the purchase agreement, did it provide for

11   procedures for LHP and other indemnified parties to seek

12   indemnification and payment?

13   A    There's indemnification provisions.  I'd have to go back

14   and look at them, but it's -- I think there's two or three

15   pages that deal with indemnification.

16   Q    Well, let me -- on Exhibit 11, which is the purchase

17   agreement, let me focus your attention on Page 48.

18   A    Okay.

19   Q    Do you see that Section 9.5 is headed "Claims

20   Procedures"?

21   A    I do see that.

22   Q    And Subsection (a) says:

23              "If a party seek indemnification for damages

24              hereunder, the party seeking indemnification shall

25              notify the party from whom the indemnification is

1        sought."

2    A    I see that.

3    Q    All right.  And then the -- and then procedures flow

4    from that.

5    A    Correct.

6    Q    Okay.  Now the documents that have been submitted to the

7    Court as joint exhibits include payments that LHP made to

8    Altera Highland for the lease obligations of Sherman/Grayson

9    Hospital, correct?

10   A    They show payments.

11        I don't -- I'm assuming they're LHP Hospital that made

12   the payments, but I can't tell because the account number is

13   redacted.

14        Ardent -- Ardent is, I think, the parent company of LHP

15   now; they merged or there was a transaction.  So I'm not sure

16   what entity made the payment.  But clearly, they show

17   payments being made to Altera Highland.

18   Q    Okay.  So let's just -- so that the record is not

19   confused by this, let's look -- let's just refer to one of

20   the payments.  And let's -- I want to refer you to Exhibit

21   46.

22        (Pause in proceedings)

23   Q    Okay.  So let's just take a look at Exhibit 46.  And

24   it's a four-page -- actually, a five-page document.

25        And the first page is a Bank of America wire form,

39

1    correct?

2    A    Again, I'm not sure if it's a Bank of America wire form.

3    I think it's a -- in my experience, this is probably a wire

4    form that perhaps Ardent or LHP had for Bank of America.

5         I don't know what Bank of America wire forms look like.

6    The first time I saw this was on Saturday.

7    Q    Okay.  So the date of this Exhibit 46 is March 1st,

8    2022, correct?

9    A    That's correct.

10   Q    And the description is "Altera Highland lease payment."

11   Is that correct?

12   A    That's correct.

13   Q    All right.  And the amount of the payment is

14   $226,526.68.  Do you see that?

15   A    I do.

16   Q    All right.  And do you understand that to be the monthly

17   payment that Sherman/Grayson Hospital owes to Altera under

18   the lease agreements that it took an assumption on?

19   A    No.  I understand that to be the payment of the invoice

20   that's the second page of this directed to Sherman/Grayson

21   Health System, not Sherman/Grayson Hospital.  And it's rent

22   and it's estimated CAM charges.

23   Q    Okay.  So these are -- Page 2 is the tenant statement,

24   and it says "prepared for Sherman/Grayson Health System,"

25   which is actually the predecessor, correct?

1    A    No.  Sherman/Grayson Health System -- when you say

2    "predecessor," I'm not sure what you mean.

3    Q    That's L -- Sherman/Grayson Health System was the

4    seller.

5    A    Correct.  It's an LHP entity.

6    Q    Right.

7         So the landlord never changed the documentation, despite

8    the assignment and despite the consent to assignment.

9    A    I don't know what the landlord -- this isn't the

10   landlord; this is a management company.  I don't know what

11   the landlord did or didn't do.

12   Q    Okay.  So the management company, operating for the

13   landlord, didn't change who it's for.  But we can agree that

14   Sherman/Grayson Health Systems was the seller who sold to

15   Alecto Sherman and then assigned the leases to

16   Sherman/Grayson Hospital.

17   A    Yes, we ca agree to that.

18   Q    Okay.  And the statement is for the monthly amounts due

19   under the leases for March of 2022, correct?

20   A    At least what the landlord says is due, correct.

21   Q    Okay.  And then attached is an email chain, on Pages 3,

22   4, and 5.  And the second email in the chain is an approval

23   from Steve Hinkle, who is identified as the VP and Chief

24   Compliance Officer for Ardent Health Services, correct?

25   A    That's what the email says, yes.

41

```
1    Q    Right.

2         And Ardent is affiliated with LHP.

3    A    Yeah.  I'm not sure of the exact -- my recollection is

4    that Ardent is a -- the parent company of LHP.  There was

5    some -- there was a transaction, I think it -- I don't know

6    if it was called a merger or an acquisition, but they're

7    related.  Ardent and LHP are related.

8    Q    And the beginning -- if -- going to Page 4 of the

9    exhibit, the initial email was dated January 25th, 2022.

10   That was forwarding the February statement.  And that was

11   from Andriana Santos (phonetic) at Borum Property Apartments

12   (phonetic), correct?

13   A    That's correct.

14   Q    Okay.  And so the initial email on January 25th

15   forwarded the tenant statement for February 2022.

16        And then, two emails up, there's an email dated March

17   1st from Glynda McDaniel at Ardent Health saying we haven't

18   received the invoice, please forward it.  And then it gets

19   paid, correct?

20   A    Yeah.  There's an email between Glynda McDaniel and

21   Andriana Santos, and there's some internal emails that Ardent

22   -- correct.

23   Q    Okay.

24   A    And --

25   Q    All right.
```

42

1  A    -- I assume that that wire went through.  This is a wire

2  form we have.

3  Q    Did you look at the other exhibits that are similar with

4  the wires and the backup information that are -- follow

5  Exhibit 46 and run to Exhibit 66?

6  A    Yeah, I reviewed them for the first time on this past

7  Saturday morning, the first time I saw them.

8  Q    Okay.  I'm going to provide you with a summary of the

9  payments and those invoices.

10       MR. SULLIVAN:  And I believe, Your Honor, we agreed

11  to mark this as Exhibit 67.

12       (Participants confer)

13       MR. SULLIVAN:  Your Honor, may I approach the

14  witness?

15       THE COURT:  Yes.

16  BY MR. SULLIVAN:

17  Q    Mr. Sarrao, I'll represent to you that Exhibit 67 is a

18  chart, it's titled "LHP Payments to Altera Highland, 2/17/22

19  to 11/1/23."  And it lists the -- in three columns, the Bates

20  Number for the documentation provided in the exhibit binder,

21  the date of the payment referenced in each of the exhibits,

22  and the amount of the payment, with a total at the bottom and

23  a subtotal on the right.  Do you see that?

24  A    I do see that.

25  Q    Okay.  And then assuming that this is correctly listed

43

1    here in the amount, the subtotal through the petition date of

2    payments between February 17th, 2022 and June -- and the

3    petition date is $3,708,475.62, correct?

4    A    Yeah.  Assuming those numbers add up to that, yeah.  I

5    obviously can't do that in my head, but I'm not -- it looks

6    like an Excel spreadsheet and it looks --

7    Q    And the numbers that are shown for each monthly amount

8    are in the correct range of the monthly rent obligations that

9    Sherman/Grayson Hospital has under the leases --

10   A    Well, there's --

11   Q    -- correct?

12   A    There's the rent and then there's the estimated CAM

13   fees; and, when you combine the two, they're in -- in that

14   amount.  There's variations from month to month and I think

15   some of that relates to CAM fees.

16   Q    Okay.  So the general scope of this amount you're not

17   disputing.

18   A    Again, assuming that -- I could go through and add them

19   up.  I -- I'm not questioning that you entered in each one

20   and added them up.  Correct.

21        MR. SULLIVAN:  Okay.  Bear with me one second, Your

22   Honor.

23        THE COURT:  Certainly.

24        (Pause in proceedings)

25   BY MR. SULLIVAN:

44

1    Q    Mr. Sarrao, let me turn to you Exhibit 24, which is the

2    Sherman/Grayson schedules.

3    A    Okay.

4    Q    I want to refer you to Exhibit G.

5    A    Do you know what page that is, Mr. Sullivan?

6    Q    I'm working on -- I'm working on it.

7    A    Okay.  Sorry.  I ...

8    Q    So Exhibit G starts at Page 110 of 132.  But I --

9    A    Okay.

10   Q    -- want to focus you on Page 116 of 132.

11   A    Okay.

12   Q    And do you see Items 2.54 through 2.58?

13   A    I do.

14   Q    It lists the five leases that we've been discussing and

15   that are referenced in the exhibit binder, correct?

16   A    I see that.

17   Q    All right.  And to your knowledge, has Sherman/Grayson

18   Hospital taken any action with respect to those leases?

19   A    Yes.  There has been discussion between counsel for

20   Sherman/Grayson Hospital and counsel for LHP about those

21   leases being assigned to LHP.  And there's also, in the

22   Sherman/Grayson Hospital case -- it's a bit different of a

23   case and lots of things going on -- there's discussion about

24   -- there was discussion about rejecting those leases in that

25   case, as well.

45

1    Q    But nothing has happened to date, correct?

2    A    I don't know for sure.  I don't believe so.

3    Q    Okay.

4    A    And the discussions have taken place between counsel for

5    Sherman/Grayson Hospital and counsel for LHP about assigning

6    those leases to LHP.  Those discussions have taken place.

7    The actual assignment I don't believe has occurred yet.

8    Q    All right.  So the lease -- as it currently stands,

9    those lease obligations remain the obligation of

10   Sherman/Grayson Hospital, correct?

11   A    Correct.

12       I don't know what those lease obligations are currently

13   because of re-letting, and I think there's a lease to one

14   tenant that came in --

15   Q    All right.

16   A    -- that took up some of the space.

17   Q    All right.  Let me refer you to -- back to Exhibit B.

18   A    On 24?

19   Q    Yep.

20   A    Okay.

21   Q    So it's Page 36 of 132.

22   A    Okay.

23   Q    And Item 3.18 is -- lists as a creditor Altera Highland,

24   LLC, who is the landlord for the leases we just discussed,

25   correct?

46

1    A    Yes.

2    Q    And it lists the amount due as of the petition date as

3    zero.  And then it identifies it as contingent and disputed.

4         Can you tell me why that amount is listed as zero and

5    identified as contingent and disputed?

6    A    Because, one, we didn't know what, if anything, was owed

7    to Altera Highland, LLC because we didn't receive those --

8    any invoices.

9         Disputed because there's a question or not about --

10   there's at least one tenant that came in and took some of the

11   space.

12        Three, it's disputed because Altera Highland has

13   obligations to mitigate their damages, and certainly don't

14   know if they've actually mitigated their damages.

15   Q    Well, didn't you waive any claim for mitigation of

16   damages in the settlement agreement with LHP?

17   A    Not as against Altera Highland we didn't.  This is a

18   claim by Altera Highland, which is the landlord.

19   Q    So, with respect to the settlement agreement that we

20   reviewed, Section 6(d) ...

21        (Pause in proceedings)

22   Q    I want to refer you on -- to Exhibit 12, Page 3.

23   A    Okay.

24   Q    With respect to claims brought by LHP against the

25   debtor.

47

```
 1          MR. WAXMAN:  I'm sorry.  Which paragraph?

 2          MR. SULLIVAN:  6(d).

 3          MR. WAXMAN:  Gotcha.

 4   BY MR. SULLIVAN:

 5   Q    Is it correct to say that the debtor has expressly

 6   waived all defenses it could assert against LHP, including

 7   failure to mitigate?

 8   A    Well, I don't know about "all defenses," but failure to

 9   mitigate is there as against LHP.  The claim we looked at was

10   Altera Highland, LLC, two different entities --

11   Q    Okay.

12   A    -- two different parties.

13          (Pause in proceedings)

14   Q    Does -- having now seen the exhibits showing the

15   payments that LHP has made to Altera Highland, does the

16   debtor dispute the amounts that are owed to LHP, as set forth

17   in the LHP group of claims?

18   A    Yes, because a condition precedent to those obligations

19   has not been met.

20          We have a question about whether Altera Highland is

21   charging LHP the right amount because there's at least one

22   tenant that I'm aware of that came in as a subtenant and --

23   and paid rent to Altera Highland.

24          Whether LHP paid the money, this is the first time I'm

25   seeing it.  The first time I saw it was on Saturday.  There's
```

1    wire forms from the -- well, I assume the wires went out and

2    they paid it.  But there are certain conditions precedent to

3    those obligations that have not been met.

4    Q    And what are the conditions precedent to those

5    obligations that have not been met?

6    A    There has to be a demand for payment and there has not

7    been a demand for payment against the debtor.

8    Q    And in your mind, does a proof of claim constitute a

9    demand for payment?

10   A    I don't -- I don't know.  That would be a legal question

11   I haven't really thought about.

12        MR. SULLIVAN:  Okay.  That's all the questions I

13   have, Your Honor.

14        (Pause in proceedings)

15        MR. SULLIVAN:  I'm sorry, Your Honor.  There are a

16   lot of documents.  If I could just have a moment to get set

17   up.

18        THE COURT:  No, that's okay.

19        THE WITNESS:  Is it --

20        THE COURT:  I'm --

21        THE WITNESS:  -- possible --

22        THE COURT:  -- assuming --

23        THE WITNESS:  -- Your Honor --

24        THE COURT:  -- you guys are going to confer and

25   move in evidence at the end.  Is that accurate?

49

1          MR. WAXMAN:  I think that's correct --

2          THE COURT:  Okay.

3          MR. WAXMAN:  -- Your Honor.

4          THE COURT:  That's --

5          MR. WAXMAN:  We still haven't discussed the

6    demonstrative exhibits, 1 and 67, at this point.  But I'm

7    sure Mr. Sullivan and I will discuss it.

8          THE COURT:  Okay.

9          THE WITNESS:  Your Honor, is it possible -- I left

10   a water bottle there.  Can I just grab it off the first row?

11         THE COURT:  Mr. Waxman will get it for you.

12         THE WITNESS:  Okay.  Thank you.

13         MR. WAXMAN:  If I may approach, Your Honor?

14         THE COURT:  Certainly.

15         THE WITNESS:  Thank you.  Thank you, Your Honor.

16      (Pause in proceedings)

17                        CROSS-EXAMINATION

18   BY MR. WAXMAN:

19   Q    I'm going to bypass some of the preliminary questions

20   with respect to your background and your involvement.  Mr.

21   Sullivan has already addressed those with you.

22        But I do want to go back to the underlying settlement

23   agreement, which I believe is Exhibit 12.

24   A    Okay.

25   Q    You were involved with that settlement?

1    A    I was.

2    Q    How were you involved with the drafting or negotiation

3    of the settlement?

4    A    The actual settlement, the terms of the settlement were

5    reached as part of mediation, and then drafts of the

6    settlement agreement went back and forth.  Our counsel would

7    get it, I'd provide comments to our counsel.  We would see a

8    revised draft.  I think there were two or three turns of a

9    draft of the agreement.  And then I signed the agreement.

10   Q    So you were very involved with respect to the

11   settlement, right?  Fair?

12   A    Yes.

13   Q    Was it your understanding that the settlement agreement

14   superseded the obligations, the debtor's obligations, under

15   the guarantee?

16        MR. SULLIVAN:  Objection.  General, seeks a legal

17   conclusion.

18        MR. WAXMAN:  I'm asking his understanding.  He was

19   the -- he helped negotiate it, he signed it.  If there's

20   anybody who's familiar with what it was intended to do, it

21   would be Mr. Sarrao.

22        MR. SULLIVAN:  It's stated as a complete general --

23   without specificity about what (indiscernible)

24        THE COURT:  I'm sorry, Mr. Sullivan.  I'm having

25   trouble hearing you.

1          MR. SULLIVAN:  Oh, I apologize.

2          The objection is that the question goes to a legal

3     conclusion about two documents in their entirety.  So I think

4     this witness may not be qualified to answer the ultimate

5     question of a legal nature.

6          MR. WAXMAN:  Your Honor, this was -- first of all,

7     Mr. Sarrao was counsel and he was -- helped negotiate it and

8     he signed it.  As an officer and general counsel of the

9     company.  If there's anybody who understands what I was

10    intended by the parties, this is the witness who would do so.

11         THE COURT:  Yeah.  I'm going to overrule the

12    objection.  He can testify to his understanding.

13         THE WITNESS:  Yes, that was my understanding and

14    it's included in the language of the document, as well.

15    BY MR. WAXMAN:

16    Q    I'm going to refer you to Paragraph 19 of the agreement.

17    A    Okay.

18    Q    This --

19         THE COURT:  Oh, are we talking about the settlement

20    agreement?

21         MR. WAXMAN:  Yes.

22         THE COURT:  Okay.

23         MR. WAXMAN:  Yes, Your Honor, which is Exhibit 12.

24    BY MR. WAXMAN:

25    Q    Can you please read that for the Court?

52

```
1    A    Okay.  It starts with 19:
2              "Entire Agreement.  This agreement and the exhibits
3              attached hereto set forth the entire agreement
4              between the parties and fully supersede any and all
5              prior agreements or understandings, written or
6              oral, between the parties."
7    Q    Okay.
8    A    And then it --
9    Q    You can --
10   A    -- goes on about --
11   Q    You can stop.
12   A    -- counterparts and --
13   Q    You can stop.
14        So, based upon that, all of the company's obligations,
15   as you understood it, ran through this agreement, correct?
16   A    Correct.
17   Q    In connection with the settlement, was anybody other
18   Alecto -- by that, I mean the debtor -- responsible for
19   payments to LHP?
20   A    Yes.  There is Alecto Healthcare Services Sherman, LLC
21   and Sherman/Grayson Hospital, LLC.
22   Q    And either one of those entities could have remitted
23   payment to LHP, correct?
24   A    They could have, yes.
25   Q    And what would the effect of that have been on the
```

53

1    debtor's operations?

2    A    It would have reduced -- it -- depending on the amount

3    of the payment, it would have reduced or eliminated the

4    obligation, the monetary obligation.

5    Q    On a dollar-for-dollar basis?

6    A    Yes.

7    Q    Was the debtor automatically obligated to make all

8    payments to LHP?

9    A    No.

10   Q    And what are you basing that answer on?

11   A    We looked at -- I think we looked at it with Mr.

12   Sullivan.  If we look at Paragraph 6 of the settlement

13   agreement, there is a -- conditions that have to be met.

14   Q    And that would be the written demand and then the timing

15   for the 15 days for payment?

16   A    Correct.

17   Q    At -- before we move on, I want to move to Paragraph

18   6(a) as in apple.  Can you read 6(a), please?

19   A        "LHP shall make written demand upon the Alecto

20            Defendants for a specified amount in accordance

21            with the forbearance schedule set forth in

22            Paragraph 8."

23   Q    "Specified amount."  I want to talk about that for one

24   second because there could have been specific amounts, at

25   least in theory.

1      Did the amounts, month by month, under -- with -- of the

2  obligations to LHP?

3  A    Some -- well, the -- the rent under the leases had

4  slight increases, so it changed month to month.  And then the

5  records LHP produced show that there's a fluctuation in the

6  amounts, yes.

7  Q    What are the components for the underlying obligation --

8  the underlying obligations under the lease?

9  A    There's the base rent and there's also CAM charges, or

10  the percentage of CAM charges assigned to each lease.

11  Q    All right.  I want to refer you to -- and give me just

12  one second here.  I apologize.

13      (Pause in proceedings)

14  Q    I'm just going to ask you to turn to para -- Document

15  Number 45.

16  A    Okay.

17  Q    And I'm ask -- and please turn to Page 2.  That's the

18  underlying tenant statement.

19  A    Okay.

20  Q    What is -- what's the first line?  We'll start off with

21  the first line.  It's $19,221.

22  A    That's -- my understanding is that's the -- that would

23  be the base rent.  It's a rental rate times the square

24  footage of the space.

25  Q    Okay.  What's the line after that?

1   A    It's the estimated CAM charge for that lease.

2   Q    Okay.  Just looking down this one sheet, you'll see five

3   rents and five estimated CAM charges.  Is that correct?

4   A    That's correct.

5   Q    Okay.  What is the -- let me back up.

6        The estimation.  Was there a subsequent true-up that was

7   done in connection with the underlying leases for that CAM

8   charge?

9   A    Yeah, there's a -- there's a -- there is a -- there is a

10  true-up, there's a mechanism for a true-up in the leases.

11  And in the documents that I saw just last -- you know, I

12  guess Saturday, I said -- there are some letters in there

13  about a true-up like for 2020 and 2021.

14       But there's a true-up each year because they're

15  estimates is what you're paying, and then there's a true-up

16  against that.

17  Q    So why didn't the settlement agreement specify the

18  amount of the claim, rather than having the specific amount

19  (indiscernible)

20  A    Because we didn't know what -- we didn't know what the

21  amount of the claim is because the CAM charges are estimated.

22       We don't know what's going to happen with respect to re-

23  letting the premises, as well, and it's -- it's variable.

24  Q    And after the settlement agreement was reached and the

25  payment was made, did you receive any demand from -- did

1   Alecto Healthcare, the debtor, receive any demand from LHP

2   prior to the petition date?

3   A    The debtor did not receive any demand.

4   Q    Is there any way, without that demand, that you could

5   have realized -- that you could have known the total amount

6   of the rent, including the CAM charges?

7   A    No.

8   Q    Having had a chance to review, since that point, the

9   underlying invoices that were provided by LHP, do you have an

10  estimate as to the percentage of what the CAM charges are

11  relative to the amount of the base rent?

12  A    Well, the -- of the total amount, it's about 30 -- it's

13  about 35 percent.

14       So like, if we're looking at this invoice, it's right

15  around eighty-three or $84,000.  So, of the total -- of the

16  total invoice -- and this one would have been covered by the

17  settlement.  But it's like $84,000 of the total -- the

18  balance -- the total due was two twenty-six and about eighty-

19  three or $84,000 was the CAM charges, so about 30 -- 30

20  percent of those --

21  Q    All right.

22  A    -- maybe a little --

23  Q    Let's --

24  A    -- bit more.

25  Q    Let's move to one that's afterwards, to make sure that

1    we're talking about something which is relevant.  Let's move

2    to Exhibit 49.

3    A    Okay.

4    Q    And I'd ask you to look at the second page.

5         And is this approximately the same thing as with Exhibit

6    46?

7    A    Correct.  The amount is slightly less, but the overall

8    CAM charges are roughly the same number.  So whatever eighty-

9    three or 84,000 divided by two twenty-five is.

10   Q    And again, this is after the settlement agreement,

11   correct?

12   A    Correct.  The settlement agreement was in February of

13   2022.

14   Q    So this is more reflective of what the underlying

15   amounts were.

16   A    Correct.

17   Q    Who would have received the demand notices from LHP?

18   A    They would have been sent to -- to Alecto, to my

19   attention as the general counsel, and then to our counsel in

20   Texas, our local counsel in Texas, Hallett & Perrin.  That's

21   per the confidential settlement agreement.

22   Q    And would counsel have sent it to you?

23   A    Yes.

24   Q    And did you receive anything prior to the petition date?

25   A    No.

1    Q    Did you receive anything after the petition date?

2    A    For the debtor, no.

3    Q    Who did you receive it for?

4    A    There was a demand to Alecto Healthcare Services

5    Sherman, LLC in late June, I think the 28th or 29th.

6         MR. WAXMAN:  If I could have just one moment, Your

7    Honor.  I'll have to get back to it in a moment.

8    BY MR. WAXMAN:

9    Q    Prior to that July -- June 28th or 29th letter, did you

10   or anybody else at the debtor have any reason to know the

11   amount due to LHP?

12   A    No.

13   Q    What's the current status of the underlying properties?

14   A    They're -- I mean, the building still -- the building

15   still exists, the building is still there.  Sherman/Grayson

16   Hospital doesn't occupy space.  I know Sherman M.D. Provider

17   doesn't.

18        So the building, roughly about 75 percent is covered by

19   these leases and 25 percent was not covered by these leases,

20   so there are some tenants in there.

21        I think there's one tenant -- I don't know if they're

22   still there or not -- that was brought in as a sub-lessee of

23   Sherman M.D. Provider, I think.  And then they ended up

24   paying rent directly to Altera.  I don't know if that tenant

25   is still there.

1       But a lot of the space is still -- as I understand it,

2   is empty.

3   Q    So, if the property is laying fallow, so to speak, at

4   any given time, there could be new tenants that move in,

5   correct?

6   A    Correct.

7   Q    And if that were the case, what would that do to the

8   debtor's and, in fact, all of the purchasers' liabilities?

9   A    It -- it would reduce it.

10  Q    Do you know if LHP has pressed the landlord about

11  mitigation of damages through re-letting?

12  A    I don't know if they've had any discussions with the

13  landlord.

14       (Pause in proceedings)

15  Q    Did anybody from LHP contact you immediately after

16  filing?

17  A    No.  Their counsel may have contacted counsel, but not -

18  - certainly not me.

19  Q    So you would not have had a reason to know what the

20  amount was even after the petition date, until June -- the

21  June 28th letter.  Is that correct?

22  A    That's correct.

23       MR. WAXMAN:  If I could have just one moment, Your

24  Honor.

25       (Pause in proceedings)

 1          MR. WAXMAN:  Your Honor, I don't believe I have

 2    anything further --

 3          THE COURT:  Okay.

 4          MR. WAXMAN:  -- for Mr. Sarrao.

 5          THE COURT:  Thank you.

 6          Mr. Sullivan?

 7          MR. WAXMAN:  Before I -- I do reserve the right to

 8    recall Mr. Sarrao on direct, Your Honor.

 9          MR. SULLIVAN:  Briefly, Your Honor.

10          Mr. Sarrao, let me --

11          THE COURT:  Wait.

12          MR. SULLIVAN:  -- refer you --

13          THE COURT:  So can -- before we start -- I'm sorry,

14    Mr. Sullivan.

15          Are you taking the position that what you just did

16    was the debtor's direct exam of Mr. Sarrao?

17          MR. WAXMAN:  That was the cross-exam -- sorry.

18    That was the debtor's cross-examination, after the Reed

19    Creditors did their direct.

20          THE COURT:  Okay.  I was wondering --

21          MR. WAXMAN:  That was called by Mr. Sullivan as

22    part of his case-in-chief.

23          THE COURT:  Okay.  I -- that's how I understood it,

24    and then I was confused by your comment.

25          MR. WAXMAN:  No, that -- Your Honor, we're

1    reserving our right to call him on -- as direct.  I don't

2    think it will be necessary, but ...

3                        REDIRECT EXAMINATION

4    BY MR. SULLIVAN:

5    Q    Mr. Sarrao, let me refer you to the settlement agreement

6    that you were talking about with your counsel, which is

7    Exhibit 12.

8    A    Okay.

9         (Pause in proceedings)

10   Q    So there are two release provisions contained in this

11   agreement, correct?

12   A    (No verbal response)

13   Q    Paragraphs -- I'm referring to Paragraph 3 and Paragraph

14   4.

15   A    That's correct.

16   Q    Okay.  So Paragraph 3 is an LHP release, where it

17   releases Alecto, right?

18   A    And a bunch of other affiliates and parties and all the

19   standard release language you have, yes.

20   Q    But for purposes of this matter, let's just restrict it

21   to the debtor.

22        And the scope of -- what it's being released from is

23   generally defined on Page 3, in the third line, right?  It's

24   the Delaware action and the current damages in the Texas

25   action, correct?

62

1    A    Correct.

2    Q    And then it says, right after that, that future expenses

3    are excluded from the release, correct?

4    A    That's correct.

5    Q    All right.  And then the debtor also made a release, and

6    it released claims against LHP from the debtor act -- from

7    the Delaware action and the Texas action, including a

8    counterclaim that was made in the Delaware action, correct?

9    A    That's correct.

10   Q    All right.  Is it your contention that Paragraph 19,

11   which is identified as entire -- the "entire agreement

12   clause," that that supersedes and eliminates the purchase

13   agreement?

14   A    It supersedes any and all prior agreements or

15   understandings.  It doesn't limit it to anything, so yes.

16   Q    So it's your opinion that this entire agreement clause

17   releases any obligations under the purchase agreement.

18   A    Yes.

19   Q    And also -- and that's -- the purchase agreement is

20   Exhibit 11.

21       And then Paragraph 14, the guarantee.  It releases the

22   guarantee?

23   A    Yes.

24   Q    And Paragraph 15, the assignment and assumption of

25   leases.  It releases those?

63

1    A    Exhibit --

2    Q    The assignment -- does it release the assignment and

3    assumption of leases?

4    A    Releases -- it --

5    Q    Okay.

6    A    -- supersedes all the agreements, so that it would

7    supersede that, yes.

8    Q    Okay.  And does it say that anywhere in there --

9    A    Yeah.

10   Q    -- (indiscernible)

11   A    It says:

12           "-- supersede any and all prior agreements or

13           understandings, written or oral, between the

14           parties."

15   Q    Okay.  It doesn't say -- it doesn't reference any

16   specific agreement that is now nullified, correct?

17   A    Correct.

18        And likewise, it doesn't limit to a subject matter or a

19   topic, either.

20   Q    Right.  And in your experience, isn't this clause

21   generally incorporated to prevent drafts or discussions of an

22   agreement from being relied on when you get to a final

23   agreement?

24   A    There's all kinds of reasons this provision is included.

25   And if you wanted to rely on it and relate it to a

1     settlement, then you typically add a phrase any and all prior

2     agreements or understandings, written or oral, between the

3     parties related to the topic of this agreement.  That's not

4     here.

5          My understanding was they were resetting the

6     obligations.  LHP got more than they had.

7     Q    What do you mean "LHP got more than they had"?

8     A    Well, prior to the settlement agreement, they didn't

9     have an ability to go confess judgment.  They didn't have a

10    guarantee from Sherman/Grayson Hospital, LLC.  They didn't

11    have a direct claim against Sherman/Grayson Hospital, LLC.

12    The settlement agreement provides -- provides LHP with those.

13    Q    That's right.

14         And they also didn't get the full amount of the claim

15    that they made in the complaint, as is -- as part of the

16    settlement agreement, correct?

17    A    And they also got a release from the counterclaims.

18    Q    Right.

19         So they took less, they got a release from all future

20    counterclaims, and they have a confessed judgment right with

21    respect to future action, which they agreed to handle in

22    accordance with a timing provision of the forbearance

23    agreement, correct?

24    A    I disagree with you on "handle" for the timing

25    provision.

1    But there was a tradeoff as part of the settlement

2   agreement that was negotiated as part of a mediation.

3   Q    All right.  And isn't the change in the procedures

4   really a change in the purchase agreement, in Section 9.5,

5   where it says "for indemnification claims."  So isn't what

6   that is intended to --

7   A    No.

8   Q    -- replace?

9   A    It supersedes -- it intends to reset the -- the

10  obligations.  It relates to the -- this supersedes all the

11  agreements.

12  Q    All right.  Let's move to the next issue, which is you

13  said Alecto Healthcare Sherman or Sherman/Grayson Hospital

14  could have made a payment from February 17th, 2022 to the

15  petition date, which is why you couldn't say whether they

16  didn't or not, correct?

17  A    I'm not sure of the second phrase.

18       But they could have made a payment, yes.

19  Q    Okay.  The question is:  Did they?

20  A    I don't believe so, no.

21  Q    All right.  And did you know that on the petition date -

22  -

23  A    That they had --

24  Q    -- that they did not make a payment?

25  A    I generally knew they had not made a payment, but I

1  didn't know if LHP had made a payment, either.

2  Q    Okay.  I'm just talking about Alecto Sherman and

3  Sherman/Grayson Hospital.

4       You knew that neither one of them had made a payment as

5  of the petition date, correct?

6  A    I don't know if I thought that specific question, did

7  they make a payment.  I don't believe they made a payment and

8  I don't think I would have thought differently, that they had

9  made a payment.

10  Q    Okay.  Are you familiar with the periodic report of

11  value tat we have prepared in this case for the subsidiaries

12  of the debtor and filed in this case?

13  A    The -- it's one of the schedules or there's a document.

14  I -- I don't know the title of it, that's what confuses me.

15  But I know there was a form filed out with respect to the --

16  I think the different subsidiaries, I believe.  I just forget

17  the name on the form.

18       MR. SULLIVAN:  Your Honor, I would like to provide

19  the witness with a copy of the document that I'm going to

20  refer to, and I can provide the Court a copy, as well.

21       THE COURT:  Yes, please.  Thank you.

22       (Pause in proceedings)

23       MR. SULLIVAN:  Oh, I'm sorry.  I have another one.

24       THE COURT:  Pardon?

25       MR. SULLIVAN:  I have -- I said (indiscernible)

1          THE COURT:  Oh --

2          MR. SULLIVAN:  (Indiscernible)

3     BY MR. SULLIVAN:

4     Q    Okay.  So, Mr. Sarrao, the document we're looking at is

5     document number -- Docket Number 79 from the debtor's case,

6     which was filed on July 18th of 2023.  And you signed it on

7     Page 2 of the document, correct?

8     A    That's correct.

9     Q    Okay.  And so included here are information relating to

10    subsidiaries, correct?

11    A    Yes.

12    Q    All right.  And so let's look at Page 11 of 117.

13    A    Okay.

14    Q    And that's part of Tab 2.  And this is financial

15    statements for Alecto Healthcare Services Sherman, LLC.  Do

16    you see that?

17    A    I do.

18    Q    Okay.  And then -- so let's go to Page 16.

19    A    You're looking at the top, Mr. Sullivan?

20    Q    Yes.

21    A    Okay.

22    Q    So you've got Alecto Healthcare Services Sherman, LLC's

23    year-to-date income statement, dated December 31st, 2022.  Do

24    you see that?

25    A    I do.

1    Q    Okay.  And if we look at Sherman gray -- there's a

2    column for Sherman/Grayson Hospital, Sherman M.D., and

3    Anesthesia, correct?

4    A    Correct.

5    Q    And I want to take you down to operating expenses using

6    -- on the left.  Do you see that?

7    A    I do.

8    Q    All right.  And then drop down to rents and leases.  Do

9    you see that?

10   A    I do.

11   Q    So the total paid for the year for rents and leases was

12   $200,000 and 19 -- $200,019, correct?

13   A    That's correct.

14   Q    Okay.  And that's less than the monthly obligation that

15   LHP paid to Altera based on the documents in this Court,

16   correct?

17   A    It's less than the monthly invoice, yes.

18   Q    Okay.  And this is -- we're looking at an income

19   statement for the year of 2022, correct?

20   A    That's correct.

21   Q    And the debtor had other -- or Sherman/Grayson Hospital

22   had other obligations for rent, other than to Altera,

23   correct?  It (indiscernible) have obligations to the secured

24   creditor in this case.

25   A    Yeah.  But that rent is listed below under nonoperating

1    expenses.  You're talking to M-P -- about MPT.

2    Q    Right.

3    A    That's not included.  There's a separate line item for

4    MPT.

5    Q    All right.  So does reviewing this year-to-date income

6    statement from December 31st of 2022 confirm your belief

7    that, neither Sherman/Grayson Hospital, nor Alecto Sherman

8    made a payment to Altera of the rent for the leases in the

9    medical office building?

10   A    Well, it confirms that roughly $200,000 was paid in

11   rents and leases and nothing --

12   Q    And --

13   A    -- nothing -- nothing more than that.

14   Q    Okay.  But you don't even know that that $200,000 was

15   paid to Altera or to another entity, correct?

16   A    I don't know.

17   Q    Right.  Okay.

18        And then, for the statement dated March 31st of 2023,

19   which is the next page, again, if you drop -- this is a year-

20   to-date income statement for the first quarter of 2023.  The

21   rents and leases, the total paid is 69,000 among the three

22   entities, correct?

23   A    That's correct.

24   Q    And that would be less than a monthly payment.

25   A    It would be less than the monthly invoice, correct.

70

1   Q    Okay.  Does that refresh your recollection that, neither

2   Sherman/Grayson Hospital, nor Alecto Sherman made payments to

3   Altera of any of these lease obligations?

4   A    Yeah, but I -- I don't know what's included in that

5   number.  But it -- it suggests to me that my belief is

6   correct that I did not believe that payments were made to

7   Altera Highland.

8   Q    Okay.  And these documents were available to you on the

9   petition date, correct?

10  A    I'm not sure if the March 31, 2023 were available on the

11  petition date because they were having issues with the IT

12  system and -- when they were produced.  But 2022 would have

13  been.

14  Q    Okay.  With respect to the June 28th demand letter from

15  LHP to Alecto Sherman, do you know when it was received?

16  A    I believe it was July 5th or July 6th.  It -- I think

17  they sent it by certified mail, and sometimes there's a delay

18  when certified mail comes.

19  Q    And was it forward to you?

20  A    It was.

21  Q    Okay.  And when you received it, did you have an

22  understanding that, based on the demand letter, LHP had paid

23  the amount of -- set forth in the letter prior to the

24  debtor's filing for bankruptcy?

25  A    Well, when I received the demand letter, that was

1  certainly their assertion, that they had -- they had paid

2  that.  I didn't see any backup or any of the backup that we

3  have -- the backup that the exhibits are.

4  Q   Okay.  And now that you've seen the backup, do you

5  understand that LHP has paid that amount prior to the

6  petition date?

7  A   Well, we say L-H -- the one question I said -- I think I

8  said early on is -- because it's redacted, which I understand

9  why -- I don't know if it's LHP that paid it, Ardent that

10  paid it, or a different entity that paid it.  But I certainly

11  know that group of companies appear to have paid it, based on

12  the wire forms.

13  Q   And LHP has stated in its proof of claim submitted under

14  penalty that it is owed that amount, correct?

15  A   I'd have to look at their proof of claim, but I'm not --

16  they say they're owed 3.7 million and change in their proof

17  of claim, yes.

18          MR. SULLIVAN:  Nothing further, Your Honor.

19          THE COURT:  Just for purposes of the record, let's

20  marked 4426 or Docket Number 79 as Exhibit 68.

21          MR. SULLIVAN:  Yes.  Thank you, Your Honor.

22      (Statements at Docket Number 79 marked Exhibit 68 for

23  identification)

24                    RECROSS-EXAMINATION

25  BY MR. WAXMAN:

1  Q    I only have a couple of questions for you, Mr. Sarrao.

2       First, can you open -- can you flip to Exhibit 13.

3  A    Okay.

4  Q    Is that the letter that Mr. Sullivan and I were both

5  referencing earlier, the demand?

6  A    Yes.

7  Q    And what's the date of that?

8  A    June 28, 2023.

9       (Participants confer)

10 Q    Can you go down to the third paragraph --

11 A    Okay.

12 Q    -- of that letter, starting off with "LHP"?

13      Can you read that, please?

14 A    Yes.

15           "LHP is not, by this letter, making demand under

16           the agreement or otherwise on Alecto Healthcare

17           Services, LLC, the Debtor in Case Number 23-10787,

18           or Sherman/Grayson Hospital, LLC, the Debtor in

19           Case Number 23-10810" --

20 Q    Okay.  That's good.  Thank you.

21      Putting aside the legal issue of whether or not the

22 proof of claim counts as a demand for purposes of the

23 settlement agreement, has any demand ever been made of

24 Alecto?

25 A    Not since the settlement agreement, no.

1    Q    I also want to go back to the issue of the CAM charges

2    and the reconciliation.

3         Can you open the binder to Exhibit 54?

4         (Pause in proceedings)

5    A    Okay.

6    Q    And go to the third page (indiscernible) third page.

7    And it is dated July 7th, 2022?

8    A    Yes.

9    Q    Have you had a chance to review this invoice?  I know

10   you only received these on Saturday.

11   A    I looked at all of the invoices, yes.

12   Q    Okay.  This is the -- is this the CAM reconciliation for

13   the prior year?

14   A    For 2021, yes.

15   Q    Okay.  And what's the date that this reconciliation

16   apparently occurred?

17   A    July 7, 2022.

18   Q    Okay.  So what was the debtor's petition date?

19   A    June 28 -- or June 16th, 2023.

20   Q    So, if this is an annual reconciliation, is it fair to

21   say that the next reconciliation would have been in July of

22   2023 --

23   A    Yeah, late --

24   Q    -- after the petition date?

25   A    Late June or early July of 2023, for -- for 2022.

1    Q    And the amount here is 965,000.  Do you have any reason

2    -- approximately.  Excuse me.  (Indiscernible) share is

3    approximately 966,000.

4        Do you have any reason to believe that the amount

5    between 2022 and 2023 is significantly different?

6    A    It -- again, there -- there was one tenant that came

7    into the space.  And if there paying a portion of the CAM

8    charge, it could -- it could reduce that, I don't think

9    significantly.

10        The other part is that the property taxes got reassessed

11    to go lower because that's part of the CAM charges.

12    Q    There could be more than one new tenant, correct?

13    A    There could be, yes.

14    Q    You haven't been to the facility in the last six months.

15    A    No, I have not.

16        MR. SULLIVAN:  I have no further questions, Your

17    Honor, of Mr. Sarrao.

18        THE COURT:  Mr. Sullivan, do you have any final

19    questions?

20        MR. SULLIVAN:  No, Your Honor.

21        THE COURT:  Okay.  Mr. Sarrao, you are excused.

22        THE WITNESS:  Thank you.

23    (Witness excused)

24    (Participants confer)

25        MR. SULLIVAN:  Your Honor, I don't have any more

1    evidence with respect to the motion or objection.

2              THE COURT:  Okay.  Anything on behalf of the

3    debtors?

4              MR. WAXMAN:  No, Your Honor.  Although it might be

5    a good idea for us to take a break, so that we can go through

6    the exhibits before going to oral argument.

7              THE COURT:  Yeah.  Why don't we take a break to

8    1:30.  That will give you time to do lunch and go through

9    exhibits.

10             MR. SULLIVAN:  Thank you.

11             THE COURT:  Okay.  So we're going to stand in

12   recess until 1:30.  Thank you.

13             UNIDENTIFIED:  Thank you.

14        (Luncheon recess taken at 11:53 a.m.)

15                    <u>AFTERNOON SESSION</u>

16        (Proceedings resume at 1:36 p.m.)

17             THE COURT:  Be seated.

18             We're back on the record on Alecto Healthcare.

19        **(No Recording Microphones at Counsel Table and Lectern)**

20             MR. WAXMAN:  Good afternoon, Your Honor.  Jeff

21   Waxman of Morris James.

22             I believe that we have conferred.  There's a bit of

23   a difference with respect to two, I guess summary documents.

24   I don't think the debtor has -- and this is 1 and 67.  I

25   don't think the debtor has any opposition to Your Honor

1    reviewing those documents.  These are summaries of

2    information that are contained in the other documents both

3    created by Mr. Sullivan.

4            THE COURT:  Uh-huh.

5            MR. WAXMAN:  We are not saying that anything is

6    necessarily wrong with them, but the better evidence is

7    simply the documents that the information is contained in.

8    But we certainly don't want to stop Your Honor from using

9    something, to the extent that Your Honor thinks is easier for

10   Your Honor to use, consider, et cetera, just that the primary

11   evidence for both of those is the underlying documents.  And

12   certainly, if Mr. Sullivan disagrees, he is welcome to say

13   so.

14           The only other thing I would point out is there are

15   certain documents that are in here, specifically proofs of

16   claim, and the debtor has not object to proofs of claim.

17   There are claims that are going to be objectionable,

18   particularly Number 18, which the debtor completely disagrees

19   with.  But Your Honor can certainly consider them.  They were

20   not scheduled.  The debtor does not believe that it was

21   liable for that on the date.

22           But it's 245,000, I believe.  That's not going to

23   make a difference, insofar as the threshold is 7.5 million,

24   and it's 7.8 without it and 8 point something with it.  So

25   this is really going to fall, as Your Honor noted at the

1    beginning, on the LHP claim that Your Honor has heard a

2    couple of words about earlier.

3            THE COURT:  Okay.

4            MR. WAXMAN:  Mr. Sullivan disagrees (indiscernible)

5            MR. SULLIVAN:  Your Honor, with respect to the

6    summaries, we did page through the evidence book in your

7    absence, we believe they're covered by Rule 1006, summaries

8    to prove content.  And (indiscernible)

9            THE COURT:  I'm sorry.  What rule?  I'm sorry.

10           MR. SULLIVAN:  Rule of Evidence 1006.

11       (Pause in proceedings)

12           MR. SULLIVAN:  So the rule does require that the

13   documents that are summarized are made available, and it says

14   the Court may order the proponent to produce them in court.

15   Here, all of the documents that are summarized are in the

16   binder --

17           THE COURT:  Right.

18           MR. SULLIVAN:  -- and being produced.  So we think

19   that the summaries are admissible.  And I just -- I mention

20   that because I don't think there should be any restriction on

21   the Court's reliance on them.

22           MR. WAXMAN:  Your Honor, I think Rule 1006 speaks

23   for itself.  The proponent may use a summary chart or

24   calculation to prove the content of voluminous writings that

25   cannot be conveniently examined in court.  These documents

1    can be conveniently examined in court.  They aren't that

2    voluminous.  They fit into two binders and Your Honor has

3    copies of all of them.

4            But again, Your Honor, this is -- we're not arguing

5    about this.  If Your Honor finds it more convenient to look

6    at two spreadsheets, we're certainly not going to make Your

7    Honor's life more difficult.

8            THE COURT:  Well, I can assure you that I'm going

9    to look at the underlying documents --

10           MR. WAXMAN:  I --

11           THE COURT:  -- so --

12           MR. WAXMAN:  I have -- Your Honor, I have no doubt

13   about that.  And we -- again, we're not objecting to that.

14   We just want to raise the point that, if there's the two

15   available, the best evidence is.

16           THE COURT:  Are you objecting to the content?  I

17   guess I'm trying to -- I am trying to determine what your

18   objection is, Mr. Waxman, because --

19           MR. WAXMAN:  You know, I will confess I'm standing

20   here and trying to figure it out.  I just don't know what

21   I've gone back through and checked to make sure that

22   everything adds up correctly.

23           THE COURT:  Well --

24           MR. WAXMAN:  I mean, I presume that it does.

25           THE COURT:  Well, why don't I do this?  Are you

1   agreeing to the admission of all other documents?

2           MR. WAXMAN:  Yes.

3           THE COURT:  So why don't I just admit everything

4   else and rely on Exhibit Number 1 and 67 as a demonstrative

5   presented to the Court.

6           MR. WAXMAN:  That's fine, Your Honor.

7           MR. SULLIVAN:  As long as you can rely on them,

8   Your Honor, so that you can look at them (indiscernible)

9   that's fine with me.

10           MR. WAXMAN:  We have no objection --

11           THE COURT:  No objection --

12           MR. WAXMAN:  -- to your looking at them.

13           THE COURT:  All right.

14           MR. WAXMAN:  I will --

15           THE COURT:  I've deemed this resolved.

16           MR. WAXMAN:  I --

17           MR. SULLIVAN:  Okay.

18           MR. WAXMAN:  Your Honor, we're not trying to be

19   overly pugilistic or difficult, particularly if there's

20   something that makes Your Honor's life easier, then that's

21   fine.

22       (Exhibits 2 through 66 received in evidence)

23       (Exhibit 68 received in evidence)

24           MR. WAXMAN:  I think, with that, Your Honor --

25           THE COURT:  Okay.

1    MR. WAXMAN:  -- unless there's anything further, I

2  think we can proceed to closing.  And again, this is the Reed

3  Creditors' motion, so I think it's appropriate for them to

4  get in the batter's box first.

5    THE COURT:  Okay.  Can you bear with me just a

6  second, Mr. Sullivan?  Are you going to refer to exhibits?

7    MR. SULLIVAN:  A few.

8    THE COURT:  You may.  I just want to --

9    MR. SULLIVAN:  A few, Your Honor.

10    THE COURT:  Okay.  Let me just get --

11    MR. SULLIVAN:  I'm not -- certainly not 67.

12  (Laughter)

13    THE COURT:  Let me just get to a point where I can

14  easily access them.  Okay.

15    MR. SULLIVAN:  Thank you, Your Honor.  For the

16  record, Bill Sullivan of Sullivan Hazeltine Allinson on

17  behalf of the Reed Creditors.

18    Your Honor, we spent a fair amount of time this

19  morning on the underlying documents, and that's important

20  because the underlying documents establish what needs to be

21  established here, and that the claim of LHP is liquidated and

22  non-contingent.

23    But in summary of the critical provisions, under

24  the purchase agreement, Section 9.3(e), Alecto Sherman is

25  liable to LHP for any damages sustained by LHP with respect

1    to LHP's guarantee of the Sherman/Grayson Hospital leases,

2    the five leases assigned to Sherman/Grayson Hospital.  So

3    that's point number one.

4         The debtor is unconditionally and absolutely liable

5    to LHP for the same damages under its guarantee, and that's

6    at Paragraph 1 of the guarantee, dated September 23rd, 2024

7    [sic], where it says:

8              "The guarantor hereby absolutely, unconditionally,

9              and irrevocably guarantees to the guarantee parties

10             the due and punctual payment, performance, and

11             discharge of each and every of purchaser's

12             obligations under the purchase agreement."

13        And to be clear, the purchaser is Alecto Sherman,

14   not a debtor.

15        The guarantee is a separate contract.  The case law

16   is -- makes that clear.  It's a separate obligation.  And we

17   referred in our reply, Your Honor, to Delaware law on

18   guarantees.  Delaware law applies here.  And there is two

19   cases we referred to, the Fanatics Retail case, which is a

20   2020 case from the District Court, and then the Ajax Rubber

21   case from a hundred years ago, in 2023 [sic], still good law.

22        But the Fanatics case makes it clear, in order to

23   prove and allow the LHP proof of claim, LHP would need three

24   things:

25             An absolute and unconditional guarantee.  They've

1    got that.

2          THE COURT:  But how -- let me -- can I stop you?

3    And I really hate to stop you in a three-prong argument --

4          MR. SULLIVAN:  I'm fine.

5          THE COURT:  -- but I'm going to do anyway.

6          MR. SULLIVAN:  I'm fine.

7          THE COURT:  How do I get past testimony that says

8    the guarantee and the purchase agreement were superseded by

9    the settlement agreement?

10         MR. SULLIVAN:  Well, that testimony is directly at

11   odds with the testimony of Mr. Sarrao at the 341 meeting.

12   It's also -- what Mr. Sarrao testified to is also

13   inconsistent with what LHP believes.

14         So let me refer you first to the LHP claim.  So

15   that's Exhibit 5.  And there is a summary of claim, and this

16   was submitted on August 14th, two years after the settlement

17   agreement.  And the summary of claim is really on -- it's

18   really three sentences.  And the first one introduces the

19   purchase agreement.  And the second sentence says:

20              "Under the terms of the purchase agreement, Alecto

21              Sherman agreed to indemnify and hold harmless LHP

22              Hospital Group, Inc. for any damages that it

23              suffered in connection with a variety of

24              circumstances described in the purchase agreement,

25              including certain obligations associated with the

83

1          medical office building."

2          And then the next sentence says:

3          "Alecto Healthcare Services, LLC, the debtor,

4          executed a guarantee in favor of LHP pursuant to

5          which it guaranteed Alecto Sherman's obligations

6          under the purchase agreement, including the

7          indemnification provisions of it."

8          LHP, in its current proof of claim, does not

9    reference the settlement agreement as the basis on which it's

10   asserting the claim.

11          We go to the 341 hearing transcript.  That's at

12   Exhibit 9, Your Honor.  The continued 341 meeting was held on

13   October 17th, 2023.  At Page 16 of that transcript, I asked

14   Mr. Sarrao about the LHP proof of claim.  And in Line 4, I

15   said:

16          "Okay.  So they have a three-sentence summary of

17   their claim.  I'm going to read one of the sentences."

18          And then I read the two sentences.

19          And at Line 16, I said:

20          "So are those statements accurate?"

21          And the answer was:

22          "Yes, there was the purchase agreement."

23          And he described the purchase agreement and the

24   space it was for.

25          And then, on the beginning of 17, he said:

1          "So those two statements are correct."

2          Mr. Sarrao didn't say, no, those two things are no

3     longer relevant, it's the settlement agreement that controls.

4     That was six weeks ago, Your Honor.  So Mr. Sarrao had

5     directly changed his testimony today from what he testified

6     to before we filed the motion.

7          Now I also want to refer to the context of the

8     settlement agreement.  So this is in the -- on the first

9     page.

10          THE COURT:  The recitals?

11          MR. SULLIVAN:  The whereas clauses, right.  So I'm

12     going to go -- one, two, three, four, five, six, seven -- the

13     eighth whereas clause says:

14          "Whereas, LHP expects to continue to accrue out-of-

15          pocket expenses payable to Altera for which Alecto

16          Healthcare Services Sherman, LLC has an obligation

17          to indemnify LHP under the operative agreements,

18          and the debtor has guaranteed those indemnification

19          obligations" --

20          And it calls those obligations the "future

21     expenses."

22          It doesn't say anywhere that they've decided to

23     replace --

24          THE COURT:  Well --

25          MR. SULLIVAN:  -- those --

1          THE COURT:  Well, in fact, doesn't it say, at the

2     final recital paragraph:

3               "The foregoing recitals are true and correct and

4               are hereby incorporated into this agreement by

5               reference."

6          MR. SULLIVAN:  Yes, it does, Your Honor.

7          THE COURT:  So what does that mean?

8          MR. SULLIVAN:  That means that the continued future

9     expenses arise out of the operative agreements.  That's what

10    that means.

11         And Section 6 through 9 talk about procedures to

12    deal with the future expenses.  Now this is after there has

13    been a lawsuit filed.  It's also -- putting it in context,

14    it's eight years after the original documents have been

15    filed.  It's also after Sherman/Grayson Hospital has turned

16    over the premises and is no longer in possession.  So there's

17    very little to dispute here.

18         And so what is clear from Paragraph 6, it says --

19    sixth line down:

20              "Accordingly, the Alecto Defendants agree to the

21              following procedure for payment of future

22              expenses."

23         So it is a procedure for payment of future

24    expenses.  It's a procedural change from Section 9.5 of the

25    purchase agreement, which is where there was a procedure for

1    indemnification before, at the time of the transaction that

2    included things that would be beyond just the lease issues.

3    (a), (b), (c), and (d) are things that probably were cleared

4    up within the first year after the purchase agreement was

5    entered.

6         But the point being is that there's a procedure

7    here to be applied going forward.  And the only reasonable

8    interpretation of that is that LHP gave up the right to

9    demand on a monthly basis.  The agreed to a forbearance where

10   they would -- after one year, they can make a demand; and

11   then, every six months, they can make a demand for payment.

12   So that avoided the uncertainty of getting repeated demands

13   every month throughout the year.

14        In exchange for that, LHP got a right to confess

15   judgment because the parties were no longer going to dispute

16   that the rent obligations were due.  And the only requirement

17   for it was to give a fifteen-day notice that this is the

18   amount due and, if you don't pay it in 15 days, we're going

19   to exercise our right to a confessed judgment.

20        To be clear, Paragraph 60 waives any defenses,

21   other than a miscalculation of the amount due.  It waives any

22   defense about failure to mitigate against LHP.  And that's a

23   recognition by the parties that LHP, who was also stuck with

24   this (indiscernible) is not going to pay more than it has to.

25   But if it does pay, the debtor is going to pay LHP back.

1          Now the bankruptcy process obviously creates

2     changes in what the parties and, you know, I guess agreed to

3     as procedures under an agreement.  And the bankruptcy process

4     supersedes Paragraphs 6 through 9.  Because of the automatic

5     stay, LHP can't issue a demand notice.  Because of the

6     automatic stay, LHP can't confess judgment.  The Bankruptcy

7     Code says, instead of whatever remedies you have, you have a

8     right to file a proof of claim, and if that claim is allowed,

9     you have a right to get paid under the plan.  So these

10     procedures really don't apply anymore.  It's the Bankruptcy

11     Code procedures that apply.  And all of this is a red

12     herring.

13          But if you take it to its extreme, L-H -- the

14     debtor's position is that LHP can't even prevail on its proof

15     of claim because they can't make a demand.  That's a

16     nonsensical position.

17          The evidence is clear, unequivocal, that LHP has

18     been damaged in the amount of $3.7 million, that it has paid

19     that amount on its guarantee, and the documents make the

20     debtor's obligation to pay that unequivocal and absolute.

21     And accordingly, it's appropriately included in the

22     calculation of the debtor's eligibility to be a Subchapter V

23     debtor.

24          I would step back for a second, Your Honor, because

25     I did take things out of order --

1           THE COURT:  Yeah.

2           MR. SULLIVAN:  -- based on the questions that you

3    asked.

4           THE COURT:  Please do because I think you were

5    going to talk to me about --

6           MR. SULLIVAN:  We don't --

7           THE COURT:  Delaware law and Ajax and -- yes.

8           MR. SULLIVAN:  The two questions before Your Honor

9    are really:  Are they -- is the LHP claim liquidated and is

10   it non-contingent?  Okay?

11          And so, with respect to whether it's liquidated, I

12   think we referred and the best reference in the reply was to

13   the Hall case, which is a 2023 case from the Bankruptcy

14   Middle District of Florida, 650 B.R. 595.  A debt is

15   liquidated if the amount owed is readily and precisely

16   determinable by reference to an agreement.  Debts under a

17   contract are generally considered liquidated even if they are

18   disputed.  That's at Page 599.  There's a number of cites

19   that go to that same proposition.  I don't think -- and they

20   make a contrast with personal injury claims, which are

21   clearly not (indiscernible)

22          So I don't think there's any dispute here that this

23   claim is liquidated, based on the documentation that we went

24   through and the calculations that were made and --

25          THE COURT:  Well, let me ask you about that.  Is

1    CAM liquidated?

2               MR. SULLIVAN:  Yes.

3               THE COURT:  And why?

4               MR. SULLIVAN:  So --

5               THE COURT:  Didn't I hear testimony that CAM is not

6    reconciled until approximately six, seven months after the

7    conclusion of the year?

8               MR. SULLIVAN:  Okay.

9               THE COURT:  It's June or July the next year for the

10   previous year.

11              MR. SULLIVAN:  Right.  So the lease provides -- and

12   the leases are in the record, 17 to 21; there's five leases.

13              THE COURT:  Uh-huh.

14              MR. SULLIVAN:  And all of them have a section for

15   CAM, which is Section 3.2, operating expenses.

16              And Your Honor has seen that they're billed as part

17   of the monthly amount and they're billed in an estimated

18   amount, which is covered by 3.21, which says:

19              "Tenant's pro rata share of operating expenses

20              shall be estimated by the landlord."

21              Right?

22              THE COURT:  So -- oh, go ahead.  I'm sorry.

23              MR. SULLIVAN:  Okay?  And then Section 3.23 says,

24   at the end of the calendar year, there's a reconciliation.

25   And if there's a balance due, the tenant has to pay it, and

1    if there's a balance owed, if they collected too much, the

2    landlord has the option of returning it or applying to the

3    next payment.

4              And Your Honor bear with me.

5         THE COURT:  No, certainly.

6    (Participants confer)

7         MR. SULLIVAN:  So there's a record about what

8    happened in 2022, Your Honor, and that's at Tab 64.

9    (Participants confer)

10        THE COURT:  61?

11        MR. SULLIVAN:  61.

12   (Participants confer)

13        MR. WAXMAN:  62.

14        MR. SULLIVAN:  Okay.

15        THE COURT:  You're looking at --

16        MR. SULLIVAN:  Okay.

17        THE COURT:  It's the attachment to 62?

18        MR. SULLIVAN:  I'm looking at -- yes, I'm sorry.

19   Exhibit 62.  So Exhibit 62, the fifth page is a letter dated

20   June 28th, 2023.  And it's the CAM reconciliation for the

21   2022 annual operating expenses.  And it says that the total

22   due to be returned is $32,985.80, and it says:

23             "A credit has been issued to your account and may

24             be taken with your next remittance."

25             So that credit goes to LHP for the next rent, which

1  may explain why there may be a difference in amount that LHP

2  pays.  But none of that benefits the debtor once LHP has paid

3  it, so --

4         THE COURT:  But it's your position that an estimate

5  that you paid throughout the year is a liquidated amount.

6         MR. SULLIVAN:  Yes.  It's called for in the lease,

7  it's specified in amount.  The fact that it's subject to

8  reconciliation doesn't mean that it's not liquidated.

9         And again, to the extent that there was a

10 reconciliation due in July or after the petition date, to the

11 extent that LHP overpaid, LHP would get a credit for its next

12 -- as part of its next amount due.

13        Your Honor, the -- one of the things that the Hall

14 case also says is that disputed debts are not excluded.  So,

15 if they dispute the amount, that doesn't mean it's excluded

16 from the calculation based on the amount due on the petition

17 date.  That's at Page 599 of the Hall case.

18        And on the contingency issue, the Hall case also

19 involved a guarantee.  And the issue there was whether the

20 individual debtor had executed a guarantee in her individual

21 capacity, in addition to a guarantee for the entity.  And

22 once the Court found that she had entered it in her

23 individual capacity, the Court found that the obligation was

24 non-contingent immediately because it was an unconditional

25 guarantee.

1          THE COURT:  Does it make a difference whether or

2   not there is a guarantee in this case?

3          MR. SULLIVAN:  I mean, if there is -- does it make

4   a difference?  If --

5          THE COURT:  So let's say there's no guarantee in

6   this case.  Let's say that the settlement agreement

7   superseded everything.  Based on the settlement agreement,

8   does the debtor still exceed the eligibility ceiling?

9          MR. SULLIVAN:  Yes.

10          THE COURT:  And why?

11          MR. SULLIVAN:  Well, it -- I guess the reason why

12   I'm hesitant on the premise is because, without the

13   guarantee, I don't know how you calculate the future

14   expenses, right?

15          Section 6 talks about a procedure for paying future

16   expenses.  But the settlement agreement itself doesn't

17   specify, other than say they're covered by the operative

18   agreements.

19          Now the point is, is that, if the settlement

20   agreement says that LHP can make a demand and they have to

21   pay, and the only thing they can do is say, well, maybe you

22   miscalculated, we've got evidence that LHP paid.  So there's

23   no dispute as to what they paid.

24          And as I indicated before, the demand and the

25   confession of judgment process go away in Bankruptcy Court.

1    It's a proof of claim process, that's a demand for payment in

2    bankruptcy that is, you know, the widely established and

3    recognized form of making a claim.  And it's -- and this --

4    it's appropriately considered by this Court in this context,

5    based on the cases that we've cited.

6         I also think, Your Honor, with respect to the

7    entire agreement clause, that the interpretation that somehow

8    all of these documents disappear is really a -- is really a

9    big a reach as I can see.  The entire agreement clause is a

10   customary clause in every contract that is made to prevent

11   discussions relating to the making of that contract or prior

12   drafts from being referenced once the document gets signed.

13   That's the general intent of that clause.

14        If the -- this confidential settlement agreement

15   was going to get rid of the guarantees and the obligations of

16   the purchase agreement, it would, at minimum, say it in

17   whereas clauses, but also should say it in the release

18   clauses where it says we're going to release the guarantee

19   and whatever and so nobody is confused about it.  The fact

20   that LHP believes it's still operable is strong evidence that

21   that's not an appropriate interpretation of the settlement

22   agreement under standard contract interpretation rules, it is

23   -- again, you know, the purchase agreement has more parties

24   than this.  The guarantee is really just signed by the

25   debtor.  Now two entities sign it as represent -- as the

1    parties that are being guaranteed and they're representative

2    of other parties.  But a guarantee is an instrument.  It's

3    really a one-party, one-way obligation.

4            So, Your Honor, for all of those reasons, the

5    argument that the guarantee and the purchase agreement no

6    longer apply does not hold water.

7            Your Honor, I did want to mention -- I think I did

8    talk about the Delaware law cases briefly.  But the Fanatics

9    Retail case said you need three things:

10           You need an absolute and unconditional guarantee,

11   which we have.

12           You need an underlying debt.  The payments by LHP

13   evidence that.

14           And you need the guarantee's failure to perform.

15   The debtor has acknowledged it hasn't made any payments, and

16   neither have its subsidiaries.

17           Based on those, the LHP claim is allowable in the

18   amount asserted right now.  But that isn't the standard, Your

19   Honor.  The standard is whether it's liquidated and non-

20   contingent.  Both of those are easily met under the

21   applicable cases.  And we ask Your Honor to grant the relief

22   requested in the motion.

23           THE COURT:  Before you sit down, based on your

24   clients' calculation, and assuming LHP has a claim of 3.7

25   million, as set forth on -- in the exhibits, what is the

1    dollar value in excess of the 7.5-million eligibility

2    ceiling?  What's the delta here, based on your calculation?

3              MR. SULLIVAN:  The delta between what?

4              THE COURT:  The delta between the --

5              MR. SULLIVAN:  Oh, the --

6              THE COURT:  -- 7.5-million --

7              MR. SULLIVAN:  The threshold?

8              THE COURT:  -- threshold and what the amount of

9    claims are.

10             MR. SULLIVAN:  We believe it's --

11             THE COURT:  Four mil -- I mean 400,000?

12             MR. SULLIVAN:  We believe it's $600,000 over

13   because of the claim filed by the ESPA, but --

14             THE COURT:  Okay.  All right.

15             MR. SULLIVAN:  That's the only difference.

16             THE COURT:  All right.

17             MR. SULLIVAN:  Right?  It's between four hundred

18   and $600,000.

19             But Your Honor, the -- I'm not sure that that

20   really matters, right?  I mean, the -- I think the Hall case

21   dealt with that, as well.

22             THE COURT:  Because your position is that the

23   entire claim is liquidated.

24             MR. SULLIVAN:  Of LHP?  Yes.  And once you're over

25   the threshold, you're over the threshold.

1          THE COURT:  Right.  It is a firm ceiling.

2          MR. SULLIVAN:  Yes.

3          THE COURT:  Let me ask you this.  I'm sorry.

4          MR. SULLIVAN:  Oh, I'm happy to --

5          THE COURT:  I may call you back up.

6          MR. SULLIVAN:  That --

7          THE COURT:  But --

8          MR. SULLIVAN:  You can.

9          THE COURT:  -- excluding CAM for 2023, does the

10    debtor exceed the 7.5-million-dollar threshold?

11         MR. SULLIVAN:  Your Honor, I didn't do that

12    calculation.

13         THE COURT:  Okay.  It's okay.  I ...

14       (Participants confer)

15         MR. SULLIVAN:  Your Honor, we believe -- well, if

16    you recall, the 2022 reconciliation involved a net of $32,000

17    that would be returned.  So, if it's in the same ballpark

18    this year, that -- it still doesn't get close to the

19    $400,000.

20         But the payment of CAM as part of the rent is a

21    requirement of the lease; it's not an optional issue.  So the

22    nature of the reconciliation process is unlikely to create

23    any sort of significant -- and I -- also, with respect to the

24    way that the landlord has handled it, the landlord says any

25    refund you get a credit against the next month.  It doesn't

1    benefit, it doesn't get paid back to LHP and reduce their

2    claim.

3              THE COURT:  Thank you, Mr. Sullivan.

4         (Pause in proceedings)

5              MR. WAXMAN:  Whenever you're ready, Your Honor.

6              THE COURT:  Give me one second.  Okay.

7              You may begin, Mr. Waxman.

8              MR. WAXMAN:  I'm sorry.  I couldn't hear you.

9              THE COURT:  I said you may begin --

10             MR. WAXMAN:  Oh --

11             THE COURT:  -- at your convenience.

12             MR. WAXMAN:  -- that's okay.  Thank you, Your

13   Honor.  May it please the Court, Jeff Waxman of Morris James

14   on behalf of the debtor.

15             Your Honor, there's a lot of ground that has been

16   covered, and I'm not going to go through the Alpha to the

17   Omega with respect to the facts.  I think Your Honor has a

18   very clear understanding of the facts (indiscernible)

19             I do want to flag a couple issues that Your Honor

20   has already addressed, in part.  And I want to be responsive

21   to what I think Your Honor's concerns are.  And I think Your

22   Honor has -- and I don't mean this to (indiscernible) with

23   the Court, but I think Your Honor has --

24             THE COURT:  Don't worry.

25             MR. WAXMAN:  -- (indiscernible)

1          THE COURT:  It doesn't work with me, anyway.

2          MR. WAXMAN:  And I already knew that Your Honor.

3    But I think Your Honor has actually put your finger on the

4    underlying issue.

5          Let me start off with the -- with one of the

6    questions that you asked and Mr. Sullivan attempted to

7    answer, but frankly, could not because there is no right

8    answer to this beyond what the clear language is, and that

9    was the question of superseding.  And I refer, of course, to

10   Exhibit 12.  This is the settlement agreement.

11         First, Mr. Sullivan, representing the Reed

12   Creditors, spoke to the intent of LHP.  There's no evidence

13   of what their intent is.  If there's any evidence, it's Mr.

14   Sarrao's testimony since he was involved in negotiating it

15   and signing it.  And his testimony from earlier today was

16   this was intended to supersede.

17         But were that not enough, the language in the

18   actual agreement says:

19              "-- fully supersedes any and all prior agreements

20              or understandings, written or oral, between the

21              parties."

22         It couldn't be clearer.  That is clear an

23   unambiguous.  It's not a bit -- it's not having to do with a

24   guarantee, it's not having to do with leases.  It is all

25   agreements between the parties are now superseded and they're

1    set forth in this agreement.

2         So all the arguments that the Reed Creditors have

3    addressed today that are based upon the underlying guarantee,

4    all the cases that are cited in the Reed Creditors' two

5    pleadings that deal with the guarantee are not applicable.

6         THE COURT:  But Mr. Waxman, how do I reconcile that

7    with the language that the recitals are true and correct and

8    are hereby incorporated into this agreement by reference?

9         MR. WAXMAN:  I don't understand what the issue --

10   they are true and correct.

11        THE COURT:  And they're incorporated into this

12   agreement.  What does that mean?

13        MR. WAXMAN:  That means that that is what happened

14   in the past.  That is the basis of what has happened.  That

15   does not -- but the actual agreement going forward, this is

16   the whereas, what has happened, but not what is going to

17   happen, what are the parties' rights going forward.  That is

18   clearly delineated, not in the whereas clause, but after the

19   now, therefore clause --

20        THE COURT:  Yeah, but --

21        MR. WAXMAN:  -- which is what's determinative of

22   the parties' going forward rights.

23        THE COURT:  But then why would the whereas

24   recitals, the next-to-the-last one on Page 1, reference the

25   future expenses that are in Part 6 of the settlement

1    agreement as -- and the operating agreements -- operative

2    agreement?  Sorry.

3    　　　　MR. WAXMAN:  Well, they are -- the foregoing

4    recitals were true.  There were underlying agreements.  There

5    were all the things that were set forth in the recitals.  LHP

6    did seek damages.  On January 21st, LHP did file a petition.

7    They sought recovery.  They seek recovery.  They seek

8    recovery.  They expect to continue.  They may continue to

9    accrue.  All those are correct, there's no question about

10   that.

11   　　　　The question is:  What are the parties' rights

12   going forward, and that's what the underlying agreement --

13   everything after the now, therefore, that's the parties'

14   rights from the date of the signatures and the execution of

15   this agreement.  And this agreement says everything that

16   happened in the past is the past, this is the rights that you

17   have going forward.

18   　　　　And Mr. Sullivan is absolutely correct, there was

19   give and take.  That's the part of any -- that's every

20   settlement that I've ever been a part of.  Somebody gives and

21   the other person gives something else.

22   　　　　In this case, there is a clear, unambiguous process

23   for when things come due, if they come due.  Paragraph 8 --

24   excuse me.  Paragraph 6.  Excuse me.

25   　　　　"LHP shall make written demand upon the Alecto

1          Defendants for a specified amount in accordance

2          with the forbearance schedule set forth in

3          Paragraph 8."

4          There's something that has to be done by LHP.  They

5    have to send the notice.  After that, there are 15 days; 15

6    days passes, then Alecto has to remit payment.  Until they've

7    made that demand, there's no obligation, there's no

8    obligation to pay, so there is a contingency there.

9          But in addition to that, there are other

10   contingencies, as well, because these are all premised upon

11   and (indiscernible) I'm getting some feedback so excuse me,

12   if I can move this away.  I don't know if it's picking it up.

13        THE COURT:  That could have been me opening my

14   binder, I may have --

15        MR. WAXMAN:  Okay.

16        THE COURT:  -- hit something.  I'm sorry.

17        MR. WAXMAN:  That's okay.  Your Honor, I just want

18   to make sure that the record is clear.

19        The other issue is there was at least one

20   subletting of the amount.  The debtor has no control to even

21   require the subletting.  But if subletting occurs, the amount

22   goes down.  These are all contingencies to the liabilities.

23        And as much as the Reed Creditors rely upon cases

24   that address -- excuse me -- that address the guarantees, it

25   just simply doesn't matter because of the provision that the

1     settlement agreement is the operative document.

2           Again, Your Honor, the -- and now I'm not sure if

3     I'm getting picked up by the -- good?  Thank you.

4           This is a relatively simple matter.  I know that

5     you've heard a lot of argument and you've gotten a lot of

6     documents.  But this is a straightforward legal issue under

7     Section 1182(1), whether or not, as of the date of the filing

8     of the petition -- and that's important, the date of the

9     filing of the petition -- or an order of the date -- or of

10    the date of the order for relief in an amount not more than

11    7.5 million, excluding debts owed to one or more affiliates

12    or insiders.  So that's the issue, not as of the petition

13    date and aggregate non-contingent, liquidated, secured, and

14    unsecured debts.  So it can be either contingent or

15    unliquidated.  Excuse me.  Sorry.  It has to be non-

16    contingent and liquidated.

17          So the issue here is solely down to LHP.  I would

18    note, Your Honor, that the debtor has significant issues with

19    one of the claims that Your Honor just discussed, which is

20    the two-hundred-and-forty-five-thousand-dollar claim.  And we

21    are not at the point where the debtor has started objecting

22    to claims.  It is anticipated that there will be an objection

23    to that claim, although this is a Sub V case.  This will

24    likely be a pot plan, and so it would be a net detriment to

25    the estate.  If Your Honor would like, certainly Mr. Sarrao

1    can testify as to all of the various issues with respect to

2    that claim.  But I would just raise that, as well, because

3    Your Honor did raise that.

4            With respect to -- excuse me.  I want to get to the

5    issue of contingency.  And I really don't need to go back

6    over my papers.  I know from experience Your Honor has

7    already read them.  But the Bankruptcy Code doesn't define

8    "contingent."  Courts typically say, where a term is not

9    defined, you look at what the plain meaning is.  We cite what

10   "contingent" is from Black's Law Dictionary:  A claim that

11   has not yet accrued and is dependent upon some future event

12   that may never happen.

13           They haven't sent the notice.  They didn't send the

14   notice as of the petition date.  It was contingent.  The

15   obligation to remit payment was conditioned upon their

16   sending that notice.

17           THE COURT:  What was the debtor -- as of the

18   petition date, what was required when one elects --

19           MR. WAXMAN:  I'm sorry.

20           THE COURT:  -- sub --

21           MR. WAXMAN:  I can't hear Your Honor over the fan.

22           THE COURT:  Oh.  As of the petition date, what is

23   required of a debtor when making an election, in terms of the

24   eligibility limit, the 7.5 million?

25           MR. WAXMAN:  What is required?  It has to do some

1     due diligence with respect to what the total amount of the

2     claims are.

3          But Your Honor, if the debtor has no notice of what

4     the claims are because it hasn't received the notice, it's

5     inconceivable that a debtor could knowingly make a decision

6     about what the amount of the claim is when it hasn't gotten

7     that amount, particularly when it's contractually -- the

8     other party is contractually required to send a notice or

9     demand before that amount is due.

10         THE COURT:  So you -- it's your position that, even

11    if a debtor knows that there's an amount due under an

12    agreement, then, unless and until a demand is made, that

13    amount is not due --

14         MR. WAXMAN:  Well, not --

15         THE COURT:  -- for purposes of determining your

16    eligibility under Sub V.

17         MR. WAXMAN:  Not necessarily, Your Honor.  But that

18    is why there are -- there is contingent, disputed,

19    unliquidated, C, U, D boxes on the schedules.

20         The debtor clearly knew something was due because

21    it --

22         THE COURT:  But the debtor put down zero, right?

23         MR. WAXMAN:  It did because it didn't know what the

24    amount was.  It was still contingent and it was still

25    unliquidated as of the petition date.  In fact, it would have

1    been improper for the debtor to put down a number what --

2    that it didn't know was correct.

3        I don't know how you circle that square or square

4    that circle, depending on how you look at it, when there is

5    no information that has come from the other party that says

6    what the amount is.  We would be asking the person signing

7    under penalty of perjury to declare that an amount is

8    correct.  In this case, zero is much more correct than if

9    they had written 200,000, 500,000, 800,000, without knowing

10   what that amount is.

11       Your Honor, questions of contingency aren't

12   determined upon whether the creditor may extract full

13   repayment from the debtor immediately, but whether it had the

14   -- and this is a quote:

15           "-- right to payment or right to an equitable

16           remedy at the time the debtor filed its petition."

17       And Your Honor, that's the Cox case from the

18   Eastern District of Washington, 2016.

19           "A debt is deemed contingent if liability relies on

20           a future extrinsic evidence" --

21           Excuse me.

22           "-- event that may never occur."

23       And that's Parking Management.

24       THE COURT:  But here, given Mr. Sarrao's testimony

25   and given what the monthly rent was, are you telling the

1    debtor could not have determined an amount?

2            MR. WAXMAN:  Not necessarily, Your Honor.  Rent is

3    determined by two components.

4            THE COURT:  Rent and CAM.

5            MR. WAXMAN:  There's the base rent --

6            THE COURT:  Right.

7            MR. WAXMAN:  -- and there's the CAM.

8            THE COURT:  But you're saying base rent was

9    contingent.

10            MR. WAXMAN:  Base rent is not contingent, Your

11    Honor.  Well, base rent is certainly liquidated.  It's still

12    contingent because it's premised upon the requirement in

13    Paragraph 6.  There still needs to be a demand there, but

14    that's not contingent.  Excuse me.  That's -- excuse me.

15    That's not unliquidated.  The CAM is absolutely unliquidated.

16            And to answer your question that you asked Mr.

17    Sullivan at the end, we actually have done a preliminary

18    review.  And as Mr. Sarrao testified to, based on his rough

19    estimate, there's approximately 35 percent of the monthly

20    amounts that are for CAM.  So it's not an insignificant

21    portion, Your Honor.

22            THE COURT:  Well, I think he said 30 --

23            MR. WAXMAN:  Thirty?

24            THE COURT:  -- to 35.

25            MR. WAXMAN:  Okay.  So out of 3.7, that's over

107

1    $900,000.

2           THE COURT:  How much did you say?  I'm sorry.

3           MR. WAXMAN:  I said if the total claim is $3.7

4    million, Your Honor, 300 -- 30 percent is over 900,000

5    (indiscernible)

6           THE COURT:  But as of the petition date, 2022 CAM

7    was already determined, right?

8           MR. WAXMAN:  I --

9           THE COURT:  We're only talking about six months of

10   CAM.

11          MR. WAXMAN:  Actually, the last thing I saw I think

12   was for July, and maybe I'm mistaken.  But either way, it's

13   not an insignificant portion, particular if you take out the

14   two-hundred-and-forty-five-thousand-dollar claim that is

15   baseless.

16          THE COURT:  Yeah, but I don't have any evidence in

17   front of me about any other claims.

18          MR. WAXMAN:  Well, Your Honor, I don't think --

19          THE COURT:  I mean to say that it's baseless,

20   right?

21          MR. WAXMAN:  Well, Your Honor, if you require more

22   testimony from Mr. Sarrao, he is here and he can tell you all

23   the reasons why it's (indiscernible) but at the very least,

24   this is not an insignificant amount of CAM charges if Your

25   Honor decides that it can split the claim in two pieces.  But

1    that still doesn't get past the fact that it's contingent.

2            THE COURT:  And your argument is it's contingent

3    because a demand was never made.

4            MR. WAXMAN:  Correct, Your Honor.  And that's --

5    and to be clear, I'm not saying that that doesn't mean that

6    they have a valid claim in bankruptcy.  What I'm saying is

7    you focus on what happened on the petition date, what the

8    state of claims was on the petition date.  If they didn't

9    make a demand, as required by the agreement, the only

10   agreement, then they -- it's still contingent.

11           THE COURT:  So is it your position that the Court

12   can't look beyond what was filed on the petition date?  Can

13   this Court look at the proof of claim that was filed by LHP?

14           MR. WAXMAN:  I think --

15           THE COURT:  Can this Court look to the exhibits

16   that have been provided?

17           MR. WAXMAN:  Your Honor, that's -- that is a good

18   question.  Excuse me while I get some water and I think about

19   that.

20           THE COURT:  I mean, do I have the ability to look

21   at the totality of the circumstances here?

22           MR. WAXMAN:  I'm thinking about it in a couple of

23   ways.

24           The first is claims are *prima facie* valid.  As a

25   matter of --

1          THE COURT:  Allegheny.

2          MR. WAXMAN:  Right.

3          On the other hand, having a claim that somebody

4     files doesn't necessarily mean that it's correct.  I mean, in

5     the W.R. Grace case, when I was just a wee lad and people

6     were still writing on, you know -- you know, with slate and

7     hammer and chisel, there was a prisoner who wrote in that

8     they were owed like $2 trillion.  There are lots of claims

9     that aren't exactly at that level, but there are lots of

10    claims that are just incorrect.

11         In fact, there was one that was wildly incorrect,

12    that was Proof of Claim Number 1.  And I called counsel -- or

13    I called the underlying claimant, I should say, and I was

14    like why did you file this claim against the debtor.  And the

15    company said, well, we -- the person I spoke with said, well,

16    it looks like this is against Alecto Healthcare.  And I said,

17    well, it's not Alecto Healthcare, it's another affiliate of

18    the company, and they withdrew the claim.

19         In this case, I expect that Claim Number 18-1 will

20    be the subject -- would be the subject of an objection.  How

21    does the Court balance that?  Frankly, I don't know.  But I

22    think the Court has to have at least a jaundiced view towards

23    proofs of claim that are filed that are not even included on

24    the schedules and statements of financial affairs.  And in

25    this case, there is -- this entity does not have a claim,

110

1    certainly not in the amount of $245,000.

2        But again, that's not particularly relevant to the

3    immediate issue before Your Honor because the claim that is

4    the fulcrum, LHP's claim, was, again, unliquidated and was

5    contingent on the petition date.

6        I want to move on to unliquidated unless Your Honor

7    would like to continue to discuss --

8        THE COURT:  No, that's okay.

9        MR. WAXMAN:  Similar to the analysis that we

10   discussed above, unliquidated -- excuse me -- the tern

11   "liquidated" and "unliquidated" are not defined by the

12   Bankruptcy Code.  So, again, you look at common usage.

13   Black's Law Dictionary defines it as a claim which is in the

14   amount owed that has not been determined.

15           "An unliquidated claim is not a claim in which the

16           amount has been determined."

17       And that's RNI Wind Down, and that's the Delaware

18   Bankruptcy Court.

19       The Miseo case (phonetic), which is the Second

20   Circuit, unliquidated typically refers to a claim's value and

21   the size of the corresponding debt and the ease at which that

22   value can be ascertained.

23       When considering whether or not a claim is

24   unliquidated, courts tend to look at the knowability of the

25   claims to take into account in determining whether or not

1    they are liquidated.

2         One of the other key tests that courts have cited,

3    and the Reed Creditors have cited at least three cases for

4    this proposition, which is a debt is liquidated if its amount

5    is readily and precisely determinable, where the claim is

6    determinable by reference to an agreement.  Readily and

7    precisely determinable.

8         In this case, you couldn't argue that the LHP claim

9    was either readily determinable or precisely determinable.

10   This is similar to the May case that was cited.  And again, I

11   quote:

12              "Although the term 'liquidated' is not defined in

13              Section 109, courts have generally held that a

14              claim is liquidated if its amount is readily and

15              precisely determinable."

16        And again, Mitchell, another case cited by the Reed

17   Creditors.  Whether a debt is liquidated turns on whether it

18   is subject to ready determination and precision in

19   computation of the amount due.  Readily discernible, with

20   precision.

21        Not readily determinable because no demand had been

22   made, so we didn't know the amount.  Precision because 30

23   percent, by Mr. Sarrao's estimate, is for an estimated claim

24   that, by its very def -- if you look at the underlying

25   amount, if you look at the underlying invoices that were

1    produced after we had requested them post-petition, it is

2    estimated CAM charges.  There is no precision.  There is

3    reconciliation or a true-up at the end of the year, but for

4    now, there is no readily -- as of the petition date, there

5    was no readily determinable and no precision.  Accordingly,

6    it is un -- that claim was unliquidated as of the petition

7    date.

8              I'm going to pause for a second.

9              THE COURT:  I struggle with how -- and let's -- and

10   hypothetical, how a debtor might know that it has an expense,

11   a routine monthly expense that it has not paid, because it

12   doesn't receive a demand, it's not readily or precisely

13   determinable.

14             MR. WAXMAN:  The fact that it didn't make demand

15   doesn't necessarily mean that there is no obligation.  The

16   debtor acknowledged that there's an obligation.  It put it on

17   the schedules.  It knew that there was the settlement

18   agreement out there.  It knew about Paragraph 6.  But --

19             THE COURT:  And it knew what the lease said --

20   let's bifurcate it for a minute.  They knew what the lease

21   said with respect to base rent.

22             MR. WAXMAN:  Well, except there's no knowledge

23   about what has been sublet.  There's no idea about what the

24   CAM charges are going to be.  There's still a lot of deltas

25   that are in there that could make a significant difference.

1     So it's not easy to see that it's --

2              THE COURT:  Isn't the only delta here really CAM?

3              MR. WAXMAN:  No.  Respectfully, no.  There was one

4     property, you have testimony -- and again, Alecto -- Mr.

5     Sarrao is the only person who testified today.  Everything

6     else is documentary.  But there's testimony that at least one

7     of the properties, one of the premises was sublet.  We have

8     no idea if there were others.  So, to that point, the amount

9     could still be less than that amount if there was additional

10    premises that were sublet.  There could have been payments

11    that were made by other obligors.

12             THE COURT:  Who were the other obligors?  There --

13             MR. WAXMAN:  The two other --

14             THE COURT:  Alecto --

15             MR. WAXMAN:  Yes.

16             THE COURT:  -- entities.

17             MR. WAXMAN:  Yes.

18             THE COURT:  Of which Mr. Sarrao is the executive

19    vice president for all three, right?

20             MR. WAXMAN:  He is.  But that doesn't mean he's in

21    charge of writing the checks, Your Honor.  There is -- there

22    are other employees.  Actually, Mr. Sarrao isn't an employee,

23    as he stated, so there are employees of the other entities.

24             But more than that, Your Honor, because -- and

25    again, I don't mean to go back to this notice, but that's the

1    trigger.  Without that, it is simply contingent.

2             And yes, you could say to the -- to a debtor, to

3    every debtor, I expect that, in terms of preparing your

4    schedules, you're going to do a complete, absolute review of

5    every underlying document and make a determination as to what

6    the underlying claim is.  But that's -- the -- what is

7    required is the best effort to be diligent.

8             Let's take a slightly different example.  The

9    market price of fish changes every day.  You go into a

10   restaurant, whatever the market price is.  If you had a

11   debtor that was, say, a restaurant and was getting fish every

12   day by the pound and then, at the end of the week, the fish

13   monger would send a bill to the restaurant, just because they

14   received a hundred pounds of tuna doesn't mean that the

15   restauranteur knows how much it owes the fish monger.

16            Here, you've got properties that can be and some --

17   at least one was sublet and you have CAM charges.  They vary

18   and are subject -- that, by definition on the invoice, are

19   estimates and they're subject to a true-up.  Accordingly,

20   Your Honor, these -- this is both unliquidated and

21   contingent.

22        (Pause in proceedings)

23            MR. WAXMAN:  (Indiscernible) just look through my

24   notes, Your Honor.  Again, I'm trying not to repeat what's in

25   the pleadings.

1          (Pause in proceedings)

2          MR. WAXMAN:  Your Honor, I did want to address one

3     of the questions that Your Honor asked counsel for the Reed

4     Creditors.  Does it matter if there's no guarantee in this

5     case?  Yeah, it makes a big difference in terms of the

6     analysis.  And the analysis is everything is triggered from

7     the settlement agreement.  It's what the parties intended to

8     do, that's how the parties intended to operate.

9          And there was a one-year period of forbearance

10    under Paragraph 8.

11          THE COURT:  But that expired.

12          MR. WAXMAN:  It did.  And still, they didn't send a

13    notice.  In fact, I think it was approximately 16 months

14    after the settlement agreement (indiscernible) had been

15    executed, consummated, and they still hadn't sent one.

16          THE COURT:  If there was a guarantee --

17          MR. WAXMAN:  Which there isn't, but yes, Your

18    Honor.

19          THE COURT:  -- does the debtor step into the shoes

20    of the obligor?

21          MR. WAXMAN:  I don't know, Your Honor.  That's a

22    fair question.  I don't know.  But to be fair, I don't really

23    spend a lot of time thinking about it because that isn't the

24    situation.  Frankly, the language in the settlement agreement

25    is so clear that it's like asking how I should play a

1    baseball if gravity disappeared.

2          It just -- the fact is there is that paragraph.

3    Everything is subsumed, is superseded by the settlement

4    agreement.  And I know that's not what the Reed Creditors

5    want to hear, but they weren't parties to the agreement and

6    they -- and their view of the intent of the parties is

7    irrelevant.  The language is as clear as it possibly could

8    be.

9          If I can have a second, Your Honor?

10         THE COURT:  Uh-huh.

11       (Pause in proceedings)

12         THE COURT:  Mr. Waxman, can I ask you a question?

13   And apologies for interrupting your thought process.

14         MR. WAXMAN:  That --

15         THE COURT:  But what do you make of cases like

16   Sullivan that say eligibility is determined by what the

17   debtors owe on the petition date, not what they think they

18   owe.

19         MR. WAXMAN:  I'm sorry.  Can you say that one more

20   time, Your Honor?

21         THE COURT:  What is your position with respect to a

22   case such as Sullivan that states that eligibility is

23   determined by what the debtors owe on the petition date, not

24   what the debtors think they owe?

25         MR. WAXMAN:  Your Honor, I think that what the

1    debtors owed on the petition date is accurately reflected by

2    they underlying -- what was actually owed on the petition

3    date.  Again, "owe" means that they are responsible for

4    payment.  In this case, they weren't responsible for payment

5    because the notice hadn't been given for a demand.  So I

6    think, in this case, they didn't owe $7.5 million.

7         THE COURT:  But your witness understood that no

8    payments had been made.

9         MR. WAXMAN:  I will concede that.  It -- no payment

10   -- that payments had not been made?  Yes.

11        THE COURT:  But you didn't owe it because there had

12   been no demand.

13        MR. WAXMAN:  There was no right to payment by LHP

14   on the petition date because the triggering event had not

15   occurred.

16        Your Honor, I would like to make a couple of notes

17   with respect to the two-hundred-and-forty-five-thousand-

18   dollar claim, if I might, because I know Your Honor will be

19   reviewing it.  I don't know that it's particularly relevant.

20        MR. SULLIVAN:  I object, Your Honor.  He didn't ask

21   Mr. Sarrao to testify about this claim.  It's inappropriate

22   for him to talk about the claim now.

23        THE COURT:  Yeah, I'm going to --

24        MR. WAXMAN:  Okay.

25        THE COURT:  I'm going to --

118

1          MR. WAXMAN:  That's fine, Your Honor.

2          But Your Honor, it -- again, it keeps coming back

3    to the issue of whether or not these are contingent and

4    unliquidated.  And under every test, they're both contingent

5    and unliquidated.

6          If Your Honor has --

7          THE COURT:  Wait.  So I --

8          MR. WAXMAN:  -- any quest --

9          THE COURT:  -- think that you and Mr. Sullivan both

10   agree on that point, that that is what the issue is here.

11         MR. WAXMAN:  I'm sorry.  That's the initial what?

12         THE COURT:  That's the issue here.  I mean, I'll

13   let Mr. Sullivan speak for himself, but I don't think he

14   disagrees with you.  I think you interpret this differently.

15         MR. WAXMAN:  I think that that's fair.  I think Mr.

16   Sullivan and I disagree on the interpretation.  I think that

17   the documents support us.  I think his -- I think the Reed

18   Creditors' argument is premised upon the guarantee and ours

19   is premised upon the superseding document and the

20   requirements by the superseding document.

21         Your Honor, if Your Honor would like to hear from

22   Mr. Sarrao about the two-hundred-and-forty-five-thousand-

23   dollar claim, he's here.

24         THE COURT:  I don't.

25         MR. SULLIVAN:  The record is closed.

1          MR. WAXMAN:  I figured.  Actually, Your Honor never

2     closed the record, but that's fine.

3          Your Honor, I have nothing further, other than to

4     say the request by the Reed Creditors should be denied.  The

5     case should move forward as promptly as possible.  We've

6     spent a lot of money on the Reed Creditors' motion for

7     appointment of a committee, for this motion.  This case needs

8     to get out of the mud and move towards confirmation or

9     there's just not going to be anything there for creditors at

10    all.  Thank you.

11         THE COURT:  Thank you.

12         Oh, Mr. Minuti?

13         MR. MINUTI:  Good afternoon, Your Honor.  Mark

14    Minuti from Saul Ewing.  I represent LHP Hospital Group.

15         This is the second time in this case I didn't think

16    I was going to be talking and doing mostly listening, but I

17    do have to rise, Your Honor, and just reserve rights.

18         Coming into today's hearing, Your Honor, obviously,

19    my client filed a proof of claim.  That proof of claim has

20    not been objected to.  Our understanding, clearly, was that

21    the debtor's position with respect to today's motion was

22    because the claim was contingent because no demand had been

23    made.  That was the basis on which they were defending.

24         We don't take a position on today's hearing, Your

25    Honor, we didn't file a pleading, we don't take a position on

1   the motion.  But Your Honor raised a couple of questions that

2   caused me some concern because I'm concerned that the Court

3   were to rule on this matter in a way that would prejudice our

4   ability to press that proof of claim when there's no

5   objection that's been filed to it.

6          You know, in terms of whether that guarantee

7   continues, Your Honor, I think my client would be -- clearly

8   believes it does continue.  And if that is important, that

9   issue, resolution of that issue is important to Your Honor to

10  resolve today's motion, then I think it would be appropriate

11  to provide my client with an opportunity to weigh in because

12  we had no notice that issue would be coming up today.  And

13  I'm just concerned that Your Honor would rule today in a way

14  that's going to bind or prejudice my client in connection

15  with the proof of claim.

16         I don't think Your Honor needs to get there, but I

17  did have that concern and wanted to raise that concern.

18  Thank you, Your Honor.

19         THE COURT:  Thank you.

20         Are you -- let me just ask, Mr. Waxman.  I'm sorry,

21  Mr. Sullivan.  But when we began our discussion today after

22  lunch, I want to make sure I understood correctly.  Let me

23  look at my notes here, bear with me a second.  We were

24  admitting proofs of claim, but we were reserving all rights

25  with respect to proofs of claim for objection and defending

121

1     proofs of claim, correct?

2          MR. WAXMAN:  Correct, Your Honor.

3          THE COURT:  And they weren't being admitted for the

4     truth of the matter asserted?

5          MR. WAXMAN:  Correct, Your Honor.

6      (Pause in proceedings)

7          THE COURT:  Mr. Sullivan, did you want to comment?

8     I couldn't tell if you were getting ready to comment.  Sorry.

9          MR. SULLIVAN:  I -- no, I wasn't, Your Honor.

10          THE COURT:  Pardon?

11          MR. SULLIVAN:  I wasn't planning to comment.

12          THE COURT:  Oh, okay.  All right.  Okay.

13          Mr. Sullivan has -- I'm sorry.  Did you want to say

14     something?

15          MR. WAXMAN:  No.  You just asked me --

16          THE COURT:  That was the only question I had.

17          MR. WAXMAN:  Oh, okay.

18          THE COURT:  I wanted to clarify the record on that,

19     given Mr. Minuti's comments.

20          MR. WAXMAN:  And Your Honor, just to finish up with

21     that, and then I'll cede the podium to Mr. Sullivan, this

22     isn't intended to prejudice Mr. Minuti's rights, his client's

23     proofs of claim.  Again, this goes back to what was the total

24     amount of liquidated, non-contingent claims on the petition

25     date.

1          THE COURT:  This is an eligibility issue, not a

2     proof of claim issue.

3          MR. WAXMAN:  Correct, Your Honor.

4          THE COURT:  I should ask.  I just want to confirm

5     no one else wanted to be heard this afternoon.  The U.S.

6     Trustee, Sub V Trustee, do either take a position here today?

7          MS. NIMEROFF:  Good afternoon, Your Honor.  Jami

8     Nimeroff, Subchapter V Trustee.

9          Your Honor, I generally don't take a position on

10    eligibility issues.  If the case remains a Sub V, I will

11    happily continue to serve.  I would leave that to the Court.

12    Thank you.

13         MS. CASEY:  Good afternoon, Your Honor.  Linda

14    Casey on behalf of the United States Trustee.

15         There are some very interesting issues today, but

16    the United States Trustee has elected to not intervene in

17    this case.  There are two parties who have joined in the

18    issue, and so we're taking --

19         THE COURT:  Okay.

20         MS. CASEY:  -- a position today.

21         THE COURT:  All right.  Thank you.

22         Mr. Sullivan, you get the final word.

23         MR. SULLIVAN:  Your Honor, I do want to start on

24    the issue of -- and you know, I think you referred a question

25    to Mr. Waxman about -- and I lost my note for a second, just

1    -- it's not what the debtors think they owe on the petition

2    date, it's what they owe.

3          And I do want to elaborate on that point a little

4    bit because, when they file the schedules, that's not on the

5    petition date.  And they obviously are looking at information

6    that --

7          THE COURT:  Wait.  Say that again.  When they filed

8    the schedules?

9          MR. SULLIVAN:  When they file the schedules, that's

10   not on the petition date, right?  They're scheduling debts in

11   the amount due on the petition date, but they're looking at

12   information that they may gather or they may have, they're

13   looking at it as it comes in.  So, when they file the

14   schedules, it's not, well, here's what we knew on the

15   petition date.  It's here's what we know 20 days later about

16   what's owed on the petition date.  All right?

17         Then so the issue was asked, well, should you

18   consider claims in this process.  And the cases come out that

19   you should.  But let me refer you to a case that was

20   mentioned in their briefs, in their response, and it's in the

21   In Re Parking Management case, 620 B.R. 544, because it has a

22   very helpful paragraph about this.  And I'm looking at Page

23   551 of that case, which starts with a paragraph that talks

24   about Chapter 12 and 13, and it then says:

25         "However, when Congress expanded the reach of

124

1          Subchapter V to debtors who have up to 7.5 million

2          in debts, it made Subchapter V available to

3          entities having more complex creditor relationships

4          than a debtor in a typical Chapter 12 or 13 case.

5          This case is an example."

6          "This case" being the parking authority case.

7          And then it closes that paragraph by saying:

8          "These more complex creditor relationships may well

9          lead to bona fide disputes over the proper

10          characterization of creditor claims."

11          But that:

12          "The Court need not find a lack of good faith or

13          candor to conclude it should review the claims in

14          this case."

15          And there are cert -- there are certain cases that

16    talk about the Chapter 13 standard, and the Cox case was one

17    of them.  And the Cox case got to it a different way.  In the

18    Cox case, the Court was expounding on the rule that says,

19    absent good -- a showing of bad faith, the debtor's schedules

20    should be respected.

21          But what the Cox case -- and this is 2016 WL

22    5854214.  It found that the creditor's objection to the

23    eligibility was in good faith and says:

24          "Therefore, given the good faith objection, the

25          Court will inquire beyond the debtors' originally

1                       filed schedules in its 109(e) eligibility

2                       analysis."

3              So, either way that the Court looks at it, the

4       cases lead you to the fact that you can consider proofs of

5       claim which are filed even after the schedules.  And of

6       course, by that time, the debtor knows, through its nondebtor

7       subsidiary, what the amount being claimed is.  So there

8       really isn't a dispute because LHP has claimed what it is and

9       the Court is entitled to look at that claim when it's filed.

10      We have spent a lot of time on that claim.

11             I do want to try to make sure we're clear on this

12      estimated CAM issue.  Okay?  "Estimated CAM" is a term of art

13      in the lease and it's a requirement for payment on the lease,

14      just like base rent.  It's a different element of payment.

15      And essentially, as you know, Your Honor, landlords take last

16      year's 12 months and divide it by 12 and say that's your

17      estimated CAM that you have to pay.

18             So it's a -- the fact that it's listed as an

19      estimate doesn't make LHP's claim contingent at all.  LHP's

20      claim is based on the guarantee that the debtor provided, and

21      LHP paid the amount.  All of the issues about subletting by

22      whoever has the access, that's LHP's job to take into account

23      with the landlord and pay as little as possible.  That's

24      their goal.  But once they pay it, the debtor has

25      unconditionally agreed that it owes it whether you take the

1    settlement agreement as the binding agreement or whether you

2    don't.

3           But the settlement agreement can't be read without

4    understanding that the basis for future expenses is the

5    guarantee and the purchase agreement.  So, if you go to

6    Paragraph 6 --

7           THE COURT:  Well --

8           MR. SULLIVAN:  -- it says, "Accordingly" -- this is

9    six lines in Paragraph 6 of the settlement.  It says:

10          "Accordingly, the Alecto Defendants agree to the

11          following procedure for payment of future

12          expenses."

13          The only place "future expenses" is defined is in

14    the whereas clause that we looked at, the eighth whereas

15    clause.  And the definition, as I see it, starts with "out-

16    of-pocket" in the first line:

17          "-- out-of-pocket expenses payable to Altera, the

18          landlord, for which Alecto Sherman has an

19          obligation to indemnify LHP under the operative

20          agrees and the debtor has guaranteed those

21          obligations."

22          Future expenses.  Those are under the operative

23    agreements.  That's the term "operative agreements."  Those

24    agreements are not being canceled by this document.

25          THE COURT:  Mr. Sullivan, how does 6(d) --

1          MR. SULLIVAN:  How does what?

2          THE COURT:  How should the Court interpret 6(d)

3    with respect to the issue before it right now, as to what

4    could be contested?

5          MR. SULLIVAN:  So what 6(d) says -- and I asked Mr.

6    Sarrao about it -- is that, as against a claim by LHP, they

7    are not permitted to say no, there's -- we have a defense,

8    you didn't -- you failed to mitigate, any other defense.  The

9    only defense it has is you didn't calculate correctly, so

10   they can ask -- it's the same as if it went to a confessed

11   judgment.  The confessed judgment clause says the same thing,

12   and that is, you know, if you send us the underlying

13   documents and we see that you, you know, didn't calculate

14   correctly, then they can raise that.  But this is really just

15   a question of whether they want to pay before a judgment gets

16   entered against them.  There isn't any other defenses that

17   can be raised.

18          And Your Honor, going back to the CAM thing, if you

19   look at the individual exhibits, you'll see the estimate CAM

20   is the same every month.  Okay?  That's liquidated.  It's the

21   same number for each of the five weeks, it's every month for

22   a year, until the amount changes.  That's liquidated.  That's

23   what "liquidated" means, readily available and identifiable

24   from a document.  And in this case, it's the lease that

25   provides for it, in connection with any other notices issued

1    by the landlord.

2            The issue of contingent claims was also addressed

3    in the parking authority case.  And if you pay careful

4    attention to the parking authority case, what it says is, for

5    lease rejection claims, those are not going to count because

6    it relies on the Court entering an order rejecting the

7    leases, which necessarily occurs after the petition date.

8            THE COURT:  Right.

9            MR. SULLIVAN:  But for pre-petition lease claims,

10   those were scheduled and counted in the parking -- and again,

11   it's in dicta, so, you know, it's not readily available.

12           But what we have here is pre-petition lease

13   rejection -- I mean -- not -- pre-petition lease-based claims

14   that have accrued.  The payments have been made and the

15   obligations have accrued.

16           THE COURT:  You're asking the Court to adopt an

17   analysis similar to Macedon case or Macedon case?

18           MR. SULLIVAN:  Well, no.  I -- what I say in the

19   Macedon Consulting case is that, in that case, the Court

20   considered all of the obligations under the lease until they

21   expire.

22           THE COURT:  Right.

23           MR. SULLIVAN:  But I'm not asking for that.  All

24   I'm asking -- the -- LHP didn't ask for that.  I'm just

25   speaking as to what L-H -- LHP only asked up to the petition

129

1  date.

2          THE COURT:  Right.

3          MR. SULLIVAN:  So Macedon Consulting was relevant

4  in terms of saying -- it's the same holding as Parking --

5          THE COURT:  Determining whether or not it was

6  contingent.

7          MR. SULLIVAN:  Yes.

8          THE COURT:  Mr. Sullivan, let me ask you:  What is

9  your position -- or what's your response to debtor's position

10 these are contingent because no demand was issued?

11         MR. SULLIVAN:  Your Honor, I did not hear.

12         THE COURT:  Oh, I'm sorry.  These were -- this was

13 contingent because there was no demand issued.

14         MR. SULLIVAN:  Your Honor, I think I addressed that

15 before.  But the -- from my standpoint, the demand is only an

16 opportunity for them to stop a confessed judgment.

17         THE COURT:  Okay.

18         MR. SULLIVAN:  That's it.  And both the demand

19 process and the confessed judgment go out the door when they

20 file bankruptcy.  You can't go for a confessed judgment, you

21 can't issue a demand.  That's why the June 28th letter

22 doesn't reference either the debtor or Sherman/Grayson, it

23 just references Sherman Alecto.

24         But the idea that they -- because they didn't get

25 the letter until after they put their schedules out --

130

1     although it was two days before that -- that someone affects

2     whether this claim should be counted is really just a faulty

3     analysis.  This Court can consider the claims that were

4     filed.  And we spent a lot of time with the claims to show

5     that this is not something that can be considered contingent

6     or unliquidated.

7            THE COURT:  Should the Court consider at all that

8     there was four months between -- I don't know what the

9     terminology is.  There was an effective date and it was a

10    year after the agreement, right?  And then there was another

11    four months before the petition date before a demand was

12    made.  Is that relevant at all?

13           MR. SULLIVAN:  No.  Every collection document that

14    is drafted by good counsel says, if we don't issue a demand,

15    that doesn't -- we don't waive anything.  And LHP may have

16    had their own reasons for not issuing a demand prior to the

17    bankruptcy because the debtor was trying to sell the

18    Sherman/Grayson Hospital.  I don't know.  I don't know.

19           THE COURT:  Right.

20           MR. SULLIVAN:  I --

21           THE COURT:  Right.

22           MR. SULLIVAN:  We can speculate, but it really

23    doesn't matter.  There -- the --

24           THE COURT:  So, if it doesn't matter, how do the

25    Alecto Debtors -- or Alecto Defendants -- excuse me -- as

1    used under the settlement agreement, then how do they know

2    what's payable?

3         MR. SULLIVAN:  Well, what they know doesn't really

4    matter, Your Honor.  What has accrued and what is due is what

5    matters.  And Hall makes it perfectly clear, it doesn't

6    matter what they know.

7         The only other thing I'll say, Your Honor, and

8    again, going back to the debtor's interpretation that a

9    standard clause, boilerplate entire agreement clause, wipes

10   out a guarantee and a purchase agreement and other documents

11   is, if you treat it that way, that all of those documents are

12   wiped out, there is no reference contained in this document

13   as to what LHP can charge.  There's no basis to figure it

14   out.

15        Those are the -- those are the -- so, in order to

16   read "future expenses," if you don't refer to the definition

17   and to those operating agreements, then presumably LHP can

18   ask for whatever they want and the debtor has to pay it.  I

19   don't know how the debtor could contest the calculation,

20   either, if it didn't ask for the documents that were required

21   under the operative agreements.

22        So, Your Honor, I think that's the critical issue

23   here.  And I think that the confidential settlement agreement

24   created a mechanism to streamline the issues moving forward,

25   understanding that the debtor had defaulted and turned back

132

1    the properties, but still owed some leases until '24 and

2    other leases until 2027.  And that's -- it's a procedural

3    device to handle payments going forward, but it doesn't wipe

4    out the obligations, which were known and which were accrued

5    as of the petition date.  Thank you, Your Honor.

6              THE COURT:  Thank you.

7              MR. WAXMAN:  Your Honor, may I be heard on one very

8    quick point?

9              THE COURT:  Yes, but I'm going to give Mr. Sullivan

10   the last word.

11             MR. WAXMAN:  That's fine, Your Honor.

12             Your Honor, I would just ask -- Mr. Sullivan just

13   made the statement that all of the CAM was the same for the

14   last few months.  I would just ask that Your Honor refer to

15   Exhibits 58, 59, 60, 61, 62.  You'll see that the CAM is

16   still different each month.  There are -- some months are the

17   same for at least some of the properties, but other months

18   are different.

19             THE COURT:  Okay.

20             MR. WAXMAN:  Again, I would just -- I'm looking at

21   58, in particular, 60, and 61.

22             THE COURT:  Okay.

23             MR. WAXMAN:  Thank you, Your Honor.

24             THE COURT:  Thank you.

25             Anything further, Mr. Sullivan?

1          MR. SULLIVAN:  I'm okay with whatever you want to

2     look at, Your Honor.

3          THE COURT:  Okay.  Thank you.

4          I do appreciate the presentation and I do think

5     there are some interesting issues that have been presented

6     here.

7          I'm going to take this matter under advisement.

8     And candidly, Mr. Minuti, raises an interesting issue that I

9     pondered last evening and -- but at this juncture, I'm going

10    to take a break, I'm going to take it under advisement and

11    will reach out to the parties when I'm going to rule.  I'm

12    not going to make a promise when I'm going to rule.  I just

13    don't know right now.  I want to review these documents.  So

14    we'll reach out to the parties and let you know and we'll get

15    on Zoom and I'll issue my ruling.  Okay?

16         And at that time, Mr. Waxman, we can have a further

17    status conference on Agenda Item 1.

18         MR. WAXMAN:  That was going to be my

19    recommendation, is we can determine what should be done after

20    Your Honor makes its ruling.  Certainly, that seems

21    appropriate.

22         THE COURT:  Okay.  All right.  Anything further for

23    today?

24         MR. SULLIVAN:  Thank you for your time, Your Honor.

25         THE COURT:  Oh, certainly.

134

1          MR. WAXMAN:  Thank you, Your Honor.

2          THE COURT:  And thank you for your arguments.

3          We'll stand adjourned and we'll get in touch with

4     you.  Thank you.

5          MR. SULLIVAN:  Thank you.

6          (Proceedings concluded at 3:12 p.m.)

7                         *****

8                     <u>CERTIFICATION</u>

9          I certify that the foregoing is a correct

10    transcript from the electronic sound recording of the

11    proceedings in the above-entitled matter to the best of my

12    knowledge and ability.

13

14

15

16

17    _____        December 3, 2023

18

19    Coleen Rand, AAERT Cert. No. 341

20    Certified Court Transcriptionist

21    For Reliable

22

23

24

25

1

```
1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
2

3   IN RE:                      .  Chapter 11 (Subchapter V)
                                .  Case No. 23-10787 (JKS)
4   ALECTO HEALTHCARE           .
    SERVICES, LLC,              .
5                               .
                                .  Courtroom No. 6
6                               .  824 Market Street
                     Debtor.    .  Wilmington, Delaware 19801
7                               .
                                .  Wednesday, March 13, 2024
8   . . . . . . . . . . . . . . .  10:00 a.m.

9                   TRANSCRIPT OF CONTINUED HEARING
                 BEFORE THE HONORABLE J. KATE STICKLES
10                  UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:

12  For the Debtor:          Jeffrey R. Waxman, Esquire
                             MORRIS JAMES, LLP
13                           500 Delaware Avenue
                             Suite 1500
14                           Wilmington, Delaware 19801

15  For the U.S. Trustee:    Linda J. Casey, Esquire
                             UNITED STATES DEPARTMENT OF JUSTICE
16                           OFFICE OF THE UNITED STATES TRUSTEE
                             J. Caleb Boggs Federal Building
17                           844 King Street
                             Suite 2207, Lockbox 35
18                           Wilmington, Delaware 19801

19  (APPEARANCES CONTINUED)

20  Audio Operator:          Sean Moran, ECRO

21  Transcription Company:   Reliable
                             The Nemours Building
22                           1007 N. Orange Street, Suite 110
                             Wilmington, Delaware 19801
23                           Telephone: (302)654-8080
                             Email:  gmatthews@reliable-co.com
24

    Proceedings recorded by electronic sound recording,
25  transcript produced by transcription service.
```

2

1   APPEARANCES (CONTINUED):

2   For the Subchapter V
    Trustee:                    Jami Nimeroff, Esquire
3                               BROWN MCGARRY NIMEROFF, LLC
                                Two Penn Center
4                               John F. Kennedy Boulevard
                                Suite 1030, 1500
5                               Philadelphia, Pennsylvania 19102

6   For the Reed Action
    Judgment Creditors:         William D. Sullivan, Esquire
7                               SULLIVAN HAZELTINE ALLINSON, LLC
                                919 North Market Street
8                               Suite 420
                                Wilmington, Delaware 19801
9
    For the United States
10  of America:                 Leah V. Lerman, Esquire
                                UNITED STATES DEPARTMENT OF JUSTICE
11                                CIVIL DIVISION
                                1100 L Street, NW
12                              Suite 7002
                                Washington, DC 20005
13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                               INDEX

2  MOTIONS:                                              PAGE

3  Agenda
   Item 1:   Small Business Debtor's Plan of Reorganization    4
4            Proposed by the Debtor
             [Filed December 19, 2023; Docket No. 261]
5
             Court's Ruling:                             114
6

7

8  Transcriptionists' Certificate                       115

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**JA2154**

4

1          (Proceedings commenced at 10:00 a.m.)

2                    THE COURT:  Please be seated.

3                    Good morning, everyone.  This is Judge Stickles.

4     We are on the record in Alecto Health Services LLC, Case

5     Number 23-10787.

6                    Good morning, Mr. Waxman.

7                    MR. WAXMAN:  Good morning, Your Honor.

8                    May I please the Court?  Jeff Waxman of Morris

9     James, on behalf of the debtor.

10                   With me today in court are my colleagues

11    Christopher Donnelly and (indiscernible) Rodriguez.  Also

12    with me today in court are Michael Sarrao, the debtor's

13    executive vice president, general counsel, and secretary.

14                   As Your Honor is well aware, the evidentiary

15    record with respect to confirmation is closed, following a

16    day and a half of testimony and we're here today for closing

17    statements and oral argument.

18                   THE COURT:  And thank you for filing the list of

19    exhibits with the Court.

20                   MR. WAXMAN:  Your Honor, there actually is one

21    issue that I just want to bring up with respect to the

22    exhibits, and I probably should have mentioned this to Mr.

23    Sullivan.  I think I neglected to include Mr. Balasiano's

24    declaration, which was filed at 308.

25                   THE COURT:  That was not moved into evidence.

1          MR. WAXMAN:  It was not?

2          I would just note that at the transcript of March

3  4th, page 73, Mr. Balasiano did say -- not to quote him --

4  that he's familiar with the declaration and the facts of his

5  declaration were true and correct to the best of his

6  knowledge.  So that should incorporate that.

7          If Your Honor would not -- rather not have it

8  admitted at this point, that's fine.  I just wanted to note

9  that for the record.

10          THE COURT:  Mr. Sullivan?

11          MR. SULLIVAN:  Your Honor, I don't think it's

12  subject to admission at this point.  He's just confirming

13  what is in it is on the docket as part of the record, but I

14  don't think evidence (indiscernible) consideration at trial

15  (indiscernible).

16          MR. WAXMAN:  And he did testify (indiscernible).

17          THE COURT:  Agreed.  The declaration itself is not

18  in evidence, but his testimony is.

19          MR. WAXMAN:  Thank you, Your Honor.

20          There are a -- and this is not to get too far

21  ahead of ourselves, but I would note that we filed an amended

22  order.

23          THE COURT:  I saw that.

24          MR. WAXMAN:  There are so few open issues.  First,

25  I noticed that there's no bar date for admin expenses and

6

1  rejection (indiscernible) and there's no form notice, and no

2  effective date to be served out, so that'll have to be

3  included, also.

4          This morning, Ms. Nimeroff sent me an email

5  reminding me that there was a conversation with the debtor

6  with respect to post-confirmation reporting and she had said

7  -- (indiscernible) for additional language, at least, that

8  goes to it that she wants inserted, so we'll speak to her

9  about it.

10         And, also -- and again, not to get too far ahead

11 of ourselves -- but there's also the issue of distributions

12 to the Reed Creditors and we will certainly address that

13 later.  It's really more of a clarification so that we have a

14 determination by the Court on who should be served with those

15 or to whom they should be sent.

16         But getting back to the issue immediately before

17 the Court, there are two objections remaining.  There's a

18 discreet legal issue raised by the United States Trustee,

19 with respect to the amendment of claims after the effective

20 date and then there's the rejection of the Reed Creditors.

21         As important as what remains and what was never

22 filed or what has been resolved, and that is, other than one

23 discreet issue, the U.S. Trustee's objections have been

24 resolved.

25         THE COURT:  Okay.  And let me just say, Mr.

7

1   Waxman, before you get down the road too far, I'd like to
2   hear from objectors before the debtor addresses the
3   objections filed by the objectors.  I'd like them to go in
4   order.

5           MR. WAXMAN:  Okay.  That's fine, Your Honor.

6           Do you want to hear from them now?

7           THE COURT:  Well, I don't know what else you're
8   going to comment on, but --

9           MR. WAXMAN:  Well, I was just going to kind of lay
10  out where we are --

11          THE COURT:  Okay.

12          MR. WAXMAN:  -- with everything and then,
13  certainly, I'm happy to turn it over to the objecting
14  parties.

15          THE COURT:  Okay.

16          MR. WAXMAN:  The Subchapter V Trustee is not
17  objecting to confirmation.  The objection of the United
18  States, who's, by far, the largest claimant in this case, has
19  been resolved.  And the second-largest claimant LHP -- and
20  Mr. Minuti has appeared in this case on their behalf as Your
21  Honor may recall -- did file an objection.  There were no
22  objections by any of the individual WARN Act claimants
23  themselves or any other parties, just the one discreet issue
24  by the U.S. Trustee and the Reed Creditors.

25          I guess I'll turn it over to the Reed Creditors,

8

1   but before I do -- or the U.S. Trustee, whoever Your Honor

2   would like to hear from first -- there was a declaration of

3   Mr. Sarrao that was admitted into evidence, there was a

4   memorandum of law; both of which went through the relevant

5   sections of the Bankruptcy Code, in essence, necessary for

6   confirmation.  Those include, among other things, 1122, 1123,

7   1129, and 1191, including the special rule, as Congress has

8   designated it under 1191(e), for payment of administrative

9   expenses under the plan.

10          Before we get to the objections or after, would

11  Your Honor like us to walk through the relevant provisions of

12  1129 or 1122 or 1123?

13          THE COURT:  I don't anticipate it at this point.

14          MR. WAXMAN:  Okay.  That's fine.

15          I will leave it to Your Honor, then, to decide for

16  whom she would like to hear from next.

17          THE COURT:  Either objector.  Anyone who has an

18  objection to confirmation, I want to hear objections, and I'm

19  going to rule -- when I rule, I'm going to rule all at once.

20          So, if Ms. Casey wants to go first with her issue

21  and then you can respond to her?

22          MR. WAXMAN:  That was actually going to -- that

23  was going to be my next question, Your Honor.  Thank you.

24          MS. CASEY:  Good morning, Your Honor.

25          THE COURT:  Good morning.

1          MS. CASEY:  Linda Casey, on behalf of the United

2    States Trustee.

3          Your Honor, we are left with just one objection.

4    It has to do with the provision in the plan that has been

5    somewhat modified by the confirmation order, but not the

6    (indiscernible).  And the issue is whether late-filed

7    amendments to claims can be automatically expunged without

8    there being an objection filed by the debtor.

9          The confirmation order has modified the plan

10   somewhat.  So, to draw your attention, I'm looking at the

11   order that was filed yesterday at Docket 334-1, paragraph 50.

12   It now states:

13         "Notwithstanding anything in the plan to the

14   contrary, any attempt to amend the proof of claim shall not

15   cause the disallowance or expungement of a timely filed proof

16   of claim and any creditor may amend its proof of claim

17   through the effective date, so long as it relates back to its

18   timely filed proof of claim.  Any amendment to a proof of

19   claim filed after the effective date shall be ineffective,

20   unless approved by the Bankruptcy Court after notice and

21   opportunity for hearing."

22         And the U.S. Trustee continues to object to this

23   provision for two reasons:  number one, an amended proof of

24   claim filed prior to the effective date appears to only be

25   relating back -- excuse me -- only be allowed if it relates

1  back to its timely filed proof of claim, a standard that I

2  don't really know what that means, and while an amendment

3  filed after the effective date is no longer "expunged," it's

4  ineffective, which the U.S. Trustee's position is that's

5  pretty much the equivalent of being expunged.  Nothing is

6  going to happen to it (indiscernible).

7          So I'd like to start by saying what the U.S.

8  Trustee is not arguing.  We're not arguing the substantive

9  law of late-filed claims.  It's simply a procedure.  If the

10 debtor is correct and a claimant must file a motion for

11 permission to file an amended claim, if the substantive law

12 says that late-filed amendment should not be allowed, Your

13 Honor will deny the motion.  If I'm correct and the debtors

14 have to file an objection to the claim, to a late-filed

15 amended claim and it's not appropriate, Your Honor would

16 sustain the objection.

17         So we're not trying, in any way, to say that the

18 substantive law, whether a claim filed after the effective

19 date should or should not be allowed.  We are simply talking

20 about process.

21         And, quite frankly, Congress has already spoken in

22 502.  502(a) says a claim is deemed allowed until it's

23 objected to.  It doesn't say a claim filed prior to the

24 effective date is deemed allowed.  It doesn't say an

25 amendment to the claim that doesn't relate back to the

 1  original proof of claim is deemed allowed.  It says it's
 2  deemed allowed.  And 502(b)(9) addresses an objection based
 3  it being late-filed.
 4          And so our position, Your Honor, is that it is the
 5  debtor's responsibility to object to a late-filed amendment.
 6  Even an amendment filed two months before the end of the
 7  three-year period, the substantive law would still be the
 8  same, but we think Congress set that up and we think that's
 9  important for several reasons.
10          First, there could be mistakes and if there's no
11  process by which there's an objection prior to the failure to
12  pay on a claim, you know, if the debtor is paying claims
13  based on a claims register and somebody improperly
14  interposed, you know, instead of it being January 7th, it's
15  July 1st.  Oh, that's a late-filed amendment, we're not going
16  to pay it.  If there's no objection, that doesn't get caught.
17          Second, under the process, the debtor has counsel.
18  The debtor has a fiduciary duty.  The counsel has a fiduciary
19  duty.  The counsel has obligations to file pleadings that are
20  consistent with the law and the facts; whereas, creditors,
21  they simply file proofs of claim.  They're not required to
22  hire attorneys.  They're not required to hire local counsel.
23  You know, our system is such that probably credit managers
24  and AP clerks and stuff are told, As soon as you get a notice
25  that there's a bankruptcy filing, you file the claim and if

1  we tell you it's the wrong amount, they file the amendment.

2  They don't scour confirmation orders.  They don't scour plans

3  to find out, Oh, the rules have been managed from what

4  Congress said.  I need to first file a motion.  I need to

5  hire counsel.  And it's just we're simply asking that the

6  rules be followed the way the rules are and that claimants

7  are provided due process, prior to their claims or their

8  amendments being disallowed.

9         I would like to point out that we had the same

10 issue with a proof of claim, as opposed to an amended claim,

11 in that the definition of an allowed claim included the

12 requirement that it be timely filed, but the debtors have

13 addressed that in the order and have eliminated that.  So

14 they already have to file objections to a creditor who files

15 an initial proof of claim after the effective date, but they

16 are holding on that an amended proof of claim, they don't

17 need to file an objection to, and the party has to come in

18 and file a motion.

19        We just think that that's not an appropriate

20 consideration and given an amended -- an amendment to a proof

21 of claim is filed late, including after the effective date,

22 the debtor should file an objection and then everybody knows

23 what's happening.  People can come in and say, Hey, wait,

24 there's a mistake.  My amendment wasn't late.  People can

25 come in and argue the substance.  The debtor can argue the

1  substance and everybody has process.

2          Unless Your Honor has any further questions,

3  that's our objection.

4          THE COURT:  Thank you, Ms. Casey.

5          MR. WAXMAN:  Your Honor, Jeff Waxman of Morris

6  James, on behalf of the debtor.

7          First, I am pleased to report that I think this is

8  the one issue that Mr. Sullivan and I had agreed upon

9  throughout the entire case.  We agree that people should not

10  have an unlimited right to amend their claims, particularly

11  (indiscernible).  I also agree with Ms. Casey that this is a

12  procedure and not a substantive issue, but it's an issue that

13  may have significant effects upon the -- upon creditors in

14  this case.

15          THE COURT:  Mr. Waxman, can you get closer to the

16  mic.  We're having difficulty picking you up.  Thank you.

17          MR. WAXMAN:  Is this better?  Can you hear me

18  better?

19          (No verbal response)

20          MR. WAXMAN:  Okay.  All right.  Sorry about that.

21  I already had a number of "inaudibles" in the last

22  transcript.  I'm trying to avoid that.

23          There's a balance, certainly, that needs to be

24  respected, between the general policies of giving parties

25  leave to amend and the need for finality, with respect to the

1  claims process.  From a legal perspective, courts, including

2  the Delaware Bankruptcy Courts, have each limited parties'

3  rights to amend proofs of claim after the effective date,

4  particularly, as they relate back.

5           There are a number of cases, including the Seventh

6  Circuit in (indiscernible), denying a motion by a former

7  employee to amend an increase of wage claim.  There's a

8  decision from the Eleventh Circuit, as well, the Winn-Dixie

9  Stores.  Both of those cases, and there are cases from

10  Delaware, as well, including:  NextMedia, that was Judge

11  Walsh; Kaiser Group International, that was a 2003 case and

12  I'm happy to give Your Honor a cite if you'd like, they talk

13  about the milestones for proofs of claim.

14           The first milestone is, of course, the bar date,

15  Your Honor, and then the second is the effective date of the

16  plan.  The farther away you get there those milestones, the

17  greater the burden is on a party to amend their claim, even

18  as it relates back.

19           In this case, Your Honor, you are dealing with a

20  discrete pool of assets.  Whatever the amount of disposable

21  income is, is what it is.

22           And so, allowing people the indefinite ability to

23  amend their claim to relate back and increase the amount of

24  their claim -- notably, this does not relate to if there's a

25  reduction in claim, only an increase in the claim -- will

15

1   have an effect on the other people in two ways.  The first
2   is, it will diminish the amount of distributions to be
3   received by the creditors, but second, you're going to have
4   real dollars spent on having debtor's counsel reviewing the
5   document and filing an amendment to the claim.  This is a
6   burden-shifting issue, Your Honor, by which claimants, who
7   have already filed proofs of claim and are seeking to amend
8   their claim to relate back, should have to file a motion to
9   have those allowed, rather than having the debtor have to
10  spend real money and, by the way, they should be allowed to
11  relate back after a notice and an opportunity for hearing so
12  that people, such as Mr. Sullivan or other creditors, have
13  the opportunity to object, particularly where there could be
14  a dramatic increase.  And that's important, Your Honor,
15  because this is not, as Your Honor knows, a particularly
16  large case.

17        If somebody were to amend their claim
18  significantly after distributions were made, it could
19  potentially cause the disgorgement of distributions that were
20  already made.  In this case, it should not be the debtor's
21  burden and the burden of the estate (indiscernible) real
22  dollars and legal fees and monitoring the docket and
23  objecting to claims that might not otherwise be objected to,
24  so that somebody can amend their claim, not just after the
25  bar date, but after the effective date.

1        So, Your Honor, to make a -- to just summarize,

2   this is an issue that is procedural, but may have significant

3   impacts.  And courts that have decided the issue have held

4   that there is no automatic relation back; accordingly, we

5   don't think it's that much of a heavy burden.  If somebody is

6   going to amend their claim, they should have the obligation

7   to file a motion so that Your Honor can determine whether or

8   not amendment of the claim at that point is appropriate.

9        Does Your Honor have any questions before I cede

10  the podium?

11        THE COURT:  No.  I may ask for your case citation,

12  but I want to hear from Ms. Casey.

13        MR. WAXMAN:  Okay.

14        MS. CASEY:  Linda Casey for the United States

15  Trustee.

16        Your Honor, again, we're not asking for

17  substantive change.  So the parade of horribles of a late-

18  filed amended claim will reduce the distribution available to

19  other creditors is simply a red herring.  If Your Honor was

20  going to deny the motion to file a late-filed amended claim,

21  you'd sustain the objection.

22        The parade of horribles that other parties would

23  not be able to be heard on it, first of all, the rules permit

24  any party in interest to file an objection and second of all,

25  any party can join in the debtor's objection or respond to

1  the debtor's objection and say that they can.  We are not

2  seeking any change to the substance at all.

3          The fact that I don't think a single one of the

4  cases that he cites is a case that says it's appropriate to

5  require the claimant to file a motion.  It is substantively

6  denying either a motion filed by the claimant.

7          Our point is simply that there cannot be hidden

8  decisions made by the debtors outside of this bankruptcy

9  court to not pay on a claim that has been filed.  The burden

10 of checking the docket, well, the debtors already need to

11 check the docket for late-filed claims, not just amendments,

12 and file objections.  Objections based on "it's been filed

13 late" are simple; they're standard objections, I'm sure, that

14 his firm has filed many times and can just pull up another

15 one and slap a new name on it and (indiscernible).  It's not

16 an extensive task (indiscernible).  Electronic filing, it's

17 not going through papers and papers and papers to find these

18 late-filed amendments; you can just look on a claims

19 registrar and see it.

20         The harm, on the other hand, is a creditor can

21 stop -- not receive the payments that they're expecting to

22 receive without understanding why, without being told why.

23 Claims that were filed prior to the effective date that the

24 debtors have determined don't relate back are just not

25 getting paid.  There's not going to be an order -- ruling by

1  Your Honor that it is not related back, because the order

2  says only those amendments filed prior to the effective date

3  that relate back are allowed.  So those that the debtor's

4  counsel decides don't relate back, they're just not going to

5  be paid without there being any process to determine that.

6  And then any amendment filed after the effective date is just

7  going to be ineffective, without there being any kind of

8  process or notice to these parties.

9         And so we're not asking for a change; in fact,

10  it's the debtors who are saying, Don't make us pay for what

11  the Code requires.  The Code requires that somebody object to

12  a late-filed claim.  Don't make us pay for that.  Make the

13  claimant under that there's an order that amends the Code and

14  come in and file a motion.  And we just don't think that's

15  appropriate.

16         THE COURT:  Ms. Casey -- oh, sorry.

17         MS. CASEY:  My apologies, Your Honor.

18         THE COURT:  Are you aware of any Subchapter V

19  cases where this process that the debtor's proposed has been

20  adopted?

21         MS. CASEY:  I am not aware of it.  I do know that

22  it is, at least the District of Delaware's Office's policy to

23  object to it.  And, quite frankly, I don't recall having to

24  argue this issue.  It's usually changed just slightly, the

25  allowed definition is changed.

1          It is our -- I would say it's more likely than not

2     that a plan comes in with those provisions and then we object

3     and we explain to them why and we get them changed.  I don't

4     recall having this argument.  I don't know if anybody in my

5     office has, but I am certainly not aware of any claim that

6     says that.

7          MR. WAXMAN:  I rise to, one, see if Your Honor has

8     any questions, including the cites, but I would also point

9     out there's language in the confirmation order that Ms. Casey

10    agreed to, that Ms. Nimeroff agreed to, that deals with the

11    limitation of the debtors and creditors to object to claims,

12    which is fairly typical, 180 days after the effective date.

13          THE COURT:  For the debtors.

14          MR. WAXMAN:  For the debtors and 60 days --

15          THE COURT:  And is shortened time.

16          MR. WAXMAN:  What's that?

17          THE COURT:  And is shortened time for the U.S.

18    Trustee and creditors.  I had a question about that.

19          MR. WAXMAN:  Okay, Your Honor.

20          THE COURT:  I'm just curious why there's disparate

21    treatment between when a debtor can object and when a

22    creditor or a U.S. Trustee can object, because I don't see

23    that distinction in the Code.

24          MR. WAXMAN:  There is none; although, I would

25    point out, Your Honor, frequently, there are limits on the

1  ability of debtors or any party to file an objection.  If

2  anybody wants to extend that period of time, they are

3  certainly able to file a motion to do so.  Maybe we could

4  shorten it so that the debtors have 60 days also and then we

5  can file a motion seeking to extend that for only the

6  debtors.

7          The idea, Your Honor, is not to have a very active

8  case after this and minimize the legal fees and expenses

9  incurred in connection with the case.  That has a direct

10 impact on the amount of disposable income available for a

11 distribution to creditors.

12         THE COURT:  I appreciate that, and that's no

13 different than any other Subchapter V case that has a three-

14 or five-year plan for payment of creditors.

15         MR. WAXMAN:  That is correct, Your Honor.

16         THE COURT:  Okay.

17         MR. WAXMAN:  Does Your Honor have any further

18 questions?

19         THE COURT:  No, but I would like the citations.

20         MR. WAXMAN:  Absolutely, Your Honor.

21         NextMedia Group -- I'll start with the Delaware

22 ones.

23         THE COURT:  And I will say I'm aware of a couple

24 of cases.  Sometimes, honestly, things go into plans and

25 nobody picks up on and it becomes a citation, so I'm just

1  curious what cases you've seen it in.

2          MR. WAXMAN:  NextMedia, Your Honor, a Judge Walsh

3  case, it's 2011 WL 4711997 and that was at page 3, and that

4  was applying the law of the Seventh and Eleventh Circuits,

5  holding they (indiscernible) found a reason post-

6  confirmation, and which we deny.

7          Kaiser Group International, that's 289 B.R. 597.

8          THE COURT:  I'm sorry, 289 B.R. what?

9          MR. WAXMAN:  597.

10         THE COURT:  Okay.

11         MR. WAXMAN:  And that's at page 607, Footnote 8,

12 recognizing the plan can only be amended before confirmation

13 of a plan of reorganization.

14         And then the two Circuit Court cases, and I will

15 not give you all the cases cited within, but they are the

16 Holstein case and that's 987 F.2d 1268, and that's Seventh

17 Circuit 1993.

18         And then you've got the Winn-Dixie Stores decision

19 and that's 639 F.3d 1053, and that's Eleventh Circuit 2011.

20         THE COURT:  Did you say 1053?

21         MR. WAXMAN:  Yes, Your Honor, 1-0-5-3.

22         And, again, I won't give you the internal

23 citations.  I'll spare your law clerks that.

24         THE COURT:  All right.  Thank you, Mr. Waxman.

25         Ms. Casey, any final comment?  Issues?

22

1          MS. CASEY:  Linda Casey for the U.S. Trustee.

2          No comment on the claims objection issue

3    (indiscernible) amendment issue, but I would like to provide

4    some color to the claims objection.  I did agree to it.  I

5    agreed to it previously.  I regret it, but I would like to

6    give some color as to why.

7          The -- this is another instance where almost every

8    plan that comes into my office provides the sole and

9    exclusive rights to the debtors to object to claims.  The

10   object to (indiscernible) has been taken out.

11         Recently, I had a debtor who refused to take it

12   out in the argument in front of Judge Silverstein and Judge

13   Silverstein provided that the creditors would have 90 days

14   and the debtors would have 180.  And so, given that that

15   judge had said that in that case, I said, okay.

16         As I was preparing for my argument today, I

17   thought about it and I was like, Oh, does this affect it,

18   because no one else can object to it.  And I understood the

19   claimants filed after the claims objection deadline and

20   thought, Well, wait a second.  It also doesn't apply to the

21   debtors.  If somebody files a claim a year from now and the

22   debtor has only had a six-month claim objection, that

23   obviously doesn't apply.  So if somebody files a claim after

24   the claims objection deadline has expired, they don't get a

25   free win.

1        THE COURT:  Right.

2        MS. CASEY:  So, clearly, it must mean something,

3  other than only the debtors can object at that point, because

4  even the debtors wouldn't be able to object if that provision

5  applied.  So that's -- I think that that's the answer to that

6  question, is if somebody files a claim after the claims

7  objection deadline, they're still subject to objections and

8  any party can object.

9        THE COURT:  It's an interesting -- I'm looking.

10  It's paragraph 81, yeah, it's an interesting provision.  It

11  presumes that there are no amendments or claims filed after

12  the 180 days.  Okay.  Thank you.

13        Ms. Casey, before you go --

14        MS. CASEY:  I'm sorry, Your Honor.

15        I'm too anxious to sit back down.  I apologize.

16        (Laughter)

17        THE COURT:  And I just want to go through my list.

18  So the issue the U.S. Trustee had with respect to the

19  definition of "allowed" is resolved?

20        MS. CASEY:  It is.  Untimely claims are still not

21  automatically disallowed.  I think they're now just mooted

22  and so it would have to be brought to Your Honor's attention

23  through an objection.

24        THE COURT:  Okay.  And the U.S. Trustee's

25  objection with respect to Article 6.C regarding unclaimed

24

1  payments is resolved?

2          MS. CASEY:  There was a revision to the plan -- to

3  the order.  I don't -- unfortunately, I (indiscernible) I

4  don't remember what it was, but I think that it was --

5          THE COURT:  I did not see an amendment or revision

6  to that paragraph in the order.  And maybe I'm not reading it

7  (indiscernible).  I think it's paragraph 53 of the blackline

8  order at Docket 334.

9          MR. WAXMAN:  I'm sorry, Your Honor.

10         Paragraph 53?

11         THE COURT:  I think so.

12         MR. WAXMAN:  Okay.  I'm sorry, I was just trying

13  to catch up.

14         THE COURT:  I understood that the U.S. Trustee's

15  position was that -- and I don't want to argue your position

16  -- but I understood that the trustee's position was the

17  distribution should be held until 180 days after the final

18  distribution date, and this provision, as I read it,

19  distributions would only be held until 180 days after the

20  first distribution.

21         MS. CASEY:  Your Honor, it's my understanding that

22  the United States agreed to this provision and the United

23  States Trustee didn't want to go crosswise with the United

24  States.

25         THE COURT:  Okay.  All right.

1          I just want to make sure that I address everything

2     that was raised.

3          And the issue with respect to post-effective date

4     service has been resolved?  And this was -- I saw where the

5     debtor included "any party affected by a particular pleading,

6     as the service party."

7          MS. CASEY:  Yes.

8          THE COURT:  Okay.

9          MS. CASEY:  And this most recent change also in

10    paragraph 41, as it's solely for clarification, nothing in

11    here shall provide any releases of any claims arising after

12    the effective date, which eliminates our objection that the

13    releases could be interpreted as providing releases for post-

14    effective date actions.

15         THE COURT:  Okay.  I believe that is the sum and

16    substance of the U.S. Trustee's --

17         MS. CASEY:  Your Honor, we reserved our right to

18    take a position regarding the factual record.  And our lack

19    of a position today is not support for either side, it's just

20    the parties have presented it and we didn't hear anything

21    that we felt we needed to comment upon.  So we'll let the

22    parties address those issues.

23         THE COURT:  Okay.  All right.

24         Thank you, Ms. Casey.

25         Okay.  Mr. Sullivan?

26

1          Let me just ask before Mr. Sullivan begins, is

2   there anyone else who wishes to be heard, with respect to

3   confirmation objection?

4              (No verbal response)

5          THE COURT:  Okay.  I hear no one.  I see no hands

6   raised.

7          Ms. Nimeroff, I was going to hear from you at the

8   end; is that acceptable?

9          MS. NIMEROFF:  Yes, Your Honor.

10         I just wanted to be clear, I did want to be heard

11  and, you know, I would like to characterize my position, I

12  guess, myself, as opposed to Mr. Waxman; although, I'm not

13  taking, you know, great (indiscernible).  I just want to be

14  heard on my own.

15         THE COURT:  Okay.

16         MS. NIMEROFF:  And I do continue to have some

17  issues with the confirmation order.  So I just wanted to make

18  sure I laid that out for Your Honor, so we could talk

19  whenever Your Honor would like about my (indiscernible) at

20  this point.

21         THE COURT:  All right.  So I'm going to hear from

22  Mr. Sullivan and then I'll revert back.  I just wanted to

23  make sure that no one from the United States or any other

24  party intended to be heard.  And I hear from no one, other

25  than the Subchapter V Trustee and the Reed Action Judgment

1  Creditors.

2          With that, Mr. Sullivan, good morning.

3          MR. SULLIVAN:  Good morning, Your Honor.

4          For the record, Bill Sullivan from Sullivan

5  Hazeltine Allinson on behalf of the Reed Creditors.  My

6  partner Bill Hazeltine is also in the courtroom with me.

7          THE COURT:  Good morning.

8          MR. SULLIVAN:  Your Honor, I'd like to start this

9  morning by identifying the portions of the plan that are

10  relevant to our objection.  So the first part of the plan is

11  Article 3, which has the heading "History of the Business

12  Operations of the Debtor."  And in Section 9 of Article 3,

13  there's a section with the heading "Projected Recovery of the

14  Avoidable Transfers Against (indiscernible)" and that's at

15  pages 15 to 17 in the plan.  That section notes the

16  appointment of Gould Consulting Services on August 25th,

17  2023, to perform a forensic accounting analysis of the

18  debtor's transactions relating to affiliates and insiders.

19          And it states that after receiving and having

20  discussions related to the Gould report, Mr. Balasiano

21  determined that his (indiscernible) does not have any valid

22  claims against insiders for avoidable transfers, and that's

23  at page 17.  While the debtor's current plan was filed, I

24  believe, in December, this provision was also in the original

25  plan filed on October 9th, 2023.

1          Your Honor, next, I'd like to refer to Article 4,

2   which has the heading of "The Plan" and there are two

3   sections relevant to our objection in that article.  First is

4   Section 7, which is headed "Post-confirmation Management and

5   Insiders Retained" and it identifies Lex Reddy, Michael

6   Sarrao, and Ed Williams, as retaining their current positions

7   post-confirmation.  That's at page 29.

8          And in Section 8, it talks about preservation and

9   causes of action, also at page 29.  And it says:

10          "Unless released, compromised, or settled in the

11  plan, causes of action are preserved."

12          And then it also says:

13          "The reorganized debtor may pursue such causes of

14  action, as appropriate, in the reorganized debtor's sole

15  discretion."

16          Your Honor, next is Article 7 of the plan.  That

17  has the heading "Discharge, Releases, and Injunctions."

18  That's at page 31.  And, in particular, Section 2, with the

19  heading "Debtor Releases."  That's the provision of the plan

20  that says:

21          "In exchange for the payment of $25,000 by certain

22  of the debtor's insiders, the released parties are being

23  released from all causes of action, 'in connection with or

24  arising from the debtor's (indiscernible) of the case, the

25  pursuit of confirmation of the plan, the consummation

1  thereof, the administration thereof, or the property to be

2  distributed thereof.'"

3          Your Honor, the defined term "released parties" is

4  definition 44 on page 5 of the plan.

5          THE COURT:  Can you wait one second?

6          Mr. Sullivan, my apologies.

7          (Pause)

8          THE COURT:  Can we go off the record a second?

9          (Recess taken at 10:37 a.m.)

10         (Proceedings resumed at 10:37 a.m.)

11         THE COURT:  -- about the definition of released

12 parties.

13         MR. SULLIVAN:  Yes, Your Honor.

14         So the definition of released parties occurs --

15 it's definition 44 on page 5 of the plan and it includes:

16         "(A), the officers or managers of the debtor in

17 their capacity as such, and, (B), the debtor's

18 professionals."

19         So, based on the definition, the released parties

20 includes the targets of breach of fiduciary duty claims,

21 which would be officers and directors, but does not include

22 the Alecto members, *per se*, who are the target of at least

23 one fraudulent transfer claim that the Reed Creditors have

24 identified.

25         However, we do believe the releases implicate that

1  claim, as well, because the plan, in failing to provide a

2  mechanism for bringing viable causes of action against the

3  insiders, including the Alecto members, and reserving those

4  claims for the reorganized debtor, who has already determined

5  not to bring them, and did so on October 9th, 2023, the

6  debtor's officers and managers are breaching their fiduciary

7  duties to creditors, with respect to maximizing the recovery

8  in pursuit of this claim.  So on that basis, we believe the

9  releases are relevant to the claims against the Alecto

10 members, as well.

11         Your Honor, our objection also objects to the

12 injunction provision, which appears to give third-party

13 releases.  Now, the debtor's omnibus response to objections

14 in their memorandum of law at page 89 says in bold language

15 that the plan does not affect or impair any claim that a

16 party, other than the debtor, has against anyone, other than

17 the claims of the debtor and the estate against the debtor's

18 insiders.

19         But the injunction provision prevents anyone who

20 has a claim in this case from pursuing a cause of action

21 against a released party.  It's, in effect, a third-party

22 release, and we believe that that provision is objectionable

23 and it's inconsistent with the representations the debtors

24 make.

25         Your Honor, the standards for the Court's

1    evaluation of the appropriateness of the release that the

2    debtor's seeking is addressed in the Quorum Health Care

3    decision by Judge Walrath from 2004.  So that case notes that

4    under Bankruptcy Code Section 1123(b)(3)(A), a supplement of

5    claims can be part of a plan, and if it is, the Court has the

6    duty to determine that a proposed compromise, as part of the

7    plan, is fair and equitable.

8           It invokes, generally, the same standard as the

9    standards under Rule 9019, but advises that the Court should

10   consider all factors relevant to a full and fair assessment

11   of the (indiscernible) of the proposed compromise.  And those

12   instructions are found at page 334 of the Quorum decision.

13          What's more significant, it says:

14          "Where releases are granted to nondebtors under a

15   plan of reorganization, additional factors are often relevant

16   to determine the fairness of the compromise."

17          And Quorum then goes on to analyze the five

18   factors that were set forth in the Zenith Electronics

19   Corporation case.  That's 241 B.R. 92.  Which are also known,

20   I think, to all of us as the Master Mortgage factors, since

21   Zenith adopted the Master Mortgage factors --

22          THE COURT:  Right.

23          MR. SULLIVAN:  -- out of a case out of Missouri, I

24   believe.

25          So the five Zenith factors, with respect to

1  releases granted to nondebtors under a plan are:  number one,

2  the identity of interests between the debtor and nondebtors;

3  number two, a substantial contribution to the plan by the

4  nondebtor; number three, the necessity of the release to the

5  reorganization; number four, the overwhelming acceptance of a

6  plan and release by creditors; and number five, the payment

7  of all, or substantially all the claims of creditors under

8  the plan.  These factors were applied in the Quorum Health

9  Care decision.  They've also been applied in the Genesis

10 Health Ventures decision, and in Washington Mutual, among

11 others, with respect to debtor releases.  And I'm going to

12 review those factors later on in my remarks.

13          Your Honor, I want to turn to the evidence that

14 the Court heard of viable causes of action against insiders,

15 including a significant fraudulent transfer claim against the

16 Alecto members.  And with respect to the testimony and

17 evidence relating to the fraudulent, potential fraudulent

18 transfer claim, none -- I do need to comment that none of the

19 witnesses wanted to add up the numbers regarding the

20 deficiencies in value as between the transfers.  So I'm going

21 to review the evidence and try to connect the dots for the

22 Court.

23          Your Honor, the evidence in this case relies in

24 great part on the Gould report, which is JX-96, and Ms. Gould

25 testified on the first day of trial.  In both her report and

1  her testimony, she confirms that in June 2019, Alecto

2  transferred the Sunrise REH equity to the Alecto members.  At

3  all times relevant to the Court's review of these matters,

4  the Sunrise REH entity was the ultimate owner of the Plaza

5  MOB medical office building.

6          So with respect to that June 2019 transfer, per

7  Ms. Gould's report and her testimony acknowledged that it was

8  for less than reasonably equivalent value and quantified the

9  difference in value as a $50,700,000 appraised value of the

10  property, less the sum of $28,416,827, which Alecto received

11  in benefits from the transaction in the form of the loan

12  payoff and a capital contribution backed by the

13  (indiscernible).  Those two numbers are identified in JX-96

14  on page 3 under the summary of (indiscernible) at the bottom

15  of the six bullet points.  But the bottom line, with respect

16  to doing the math, and Ms. Gould agreed (indiscernible), that

17  the benefit to the members for the June 2019 Sunrise REH

18  transaction was $22.3 million (indiscernible).

19          Now, to the extent that it's relevant, and we

20  don't think it is, Ms. Gould also reviewed the transfer of

21  Plaza MOB back to ownership by Alecto in 2021 so that the

22  medical office building could be included in the sale to UCLA

23  of the Olympia Hospital and related facilities.  With respect

24  to the June -- or with respect to the 2021 transaction, Ms.

25  Gould's testimony and her report indicated that Alecto

1   received proceeds from the sale of over $15 million, which

2   she agreed was more specifically identified on page 11 of her

3   report under Footnote 61, as $15,769,770.21, which was the

4   net proceeds delivered to the Plaza MOB bank account with

5   Wells Fargo following the sale.

6          The net proceeds amount was confirmed by JX-102,

7   which is the actual Plaza MOB bank statement, which was

8   reviewed with Ms. Gould and Mr. Sarrao and by JX-113, which

9   is the UCLA summary, prepared by Mr. Sarrao.  The difference

10  between the benefit the members got in 2019 and the amount

11  returned to Alecto in 2021 is acknowledged as $6.5 million in

12  favor of the Alecto members.

13         In order for that calculation to be relevant, the

14  debtor needs to demonstrate that the members would be

15  entitled to a setoff, with respect to (indiscernible).

16  Again, the debtors have not attempted to (indiscernible).

17  However, the debtors did present in several different ways,

18  monetary testimony -- or testimony regarding monetary amounts

19  that, in order to try to get around this $6.5 million

20  deficiency from those two transactions.

21         So there are three different items to review on

22  that.  First, Ms. Gould testified, generally, that from the

23  time of the second transaction in '21 up to the petition

24  date, there was money transferred between Alecto and the

25  Plaza MOB entity and that Alecto received more funds than the

1  Plaza MOB.  Well, that's fine, but what do the numbers show?

2  Her report contains some numerical summary of the respective

3  transfers between Alecto and Plaza MOB and she acknowledged

4  that, as it was filed, the report contained some double-

5  counting -- that some of the numbers needed to be revised,

6  but she did that in preparation for her testimony.

7        And she testified that the transfers to or for the

8  benefit of Alecto from the time of the receipt of the Plaza

9  MOB sale proceeds to the petition date are twofold, and this

10  is at page 62 of the transcript from March 4th.  It's the

11  $13,937,603 (indiscernible), which was stated at page 3 of

12  her report, plus an additional payment of $3.89 million to

13  Mr. Reddy, to pay off a loan he made to Alecto.  That payment

14  is reflected on JX-101 at page 1.  That's the bank statement.

15  It's also reflected in the general ledger, JX-110, the July'

16  22 general ledger.

17        So, again, she different quantify the total

18  benefit, but at trial, she agreed that figure was roughly,

19  approximately $17.8 million.  She also testified, again, at

20  page 62 and, again, in her report, that the transfers back

21  from Alecto to Plaza MOB were about $2.7 million.  And if you

22  net those out, you get to about $15.1 million, again, in

23  favor of Alecto.  It's still $7 million short of the $22.3

24  million the Alecto members received in 2019.

25        And, Your Honor, to the extent, Your Honor,

1  reviews the report and needs clarity on the issue of the

2  double-counting, that was discussed with Mister

3  (indiscernible), also discussed in their deposition at JX-84,

4  pages 78 to 82.  It basically says --

5          THE COURT:  Can you say that again.  JX what?

6          MR. SULLIVAN:  84.

7          THE COURT:  Uh-huh.

8          MR. SULLIVAN:  And pages 78 to 82.

9          THE COURT:  Thank you.

10          MR. SULLIVAN:  But it essentially acknowledges

11  that in preparing -- in setting forth different numbers

12  relating to the receipt of proceeds from the sale and for the

13  transfers, you can't simply add the numbers up, because

14  there's a potential of double-counting there.  And so she

15  revised that in court and identified the testimony that is

16  relevant to that.

17          Your Honor, one of the shortcomings of the Gould

18  report is that Ms. Gould was not asked to reconcile the

19  intercompany transfers between the entities.  As reflected on

20  the debtor's books and records, she -- her review was limited

21  to bank statements and transfers between them.

22          However, intercompany transfers were reviewed with

23  Mr. Sarrao to show what the debtor's records reflect and Your

24  Honor can refer to the general ledgers for 2021, 2022, and

25  2023.  Those are JX-109, 110, and 111.

1         And what JX-109, the 2021 expertly shows is that

2   before the UCLA transaction took place, there was an

3   intercompany balance between Alecto and Plaza MOB in the

4   amount of $216,565.  In the 2022, JX-110 shows that on

5   November 30th, 2022, that balance was -- had risen to

6   $8,083,572.10.  And then JX-110 indicates that two days after

7   the Reed judgment was entered, the debtor converted the

8   entire intercompany balance with Plaza MOB to a loan payable

9   (indiscernible).  JX-111 shows, per the transfers in 2023, as

10  between Alecto and Plaza MOB, and it indicates that on June

11  30th, 2023, there was a balance of $18,137,682.12.  This is

12  the net amount due from Alecto, including all loan balances.

13  And when you subtract out the original $216,000, it is below

14  $18 million.  It's still $4 million less than the $22.5

15  million that members received and, again, that was help, with

16  respect to the fraudulent transfer claim arising from the

17  2019 transaction even if all of those transfers are

18  considered relevant from a setoff perspective, which we

19  disagree.

20         Your Honor, the last bit of testimony that

21  attempts to deal with the 2019 fraudulent transfer of the

22  $22.2 million is the bit of testimony from Mr. Sarrao, and

23  also echoing the debtor's memorandum that, Hey, when the

24  property was returned in 2021, it had increased in value.

25         But in an exchange with Mr. Sarrao, we identified

1  what that really meant.  Mr. Sarrao acknowledged that if you

2  calculate out the increased loan amount, the equity was not

3  higher, and that's at page 123 and 124 of the (indiscernible)

4  transfer.  What the numbers establish is that the 2019

5  transfer to the Alecto members, the appraised value of

6  $15,700,000 minus the $20 million (indiscernible) loan on the

7  property, was the equivalent of $30.7 million in equity.

8       When the property was transferred back in 2021 to

9  Alecto, it had increased to $58.5 million, but it now had a

10 $30 million loan on it, and so it had a lower equity of

11 $28,500,000.  So that other ten doesn't solve the numerical

12 issue.

13      But, Your Honor, with respect to the setoff issue,

14 the objection that the Reed Creditors filed at paragraphs 18

15 to 20 addresses a number of cases, including the Madoff case,

16 the (indiscernible) case, the McConnell (phonetic) case,

17 which all stand for the fact that in order to have a setoff,

18 the debts are mutual only where they are due and from the

19 same person in the same capacity.  The mutuality is strictly

20 construed in a payment setoff situation and that all of those

21 cases indicate that a fraudulent transfer claim is a post-

22 petition claim and cannot be setoff -- and a prepetition

23 against the debtor cannot be set off against it.

24      The debtors don't cite any cases that hold

25 otherwise.  They simply refer to a footnote in their

1 memorandum to the general principles of equity

2 (indiscernible) to get them past the barrier here.

3          So applying that case law that Alecto members

4 received a $22.3 million benefit in 2019 (indiscernible) that

5 was subject to a potential fraudulent transfer claim, even if

6 there's a basis for setoff, it doesn't reduce that claim

7 below millions of dollars.

8          Your Honor, the debtor's solution to the problem

9 of the fraudulent transfer to the members in 2019 seems to

10 contend that in June of 2019, at the time that a transfer of

11 the Sunrise REH equity, the debtor was solvent.  They had Mr.

12 Sarrao address this by declaration and his own testimony.

13 There are several problems with that.  Mr. Sarrao is not a

14 solvency expert.  Solvency is typically the arena of expert

15 testimony and Mr. Sarrao is the target of claims in this

16 case, as both an officer and director of the debtor, and as a

17 *de facto* Alecto member who is (indiscernible).

18          And, generally, in his testimony, Mr. Sarrao

19 relied on a cursory review of the 2019 balance sheet and 2019

20 tax returns.  And these don't demonstrate solvency of the

21 debtor in June of 2019.

22          Insolvency is identified in definition 32 of

23 Section 101 of the Bankruptcy Code and it says:

24          "With reference to an entity, other than a

25 partnership or a municipality the financial conditions, such

 1   that the sum of such entity's debts is greater than all such

 2   entity's property at a fair valuation."

 3            That's the key term:  at a fair valuation.

 4            And the reason why the definition is relevant is

 5   because the balance sheet that the debtor relies on, this

 6   intercompany payable is (indiscernible).  This is despite

 7   Mr. Sarrao's declaration, which was introduced as JX-70, that

 8   acknowledges that Alecto had loaned $60 million to Sherman/

 9   Grayson since its borrowing it from 2014, which amounts have

10   not been and cannot be paid back.  That's at paragraph 27,

11   JX-70.

12            In discussing the issues with Mr. Sarrao, I asked

13   him to review JX-62, which is the Alecto, April 30th, 2023,

14   balance sheet that confirmed that Sherman/Grayson owed $59.2

15   million in intercompany payables to affiliated entities and

16   that Alecto's receivable portion of that was $35 million.

17            We also reviewed the 2020 balance sheet with Mr.

18   Sarrao and, in particular, there was a discussion about what

19   the balance sheet shows, with respect to other liabilities,

20   which in 2020, it was showing $22.7 million owed.  Mr. Sarrao

21   testified that this amount was for medical advanced payments

22   that had been received (indiscernible).  It does not include

23   any liabilities or guaranties issued by Alecto.  It does not

24   include any contingent liabilities.  It does not include

25   judgment liabilities.  And it doesn't include liabilities

1   asserted by the Federal Government, who has the largest claim

2   asserted in this case for payments dating back

3   (indiscernible).

4           We then specifically reviewed what some of the

5   liabilities that were not included on the balance sheet were

6   in 2020.  So at Exhibits 43 and 44, we reviewed those were

7   the demand letters for the withdrawal liability issued by a

8   union, with respect to the closing of Alecto Fairmont.  The

9   amount in demand was $10.8 million.  Mr. Sarrao testified

10  that quarterly payments were being made on the withdrawal

11  liability obligation and that Alecto had made some of them.

12          With respect to -- we also looked at JX-113, which

13  is the UCLA transaction summary.  And there, Mr. Sarrao

14  confirmed, as was set forth in that summary, that on

15  January 1st, 2021, Alecto used $9.2 million from net proceeds

16  of the Horizon Real Estate sale to pay past-due federal and

17  state taxes and that as of August 31st, 2021, Alecto used

18  $10.5 million from net proceeds of the Plaza Medical Office

19  Building sale to pay past federal and state taxes.  He

20  acknowledged that these tax obligations had not arisen just

21  immediately prior and that they were outstanding obligations.

22          We also reviewed the LA (indiscernible) filed

23  against Alecto in January of 2021, which asserted two million

24  in rent reimbursement due from Alecto.

25          So, none of these liabilities that were claims

1  against Alecto and paid by Alecto, and these are substantial

2  in number, were reflected on Alecto's balance sheet.  And

3  many of them date back beyond 2021.

4        Finally, Your Honor, we reviewed the 2019 tax

5  return with Mr. Sarrao.  That's JX-1.  That discussion was at

6  page 112 to 118 of the March 5th transcript.  We noted that

7  JX-1 indicates that a loss of $49 million in 2019 was listed

8  for Alecto and the included subsidiaries.  That each of

9  Alecto's members received a portion of that loss on their

10  paid loans.  Then more significantly the balance sheet

11  included in the tax return, which is on page 10 of JX-1, is

12  dependent on $25.5 million in intercompany receivables to

13  show a positive value in the partners capital accounts.  That

14  number is not a fair valuation of the value of the

15  intercompany receivables, but that $25.5 million as

16  intercompany receivables was identified on page 36.

17        Your Honor, with regard to solvency we identified

18  some relevant cases at Paragraphs 5 and 6 of the supplemental

19  objection.  There was the Mellon v. Metro Communications

20  case.  There was the Constructora Maza case.  But suffice it

21  to say that a review of the straight numbers on the balance

22  sheet is not adequate.  Generally, where there are disputes

23  as to solvency there are expert reports prepared, there are

24  often fights about technologies and everything that should be

25  included.

1          Undisputably, under the bankruptcy code and
2   specifically definition 34 of Section 101, the assets need to
3   be listed at fair valuation.  I think the Constructora Maza
4   case has a significantly relevant excerpt and this is from
5   page 577 of that case. It says: "Thus, for example, accounts
6   receivable need not be taken at face value if circumstances
7   cast doubt on their collectability."  It goes onto say:
8   "Because the value of such assets may, in certain
9   circumstances, be discounted, it is appropriate for the trier
10  of fact to hear qualified opinion testimony on the fairly
11  realizable value."  The Court did not hear opinion testimony
12  and the testimony from Mr. Sarrao is, at best, conflicted
13  given his role with the debtor and as a potential target of
14  the (indiscernible).

15          Next, Your Honor, I want to discuss Mr.
16  Balasiano's role in this.  Mr. Balasiano is emblematic of the
17  whole problem with the debtor's approach to the fraudulent
18  transfer claims.  He relied on the Gould report but was
19  unable to provide any conclusions as to the net benefit to
20  the Alecto members based on the Gould report's transaction
21  analysis and as to whether a fraudulent transfer claim would
22  exist based on those transfers.

23          His conclusion that no rival causes of action as
24  to the Sunrise REH transaction rests entirely on solvency,
25  but his solvency analysis lacked any (indiscernible).  He

44

1 testified that in October of 2023 he had conversations with

2 the debtor's (indiscernible).  He reviewed -- he received and

3 reviewed the 2019 tax returns and the 2019 balance sheet.  He

4 testified he did not request backup information, he did not

5 try to verify the accuracy of the information or perform

6 further analysis beyond the face of those documents.

7      I made a note; in my notes when Mr. Waxman made

8 his opening, there was a curious line about solvency and the

9 quote was "We talked about it all the time."  I didn't

10 understand what Mr. Waxman was referring to.  Mr. Balasiano

11 would not talk about solvency at all at his deposition in

12 late February.  He deemed himself not qualified to opine on

13 even a balance sheet.

14      After hearing his testimony, I do understand what

15 Mr. Waxman meant that Mr. Balasiano discussed solvency with

16 the debtor and the debtor's counsel in October before this

17 plan was filed with the $25,000 release of claims

18 (indiscernible).  I don't think the short window of time for

19 those conversations constitutes all the time; maybe during a

20 day or two, but certainly not consistent with what one would

21 expect from an independent director doing an analysis of

22 claims against insiders.

23      In his appearance at trial Mr. Balasiano was not

24 asked and did not provide any review of the documents he

25 relied on to support his conclusion here in Court regarding

1  solvency. He is admittedly not a financial expert in a

2  position to offer an opinion on solvency.

3        Leanne Gould, who appears to be qualified to

4  provide a solvency analysis, was not asked to do so.  So,

5  with respect to Mr. Balasiano the Reed Creditors submit that

6  his appointment as the independent director was to avoid the

7  very situation that occurred here in Court that the debtor,

8  through Mr. Sarrao, would be providing its own testimony and

9  analysis about why no fraudulent transfer claim should be

10  pursued against the insiders.

11        Your Honor, I do want to turn to the evidence the

12  Court heard about some actual intent by Alecto to hinder

13  collection by the Reed Creditors.  Your Honor heard testimony

14  that in July 2022 Alecto began transferring funds to the

15  Plaza MOB bank account which were subject to being

16  transferred back later, according to the testimony.  Those

17  transfers are reflected and identified in JX-110 and 111.

18  The Plaza MOB was presumably useful for this purpose because

19  Plaza MOB had no creditors.  That was confirmed on Exhibit 1

20  of the Gould report, which is Paragraph 15 of the Plaza MOB

21  summary.  So, that is JX-96.028.031.

22        In reviewing the transfers with Mr. Sarrao JX-110

23  and JX-111, the 2022 and 2023 general ledger excerpts, show

24  that following the order granting summary judgment in favor

25  of the Reed Creditors on August 2nd, 2022 Alecto transferred

1  almost $4.5 million to the Plaza MOB.  JX-110 shows that the

2  ending balance -- I'm sorry, the bank statement, which is JX-

3  101, from November 30th, 2022 shows that the ending balance

4  in the Plaza MOB account, on November 30th, 2022 two days

5  after the actual judgment was entered on November 28th, 2022,

6  was $4.2 million.  Yet that same day, November 30th, the

7  Alecto officers made a decision to convert Alecto's

8  intercompany account with Plaza MOB to a (indiscernible).

9          Mr. Sarrao testified that both he and Mr. Reddy

10  approved that conversion.  This meant that on Alecto's books

11  transfers of funds to Plaza MOB would be treated as repayment

12  of a loan balance and not funds susceptible to be held in

13  return for payment to Alecto's creditors since Plaza MOB had

14  no creditors.

15          During this time period Alecto continued to

16  transfer substantial funds to support Sherman/Grayson

17  including funds from the Plaza MOB account.  These actions of

18  the debtor's officers constitute both actual intent to hinder

19  collection efforts by the Reed Creditors and the breach of

20  fiduciary duty owed to those creditors including the Reed

21  Creditors.  The debtor has acknowledged that it was insolvent

22  when the (indiscernible).  Mr. Sarrao testified that Alecto

23  engaged in settlement discussions with the Reed Creditors and

24  provided a bunch of financial information to them.  That is

25  at pages 83 to 84 of the March 5th transcript.

1     Your Honor, beyond that the debtors seek to defend

2   their officers and directors' breach of fiduciary duty by

3   saying that we had to support Sherman/Grayson.  With respect

4   to that, Your Honor, I would make several comments.

5     First, the losses at Sherman/Grayson have been

6   accruing since 2014.  It may appear to be simply part of the

7   business structure that Alecto operated and don't serve as a

8   barrier to claims of creditors.  Your Honor, in our objection

9   we point to the Scott Acquisition case that says that

10  transfers which benefit an insider in preference to other

11  creditors can be a fraudulent transfer.

12    With respect to all of the potential calamities

13  that could ensue if Sherman/Grayson closed, Your Honor, I

14  think all of that testimony by Mr. Sarrao is too speculative.

15  There isn't really any evidence about what would have

16  occurred if the debtor had transferred $3 million less to

17  Sherman/Grayson. There is no evidence about how things might

18  have played out differently for Sherman/Grayson.  This was an

19  entity that was on support from Alecto for nine years.  So,

20  there simply is not enough evidence to say that that is a

21  full defense to viable breach of fiduciary duty claims.

22    Your Honor, returning -- I talked about the Zenith

23  factors for the release at the beginning of the case and I

24  want to return to those now.  Quickly going through those

25  factors, the first factor is identity of interest between

1  debtor and non-debtor. So, the Quorum decision finds that

2  there is an identity of interest between officers and

3  directors of the debtor if there is indemnification of them,

4  which the testimony indicates that there is; although, there

5  is also insurance.  But with respect to the Alecto members,

6  they do not have an identity of interest.

7          The second factor is, I think, perhaps the most

8  significant factor and that is, is there a substantial

9  contribution to the plan by the non-debtor.

10         THE COURT:  Mr. Sullivan, before you move on, talk

11 to me -- you say the Alecto members do not have an identity

12 of interest with the debtors.

13         MR. SULLIVAN:  No.

14         THE COURT:  And why is that?

15         MR. SULLIVAN:  Because their members that -- they

16 have an ownership interest, but they are not involved in the

17 day-to-day operations of the debtors.  They are passive.

18 They receive distributions (indiscernible).

19         With respect to --

20         THE COURT:  Thank you.

21         MR. SULLIVAN:  -- substantial contribution a

22 $25,000 payment from some of the members is not substantial.

23 You know, Quorum provides the contrast.  There, there was a

24 $56 million benefit provided by noteholders to obtain the

25 release.  The Genesis Health Ventures also provides some

49

 1 insight. It rejected an argument that officers and directors

 2 participating in directing the Chapter 11 case and plan

 3 process can -- that their very participation can be a

 4 substantial contribution.  Genesis Health Ventures said, no,

 5 they were paid for that.  So, they have already received

 6 compensation.  That is at pages 606 and 607 of Genesis Health

 7 Ventures.

 8         Your Honor, the third --

 9         THE COURT:  Before you go onto the third, as I

10 read the revised order the debtor seems to suggest that the

11 reduction in Mr. Reddy's compensation is part of the

12 contribution. Is that part of the contribution from the Reed

13 Judgement Creditors' perspective?

14         MR. SULLIVAN:  It is not, Your Honor.  Mr. Reddy

15 agreed to those reductions to resolve the objection of the

16 United States which argued that his compensation was

17 excessive since it had remained unchanged at $750,000 a year

18 despite the universe of hospitals shrinking from five to one.

19 So, we don't believe that that is a contribution towards a

20 release.  It is a -- it was a concession made to resolve an

21 objection.

22         The third Zenith factor is the necessity of the

23 release to the reorganization.  Your Honor, the -- with

24 respect to that factor the $25,000 proposed is not vital to

25 the plan if it's not accepted.

1          The fourth factor is the overwhelming acceptance

2   of the plan and release by creditors.  That is not

3   (indiscernible).  The plan was to solicit a request to deem

4   to reject (indiscernible).

5          Then the last factor is the payment of all or

6   substantially all of the creditors under the plan.  And this,

7   from reviewing the case law, factor seems to be the

8   contribution that makes the plan work.  So, it sort of

9   overlaps with factors two and three, but the plan -- the

10  $25,000 that is proposed has not substantially increased

11  potential recovery for creditors in the case.

12         If you contrast Quorum Healthcare, the

13  contribution by the noteholders allowed for the payment in

14  full of all creditors other than the noteholders who then

15  received equity in the debtor as well as $40 million to

16  existing equity holders.  You can also contrast Washington

17  Mutual the waiver of claims and releases in favor of

18  JPMorgan.  The FDIC allowed all creditors, except the lowest

19  subordinating class, to recover payment in full plus post-

20  petition interest from the proceeds of assets released

21  (indiscernible).  Those were significant contributions that

22  provided recovery to creditors.

23         THE COURT:  They're also significant Chapter 11

24  cases.  So, we have before us a Subchapter V case.  I would

25  not equate it to Washington Mutual.  So, should the Court be

51

1  taking a different approach --

2          MR. SULLIVAN:  Your Honor --

3          THE COURT:  -- when I look at what the

4  contribution is.

5          MR. SULLIVAN:  -- I think if you -- to the extent

6  that Your Honor finds that some of the Zenith factors are

7  more suited to larger cases, I think, you know, the overall

8  instruction from Quorum is still there.  You have got to

9  review the factors that are relevant to determine the

10  fairness of the compromise.

11          Your Honor, I will sum up briefly as to why this

12  compromise should not be approved.  Your Honor, this case

13  involves process failures, evidence failures, and legal

14  failures in the debtor's efforts to obtain release through

15  the plan in favor of its insiders (indiscernible).  The

16  actions taken by the debtor amount to an effort to sidestep

17  the value that fraudulent transfer and breach of fiduciary

18  duty claims against insiders have for creditor recoveries.

19          Ms. Gould conducted a detailed analysis of the

20  movement of funds between the debtor and its affiliated

21  entity, but she was not asked to and did not opine on the

22  viability of potential fraudulent transfer claims that her

23  report (indiscernible).

24          Mr. Balasiano, the independent director hired to

25  investigate and bring potential claims against insiders,

52

1  relied on his report and a memorandum from the debtor or

2  debtor's counsel to conclude that no viable causes of action

3  exist.  When pressed he could not articulate whether the

4  potential causes of action were viable other than to deny

5  that a fraudulent transfer claim for the 2019 Sunrise REH

6  transaction, that resulted in a $22.3 million benefit to the

7  Alecto members, could not be viable because the debtor was

8  solvent at that time.  His analysis of solvency was cursory

9  and relied mostly on conversations with the debtor and

10 debtor's counsel.  His investigation did not go beyond the

11 inspection of a balance sheet and a tax return.

12        As we noted, Mr. Balasiano is not an expert on

13 solvency, neither is Mr. Sarrao, and (indiscernible)

14 potential claims he is hopelessly conflicted with respect to

15 his views on solvency.  Leanne Gould was probably qualified

16 to do a solvency analysis but wasn't asked to.

17        Neither Mr. Balasiano nor the debtor addressed the

18 setoff issues related to the 2019 fraudulent transfer claims

19 or the resulting net benefit if the Court were to even find

20 that setoff applied.  The evidence shows that under any

21 scenario the Alecto members received the benefit in the

22 millions of dollars from the 2019 transfer (indiscernible)

23 Sunrise REH.

24        The debtor also claims that the diversion of

25 substantial funds to Sherman/Grayson Hospital was necessary

1  and not a breach of its fiduciary duties to creditors.  The

2  evidence shows otherwise. The debtors took affirmative steps

3  to recharacterize the nature of the intercompany obligations

4  between it and Plaza MOB just days after the Reed judgement

5  was entered.

6          Based on the characterization as loan payments,

7  the $4.5 million in funds that Alecto transferred to Plaza

8  MOB after August 2nd, 2022 would not have been identifiable

9  as assets of the debtor when post-judgment financial

10 information was provided to the Reed Creditors.  There can be

11 no argument that the $25,000 to be provided by insiders in

12 exchange for a release does not meaningfully increase the

13 recovery available to creditors.

14         That recovery is based on the projections

15 introduced by the debtor and, I believe, the projections

16 indicate that a recovery could be in the realm of $1.9

17 million.  $25,000 is roughly the equivalent of one bi-weekly

18 paycheck to Lex Reddy who will continue as president and CEO

19 of the debtor and whose family trust is the majority member

20 of the debtor.

21         Accordingly, the debtor cannot make the Zenith

22 factors and support approval of the proposed plan and

23 release.  In that regard, the situation here where an

24 independent director could not fulfill the role that was

25 expected to him as a fiduciary to creditors.  There is a

54

1  similarity with the <u>Quorum Healthcare</u> decision. If the Court

2  reads that decision there were two prior claims that were

3  rejected that were proposed by the debtor because of

4  conflicts with insiders.  The second time they tried to

5  resolve it by appointing a special committee.  It still

6  didn't work to resolve the inherent conflicts in the

7  proposals and the releases.  It was only when a Chapter 11

8  Trustee was appointed that a confirmable plan emerged.

9        Your Honor, in addition to the releases the plan's

10  preserving of causes of action, not release, for the

11  reorganized debtor to bring in its sole discretion amounts to

12  (indiscernible) those claims and to protect insiders.  That

13  is to the detriment of the creditors.  As such, even if the

14  debtors plan cannot meet the good faith requirements of

15  Bankruptcy Code Section 1129(b)(3).  So, based on the

16  evidence and the applicable case law the Reed Creditors

17  respectfully ask the Court to deny approval of the plan

18  releases and to deny confirmation of the plan.

19        Unless Your Honor has any further questions, that

20  concludes my presentation.

21        THE COURT:  Hold tight, Mr. Sullivan.  The

22  objection that the Reed Judgement Creditors had against

23  executive compensation, is that withdrawn or resolved?

24        MR. SULLIVAN:  Yes, Your Honor.

25        THE COURT:  Okay.

1          MR. SULLIVAN:  We deem that resolved with the

2   resolution that was reached with the United States.

3          THE COURT:  Okay.  Thank you, Mr. Sullivan.

4          I will hear from Mr. Waxman.  You will have the

5   right to rebuttal.

6          MR. WAXMAN:  Your Honor, I believe Ms. Lerman

7   wants to address the Court.

8          THE COURT:  Pardon.

9          MR. WAXMAN:  I believe Ms. Lerman wants to address

10  the Court if Your Honor would like to hear from here now.

11         THE COURT:  Ms. Lerman.

12         MS. LERMAN:  Good morning, Your Honor.  Leah

13  Lerman on behalf of the United States of America.

14         Your Honor, I apologize.  When you earlier asked

15  if anyone else had comments about some of the changes to the

16  confirmation and some of your questions to the U.S. Trustee,

17  I was unable to get my Zoom application to work.  So, I

18  apologize for that.

19         I do have some comments about the order and some

20  of the statements in this case, but I recognize that Mr.

21  Waxman may want to address Mr. Sullivan's arguments at this

22  time.  So, I am happy to discuss that later, Your Honor.

23         THE COURT:  Okay. I will make sure you have the

24  opportunity to be heard with respect to any confirmation

25  order.

1          MS. LERMAN:  Thank you, Your Honor.

2          THE COURT:  Ms. Lerman, do you otherwise want to

3   be heard with respect to the resolution of any objection?

4          MS. LERMAN:  Yes, Your Honor.  The comments I

5   wanted to make to the order and what Ms. Casey mentioned do

6   have to do with the resolution for our objection.

7          THE COURT:  All right.  So, we will address those

8   when we get to a form of order.

9          MR. WAXMAN:  That's fine, Your Honor.

10          MS. LERMAN:  Thank you.

11          MR. WAXMAN:  Your Honor, may I approach? I have a

12   demonstrative that I think would be helpful.

13          THE COURT:  Okay.  Has Mr. Sullivan seen it?

14          MR. WAXMAN:  Your Honor, I just handed up a sheet,

15   it's a demonstrative that references the exhibits and

16   transcripts from March 5th.  The transcript is -- I am not

17   going to start off with that, but I didn't want to get up in

18   the middle of my presentation.

19          I think, Your Honor, before going into the

20   specifications I think it would be helpful to back up and

21   talk about the evidence before Your Honor.  I understand,

22   from the first time, that the Reed Creditors are not

23   objecting to the compensation. So, one less thing. So, I

24   won't discuss Mr. McCutchen and his expert report and his

25   finding.

1          Ms. Gould was retained as a forensic accountant.

2   As Your Honor likely recalls that was as a direct result of

3   the Reed Creditors taking the position with respect to

4   potential claims.  The Reed Creditors did file a limited

5   objection to Gould Consulting Services retention.  At no

6   point did anybody raise the issue of doing the solvency

7   analysis and I suspect that that is for two reasons:

8          The first is the timing.  As Your Honor likely

9   recalls, we did (indiscernible) late.  Ms. Gould came into

10  the case approximately the same time.  And there is a

11  statutory period for filing a plan.  We extended the deadline

12  for Ms. Gould, but certainly doing the solvency analysis

13  would have required more money and more time.

14         The debtor also retained Steven Balasiano as an

15  independent director. He is a bankruptcy professional with

16  over 30 years of experience including serving as a

17  liquidating trustee and plan administrator.  His duties

18  included, among other things, investigating and, if

19  appropriate, bringing claims against insiders.  And you have

20  heard his testimony as well.  Mr. Sarrao submitted a

21  declaration in support of confirmation. It was admitted into

22  evidence and he testified as well.

23         Before moving on from Mr. Balasiano I would point

24  out that he does earn a pretty significant amount in this

25  case on a monthly basis.  He would certainly not be

1  incentivized.  In fact, he is disincentivized from concluding

2  that there are no actions to be brought because he is the

3  person who is authorized to bring those actions.

4       So, that is what is before the Court.  You have a

5  day and a half of testimony, you've got the declarations, the

6  plan, the plan supplement including revised (indiscernible)

7  which show the projected disposable income and show the

8  liquidation analysis. The projected disposable income is just

9  that, a projection.  Whatever the debtor receives in the next

10 three years beyond its costs that is what gets distributed to

11 creditors in the case.  Those will be distributed six times,

12 six-month intervals.  Exhibit G, I believe, is the

13 liquidation analysis.  There is a significant amount to be

14 received through the Chapter 11 plan (indiscernible) Chapter

15 7.

16      So, Your Honor, the real focus is the proposed

17 releases.  I am happy to talk about the other issues that

18 were raised by Mr. Sullivan this morning, but let's start off

19 with the proposed releases which really split into two

20 alleged claims as asserted by the Reed Creditors.

21      The first is the fraudulent conveyance.  First, I

22 am not sure how Mr. Sullivan came to his numbers this morning

23 but there was certainly $8 million which was excluded from

24 that.  I don't really need to get into all of the minutia of

25 the Sunrise transaction and how much it was worth. There are

59

1  certainly issues with respect to defenses under California

2  law including equity.  There is issues with respect to what

3  is fair market value in the context of a larger transaction

4  which brings revenue into the company.

5         The one thing I will note is the Reed Creditors

6  reliance upon Section 10134 is completely misplaced because

7  this is California law. The statute of limitations under the

8  bankruptcy code passed.  This is going to be brought under

9  applicable non-bankruptcy law which is California law that

10  defines insolvency in the way that California law does.

11         Here, there is incontrovertible evidence that the

12  debtor was insolvent.  You have not only Mr. Sarrao's

13  testimony about it, you have balance sheets for not only

14  2019, the year that the transaction occurred, but the year

15  afterwards who (indiscernible) solvent.  Those balance

16  sheets, as was testified to by Mr. Sarrao, were kept in the

17  ordinary course of business.  They are reliable.  You have

18  signed 2019 tax statements which shows that the debtor was

19  solvent in 2019.  Its incontrovertible.

20         THE COURT:  What about the argument that you need

21  an expert to establish solvency?

22         MR. WAXMAN:  I'm sorry, Your Honor.

23         THE COURT:  What about the objectors' argument

24  that you need an expert to establish solvency or insolvency?

25         MR. WAXMAN:  Your Honor, I am not sure why you

1   would need an expert to read a balance report that shows that

2   at no point in 2019 was the asset worth less -- was the

3   enterprise worth less than $9 million when you have a tax

4   return, which was prepared by one of the ten largest tax

5   accounting firms, stating that the enterprise value was worth

6   more than $9 million at the end of 2019 and it was worth more

7   than $9 million at the beginning of 2019.

8           There is simply no basis for asking the question

9   about solvency in this case.  None has credibly been raised

10  other than to say, well, Mr. Sarrao has a conflict because he

11  is a potential defendant, but he didn't prepare the

12  financials.  Those were prepared by the debtor in the

13  ordinary course of business.

14          In addition to Mr. Sarrao, you have Mr. Balasiano,

15  which is important.  As much as the Reed Creditors tried to

16  dismiss or undercut the credibility of Mr. Balasiano he was

17  retained as an independent director. He has a lengthy

18  professional history as a fiduciary.  He currently serves in

19  the Bankruptcy Court, in the Delaware Bankruptcy Court, as a

20  fiduciary in cases before Your Honor.

21          There is -- he has conducted his investigation.  I

22  certainly understand that the Reed Creditors are not

23  satisfied with the results of the investigation, but he

24  conducted his investigation. He read documents. He spoke with

25  people.  He spoke with his own counsel.  By his testimony

1  numerous times, 10, 15, 20 times, I think, was the exact

2  quote that he gave.

3          Mr. Balasiano conducted his investigation, at the

4  conclusion of which he determined that the company was

5  insolvent.  Again, Mr. Balasiano is an experienced hand in

6  addressing potential claims and he is incentivized to bring

7  those claims because that was his job for which he is well

8  compensated.  He determined that there was nothing.

9          Just to point out a couple of issues with respect

10  to the fraudulent conveyance.  Ms. Gould was charged with

11  reviewing all transfers of the debtors in the four years

12  prior to the petition.  She went through over 1,400 transfers

13  and was able to locate only one transfer, the so-called

14  Sunrise transfer, for which the debtor did not receive

15  equivalent value at the time of the transfer.

16          She did note that in January 2021 the asset was

17  returned to the debtor and the net result of the two

18  transfers yielded a net positive of approximately $8.8

19  million for the estate.  Mr. Sullivan questions that.  Again,

20  the Reed Creditors failed to include certain transfer in that

21  calculous.  Again, that is $8 million received from escrow

22  and MPT.

23          Mr. Balasiano's investigation and conclusion was

24  an exercise of his business judgment and he concluded, and

25  this is a quote from page 80 of the transcript on March 4th,

1   "The company was solvent. In order to bring a fraudulent

2   conveyance action there are two factors.  One is there has to

3   be a transfer for lack of reasonable equivalent value.

4   Number two, the company has to be insolvent at the time of

5   the transfer."  Clearly, the second factor of the test was

6   not satisfied.  So, there is no ability to bring an action.

7           Mr. Sarrao's testimony is at page 45 through 48

8   addressing the 2019 tax returns including Schedule L, the

9   2019 financials at JX-4 and 41 showing equity of $9.5 million

10  in June, and $18.5 million in September of 2019.  The

11  financial (indiscernible) in the ordinary course of business,

12  and that is JX-5, and that is at page 35.  They were paying

13  their debts as they come due.  Mr. Sarrao also testified that

14  the Sunrise transfer did not cause the debtor to be insolvent

15  or unreasonably capitalized.

16          Accordingly, there is no basis for any finding

17  that there is any validity to the alleged fraudulent

18  conveyance.  Further, and this is by far the secondary

19  reason, the Reed Creditors never addressed any damages

20  (indiscernible). Based on California law unless a plaintiff

21  can provide that the debtor was insolvent or rendered

22  insolvent the transfer can't be avoided.  California law also

23  would prevent any success on a fraudulent conveyance because

24  it expressly preserves the application of equitable

25  principles in determining damages.  That is Civil Code

1   Section 3439.10 and 3439.08(b) and (c).

2          THE COURT:  Mr. Waxman, can you read both of those

3   again so I have them?

4          MR. WAXMAN:  Yes.

5          THE COURT:  Civil Code 39 -- 3439…

6          MR. WAXMAN:  Section 3439.10 and 3439.08 and those

7   are Subs (b) and (c).  Those are set out in a footnote in our

8   memorandum.

9          Further, and again we are now talking about

10  tertiary issues because solvency is the primary issue and it

11  is dispositive. There is also a footnote about whether the

12  (indiscernible) strictly equivalent and there are cases that

13  are cited in our memorandum; the Grant case which is really a

14  classic, and ASARCO which is from the Southern District of

15  Texas citing RFL Inc., which is, of course, is a Third

16  Circuit case.  The quote from that is "The touchstone is

17  whether the transition conferred realizable commercial value

18  of the debtor" which, of course, this transaction did.

19         Based upon the foregoing the Court should

20  conclude, as Mr. Balasiano did, there is no valid claim for

21  fraudulent conveyances and bringing the claim would not bring

22  value to the estate. It would cause a loss of claim due to

23  the insiders rights of indemnification under Section 7.8 of

24  the operating agreement which is another document that Mr.

25  Balasiano reviewed and was not cited by the Reed Creditors.

64

1    If I can just have a moment, Your Honor.

2    (Pause)

3    MR. WAXMAN:  Before moving on to the D&O claim I

4  thought it would be helpful if I went back through the

5  fraudulent conveyance issues.  The Reed Creditors spent a

6  fair amount of time both in their objection as well as today

7  at oral argument talking about setoff.  The debtor has not

8  raised setoff as an issue.  And Mr. Sullivan's statement

9  earlier today about the debtor's talked about it all the time

10 was not a reference to anything internal; although, there

11 were discussions about solvency.  That was really more of a

12 response to the statement in the last-minute supplemental

13 objection that this was the first time that the debtor had

14 raised solvency in 2019.

15    The Court heard testimony from Mr. Sarrao about

16 the, what I will just call, ark of healthcare during COVID.

17 As Your Honor may recall, there was a discussion about how at

18 the beginning of COVID there were high patients, although

19 certain although certain practices, such as elective surgery,

20 had stopped. There were a much higher number of patients

21 certainly at the beginning of COVID and money came in from

22 the states and the federal government.

23    As time tapered off, there was certainly a

24 difference in terms of money coming in from the states and

25 the federal government. That tapered off, but also labor

1 costs increased as, I think Mr. Sarrao testified, with

2 traveling employees. I think it was traveling nurses that Mr.

3 Sarrao was referencing.  So, there was no question about

4 solvency at any point in 2019.  The debtor's financials, as

5 of the subjective testimony, were really only an issue

6 farther into the COVID pandemic which I understand today is

7 actually the official anniversary ironically.

8         Again, before moving on I would just point out Mr.

9 Sarrao is not conflicted.  He is interested, but that doesn't

10 mean that his testimony was not accurate. It was the subject

11 of an extensive cross-examination by the Reed Creditors and

12 its truthful.  It should be considered by the Court as such

13 absent proof by any party to the contrary.

14         With that, Your Honor, unless Your Honor has any

15 questions I am going to move onto the fraudulent conveyance

16 issue.

17         THE COURT:  Okay.

18         MR. WAXMAN:  I'm sorry, the (indiscernible)

19 fraudulent conveyance to the D&O.  So, again, you have the

20 testimony of Mr. Balasiano, that is the March 4th transcript.

21 He testified that he spoke to Mr. Sarrao, the debtor's

22 counsel and his own counsel and, again, by his testimony I

23 think he said over 20 times and that is between pages 80 and

24 86.  He had the opportunity to ask questions during those

25 conferences. He availed himself of the opportunity, as did

66

1  his counsel. At the conclusion of those conferences, he felt

2  as though all those questions were answered.

3        In conducting his investigation Mr. Balasiano

4  reviewed certain documents including, among other things, the

5  Sherman/Grayson pleadings as they relate to the sale of

6  substantially all of the Sherman/Grayson assets.  That is

7  page 81 of the transcript. Mr. Balasiano testified he is

8  aware that doing so preserved Sherman/Grayson's going concern

9  value.  He was aware of what I am calling the "stringing

10  frames."

11        As this Court is aware, during the bankruptcy that

12  was filed one week after Alecto filed Sherman/Grayson was, in

13  fact, sold as a going concern and many of those contingent

14  liabilities were assumed by the purchaser.  Mr. Balasiano

15  testified that he considered the fiduciary obligations

16  including the duty of care and duty of loyalty, that is at

17  page 83.

18        Again, Mr. Balasiano had his own counsel

19  throughout with whom he conferred and I am certainly not

20  party to those conversations.  Even if I was allowed to I

21  couldn't testify nor say what they were because I wasn't a

22  party to it.  And nobody else in the Court was either.  Mr.

23  Balasiano, again, reviewed the debtor's operating agreement

24  including the indemnification provision and ultimately Mr.

25  Balasiano testified as follows:

1        "I reached the conclusion that there were no

2   breach of fiduciary duties, no breach of duty, no breach of

3   loyalty, no breach of duty of care by the debtors and their

4   officers in this case.  All the activities those were all

5   done, all the funds had been allocated to different

6   subsidiaries, especially to Sherman/Grayson which I believe

7   is the biggest issue in the case right here right now,

8   especially Sherman/Grayson were allocated in a fashion with

9   the appropriate judicious business judgement.  The actions

10  that the business members took were daily conversations,

11  daily decisions.  They were undertaken in order to keep

12  Sherman/Grayson Hospital afloat to be able to sell it as a

13  going concern."  That is the transcript at page 83.

14       You also have the testimony of Mr. Sarrao stating

15  the members met almost every day to consider financial

16  issues.  We are now talking about the May -- excuse me, the

17  March 5th transcript and that is at pages 15 to 16.  You have

18  testimony both in Sherman/Grayson as well as in this case.  I

19  raise Sherman/Grayson because Your Honor can certainly take

20  judicial notice of the documents in that case.

21       Sherman/Grayson was being marketed since 2019.

22  Funding was necessary to avoid the affiliates defaulting and

23  closing which would result in the debtor losing all or

24  substantially all of its values in the (indiscernible) going

25  concern.  The funding of the subsidiaries was necessary to

1  avoid incurring additional liabilities the LLC based on

2  guarantees and other potential liabilities.

3        For that, Your Honor, I would ask you to turn to

4  the demonstrative that I handed up to you as well as your

5  clerk.  Your Honor, this is directly from the testimony of

6  Mr. Sarrao who has experience (indiscernible).  There are

7  exhibits that are specifically cited in here particularly JX-

8  18, 10, 19 to 20; all of which were admitted.  Again, Mr.

9  Sarrao has experience closing hospitals. So, he has a pretty

10 good idea of what the cost would be and what would be

11 necessary.  And there is a certain amount of commonsense in

12 addition to that such as the obligation to collect the drugs,

13 and the records and everything else.

14        You have the lease with MPT and Sherman, and the

15 Altera Highland Office Building which were both discussed at

16 length.  You have the Medicare advance payments for $5.5

17 million; all of which would have been liabilities which would

18 have flowed to Alecto had Sherman/Grayson closed down.  You

19 have the accrued payroll as well as PTO, real property taxes,

20 winddown costs, personal property taxes, payroll taxes, and,

21 of course, last but not least, the WARN Act claims.

22        I do want to take a moment to talk about the WARN

23 Act.  In page 25 of the Reed Creditors objection, I think

24 there is something that is pretty telling where they say:

25 "The debtor has a breach of fiduciary duty claim against its

1  officers, directors and other persons in control of Alecto

2  who authorized and directed Alecto to make these advancements

3  to affiliates instead of paying its creditors." That is the

4  quote from Paragraph 25 of their objection.

5          I think that that is interesting that the Reed

6  Creditors are saying that despite that there would have been,

7  at least, an equal amount in the WARN claims if

8  Sherman/Grayson had closed, because they are similarly

9  situated, the claims that the Reed Creditors have and the

10  similar WARN Act claims that would have flowed upwards from

11  Sherman/Grayson.

12          Mr. Sarrao testified that he estimated that it

13  would have been $3 million.  Had the debtor remitted payment

14  or had the debtor not remitted payment and caused

15  Sherman/Grayson to close down it would have been so that it

16  could make the payments to the Reed Creditors.  It would have

17  caused, at least, as much damage just in the WARN claims.

18  The debtor and its board members were doing the most

19  responsible thing by continuing to fund and not incurring

20  what is estimated to be, at least, $35.595 million of

21  additional (indiscernible) had they shut down the -- had they

22  shut down Sherman/Grayson by failing to continue funding.

23  Again, Your Honor, we are talking about breaches of fiduciary

24  duty.

25          There is a lot of discussion in the Delaware

1  Bankruptcy Court about <u>Gheewalla</u> and fiduciary duties.  And

2  from my experience, and Your Honor's knowledge may vary, but

3  I think <u>Gheewalla</u> might be the most misunderstood decision by

4  the Delaware Chancery Court.  People talk about the zone of

5  insolvency and fiduciary duties.

6         What <u>Gheewalla</u> stands for is not owing greater

7  duties of the duties changing, <u>Gheewalla</u> and its progeny

8  (indiscernible) talk about how -- talk about when the company

9  is insolvent or in the zone of insolvency all that does is it

10 changes the standing of creditors to be able to bring

11 actions.  The actions with fiduciary duty stay the same

12 regardless of how insolvent the company is; whether it's a

13 debtor or non-debtor.

14         In this case, Your Honor, the duties of care,

15 duties of loyalty were met.  There is testimony with respect

16 to the meetings.  Mr. Sarrao and Mr. Balasiano had an

17 opportunity to speak with Mr. Sarrao as well as counsel for

18 the debtor and his own counsel with respect to what was done

19 by the debtors in making an informed decision.

20         The rights and obligations to make those

21 decisions, the duty of loyalty, that is to see whether or not

22 the members and managers had a personal interest in those

23 decisions, which Mr. Sarrao testified he did not, and which

24 Mr. Balasiano determined after doing his investigation. Based

25 on the foregoing, and after reviewing Section 7.8 of the

1   indemnification Mr. Balasiano who, again, has no reason and

2   is actually incentivized to find that there are claims, he

3   determined that there were no claims worth pursuing.

4          Now, I understand the Reed Creditors are not happy

5   with $25,000.  That is not all that is being brought.  First,

6   you're not suffering the negative of the indemnification

7   obligations which would, on a dollar-for-dollar, reduce the

8   amount of available funds.  Second, the reduction in salary

9   has to be (indiscernible) with the releases.  This is an

10  integral portion of the plan.  The entire plan and Mr.

11  Sarrao's testimony is that these are integral pieces of the

12  plan.

13         If the releases are not approved the testimony, is

14  it is unlikely that the members will go forward, members and

15  managers will go forward with the plan as currently

16  constituted.  It may convert to Chapter 7 in which case then

17  you are going to be stuck with a claim that an independent

18  director is determined to have no value and may have a

19  negative value.  There is nothing, as Mr. Sarrao testified

20  to, that would stop Mr. Reddy, Mr. Sarrao and any other

21  parties from converting this to Chapter 7 and then opening B-

22  lecto, or C-lecto, or D-lecto (phonetic) and having Saint

23  Rose enter into a contract with them.

24         In short, the Reed Creditors are asking that the

25  Court get all the money of other people, this claim that an

1  independent director has determined has no value should go

2  forward and releases should be denied.

3         THE COURT:  What percentage of the creditor body

4  in dollar value is the Reed Judgment Creditors?

5         MR. WAXMAN:  There are $41 million dollars' worth

6  of claims I believe and that includes the large claim of the

7  United States which I believe is $29 million.  They are not

8  even the second largest.  They are the third largest and

9  there are a couple of other claims that are multi-million

10 dollar claims as well.  So, I would guess, just doing the

11 math in my head, one-seventh.  Seven percent is my rough

12 estimate.

13        THE COURT:  Is it a breach of loyalty to decide to

14 pay a certain creditor over another creditor?

15        MR. WAXMAN:  I don't know the answer to that, and

16 I don't think I can answer that without some context

17 including what the effect of paying that one creditor would

18 be. If it were a claim to an insider then, yes, it clearly

19 would be.  If it's a claim to an affiliate to avoid larger

20 claims then probably not.  But, again, you're talking about

21 springing, for lack of a better word, contingent claims that

22 would have almost certainly arisen due to guarantees and

23 other contractual obligations as well as other legal

24 ramifications that Alecto would probably would have accrued

25 on the shutdown of Sherman/Grayson which were avoided when

1  Sherman/Grayson filed its own bankruptcy and Your Honor

2  approved the sale.

3       Your Honor, I do want to talk about the cases

4  cited by the Reed Creditors today.  I am trying to do this in

5  an order so if you will excuse me for a second.  Mr. Sullivan

6  cited Quorum which was not an incorrect case. I think there

7  are probably a couple more recent cases including Zenith,

8  Spansion, WaMu, Tribune.  And certainly, the factors that the

9  Reed Creditors identified are not incorrect.

10      I think the Reed Creditors also correctly cite

11  Myer's Market for 9019 and the standard, as Your Honor well

12  knows, as we all well know by now, is the lowest point in the

13  range of reasonableness.  That, of course, is setoff in a

14  number of a decisions and I believe that actually is Myer's

15  but that certainly is Quorum, WaMu.  I think the quote is in

16  evaluating the fairness of the settlement the Court does not

17  have to be convinced that the settlement is in the best

18  possible compromise, but only that the settlement falls

19  within a reasonable range of litigation possibilities.  That

20  is, I believe, Tribune at 158 citing WaMu 442 of 328, and

21  Quorum 315 B.R. 330.

22      This Court has heard extensive testimony and

23  received significant documentary evidence including the

24  testimony of an independent director with respect to the

25  debtor's business judgment, with respect to the submissions

1  of solvency. The Court has uncontroverted evidence that the

2  Court's decision were not for their own personal gain and

3  were informed decisions based upon near daily conversations.

4       The Court has heard and received documents with

5  respect to the indemnification provisions of the operating

6  agreement showing that the claims, if unsuccessful, would

7  almost certainly reduce rather than enhance the debtor's

8  disposable income for distribution to creditors in this case.

9  And, of course, that assumes that the case doesn't convert to

10 a Chapter 7 in which case the distribution would be even more

11 significant than it is.

12      $25,000 doesn't seem like a lot.  Of course, this

13 isn't Genesis, this isn't WaMu, this isn't Tribune.  All of

14 the case that are by any standard in any bankruptcy court

15 anywhere are among the biggest cases.  This is a Sub V case.

16 In three years, the debtor is going to have distributable

17 income, disposable income of under $3 million and that is

18 even if you count $352,000 that comes in.  They are held in

19 reserve for paying (indiscernible).

20      $25,000 isn't enormous, I grant you, but when the

21 claims are worth nothing then $25,000 is something.  When you

22 are not losing money and having to indemnify your managers,

23 members, officers, directors it's -- the settlement is worth

24 something.  This is a settlement that is (indiscernible),

25 Your Honor, and that is important.  These are integral

1  portions of the plan.  You got an indemnification provision,

2  the injunction provision and the releases.  That includes the

3  $600,000 of reduction which, granted, was reached in the

4  context of a settlement.

5          THE COURT:  And reached after the plan was filed.

6          MR. WAXMAN:  Well, that's true.

7          THE COURT:  And on the courthouse steps at day one

8  of the confirmation hearing, not --

9          MR. WAXMAN:  I don't think it was actually the day

10 of.  I think it was actually --

11         THE COURT:  Well, at least within the week because

12 I had --

13         MR. WAXMAN:  That's true.

14         THE COURT:  -- received objections a week before

15 to the issue.

16         MR. WAXMAN:  That is absolutely true, Your Honor,

17 but that doesn't change the fact that we're here today with

18 over $625,000 worth of real value, in addition to which there

19 was real value in the three officers agreeing not to increase

20 their compensation for three years from entry of the

21 confirmation order, that's real value and that was not

22 reached in the agreement before.

23         Your Honor, this has an opportunity to provide a

24 meaningful distribution to unsecured creditors.  The debtors

25 are not -- the debtor, excuse me, is not willing to gamble

1  that just because the Reed creditor, who, again, has a

2  relatively small portion (indiscernible) relative to the

3  United States, LHP, and other creditors who didn't file an

4  objection.

5       If I can have one moment, Your Honor?

6       I do want to go through the Zenith factors because

7  I think that's important.  Before I do, I wanted to also cite

8  the TWS Holdings case, Your Honor.  That of course is the

9  Third Circuit, 228 F.3d 224, where the Court upheld the

10 debtor releases of claims because it concluded that the

11 District Court did not err in concluding that the potential

12 cost of defending and paying indemnification claims, cross-

13 claims, and counterclaims arising out of the prosecution of

14 claims would be high, and that the claims were extinguished

15 because the debtors through an independent examiner

16 determined that they were unlikely to have any value.  That

17 is very analogous to the situation before Your Honor.  It's

18 not an independent director, it's an independent examiner,

19 but still somebody who's independent, who came in, conducted

20 an investigation and determined that the claims had no value,

21 and that there would have been a significant reduction in the

22 form of cross-claims and indemnification.

23      So let's talk for a second about the five factors,

24 the Zenith factors, if you will -- the Mortgage factors, if

25 you're from Missouri, I guess.

1         There is an identity of interests in this case, as

2  evidenced by the indemnification provision.  The non-debtors

3  have made a substantial contribution to the case, including

4  the $25,000 --

5         THE COURT:  Wait, let me -- I'm going to ask you

6  the exact same question.  Are Alecto members, is there an

7  identity of interests there?

8         MR. WAXMAN:  Your Honor, if I can look at the

9  operating agreement for one second?  I haven't had a chance

10  to do so with Mr. Sullivan speaking, but I understand that

11  the members also have an identity, I understand that they are

12  covered by the indemnification as well.

13      (Pause)

14      MR. WAXMAN:  Your Honor, it says, "Notwithstanding

15  any provision of this agreement, common law, or the Act, no

16  member of the board, principal, officer of the company, or

17  tax matters member shall be liable to the members or the

18  company for any loss suffered which arises out of an act or

19  omission of the person, if in good faith it is determined by

20  such person that such act or omission was in the best

21  interests of the company, and such act or omission did not

22  constitute gross negligence or fraud."

23      So it does talk about members and -- well, it

24  talks about members.

25      THE COURT:  Where are you reading from, Mr.

78

1    Waxman?

2                    MR. WAXMAN:  7.8(a).

3                    THE COURT:  And where is that in the exhibits?

4                    MR. WAXMAN:  I'm sorry, it's JX-13.024.  I didn't

5    know if you were checking the document or just taking a note,

6    Your Honor.

7                    THE COURT:  I was taking a note.

8                    MR. WAXMAN:  Okay.  Again, Your Honor, the

9    releases have to be read holistically, and that includes the

10   25,000, the compensation for three years, and in the case of

11   Mr. Reddy, reduction in salary of $600,000 total.

12                   As Mr. Sarrao testified, the release, injunction,

13   and exculpation provisions are an integral part of the

14   debtor's plan and, if not approved, they likely would not

15   proceed with the plan as it's structured now.  Again, that's

16   the March 5th transcript at page 74.

17                   And, although the debtor didn't solicit

18   acceptances of the plan, it is worth noting that you only

19   have one creditor objecting.  The United States objection is

20   resolved, the objection of -- LHP didn't object, the United

21   States Trustee has a very limited objection.  The Subchapter

22   V trustee, who you'll hear from, did not file an objection --

23   a reservation of rights, though, to be fair.

24                   And as Mr. Sullivan noted, I think number 5,

25   payment of substantially all of the claims, that goes to

1  Sections 1, 2, and 3, the test there.  But I would note that
2  there will be a distribution estimated to be approximately
3  1.9 million, which may go to 2.9 million, depending on the
4  control group reserve.

5        This is a meaningful distribution in a Subchapter
6  V case.  And it would -- it's not lost on me the irony that
7  the debtor would almost certainly be making a significantly
8  larger distribution but for; one, they need to hire two
9  experts to address issues raised by the Reed creditor; the
10 motion to appoint a committee filed by the Reed creditors;
11 the Reed creditors' motion to re-designate the Chapter V
12 case; and the Reed creditors' current and likely future
13 appeals, all of which has cost the estate already hundreds of
14 thousands of dollars, and there's another 300,000 that's
15 reserved under the projections for additional bankruptcy fees
16 that deal with the appeals.

17       So it's a little hard to hear that these -- that
18 the distribution isn't large enough when a significant
19 portion of it has come directly and proximately because of
20 the Reed action creditors.

21       Now, I'm not standing here, the debtor is not
22 standing here saying that the Reed creditors don't have the
23 right to take action in the case, of course they do; they're
24 creditors, they're parties in interest, they have standing
25 under 1109, they have the absolute right to preserve their

1 interests.  But, on the other hand, the debtor should not be

2 penalized for a lower distribution when there would be a

3 significantly larger distribution but for the complaining

4 creditors of the actions that were taken in the case, both

5 past and future.

6        All of which, Your Honor, gets back to the

7 (indiscernible) --

8        THE COURT:  Gets back to what?  I couldn't hear

9 you.

10        MR. WAXMAN:  (Indiscernible) which is Mr.

11 Balasiano was retained as an independent director.  As Your

12 Honor is certainly aware, it's unusual to have a motion to

13 appoint an independent director filed by the debtor.

14 Usually, as a matter of corporate governance, independent

15 directors are usually just approved by the board without

16 court approval.  In this case, the debtor filed a motion, the

17 Reed creditors filed a limited objection; the application was

18 approved.  And Mr. Balasiano had specific duties in the case,

19 which included investigation of potential claims against

20 insiders and affiliates and the ability to bring those

21 claims.  He conducted his investigation.

22        I understand, again, the Reed creditors are not

23 happy with the results, but they are the results of his

24 investigation.  He did what he was expected to do.  There are

25 no issues with respect to his conclusion other than the Reed

1  creditors don't like his conclusion.  You have testimony from

2  Mr. Sarrao, you have the testimony of Ms. Gould, there are no

3  valid claims.  The D&O claims, there was no breach of

4  fiduciary duty, no breach of loyalty, no breach of duty of

5  care.  There's no fraudulent conveyance claims.

6         California law, not the Bankruptcy Court, is the

7  applicable law, and under California law, the debtor was

8  insolvent and there are other defenses which preclude any

9  finding of liability.

10         Based on the foregoing, and unless Your Honor has

11  any questions, the debtor respectfully submits that the plan

12  be approved, subject to such other modifications in the

13  confirmation order that Your Honor may request or require.

14         THE COURT:  No, I don't have anything right now.

15         MR. WAXMAN:  Thank you, Your Honor.

16         THE COURT:  Let's take a break until 12:30 and

17  then, Mr. Sullivan, you can make your rebuttal -- or did I

18  assume you have rebuttal and you don't?

19         MR. SULLIVAN:  No, just very limited rebuttal.

20         THE COURT:  Okay.  Let's a break until -- a

21  comfort break until 12:30 and then we'll come back.

22     (Recess taken at 12:22 p.m.)

23     (Proceedings resumed at 12:30 p.m.)

24         MR. WAXMAN:  Your Honor, I'm going to cede the

25  podium in a moment to Mr. Sullivan, but I did want to just

82

1   say -- apparently, I made a misstatement in my last sentence

2   before we took a break, which was to say insolvent rather

3   than solvent, but I just wanted that cleared up on the record

4   and get that (indiscernible) and cede the podium to Mr.

5   Sullivan.

6         THE COURT:  Okay.

7         MR. SULLIVAN:  Your Honor, for the record, Bill

8   Sullivan on behalf of the Reed creditors.

9         Your Honor, on one factual thing, Your Honor asked

10  Mr. Waxman about indemnification for members and he referred

11  to JX-13, specifically page -- claim 3 (indiscernible) for

12  the indemnification provision.  As we read that

13  indemnification provision, it does not cover members, it

14  would only cover a tax matter member, it would cover the

15  person; it doesn't cover the members themselves.  We also

16  don't believe that it requires the fraudulent (indiscernible)

17  that goes to your question about the indemnification

18  discussion that Mr. Waxman had.

19        Your Honor --

20        THE COURT:  Before you jump in, can I ask you one

21  question about the Reed action judgment creditors?  Is the

22  issue that was raised with respect to the injunction

23  provision in the plan, is that a live issue?

24        MR. SULLIVAN:  Yes, Your Honor.

25        THE COURT:  Okay, all right.  I just wanted --

1            MR. SULLIVAN:  And, Your Honor, the issue there

2    is, you know, they've said that there is no release of third

3    party claims, but the injunction seems to do that.  I know

4    there's a revised injunction provision that we were still

5    unsatisfied --

6            THE COURT:  Okay.

7            MR. SULLIVAN:  -- with it on our initial review.

8    So that is still a live issue.

9            Your Honor, I don't want to go through the

10   evidence any further because I think Your Honor walked

11   through it in some detail and Your Honor can review it.  But

12   I think what is most glaring in this case is the process

13   failure.  Mr. Sarrao, who testified here, but that testimony

14   can't do anything to clear the conflict that he has in trying

15   to defeat the pursuit of causes of action against them, and

16   he's the representative who represented the debtor in these

17   cases from the very beginning.

18           Your Honor recognized that, the parties recognized

19   that, and there was an independent director appointed.  The

20   Reed creditors only had a limited objection because we were

21   hopeful that the independent director would have an

22   independent (indiscernible) the result, based on the

23   testimony and the evidence, is we got anything but that.  It

24   has none of the hallmarks of independence, Mr. Balasiano's

25   prompt conclusion with limited input and no further

1  investigation.

2         Your Honor referenced that the Zenith standards

3  might not fully apply.  There's also some discussion that the

4  Martin factors seem to always apply with respect to the

5  compromise, but --

6         THE COURT:  Mr. Sullivan, let me correct.  My

7  question was not the applicability of the Zenith standards,

8  but the factually distinguishable case WaMu and Coram, you

9  were talking about the dollar value that was provided --

10         MR. SULLIVAN:  Right --

11         THE COURT:  -- in exchange.

12         MR. SULLIVAN:  -- right.

13         THE COURT:  And my point being does it make a

14  difference when you're having a case -- a case the size of

15  assets of WaMu or Coram versus a case with the assets the

16  size of Alecto.

17         MR. SULLIVAN:  Right.  And, Your Honor, clearly,

18  we can agree, but just because there's orders of magnitude

19  different in terms of what is being provided, there's no

20  dispute that here the primary funds available to creditors

21  are from the three-year projection of operations and money

22  that can be contributed going forward.  The $25,000 for the

23  release is a total; it doesn't drive recovery in any way,

24  shape, or form.

25         But, Your Honor, with respect to the overall

1  compromise, Your Honor, the <u>Martin</u> factors are always

2  referenced.  And with respect to that, I'll say first, there

3  isn't evidence of costs or difficulties in collection.  We're

4  all being asked to presume that, but there isn't any evidence

5  about that.  But also, every time a party in bankruptcy

6  refers to the <u>Martin</u> factors, you hear the words robust,

7  arm's length negotiations, and that certainly isn't evident

8  in this case in the conclusion reached before October 9th

9  that there are no viable causes of action reached within days

10 after the detailed Gould report was prepared.  You know,

11 there are millions of dollars in fraudulent transfer claims

12 and potential breach of fiduciary duty claims, and it appears

13 on the face and based on the evidence that the independent

14 director accepted $25,000 with (indiscernible) Your Honor,

15 that's not acceptable result, it's not acceptable process,

16 and we ask your Court to deny approval of the releases and

17 deny approval -- or deny confirmation of the plan.

18          THE COURT:  Mr. Sullivan, before you sit down,

19 what law applies here, California law, with respect to the

20 fraudulent transfer claim?

21          MR. SULLIVAN:  Your Honor, I don't know that we

22 have -- anybody has really -- I think they dealt with it in a

23 footnote, I don't know that anybody has, you know, gone to

24 that depth, I would say.  I think that the purpose of our

25 objection is to show that there are valid claims here.  If

1  there's in California law, no one has explored it, but

2  fraudulent transfers generally operate on the same principle,

3  you know, the Uniform Fraudulent Transfer Act.  Certainly,

4  the -- you know, the testimony regarding the solvency issue

5  noted was extremely deficient, it remains that way.  And so

6  solvency as a defense has not been adequately demonstrated to

7  avoid consideration of the viable claims.

8          THE COURT:  Thank you.

9          MR. WAXMAN:  If I may be heard for just a couple

10  words, Your Honor?

11          548 has a two-year look-back --

12          THE COURT:  I'm sorry, say that again?

13          MR. WAXMAN:  Section 548 has a two-year look-back.

14  Accordingly, it would need to operate under applicable non-

15  bankruptcy law, to the extent that there is any avoidance for

16  fraudulent conveyances.  The property was located in

17  California, I believe -- under Choice of Law Restatement, I

18  believe California would be the applicable law.  I don't know

19  if there's a difference between Delaware, but I think

20  California is appropriate.  And I think Mr. Sullivan

21  previously said that they're not disputing California law for

22  the purposes of confirmation.  So I don't think that's an

23  issue.

24          I don't know what the Reed creditors mean by there

25  are no hallmarks of independence by Mr. Balasiano, he did his

1   independent analysis.  He asked questions, he looked at
2   documents, he had his own counsel with whom he conferred and
3   reached his conclusion.

4          Your Honor, I would point out that I don't think
5   the injunction is really an issue and (indiscernible) the
6   additional change at paragraph 69, I believe it was, that
7   deals with no derivative claims.  It's in connection with the
8   no third party releases and that can certainly be spread out
9   if Your Honor has concerns about that.  But certainly, if
10  people have independent claims, they can bring them, they
11  just can't bring them -- they can't bring derivative claims,
12  that's (indiscernible).

13         And finally, Your Honor, I don't think there's a
14  dispute here that the primary amount is from the debtor's
15  disposable income.  I think that's the way it always is in
16  these plans, at least Subchapter V plans.  There is, to be
17  certain, a significant addition which is added of $600,000,
18  and for that the United States certainly gets credit, Ms.
19  Nimeroff certainly gets credit, but now we're here today and
20  this is the consideration that is being given by the insiders
21  for the approval of the plan.

22         And, again, Your Honor, this is -- these releases
23  are integral to the plan and, without it, it's unclear, I
24  would say, unclear whether or not this case will proceed in
25  Chapter 11 or whether it will convert to Chapter 7.  And we

1  -- Mr. Reddy, Mr. Sarrao, Mr. Williams, and others to work B-

2  lecto, C-lecto, or D-lecto (ph), and we the Chapter 7 trustee

3  to pursue an action that an independent director has already

4  determined, in his business judgment, after investigation,

5  has no value to the estate.

6          Your Honor, do you have any further questions?

7          THE COURT:  I do not.

8          Mr. Sullivan, I'm going to give you the final word

9  with respect to the Reed judgment creditors.

10         MR. SULLIVAN:  Thank you, Your Honor.  I will

11 simply say that repetition of the same arguments doesn't make

12 them any more true.

13         THE COURT:  Thank you.

14         Okay, let me hear from the Subchapter V trustee --

15 oh, I'm sorry -- let me ask, did the United States Government

16 wish to be heard now?  I'm not at the position where I'm

17 going to discuss the form of order, but if you'd like to be

18 heard on anything else.

19         MS. LERMAN:  Good afternoon, Your Honor, Leah

20 Lerman on behalf of the United States of America.

21         Your Honor had asked me previously if any of my

22 statements go to the resolution of objections.  So, they do.

23 I'm still happy to discuss those along with the form of

24 order, if Your Honor prefers.  I just wanted to clarify that.

25         THE COURT:  Why don't we wait until the form of

1    order because I don't think you're raising anything in the

2    form of argument; is that correct?

3         MS. LERMAN:  Well, that might depend on how the

4    debtor responds to my comments.

5         THE COURT:  Okay.  So maybe we should take the

6    United States because I don't know where we're going to be,

7    so let's take the United States -- the United States'

8    concerns.

9         MS. LERMAN:  Thank you, Your Honor.  In reviewing

10   the confirmation order, I think it's simplest perhaps to go

11   in order of the paragraphs.

12         With respect to paragraph 41, the debtor made some

13   changes; it has to do with the 550 salary reduction, as well

14   as the promise not to increase the salary.  The benefit of

15   that, as we resolved, would be for the three years of the

16   plan, the creditors could benefit from that actual reduction,

17   the non-increase in salary.  So it used to be as of the

18   effective date, but the change was made as of the

19   confirmation date.  And I have seen cases where the

20   effective date has actually been weeks or months after the

21   confirmation date.  So that is an issue which is inconsistent

22   with the resolution that we've reached, as I understand it.

23         Your Honor, I can pause for Mr. Waxman to respond

24   or I can continue with the other issues in the order.

25         THE COURT:  Mr. Waxman, do you want to address

1  that issue?

2          MR. WAXMAN:  I think I need to speak with my

3  client before addressing that particular issue raised by Ms.

4  Lerman.

5          THE COURT:  Okay.  All right, Ms. Lerman, go

6  ahead.  We'll move forward with your concerns.

7          MS. LERMAN:  Thank you, Your Honor.

8          The next paragraph is paragraph 53, and this has

9  to do with the question you had for Ms. Casey about the 180-

10  day forfeiture period connected only to the first payment,

11  the first distribution made to creditors.  So this was the

12  original language of the plan and in reviewing that I had a

13  concern, I believe Ms. Casey had the same concern, which is

14  that there will be at least six distributions made through

15  the three years of the plan, at that point creditors -- there

16  wasn't even a date given for potential distributions.  So

17  creditors had no idea when they might even expect a payment,

18  so how could they know, you know, if they had missed a

19  payment, how would they be able to reach out before it was

20  forfeited.

21          So, in discussing it with the debtor, my

22  understanding is that we had resolved it by not only will the

23  debtor add the six estimated dates of distribution, but that

24  there would be, you know, a 180-day period (indiscernible) to

25  those payments before it was forfeited, because it doesn't

1  really make sense to know you're going to receive a payment,

2  you know, two and a half years into the plan on, you know,

3  June 30th, but if you never receive it, you know, it's just

4  forfeited instantly because you didn't raise it two years ago

5  before you didn't get it.  So I just don't see how that makes

6  sense, it doesn't resolve the concerns that we had.

7        THE COURT:  Wait, before you -- so this -- the

8  language that's set forth in this paragraph you disagree with

9  because your objection remains live; is that correct?

10       MS. LERMAN:  It does, Your Honor, but the debtors

11  added the dates that we requested so that creditors have --

12       THE COURT:  Right.

13       MS. LERMAN:  -- some sense of when they might get

14  the distribution, but if these payments are forfeited within

15  the first 180 days of the first payment, it just seems like

16  there's an instantaneous forfeiture of any of the five

17  payments that come afterwards.

18       THE COURT:  So --

19       MS. LERMAN:  You know, I don't know how quickly

20  you need to cash a check before it's considered forfeited by

21  the debtors.

22       THE COURT:  So -- well, let me ask you that.  Is

23  the question here the 180 days after the first distribution,

24  and what is it that the Government is asking for?  I want to

25  make sure I understand the ask here.

1        MS. LERMAN:  Yes, Your Honor.  So the concern is

2   that the forfeiture period seems to be tied to just the first

3   distribution.  I mean, as I read it, it seems that if you

4   don't -- if you make that first payment and you don't reach

5   out in 180 days, it seems to be that you're estopped from,

6   you know, reaching out about any of the six payments.

7        The request is that with each distribution, if you

8   didn't receive it, creditors have a chance to reach out and

9   try to obtain a second check or a second distribution -- you

10  know, if it wasn't received, if it's instantly forfeited,

11  there's never an opportunity to be able to reach out to the

12  debtors and let them know you didn't receive a distribution.

13       THE COURT:  So is it the Government's position

14  that if there are six distribution dates, you wait 180 days

15  following each distribution?

16       MS. LERMAN:  Correct, before it's forfeited.

17       THE COURT:  Okay, I under --

18       MS. LERMAN:  So each time it's paid --

19       THE COURT:  -- I understand your argument.

20       MS. LERMAN:  Your Honor, would you like me to

21  continue with other concerns?

22       THE COURT:  Yes, and then we'll have Mr. Waxman

23  respond at the end.

24       MS. LERMAN:  Thank you, Your Honor.

25       So in paragraph 64, there's been a change from

1 | exclusive jurisdiction.  The paragraph used to read that the

2 | Court has exclusive jurisdiction, you know, within the

3 | confines of what 28 U.S.C. 1334 allows.  It's been altered a

4 | little bit to give Your Honor exclusive jurisdiction with

5 | respect to the plan and confirmation order, and then

6 | everything else is, you know, you retain jurisdiction within

7 | 1334.  I'm just not quite sure why the change is necessary,

8 | 28 U.S.C. 1334(a) and (b) say what they say, that's what the

9 | Bankruptcy Code allows for jurisdiction.

10 |             And the last two issues, Your Honor --

11 |             MR. WAXMAN:  (Indiscernible) --

12 |             MS. LERMAN:  -- are very simple --

13 |             THE COURT:  Wait one second.

14 |             MR. WAXMAN:  I'm sorry, Your Honor.  Can Ms.

15 | Lerman refer me to what paragraph she was --

16 |             THE COURT:  She was talking about paragraph 64 in

17 | the blackline on Docket 334 relating to retention of

18 | jurisdiction.

19 |             MR. WAXMAN:  Okay.  I'm sorry to have interrupted,

20 | Ms. Lerman.

21 |             MS. LERMAN:  No worries.  Thank you.

22 |             The last two issues are really just sort of

23 | typographical.  In paragraphs 75 and 80, there is language

24 | that refers back to the Government paragraph, it's changed,

25 | the Government paragraph is now 82.  So, simply put, those

94

1  references need to be altered to the right paragraph number,

2  and that's just typographical.

3          MR. WAXMAN:  And I (indiscernible) --

4          MS. LERMAN:  And of course, Your Honor --

5          MR. WAXMAN:  -- I did promise Ms. Lerman I would

6  do that earlier and I neglected to do so, she is actually

7  correct.

8          MS. LERMAN:  And, Your Honor, I recognize that the

9  confirmation order will likely, you know, keep evolving, so

10  we would just reserve our rights with respect to further

11  changes and modifications to the confirmation order.

12          THE COURT:  Okay.

13          MS. LERMAN:  Does Your Honor have questions?

14          THE COURT:  No, but this was helpful because, to

15  me, these aren't comments on an order, you have actually

16  raised some substantive issues that need to be addressed.  So

17  thank you for interjecting because I thought that the U.S.

18  Government's objection was resolved.

19          So, Mr. Waxman, do you want to address these

20  objections?

21          MR. WAXMAN:  Your Honor, let me kind of start off

22  with I think -- let's go to 41, we'll take them in order.

23          Your Honor, my understanding was that it was going

24  to be the order confirming the plan.  We intend to go

25  effective as soon as the order is entered and take such

1  actions that are necessary to go effective, so that the

2  reduction is effective immediately, which was my

3  understanding of what the U.S. Government was looking for

4  with the effective immediate reduction.  Is that not what the

5  United States wants is the immediate reduction?

6         MS. LERMAN:  Your Honor, may I respond at this

7  point?

8         THE COURT:  Absolutely.

9         MS. LERMAN:  What we would like is for the

10 reduction of salary to, you know, start and end over the

11 three-year period of the plan so that with the reduction of

12 expenses and reduction of the insurance, I guess, because of

13 the reduction of the salary, you know, the overall plan --

14 there is a larger pool of plan payments.  And while I

15 recognize that's very common for the confirmation date and

16 the effective date to be, you know, perhaps 24 hours apart

17 from each other, I have had experience where that could be --

18 you know, the dates could be weeks apart.  And so, in my

19 thinking, the concern is that, well, the reduction starts on

20 the confirmation date, perhaps the effective date only begins

21 two months later, the three years start at that point, you

22 know, payments are made, but then before the three years are

23 essentially up, then the salary could rise again.

24        So maybe it's just a matter of tweaking how 41 is

25 currently written.

1        MR. WAXMAN:  Your Honor, if the United States

2   wants the effective date, we're prepared to do so.  But,

3   again, this was premised upon my understanding from speaking

4   with the United States that they wanted this in effect as

5   soon as possible, recognizing that, you know, the end of the

6   case is three years from the effective date and we don't know

7   what's going to happen with this (indiscernible) contract,

8   but we're certainly happy to make that change, if that's what

9   Ms. Lerman would like.

10        THE COURT:  Ms. Lerman?

11        MS. LERMAN:  Your Honor, I believe that's

12   acceptable to us.  Thank you.

13        THE COURT:  Okay.

14        MR. WAXMAN:  Then that's fine.

15        THE COURT:  Okay.  Let me just -- while this is --

16   never mind, I'll address it later.  Sorry.

17        All right, I guess the next comment is paragraph

18   53?

19        MR. WAXMAN:  Okay, let me just make a note, Your

20   Honor, so I make sure that we make that change.

21        Fifty three.  And this was actually a response to

22   my conversations, again, with Ms. Lerman, and the concern

23   that I understood that the Government had -- and it was not

24   an inappropriate one, of course -- was not having the debtor

25   maintaining whatever distributions are being -- are being --

1  cannot be delivered.  And so Ms. Lerman, the United States,

2  raised the issue of, well, you should say when the

3  distributions are going to be made.  So we included the six

4  dates and maintained a 180-day forfeiture, so that whatever

5  is not distributed will go into the next distribution to

6  creditors.  So if you have somebody who doesn't -- who

7  doesn't receive their thousand dollars and they don't contact

8  us, that goes into the next distribution for pro rata -- for

9  pro rata to the creditors who are entitled to it.

10         And that was the genesis of that provision.  We

11 weren't trying to be fancy, we were trying to be

12 accommodating, so that nobody would say that the debtors are

13 maintaining distributions that were undelivered and,

14 therefore, should not be given.  Under the -- or should be

15 given, rather.

16         Under the hypothetical where we maintain all of

17 the distributions until the end of the case for creditors who

18 would not be distributed, I don't know what happens if you

19 have $2,000 of cash that is undeliverable.  Does the debtor

20 have to wait 180 days after the sixth payment after the third

21 year to then make distributions of what could be 18 cents to

22 creditors?

23         THE COURT:  Well, no, because your plan provides

24 anything under 25 you're not paying.

25         MR. WAXMAN:  Except I think that it says that if

1  it's under 25, they'll get paid at the end, if I'm not

2  mistaken, but I think -- the idea was we weren't going to

3  make de minimis distributions during the course of the plan.

4  If somebody has accumulated over 25, we would certainly make

5  that distribution, but let me see what the provisions are.

6        (Pause)

7        MR. WAXMAN:  Okay, I stand corrected.  If the

8  final distribution would be less than $25, the debtor may

9  cancel it.

10        So, Your Honor, if you would like, we're happy to

11  change it so we'll hold them until the end, and we'll --

12        THE COURT:  I see Ms. Lerman shaking her head.

13        MS. LERMAN:  Your Honor, I don't mean to interject

14  before Mr. Waxman finishes.  I believe he may be

15  misunderstood.  I'm not asking that payments from the very

16  beginning be held for three years.  I simply wanted that each

17  payment has a 180-day forfeiture period.  So when the 180-day

18  ends for that first payment made, then, you know, unclaimed

19  funds can return to the pool, and so forth and so forward for

20  each distribution.

21        MR. WAXMAN:  Well, here's, I guess, the next

22  question.  I don't mean to interject and to have a

23  conversation with Ms. Lerman directly, but she's raising what

24  I think are reasonable issues, but the question then becomes,

25  if we can't get a distribution to John Smith on the first

1  payment, do we continue to try to make payments to John Smith

2  for numbers 2, 3, 4, 5, and 6.  I think that brings up the

3  question of each 180-day period.

4          And this is an effort, and Ms. Casey discussed it,

5  we can do a reasonable search, whether it's by Google or, you

6  know, Friend Finder or whatever it is online, to find

7  somebody, and the debtor will do that.  But I think, you

8  know, at a certain point, it's a law of diminishing returns.

9  And we're not trying to keep people from getting rightful

10 distributions, it's just a question how much effort has to go

11 into the process and making sure that if money isn't sent out

12 that it gets distributed to the right person and that it gets

13 distributed on a pro rata basis, whatever is undeliverable.

14         MS. LERMAN:  Your Honor, my response is, you know,

15 I represent the United States of America.  If somehow, for

16 some reason we somehow miss the first payment, you know, that

17 doesn't mean we're going to miss the next five.  I'm not

18 representing all creditors, so if it's easier -- if this can

19 be resolved with, you know, a carveout or a modification of

20 that just for the United States, then that's also fine.

21         MR. WAXMAN:  We're happy --

22         MS. CASEY:  Your Honor, may I --

23         THE COURT:  Yes, Ms. Casey, because I think this

24 was an objection the U.S. Trustee also initially raised.

25         MS. CASEY:  Yes, Your Honor, Linda Casey for the

1  United States Trustee.  I did initially raise this and I had

2  thought that -- it was my impression that the understanding

3  of the 180 days for each check had been a settlement and I

4  wasn't going to press that all of the money should stay until

5  the end.

6          I think, hearing the debtor's concerns in their

7  colloquy with the United States Attorney, I think the United

8  States Trustee's position should be that if there is a

9  forfeiture other than just the check that was returned as

10  undeliverable, it should be limited to distributions that

11  were made prior to the creditor providing the proper

12  information.  So if a creditor comes in, you know, at month

13  seven, it may miss the first two, but it gets the payments

14  for the rest of it, and that would be a compromise between

15  are we sending out checks to an address we know doesn't work

16  with the (indiscernible) here now, why can't I get paid the

17  rest of the distributions that haven't gone out the door yet.

18          But that's the concern that I have is that, if

19  there's a known creditor, they should be entitled to their

20  distributions, and that original position was they should

21  just wait until the end, and if they haven't come in within

22  180 days at the end of the three-year period, that's when

23  it's forfeited, but a potential resolution is you just

24  forfeit those that remain prior to raising their hand and

25  saying, hey, I'm still here.

1    MR. WAXMAN:  Your Honor, I don't think the debtor

2  has any opposition to what I think is a reasonable solution

3  proposed by the U.S. Trustee.  The issue that comes up from

4  that, though -- and, again, I don't mean to get into the

5  weeds, but I do think --

6    THE COURT:  I think we're already there, but it's

7  okay.

8    MR. WAXMAN:  Oh, the weeds are already over our

9  head, but the question that comes up and I think it's an

10 important one, and I think the concerns of Ms. Lerman and the

11 U.S. Trustee are well founded, the concerns that the debtor

12 has are more administrative.  It's not a gotcha; it's how

13 much effort you spend continuing to make payments.

14    I think Ms. Lerman raises a concern, although I

15 don't know that the United States has any reason to be

16 concerned, I'm sure that the address that they've given is

17 the one where money should go to and whatever that may be,

18 the Department of Revenue, the United States Department of

19 Revenue, the Department of the Treasury, and it may just be a

20 recording issue that Ms. Lerman is concerned about.  I don't

21 anticipate that that's really a central focus, but I

22 certainly understand the United States' concern.

23    Here's my question about what I'll just call more

24 rank-and-file type of creditors.  If somebody misses -- and I

25 agree with Ms. Casey, if somebody pops their head up and

1  says, hey, where's my distribution, they should get the next

2  distribution.  I'm not seeking -- the debtor is not seeking

3  to cause a forfeiture on that.  The question then becomes,

4  you know, how much of a duty does the debtor have to scour

5  the planet looking for somebody and trying to resend out the

6  distributions or find new distributions between the time when

7  the first one was made and the second one was made, the one

8  being distributions.

9         We're fine with the solution that's proposed by

10 Ms. Casey --

11        THE COURT:  The commercially reasonable efforts,

12 basically?

13        MR. WAXMAN:  Correct.  And I think that's what

14 we're talking about here at Ms. Casey's recommendation and

15 request.  We don't want to get into the situation where

16 somebody says that we are breaching our duty under the plan,

17 our fiduciary duties to make distributions where for whatever

18 reason they don't get the distributions, whether they have a

19 new address, whether -- you know, whether the dog ate their

20 mail, whatever the case may be, and we're certainly willing

21 to look at language proposed by anybody with respect to

22 making additional distributions and incorporating as little

23 as possible while still sharing Ms. Lerman's concerns, at

24 least her original concerns about making sure that the debtor

25 is not receiving a windfall from distributions that were not

1 │ delivered and holding them until the end of the case, in

2 │ which case, you know --

3 │       THE COURT:  I don't think that's a debtor windfall

4 │ because, as I read your plan, whatever is returned goes back

5 │ into the pot and is distributed to other creditors.

6 │       MR. WAXMAN:  Well, except here's the question,

7 │ Your Honor, what happens if after the sixth payment is made

8 │ and we held all the returned money until the end, is the

9 │ debtor going to make another distribution for, you know, a

10 │ relatively de minimis amount?

11 │       Again, Your Honor, I'm not trying to create

12 │ issues, I'm trying to resolve them before they come up.

13 │       THE COURT:  No, I appreciate that because process

14 │ is important.

15 │       MR. WAXMAN:  It is, which brings us to the issue

16 │ that I raised earlier with respect to the Reed creditors and

17 │ making distributions, but that's a different issue.

18 │       THE COURT:  I want -- I have a question separate

19 │ and apart about that --

20 │       MR. WAXMAN:  Okay.

21 │       THE COURT:  -- but as I understand -- I'm sorry.

22 │ I'm looking at the wrong provision.

23 │    (Pause)

24 │       THE COURT:  Okay, so I understand correctly, you

25 │ issue a distribution, it's not negotiated, it's forfeited

1  after 180 days, and the distribution goes back into an

2  unclaimed distribution pot that, conceivably, right, goes out

3  to the rest of the creditors who claim their distribution,

4  over time, it's a cumulative thing.  So whatever you don't

5  distribute the first time gets thrown into a larger pot, the

6  second time it will happen again, et cetera, right?

7          MR. WAXMAN:  Correct.  Let me -- let's work

8  through some actual numbers.  Let's say that there's a

9  distribution that is $500,000 and that's going out to

10 unsecured creditors, let's say 5,000 of it is undeliverable,

11 not cashed and is outstanding.  The next distribution would

12 be for $505,000 to the same creditor pool, less those people

13 who did not receive or who did not cash their checks before.

14 And so you would continue to make the payments and the money

15 would go out to those other creditors.

16         THE COURT:  Right.  And the Government is arguing,

17 if I understand correctly, that you don't forfeit that amount

18 after the first distribution.

19         MR. WAXMAN:  That's not what I understood Ms.

20 Lerman's comment to be.

21         THE COURT:  Okay, maybe I'm misunderstanding it.

22         MR. WAXMAN:  My understanding was that if somebody

23 is missing the opportunity or if somebody doesn't cash,

24 they're not forfeiting the rest of their distributions.

25         THE COURT:  So we're holding it --

1          MR. WAXMAN:  So maybe what -- maybe what Ms.

2    Lerman is suggesting, and I certainly welcome her response,

3    is that the 505,000 would go out to the same claims pool and

4    they would have another right, I guess, to cash that check of

5    the pro rata distribution, the 505,000.

6          MS. LERMAN:  Your Honor, Leah Lerman, again.

7    Again, Your Honor, I only represent the United States of

8    America.  My concern simply was that, you know, if somehow we

9    missed the first payment, that all of the other payments are

10   not then forfeited simply because the first one ended up

11   being forfeited.

12         THE COURT:  But you --

13         MS. LERMAN:  And I recognize --

14         THE COURT:  I'm sorry, but the first one would be

15   forfeited under your scenario?  You get the opportunity for

16   six distributions, but after 180 days, if you don't negotiate

17   a check that's sent to you, you forfeit that one?

18         MS. LERMAN:  I mean, that's my understanding of

19   how we were going to resolve it with Mr. Waxman that

20   basically you have this same opportunity for each

21   distribution to reach out and say I didn't receive it, please

22   resend it, before it's forfeited.

23         MR. WAXMAN:  Your Honor, we're fine doing that if

24   -- I mean, let's be clear, there's in all likelihood going to

25   be at most five and likely four distributions to unsecured

1   creditors because of the administrative expenses.  So we're

2   fine doing that.  And of course everything will be in a

3   report that gets filed with the Court, and I know Ms.

4   Nimeroff is going to discuss that, but we're fine with doing

5   as Ms. Lerman suggested, which is we make the second

6   distribution in the amount of 505,000 and then distribute to

7   all of the same people in a pro rata amount for that

8   distribution of 505 and things that bounced out would get

9   bounced back.

10          The problem with that solution -- and, again, it's

11  not a major problem -- is what happens with the final

12  distribution when you get bounce-backs (indiscernible) and,

13  again, we're dealing with a potential windfall for the debtor

14  in a process -- and I know Ms. Lerman in particular has

15  addressed with me the issue or concern of the debtor keeping

16  those funds.  We're trying to winnow down who the money goes

17  out to, to those people who signed -- who cash those checks,

18  rather than continuing to make distributions.  And we're fine

19  doing it however Your Honor would like.  We certainly welcome

20  the -- you know, we certainly welcome input from the U.S.

21  Trustee, Ms. Lerman, and any other party.

22          THE COURT:  Okay, why don't we do this.

23          Obviously, I'm going to take this matter under

24  advisement today.  So if the parties can discuss this issue

25  and if you can resolve it on your own, please let me know;

1  otherwise, I'll rule on the issue.

2          MS. LERMAN:  Thank you, Your Honor.

3          THE COURT:  And, Mr. Waxman, did you understand

4  the Government's issue with respect to paragraph 64 on

5  jurisdiction?

6          MR. WAXMAN:  I did not, Your Honor.

7          THE COURT:  Okay.  I'll let Ms. Lerman restate her

8  position.

9          MS. LERMAN:  Your Honor, the original paragraph

10  64, or whatever number it used to be, as I read it, you know,

11  it said that this Court retained jurisdiction within the

12  confines of Section -- of 28 U.S.C. Section 1334.  You know,

13  that provision provides the jurisdiction that this Court has;

14  there are times where it's exclusive, there are times where

15  it might not be exclusive.  The changes made to paragraph 64

16  seem to give the Court exclusive jurisdiction with respect to

17  some things and then, with respect to other things, you know,

18  follow what Section 1334 says, and I just wasn't -- I'm not

19  sure why there needs to be any alteration of what a statute

20  provides in terms of jurisdiction.

21          MR. WAXMAN:  Your Honor, the reason this was

22  changed was Agway and hearing your comments to the Agway

23  confirmation order with respect to exclusive jurisdiction to

24  interpret the plan and your Court's order, and removing

25  exclusive jurisdiction for any other order -- for other

108

1  matters and having concurrent jurisdiction.  This was an

2  attempt to address those issues before Your Honor raised

3  them.

4          THE COURT:  Well, I know why -- I mean, I don't

5  remember Agway specifically, but I will tell you that I will

6  strike where you give exclusive jurisdiction to everything

7  under the sun in an order, but I have no objection to

8  modifying the form of order to provide what the statute says.

9          MR. WAXMAN:  Well, Your Honor, this simply

10 provides that Your Honor has exclusive jurisdiction to

11 interpret the plan or this order.  I think those are both

12 consistent with what Your Honor maintained in Agway, that

13 it's consistent with this Court's jurisdiction, and the rest

14 is maximum extent permitted by law for purposes set forth in

15 one article of the plan and, to the extent Your Honor doesn't

16 exercise jurisdiction, then another court of concurrent

17 jurisdiction has the ability to hear it.  I don't think

18 there's anything that's particular unique about this

19 provision.

20         THE COURT:  Okay.  Well, I'm not going to rule on

21 the language of the order today.  I don't know if the parties

22 want to discuss it offline, I don't even know where we are

23 going forward, but I just wanted to make sure that Ms.

24 Lerman's comments were on the record today.

25         MR. WAXMAN:  Understood.

1          THE COURT:  Okay.

2          MS. LERMAN:  Thank you, Your Honor.

3          THE COURT:  Anything further, Ms. Lerman?

4          MS. LERMAN:  That's all, Your Honor.  Thank you

5    for the opportunity to speak.

6          THE COURT:  Thank you.

7          Okay, Ms. Nimeroff.  Thank you for your patience.

8          MS. NIMEROFF:  Thank you, Your Honor.  Can you

9    hear me?

10         THE COURT:  I can.

11         MS. NIMEROFF:  I appreciate very much the Court's

12   indulgence to allow me to appear remotely today.  Jami

13   Nimeroff, Subchapter V Trustee for the Alecto case.  And,

14   Your Honor, thank you for the opportunity to speak about

15   confirmation of a plan.

16         I usually like to be in a position to provide

17   unqualified support or, sometimes as it happens, opposition

18   to a plan, that's my ultimate goal, that's not my position at

19   this point.  And as you know, Your Honor, my ultimate job in

20   these cases is to facilitate a consensual plan of

21   reorganization.  As is abundantly clear, I did not achieve

22   that goal in this case --

23         THE COURT:  Wait one second --

24         MS. NIMEROFF:  -- despite --

25         THE COURT:  -- Ms. Nimeroff.  Hold on one second,

1  please.

2       (Pause)

3       THE COURT:  All right.  Sorry, Ms. Nimeroff.  I

4  was having a little bit of trouble hearing you and I just

5  want to make sure we had a clean transcript.

6       All right, you were stating your ultimate job is

7  to facilitate.

8       MS. NIMEROFF:  Yes, a consensual plan of

9  reorganization and, as is abundantly clear, I did not succeed

10  on that in this case despite many efforts on my part.

11      I do think, Your Honor, I've been narrowing the

12  issues and helped to bridge the gaps between the United

13  States Government and the debtor, and I am pleased about

14  that.  But here we sit with the Court, with Your Honor

15  considering whether to confirm a plan under 1191(b) as

16  nonconsensual.

17      And if I look to this plan, Your Honor, as a

18  simple disposable income plan under 1191(b), I believe the

19  plan qualifies for confirmation.  In particular, I'm

20  heartened by enhancements to the plan that came about most

21  recently specifically with the resolution of the United

22  States.  The reduction in Mr. Reddy's salary is meaningful;

23  perhaps not a large change to a distribution percentage to

24  creditors, the total claim pool here remains as high as it is

25  right now, but meaningful nonetheless.

1    Debtor's management has also agreed not to

2  increase compensation during the plan period.  And it is on

3  -- and, Your Honor, so for those reasons, it is -- you know,

4  the enhancements to the plan and, you know, provide ample and

5  meaningful additional amounts for distribution to creditors.

6    And so, Your Honor, if you look at it from, again,

7  a purely disposable income perspective and if you consider

8  the reduction in expenses that are referenced in the revised

9  budget, I think that this plan does satisfy the obligation to

10  devote the projected disposable income.

11    Here, we also have the situation where the debtor

12  has agreed to treat this not just as a projected disposable

13  income plan, but an actual one such that, to the extent there

14  are -- there's additional net income that inures to the

15  benefit of the debtor and its operations, such as, for

16  example, if the control group reserve that's in there is not

17  required to be paid, that those amounts will drop to the

18  creditors' benefit and will be treated as disposable income.

19  Those also are benefits here, Your Honor, and I think amply

20  support confirmation.

21    So, if I consider it just looking at 1191(b) and

22  looking at the fair and equitable test under 1191(c), Your

23  Honor, I think this plan satisfies those.  With respect to

24  the issues of 1191(c) and the default language, there is

25  language that was added to the confirmation order to provide

1  for it.  While it might not be the most robust language we've

2  ever seen, it is language that has been accepted by the

3  courts in this jurisdiction.

4          So, again, Your Honor, from that perspective and

5  when I look at it that way, I am supportive of confirmation.

6          Your Honor, there are other factors to

7  confirmation, though, and it is those that I am remaining

8  what I would call Switzerland, and I have made that clear to

9  both the Reed action judgment creditors and the debtors.

10  Your Honor, as well as 1191(b), you know, the disposable

11  income analysis, you have to find that the best interests of

12  creditors test is satisfied, and here I think that is an

13  issue in play, as well as the release of causes of action for

14  $25,000.  I view those as going hand-in-hand.

15          The debtor's position is that a liquidation

16  analysis shows that the creditors will be far better off if

17  the plan is confirmed and the disposable income is allocated

18  to creditors (indiscernible) the plan.  There is the argument

19  of the Reed action judgment creditors says in fact, if this

20  case was converted to a Chapter 7, and a Chapter 7 trustee

21  were to look at this and bring the causes of action that it

22  has described to the Court, it believes the creditors will be

23  better off.  And because of that, Your Honor, you should not

24  approve the release of those claims in exchange for solely

25  $25,000.

1      And, as I have noted, it is that issue -- or these

2  issues, if you will, the release and the best interests of

3  creditors that I'm not taking any position here, and, again,

4  I have told the parties that.

5      Your Honor, I haven't been tasked with

6  investigating causes of action, I haven't seen all of the

7  discovery, I don't have that within my capabilities in this

8  case, as I've said many times, and I am not a creditors

9  committee, I am not the equivalent to a creditors committee.

10 And so while -- I'll sum up by saying, while I usually like

11 to be in a position to offer an unqualified position on

12 confirmation one way or the other, I feel I must stay on the

13 sidelines to be (indiscernible) and that is where I remain

14 today.

15      Lastly, Your Honor, unless you have questions for

16 me, I will note, as I noted in the beginning, I do have some

17 remaining concerns about language in the confirmation order

18 if and when we get to that point, but these are my comments

19 with respect to plan confirmation.  Thank you.

20      THE COURT:  Thank you.

21      MR. WAXMAN:  Your Honor, I think you have

22 everything, the presentation of the debtors, Mr. Sullivan and

23 the Reed creditors, you've heard from the U.S. Trustee, the

24 United States, and the Subchapter V Trustee.  I don't know if

25 Your Honor has any further questions for the debtor.

1        THE COURT:  Well, let me just ask before I close,

2   does anyone else wish to be heard?  Because what I intend to

3   do is take this matter under advisement, my chambers will

4   reach out, and I will try to rule promptly.  If there is any

5   change as a result of any negotiations, please reach out, but

6   with that, we're going to adjourn for today.

7        MR. WAXMAN:  Thank you, Your Honor.

8        THE COURT:  All right, thank you.  Have a good

9   day, everyone.

10       (Proceedings concluded at 1:21 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

115

1                              CERTIFICATION

2              We certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of our

5    knowledge and ability.

6

7    /s/ William J. Garling                March 20, 2024

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12   /s/ Tracey J. Williams                March 20, 2024

13   Tracey J. Williams, CET-914

14   Certified Court Transcriptionist

15   For Reliable

16

17   /s/ Mary Zajaczkowski                 March 20, 2024

18   Mary Zajaczkowski, CET-531

19   Certified Court Transcriptionist

20   For Reliable

21

22

23

24

25

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| ALECTO HEALTHCARE SERVICES LLC, | Case No. 23-10787 (JKS) |
| Debtor.[1] | **Re: Docket No. 261** |

**DECLARATION OF STEVEN BALASIANO, INDEPENDENT DIRECTOR/MANAGER, IN SUPPORT OF CONFIRMATION OF THE DEBTOR'S SMALL BUSINESS SUBCHAPTER V PLAN OF REORGANIZATION DATED DECEMBER 19. 2023**

I, Steven Balasiano, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a founding member of MHR Advisory Group, with an office located at 6701 Bay Parkway, Suite 300, Brooklyn, New York 11204, and I am the independent director/manager of the above-captioned debtor (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case").

2.      I submit this Declaration (the "Declaration") in support of confirmation of the Debtor's Small Business Subchapter V Plan of Reorganization Dated December 19, 2023 [Docket No. 261] (as may be amended, modified, or supplemented from time to time, the "Plan").[2] Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, and/or my opinion based upon my experiences, knowledge, and information concerning the Debtor and provided to me by the Debtor and its subsidiaries management team, and/or the Debtor's other professionals and my counsel.[3]

---

[1] The last four digits of the Debtor's federal tax identification number are 9723. The Debtor's address is 101 N Brand Boulevard, Suite 1920, Glendale, CA 91203.

[2] Defined terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the Plan.

[3] Since my initial retention, I have had my own counsel.

16550592/3

**JA2267**

3.      The facts set forth in this Declaration are based upon my personal knowledge, my review of the Debtor's records, information provided to me or verified by an employee of the Debtor, and my personal opinion based upon my experience, knowledge, and information provided to me.

4.      If I were called upon to testify, I would testify competently to the facts set forth herein.

## BACKGROUND

5.      On June 16, 2023, the Debtor filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

6.      On June 23, 2023, Sherman/Grayson Hospital LLC, an affiliate of the Debtor ("Sherman Grayson"), filed a voluntary Chapter 11 petition in the Bankruptcy Court.

7.      The Debtor has continued in possession of its property and has continued to operate and manage its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      I understand that, after Sherman/Grayson Hospital LLC ("Sherman/Grayson"), a subsidiary of the Debtor, filed for bankruptcy in the Delaware Bankruptcy Court on June 23, 2023, the Office of the United States Trustee, certain creditors, and the Bankruptcy Court each raised issues with respect to whether the Debtor's current managers and members were conflicted from addressing certain issues in connection with claims and liabilities among the Debtor and Sherman/Grayson.  Additionally, certain parties raised issues with respect to potential claims against the Debtor's insiders as a result of fraudulent conveyances allegedly received by Sherman/Grayson, other affiliates, and insiders.

16550592/3

**JA2268**

**Retention and Responsibilities as Independent Director/Manager**

9.      On August 4, 2023, I was appointed the Debtor's independent director/manager.  I understand that I was selected by the Debtor's board of managers because I have over 30 years of experience as a business leader, advisor and practicing attorney. In my role at MHR Advisory Group, I have served as a fiduciary in my capacity as a liquidating trustee, plan administrator, and other similar roles for approximately 10 years. Further, I have significant operational experience in many executive positions through my career including the Senior Vice President and Chief Administrative Officer of The Children's Place Retail Stores, at the time, a multi-billion dollar children's apparel retailer. Subsequent to that, I have acted as the President to many national and international consumer goods and manufacturing companies. I understand that the board believed that I have sufficient education, training, and experience to make independent decisions on behalf of the Debtor and its estate.

10.      On August 7, 2023, the Board of Managers executed a written consent that provided, among other things, that my responsibilities specifically included investigating, evaluating, and settling certain claims of the Debtor as against Sherman/Grayson Hospital, LLC ("Sherman/Grayson") and disputes between Alecto and the official committee of unsecured creditors in the Sherman/Grayson bankruptcy case, and such other issues as may arise in the Chapter 11 Case.  Further, the August 7, 2023 written consent specifically provided that the Debtor's Board of Managers officers, and employees would provide me with such information and documents as I may request from time to time, and shall not interfere or impede the performance of my duties as an independent director/manager.

3

11.     An application to retain me as Independent Director/Manager of the Debtor was filed with the Bankruptcy Court on August 9, 2023, seeking approval of my retention nunc pro tunc to August 4, 2023 [Docket No. 93] (the "Application"), and the Application was approved by this Court on August 16, 2023 [Docket No. 118].

12.     On August 19, 2023, the Board of Managers executed a second written consent that specifically expanded my duties and responsibilities to include that, to the extent not already provided, my appointment as an independent director of the Debtor includes authority to investigate potential claims against the Company's affiliates and insiders, and to bring any such actions as I believe in my sole discretion are valid. Further, the August 19, 2023, written consent provided that Alecto's Board of Managers, officers, and employees would provide me with such information and documents as I may request from time to time and shall not interfere or impede the performance of my duties as an independent director/manager.

13.     In the course of my duties, I have reviewed the Plan, which I understand is intended to maximize the value of the Debtor's assets through the continuation of the Debtor's operating business and providing creditors with all of the Debtor's disposable income for the three years after the effective date of the Plan, including money received from the Debtor's affiliates. I understand that the amount to be received by creditors under the Plan is more than creditors would receive on account of their claims if the case was converted to Chapter 7. Further, I am familiar with the proposed releases of the claims set forth in Article VII of the Plan, and the future compensation to be received by management. I have also reviewed the objections to the Plan filed by the United States, the United States Trustee and the Reed Judgment Creditors.

4

**Investigation of Potential Claims and Releases under the Plan**

14.    Since the time of my appointment, my responsibilities have specifically included investigating, evaluating, and settling certain claims of the Debtor as against Sherman/Grayson Hospital, LLC ("Sherman/Grayson"), including payment of certain disputed insurance amounts, and working to resolve a dispute between Alecto and the official committee of unsecured creditors appointed in the Sherman/Grayson bankruptcy case.  Additionally, since my appointment I have regularly spoken counsel for the Debtor about various issues that have arisen in the case and my own counsel in this case, who I understand has also separately spoken with Debtor's counsel.

15.    Further, in the course of my duties, and consistent with the August 19, 2023, written consent, I investigated potential claims against the Debtor's affiliates and insiders.  In connection with that investigation, I had the opportunity to request documents from the Debtor, and I availed myself of that opportunity, and I have reviewed certain documents in connection with that investigation and evaluation of potential claims against the Debtor's affiliates and insiders, including memoranda/reports prepared for me and at my direction by Ms. Gould and counsel for the Debtor, and the expert report prepare by Mr. McCutcheon.  Specifically, among other things, I requested, received, and reviewed the Debtor's tax return and financial statements for the fiscal year of 2019, which I understand were kept in the ordinary course of business.

16.    In connection with my investigation of potential claims against the Debtor's insiders and affiliates – both prior to and since receipt of documents – I also had multiple conferences with Michael Sarrao, the Executive Vice President General Counsel, and Secretary of the Debtor, and Leanne Gould of Gould Consulting Services, a forensic accountant retained by the Debtor, as well as Debtor's counsel and my own counsel.  During those conferences, I had the opportunity to ask questions with respect to potential claims against the Debtor's insiders and

16550592/3

**JA2271**

affiliates. I availed myself of that opportunity, both in connection with the potential claims of alleged fraudulent conveyances and potential claims of breaches of fiduciary duty by the Debtor's members and managers.

17.     Significantly, my investigation was solely with respect to releases of the Debtor's claims against its insiders and affiliates, and not third-party releases, and I understand based upon my review of the Plan and my conversations with counsel that the Plan does not provide third party releases. Based upon my review of potential claims of the estate against the Debtor's insiders, I believe that the proposed Debtor releases and exculpation provisions of the Plan are appropriate, particularly because the Plan does not seek any third-party releases.

18.     I have also reviewed the expert report prepared by Jeff McCutcheon, to address the reasonableness of the future compensation of Laxman Reddy. I also had the opportunity to confer with Mr. McCutcheon, with counsel for the Debtor and my own counsel present, to address any questions with respect to the reasonableness of the future compensation of Mr. Reddy.

19.     After receiving information, and after speaking with the Debtor's advisors and with my own counsel, and in reliance upon the information and advice received, I determined that there are no valid claims against insiders for avoidance of fraudulent conveyances. My decisions were premised upon, among other things, the claims of alleged fraudulent conveyances relate to a transfer that occurred when the Debtor was solvent, and that the property was subsequently transferred back to the Debtor.

20.     Further, with respect to alleged claims of breaches of fiduciary duty, I do not believe that they are likely to be successful because, among other things, the decisions of the Debtors' managers were valid exercises of their business judgment. Among other things, I understand that the Debtor's managers decided to continue to fund the Debtor's subsidiaries to

16550592/3

**JA2272**

avoid new obligations to the Debtor arising from guaranties to which the Debtor was liable, which may have exceeded the amount of the payments that the Debtor was making to permit the subsidiaries to continue.

21.    Additionally, I understand that the Debtor was actively marketing certain of its subsidiaries, including Sherman/Grayson, and had the Debtor ceased to loan money to its subsidiaries, the Debtor would have lost the going concern value of those subsidiaries.

22.    I have been advised with respect to applicable law governing the alleged claims, including the California Uniform Fraudulent Transfer Act and Delaware Corporate Law, and the standards for fiduciary duties by managers, including the implications of the Debtor's business judgment rule. Based upon my investigation of the underlying facts, and in reliance upon the advice of counsel and other professionals, I concluded that there are no valid claims against the Debtor's insiders and affiliates.

23.    Further, I understand that bringing such actions could cause the reorganized Debtor to incur significant costs, including the costs of indemnification of the members and managers' fees and expenses under the Operating Agreement, all of which could significantly reduce the Debtor's disposable income to be distributed to creditors under the Plan.

24.    Based upon the foregoing, and based upon the fact that the Plan does not seek to provide any third-party releases, I determined that the releases included in the Plan are reasonable and appropriate.

### Review of Future Compensation of Management

25.    In the course of my duties, I have also reviewed the Article IV.7 of the Plan, which addresses the post-confirmation salaries of management retained by the Debtor. I have also reviewed the expert report prepared by Jeff McCutcheon, to address the reasonableness of the

16550592/3

JA2273

future compensation of Laxman Reddy, the Debtor's Chief Executive Officer.  I also took the opportunity to confer with Mr. McCutchen, with counsel for the Debtor and my own counsel present, to address my questions with respect to the reasonableness of the future compensation of Mr. Reddy.

26.     Based upon my review and understanding of Mr. McCutcheon's expert report, and based upon my conferences with Mr. McCutcheon, and Mr. Sarrao, Mr. Reddy's future compensation appears reasonable.

Dated: February 29, 2024

*/s/ Steven Balasiano*
Steven Balasiano
Independent Director/ Manager

16550592/3

**JA2274**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| ALECTO HEALTHCARE SERVICES LLC, | Case No. 23-10787 (JKS) |
| Debtor.[1] | **Re: Docket No. 261** |

### DECLARATION OF MICHAEL SARRAO, EXECUTIVE VICE PRESIDENT, GENERAL COUNSEL, AND SECRETARY OF ALECTO HEALTHCARE SERVICES LLC, IN SUPPORT OF CONFIRMATION OF THE DEBTOR'S SMALL BUSINESS SUBCHAPTER V PLAN OF REORGANIZATION DATED DECEMBER 19, 2023

I, Michael Sarrao, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.     Since January 1, 2013, I have served as the Executive Vice President, General Counsel, and Secretary for Alecto Healthcare Services LLC, a Delaware limited liability company (the "Debtor" or "Alecto").  I also serve on the Debtor's board of managers (the "Board of Managers").

2.     Except as otherwise indicated, all statements set forth in this Declaration are based upon: (a) my personal knowledge; (ii) the Debtor's records made by employees or agents of the Debtor who report to me and who have a business duty to enter the records of the Debtor accurately and at or near the time of the event which they record, (iii) information supplied to me by other members of the Debtor's management or the Debtor's professionals that I believe in good faith to be reliable; (iv) my review of relevant documents; or (v) my opinion based upon my experience and knowledge of the Debtor's operations and financial condition. Further, I am familiar with the facts and circumstances relating to the Debtor's pending bankruptcy case (the "Chapter 11 Case"), which are incorporated by reference herein.

---

[1] The last four digits of the Debtor's federal tax identification number are 9723. The Debtor's address is 101 N Brand Boulevard, Suite 1920, Glendale, CA 91203.

3.      I submit this Declaration in support of confirmation of the Debtor's *Small Business Debtor's Plan of Reorganization* dated December 19, 2023 [Docket No. 261] (as may be further modified, amended, or supplemented from time to time, the "Plan").

4.      I am authorized to submit this declaration (the "Declaration") on behalf of the Debtor, and if I were called upon to testify, I would testify competently to the facts set forth herein.

## BACKGROUND

5.      The Debtor is a Delaware limited liability company with its headquarters in Glendale, California.   The Debtor was formed in 2012 to serve as a holding company for healthcare- related entities.   Since its inception, the Debtor has formed various subsidiaries for the purposes of (a) acquiring distressed acute care hospitals; (b) operating acute care hospitals; (c) providing management services to acute care hospitals that are not owned by the Debtor or its subsidiaries; and (d) owning and operating businesses affiliated with acute care hospitals operated by the Debtor's subsidiaries.

6.      Between August 22, 2016 and August 26, 2022, the Debtor and its subsidiaries and affiliates (the "Borrowers"[2] were borrowers under an accounts receivable credit facility (the "AR Credit Facility"), first with White Oak Healthcare Finance, LLC ("White Oak") and then with CNH Finance Fund I, LP ("CNH Finance").[3]

---

[2] The Borrowers were Alecto Healthcare Services LLC, Alecto Healthcare Services Los Angeles LLC, Olympia Health Care, LLC, Horizon Real Estate Holdings, LLC, Alecto Healthcare Services Fairmont LLC, FRMC Physicians, Inc., Alecto Healthcare Services Sherman LLC, Sherman/Grayson Hospital, LLC ("Sherman/Grayson"), Sherman/Grayson Health Services, LLC, Sherman/Grayson Sponsor, LLC, Sherman MD Provider, Inc., and Alecto Healthcare Services Hayward LLC.   Alecto Healthcare Services Ohio Valley LLC, Alecto Healthcare Services Wheeling LLC, Alecto Healthcare Services Martin's Ferry LLC, and Alecto East Ohio Physicians, Inc., became borrowers as of June 2, 2017.

[3] CNH Finance purchased the facility from White Oak on July 8, 2019.

16573753/2

### A.    Terms of the AR Credit Facility

7.    Under the terms of the AR Credit Facility, the collections received by each subsidiary were swept on a daily basis to the lender and applied to the balance of the AR Credit Facility.  On a daily or weekly basis, the Debtor, as agent for all Borrowers, would, subject to availability, request advances under the AR Credit Facility, and the lender would make the advances to Alecto, as the agent for all Borrowers via a wire transfer to the account established by Alecto for receiving such advances (City National Bank Account No. x3784).  Once the advances were received, Alecto would allocate the advance among the borrowers based on immediate cash needs and retain such funds as were necessary to pay for necessary expenses that were allocated among the subsidiaries such as insurance.  In other words, Alecto was not advancing its own funds, but instead was allocating the funds received by the borrowers under the AR Credit Line among the borrowers.

8.    So that the various advances were accounted for, Alecto developed a system whereby each subsidiary would record an intercompany balance on a monthly basis based on the credit facility activity.  If the advances received by the subsidiary exceeded the collections swept from the subsidiary then the difference would be recorded as an intercompany receivable due by the subsidiary to Alecto.  If the collections swept from the subsidiary exceeded the advances received by the subsidiary, the subsidiary would record an intercompany receivable due by Alecto to the subsidiary which would be offset on the books by the intercompany receivables owed to Alecto by other subsidiaries.  As an example, while Alecto recorded a receivable due from Sherman/Grayson it also recorded a receivable due to Olympia Health Care, LLC.

9.    The Line of Credit was terminated in August 2022, after which, the Debtor served as the de facto conduit for the flow of funds among the affiliated entities.

**B.    Sale of Certain Assets of Alecto's Affiliates and Other Advances**

10.    The majority of the advances made by the Debtor after the AR Credit Line was terminated in August 2022 were the result of advances from two non-debtor subsidiaries that did not have any non-contingent liabilities or debt when they provided such advances. First, Horizon Real Estate Holdings, LLC ("Horizon"), the former owner of the real estate on which Olympia Medical Center was located, sold the real estate to UCLA Health in January 2021, and Horizon received net proceeds from the sale. These funds were transferred to Alecto to provide advances to a number of Horizon's affiliates and Alecto's subsidiaries and were used to pay a number of priority claims for the affiliates including payroll taxes. Since its mortgage debt was paid off through escrow when the sale to UCLA Health closed in January 2021, Horizon did not have any debt or other non-contingent liabilities after January 2021. Horizon does not have currently have any non-contingent liabilities.[4]

11.    Second, Plaza Medical Office Building, LLC ("Plaza MOB"), the former owner of a medical office building and parking garage adjacent to Olympia Medical Center, sold the office building and parking garage to UCLA Health on August 31, 2021 and received net proceeds from the sale. The net proceeds received by Plaza MOB provided the funding for the advances made to certain of its affiliates and Alecto's subsidiaries. Plaza MOB transferred funds to Alecto for purposes of making the advances to the affiliates. After the transaction was completed on August 31, 2021, Plaza MOB did not have any debt or non-contingent liabilities.[5]

---

[4] Based upon Alecto's ownership interest in Alecto Healthcare Services Ohio Valley LLC and Alecto Healthcare Services Fairmont LLC (and therefore Alecto's indirect ownership interest), Horizon is considered to be part of the control group with respect to the Alecto Healthcare Services Ohio Valley LLC Pension Plan and with respect to Alecto Healthcare Services Fairmont LLC's withdrawal liability with respect to a multi-employer pension plan. Horizon could possibly have liability with respect to both matters.

[5]    Similar to that of Horizon, Plaza MOB could have could possibly have liability with respect to the Alecto Healthcare Services Ohio Valley LLC Pension Plan and withdrawal liability of a multi-employer pension.

C.      **Other Obligations of Alecto and Its Affiliates[6]**

12.     In addition to the joint obligations under the AR Credit Line, Alecto and its Affiliates had a significant number of obligations to other parties, which necessitated that Alecto transfer funds on account of its affiliates.

13.     First, Alecto was a guarantor under the MPT Sherman Lease.  The terms of the MPT Sherman Lease provided among other things, that Sherman/Grayson was obligated to maintain various forms of insurance and meet other obligations to MPT of Sherman/Grayson.  If Sherman/Grayson failed to meet its obligations under the MPT Sherman Lease, Alecto would have an obligation to meet these obligations under the MPT Lease Guaranty or reimburse MPT of Sherman for the costs associated with securing replacement coverage.  Significantly, Alecto decided that it was necessary to pay the portion of insurance premiums due on Alecto's master insurance policies that were allocated to Sherman/Grayson in order to avoid (i) this liability which would be a breach under the MPT Sherman Lease and (ii) the potentially calamitous effect of havjng no insurance for an operating hospital.

14.     Altera Highland, LLC, an unrelated third party, owns an office building located at 300 N. Highland Avenue, Sherman, Texas 75092 immediately adjacent to Wilson N. Jones Regional Medical Center (the "POB") subject to a ground lease with MPT of Sherman, LLC as assignee of Sherman/Grayson.  The Ground Lease provides, among other things, that the Ground

---

[6] Before outlining the nature of the advances and resulting obligations among the Debtor and other Borrowers and their affiliates- both in the year prior and after the to the termination of the AR Credit Facility - it is important to consider the timeframe, particularly as it relates to the COVID-19 pandemic.  The first deaths in the United States were attributed to COVID occurred in January 2020, and the United States declared COVID to be a "public health emergency" on January 31, 2020.  The pandemic had immediate and direct effects upon the Debtor and its affiliates. Among other things, hospitals and other healthcare related entities, were required to incur significant expenses in connection with the purchase of new equipment and other medical necessities.  Further, and particularly after the initial wave of infections, hospitals also incurred significant costs with respect to medical personnel.  While much – but not all - of the cost was borne by the federal and state governments, the pandemic put economic pressure on hospitals and other healthcare entities, particularly as healthcare providers needed to increase the salaries of healthcare workers.

Lessor (currently, MPT of Sherman) has an obligation to purchase the POB if a healthcare facility is not operated at the site of Wilson N. Jones Regional Medical Center for a period of 12 consecutive months. The purchase price demanded by Altera Highland, LLC would likely be in excess of $13 million. In other words, MPT of Sherman could be forced to acquire the POB for a price in excess of $13 million if no healthcare facility was operated for 12 consecutive months. Under the terms of the MPT Sherman Lease, Sherman/Grayson agreed to indemnify MPT of Sherman with respect to this obligation and Alecto guaranteed Sherman/Grayson's obligations to MPT. As a result, Alecto would face liabilities in excess of $13 million if Wilson N. Jones Regional Medical Center was to close for 12 consecutive months. To avoid this potential liability, Alecto decided it was necessary to provide funding to Sherman/Grayson so it could continue to operate.

15.    Additionally, Alecto also faced contingent liabilities to as a member of the control group with respect to (a) the Alecto Healthcare Services Ohio Valley LLC Pension Plan (the "OV Pension Plan") and (2) Alecto Healthcare Services Fairmont LLC's liability with respect to its withdrawal from a multi-employer pension plan (the "Fairmont Withdrawal Liability"). Under applicable law, Alecto, as the 80% or 100% owner of Alecto Healthcare Services Ohio Valley[7]("Alecto Ohio Valley") and the 80% or 100% owner of Alecto Healthcare Services Fairmont LLC,[8] is considered to be part of the "control group" with respect to the OV Pension Plan and the Fairmont Withdrawal Liability. Absent making quarterly payments, the Fairmont Withdrawal Liability could be as much as $10 million and the liabilities associated with the OV Pension Plan would have been in excess of $4 million before the recent spike in interest rates.

---

[7] Alecto owned 80% of Alecto Healthcare Services Ohio Valley LLC prior to January 1, 2022, and has owned 100% of Alecto Healthcare Services Ohio Valley LLC since January 1, 2022.

[8] Alecto owned 80% of Alecto Healthcare Services Fairmont LLC prior to January 1, 2022, and has owned 100% of Alecto Healthcare Services Ohio Valley LLC since January 1, 2022.

To avoid much significantly greater liabilities, Alecto provided funding to meet certain quarterly or other funding obligations of Alecto Ohio Valley and Alecto Fairmont.

**D.     Decisions by the Debtor's Officers and Board of Managers to Continue Funding Its Subsidiaries**

16.     As Alecto experienced after the closure of Ohio Valley Medical Center by Alecto Healthcare Services Wheeling LLC and East Ohio Regional Hospital by Alecto Healthcare Services Martin's Ferry LLC in 2019, and the closure of Fairmont Regional Medical Center by Alecto Healthcare Services Fairmont LLC in 2020, the closure of a hospital without a buyer in place results in a number of obligations that simply cannot be left unsatisfied including: (1) securing and taking custody of the medical records generated by the hospital and making these records available to the patients; (2) securing and taking custody of employee and other records and making them available to employees; (3) securing and taking custody of computer systems which include confidential and sensitive information regarding employees and patients; (4) securing and properly disposing of pharmaceuticals and other regulated materials; (5) securing and properly disposing of medical waste including radiological materials; (6) preparing and filing all necessary reports including Medicare and Medicaid cost reports and responding to audits of the same; (7) responding to governmental inquiries; (8) addressing lawsuits by vendors and others against Alecto even though such lawsuits would likely lack merit; (8) otherwise orderly winding up the operations of the hospital.[9]  These obligations imposed and impose a significant burden on Alecto with respect to the hospitals identified above and Alecto's officers and Board of Managers reasonably believed that they would impose a significant obligation on Alecto if Sherman/Grayson was to close without a buyer.  To avoid these obligations and costs

---

[9] Also, importantly, closing a healthcare facility without a purchaser caused a loss of value by sale without a going concern.

associated therewith, decisions were made to provide funding to Sherman/Grayson while it sought to implement a turnaround plan and locate a buyer.

17.    Although Sherman/Grayson was losing money, Alecto's Managers did not believe that it was a foregone conclusion that Sherman/Grayson would continue to lose money. Like many hospitals and other healthcare facilities, Sherman/Grayson faced significant financial challenges during and after the pandemic, and as a result, Sherman/Grayson was operating at a loss of over $1,000,000.00 per month.   By continuing to operate Sherman/Grayson, Alecto maintained the possibility that Sherman/Grayson would be able to achieve profitability.   Further, Alecto believed that there was an opportunity for Sherman/Grayson's financial performance to improve based on new growth initiatives, including the re-opening of the behavioral health unit and an expansion of occupational health services, cost savings initiatives, and the potential for increases in supplemental funding related to the high percentage of uninsured and underinsured patients that are treated by Sherman/Grayson.

18.    As Alecto's subsidiaries faced financial challenges and required funding, Alecto's Managers evaluated the funding needs with a number of considerations in mind and certain of Alecto's subsidiaries made advances to the other subsidiaries through Alecto.   This process occurred on a daily basis as the members of the Debtors' Board of Managers considered the financial needs of Alecto's subsidiaries.   The most significant of these were Alecto's liabilities related to MPT of Sherman and ongoing expenses of Sherman/Grayson.

19.    Through this process, Alecto's Managers believed that there were parties who were interested in purchasing the assets of Sherman/Grayson and that an agreement could be reached with an interested party that would eliminate future liabilities and avoid the burden associated with closing the hospital without a buyer, while realizing a sale of Sherman/Grayson

as a going concern, rather than at liquidation value. As more fully set forth in the (i) Declaration of Michael Sarrao, Executive Vice President of Sherman/Grayson Hospital, LLC, in Support of First Day Motion [Sherman/Grayson, Docket No. 3],[10] (ii) Motion of the Debtor for Entry of an Order (I) Authorizing the Private Sale of Substantially All Assets Free And Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment Of Executory Contracts and Unexpired Leases, and (III) Granting Other Related Relief [Sherman Docket No. 60] (the "Sherman Sale Motion"), (iii) Declaration of Michael J. Sarrao in Support of the Sherman Sale Motion [Sherman Docket No. 60], and  (iv) Declaration of Michael Sarian in Support of the Sherman Sale Motion [Sherman Docket No. 63], Sherman/Grayson began the process of marketing Sherman/Grayson in 2019.

20.    Specifically, in 2019, Sherman/Grayson engaged Bank of America Merrill Lynch develop a confidential information memorandum and identify parties who may be interested in acquiring or investing in WNJ. Had Alecto ceased its support of Sherman/Grayson, Sherman/Grayson's operations would have necessarily ceased and Alecto would not have realized any value on account of its interest in Sherman/Grayson.

21.    The impact on the community and employees if Sherman was to close Wilson N. Jones Regional Medical Center and the likelihood that Alecto would be facing lawsuits from vendors and others which Alecto would have to defend. Even though the lawsuits would likely be meritless, Alecto would still have to defend the lawsuits.

22.    Ultimately, by June 2023, Alecto was owed approximately: (i) $60.1 million by Sherman, (ii) $4,653,799 by Alecto Fairmont, (iii) $30,657,574 by Alecto Healthcare Services Wheeling, and (iv) $885,862 by Alecto Martin's Ferry LLC.

---

[10] References to "Sherman Docket Nos" refer to Case No. 23-10810-JKS, pending in the United States Bankruptcy Court for the District of Delaware.

23.     Without Alecto's ability to continue funding Sherman/Grayson's operations, Sherman/Grayson filed its own Chapter 11 case on June 23, 2023. Shortly after filing for bankruptcy relief, Sherman/Grayson filed a motion to approve the sale of substantially all of its assets. In Sherman/Grayson's bankruptcy case, the Court ultimately approved the sale, on account of which, the Sherman/Grayson estate will receive a total of approximately $250,000 the assumption of certain liabilities, and the payment of all of Sherman/Grayson's ongoing administrative expenses.

### E.     The Debtor's Bankruptcy Filing

24.     On June 16, 2023 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

25.     On the Petition Date, the Debtor filed the Declaration of Michael Sarrao in Support of First Day Motions (the "First Day Declaration") [Docket No 3]. The statements in the First Day Declaration, including the Debtor's business, corporate structure and its recent financial performance and its prepetition indebtedness, and the circumstances surrounding the commencement of this Chapter 11 case were true and correct, and I incorporate the facts as set forth in First Day Declaration as if fully set forth herein.

26.     On June 20, 2023, Jami Nimeroff of Brown McGarry Nimeroff LLC was appointed as the Subchapter V Trustee (the "Subchapter V Trustee").

27.     The Debtor has continued in possession of its property and has continued to operate and manage its business as debtor in possession pursuant to sections 1107(a) and 1108 of the United States Bankruptcy Code (the "Bankruptcy Code").

28.     As noted above, Sherman/Grayson filed its own voluntary Chapter 11 bankruptcy in the Delaware Bankruptcy Court on June 23, 2023.  After Sherman/Grayson filed its petition, the Office of the United States Trustee, certain creditors, and the Bankruptcy Court each raised issues with respect to whether the Debtor's current managers and members were conflicted from addressing certain issues in connection with claims and liabilities among the Debtor and Sherman/Grayson.  Additionally, certain parties raised issues with respect to potential claims against the Debtor's insiders as a result of fraudulent conveyances allegedly received by Sherman/Grayson, other affiliates, and insiders.

**F.     Appointment and Retention of the Independent Director and Forensic Accountant**

29.     On August 4, 2023, the Board of Managers appointed Steven Balasiano as the Debtor's independent director/manager.  Mr. Balasiano was selected by the Board of Managers because he has over 30 years of experience as a business leader, advisor and practicing attorney. In his role at MHR Advisory Group, Mr. Balasiano served as a fiduciary capacity as a liquidating trustee, plan administrator, and other similar roles for approximately ten years. Further, Mr. Balasiano has significant experience as an interim officer or director, including served in many executive positions through his career including the Senior Vice President and Chief Administrative Officer of The Children's Place Retail Stores, at the time, a multi-billion dollar children's apparel retailer. Subsequent to that, Mr. Balasiano acted as the President to many national and international consumer goods and manufacturing companies. When the Board of Managers retained Mr.  Balasiano, it believed that Mr. Balasiano had sufficient education, training, and experience to make independent decisions on behalf of the Debtor and its estate.

30.     On August 7, 2023, the Board of Managers executed a written consent that provided, among other things, that Mr. Balasiano's responsibilities specifically included

investigating, evaluating, and settling certain claims of the Debtor as against Sherman/Grayson Hospital, LLC ("Sherman/Grayson") and disputes between Alecto and the official committee of unsecured creditors appointed in the Sherman/Grayson bankruptcy case, and such other issues as may arise in the Chapter 11 Case. Further, the August 7, 2023 written consent specifically provided that the Board of Managers, officers, and employees would provide Mr. Balasiano with such information and documents as he may request from time to time, and shall not interfere or impede the performance of Mr. Balasiano's duties as an independent director/manager. Further, the August 7, 2023 written consent authorized Mr. Balasiano to retain his own counsel, and Mr. Balasiano availed himself of the opportunity to retain his own counsel.

31. An application to retain Mr. Balasiano as Independent Director/Manager of the Debtor was filed with the Bankruptcy Court on August 9, 2023, seeking approval of his retention nunc pro tunc to August 4, 2023 [Docket No. 93] (the "Application"), and the Application was approved by the Bankruptcy Court on August 16, 2023 [Docket No. 118].

32. On August 19, 2023, the Board of Managers executed a second written consent that specifically expanded Mr. Balasiano's duties and responsibilities to include that, to the extent not already provided, his appointment as an independent director of the Debtor includes authority to investigate potential claims against Alecto's affiliates and insiders, and to bring any such actions as he believed in his sole discretion are valid. Further, the August 7, 2023 written consent provided that the Board of Managers, officers, and employees would provide Mr. Balasiano with such information and documents as he may request from time to time and shall not interfere or impede the performance of his duties as an independent director/manager.

33. Additionally and separately, due to concerns about conflicts of interest between the Debtor and Sherman/Grayson, on August 11, 2023, the Debtor retained Morris James LLP as

replacement counsel for the Debtor.  Further, on August 25, 2023, after hearing the concerns of

the United States Trustee, the Reed Creditors, and other parties about potential fraudulent

conveyances and those parties expression of doubts as to the impartiality and ability of the

Debtor to remain disinterested with respect to claims, the Debtor retained Gould Consulting

Services ("GCS") to perform forensic accounting services that would be necessary and

appropriate during this Chapter 11 Case.

34.    An application to retain GCS was filed on August 27, 2023 [Docket No. 138] (the

"GCS Application"), and the GCS Application was approved by this Court on October 18, 2023

[Docket No. 184]. Among other things, GCS was tasked with:

• examining the Debtor's financial records and related documents and data for four years prior to its bankruptcy filing, to analyze transactions with insiders, related, and/or affiliated companies and identify potential causes of action, if any;

• examining the Debtor's accounting records and bank statements and those of related entities Sherman/Grayson, Alecto Healthcare Services Hayward LCC, Alecto Healthcare Services Sherman LLC, Alecto Healthcare Services Los Angeles LLC, Alecto Healthcare Services Ohio Valley, LLC, Alecto Healthcare Services Real Estate Holding LLC, and Alecto Healthcare Services Fairmont LLC, in order to determine if there are any potential claims against any of the affiliates and/or current or former officers and directors;

• providing all findings in a written report prior to September 11, 2023;[11]

• reporting directly to Morris James LLP with all reports, communications, and work product; and

• performing all services in accordance with the Standards for Forensic Services established by the American Institute of Certified Public Accountants.

Since its appointment, GCS' reviewed the Debtor's financial records, including all available

bank statements, tax returns for 2019, 2020, 2021, and 2022, and certain of the Debtor's other

financial records, to determine, among other things, whether the Debtor received reasonably

---

[11] This date was subsequently extended to September 29, 2023, to allow GCS to continue its review and evaluation of potential claims.

equivalent value on account of transfers made during the four years immediately prior to the Petition Date.

**G.    The Gould Report and the Sunrise Transfer**

35.    On September 28, 2023, GCS issued its report, which was included as Exhibit D to the Plan (the "Gould Report"). As set forth in the Gould Report, there was a transfer (the "Sunrise Transfer") made by the Debtor to insiders during the four years immediately prior to the Petition Date, for which GCS concluded that the Debtor did not receive reasonably equivalent value.

36.    On June 19, 2019 (the "Sunrise Transfer Date"), Alecto caused the transfer of the its membership interests in Sunrise Real Estate Holdings LLC[12] to the members of Alecto, who then transferred the membership interests to Sunrise MOB Holdings, LLC, an entity owned by those members (the "Sunrise Transfer") on June 19, 2019 (the "Sunrise Transfer Date") as part of the refinancing of the debt of Plaza Medical Office Building, LLC ("Plaza MOB"), the owner of a medical office building and parking garage in Los Angeles, California.[13] Upon completion of the refinancing, the net proceeds of the refinancing, which were in excess of $9 million, were contributed to Alecto.

37.    In January 2021, the members of Sunrise MOB Holdings transferred their interests in Sunrise MOB Holdings to Alecto for no consideration. As a result of this transfer, Alecto owned 100% of Plaza MOB through Sunrise MOB Holdings and its subsidiaries. Plaza

---

[12] Sunrise Real Estate Holdings, LLC directly and indirectly holds 100% of the membership interests of Plaza Medical Office Building, LLC.

[13] Prior to the Debtor acquiring an interest in Sunrise Real Estate Holdings, the property owned by Plaza MOB was encumbered by a securitized mortgage. After efforts to improve the tenant base for the office building and parking garage, efforts were made to refinance the mortgage in 2019. As part of this refinancing, the lender (Wells Fargo) required that the borrower, Plaza MOB, remain a special purpose entity with no connection to hospital operations and required that the ownership of Sunrise Real Estate Holdings be spun out from Alecto. The Sunrise Transfer was effectuated to meet this requirement and the net proceeds from the refinancing were contributed back into the Debtor.

MOB's assets were sold later that year for $58.5 million, an increase in value of approximately $8.5 million June 2019. No consideration was given to the Alecto Members for the transfer and Alecto received proceeds from the sale of over $15 million.

38.     On the Sunrise Transfer Date, Alecto was solvent.  According to the Debtor's balance sheet maintained by the Debtor in the ordinary course of business, at the end of June 2019, Alecto's equity was valued at more than $9.5 million.  In fact, at no time during 2019 was the equity in Alecto less than $9.4 million.   A copy of the Debtor's balance sheet for 2019 is attached hereto as **Exhibit A**.  This is consistent with the Debtor's 2019 tax return which stated that the Debtor's capital accounts at the beginning of 2019 had a value of $10,095,179, and at the conclusion of 2019, the value of the Debtor's capital accounts had a value of $18,671,358.  A true and correct (but redacted) copy of the Debtor's 2019 tax return is attached hereto as **Exhibit B**.

39.     Further, throughout 2019, the Debtor was paying its obligations as they came due.

**H.     The Debtor's Small Business Plan**

40.     On December 19, 2023, the Debtor filed the Plan, which was premised upon maximizing the value of the Debtor's assets through the continuation of the Debtor's operating business and providing creditors with all of the Debtor's disposable income for three years after the effective date of the Plan, including money received from the Debtor's affiliates, which is more than creditors would receive on account of their claims if the case was converted to Chapter 7.

41.     As more fully set forth in the Plan, the Plan is comprised of the following six classes of claims and interests: (a) Class 1: Priority Non-Tax Claims; (b) Class 2: Secured Claims; (c) Class 3: General Unsecured Claims; and (d) Class 4: Equity Interest Holders.

42.    Class 4 is unimpaired under the Plan, and holders of such claims were not entitled to vote. Classes 1, 2, and 3 were each impaired under the Plan, and holders of such claims were deemed to reject and, thus, not entitled to vote. The Debtor elected to proceed without soliciting votes of creditors, and will rather seek approval of the Plan pursuant to section 1191(b) of the Bankruptcy Code.

43.    On January 25, 2024, the Court entered the *Amended Order (I) Scheduling a Hearing on Plan Confirmation and Deadlines Related Thereto; and (II) Approving the Notice and the Forms Related Thereto* [Docket No. 284] (the "Procedures Order"), which among other things, set the hearing to consider the confirmation of the Plan ("Confirmation") for March 4, 2024 at 1:00 p.m. (ET) (the "Confirmation Hearing").

44.    Debtor's counsel caused notice of the deadline for objecting to confirmation of the Plan, and related notice to be distributed on January 1, 2024, and continuing thereafter (the "Notice Deadlines"), as evidenced by, among other things, the Certificate of Counsel. [Docket No. 283].

45.    The Plan was provided to the Debtor's creditors and other parties in interest, provides holders of claims and interests with adequate information with respect to the treatment of such claims and interest, and satisfies the requirements of section 1191(b) of the Bankruptcy Code.

46.    The Plan provides holders of claims and interests in this Chapter 11 Case with information about, among other things: (i) the circumstances that gave rise to the filing of the Debtor's bankruptcy petitions; (ii) an estimate of the Estate assets and liabilities; (iii) the Debtor's actions and conditions during these Chapter 11 Case; (iv) the proposed treatment of Claims and Interests under the Plan and likely distributions to be received on account of each

16573753/2

**JA2290**

Class of Claims and Interests under the Plan; (v) an analysis as to the distributions creditors would receive from the Debtor's Estate if it were liquidated under Chapter 7 of the Bankruptcy Code; (vi) the relevant sources of information contained in the Plan; (vii) conspicuous language containing releases, exculpation and limitation of liabilities and the injunction to be entered by and in connection with the Plan; and (viii) such other and further information that informs Holders of Claims and Interests of their rights arising from and relating to the Plan.

47.     Based upon the disclosure of information set forth therein, I believe that the Plan provides Holders of Claims and Interests with adequate information with respect to the treatment of such Claims and Interest and satisfies the requirements of section 1191(b) of the Bankruptcy Code.

## COMPLIANCE WITH THE BANKRUPTCY CODE

48.     A court must confirm a plan under Section 1192(b), if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

49.     Based on my review of the Plan and my understanding with respect to the requirements to confirm the Plan, I believe that the Plan complies with the applicable provisions of the Bankruptcy Code, including Sections 1112, 1123, 1129(a) and 1191(b) of the Bankruptcy Code.

**A.     Compliance with Sections 1122 and 1123 of the Bankruptcy Code**

a.   Proper Classification (Sections 1122, 1123(a)(1)). Article IV of the Plan designates four (4) separate classes of claims and interests. I am familiar with the classification

of Claims and Interests in the Plan and believe that such classification system is based upon the legal and/or factual nature, or other relevant criteria, and relative rights of the Claims and Interests and is not proposed for any improper purposes. Each Class contains only Claims or Interests that are substantially similar to other Claims and Interests therein. Specifically, Priority Non-Tax Claims (Class 1), Secured Claims (Class 2), General Unsecured Claims (Class 3), and Equity Interest Holders (Class 4). Each of the four classes are dissimilar and, therefore, are properly classified separately under the Plan.

b. <u>Specified Treatment of Unimpaired Claims (Sections 1123(a)(2))</u>. The Plan specifies whether each Class of Claims and Interests is unimpaired under the Plan and sets forth the treatment of such classes of Claims and Interests. Article IV of the Plan identifies the Equity Interest Holders (Class 4) as unimpaired.

c. <u>Specified Treatment of Impaired Classes (Section 1123(a)(3))</u>. The Plan specifies whether each Class of Claims and Interests is impaired under the Plan and sets forth the treatment of such classes of Claims and Interests. Article IV of the Plan details the treatment of Priority Non-Tax Claims (Class 1), Secured Claims (Class 2) and General Unsecured Claims (Class 3) as the impaired classes under the Plan.

d. <u>No Discrimination (Section 1123(a)(4))</u>. Pursuant to the Plan, the treatment of each Claim or Interest in each particular Class is the same as the treatment of each other Claim or Interest in such Class, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such particular Claim or Interest. Article IV of the Plan provides that each claim or interest that is classified in a particular Class under the Plan will receive the same treatment as the other claims and interests included in such Class.

e. <u>Implementation of the Plan (Section 1123(a)(5))</u>. Article IV.5 of the Plan, provides adequate and proper means for implementation of the Plan. Specifically, the Plan dictates it will be funded by: (1) the Debtor's projected disposable income ($848,049) generated by the Debtor's post-confirmation operations, and (2) $25,000 provided by certain of the Released Parties.

f. <u>Nonvoting Equity Securities (Section 1123(a)(6))</u>. The Plan does not provide for issuance of non-voting equity securities and so this section of the Bankruptcy Code is inapplicable.

g. <u>Continuation of Existing Corporate Officers and Directors (Section 1123(a)(7))</u>. Here, the Plan provides the Equity Interest Holders will retain their equity ownership positions. The identities of the Directors and their compensation are set forth in the Plan.

h. <u>Debtor is an Individual (Section 1123(a)(8))</u>. The Debtor is not an individual and so this section of the Bankruptcy Code is inapplicable.

i. <u>Impairment of Classes (Section 1123(b)(1))</u>. Article IV of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Interests under the Plan.

j. <u>Treatment of Executory Contracts and Unexpired Leases Section 1123(b)(2))</u>. Article IV.4 of the Plan, provides that any Executory Contract not previously assumed, assigned and sold or rejected by the Debtor may be assumed, assigned and sold, or rejected by the Debtor. Such treatment satisfies Section 1123(b)(2) of the Bankruptcy Code.

k. <u>Releases and Exculpation Pursuant to Section 1123(b)(6)</u>. Pursuant to section 1123(b)(6) of the Bankruptcy Code, the Plan may include any other appropriate provision that is not inconsistent with any applicable provisions of the Bankruptcy Code. Pursuant to this section, the Plan contains release and exculpation provisions that are integral components of the Plan. As more fully set forth hereinbelow, the release and exculpation provisions and injunction

16573753/2

provisions set forth in Article VII of the Plan, are fair and reasonable, supported by consideration, and necessary to the realization of the Plan and the value realized thereunder. As more fully set forth hereinbelow, it is my understanding that such provisions are not inconsistent with any applicable provision of the Bankruptcy Code and should be approved.

**B.     Satisfaction of the Requirements of Section 1129 of the Bankruptcy Code, other than Sections (a) (8), (10), and (15)**

    a.    <u>Compliance with the applicable provisions of Title 11 (The Plan 1129(a)(1))</u>

50.    I believe that the Plan complies with the requirements of the Bankruptcy Code, including sections 1122, 1123, 1125, 1126, and 1129 of the Bankruptcy Code.

    b.    <u>The Debtor, as Plan Proponent complies with the applicable provisions of this title. (Section 1129(a)(3))</u>

51.    To the best of my knowledge, the Debtor has complied with all applicable provisions of the Bankruptcy Code with respect to the Plan.  In particular, the Plan complies with the disclosure requirements of sections 1125 as set forth in the affidavits of service filed by the Debtor's service agent.

    c.    <u>Plan Proposed in Good Faith (Section 1129(a)(3))</u>

52.    The Debtor proposed the Plan in good faith and not by any means forbidden by law. The Debtor, as proponent of the Plan, has acted in good faith in the negotiation and formulation of the Plan. The Plan and the proposed Confirmation Order is the product of arms-length negotiations with key stakeholders, the United States Trustee and the Subchapter V Trustee. Thus, there is substantial support for the Court determining that the Plan has been proposed in good faith.

d.  Payments for Services or Costs and Expenses (Section 1129(a)(4))

53.    Any payment made or to be made by the Debtor for services or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, outside the ordinary course of business, has been approved by, or is subject to the approval of, the Court as reasonable. In other words, to the best of my knowledge, the Debtor has only paid expenses outside the ordinary course of business after Court approval.

e.  Directors, Officers, and Insiders (Section 1129(a)(5))

54.    Pursuant to Article IV.7 of the Plan, as of the Effective Date, the Debtor has disclosed the identity and affiliations of any person proposed to serve as officers of the Reorganized Debtor. To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer was also disclosed.  Specifically, the Plan states that Mr. Reddy's, the President and CEO, annual salary will be $750,000 and Mr. William's, the CFO, annual salary will be $300,000.

f.  No Rate Changes (Section 1129(a)(6))

55.    The Plan does not provide for rate changes subject to the jurisdiction of any governmental regulatory agency.

g.  Best Interests of Creditors Test (Section 1129(a)(7))

56.    With respect to each impaired Class each has been deemed to reject the Plan. However, as described in the Plan, the Debtor has put forth affirmative evidence showing that creditors will fare better under the Plan than in a chapter 7 liquidation. The Liquidation Analysis, attached as Exhibit G to the Plan, demonstrates that all Holders of Claims and Interests are projected to receive under the Plan more than the estimated distribution they would expect to

16573753/2

receive in a hypothetical chapter 7 liquidation, with General Unsecured Creditors receiving more in a chapter 11 case.

### h.  Section 1129(a)(8) is Inapplicable

57.    Because the Debtor seeks to confirm the Plan pursuant to section 1191(b), this section is inapplicable.

### i.  Treatment of Administrative and Tax Claims (Section 1129(a)(9))

58.    The Plan provides that Administrative Expenses will be paid in full on the Effective Date or upon Court approval, unless otherwise agreed by the claimant.  In this case, the Debtor will not pay Administrative Expenses on the Effective Date, but the Debtor will pay all Allowed Administrative Expenses through the Plan pursuant to Section 1191(e) of the Bankruptcy Code.

### j.  Section 1129(a)(10) is Inapplicable

59.    Because the Debtor seeks to confirm the Plan pursuant to section 1191(b), this section is inapplicable.

### k.  Feasibility (Section 1129(a)(11))

60.    I understand that in order for the Plan to be confirmed, the Debtor must show that confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor. Here, all of the Debtor's obligations under the Plan will be funded by the Debtor's projected disposable income generated by cash on hand on the Effective Date, the Debtor post-confirmation operations, income realized from the Debtor's subsidiaries, and $25,000 provided by certain Released Parties and as such, is feasible. Therefore, I believe that Confirmation of the Plan is not likely to be followed by the need for further financial reorganization.

l.    Payment of Fees (Section 1129(a)(12))

61.    The Debtor elected to proceed under Subchapter V of the chapter 11 where the fees referenced in section 1129(a)(12) are not due.

m.    Retiree Benefits (Section 1129(a)(13))

62.    The Debtor does not have any present obligations to pay retiree benefits within the meaning of sections 1114.

n.    Domestic Support Obligation (Section 1129(a)(14))

63.    The Debtor is not an individual and, as such, is not required to pay any domestic support obligations.

o.    Individual Debtor Requirements (Section 1129(a)(15))

64.    The Debtor is attempting to confirm the Plan pursuant to section 1191(b) of the Bankruptcy Code, thus this section is inapplicable.

p.    Fair and Equitable; No Unfair Discrimination (Sections 1191(b) and (c))

65.    The Plan satisfies all of the applicable requirements of section 1191(b) and (c). Classes 1 (Priority Non-Tax Claims), 2 (Secured Claims), and 3 (General Unsecured Claims) are impaired and deemed to have rejected the Plan. However, the Plan does not unfairly discriminate, and it is fair and equitable with respect to Classes 1, 2, and 3. The Plan satisfies section 1191(c) because: (i) no Secured Claims have been identified and the Debtor does not predicate any will; (ii) the Debtor will apply cash on hand and projected disposable income to make payments under the Plan; (iii) the Debtor's immediate cash on hand and projected income of the Reorganized Debtor heightens the likelihood that the Debtor will be able to make all payments under the Plan. 1191(b) is satisfied because, presently, there are no Classes with similarly situated claims that are receiving different treatment under the Plan. Specifically,

16573753/2

**JA2297**

Classes 1, 2, and 3 do not have similarly situated claims that are receiving different treatment under the Plan. Accordingly, it is my understanding that the Plan is fair and equitable with respect to such Classes and does not unfairly discriminate against such Classes.

### Injunction, Exculpation and Releases

66.    I understand that the proposed injunction and exculpation provisions in Article VII of the Plan are customary in bankruptcy cases, such as these.  Further, with respect to the proposed releases, nothing in the Plan releases any Released Parties from any claims of third parties.  The Plan only seeks releases in connection with claims of the Debtor and its estate, including claims that could be brought derivatively.  But no direct claims of third parties are to be released under the Plan.

67.    Article VII also exculpates parties critical to the formulation of the Plan for any acts or omissions in connection with the Plan, the restructuring efforts, and the Chapter 11 Case (the "Exculpation"). As discussed above, the Plan is the result of extensive arms' length negotiations and compromise. It is my belief that such negotiations could not have occurred without protection from liability for the Released Parties related to their efforts in connection with the Plan and the Chapter 11 Case. It is my understanding that the Exculpation and is narrowly tailored to achieve that purpose.  Under such circumstances, I am advised that the exculpation is appropriate.

68.    Article VII provides an injunction that permanently enjoins all Entities that held, hold or may hold claims or interests that have been discharged, released or exculpated under the Plan from asserting or bringing any actions on any such claims or interests against the Debtor or its estate, other than those distributions to be received under the Plan.

16573753/2

**JA2298**

69.     With respect to the proposed releases of Released Parties under Article VII.2 of the Plan, I understand that such releases are customary and appropriate.  Further, in exchange for the proposed releases, the Released Parties have agreed to provide an aggregate amount of $25,000 to the Debtor, which shall go toward the disposable income for distribution to creditors under the Plan, and the agreement not to increase their compensation from the amounts set forth the Article IV.7 of the Plan for three (3) years immediately following the Effective Date.

70.     I have reviewed the objection of the Reed Judgment Creditors, including the allegation that the estate has claims for fraudulent conveyances and breaches of fiduciary duty against the Debtor's members and managers and I am familiar with the facts regarding both alleged claims.

### a.     Potential Claim for Avoidance of the Sunrise Transfer

71.     First and foremost, GCS extensively reviewed all of the Debtor's financial transactions during the four years immediately prior to the Petition Date and concluded that one transfer, the Sunrise Transfer, was not for reasonably equivalent value.

72.     Although the Debtor may not have received reasonably equivalent value on the Sunrise Transfer Date, Alecto was not insolvent when the Sunrise Transfer occurred. [14] Further, the transfer of the Plaza MOB did not render Alecto insolvent, and in June 2019, Alecto was paying its debts as they came due.

73.     As noted above, the Debtor's balance sheet was maintained in the ordinary course of business.  As set forth in the Debtor's balance sheet for 2019, which attached is hereto as **Exhibit A**, the end of June 2019, Alecto's equity was valued at more than $9.5 million.  Further, as set forth in the Debtor's 2019 tax return, the Debtor's capital accounts at the beginning of

---

[14] Further, Alecto's books and records reflect that the Debtor was still solvent at the conclusion of 2020 and into 2021.

2019 had a value of $10,095,179, and at the conclusion of 2019, the value of the Debtor's capital accounts had a value of $18,671,358.

74.      At the end of June 2019, Alecto's equity was valued at more than $9.5 million.  In fact, at no time during 2019 was the equity in Alecto less than $9.4 million.  This is consistent with the Debtor's 2019 tax return which stated that the Debtor's capital accounts at the beginning of 2019 had a value of $10,095,179, and at the conclusion of 2019, the value of the Debtor's capital accounts had a value of $18,671,358.

75.      Beyond the objective numbers set forth in the Debtor's tax records and balance sheets, common sense evidences that the Debtor was on sound financial footing.  On or about July 8, 2019, approximately one month after the Sunrise Transfer, Alecto was able to refinance its line of credit at a lower interest rate with a lender (CNH Finance Fund I, LP) that provided additional borrowing capacity while increasing the available borrowing under the facility.  Alecto would not have been able to do so if it had been insolvent.

76.      In fact, prior to March 2021,[15] Alecto was profitable.  That continued, even during the first year of the pandemic, as state and federal governments provided funds for hospitals and other healthcare organizations to address the immediate needs of COVID.  Even as certain areas of hospitals, such as elective surgeries, decreased, the volume of patients at hospitals grew significantly.  The financial issue that Alecto had, which is similar to those of other hospitals:  As the pandemic continued, the amount of money received from the states and federal governments decreased, and the volume of patients decreased, while the costs of labor increased significantly as hospitals were required to pay higher rates for "travelling workers,"

---

[15] On March 11, 2020, the World Health Organization first declared COVID-19 to be a pandemic.

who were independent contractors earning a higher amount than the amounts due to the hospitals' own employees.

77.    Also significantly, the Gould Report also determined that, in January 2021, the interests in Sunrise Real Estate Holdings, the entity that owned Plaza MOB was transferred back to Alecto for no consideration and Plaza MOB's assets were sold later that year for $58.5 million, an increase in value of approximately $8.5 million. No consideration was given to the Alecto Members for the transfer and Plaza MOB received proceeds from the sale of over $15 million. Based upon the return of the interests in Plaza MOB to Alecto, the transfer was already effectively voided as of January 1, 2021, and the Debtor suffered no damages.  In fact, the Debtor received additional funds from Plaza MOB.  I understand that, as a matter of applicable nonbankruptcy law upon which such a fraudulent conveyance would be brought, the Alecto's lack of damages would be fatal to any such claim for avoidance of the Sunrise Transfer.

**b.    Potential Claim for Breach of Fiduciary Duty**

78.    In its objection the Reed Judgment Creditors alleged that the Debtor and its estate have claims against the Debtor's insiders for fiduciary duty.  In particular, the Reed Creditors have asserted that Alecto's insiders breached their fiduciary duties to Alecto and its residual claimants by advancing more than $19 million to Sherman/Grayson during the year prior to the Petition Date when Alecto was insolvent or in the zone of insolvency, rather than paying its creditors, including more than $5 million to Sherman/Grayson after the Reed Creditors obtained their judgment against Alecto on November 28, 2022, and before the Petition Date.

79.    Throughout the period mentioned, Alecto's Board of Managers had rational reasons for continuing to fund Sherman/Grayson, and its decisions to do so were the product of at least that amount of care that an ordinarily careful and prudent men would use in similar

circumstances, and were decided after considering all of the material information readily available.

80.     As Alecto experienced after the closure of Ohio Valley Medical Center by Alecto Healthcare Services Wheeling LLC and East Ohio Regional Hospital by Alecto Healthcare Services Martin's Ferry LLC in 2019, and the closure of Fairmont Regional Medical Center by Alecto Healthcare Services Fairmont LLC in 2020, the closure of a hospital without a buyer in place results in a number of obligations that simply cannot be left unsatisfied including: (1) securing and taking custody of the medical records generated by the hospital and making these records available to the patients; (2) securing and taking custody of employee and other records and making them available to employees; (3) securing and taking custody of computer systems which include confidential and sensitive information regarding employees and patients; (4) securing and properly disposing of pharmaceuticals and other regulated materials; (5) securing and properly disposing of medical waste including radiological materials; (6) preparing and filing all necessary reports including Medicare and Medicaid cost reports and responding to audits of the same; (7) responding to governmental inquiries; (8) addressing lawsuits by vendors and others against Alecto even though such lawsuits would likely lack merit; (8) otherwise orderly winding up the operations of the hospital.[16]  These obligations imposed and impose a significant burden on Alecto with respect to the hospitals identified above and Alecto's officers and Board of Managers reasonably believed that they would impose a significant obligation on Alecto if Sherman/Grayson was to close without a buyer.  To avoid these obligations and costs associated therewith, decisions were made to provide funding to Sherman/Grayson while it sought to implement a turnaround plan and locate a buyer.

---

[16] Also, importantly, closing a healthcare facility without a purchaser caused a loss of value by sale without a going concern.

81.    Additionally, Alecto was a guarantor under the MPT Sherman Lease.  The terms of the MPT Sherman Lease provided among other things, that Sherman/Grayson was obligated to maintain various forms of insurance and meet other obligations to MPT of Sherman Alecto, LLC ("MPT of Sherman").  If Sherman/Grayson failed to meet its obligations under the MPT Sherman Lease, Alecto would have an obligation to meet these obligations under the MPT Lease Guaranty or reimburse MPT of Sherman for the costs associated with securing replacement coverage.  Significantly, Alecto decided that it was necessary to pay the portion of insurance premiums (at a cost of approximately $140,000 a month) due on Alecto's master insurance policies that were allocated to Sherman/Grayson in order to avoid (i) a liability that would be a breach under the MPT Sherman Lease and (ii) the potentially calamitous effect of having no insurance for an operating hospital.

82.    Altera Highland, LLC, an unrelated third party, owns an office building located at 300 N. Highland Avenue, Sherman, Texas 75092 immediately adjacent to Wilson N. Jones Regional Medical Center (the "POB") subject to a ground lease with MPT of Sherman as assignee of Sherman/Grayson.  The Ground Lease provides, among other things, that the Ground Lessor (currently, MPT of Sherman) has an obligation to purchase the POB if a healthcare facility is not operated at the site of Wilson N. Jones Regional Medical Center for a period of 12 consecutive months.  The purchase price demanded by Altera Highland, LLC would likely have been in excess of $13 million.  In other words, MPT of Sherman could be forced to acquire the POB for a price in excess of $13 million if no healthcare facility was operated for 12 consecutive months.  Under the terms of the MPT Sherman Lease, Sherman/Grayson agreed to indemnify MPT of Sherman/Grayson with respect to this obligation and Alecto guaranteed Sherman/Grayson's obligations to MPT.  As a result, Alecto would face liabilities in excess of

$13 million if Wilson N. Jones Regional Medical Center was to close for 12 consecutive months. To avoid this potential liability, Alecto decided it was necessary to provide funding to Sherman/Grayson so it could continue to operate until a buyer could be found.

83.     Additionally, Alecto also faced contingent liabilities as a member of the control group with respect to (a) the Alecto Healthcare Services Ohio Valley LLC Pension Plan (the "OV Pension Plan") and (2) Alecto Healthcare Services Fairmont LLC's liability with respect to its withdrawal from a multi-employer pension plan (the "Fairmont Withdrawal Liability").  Under applicable law, Alecto, as at least the 80%[17] owner of Alecto Healthcare Services Ohio Valley LLC ("Alecto Ohio Valley") and at least the 80%[18] owner of Alecto Healthcare Services Fairmont LLC, is considered to be part of the "control group" with respect to the OV Pension Plan and the Fairmont Withdrawal Liability.  Absent making quarterly payments, the Fairmont Withdrawal Liability could be as much as $10,836,358 and the liabilities associated with the OV Pension Plan would have been in excess of $4 million before the recent spike in interest rates. To avoid much significantly greater liabilities, Alecto provided funding to meet certain quarterly or other funding obligations of Alecto Ohio Valley and Alecto Fairmont.

84.     Alecto's continued funding was necessary in order to preserve the affiliates' value while looking for a purchaser for its subsidiary.[19] There do not appear to be any facts suggesting that the managers received a benefit that was at variance with Alecto or its members, thus the

---

[17] MPT of Wheeling-Alecto Hospital, LLC owned 20% of the membership interests of Alecto Healthcare Services Ohio Valley LLC from June 1, 2017 to December 31, 2021.  Since January 1, 2022, the Debtor has owned 100% of Alecto Healthcare Services Ohio Valley LLC.

[18] MPT of Fairmont-Alecto Hospital, LLC owned 20% of the membership interests of Alecto Healthcare Services Fairmont LLC from September 20, 2014 to December 31, 2021.  Since January 1, 2022, the Debtor has owned 100% of Alecto Healthcare Services Fairmont LLC.

[19] In fact, and as more fully set forth in the pleadings filed in Sherman/Grayson's bankruptcy case which is presently before this Court. The Debtor had been marketing Sherman/Grayson since 2019, and Sherman/Grayson was ultimately able to find a purchaser, and the sale closed during its bankruptcy case.  By continuing to fund Sherman/Grayson through the sale process, Alecto was saved from at least $10 million (and likely significantly more) of liability on account of obligations under leases to which it was a guarantor.

transaction does not appear to be self-interested. That the managers' decisions ultimately resulted in Alecto seeking bankruptcy protection does not by itself establish a claim of breach of fiduciary duty.

85.    Meanwhile, although certain of Alecto's subsidiaries were losing money, particularly during the second half of the pandemic, the managers believed that there was a reasonable possibility that with certain changes, the affiliates could revert to economic neutrality, if not begin to become profitable.  Thus, the Debtor had legitimate reasons to continue funding its affiliates, even as they were continuing to lose money.

86.    The decision to continue funding was not made all at once, but was an ongoing decision by the Board of Managers.  At all times, the Board of Managers were informed with respect to the decisions to continue funding.  Among other things, the Debtor's managers spoke with each other and other employees of the Debtor virtually every day regarding business decisions, including funding of the subsidiaries, and the Board of Managers' decisions were made for valid business reasons, including (i) avoiding additional, significant claims against Alecto, and preserving the going concern value of the subsidiaries and affiliates.

87.    Although I do not believe that there are any valid claims against the Debtor's insiders for breach of fiduciary duty, I believe that the consideration provided for the proposed releases under the Plan is an appropriate, good faith compromise and settlements of the potential claims of the estate against the Released Parties, and such that the proposed releases are fair, equitable, reasonable, and are integral elements of the resolution of this Chapter 11 Case in accordance with the Plan.

88.    In exchange for the releases, the Debtor will receive consideration, including (i) $25,000 in cash, and (ii) the Debtor's management has agreed that they will not increase their

compensation for three years immediately following the Effective Date. Additionally, were a claim to be brought on behalf of the estate, the costs of such an action would reduce the amount of disposable income available to be distributed to creditors. And even if the claim were brought on a contingency basis, it would still reduce (and possibly significantly reduce) the disposable income available to be distributed to creditors as the Reorganized Debtor would be responsible for indemnification of Alecto's members or officers pursuant to Section 7.8 of Alecto's Amended and Restated Operating Agreement, a copy of which is attached hereto as **Exhibit C.** So although the consideration to be received on account of the releases does not seem significant, it is more than the Debtor's estate would receive were there no releases, particularly since the pursuit of such claims would trigger indemnification obligations. While I do was not party to his deliberations and considerations, the independent director charged with investigation of claims apparently agreed.

89.     As more fully set forth herein, the estate's potential claims against insiders were investigated by the Mr. Balasiano, the Debtor's independent manager/director. I have provided information to counsel for the Debtor, some or all of which I understand was forwarded to Mr. Balasiano in connection with his investigation of claims against the Debtor's investigate potential claims against Alecto's affiliates and insiders. I also personally attended a number of conferences with Mr. Balasiano in order to provide Mr. Balasiano with the opportunity to ask any questions with respect to the underlying facts with respect to the potential claims he was investigating. Also in attendance during those conferences were Ms. Gould, counsel for the Debtor, and Mr. Balasiano's own counsel. During those conferences, Mr. Balasiano and/or his counsel asked questions with respect to the potential claims of the estate against the Debtor's affiliates and insiders, and Ms. Gould or I answered those questions. I also understand that

Debtor's counsel separately spoke with Mr. Balasiano and his counsel throughout without me being present.

90.    At the conclusion of his investigation, Mr. Balasiano determined that there were no valid claims for breach of fiduciary duty or for avoidance of fraudulent conveyances.

## **CONCLUSION**

91.    Based on the foregoing, I believe that the Plan satisfies the requirements of the Bankruptcy Code and should be confirmed.

Dated: February 29, 2024

*/s Michael Sarrao*
Michael Sarrao
Executive Vice President, General Counsel,
and Secretary

**Exhibit A**

16573753/2

**Alecto Healthcare Services, LLC**
**Balance Sheet**
**FY19**

| | 19.01 | 19.02 | 19.03 | 19.04 | 19.05 | 19.06 | 19.07 | 19.08 | 19.09 | 19.10 | 19.11 | 19.12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ASSETS:** | | | | | | | | | | | | |
| Cash and Equivalents | 73,870 | 798,530 | 67,309 | 12,665 | 45,780 | 59,484 | 317,408 | 1,468,663 | 59,188 | 17,177 | 314,488 | 356,457 |
| | | | | | | | | | | | | |
| Accounts Receivable | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowance for Bad Debt | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowance for Contractuals & Oth Adj | - | - | - | - | - | - | - | - | - | - | - | - |
| Supplemental A/R | - | - | - | - | - | - | - | - | - | - | - | - |
| Patient Accounts Receivable | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | |
| Other Receivables | 378,344 | 338,818 | 335,144 | 412,895 | 474,556 | 430,133 | 34,334 | 268,094 | 9,275,171 | 9,340,090 | 9,275,375 | 9,275,530 |
| Inventories | 96,356 | 96,356 | 96,356 | 146,356 | 170,458 | 170,458 | 168,456 | 168,456 | 118,858 | 94,756 | 129,756 | 129,756 |
| Other Current Assets | 54,037 | 379,255 | 306,053 | 224,809 | 143,561 | 67,938 | (10,014) | (23,936) | (110,014) | (124,764) | (204,156) | 488,500 |
| Prepaid Insurance | | | | | | | | | | | | |
| Other Pre-Paid Expenses | | | | | | | | | | | | |
| Total Current Assets | 602,608 | 1,612,959 | 804,862 | 796,726 | 834,355 | 728,014 | 510,184 | 1,881,277 | 9,343,204 | 9,327,260 | 9,515,463 | 10,250,244 |
| | | | | | | | | | | | | |
| Land and improvements | - | - | - | - | - | - | - | - | - | - | - | - |
| Buildings and Improvements | - | - | - | - | - | - | - | - | - | - | - | - |
| Leaseholds | - | - | - | - | - | - | - | - | - | - | - | - |
| Equipment | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 |
| Construction-In-Progress | | | | | | | | | | | | |
| Property and Equipment | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 |
| Less: Accumulated Depreciation | (8,604) | (8,978) | (9,352) | (9,726) | (10,100) | (10,475) | (10,849) | (11,223) | (11,597) | (11,971) | (12,345) | (12,719) |
| Net Property and Equipment | 4,863 | 4,489 | 4,115 | 3,741 | 3,367 | 2,993 | 2,619 | 2,244 | 1,870 | 1,496 | 1,122 | 748 |
| | | | | | | | | | | | | |
| Net goodwill | | | | | | | | | | | | | |
| Other intangible assets | 12,132 | 11,830 | 11,529 | 11,228 | 10,926 | 10,625 | - | - | - | - | - | - |
| Total Long Term Assets | 16,995 | 16,319 | 15,644 | 14,969 | 14,293 | 13,618 | 2,619 | 2,244 | 1,870 | 1,496 | 1,122 | 748 |
| | | | | | | | | | | | | |
| **TOTAL ASSETS** | 619,603 | 1,629,278 | 820,506 | 811,694 | 848,648 | 741,632 | 512,803 | 1,883,522 | 9,345,074 | 9,328,756 | 9,516,586 | 10,250,992 |
| | | | | | | | | | | | | |
| **LIABILITIES:** | | | | | | | | | | | | |
| Accounts Payable | 2,491,980 | 2,346,890 | 3,268,294 | 3,239,170 | 3,468,903 | 3,197,804 | 3,211,532 | 2,747,491 | 3,014,562 | 3,281,553 | 3,219,194 | 3,187,073 |
| Notes Payable | | | | | | | | | | | | |
| Capital Leases | | | | | | | | | | | | |
| Accrued Payroll | 185,158 | 124,548 | 129,678 | 99,972 | 134,678 | 219,035 | 170,675 | 66,506 | 108,962 | 204,800 | 113,387 | 88,910 |
| Accrued PTO | 134,948 | 145,020 | 149,381 | 144,422 | 127,706 | 129,470 | 122,979 | 131,026 | 129,184 | 133,626 | 123,293 | 99,470 |
| Accrued Payroll Taxes | | | | | | | | | | | | |
| Insurance Reserve | | | | | | | | | | | | |
| Other Accrued Expenses | | | | | | | | | | | | |
| Third Party Settlements | | | | | | | | | | | | |
| Lines of Credit & Other Short-Term Debt | | | | | | | | | | | | |
| Current Portion of Long-Term Debt | | | | | | | | | | | | |
| Other Liabilities | (1,321,500) | (235,505) | (1,795,593) | (1,174,119) | (1,777,981) | (1,360,366) | (942,758) | (133,242) | (1,315,352) | (1,203,778) | (371,771) | - |
| Total Current Liabilities | 1,490,586 | 2,380,953 | 1,751,759 | 2,309,445 | 1,953,306 | 2,185,943 | 2,562,428 | 2,811,780 | 1,937,356 | 2,416,201 | 3,084,103 | 3,375,453 |
| | | | | | | | | | | | | |
| Mortgages and Long-Term Notes Payable | (14,943,753) | (14,814,555) | (14,718,752) | (15,735,710) | (15,340,353) | (15,694,394) | (16,273,215) | (15,327,918) | (15,915,303) | (16,430,664) | (16,712,126) | (16,394,094) |
| Intercompany Payables/(Receivables) | | | | | | | | | | | | |
| Deferred Credits | | | | | | | | | | | | |
| Deferred Taxes | | | | | | | | | | | | |
| Other Long-Term Liabilities | 4,229,494 | 4,229,494 | 4,229,494 | 4,629,524 | 4,599,525 | 4,749,525 | 4,749,523 | 4,749,523 | 4,749,523 | 4,749,523 | 4,749,523 | 4,749,523 |
| Total Long-Term Liabilities | (10,714,259) | (10,585,061) | (10,489,259) | (11,106,186) | (10,740,829) | (10,944,869) | (11,523,693) | (10,578,395) | (11,165,780) | (11,681,141) | (11,962,604) | (11,644,572) |
| | | | | | | | | | | | | |
| **TOTAL LIABILITIES** | (9,223,673) | (8,204,108) | (8,737,499) | (8,796,741) | (8,787,523) | (8,758,925) | (8,961,265) | (7,766,615) | (9,228,424) | (9,264,940) | (8,878,500) | (8,269,119) |

JA2309

Case 23-10787-JKS    Doc 307-1    Filed 02/29/24    Page 3 of 3

| | 19.01 | 19.02 | 19.03 | 19.04 | 19.05 | 19.06 | 19.07 | 19.08 | 19.09 | 19.10 | 19.11 | 19.12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **EQUITY:** | | | | | | | | | | | | |
| Common Stock | - | - | - | - | - | - | - | - | - | - | - | - |
| Additional Paid-in Capital | - | - | - | - | - | - | - | - | 8,944,478 | 8,944,478 | 8,944,478 | 8,944,478 |
| Other Equity | - | - | - | - | - | - | - | - | - | - | - | - |
| Retained Earnings PV | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 |
| Distributions | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Income | (100,656) | (110,545) | (385,926) | (335,496) | (307,761) | (443,375) | (469,865) | (293,795) | (314,912) | (294,713) | (493,324) | (368,299) |
| **TOTAL EQUITY** | 9,843,276 | 9,833,387 | 9,558,006 | 9,608,436 | 9,636,171 | 9,500,557 | 9,474,067 | 9,650,137 | 18,573,498 | 18,593,696 | 18,395,086 | 18,520,111 |
| **TOTAL LIABILITIES AND EQUITY** | 619,603 | 1,629,278 | 820,506 | 811,694 | 848,648 | 741,632 | 512,803 | 1,883,522 | 9,345,074 | 9,328,756 | 9,516,586 | 10,250,992 |

**<u>Exhibit B</u>**

**Part 1**

 MOSSADAMS

September 4, 2020

Mr. Jeremy Redin
Alecto Healthcare Services LLC
16310 Bake Parkway Suite 200
Irvine, CA 92618

Dear Jeremy:

We have prepared and enclosed your 2019 Limited Liability Company returns for the year ended
December 31, 2019.

The federal return has qualified for electronic filing. After you have reviewed your return for completeness
and accuracy, please sign, date, and return Form 8879-PE to our office. We will then submit your
electronic return to the IRS. Return federal Form 8879-PE to us by September 15, 2020.

No payment is required with this return when filed.

The California Form 568 return has qualified for electronic filing. After you have reviewed your return for
completeness and accuracy, please sign, date and return Form 8453-LLC to our office. We will then
transmit your return electronically to the FTB. Do not mail a paper copy of the return to the FTB. Return
Form 8453-LLC to us by October 15, 2020.

No payment is required as you are to receive a refund in the amount of $23,580.

The West Virginia Form SPF-100 return has qualified for electronic filing. Please review your return for
completeness and accuracy. We will then transmit your return electronically to the WV Tax Dept. Do not
mail the paper copy of the return to the WV Tax Dept. Return federal Form 8879-PE to us by September
15, 2020.

No payment is required with this return when filed.

The Ohio Form IT-4708 return has qualified for electronic filing. Please review your return for
completeness and accuracy. We will then transmit your return electronically to the OHDOT. Do not mail
the paper copy of the return to the OHDOT. Return federal Form 8879-PE to us as soon as possible.

No payment is required with this return when filed.

Attached are Schedules K-1 for all members indicating their share of income, deductions and credits to
be reported on their respective tax returns. These schedules should be immediately forwarded to each of
the members.

We have prepared the returns from information you provided to us without verification in accordance with
the terms of the Master Services Agreement (MSA) and Statement of Work that we have in place with
you. In addition, we have relied on you to alert us if you participated in any "reportable transaction,"
including a "listed transaction" or a "transaction of interest" as defined in IRC Section 6011, Treasury Reg.
Section 1.6011-4 and other related IRS Rulings/Notices. Please contact us if you have engaged in any
such transaction, or substantially similar transaction, or in a listed transaction as identified by any state in
which you conduct business.

Upon examination of the returns by taxing authorities, requests may be made for underlying data. We
therefore recommend that you preserve all records which you may be called upon to produce in
connection with such possible examinations.

CONFIDENTIAL

The 2017 tax reform reconciliation act, also known as the Tax Cuts and Jobs Act, contained sweeping changes to the tax law. While the IRS, Treasury Department, and state taxing authorities have issued some guidance, questions remain. We've prepared your return using published guidance to date, but it is subject to change as additional guidance becomes available. Importantly, the current tax environment, including the potential for guidance to be issued with retroactive applicability, could increase your risk of penalties and the likelihood you may want or need to file amended returns.

We appreciate the opportunity to serve you.  Please contact us if you have any questions concerning the tax returns or if we may be of further assistance.

Very truly yours,

*Dustin Marciniak*
for Moss Adams LLP

| Form **8879-PE** | **IRS e-file Signature Authorization** | | OMB No. 1545-0123 |
|---|---|---|---|
| | **for Form 1065** | | |
| | ▶ ERO must obtain and retain completed Form 8879-PE. | | **2019** |
| Department of the Treasury | ▶ Go to www.irs.gov/Form8879PE for the latest information. | | |
| Internal Revenue Service | For calendar year 2019, or tax year beginning _____ 2019, ending _____ 20 | | |

| Name of partnership | | Employer identification number |
|---|---|---|
| ALECTO HEALTHCARE SERVICES LLC | | 46-0829723 |

**Part I**    Tax Return Information   (Whole dollars only)

| | | |
|---|---|---|
| 1 Gross receipts or sales less returns and allowances (Form 1065, line 1c) | **1** | 4,284,619. |
| 2 Gross profit (Form 1065, line 3) | **2** | 4,284,619. |
| 3 Ordinary business income (loss) (Form 1065, line 22) | **3** | -49,100,099. |
| 4 Net rental real estate income (loss) (Form 1065, Schedule K, line 2) | **4** | |
| 5 Other net rental income (loss) (Form 1065, Schedule K, line 3c) | **5** | |

**Part II**    **Declaration and Signature Authorization of Partner or Member**
          **(Be sure to get a copy of the partnership's return)**

Under penalties of perjury, I declare that I am a partner or member of the above partnership and that I have examined a copy of the partnership's 2019 electronic return of partnership income and accompanying schedules and statements and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of the partnership's electronic return of partnership income. I consent to allow my electronic return originator (ERO), transmitter, or intermediate service provider to send the partnership's return to the IRS and to receive from the IRS **(a)** an acknowledgement of receipt or reason for rejection of the transmission and **(b)** the reason for any delay in processing the return. I have selected a personal identification number (PIN) as my signature for the partnership's electronic return of partnership income.

**Partner or Member's PIN: check one box only**

[X] I authorize   MOSS ADAMS LLP                     to enter my PIN    29723
                       **ERO firm name**                               **Don't enter all zeros**
     as my signature on the partnership's 2019 electronically filed return of partnership income.

[ ]   As a partner or member of the partnership, I will enter my PIN as my signature on the partnership's 2019 electronically filed
     return of partnership income.

Partner or member's signature ▶

Title ▶   **MEMBER**                                            Date ▶

**Part III**    **Certification and Authentication**

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN.    | 33665412345 |
                                                          **Don't enter all zeros**

I certify that the above numeric entry is my PIN, which is my signature on the 2019 electronically filed return of partnership income for the partnership indicated above. I confirm that I am submitting this return in accordance with the requirements of **Pub. 3112,** IRS *e-file* Application and Participation, and **Pub. 4163,** Modernized e-File (MeF) Information for Authorized IRS *e-file* Providers for Business Returns.

ERO's signature ▶                                           Date ▶   09/04/20

**ERO Must Retain This Form - See Instructions**
**Don't Submit This Form to the IRS Unless Requested To Do So**

For Paperwork Reduction Act Notice, see instructions.                           Form **8879-PE** (2019)
LHA

921031 01-13-20

10340904 146892 629917            2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                             **ALECTO_00027111**
                                                                         **JA2314**

022

Date Accepted _____

**DO NOT MAIL THIS FORM TO FTB**

| TAXABLE YEAR 2019 | California e-file Return Authorization for Limited Liability Companies | FORM 8453-LLC |
|---|---|---|

Limited liability company name

ALECTO HEALTHCARE SERVICES LLC

California Secretary of State (SOS) file number or FEIN
46-0829723

**Part I   Tax Information** (whole dollars only)

| | | |
|---|---|---|
| 1 Total income (Form 568, Schedule B, line 12 or Form 568, line 1 for Single Member LLCs) | 1 | -48,179,304 |
| 2 Ordinary income (Form 568, Schedule B, line 23 or Form 568, line 1 for Single Member LLCs) | 2 | -52,944,241 |
| 3 Tax and fee due (Form 568, line 14) | 3 | |
| 4 Overpayment (Form 568, line 15) | 4 | 24,380 |
| 5 Total amount due (Form 568, line 19) | 5 | |

**Part II   Settle Your Account Electronically for Taxable Year 2019.**

6 ☐ Electronic funds withdrawal    6a Amount    6b Withdrawal date (mm/dd/yyyy)

**Part III   Make Annual Tax or Estimated Fee Payment for Taxable Year 2020**  This is NOT an installment payment for the current amount the LLC owes.

| | Annual Tax Payment | Estimated Fee Payment |
|---|---|---|
| 7 Amount | 0 | 0 |
| 8 Withdrawal date | | |

**Part IV   Banking Information** (Have you verified the LLC's banking information?)

9 Routing number _____

10 Account number _____    11 Type of account:  ☐ Checking    ☐ Savings

**Part V   Declaration of Authorized Member or Manager**

I authorize the limited liability company account to be settled as designated in Parts II, III, and IV. If I check Box 6, I authorize an electronic funds withdrawal for the amount listed on line 6a and for the 2020 annual tax or estimated fee payment amount listed on line 7 from the bank account specified in Part IV.

Under penalties of perjury, I declare that I am an authorized member or manager of the above limited liability company and that the information I provided to my electronic return originator (ERO), transmitter, or intermediate service provider and the amounts in Part I above agree with the amounts on the corresponding lines of the limited liability company's 2019 California income tax return. To the best of my knowledge and belief, the limited liability company's return is true, correct, and complete. If the limited liability company is filing a balance due return, I understand that if the Franchise Tax Board (FTB) does not receive full and timely payment of the limited liability company's tax liability, the limited liability company will remain liable for the tax liability and all applicable interest and penalties. I authorize the limited liability company return and accompanying schedules and statements be transmitted to the FTB by my ERO, transmitter, or intermediate service provider. **If the processing of the limited liability company's return or refund is delayed, I authorize the FTB to disclose to my ERO or intermediate service provider the reason(s) for the delay or the date when the refund was sent.**

Sign Here ▶ _____ Date _____ ▶ **MEMBER**
Signature of authorized member or manager    Title

**Part VI   Declaration of Electronic Return Originator (ERO) and Paid Preparer.**

I declare that I have reviewed the above limited liability company's return and that the entries on form FTB 8453-LLC are complete and correct to the best of my knowledge. (If I am only an intermediate service provider, I understand that I am not responsible for reviewing the limited liability company's return. I declare, however, that form FTB 8453-LLC accurately reflects the data on the return.) I have obtained the signature from the limited liability company authorized member or manager on form FTB 8453-LLC before transmitting this return to the FTB; I have provided the limited liability company authorized member or manager with a copy of all forms and information that I will file with the FTB, and I have followed all other requirements described in FTB Pub. 1345, 2019 Handbook for Authorized e-file Providers. I will keep form FTB 8453-LLC on file for **four** years from the due date of the return or **four** years from the date the limited liability company return is filed, whichever is later, and I will make a copy available to the FTB upon request. If I am also the paid preparer, under penalties of perjury, I declare that I have examined the above limited liability company's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. I make this declaration based on all information of which I have knowledge.

| ERO Must Sign | ERO's signature ▶ | Date 09/04/20 | Check if also paid preparer | Check if self-employed ☒ | ERO's PTIN P00309414 |
|---|---|---|---|---|---|

Firm's name (or yours if self-employed) and address ▶  MOSS ADAMS LLP
2040 MAIN STREET   SUITE 900
IRVINE, CA

FEIN 91-0189318

ZIP code 92614

Under penalties of perjury, I declare that I have examined the above limited liability company's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. I make this declaration based on all information of which I have knowledge.

| Paid Preparer Must Sign | Paid preparer's signature ▶ | Date | Check if self-employed ☐ | Paid preparer's PTIN |
|---|---|---|---|---|

Firm's name (or yours if self-employed) and address ▶

FEIN

ZIP code

**For Privacy Notice, get FTB 1131 ENG/SP.**

FTB 8453-LLC 2019

939111 11-05-19

# 2019 TAX RETURN FILING INSTRUCTIONS

U.S. RETURN OF PARTNERSHIP INCOME

### FOR THE YEAR ENDING

December 31, 2019

**Prepared For:**

Alecto Healthcare Services LLC
16310 Bake Parkway Suite 200
Irvine, CA  92618

**Prepared By:**

Moss Adams LLP
2040 Main Street  Suite 900
Irvine, CA 92614

**To Be Signed and Dated By:**

A member of the LLC

**Amount of Tax:**

Not applicable

**Mail Tax Return To:**

This return has qualified for electronic filing.  After you have reviewed your return for
completeness and accuracy, please sign, date and return Form 8879-PE to our office.
We will then submit your electronic return to the IRS.

**Forms to be Distributed to Partners:**

Enclosed are copies of Schedule K-1 to be distributed to the members.

**Return Must be Mailed On or Before:**

Return federal Form 8879-PE to us by September 15, 2020.

**Special Instructions:**

Do not mail the paper copy of the return to the IRS.

Form **1065**

EXTENSION GRANTED TO 09/15/20
**U.S. Return of Partnership Income**

OMB No. 1545-0123

**2019**

Department of the Treasury
Internal Revenue Service

For calendar year 2019, or tax year beginning _____ , ending _____ , _____
▶ Go to www.irs.gov/Form1065 for instructions and the latest information.

| | |
|---|---|
| **A** Principal business activity | **D** Employer identification number |
| HOLDING COMPANY | 46-0829723 |
| **B** Principal product or service | **E** Date business started |
| HOLDING COMPANY | 08/13/2012 |
| **C** Business code number | **F** Total assets |
| 622000 | $26,796,334. |

Name of partnership: ALECTO HEALTHCARE SERVICES LLC

Type or Print
Number, street, and room or suite no. If a P.O. box, see instructions.
16310 BAKE PARKWAY SUITE 200

City or town, state or province, country, and ZIP or foreign postal code
IRVINE                                CA 92618

**G** Check applicable boxes: (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change  (4) ☐ Address change  (5) ☐ Amended return
**H** Check accounting method: (1) ☐ Cash  (2) ☒ Accrual  (3) ☐ Other (specify) ▶
**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ 8
**J** Check if Schedules C and M-3 are attached ▶ ☐
**K** Check if partnership: (1) ☐ Aggregated activities for section 465 at-risk purposes  (2) ☐ Grouped activities for section 469 passive activity purposes

**Caution:** Include **only** trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

| | | | |
|---|---|---|---|
| **Income** | **1a** Gross receipts or sales | **1a** 4,284,619. | |
| | **b** Returns and allowances | **1b** | |
| | **c** Balance. Subtract line 1b from line 1a | **1c** | 4,284,619. |
| | **2** Cost of goods sold (attach Form 1125-A) | **2** | |
| | **3** Gross profit. Subtract line 2 from line 1c | **3** | 4,284,619. |
| | **4** Ordinary income (loss) from other partnerships, estates, and trusts (attach statement)  STMT 1 | **4** | -48,824,332. |
| | **5** Net farm profit (loss) (attach Schedule F (Form 1040 or 1040-SR)) | **5** | |
| | **6** Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | **6** | |
| | **7** Other income (loss) (attach statement)  SEE STATEMENT 2 | **7** | 20,980. |
| | **8** **Total income (loss).** Combine lines 3 through 7 | **8** | -44,518,733. |

| | | | |
|---|---|---|---|
| **Deductions (see instructions for limitations)** | **9** Salaries and wages (other than to partners) (less employment credits) | **9** | 3,338,982. |
| | **10** Guaranteed payments to partners | **10** | |
| | **11** Repairs and maintenance | **11** | 3,240. |
| | **12** Bad debts | **12** | |
| | **13** Rent | **13** | 68,414. |
| | **14** Taxes and licenses  SEE STATEMENT 3 | **14** | 157,810. |
| | **15** Interest (see instructions) | **15** | 88. |
| | **16a** Depreciation (if required, attach Form 4562)  **16a** 1,178. | | |
| | **b** Less depreciation reported on Form 1125-A and elsewhere on return  **16b** | **16c** | 1,178. |
| | **17** Depletion **(Do not deduct oil and gas depletion.)** | **17** | |
| | **18** Retirement plans, etc. | **18** | |
| | **19** Employee benefit programs | **19** | 259,280. |
| | **20** Other deductions (attach statement)  SEE STATEMENT 4 | **20** | 752,374. |
| | **21** **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | **21** | 4,581,366. |
| | **22** **Ordinary business income (loss).** Subtract line 21 from line 8 | **22** | -49,100,099. |

| | | | |
|---|---|---|---|
| **Tax and Payments** | **23** Interest due under the look-back method-completed long-term contracts (attach Form 8697) | **23** | |
| | **24** Interest due under the look-back method-income forecast method (attach Form 8866) | **24** | |
| | **25** BBA AAR imputed underpayment (see instructions) | **25** | |
| | **26** Other taxes (see instructions) | **26** | |
| | **27** **Total balance due.** Add lines 23 through 26 | **27** | |
| | **28** Payment (see instructions) | **28** | |
| | **29** **Amount owed.** If line 28 is smaller than line 27, enter amount owed | **29** | |
| | **30** **Overpayment.** If line 28 is larger than line 27, enter overpayment | **30** | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ _____
Signature of partner or limited liability company member

Date _____

May the IRS discuss this return with the preparer shown below?
See instr.  ☒ Yes ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| DUSTIN MARCINIAK | DUSTIN MARCINIAK | 09/04/20 | | P00309414 |

Firm's name ▶ MOSS ADAMS LLP

Firm's EIN ▶ 91-0189318

Firm's address ▶ 2040 MAIN STREET  SUITE 900
IRVINE, CA 92614

Phone no. 949-221-4000

LHA  For Paperwork Reduction Act Notice, see separate instructions.     911001  12-30-19     Form **1065** (2019)

CONFIDENTIAL

ALECTO_00027114
JA2317

Form 1065 (2019)   ALECTO HEALTHCARE SERVICES LLC                                    46-0829723   Page **2**

| Schedule B | Other Information | | | | |
|---|---|---|---|---|---|

| 1 | What type of entity is filing this return? Check the applicable box: | | | Yes | No |
|---|---|---|---|---|---|

| a | ☐ Domestic general partnership | b ☐ Domestic limited partnership |
|---|---|---|
| c | ☒ Domestic limited liability company | d ☐ Domestic limited liability partnership |
| e | ☐ Foreign partnership | f ☐ Other ▶ |

| | | Yes | No |
|---|---|---|---|
| **2** | At the end of the tax year: | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X |
| b | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | X | |
| **3** | At the end of the tax year, did the partnership: | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below | X | |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| OLYMPIA PLAZA MANAGEMENT INC | 45-2658339 | UNITED STATES | 100.00 |
| FRMC PHYSICIANS INC | 47-1693245 | UNITED STATES | 80.00 |
| SHERMAN MD PROVIDER INC | 47-2194631 | UNITED STATES | 80.00 |
| SHERMAN ANESTHESIA, INC. | 81-4037665 | UNITED STATES | 80.00 |
| ALECTO EAST OHIO PHYSICIANS, INC. | 82-0677410 | UNITED STATES | 80.00 |

b   Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below          X

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| SEE STATEMENT 5 | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| **4** | Does the partnership satisfy **all four** of the following conditions? | | |
| a | The partnership's total receipts for the tax year were less than $250,000. | | |
| b | The partnership's total assets at the end of the tax year were less than $ 1 million. | | |
| c | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| d | The partnership is not filing and is not required to file Schedule M-3 | | X |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; item F on page 1 of Form 1065; or item L on Schedule K-1. | | |
| **5** | Is this partnership a publicly traded partnership, as defined in section 469(k)(2)? | | X |
| **6** | During the tax year, did the partnership have any debt that was canceled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| **7** | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| **8** | At any time during calendar year 2019, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). If "Yes," enter the name of the foreign country  ▶ | | X |
| **9** | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions | | X |
| **10 a** | Is the partnership making, or had it previously made (and not revoked), a section 754 election? | | X |
| | See instructions for details regarding a section 754 election. | | |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |

911011 12-30-19                                                                              Form **1065** (2019)

2

CONFIDENTIAL                                                                   ALECTO_00027115
                                                                              **JA2318**

Form 1065 (2019)   ALECTO HEALTHCARE SERVICES LLC                                    46-0829723   Page **3**

**Schedule B** | **Other Information** (continued)

|   |   | Yes | No |
|---|---|---|---|
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| 11 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly owned by the partnership throughout the tax year) ▶ ☐ | | |
| 12 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? | | X |
| 13 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities (FDEs) and Foreign Branches (FBs), enter the number of Forms 8858 attached. See instructions ▶ | | |
| 14 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership ▶ | | X |
| 15 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return ▶ | | |
| 16 a | Did you make any payments in 2019 that would require you to file Form(s) 1099? See instructions | X | |
| b | If "Yes," did you or will you file required Form(s) 1099? | X | |
| 17 | Enter the number of Forms 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return ▶ | | |
| 18 | Enter the number of partners that are foreign governments under section 892 ▶ | | |
| 19 | During the partnership's tax year, did the partnership make any payments that would require it to file Form 1042 and 1042-S under chapter 3 (sections 1441 through 1464) or chapter 4 (sections 1471 through 1474)? | | X |
| 20 | Was the partnership a specified domestic entity required to file Form 8938 for the tax year? See the Instructions for Form 8938 | | X |
| 21 | Is the partnership a section 721(c) partnership, as defined in Regulations section 1.721(c)-1T(b)(14)? | | X |
| 22 | During the tax year, did the partnership pay or accrue any interest or royalty for which the deduction is not allowed under section 267A? See instructions | | X |
| | If "Yes," enter the total amount of the disallowed deductions ▶ $ | | |
| 23 | Did the partnership have an election under section 163(j) for any real property trade or business or any farming business in effect during the tax year? See instructions | | X |
| 24 | Does the partnership satisfy one or more of the following? See instructions | | X |
| a | The partnership owns a pass-through entity with current, or prior year carryover, excess business interest expense. | | |
| b | The partnership's aggregate average annual gross receipts (determined under section 448(c)) for the 3 tax years preceding the current tax year are more than $26 million and the partnership has business interest. | | |
| c | The partnership is a tax shelter (see instructions) and the partnership has business interest expense. | | |
| | If "Yes" to any, complete and attach Form 8990. | | |
| 25 | Is the partnership electing out of the centralized partnership audit regime under section 6221(b)? See instructions | | X |
| | If "Yes," the partnership must complete Schedule B-2 (Form 1065). Enter the total from Schedule B-2, Part III, line 3 ▶ | | |
| | If "No," complete Designation of Partnership Representative below. | | |

**Designation of Partnership Representative** (see instructions)

Enter below the information for the partnership representative (PR) for the tax year covered by this return.

Name of PR ▶ MIKE SARRAO

| U.S. address of PR | 16310 BAKE PARKWAY SUITE 200 IRVINE, CA 92618 | U.S. phone number of PR | 949-783-3976 |
|---|---|---|---|

If the PR is an entity, name of the designated individual for the PR ▶

| U.S. address of designated individual ▶ | | U.S. phone number of designated individual ▶ | |
|---|---|---|---|

| 26 | Is the partnership attaching Form 8996 to certify as a Qualified Opportunity Fund? | | X |
|---|---|---|---|
| | If "Yes," enter the amount from Form 8996, line 14 ▶ $ | | |
| 27 | Enter the number of foreign partners subject to section 864(c)(8) as a result of transferring all or a portion of an interest in the partnership or of receiving a distribution from the partnership ▶ | | |
| 28 | At any time during the tax year, were there any transfers between the partnership and its partners subject to the disclosure requirements of Regulations section 1.707-8? | | X |

Form **1065** (2019)

911021 12-30-19

3

CONFIDENTIAL                                                                    ALECTO_00027116
                                                                            **JA2319**

Case 23-10787-JKS   Doc 307-2   Filed 02/29/24   Page 10 of 72

Form 1065 (2019)   ALECTO HEALTHCARE SERVICES LLC                              46-0829723   Page 4

| Schedule K | Partners' Distributive Share Items | | Total amount |
|---|---|---|---|
| | **1** Ordinary business income (loss) (page 1, line 22) | **1** | -49,100,099. |
| | **2** Net rental real estate income (loss) (attach Form 8825) | **2** | |
| | **3a** Other gross rental income (loss) ............... **3a** | | |
| | **b** Expenses from other rental activities (attach statement) ........ **3b** | | |
| | **c** Other net rental income (loss). Subtract line 3b from line 3a | **3c** | |
| | **4** Guaranteed payments: **a** Services **4a** **b** Capital **4b** | | |
| | **c** Total. Add lines 4a and 4b | **4c** | |
| Income (Loss) | **5** Interest income ........................ SEE STATEMENT 6 | **5** | 232,271. |
| | **6** Dividends and dividend equivalents: **a** Ordinary dividends | **6a** | |
| | **b** Qualified dividends **6b** **c** Dividend equivalents **6c** | | |
| | **7** Royalties | **7** | |
| | **8** Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | **8** | |
| | **9a** Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | **9a** | |
| | **b** Collectibles (28%) gain (loss) ............... **9b** | | |
| | **c** Unrecaptured section 1250 gain (attach statement) ....... **9c** | | |
| | **10** Net section 1231 gain (loss) (attach Form 4797) | **10** | -1,918. |
| | **11** Other income (loss) (see instructions) Type ▶ | **11** | |
| Deductions | **12** Section 179 deduction (attach Form 4562) | **12** | |
| | **13a** Contributions ........................ SEE STATEMENT 7 | **13a** | 24,690. |
| | **b** Investment interest expense | **13b** | |
| | **c** Section 59(e)(2) expenditures: **(1)** Type ▶ **(2)** Amount ▶ | **13c(2)** | |
| | **d** Other deductions (see instructions) Type ▶ SEE STATEMENT 8 | **13d** | 187,193. |
| Self-Employ-ment | **14a** Net earnings (loss) from self-employment | **14a** | -44,190,084. |
| | **b** Gross farming or fishing income | **14b** | |
| | **c** Gross nonfarm income | **14c** | |
| Credits | **15a** Low-income housing credit (section 42(j)(5)) | **15a** | |
| | **b** Low-income housing credit (other) | **15b** | |
| | **c** Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | **15c** | |
| | **d** Other rental real estate credits (see instructions) Type ▶ | **15d** | |
| | **e** Other rental credits (see instructions) Type ▶ | **15e** | |
| | **f** Other credits (see instructions) Type ▶ | **15f** | |
| Foreign Transactions | **16a** Name of country or U.S. possession ▶ | | |
| | **b** Gross income from all sources | **16b** | |
| | **c** Gross income sourced at partner level | **16c** | |
| | Foreign gross income sourced at partnership level | | |
| | **d** Reserved for future use ▶ **e** Foreign branch category ▶ | **16e** | |
| | **f** Passive category ▶ **g** General category ▶ **h** Other ▶ | **16h** | |
| | Deductions allocated and apportioned at partner level | | |
| | **i** Interest expense ▶ **j** Other ▶ | **16j** | |
| | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | **k** Reserved for future use ▶ **l** Foreign branch category ▶ | **16l** | |
| | **m** Passive category ▶ **n** General category ▶ **o** Other ▶ | **16o** | |
| | **p** Total foreign taxes (check one): ▶ Paid ☐ Accrued ☐ | **16p** | |
| | **q** Reduction in taxes available for credit (attach statement) | **16q** | |
| | **r** Other foreign tax information (attach statement) | | |
| Alternative Minimum Tax (AMT) Items | **17a** Post-1986 depreciation adjustment | **17a** | -47,855. |
| | **b** Adjusted gain or loss ........................ SEE STATEMENT 9 | **17b** | -1,030. |
| | **c** Depletion (other than oil and gas) | **17c** | |
| | **d** Oil, gas, and geothermal properties - gross income | **17d** | |
| | **e** Oil, gas, and geothermal properties - deductions | **17e** | |
| | **f** Other AMT items (attach statement) | **17f** | |
| Other Information | **18a** Tax-exempt interest income | **18a** | |
| | **b** Other tax-exempt income | **18b** | |
| | **c** Nondeductible expenses ............... SEE STATEMENT 10 | **18c** | 158,989. |
| | **19a** Distributions of cash and marketable securities | **19a** | 0. |
| | **b** Distributions of other property | **19b** | |
| | **20a** Investment income | **20a** | 232,271. |
| | **b** Investment expenses | **20b** | |
| | **c** Other items and amounts (attach statement) .......... STMT 11 | | |

911041 12-30-19                                              4                                    Form **1065** (2019)

10340904 146892 629917              2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

**CONFIDENTIAL**

ALECTO_00027117
**JA2320**

Case 23-10787-JKS    Doc 307-2    Filed 02/29/24    Page 11 of 72

Form 1065 (2019)  ALECTO HEALTHCARE SERVICES LLC                              46-0829723  Page **5**

## Analysis of Net Income (Loss)

| 1 Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16p | | | | | | | **1** | $-49,081,629.$ |

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt Organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | | $-44173412.$ | $-2,454,021.$ | | | $-2,454,196.$ |

---

### Schedule L | Balance Sheets per Books

| Assets | Beginning of tax year (a) | Beginning of tax year (b) | End of tax year (c) | End of tax year (d) |
|---|---|---|---|---|
| 1 Cash | | 107,203. | | 356,458. |
| 2a Trade notes and accounts receivable | 1,364,490. | | 1,296,349. | |
| b Less allowance for bad debts | 1,000,000. | 364,490. | 1,000,000. | 296,349. |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach statement) | STATEMENT 13 | 548,440. | | 652,960. |
| 7a Loans to partners (or persons related to partners) | | | | |
| b Mortgage and real estate loans | | | | |
| 8 Other investments (attach statement) | STATEMENT 14 | 15,670,881. | | 25,489,819. |
| 9a Buildings and other depreciable assets | 13,467. | | 13,467. | |
| b Less accumulated depreciation | 8,230. | 5,237. | 12,719. | 748. |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | | | |
| 12a Intangible assets (amortizable only) | 12,433. | | | |
| b Less accumulated amortization | | 12,433. | | |
| 13 Other assets (attach statement) | | | | |
| 14 Total assets | | 16,708,684. | | 26,796,334. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | 1,679,150. | | 2,139,683. |
| 16 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 Other current liabilities (attach statement) | STATEMENT 15 | 894,891. | | 1,235,770. |
| 18 All nonrecourse loans | | | | |
| 19a Loans from partners (or persons related to partners) | | | | |
| b Mortgages, notes, bonds payable in 1 year or more | | 4,039,464. | | 4,749,523. |
| 20 Other liabilities (attach statement) | | | | |
| 21 Partners' capital accounts | | 10,095,179. | | 18,671,358. |
| 22 Total liabilities and capital | | 16,708,684. | | 26,796,334. |

### Schedule M-1 | Reconciliation of Income (Loss) per Books With Income (Loss) per Return

**Note:** The partnership may be required to file Schedule M-3. See instructions.

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | | 6 Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | a Tax-exempt interest $ | |
| 3 Guaranteed payments (other than health insurance) | | 7 Deductions included on Schedule K, lines 1 through 13d, and 16p, not charged against book income this year (itemize): | |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16p (itemize): | | a Depreciation $ | |
| a Depreciation $ | | 8 Add lines 6 and 7 | |
| b Travel and entertainment $ | | 9 Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | |
| 5 Add lines 1 through 4 | | | |

### Schedule M-2 | Analysis of Partners' Capital Accounts                    STMT 12

| | | | |
|---|---|---|---|
| 1 Balance at beginning of year | 10,095,179. | 6 Distributions: a Cash | 2,238,651. |
| 2 Capital contributed: a Cash | 11,183,129. | b Property | |
| STMT 17        b Property | | 7 Other decreases (itemize): | |
| 3 Net income (loss) per books | -368,299. | | |
| 4 Other increases (itemize): | | 8 Add lines 6 and 7 | 2,238,651. |
| 5 Add lines 1 through 4 | 20,910,009. | 9 Balance at end of year. Subtract line 8 from line 5 | 18,671,358. |

911042 12-30-19                                                                           5                                                                 Form **1065** (2019)

10340904 146892 629917                                    2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027118
**JA2321**

| **SCHEDULE B-1**<br>**(Form 1065)**<br>(Rev. August 2019)<br>Department of the Treasury<br>Internal Revenue Service | **Information on Partners Owning 50% or<br>More of the Partnership**<br>▶ Attach to Form 1065.<br>▶ Go to www.irs.gov/Form1065 for the latest information. | OMB No. 1545-0123 |
|---|---|---|

Name of partnership | Employer identification number

ALECTO HEALTHCARE SERVICES LLC | 46-0829723

**Part I** **Entities Owning 50% or More of the Partnership** (Form 1065, Schedule B, Question 2a (Question 3a for 2009 through 2017))

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, tax-exempt organization, or any foreign government that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**Part II** **Individuals or Estates Owning 50% or More of the Partnership** (Form 1065, Schedule B, Question 2b (Question 3b for 2009 through 2017))

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| LAXMAN REDDY |  | UNITED STATES | 56.00 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

LHA **For Paperwork Reduction Act Notice, see the Instructions for Form 1065.**        **Schedule B-1 (Form 1065) (Rev. 8-2019)**

924551 11-13-19

CONFIDENTIAL
ALECTO_00027119
JA2322

| **SCHEDULE M-3**<br>**(Form 1065)**<br><br>Department of the Treasury<br>Internal Revenue Service | **Net Income (Loss) Reconciliation<br>for Certain Partnerships**<br>▶ Attach to Form 1065.<br>▶ Go to www.irs.gov/Form1065 for instructions and the latest information. | OMB No. 1545-0123<br><br>**2019** |
|---|---|---|

Name of partnership

ALECTO HEALTHCARE SERVICES LLC

Employer identification number

46-0829723

This Schedule M-3 is being filed because (check all that apply):

A ☒ The amount of the partnership's total assets at the end of the tax year is equal to $10 million or more.

B ☒ The amount of the partnership's adjusted total assets for the tax year is equal to $10 million or more. If box B is checked,
enter the amount of adjusted total assets for the tax year  **247,808,992.** .

C ☐ The amount of total receipts for the tax year is equal to $35 million or more. If box C is checked, enter the total
receipts for the tax year _____ .

D ☐ An entity that is a reportable entity partner with respect to the partnership owns or is deemed to own an interest of 50%
or more in the partnership's capital, profit, or loss on any day during the tax year of the partnership.

| Name of Reportable Entity Partner | Identifying Number | Maximum Percentage Owned or<br>Deemed Owned |
|---|---|---|
| | | |
| | | |

E ☐ Voluntary Filer.

**Part I    Financial Information and Net Income (Loss) Reconciliation**

1a Did the partnership file SEC Form 10-K for its income statement period ending with or within this tax year?

☐ **Yes.** Skip lines 1b and 1c and complete lines 2 through 11 with respect to that SEC Form 10-K.

☒ **No.** Go to line 1b. See instructions if multiple non-tax-basis income statements are prepared.

b Did the partnership prepare a certified audited non-tax-basis income statement for that period?

☐ **Yes.** Skip line 1c and complete lines 2 through 11 with respect to that income statement.

☒ **No.** Go to line 1c.

c Did the partnership prepare a non-tax-basis income statement for that period?

☒ **Yes.** Complete lines 2 through 11 with respect to that income statement.

☐ **No.** Skip lines 2 through 3b and enter the partnership's net income (loss) per its books and records on line 4a.

2 Enter the income statement period:   Beginning **01/01/2019**   Ending **12/31/2019**

3a Has the partnership's income statement been restated for the income statement period on line 2?

☐ **Yes.** (If "Yes," attach a statement and the amount of each item restated.)
☒ **No.**

b Has the partnership's income statement been restated for any of the five income statement periods immediately preceding the period on line 2?

☐ **Yes.** (If "Yes," attach a statement and the amount of each item restated.)
☒ **No.**

| | | |
|---|---|---|
| 4a Worldwide consolidated net income (loss) from income statement source identified in Part I, line 1 | 4a | -368,299. |
| b Indicate accounting standard used for line 4a (see instructions).<br>1 ☒ GAAP    2 ☐ IFRS    3 ☐ Section 704(b)<br>4 ☐ Tax-basis    5 ☐ Other (Specify) ▶ | | |
| 5a Net income from nonincludible foreign entities (attach statement) | 5a | ( ) |
| b Net loss from nonincludible foreign entities (attach statement and enter as a positive amount) | 5b | |
| 6a Net income from nonincludible U.S. entities (attach statement) | 6a | ( ) |
| b Net loss from nonincludible U.S. entities (attach statement and enter as a positive amount) | 6b | |
| 7a Net income (loss) of other foreign disregarded entities (attach statement) | 7a | |
| b Net income (loss) of other U.S. disregarded entities (attach statement) | 7b | |
| 8 Adjustment to eliminations of transactions between includible entities and noncludible entities (attach stmt.) | 8 | |
| 9 Adjustment to reconcile income statement period to tax year (attach statement) | 9 | |
| 10 Other adjustments to reconcile to amount on line 11 (attach statement) | 10 | |
| 11 **Net income (loss) per income statement of the partnership.** Combine lines 4a through 10 | 11 | -368,299. |

**Note:** Part I, line 11, must equal Part II, line 26, column (a), or Schedule M-1, line 1. See instructions.

12 Enter the total amount (not just the partnership's share) of the assets and liabilities of all entities included or removed on the following lines.

| | Total Assets | Total Liabilities |
|---|---|---|
| a Included on Part I, line 4 | 26,796,334. | 8,124,976. |
| b Removed on Part I, line 5 | | |
| c Removed on Part I, line 6 | | |
| d Included on Part I, line 7 | | |

For Paperwork Reduction Act Notice, see the instructions for your return.

Schedule M-3 (Form 1065) 2019

910991 01-13-20   LHA

7

CONFIDENTIAL

ALECTO_00027120
JA2323

Schedule M-3 (Form 1065) 2019

Page 2

| Name of partnership | Employer identification number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

**Part II** Reconciliation of Net Income (Loss) per Income Statement of Partnership with Income (Loss) per Return

| Income (Loss) Items | (a) Income (Loss) per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Income (Loss) per Tax Return |
|---|---|---|---|---|
| | Attach statements for lines 1 through 10. | | | |
| 1 Income (loss) from equity method foreign corporations | | | | |
| 2 Gross foreign dividends not previously taxed | | | | |
| 3 Subpart F, QEF, and similar income inclusions | | | | |
| 4 Gross foreign distributions previously taxed | | | | |
| 5 Income (loss) from equity method U.S. corporations | | | | |
| 6 U.S. dividends | | | | |
| 7 Income (loss) from U.S. partnerships   **STMT  18** | | -48,732,356. | 127,749. | -48,604,607. |
| 8 Income (loss) from foreign partnerships | | | | |
| 9 Income (loss) from other pass-through entities | | | | |
| 10 Items relating to reportable transactions | | | | |
| 11 Interest income (see instructions) | 88. | | | 88. |
| 12 Total accrual to cash adjustment | | | | |
| 13 Hedging transactions | | | | |
| 14 Mark-to-market income (loss) | | | | |
| 15 Cost of goods sold (see instructions) | ( ) | | | ( ) |
| 16 Sale versus lease (for sellers and/or lessors) | | | | |
| 17 Section 481(a) adjustments | | | | |
| 18 Unearned/deferred revenue | | | | |
| 19 Income recognition from long-term contracts | | | | |
| 20 Original issue discount and other imputed interest | | | | |
| 21a Income statement gain/loss on sale, exchange, abandonment, worthlessness, or other disposition of assets other than inventory and pass-through entities | | | | |
| b Gross capital gains from Schedule D, excluding amounts from pass-through entities | | | | |
| c Gross capital losses from Schedule D, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses | | | | |
| d Net gain/loss reported on Form 4797, line 17, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses | | | | |
| e Abandonment losses | | | | |
| f Worthless stock losses (attach statement) | | | | |
| g Other gain/loss on disposition of assets other than inventory | | | | |
| 22 Other income (loss) items with differences (attach statement) | | | | |
| 23 Total income (loss) items. Combine lines 1 through 22 | 88. | -48,732,356. | 127,749. | -48,604,519. |
| 24 Total expense/deduction items. (From Part III, line 31) (see instructions) | -3,447,775. | -139,963. | 31,240. | -3,556,498. |
| 25 Other items with no differences   **STMT  19** | 3,079,388. | | | 3,079,388. |
| 26 Reconciliation totals. Combine lines 23 through 25 | -368,299. | -48,872,319. | 158,989. | -49,081,629. |

**Note:** Line 26, column (a), must equal Part I, line 11, and column (d) must equal Form 1065, Analysis of Net Income (Loss), line 1.

Schedule M-3 (Form 1065) 2019

CONFIDENTIAL

ALECTO_00027121
**JA2324**

Schedule M-3 (Form 1065) 2019

Page 3

| Name of partnership | Employer identification number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

**Part III** Reconciliation of Net Income (Loss) per Income Statement of Partnership With Income (Loss) per Return - Expense/Deduction Items

| | Expense/Deduction Items | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
|---|---|---|---|---|---|
| 1 | State and local current income tax expense | 3,200. | 1,600. | | 4,800. |
| 2 | State and local deferred income tax expense | | | | |
| 3 | Foreign current income tax expense (other than foreign withholding taxes) | | | | |
| 4 | Foreign deferred income tax expense | | | | |
| 5 | Equity-based compensation | | | | |
| 6 | Meals and entertainment ......... STMT 21 | 10,806. | | -5,403. | 5,403. |
| 7 | Fines and penalties | | | | |
| 8 | Judgments, damages, awards, and similar costs | | | | |
| 9 | Guaranteed payments | | | | |
| 10 | Pension and profit-sharing | | | | |
| 11 | Other post-retirement benefits | | | | |
| 12 | Deferred compensation | | | | |
| 13 | Charitable contribution of cash and tangible property .................. STMT 22 | 14,150. | | | 14,150. |
| 14 | Charitable contribution of intangible property | | | | |
| 15 | Organizational expenses as per Regulations section 1.709-2(a) | | | | |
| 16 | Syndication expenses as per Regulations section 1.709-2(b) | | | | |
| 17 | Current year acquisition/reorganization investment banking fees | | | | |
| 18 | Current year acquisition/reorganization legal and accounting fees | | | | |
| 19 | Amortization/impairment of goodwill | | | | |
| 20 | Amortization of acquisition, reorganization, and start-up costs | | | | |
| 21 | Other amortization or impairment write-offs ............ STMT 23 | 12,433. | -7,729. | | 4,704. |
| 22 | Reserved | | | | |
| 23a | Depletion - Oil & Gas | | | | |
| b | Depletion - Other than Oil & Gas | | | | |
| 24 | Intangible drilling & development costs | | | | |
| 25 | Depreciation | 4,489. | -3,311. | | 1,178. |
| 26 | Bad debt expense | | | | |
| 27 | Interest expense (see instructions) | 187,281. | -187,193. | | 88. |
| 28 | Purchase versus lease (for purchasers and/or lessees) | | | | |
| 29 | Research and development costs | | | | |
| 30 | Other expense/deduction items with differences (attach statement) ............ STMT 24 | 3,215,416. | 336,596. | -25,837. | 3,526,175. |
| 31 | Total expense/deduction items. Combine lines 1 through 30. Enter here and on Part II, line 24, reporting positive amounts as negative and negative amounts as positive | 3,447,775. | 139,963. | -31,240. | 3,556,498. |

Schedule M-3 (Form 1065) 2019

910993
01-13-20

CONFIDENTIAL

ALECTO_00027122
**JA2325**

| Form **4562** | **Depreciation and Amortization** (Including Information on Listed Property) ▶ Attach to your tax return. | OTHER 1 | OMB No. 1545-0172 **2019** |
|---|---|---|---|
| Department of the Treasury Internal Revenue Service (99) | ▶ Go to www.irs.gov/Form4562 for instructions and the latest information. | | Attachment Sequence No. **179** |

| Name(s) shown on return | Business or activity to which this form relates | Identifying number |
|---|---|---|
| ALECTO HEALTHCARE SERVICES LLC | | 46-0829723 |

**Part I** Election To Expense Certain Property Under Section 179 **Note:** If you have any listed property, complete Part V before you complete Part I.

| | | |
|---|---|---|
| 1 Maximum amount (see instructions) | | 1 |
| 2 Total cost of section 179 property placed in service (see instructions) | | 2 |
| 3 Threshold cost of section 179 property before reduction in limitation | | 3 |
| 4 Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | | 4 |
| 5 Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | | 5 |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

| | | | |
|---|---|---|---|
| 7 Listed property. Enter the amount from line 29 | | 7 | |
| 8 Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | | | 8 |
| 9 Tentative deduction. Enter the **smaller** of line 5 or line 8 | | | 9 |
| 10 Carryover of disallowed deduction from line 13 of your 2018 Form 4562 | | | 10 |
| 11 Business income limitation. Enter the smaller of business income (not less than zero) or line 5 | | | 11 |
| 12 Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11 | | | 12 |
| 13 Carryover of disallowed deduction to 2020. Add lines 9 and 10, less line 12 ▶ | 13 | | |

**Note:** Don't use Part II or Part III below for listed property. Instead, use Part V.

**Part II** Special Depreciation Allowance and Other Depreciation (Don't include listed property.)

| | | |
|---|---|---|
| 14 Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year | | 14 |
| 15 Property subject to section 168(f)(1) election | | 15 |
| 16 Other depreciation (including ACRS) | | 16 |

**Part III** MACRS Depreciation (Don't include listed property. See instructions.)

**Section A**

| | | |
|---|---|---|
| 17 MACRS deductions for assets placed in service in tax years beginning before 2019 | 17 | 1,178. |
| 18 If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ▶ ☐ | | |

**Section B - Assets Placed in Service During 2019 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only - see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs. | | S/L | |
| h Residential rental property | / | | 27.5 yrs. | MM | S/L | |
| | / | | 27.5 yrs. | MM | S/L | |
| i Nonresidential real property | / | | 39 yrs. | MM | S/L | |
| | / | | | MM | S/L | |

**Section C - Assets Placed in Service During 2019 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs. | | S/L | |
| c 30-year | / | | 30 yrs. | MM | S/L | |
| d 40-year | / | | 40 yrs. | MM | S/L | |

**Part IV** Summary (See instructions.)

| | | |
|---|---|---|
| 21 Listed property. Enter amount from line 28 | | 21 |
| 22 **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instr. | | 22 | 1,178. |
| 23 For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

916251 12-12-19   LHA **For Paperwork Reduction Act Notice, see separate instructions.**

Form **4562** (2019)

10340904 146892 629917            2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027123
JA2326

| Form 4562 (2019) | ALECTO HEALTHCARE SERVICES LLC | 46-0829723 Page 2 |
|---|---|---|

**Part V** Listed Property (Include automobiles, certain other vehicles, certain aircraft, and property used for entertainment, recreation, or amusement.)

Note: For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete **only** 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

Section A - Depreciation and Other Information (Caution: See the instructions for limits for passenger automobiles.)

| 24a Do you have evidence to support the business/investment use claimed? | Yes | No | 24b If "Yes," is the evidence written? | Yes | No |
|---|---|---|---|---|---|

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use | | | | | | 25 | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | : : | % | | | | | | |
| | : : | % | | | | | | |
| | : : | % | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | : : | % | | | | S/L - | | |
| | : : | % | | | | S/L - | | |
| | : : | % | | | | S/L - | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 | | | | | | 28 | | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 | | | | | | | 29 | |

Section B - Information on Use of Vehicles

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle | | (b) Vehicle | | (c) Vehicle | | (d) Vehicle | | (e) Vehicle | | (f) Vehicle | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (**don't** include commuting miles) | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 | | | | | | | | | | | | |
| 34 Was the vehicle available for personal use during off-duty hours? | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? | | | | | | | | | | | | |

Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **aren't** more than 5% owners or related persons.

| | Yes | No |
|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners | | |
| 39 Do you treat all use of vehicles by employees as personal use? | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? | | |

Note: If your answer to 37, 38, 39, 40, or 41 is "Yes," don't complete Section B for the covered vehicles.

**Part VI** Amortization

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2019 tax year: | | | | | |
| | : : | | | | |
| | : : | | | | |
| 43 Amortization of costs that began before your 2019 tax year | | | | 43 | 4,704. |
| 44 **Total.** Add amounts in column (f). See the instructions for where to report | | | | 44 | 4,704. |

916252 12-12-19                                                                                                          Form **4562** (2019)

11

CONFIDENTIAL

ALECTO_00027124
JA2327

2019 DEPRECIATION AND AMORTIZATION REPORT

OTHER                                                                                              1

| Asset No. | Description | Date Acquired | Method | Life | C o n v | Line No. | Unadjusted Cost Or Basis | Bus % Excl | Section 179 Expense | Reduction In Basis * | Basis For Depreciation | Beginning Accumulated Depreciation | Current Sec 179 Expense | Current Year Deduction | Ending Accumulated Depreciation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 | LOAN COSTS | 08/31/16 | 197 | 36M | | 43 | 21,173. | | | | 21,173. | 16,469. | | 4,704. | 21,173. |
| 7 | FURNITURE | 07/01/17 | 200DB | 7.00 | HY17 | | 13,467. | | | 6,734. | 6,733. | 2,611. | | 1,178. | 3,789. |
| | * TOTAL OTHER DEPRECIATION & AMORT | | | | | | 34,640. | | | 6,734. | 27,906. | 19,080. | | 5,882. | 24,962. |

(D) - Asset disposed

12

928111 04-01-19                                              * ITC, Salvage, Bonus, Commercial Revitalization Deduction, GO Zone

CONFIDENTIAL

ALECTO_00027125

JA2328

| Form **4797**<br>Department of the Treasury<br>Internal Revenue Service | **Sales of Business Property**<br>(Also Involuntary Conversions and Recapture Amounts Under Sections 179 and 280F(b)(2))<br>▶ Attach to your tax return.<br>▶ Go to www.irs.gov/Form4797 for instructions and the latest information. | | | | OMB No. 1545-0184<br>**2019**<br>Attachment<br>Sequence No. **27** |

Name(s) shown on return — ALECTO HEALTHCARE SERVICES LLC

Identifying number — 46-0829723

1  Enter the gross proceeds from sales or exchanges reported to you for 2019 on Form(s) 1099-B or 1099-S (or substitute statement) that you are including on line 2, 10, or 20. See instructions ................................................ | **1** |

**Part I** | **Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft - Most Property Held More Than 1 Year** (see instructions)

| **(a)** Description of property | **(b)** Date acquired (mo., day, yr.) | **(c)** Date sold (mo., day, yr.) | **(d)** Gross sales price | **(e)** Depreciation allowed or allowable since acquisition | **(f)** Cost or other basis, plus improvements and expense of sale | **(g)** Gain or (loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|
| 2 PASSTHROUGH FROM ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | | | | | |
| | | | | | | -1,918. |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---|
| 3  Gain, if any, from Form 4684, line 39 | **3** | |
| 4  Section 1231 gain from installment sales from Form 6252, line 26 or 37 | **4** | |
| 5  Section 1231 gain or (loss) from like-kind exchanges from Form 8824 | **5** | |
| 6  Gain, if any, from line 32, from other than casualty or theft | **6** | |
| 7  Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows | **7** | -1,918. |

**Partnerships and S corporations.** Report the gain or (loss) following the instructions for Form 1065, Schedule K, line 10, or Form 1120-S, Schedule K, line 9. Skip lines 8, 9, 11, and 12 below.

**Individuals, partners, S corporation shareholders, and all others.** If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 is a gain and you didn't have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain from line 7 as a long-term capital gain on the Schedule D filed with your return and skip lines 8, 9, 11, and 12 below.

| | | |
|---|---|---|
| 8  Nonrecaptured net section 1231 losses from prior years. See instructions | **8** | |
| 9  Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on the Schedule D filed with your return. See instructions | **9** | |

**Part II** | **Ordinary Gains and Losses** (see instructions)

10  Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less):

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---|
| 11  Loss, if any, from line 7 | **11** | ( ) |
| 12  Gain, if any, from line 7 or amount from line 8, if applicable | **12** | |
| 13  Gain, if any, from line 31 | **13** | |
| 14  Net gain or (loss) from Form 4684, lines 31 and 38a | **14** | |
| 15  Ordinary gain from installment sales from Form 6252, line 25 or 36 | **15** | |
| 16  Ordinary gain or (loss) from like-kind exchanges from Form 8824 | **16** | |
| 17  Combine lines 10 through 16 | **17** | |

18  For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines a and b below. For individual returns, complete lines a and b below.

| | | |
|---|---|---|
| a  If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the loss from income-producing property on Schedule A (Form 1040 or Form 1040-SR), line 16. (Do not include any loss on property used as an employee.) Identify as from "Form 4797, line 18a." See instructions | **18a** | |
| b  Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Schedule 1 (Form 1040 or Form 1040-SR), Part I, line 4 | **18b** | |

LHA  **For Paperwork Reduction Act Notice, see separate instructions.**

Form **4797** (2019)

918001
12-04-19

CONFIDENTIAL

ALECTO_00027126
**JA2329**

ALECTO  HEALTH Case 23-10787-JKS LC Doc 307-2   Filed 02/29/24   Page 20 of 72      46-0829723

Form 4797 (2019)                                                                                                Page 2

| **Part III** | **Gain From Disposition of Property Under Sections 1245, 1250, 1252, 1254, and 1255**  (see instructions) | | | | |

|  | **19 (a)** Description of section 1245, 1250, 1252, 1254, or 1255 property: | | | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) |
|---|---|---|---|---|---|
| A |  | | | | |
| B |  | | | | |
| C |  | | | | |
| D |  | | | | |

| | These columns relate to the properties on lines 19A through 19D. | ▶ | Property A | Property B | Property C | Property D |
|---|---|---|---|---|---|---|
| 20 | Gross sales price (**Note:** See line 1 before completing.) | 20 | | | | |
| 21 | Cost or other basis plus expense of sale | 21 | | | | |
| 22 | Depreciation (or depletion) allowed or allowable | 22 | | | | |
| 23 | Adjusted basis. Subtract line 22 from line 21 | 23 | | | | |
| 24 | Total gain. Subtract line 23 from line 20 | 24 | | | | |
| 25 | **If section 1245 property:** | | | | | |
| | **a** Depreciation allowed or allowable from line 22 | 25a | | | | |
| | **b** Enter the **smaller** of line 24 or 25a | 25b | | | | |
| 26 | **If section 1250 property:** If straight line depreciation was used, enter -0- on line 26g, except for a corporation subject to section 291. | | | | | |
| | **a** Additional depreciation after 1975 | 26a | | | | |
| | **b** Applicable percentage multiplied by the **smaller** of line 24 or line 26a | 26b | | | | |
| | **c** Subtract line 26a from line 24. If residential rental property **or** line 24 isn't more than line 26a, skip lines 26d and 26e | 26c | | | | |
| | **d** Additional depreciation after 1969 and before 1976 | 26d | | | | |
| | **e** Enter the **smaller** of line 26c or 26d | 26e | | | | |
| | **f** Section 291 amount (corporations only) | 26f | | | | |
| | **g** Add lines 26b, 26e, and 26f | 26g | | | | |
| 27 | **If section 1252 property:** Skip this section if you didn't dispose of farmland or if this form is being completed for a partnership. | | | | | |
| | **a** Soil, water, and land clearing expenses | 27a | | | | |
| | **b** Line 27a multiplied by applicable percentage | 27b | | | | |
| | **c** Enter the **smaller** of line 24 or 27b | 27c | | | | |
| 28 | **If section 1254 property:** | | | | | |
| | **a** Intangible drilling and development costs, expenditures for development of mines and other natural deposits, mining exploration costs, and depletion | 28a | | | | |
| | **b** Enter the **smaller** of line 24 or 28a | 28b | | | | |
| 29 | **If section 1255 property:** | | | | | |
| | **a** Applicable percentage of payments excluded from income under section 126 | 29a | | | | |
| | **b** Enter the **smaller** of line 24 or 29a | 29b | | | | |

**Summary of Part III Gains.** Complete property columns A through D through line 29b before going to line 30.

| | | | |
|---|---|---|---|
| 30 | Total gains for all properties. Add property columns A through D, line 24 | 30 | |
| 31 | Add property columns A through D, lines 25b, 26g, 27c, 28b, and 29b. Enter here and on line 13 | 31 | |
| 32 | Subtract line 31 from line 30. Enter the portion from casualty or theft on Form 4684, line 33. Enter the portion from other than casualty or theft on Form 4797, line 6 | 32 | |

| **Part IV** | **Recapture Amounts Under Sections 179 and 280F(b)(2)  When Business Use Drops to 50% or Less** | | |

(see instructions)

| | | | (a) Section 179 | (b) Section 280F(b)(2) |
|---|---|---|---|---|
| 33 | Section 179 expense deduction or depreciation allowable in prior years | 33 | | |
| 34 | Recomputed depreciation. See instructions | 34 | | |
| 35 | Recapture amount. Subtract line 34 from line 33. See the instructions for where to report | 35 | | |

918002
12-04-19

Form 4797 (2019)

**CONFIDENTIAL**

ALECTO_00027127
**JA2330**

ALTERNATIVE MINIMUM TAX

| | | | |
|---|---|---|---|
| Form **4797** | **Sales of Business Property** | | OMB No. 1545-0184 |
| | (Also Involuntary Conversions and Recapture Amounts Under Sections 179 and 280F(b)(2)) | | **2019** |
| Department of the Treasury Internal Revenue Service | ▶ Attach to your tax return. ▶ Go to www.irs.gov/Form4797 for instructions and the latest information. | | Attachment Sequence No. **27** |

| Name(s) shown on return | Identifying number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

**1** Enter the gross proceeds from sales or exchanges reported to you for 2019 on Form(s) 1099-B or 1099-S (or substitute statement) that you are including on line 2, 10, or 20. See instructions ........................................ **1**

| Part I | Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft - Most Property Held More Than 1 Year (see instructions) |
|---|---|

| **(a)** Description of property | **(b)** Date acquired (mo., day, yr.) | **(c)** Date sold (mo., day, yr.) | **(d)** Gross sales price | **(e)** Depreciation allowed or allowable since acquisition | **(f)** Cost or other basis, plus improvements and expense of sale | **(g)** Gain or (loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|
| 2 PASSTHROUGH FROM ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | | | | | |
| | | | | | | -1,918. |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---|
| **3** Gain, if any, from Form 4684, line 39 ........................................................................................................ | **3** | |
| **4** Section 1231 gain from installment sales from Form 6252, line 26 or 37 ........................................................ | **4** | |
| **5** Section 1231 gain or (loss) from like-kind exchanges from Form 8824 ........................................................... | **5** | |
| **6** Gain, if any, from line 32, from other than casualty or theft ......................................................................... | **6** | |
| **7** Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows ......................... | **7** | -1,918. |

**Partnerships and S corporations.** Report the gain or (loss) following the instructions for Form 1065, Schedule K, line 10, or Form 1120-S, Schedule K, line 9. Skip lines 8, 9, 11, and 12 below.

**Individuals, partners, S corporation shareholders, and all others.** If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 is a gain and you didn't have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain from line 7 as a long-term capital gain on the Schedule D filed with your return and skip lines 8, 9, 11, and 12 below.

| | | |
|---|---|---|
| **8** Nonrecaptured net section 1231 losses from prior years. See instructions ....................................................... | **8** | |
| **9** Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on the Schedule D filed with your return. See instructions ....................................................... | **9** | |

| Part II | Ordinary Gains and Losses (see instructions) |
|---|---|

| | | | | | | |
|---|---|---|---|---|---|---|
| **10** Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less): | | | | | | |
| PASSTHROUGH FROM ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | | | | | |
| | | | | | | -1,030. |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---|
| **11** Loss, if any, from line 7 ............................................................................................................................... | **11** ( ) |
| **12** Gain, if any, from line 7 or amount from line 8, if applicable ........................................................................... | **12** | |
| **13** Gain, if any, from line 31 ............................................................................................................................. | **13** | |
| **14** Net gain or (loss) from Form 4684, lines 31 and 38a ..................................................................................... | **14** | |
| **15** Ordinary gain from installment sales from Form 6252, line 25 or 36 ............................................................... | **15** | |
| **16** Ordinary gain or (loss) from like-kind exchanges from Form 8824 .................................................................. | **16** | |
| **17** Combine lines 10 through 16 ....................................................................................................................... | **17** | -1,030. |

**18** For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines a and b below. For individual returns, complete lines a and b below.

**a** If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the loss from income-producing property on Schedule A (Form 1040 or Form 1040-SR), line 16. (Do not include any loss on property used as an employee.) Identify as from "Form 4797, line 18a." See instructions ...................................... **18a**

**b** Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Schedule 1 (Form 1040 or Form 1040-SR), Part I, line 4 ..................................................................................... **18b**

LHA **For Paperwork Reduction Act Notice, see separate instructions.** Form **4797** (2019)

918001
12-04-19

ALECTO_00027128
**JA2331**

ALECTO HEALTHCase 23-10787-JKSLC Doc 307-2   Filed 02/29/24   Page 22 of 72          46-0829723

Form 4797 (2019)                          ALTERNATIVE MINIMUM TAX                                        Page 2

| Part III | Gain From Disposition of Property Under Sections 1245, 1250, 1252, 1254, and 1255 (see instructions) | | | | |
|---|---|---|---|---|---|

| **19 (a)** Description of section 1245, 1250, 1252, 1254, or 1255 property: | | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) |
|---|---|---|---|
| A | | | |
| B | | | |
| C | | | |
| D | | | |

| | These columns relate to the properties on lines 19A through 19D. | ▶ | Property A | Property B | Property C | Property D |
|---|---|---|---|---|---|---|
| 20 | Gross sales price (**Note:** See line 1 before completing.) | 20 | | | | |
| 21 | Cost or other basis plus expense of sale | 21 | | | | |
| 22 | Depreciation (or depletion) allowed or allowable | 22 | | | | |
| 23 | Adjusted basis. Subtract line 22 from line 21 | 23 | | | | |
| 24 | Total gain. Subtract line 23 from line 20 | 24 | | | | |
| 25 | **If section 1245 property:** | | | | | |
| | **a** Depreciation allowed or allowable from line 22 | 25a | | | | |
| | **b** Enter the **smaller** of line 24 or 25a | 25b | | | | |
| 26 | **If section 1250 property:** If straight line depreciation was used, enter -0- on line 26g, except for a corporation subject to section 291. | | | | | |
| | **a** Additional depreciation after 1975 | 26a | | | | |
| | **b** Applicable percentage multiplied by the **smaller** of line 24 or line 26a | 26b | | | | |
| | **c** Subtract line 26a from line 24. If residential rental property **or** line 24 isn't more than line 26a, skip lines 26d and 26e | 26c | | | | |
| | **d** Additional depreciation after 1969 and before 1976 | 26d | | | | |
| | **e** Enter the **smaller** of line 26c or 26d | 26e | | | | |
| | **f** Section 291 amount (corporations only) | 26f | | | | |
| | **g** Add lines 26b, 26e, and 26f | 26g | | | | |
| 27 | **If section 1252 property:** Skip this section if you didn't dispose of farmland or if this form is being completed for a partnership. | | | | | |
| | **a** Soil, water, and land clearing expenses | 27a | | | | |
| | **b** Line 27a multiplied by applicable percentage | 27b | | | | |
| | **c** Enter the **smaller** of line 24 or 27b | 27c | | | | |
| 28 | **If section 1254 property:** | | | | | |
| | **a** Intangible drilling and development costs, expenditures for development of mines and other natural deposits, mining exploration costs, and depletion | 28a | | | | |
| | **b** Enter the **smaller** of line 24 or 28a | 28b | | | | |
| 29 | **If section 1255 property:** | | | | | |
| | **a** Applicable percentage of payments excluded from income under section 126 | 29a | | | | |
| | **b** Enter the **smaller** of line 24 or 29a | 29b | | | | |

**Summary of Part III Gains.** Complete property columns A through D through line 29b before going to line 30.

| | | | |
|---|---|---|---|
| 30 | Total gains for all properties. Add property columns A through D, line 24 | 30 | |
| 31 | Add property columns A through D, lines 25b, 26g, 27c, 28b, and 29b. Enter here and on line 13 | 31 | |
| 32 | Subtract line 31 from line 30. Enter the portion from casualty or theft on Form 4684, line 33. Enter the portion from other than casualty or theft on Form 4797, line 6 | 32 | |

| Part IV | Recapture Amounts Under Sections 179 and 280F(b)(2) When Business Use Drops to 50% or Less |
|---|---|

(see instructions)

| | | | (a) Section 179 | (b) Section 280F(b)(2) |
|---|---|---|---|---|
| 33 | Section 179 expense deduction or depreciation allowable in prior years | 33 | | |
| 34 | Recomputed depreciation. See instructions | 34 | | |
| 35 | Recapture amount. Subtract line 34 from line 33. See the instructions for where to report | 35 | | |

918002
12-04-19

Form 4797 (2019)

Form **8308**
(Rev. September 2018)
Department of the Treasury
Internal Revenue Service

## Report of a Sale or Exchange of Certain Partnership Interests

▶ Go to www.irs.gov/Form8308 for the latest information.

OMB No. 1545-0123

| Name of partnership | Phone number | Employer identification number |
|---|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 323-932-5963 | 46-0829723 |

Number, street, and room or suite no. If a P.O. box, see instructions.

16310 BAKE PARKWAY SUITE 200

City or town, state or province, country, and ZIP or foreign postal code

IRVINE, CA   92618

**Part I**    **Transferor Information** (Beneficial owner of the partnership interest immediately before the transfer of that interest)

| Name | Identifying number |
|---|---|
| PANCH JEYAKUMAR | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

TUSTIN, CA   92782

**Notice to Transferors:** *The information on this form has been supplied to the Internal Revenue Service. The transferor in a section 751(a) exchange is required to treat a portion of the gain realized from the exchange as ordinary income. For more details, see Pub. 541, Partnerships.*

**Statement by Transferor:** *The transferor in a section 751(a) exchange is required under Regulations section 1.751-1(a)(3) to attach a statement relating to the sale or exchange to his or her return.*

**Part II**    **Transferee Information** (Beneficial owner of the partnership interest immediately after the transfer of that interest)

| Name | Identifying number |
|---|---|
| LAXMAN REDDY | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

CALABASAS, CA   91302

**Part III**    Date of Sale or Exchange of Partnership Interest ▶          12/31/19

Sign here only if you
are filing this form by
itself and not with
Form 1065

Under penalties of perjury, I declare that I have examined this return, including accompanying attachments, and to the best of my knowledge and belief, it is true, correct, and complete.

▶ _____   ▶ _____
Signature of partnership representative or partner or limited liability company member      Date

LHA
919971
04-01-19

Form **8308** (Rev. 9-2018)

10340904 146892 629917          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027130
JA2333

| Form **8308** (Rev. September 2018) Department of the Treasury Internal Revenue Service | **Report of a Sale or Exchange of Certain Partnership Interests** ▶ Go to www.irs.gov/Form8308 for the latest information. | | OMB No. 1545-0123 |
|---|---|---|---|

| Name of partnership | | Phone number | Employer identification number |
|---|---|---|---|
| ALECTO HEALTHCARE SERVICES LLC | | 323-932-5963 | 46-0829723 |

Number, street, and room or suite no. If a P.O. box, see instructions.

16310 BAKE PARKWAY SUITE 200

City or town, state or province, country, and ZIP or foreign postal code

IRVINE, CA   92618

**Part I** | **Transferor Information** (Beneficial owner of the partnership interest immediately before the transfer of that interest)

| Name | Identifying number |
|---|---|
| AMAN DHUPER | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

RANCHO CUCAMONGA, CA   91739

**Notice to Transferors:** *The information on this form has been supplied to the Internal Revenue Service. The transferor in a section 751(a) exchange is required to treat a portion of the gain realized from the exchange as ordinary income. For more details, see Pub. 541, Partnerships.*

**Statement by Transferor:** *The transferor in a section 751(a) exchange is required under Regulations section 1.751-1(a)(3) to attach a statement relating to the sale or exchange to his or her return.*

**Part II** | **Transferee Information** (Beneficial owner of the partnership interest immediately after the transfer of that interest)

| Name | Identifying number |
|---|---|
| LAXMAN REDDY | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

CALABASAS, CA   91302

**Part III** | Date of Sale or Exchange of Partnership Interest ▶   12/31/19

| Sign here only if you are filing this form by itself and not with Form 1065 | Under penalties of perjury, I declare that I have examined this return, including accompanying attachments, and to the best of my knowledge and belief, it is true, correct, and complete. ▶ _____ Signature of partnership representative or partner or limited liability company member | ▶ _____ Date |
|---|---|---|

CONFIDENTIAL

ALECTO_00027131
JA2334

| Form **8916-A** | **Supplemental Attachment to Schedule M-3** | |
|---|---|---|
| (Rev. November 2019) | ▶ Attach to Schedule M-3 for Form 1065, 1120, 1120-L, 1120-PC, or 1120-S. | OMB No. 1545-0123 |
| Department of the Treasury Internal Revenue Service | ▶ Go to www.irs.gov/Form1120 for the latest information. | |

| Name of common parent | Employer identification number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |
| Name of subsidiary | Employer identification number |

### Part I    Cost of Goods Sold

| Cost of Goods Sold Items | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
|---|---|---|---|---|
| 1  Amounts attributable to cost flow assumptions | | | | |
| 2  Amounts attributable to: | | | | |
| a  Stock option expense | | | | |
| b  Other equity-based compensation | | | | |
| c  Meals and entertainment | | | | |
| d  Parachute payments | | | | |
| e  Compensation with section 162(m) limitation | | | | |
| f  Pension and profit sharing | | | | |
| g  Other post-retirement benefits | | | | |
| h  Deferred compensation | | | | |
| i  Reserved | | | | |
| j  Amortization | | | | |
| k  Depletion | | | | |
| l  Depreciation | | | | |
| m  Corporate-owned life insurance premiums | | | | |
| n  Other section 263A costs | | | | |
| 3  Inventory shrinkage accruals | | | | |
| 4  Excess inventory and obsolescence reserves | | | | |
| 5  Lower of cost or market write-downs | | | | |
| 6  Other items with differences (attach statement) | | | | |
| 7  Other items with no differences | | | | |
| 8  **Total cost of goods sold.** Add lines 1 through 7 in columns a, b, c, and d. Enter totals on the applicable Schedule M-3. See instructions | | | | |

LHA    **For Paperwork Reduction Act Notice, see instructions.**                    Form **8916-A** (Rev. 11-2019)

**CONFIDENTIAL**                                                                 **ALECTO_00027132**
**JA2335**

Form 8916-A (Rev. 11-2019) ALECTO HEALTHCARE SERVICES LLC                    46-0829723  Page 2

**Part II   Interest Income**

| | Interest Income Item | (a)<br>Income (Loss) per<br>Income Statement | (b)<br>Temporary<br>Difference | (c)<br>Permanent<br>Difference | (d)<br>Income (Loss) per<br>Tax Return |
|---|---|---|---|---|---|
| 1 | Tax-exempt interest income | | | | |
| 2 | Interest income from hybrid securities | | | | |
| 3 | Sale/lease interest income | | | | |
| 4a | Intercompany interest income - From outside tax affiliated group | | | | |
| 4b | Intercompany interest income - From tax affiliated group | | | | |
| 5 | Other interest income          STMT 26 | 88. | | | 88. |
| 6 | Total interest income. Add lines 1 through 5 | | | | |
| | in columns a, b, c, and d. Enter total on | | | | |
| | the applicable Schedule M-3. | | | | |
| | See instructions. | 88. | | | 88. |

**Part III   Interest Expense**

| | Interest Expense Item | (a)<br>Expense per<br>Income Statement | (b)<br>Temporary<br>Difference | (c)<br>Permanent<br>Difference | (d)<br>Deduction per<br>Tax Return |
|---|---|---|---|---|---|
| 1 | Interest expense from hybrid securities | | | | |
| 2 | Lease/purchase interest expense | | | | |
| 3a | Intercompany interest expense - Paid to outside tax affiliated group | | | | |
| 3b | Intercompany interest expense - Paid to tax affiliated group | | | | |
| 4 | Other interest expense          STMT 27 | 187,281. | -187,193. | | 88. |
| 5 | Total interest expense. Add lines 1 through 4 | | | | |
| | in columns a, b, c, and d. Enter total on | | | | |
| | the applicable Schedule M-3. | | | | |
| | See instructions. | 187,281. | -187,193. | | 88. |

Form **8916-A** (Rev. 11-2019)

913316
12-11-19

20
2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027133
**JA2336**

| Form **8925** | **Report of Employer-Owned Life Insurance Contracts** | | OMB No. 1545-2089 |
|---|---|---|---|
| (Rev. September 2017)<br>Department of the Treasury<br>Internal Revenue Service (99) | ▶ Attach to the policyholder's tax return. See instructions.<br>▶ Go to www.irs.gov/Form8925 for the latest information. | | Attachment<br>Sequence No. **160** |

| Name(s) shown on return | Identifying number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

| Name of policyholder, if different from above | Identifying number, if different from above |
|---|---|
| 2 | |

Type of business

| | | | |
|---|---|---|---|
| 1 | Enter the number of employees the policyholder had at the end of the tax year | **1** | 11. |
| 2 | Enter the number of employees included on line 1 who were insured at the end of the tax year under the policyholder's employer-owned life insurance contract(s) issued after August 17, 2006. See *Section 1035 exchanges* for an exception | **2** | 2. |
| 3 | Enter the total amount of employer-owned life insurance in force at the end of the tax year for employees who were insured under the contract(s) specified on line 2 | **3** | 5,500,000. |
| 4a | Does the policyholder have a valid consent for each employee included on line 2? See instructions .............. [X] Yes [ ] No | | |
| b | If "No," enter the number of employees included on line 2 for whom the policyholder does not have a valid consent | **4b** | |

920591 04-01-19   LHA   **For Paperwork Reduction Act Notice, see instructions.**   Form **8925** (Rev. 9-2017)
21
10340904 146892 629917   2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL   ALECTO_00027134
JA2337

| Form **8990** | **Limitation on Business Interest Expense Under Section 163(j)** | | | OMB No. 1545-0123 |
|---|---|---|---|---|
| (Rev. May 2020) | ▶ Attach to your tax return. | | | |
| Department of the Treasury Internal Revenue Service | ▶ Go to www.irs.gov/Form8990 for instructions and the latest information. | | | |

| Taxpayer name(s) shown on tax return | Identification number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

If Form 8990 relates to an information return for a foreign entity (for example, Form 5471), enter:

Name of foreign entity ▶

Employer identification number, if any ▶

Reference ID number ▶

### Part I  Computation of Allowable Business Interest Expense

*Part I is completed by all taxpayers subject to section 163(j). Schedule A and Schedule B need to be completed before Part I when the taxpayer is a partner or shareholder of a pass-through entity subject to section 163(j).*

#### Section I - Business Interest Expense

| | | | | | |
|---|---|---|---|---|---|
| 1 | Current year business interest expense (not including floor plan financing interest expense), before the section 163(j) limitation | 1 | 187,281. | | |
| 2 | Disallowed business interest expense carryforwards from prior years. (Does not apply to a partnership) | 2 | | | |
| 3 | Partner's excess business interest expense treated as paid or accrued in current year (Schedule A, line 44, column (h)) | 3 | | | |
| 4 | Floor plan financing interest expense. See instructions | 4 | | | |
| 5 | **Total business interest expense.** Add lines 1 through 4 ▶ | | | 5 | 187,281. |

#### Section II - Adjusted Taxable Income

**Taxable Income**

| | | | | |
|---|---|---|---|---|
| 6 | **Taxable income.** See instructions | | 6 | -49,081,629. |

**Additions** (adjustments to be made if amounts are taken into account on line 6)

| | | | | | |
|---|---|---|---|---|---|
| 7 | Any item of loss or deduction that is not properly allocable to a trade or business of the taxpayer. See instructions | 7 | | | |
| 8 | Any business interest expense not from a pass-through entity. See instructions | 8 | 187,281. | | |
| 9 | Amount of any net operating loss deduction under section 172 | 9 | | | |
| 10 | Amount of any qualified business income deduction allowed under section 199A | 10 | | | |
| 11 | Deduction allowable for depreciation, amortization, or depletion attributable to a trade or business. See instructions | 11 | 5,882. | | |
| 12 | Amount of any loss or deduction items from a pass-through entity. See instructions | 12 | 48,836,790. | | |
| 13 | Other additions. See instructions | 13 | | | |
| 14 | Total current year partner's excess taxable income (Schedule A, line 44, column (f)) | 14 | | | |
| 15 | Total current year S corporation shareholder's excess taxable income (Schedule B, line 46, column (c)) | 15 | | | |
| 16 | **Total.** Add lines 7 through 15 ▶ | | | 16 | 49,029,953. |

**Reductions** (adjustments to be made if amounts are taken into account on line 6)

| | | | | | |
|---|---|---|---|---|---|
| 17 | Any item of income or gain that is not properly allocable to a trade or business of the taxpayer. See instructions | 17 | ( | | |
| 18 | Any business interest income not from a pass-through entity. See instructions | 18 | ( 88. | | |
| 19 | Amount of any income or gain items from a pass-through entity. See instructions | 19 | ( 232,183. | | |
| 20 | Other reductions. See instructions | 20 | ( | | |
| 21 | **Total.** Combine lines 17 through 20 ▶ | | | 21 | ( 232,271.) |
| 22 | **Adjusted taxable income.** Combine lines 6, 16, and 21. (If zero or less, enter -0-.) ▶ | | | 22 | |

LHA  **For Paperwork Reduction Act Notice, see the instructions.**                Form **8990** (Rev. 5-2020)

923211 06-29-20

CONFIDENTIAL

Form 8990 (Rev. 5-2020)                                                                                          Page **2**

## Section III - Business Interest Income

| | | | | | |
|---|---|---|---|---|---|
| 23 | Current year business interest income. See instructions | 23 | 88. | | |
| 24 | Excess business interest income from pass-through entities (total of | | | | |
| | Schedule A, line 44, column (g), and Schedule B, line 46, column (d)) | 24 | | | |
| 25 | **Total.** Add lines 23 and 24 | ▶ | | 25 | 88. |

## Section IV - Section 163(j) Limitation Calculations

### Limitation on Business Interest Expense

| | | | | | |
|---|---|---|---|---|---|
| 26 | Multiply adjusted taxable income (line 22) by the applicable percentage. See instructions | 26 | | | |
| 27 | Business interest income (line 25) | 27 | 88. | | |
| 28 | Floor plan financing interest expense (line 4) | 28 | | | |
| 29 | **Total.** Add lines 26, 27, and 28 | ▶ | | 29 | 88. |

### Allowable Business Interest Expense

| | | | |
|---|---|---|---|
| 30 | **Total current year business interest expense deduction.** See instructions | 30 | 88. |

### Carryforward

| | | | |
|---|---|---|---|
| 31 | **Disallowed business interest expense.** Subtract line 29 from line 5. (If zero or less, enter -0-.) | 31 | 187,193. |

### Part II   Partnership Pass-Through Items

*Part II is only completed by a partnership that is subject to section 163(j). The partnership items below are allocated to the partners and are not carried forward by the partnership. See the instructions for more information.*

### Excess Business Interest Expense

| | | | |
|---|---|---|---|
| 32 | **Excess business interest expense.** Enter amount from line 31 | 32 | 187,193. |

### Excess Taxable Income (If you entered an amount on line 32, skip lines 33 through 37.)

| | | | |
|---|---|---|---|
| 33 | Subtract the sum of lines 4 and 25 from line 5. (If zero or less, enter -0-.) | 33 | |
| 34 | Subtract line 33 from line 26. (If zero or less, enter -0-.) | 34 | |
| 35 | Divide line 34 by line 26. Enter the result as a decimal. (If line 26 is zero, enter -0-.) | 35 | |
| 36 | **Excess taxable income.** Multiply line 35 by line 22 | 36 | |

### Excess Business Interest Income

| | | | |
|---|---|---|---|
| 37 | **Excess business interest income.** Subtract the sum of lines 1, 2, and 3 from line 25. (If zero or less, enter -0-.) | 37 | |

### Part III   S Corporation Pass-Through Items

*Part III is only completed by S corporations that are subject to section 163(j). The S corporation items below are allocated to the shareholders. See the instructions for more information.*

### Excess Taxable Income

| | | | |
|---|---|---|---|
| 38 | Subtract the sum of lines 4 and 25 from line 5. (If zero or less, enter -0-.) | 38 | |
| 39 | Subtract line 38 from line 26. (If zero or less, enter -0-.) | 39 | |
| 40 | Divide line 39 by line 26. Enter the result as a decimal. (If line 26 is zero, enter -0-.) | 40 | |
| 41 | **Excess taxable income.** Multiply line 40 by line 22 | 41 | |

### Excess Business Interest Income

| | | | |
|---|---|---|---|
| 42 | **Excess business interest income.** Subtract the sum of lines 1, 2, and 3 from line 25. (If zero or less, enter -0-.) | 42 | |

Form **8990** (Rev. 5-2020)

923212  06-29-20

10340904 146892 629917                 2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                                                          ALECTO_00027136
                                                                                        **JA2339**

Form 8990 (Rev. 5-2020)

Page 3

## SCHEDULE A — Summary of Partner's Section 163(j) Excess Items

*Any taxpayer that owns an interest in a partnership subject to section 163(j) should complete Schedule A before completing Part I.*

| (a) Name of partnership | (b) EIN | Excess Business Interest Expense | | | (f) Current year excess taxable income | (g) Current year excess business interest income | (h) Excess business interest expense treated as paid or accrued (see instructions) | (i) Current year excess business interest expense carryforward (h) minus (h) |
|---|---|---|---|---|---|---|---|---|
| | | (c) Current year | (d) Prior year carryforward | (e) Total (c) plus (d) | | | | |
| 43 | ALECTO HEALTHCARE SERVICES LOS ANGELES | 90-0999512 | 2,728,405. | 2,412,792. | 5,141,197. | 0. | 0. | 0. | 5,141,197. |
| | ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 35-2507149 | 1,856,996. | 0. | 1,856,996. | 0. | 0. | 0. | 1,856,996. |
| | ALECTO HEALTHCARE SERVICES SHERMAN LLC | 37-1760423 | 1,607,374. | 1,324,556. | 2,931,930. | 0. | 0. | 0. | 2,931,930. |
| | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 36-4857044 | 1,597,701. | 1,120,897. | 2,718,598. | 0. | 0. | 0. | 2,718,598. |
| | | | | | | | | | |
| | | | | | | | | | |
| **44 Total** | | | | | | 0. | 0. | 0. | |

## SCHEDULE B — Summary of S Corporation Shareholder's Excess Taxable Income and Excess Business Interest Income

*Any taxpayer that is required to complete Part I and is a shareholder in an S corporation that has excess taxable income or excess business interest income or excess business interest income should complete Schedule B before completing Part I.*

| (a) Name of S corporation | (b) EIN | (c) Current year excess taxable income | (d) Current year excess business interest income |
|---|---|---|---|
| 45 | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **46 Total** | | 0. | 0. |

Form 8990 (Rev. 5-2020)

923213 08-26-20

24

CONFIDENTIAL

ALECTO_00027137

JA2340

Section 1.263(a)-1(f) De Minimis Safe Harbor Election


Alecto Healthcare Services LLC
16310 Bake Parkway Suite 200
Irvine, CA  92618

Employer Identification Number:  46-0829723

For the Year Ending December 31, 2019

Alecto Healthcare Services LLC is making the de minimis safe harbor
election under Reg. Sec. 1.263(a)-1(f).

ALECTO HEALTHCARE SERVICES LLC                                           46-0829723

════════════════════════════════════════════════════════════════════════════════

| FORM 1065 | INCOME (LOSS) FROM OTHER PARTNERSHIPS, ETC. | STATEMENT 1 |
|---|---|---|

| NAME AND ADDRESS | EMPLOYER ID | AMOUNT |
|---|---|---|
| ALECTO HEALTHCARE SERVICES LOS ANGELES<br>5000 E SPRING ST STE 400 | | |
| LONG BEACH, CA 90815 | 90-0999512 | -2,122,748. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC<br>1325 LOCUST AVENUE | | |
| FAIRMONT, WV 26554 | 35-2507149 | -5,386,507. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC<br>500 N. HIGHLAND AVENUE | | |
| SHERMAN, TX 75092 | 37-1760423 | -3,852,294. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC<br>16310 BAKE PARKWAY SUITE 200 | | |
| IRVINE, CA 92618 | 36-4857044 | -37,462,783. |

TOTAL TO FORM 1065, LINE 4                                             -48,824,332.

════════════════════════════════════════════════════════════════════════════════

| FORM 1065 | OTHER INCOME | STATEMENT 2 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| OTHER INCOME | 20,980. |

TOTAL TO FORM 1065, LINE 7                                                  20,980.

════════════════════════════════════════════════════════════════════════════════

| FORM 1065 | TAX EXPENSE | STATEMENT 3 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| CALIFORNIA TAXES - BASED ON INCOME | 4,800. |
| PAYROLL TAXES | 145,810. |
| TAXES AND LICENSES | 7,200. |

TOTAL TO FORM 1065, LINE 14                                                157,810.

════════════════════════════════════════════════════════════════════════════════

CONFIDENTIAL                                                ALECTO_00027139
                                                                            JA2342

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| FORM 1065 | OTHER DEDUCTIONS | STATEMENT 4 |
|-----------|------------------|-------------|

| DESCRIPTION | AMOUNT |
|-------------|--------|
| AMORTIZATION EXPENSE | 4,704. |
| AUTOMOBILE EXPENSE | 22,998. |
| BANK SERVICE CHARGES | 21,466. |
| COMPUTER AND INTERNET EXPENSES | 12,593. |
| DUES AND SUBSCRIPTIONS | 13,537. |
| INSURANCE | 102,537. |
| MEALS | 5,403. |
| PROFESSIONAL FEES | 227,313. |
| PURCHASED SERVICES | 202,802. |
| SUPPLIES AND OTHER | 11,651. |
| TRAVEL EXPENSES | 97,427. |
| UTILITIES | 29,943. |
| TOTAL TO FORM 1065, LINE 20 | 752,374. |

CONFIDENTIAL

ALECTO_00027140
JA2343

ALECTO HEALTHCARE SERVICES LLC                                                          46-0829723

THE ENTITY OWNS 20% OR MORE DIRECTLY OR        STATEMENT 5
50% OR MORE OVERALL OF PARTNERSHIPS OR TRUSTS

| NAME OF ENTITY | EIN NUMBER | |
|---|---|---|
| | COUNTRY OF ORGANIZATION | PCT OWNED |
| SPAULDING MANAGMENT LLC | 27-4025215 | |
| | UNITED STATES | 100.00 |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 90-0999512 | |
| | UNITED STATES | 100.00 |
| ACCELERON SERVICES LLC | 90-0987801 | |
| | UNITED STATES | 100.00 |
| ALECTO HEALTHCARE SERVICES HAYWARD LLC | 36-4743580 | |
| | UNITED STATES | 100.00 |
| ALECTO HEALTHCARE SERVICES INDIANA LLC | | |
| | UNITED STATES | 100.00 |
| UNITED MEDICAL MANAGEMENT LLC | 38-3933131 | |
| | UNITED STATES | 100.00 |
| OLYMPIA HEALTH CARE LLC | 42-1643090 | |
| | UNITED STATES | 64.00 |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 35-2507149 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 37-1760423 | |
| | UNITED STATES | 80.00 |
| SHERMAN/GRAYSON HOSPITAL LLC | 27-2025690 | |
| | UNITED STATES | 80.00 |
| SHERMAN/GRAYSON HEALTH SERVICES LLC | 27-2025835 | |
| | UNITED STATES | 80.00 |
| SHERMAN/GRAYSON SPONSOR LLC | 35-2518088 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES FAIRMONT HOSPI | 47-1310470 | |
| | UNITED STATES | 80.00 |
| HORIZON REAL ESTATE HOLDINGS LLC | 57-1226547 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY | 36-4857044 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES WHEELING, LLC | 37-1848845 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES MARTINS FERRY | 37-1848949 | |
| | UNITED STATES | 80.00 |

CONFIDENTIAL                                                                    ALECTO_00027141
                                                                                   JA2344

ALECTO HEALTHCARE SERVICES LLC                                              46-0829723

---

| SCHEDULE K | INTEREST INCOME | STATEMENT 6 |
|---|---|---|

| DESCRIPTION | U.S. BONDS | OTHER |
|---|---|---|
| INTEREST - ALECTO HEALTHCARE SERVICES LOS ANGELES | | 169,969. |
| INTEREST - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | 48. |
| INTEREST - ALECTO HEALTHCARE SERVICES SHERMAN LLC | | 62,166. |
| INTEREST INCOME | | 88. |
| TOTAL TO SCHEDULE K, LINE 5 | | 232,271. |

---

| SCHEDULE K | CHARITABLE CONTRIBUTIONS | STATEMENT 7 |
|---|---|---|

| DESCRIPTION | TYPE | AMOUNT |
|---|---|---|
| CONTRIBUTIONS - ALECTO HEALTHCARE SERVICES FAIRMONT LLC | CASH (60%) | 5,740. |
| CONTRIBUTIONS - ALECTO HEALTHCARE SERVICES LOS ANGELES | CASH (60%) | 4,800. |
| CHARITABLE CONTRIBUTIONS | CASH (60%) | 14,150. |
| TOTALS TO SCHEDULE K, LINE 13A | | 24,690. |

---

| SCHEDULE K | OTHER DEDUCTIONS | STATEMENT 8 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| EXCESS BUSINESS INTEREST EXPENSE | 187,193. |
| TOTAL INCLUDED IN SCHEDULE K, LINE 13D | 187,193. |

CONFIDENTIAL

ALECTO_00027142
JA2345

ALECTO HEALTHCARE SERVICES LLC                                              46-0829723

| SCHEDULE K | ADJUSTED GAIN OR LOSS | STATEMENT 9 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| AMT BASIS ADJUSTMENT FROM PASSTHROUGH | -1,030. |
| TOTAL TO SCHEDULE K, LINE 17B | -1,030. |

| | SUBJECT TO SPECIAL RATES | AMOUNT |
|---|---|---|
| ADJUSTED GAIN OR LOSS ALLOCABLE TO: | | |
| ORDINARY GAIN OR LOSS | | -1,030. |
| SHORT-TERM CAPITAL GAIN OR LOSS | | |
| LONG-TERM CAPITAL GAIN OR LOSS | | |
| SECTION 1231 GAIN OR LOSS | | |
| COLLECTIBLES - 28% RATE | | |
| UNRECAPTURED SECTION 1250 GAIN - 25% RATE | | |

| SCHEDULE K | NONDEDUCTIBLE EXPENSE | STATEMENT 10 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 5,403. |
| NONDEDUCTIBLE EXPENSE FROM PASSTHROUGH | 127,749. |
| OFFICER'S LIFE INSURANCE | 25,837. |
| TOTAL TO SCHEDULE K, LINE 18C | 158,989. |

| SCHEDULE K | OTHER ITEMS | STATEMENT 11 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| SECTION 199A - ORDINARY INCOME (LOSS) | -49,258,702. |
| SECTION 199A W-2 WAGES | 113,913,392. |
| SECTION 199A UNADJUSTED BASIS OF ASSETS | 43,971,941. |
| BEGINNING TAX CAPITAL | -31,853,158. |
| ENDING TAX CAPITAL | -72,149,298. |

CONFIDENTIAL                                                    ALECTO_00027143
                                                                         JA2346

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| SCHEDULE M-2 | DISTRIBUTIONS | STATEMENT 12 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| TRANSFERRED CAPITAL | 2,238,651. |
| TOTAL TO SCHEDULE M-2, LINE 6A | 2,238,651. |

| SCHEDULE L | OTHER CURRENT ASSETS | STATEMENT 13 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| DUE FROM AFFILIATE | 50,000. | 50,000. |
| OTHER CURRENT ASSETS | 46,356. | 79,756. |
| OTHER RECEIVABLES | 0. | 34,704. |
| PREPAID EXPENSES | 452,084. | 488,500. |
| TOTAL TO SCHEDULE L, LINE 6 | 548,440. | 652,960. |

| SCHEDULE L | OTHER INVESTMENTS | STATEMENT 14 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| INTERCOMPANY RECEIVABLE | 15,670,881. | 25,489,819. |
| TOTAL TO SCHEDULE L, LINE 8 | 15,670,881. | 25,489,819. |

| SCHEDULE L | OTHER CURRENT LIABILITIES | STATEMENT 15 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| ACCRUED PAYROLL | 158,472. | 88,910. |
| ACCRUED PTO | 132,997. | 99,470. |
| OTHER ACCRUED EXPENSES | 603,422. | 1,047,390. |
| TOTAL TO SCHEDULE L, LINE 17 | 894,891. | 1,235,770. |

CONFIDENTIAL                                                    ALECTO_00027144
                                                                        JA2347

ALECTO HEALTHCARE SERVICES LLC                                                46-0829723

| FORM 1065 | | PARTNERS' CAPITAL ACCOUNT SUMMARY | | | STATEMENT 16 |
|---|---|---|---|---|---|
| PARTNER NUMBER | BEGINNING CAPITAL | CAPITAL CONTRIBUTED | SCHEDULE M-2 LNS 3, 4 & 7 | WITH- DRAWALS | ENDING CAPITAL |
| 1 | 5,606,788. | 7,247,559. | -206,248. | | 12,648,099. |
| 2 | 1,038,816. | 894,448. | -36,827. | | 1,896,437. |
| 3 | 727,207. | 626,113. | -25,786. | | 1,327,534. |
| 4 | 727,229. | 626,113. | -25,778. | 1,327,564. | 0. |
| 6 | 504,568. | 447,224. | -18,414. | | 933,378. |
| 7 | 488,857. | 447,224. | -18,415. | | 917,666. |
| 8 | 519,434. | 447,224. | -18,414. | | 948,244. |
| 9 | 482,280. | 447,224. | -18,417. | 911,087. | 0. |
| TOTAL | 10,095,179. | 11,183,129. | -368,299. | 2,238,651. | 18,671,358. |

CONFIDENTIAL

ALECTO_00027145
JA2348

ALECTO HEALTHCARE SERVICES LLC                                      46-0829723

| SCHEDULE M-2 | CONTRIBUTIONS | STATEMENT 17 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| TRANSFERRED CAPITAL | 2,238,651. |
| CONTRIBUTIONS TO CAPITAL | 8,944,478. |
| TOTAL TO SCHEDULE M-2, LINE 2 | 11,183,129. |

| SCHEDULE M-3 | INCOME (LOSS) FROM U.S. PARTNERSHIPS | STATEMENT 18 |
|---|---|---|

NAME

| EIN | END OF YEAR PERCENTAGE PROFIT- SHARING | LOSS- SHARING | INCOME (LOSS) PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | INCOME (LOSS) PER TAX RETURN |
|---|---|---|---|---|---|---|
| ALECTO HEALTHCARE SERVICES LOS ANGELES 90-0999512 | | | 0. | -2,081,276. | 123,697. | -1,957,579. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC 35-2507149 | | | 0. | -5,395,363. | 1,198. | -5,394,165. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC 37-1760423 | | | 0. | -3,791,689. | 1,561. | -3,790,128. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC 36-4857044 | | | 0. | -37,464,028. | 1,293. | -37,462,735. |
| TOTAL TO M-3, PART II, LINE 7 | | | 0. | -48,732,356. | 127,749. | -48,604,607. |

| SCHEDULE M-3 | OTHER INCOME (LOSS) AND EXPENSE / DEDUCTION ITEMS WITH NO DIFFERENCES | STATEMENT 19 |
|---|---|---|

| DESCRIPTION | PER INCOME STATEMENT | PER TAX RETURN |
|---|---|---|
| OTHER INCOME (LOSS) - SEE STATEMENT | 4,305,599. | 4,305,599. |
| OTHER EXPENSE / DEDUCTION - SEE STATEMENT | -1,226,211. | -1,226,211. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 25 | 3,079,388. | 3,079,388. |

CONFIDENTIAL

ALECTO_00027146
JA2349

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

═══════════════════════════════════════════════════════════════════════════════

| SCHEDULE M-3 | OTHER INCOME (LOSS) ITEMS WITH NO DIFFERENCES | STATEMENT 20 |
|---|---|---|

| DESCRIPTION | INCOME (LOSS) PER INCOME STATEMENT | INCOME (LOSS) PER TAX RETURN |
|---|---|---|
| OTHER INCOME | 20,980. | 20,980. |
| SALES | 4,284,619. | 4,284,619. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 25 | 4,305,599. | 4,305,599. |

═══════════════════════════════════════════════════════════════════════════════

| SCHEDULE M-3 | MEALS AND ENTERTAINMENT | | | STATEMENT 21 |
|---|---|---|---|---|

| DESCRIPTION | EXPENSE PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | DEDUCTION PER TAX RETURN |
|---|---|---|---|---|
| MEALS AND ENTERTAINMENT FROM TRADE OR BUSINESS | 10,806. | | -5,403. | 5,403. |
| TOTAL | 10,806. | | -5,403. | 5,403. |

═══════════════════════════════════════════════════════════════════════════════

| SCHEDULE M-3 | CHARITABLE CONTRIBUTION OF CASH AND TANGIBLE PROPERTY | | | STATEMENT 22 |
|---|---|---|---|---|

| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | EXPENSE/ DEDUCTION PER TAX RETURN |
|---|---|---|---|---|
| CHARITABLE CONTRIBUTIONS | 14,150. | | 0. | 14,150. |
| TOTAL | 14,150. | | 0. | 14,150. |

CONFIDENTIAL                                                    **ALECTO_00027147**
                                                                    **JA2350**

ALECTO HEALTHCARE SERVICES LLC                                                    46-0829723

| SCHEDULE M-3 | OTHER AMORTIZATION OR IMPAIRMENT WRITE-OFFS | | STATEMENT 23 | |
| --- | --- | --- | --- | --- |
| DESCRIPTION | EXPENSE PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | DEDUCTION PER TAX RETURN |
| LOAN COSTS | 4,704. | | 0. | 4,704. |
| OTHER AMORTIZATION | 7,729. | -7,729. | 0. | 0. |
| TOTAL | 12,433. | -7,729. | 0. | 4,704. |

| SCHEDULE M-3 | OTHER EXPENSE/DEDUCTION ITEMS WITH DIFFERENCES | | STATEMENT 24 | |
| --- | --- | --- | --- | --- |
| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | EXPENSE/ DEDUCTION PER TAX RETURN |
| EXCESS BUSINESS INTEREST EXPENSE | 0. | 187,193. | 0. | 187,193. |
| OFFICER'S LIFE INSURANCE | 25,837. | | -25,837. | 0. |
| SALARIES AND WAGES | 3,189,579. | 149,403. | 0. | 3,338,982. |
| TOTAL TO M-3, PART III, LINE 30 | 3,215,416. | 336,596. | -25,837. | 3,526,175. |

CONFIDENTIAL                                                ALECTO_00027148
                                                                          **JA2351**

ALECTO HEALTHCARE SERVICES LLC                                              46-0829723

---

| SCHEDULE M-3 | OTHER EXPENSE/DEDUCTION ITEMS WITH NO DIFFERENCES | | STATEMENT 25 |
|---|---|---|---|

| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | EXPENSE/ DEDUCTION PER TAX RETURN |
|---|---|---|
| AUTOMOBILE EXPENSE | 22,998. | 22,998. |
| BANK SERVICE CHARGES | 21,466. | 21,466. |
| COMPUTER AND INTERNET EXPENSES | 12,593. | 12,593. |
| DUES AND SUBSCRIPTIONS | 13,537. | 13,537. |
| EMPLOYEE BENEFIT PROGRAMS | 259,280. | 259,280. |
| INSURANCE | 102,537. | 102,537. |
| PAYROLL TAXES | 145,810. | 145,810. |
| PROFESSIONAL FEES | 227,313. | 227,313. |
| PURCHASED SERVICES | 202,802. | 202,802. |
| RENT EXPENSE | 68,414. | 68,414. |
| REPAIRS | 3,240. | 3,240. |
| SUPPLIES AND OTHER | 11,651. | 11,651. |
| TAXES AND LICENSES | 7,200. | 7,200. |
| TRAVEL EXPENSES | 97,427. | 97,427. |
| UTILITIES | 29,943. | 29,943. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 25 | 1,226,211. | 1,226,211. |

---

| FORM 8916-A | OTHER INTEREST INCOME | | | STATEMENT 26 |
|---|---|---|---|---|

| DESCRIPTION | PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | PER TAX RETURN |
|---|---|---|---|---|
| INTEREST INCOME | 88. | 0. | 0. | 88. |
| TOTAL TO PART II, LINE 5 | 88. | 0. | 0. | 88. |

---

| FORM 8916-A | OTHER INTEREST EXPENSE | | | STATEMENT 27 |
|---|---|---|---|---|

| DESCRIPTION | PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | PER TAX RETURN |
|---|---|---|---|---|
| INTEREST EXPENSE | 187,281. | -187,193. | 0. | 88. |
| TOTAL TO PART III, LINE 4 | 187,281. | -187,193. | 0. | 88. |

CONFIDENTIAL

ALECTO_00027149
JA2352

ALTERNATIVE MINIMUM TAX DEPRECIATION REPORT

| Asset No. | Description | Date Acquired | AMT Method | AMT Life | AMT Cost Or Basis | AMT Accumulated | Regular Depreciation | AMT Depreciation | AMT Adjustment |
|---|---|---|---|---|---|---|---|---|---|
| 7 | FURNITURE | 070117 | 200DB | 7.00 | 13,467. | 2,611. | 1,178. | 1,178. | 0. |
| | TOTALS | | | | 13,467. | 2,611. | 1,178. | 1,178. | 0. |

37

028104
04-01-19

CONFIDENTIAL

ALECTO_00027150

JA2353

651119

| Schedule K-1 (Form 1065) | **2019** | | Final K-1 | Amended K-1 | OMB No. 1545-0123 |
|---|---|---|---|---|---|

Department of the Treasury
Internal Revenue Service

For calendar year 2019, or tax year

**Partner's Share of Income, Deductions, Credits, etc.** ▶ See separate instructions.

beginning _____ ending _____

**Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

| | | | |
|---|---|---|---|
| **1** Ordinary business income (loss) | -27,496,141. | **15** Credits | |
| **2** Net rental real estate income (loss) | | | |
| **3** Other net rental income (loss) | | **16** Foreign transactions | |
| **4a** Guaranteed payments for services | | | |
| **4b** Guaranteed payments for capital | | | |
| **4c** Total guaranteed payments | | | |
| **5** Interest income | 130,072. | **17** Alternative min tax (AMT) items | |
| | | A | -26,799. |
| | | B* | -577. |
| **6a** Ordinary dividends | | | |
| **6b** Qualified dividends | | **18** Tax-exempt income and nondeductible expenses | |
| | | C* | STMT |
| **6c** Dividend equivalents | | | |
| **7** Royalties | | **19** Distributions | |
| **8** Net short-term capital gain (loss) | | | |
| | | **20** Other information | |
| **9a** Net long-term capital gain (loss) | | A | 130,072. |
| | | Z | * STMT |
| **9b** Collectibles (28%) gain (loss) | | AH | * STMT |
| **9c** Unrecaptured section 1250 gain | | | |
| **10** Net section 1231 gain (loss) | -1,074. | | |
| **11** Other income (loss) | | | |
| **12** Section 179 deduction | | | |
| **13** Other deductions | | | |
| | A | 13,826. | |
| | K | 104,828. | |
| **14** Self-employment earnings (loss) | | | |
| | A | -27,496,170. | |

**Part I   Information About the Partnership**

**A** Partnership's employer identification number
46-0829723

**B** Partnership's name, address, city, state, and ZIP code

ALECTO HEALTHCARE SERVICES LLC
16310 BAKE PARKWAY SUITE 200
IRVINE, CA  92618

**C** IRS Center where partnership filed return ▶
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II   Information About the Partner**

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.

LAXMAN REDDY

CALABASAS, CA   91302

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H1** ☒ Domestic partner   ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:

TIN _____ Name _____

**I1** What type of entity is this partner?   INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 56.0000000% | 68.0000000% |
| Loss | 56.0000000% | 68.0000000% |
| Capital | 56.0000000% | 68.0000000% |

Check if decrease is due to sale or exchange of partnership interest ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 111,416,618. | $ 165,001,639. |
| Qualified nonrecourse financing | $ 9,862,033. | $ 0. |
| Recourse | $ 4,039,464. | $ 5,129,523. |

Check this box if Item K includes liability amounts from lower tier partnerships. ☐

**L**   **Partner's Capital Account Analysis**
SEE STATEMENT

| | |
|---|---|
| Beginning capital account | $ 5,606,788. |
| Capital contributed during the year | $ 7,247,559. |
| Current year net income (loss) | $ -27,485,797. |
| Other increase (decrease) (attach explanation) | $ 27,279,549. |
| Withdrawals & distributions | $( ) |
| Ending capital account | $ 12,648,099. |

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning _____ $ _____
Ending _____ $ _____

**21** ☐ More than one activity for at-risk purposes*
**22** ☐ More than one activity for passive activity purposes*
*See attached statement for additional information.

For IRS Use Only

911261 12-30-19   LHA   **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**   www.irs.gov/Form1065   **Schedule K-1 (Form 1065) 2019**
1

CONFIDENTIAL

ALECTO_00027151
**JA2354**

ALECTO HEALTHCARE SERVICES LLC                                               46-0829723

| SCHEDULE K-1 | ALTERNATIVE MINIMUM TAX, ADJUSTED GAIN OR LOSS, BOX 17, CODE B | | |
|---|---|---|---|

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | SUBJECT TO SPECIAL RATES | AMOUNT |
|---|---|---|---|
| ORDINARY GAIN (LOSS) | SEE FORM 6251 INSTRUCTIONS | | -577. |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B | | | -577. |

| SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES, BOX 18, CODE C | |
|---|---|---|

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION | 3,026. |
| OFFICER'S LIFE INSURANCE | | 14,469. |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH | SEE IRS SCH. K-1 INSTRUCTIONS | 71,540. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C | | 89,035. |

PARTNER NUMBER 1
2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027152
**JA2355**

ALECTO HEALTHCARE SERVICES LLC                                        46-0829723

| SCHEDULE K-1 | SECTION 199A INFORMATION, BOX 20, CODE Z | |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|

TRADE OR BUSINESS -
X - SSTB

| ORDINARY INCOME (LOSS) | -154,430. |
|---|---|
| SELF-EMPLOYMENT EARNINGS(LOSS) | -154,430. |
| W-2 WAGES | 1,869,836. |
| UNADJUSTED BASIS OF ASSETS | 7,542. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

| ORDINARY INCOME (LOSS) | -1,188,743. |
|---|---|
| SELF-EMPLOYMENT EARNINGS(LOSS) | -1,188,743. |
| W-2 WAGES | 16,853,018. |
| UNADJUSTED BASIS OF ASSETS | 8,210,147. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

| ORDINARY INCOME (LOSS) | -3,016,453. |
|---|---|
| SELF-EMPLOYMENT EARNINGS(LOSS) | -3,016,453. |
| W-2 WAGES | 11,018,952. |
| UNADJUSTED BASIS OF ASSETS | 7,330,471. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

| ORDINARY INCOME (LOSS) | -2,157,291. |
|---|---|
| SELF-EMPLOYMENT EARNINGS(LOSS) | -2,157,291. |
| W-2 WAGES | 13,561,600. |
| UNADJUSTED BASIS OF ASSETS | 1,862,009. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

| ORDINARY INCOME (LOSS) | -21,068,042. |
|---|---|
| SELF-EMPLOYMENT EARNINGS(LOSS) | -21,068,042. |
| W-2 WAGES | 20,488,293. |
| UNADJUSTED BASIS OF ASSETS | 7,214,196. |

CONFIDENTIAL                                   ALECTO_00027153
                                                         JA2356

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

═══════════════════════════════════════════════════════════════════════════════

SCH K-1

───────────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════════

SCHEDULE K-1                    OTHER INFORMATION, BOX 20, CODE AH

───────────────────────────────────────────────────────────────────────────────

DESCRIPTION                         PARTNER FILING INSTRUCTIONS          AMOUNT
──────────                          ───────────────────────────          ──────
BEGINNING TAX CAPITAL               PLEASE CONSULT YOUR TAX ADVISOR   -17,795,522.
ENDING TAX CAPITAL                  PLEASE CONSULT YOUR TAX ADVISOR   -40,361,360.


═══════════════════════════════════════════════════════════════════════════════

SCHEDULE K-1              CAPITAL CONTRIBUTED DURING THE YEAR

───────────────────────────────────────────────────────────────────────────────

DESCRIPTION                                                            AMOUNT
──────────                                                            ──────
CONTRIBUTIONS TO CAPITAL                                             5,008,908.
TRANSFERRED CAPITAL                                                  2,238,651.
                                                                    ──────────
TOTAL TO SCHEDULE K-1, ITEM L, CAPITAL CONTRIBUTED                  7,247,559.
                                                                    ══════════

41                   PARTNER NUMBER 1
                                   2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                              ALECTO_00027154
                                                                    JA2357

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) | |
| --- | --- | --- |

| DESCRIPTION | AMOUNT | TOTALS |
| --- | --- | --- |
| ORDINARY INCOME (LOSS) | -27,496,141. | |
| INTEREST INCOME | 130,072. | |
| SECTION 1231 GAIN (LOSS) | -1,074. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -27,367,143. |
| CHARITABLE CONTRIBUTIONS | -13,826. | |
| OTHER DEDUCTIONS | -104,828. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -118,654. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -27,485,797. |

| | |
| --- | --- |
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 1,074. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 896. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -4,328. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -1,854. |
| NONDEDUCTIBLE EXPENSES | -89,035. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 3,020,339. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 1,165,518. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 20,979,921. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 2,123,352. |
| INTEREST EXPENSE | -104,828. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 104,828. |
| SALARIES AND WAGES | 83,666. |
| TOTAL OTHER INCREASES OR DECREASES | 27,279,549. |

| SCHEDULE K-1 | ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS |
| --- | --- |

GAAP

CONFIDENTIAL                                    ALECTO_00027155
                                                                **JA2358**

Schedule K-1 (Form 1065) 2019                                                                                                                Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040 or 1040-SR.
For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

| | | | |
|---|---|---|---|
| 1. | Ordinary business income (loss). Determine whether the income (loss) is passive or nonpassive and enter on your return as follows. | | |
| | | Report on | |
| | Passive loss | See the Partner's Instructions | |
| | Passive income | Schedule E, line 28, column (h) | |
| | Nonpassive loss | See the Partner's Instructions | |
| | Nonpassive income | Schedule E, line 28, column (k) | |
| 2. | Net rental real estate income (loss) | See the Partner's Instructions | |
| 3. | Other net rental income (loss) | | |
| | Net income | Schedule E, line 28, column (h) | |
| | Net loss | See the Partner's Instructions | |
| 4a. | Guaranteed payment Services | See the Partner's Instructions | |
| 4b. | Guaranteed payment Capital | See the Partner's Instructions | |
| 4c. | Guaranteed payment Total | See the Partner's Instructions | |
| 5. | Interest income | Form 1040 or 1040-SR, line 2b | |
| 6a. | Ordinary dividends | Form 1040 or 1040-SR, line 3b | |
| 6b. | Qualified dividends | Form 1040 or 1040-SR, line 3a | |
| 6c. | Dividend equivalents | See the Partner's Instructions | |
| 7. | Royalties | Schedule E, line 4 | |
| 8. | Net short-term capital gain (loss) | Schedule D, line 5 | |
| 9a. | Net long-term capital gain (loss) | Schedule D, line 12 | |
| 9b. | Collectibles (28%) gain (loss) | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) | |
| 9c. | Unrecaptured section 1250 gain | See the Partner's Instructions | |
| 10. | Net section 1231 gain (loss) | See the Partner's Instructions | |
| 11. | Other income (loss) | | |
| | Code | | |
| | A  Other portfolio income (loss) | See the Partner's Instructions | |
| | B  Involuntary conversions | See the Partner's Instructions | |
| | C  Sec. 1256 contracts & straddles | Form 6781, line 1 | |
| | D  Mining exploration costs recapture | See Pub. 535 | |
| | E  Cancellation of debt | | |
| | F  Section 743(b) positive adjustments | | |
| | G  Section 965(a) inclusion | | |
| | H  Income under subpart F (other than inclusions under sections 951A and 965) | See the Partner's Instructions | |
| | I  Other income (loss) | | |
| 12. | Section 179 deduction | See the Partner's Instructions | |
| 13. | Other deductions | | |
| | A  Cash contributions (60%) | | |
| | B  Cash contributions (30%) | | |
| | C  Noncash contributions (50%) | | |
| | D  Noncash contributions (30%) | See the Partner's Instructions | |
| | E  Capital gain property to a 50% organization (30%) | | |
| | F  Capital gain property (20%) | | |
| | G  Contributions (100%) | | |
| | H  Investment interest expense | Form 4952, line 1 | |
| | I  Deductions - royalty income | Schedule E, line 19 | |
| | J  Section 59(e)(2) expenditures | See the Partner's Instructions | |
| | K  Excess business interest expense | See the Partner's Instructions | |
| | L  Deductions - portfolio (other) | Schedule A, line 16 | |
| | M  Amounts paid for medical insurance | Schedule A, line 1, or Schedule 1 (Form 1040 or 1040-SR), line 16 | |
| | N  Educational assistance benefits | See the Partner's Instructions | |
| | O  Dependent care benefits | Form 2441, line 12 | |
| | P  Preproductive period expenses | See the Partner's Instructions | |
| | Q  Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions | |
| | R  Pensions and IRAs | See the Partner's Instructions | |
| | S  Reforestation expense deduction | See the Partner's Instructions | |
| | T  through U | Reserved for future use | |
| | V  Section 743(b) negative adjustments | | |
| | W  Other deductions | See the Partner's Instructions | |
| | X  Section 965(c) deduction | | |
| 14. | Self-employment earnings (loss) | | |

Note: If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.

| | | |
|---|---|---|
| A | Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| B | Gross farming or fishing income | See the Partner's Instructions |
| C | Gross non-farm income | See the Partner's Instructions |

15. Credits

| | | |
|---|---|---|
| A | Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
| B | Low-income housing credit (other) from pre-2008 buildings | |
| C | Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| D | Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| E | Qualified rehabilitation expenditures (rental real estate) | |
| F | Other rental real estate credits | |
| G | Other rental credits | |

| Code | | Report on |
|---|---|---|
| H | Undistributed capital gains credit | Schedule 3 (Form 1040 or 1040-SR), line 13, box a |
| I | Biofuel producer credit | See the Partner's Instructions |
| J | Work opportunity credit | |
| K | Disabled access credit | |
| L | Empowerment zone employment credit | |
| M | Credit for increasing research activities | See the Partner's Instructions |
| N | Credit for employer social security and Medicare taxes | |
| O | Backup withholding | |
| P | Other credits | |
| 16. | Foreign transactions | |
| A | Name of country or U.S. possession | |
| B | Gross income from all sources | Form 1116, Part I |
| C | Gross income sourced at partner level | |
| | Foreign gross income sourced at partnership level | |
| D | Reserved for future use | |
| E | Foreign branch category | |
| F | Passive category | Form 1116, Part I |
| G | General category | |
| H | Other | |
| | Deductions allocated and apportioned at partner level | |
| I | Interest expense | Form 1116, Part I |
| J | Other | Form 1116, Part I |
| | Deductions allocated and apportioned at partnership level to foreign source income | |
| K | Reserved for future use | |
| L | Foreign branch category | |
| M | Passive category | Form 1116, Part I |
| N | General category | |
| O | Other | |
| | Other information | |
| P | Total foreign taxes paid | Form 1116, Part II |
| Q | Total foreign taxes accrued | Form 1116, Part II |
| R | Reduction in taxes available for credit | Form 1116, line 12 |
| S | Foreign trading gross receipts | Form 8873 |
| T | Extraterritorial income exclusion | Form 8873 |
| U | through V | Reserved for future use |
| W | Section 965 information | See the Partner's Instructions |
| X | Other foreign transactions | |
| 17. | Alternative minimum tax (AMT) items | |
| A | Post-1986 depreciation adjustment | |
| B | Adjusted gain or loss | See the Partner's Instructions and the Instructions for Form 6251 |
| C | Depletion (other than oil & gas) | |
| D | Oil, gas, & geothermal - gross income | |
| E | Oil, gas, & geothermal - deductions | |
| F | Other AMT items | |
| 18. | Tax-exempt income and nondeductible expenses | |
| A | Tax-exempt interest income | Form 1040 or 1040-SR, line 2a |
| B | Other tax-exempt income | See the Partner's Instructions |
| C | Nondeductible expenses | See the Partner's Instructions |
| 19. | Distributions | |
| A | Cash and marketable securities | |
| B | Distribution subject to section 737 | See the Partner's Instructions |
| C | Other property | |
| 20. | Other information | |
| A | Investment income | Form 4952, line 4a |
| B | Investment expenses | Form 4952, line 5 |
| C | Fuel tax credit information | Form 4136 |
| D | Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| E | Basis of energy property | |
| F | through G | |
| H | Recapture of investment credit | See Form 4255 |
| I | Recapture of other credits | See the Partner's Instructions |
| J | Look-back interest - completed long-term contracts | See Form 8697 |
| K | Look-back interest - income forecast method | See Form 8866 |
| L | Dispositions of property with section 179 deductions | |
| M | Recapture of section 179 deduction | |
| N | Interest expense for corporate partners | |
| O | through Y | |
| Z | Section 199A information | |
| AA | Section 704(c) information | |
| AB | Section 751 gain (loss) | See the Partner's Instructions |
| AC | Section 1(h)(5) gain (loss) | |
| AD | Deemed section 1250 unrecaptured gain | |
| AE | Excess taxable income | |
| AF | Excess business interest income | |
| AG | Gross receipts for section 59A(e) | |
| AH | Other information | |

911262 12-30-19

43                                                    1

CONFIDENTIAL                                                                        ALECTO_00027156
JA2359

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

Name: **ALECTO HEALTHCARE SERVICES LLC**                    46-0829723

For:  **LAXMAN REDDY**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -1,188,743. | -1,188,743. | -3,016,453. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 95,183. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -1,074. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 2,688. | | 3,214. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -1,188,743. | -1,188,743. | -3,016,453. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -67,870. | | -1,887. |
| Adjusted gain or loss | | | -577. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 95,183. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 16,853,018. | |
| - Unadjusted basis of assets | | 8,210,147. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

44                                                                                          1

CONFIDENTIAL

**ALECTO_00027157**
**JA2360**

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

Name: **ALECTO HEALTHCARE SERVICES LLC**                    46-0829723
For: **LAXMAN REDDY**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC – ALE |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC – ALE |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -3,016,453. | -2,157,291. | -2,157,291. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 34,813. | |
| Dividends - Ordinary dividends | | | |
|   - Qualified dividends | | | |
|   - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
|   - Collectibles (28%) gain (loss) | | | |
|   - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -3,016,453. | -2,157,291. | -2,157,291. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
|   - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
|   - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 34,813. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 11,018,952. | | 13,561,600. |
|   - Unadjusted basis of assets | 7,330,471. | | 1,862,009. |
|   - REIT dividends | | | |
|   - Cooperative qualified business income | | | |
|   - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

45

10340904 146892 629917                    2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

Name: **ALECTO HEALTHCARE SERVICES LLC**                                46-0829723

For: **LAXMAN REDDY**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -20,979,224. | -21,068,042. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 27. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -20,979,253. | -21,068,042. | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 42,958. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 27. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 20,488,293. | |
| - Unadjusted basis of assets | | 7,214,196. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

46                                                                                1

CONFIDENTIAL

**ALECTO_00027159**
**JA2362**

| Form **8308** (Rev. September 2018)<br>Department of the Treasury<br>Internal Revenue Service | **Report of a Sale or Exchange of Certain Partnership Interests**<br>▶ Go to www.irs.gov/Form8308 for the latest information. | | OMB No. 1545-0123 |
|---|---|---|---|
| Name of partnership | | Phone number | Employer identification number |
| ALECTO HEALTHCARE SERVICES LLC | | 323-932-5963 | 46-0829723 |

Number, street, and room or suite no. If a P.O. box, see instructions.

16310 BAKE PARKWAY SUITE 200

City or town, state or province, country, and ZIP or foreign postal code

IRVINE, CA  92618

| **Part I** | **Transferor Information** (Beneficial owner of the partnership interest immediately before the transfer of that interest) |
|---|---|

| Name | Identifying number |
|---|---|
| PANCH JEYAKUMAR | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

TUSTIN, CA  92782

**Notice to Transferors:** *The information on this form has been supplied to the Internal Revenue Service. The transferor in a section 751(a) exchange is required to treat a portion of the gain realized from the exchange as ordinary income. For more details, see Pub. 541, Partnerships.*

**Statement by Transferor:** *The transferor in a section 751(a) exchange is required under Regulations section 1.751-1(a)(3) to attach a statement relating to the sale or exchange to his or her return.*

| **Part II** | **Transferee Information** (Beneficial owner of the partnership interest immediately after the transfer of that interest) |
|---|---|

| Name | Identifying number |
|---|---|
| LAXMAN REDDY | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

CALABASAS, CA  91302

| **Part III** | **Date of Sale or Exchange of Partnership Interest** ▶ | 12/31/19 |
|---|---|---|

| Sign here only if you are filing this form by itself and not with Form 1065 | Under penalties of perjury, I declare that I have examined this return, including accompanying attachments, and to the best of my knowledge and belief, it is true, correct, and complete. |
|---|---|
| | ▶ _____  ▶ _____ |
| | Signature of partnership representative or partner or limited liability company member    Date |

LHA
919971
04-01-19

Form **8308** (Rev. 9-2018)

47                                    1
10340904 146892 629917     2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027160
**JA2363**

| Form **8308** (Rev. September 2018)<br>Department of the Treasury<br>Internal Revenue Service | **Report of a Sale or Exchange of Certain Partnership Interests**<br>▶ Go to www.irs.gov/Form8308 for the latest information. | | OMB No. 1545-0123 |
|---|---|---|---|
| Name of partnership | | Phone number | Employer identification number |
| ALECTO HEALTHCARE SERVICES LLC | | 323-932-5963 | 46-0829723 |

Number, street, and room or suite no. If a P.O. box, see instructions.

16310 BAKE PARKWAY SUITE 200

City or town, state or province, country, and ZIP or foreign postal code

IRVINE, CA   92618

| **Part I** | **Transferor Information** (Beneficial owner of the partnership interest immediately before the transfer of that interest) |
|---|---|

| Name | Identifying number |
|---|---|
| AMAN DHUPER | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

RANCHO CUCAMONGA, CA   91739

**Notice to Transferors:** *The information on this form has been supplied to the Internal Revenue Service. The transferor in a section 751(a) exchange is required to treat a portion of the gain realized from the exchange as ordinary income. For more details, see Pub. 541, Partnerships.*

**Statement by Transferor:** *The transferor in a section 751(a) exchange is required under Regulations section 1.751-1(a)(3) to attach a statement relating to the sale or exchange to his or her return.*

| **Part II** | **Transferee Information** (Beneficial owner of the partnership interest immediately after the transfer of that interest) |
|---|---|

| Name | Identifying number |
|---|---|
| LAXMAN REDDY | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

CALABASAS, CA   91302

| **Part III** | Date of Sale or Exchange of Partnership Interest ▶ | 12/31/19 |
|---|---|---|

| Sign here only if you are filing this form by itself and not with Form 1065 | Under penalties of perjury, I declare that I have examined this return, including accompanying attachments, and to the best of my knowledge and belief, it is true, correct, and complete.<br><br>▶ _____<br>Signature of partnership representative or partner or limited liability company member | ▶ _____<br>Date |
|---|---|---|

CONFIDENTIAL

ALECTO_00027161

**JA2364**

651119

| Schedule K-1 (Form 1065) | **2019** | | Final K-1 | Amended K-1 | OMB No. 1545-0123 |
|---|---|---|---|---|---|

| Schedule K-1 (Form 1065)<br>Department of the Treasury<br>Internal Revenue Service | **2019**<br>For calendar year 2019, or tax year | **Part III   Partner's Share of Current Year Income,<br>Deductions, Credits, and Other Items** |
|---|---|---|

| | | | | |
|---|---|---|---|---|
| beginning [blank] ending [blank]<br>**Partner's Share of Income, Deductions,<br>Credits, etc.** ▶ **See separate instructions.** | **1** Ordinary business income (loss)<br>−4,909,885. | **15** Credits |
| **Part I   Information About the Partnership** | **2** Net rental real estate income (loss) | **16** Foreign transactions |
| **A** Partnership's employer identification number<br>46-0829723 | **3** Other net rental income (loss) | |
| **B** Partnership's name, address, city, state, and ZIP code<br><br>ALECTO HEALTHCARE SERVICES LLC<br>16310 BAKE PARKWAY SUITE 200<br>IRVINE, CA  92618 | **4a** Guaranteed payments for services | |
| | **4b** Guaranteed payments for capital | |
| | **4c** Total guaranteed payments | |
| **C** IRS Center where partnership filed return ▶<br>E-FILE | | **17** Alternative min tax (AMT) items<br>A          −4,785. |
| **D** ☐ Check if this is a publicly traded partnership (PTP) | **5** Interest income<br>23,227. | B*          −103. |
| **Part II   Information About the Partner** | **6a** Ordinary dividends | |
| **E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.) | | **18** Tax-exempt income and<br>nondeductible expenses |
| | **6b** Qualified dividends | C*          STMT |
| **F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.<br><br>ROGER KRISSMAN<br><br>UPLAND, CA  91786 | **6c** Dividend equivalents | |
| | **7** Royalties | **19** Distributions |
| **G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member | **8** Net short-term capital gain (loss) | **20** Other information |
| **H1** ☒ Domestic partner   ☐ Foreign partner | **9a** Net long-term capital gain (loss) | A          23,227. |
| **H2** ☐ If the partner is a disregarded entity (DE), enter the partner's: | | Z    *          STMT |
| TIN [blank]   Name [blank] | **9b** Collectibles (28%) gain (loss) | AH   *          STMT |
| **I1** What type of entity is this partner?  INDIVIDUAL | **9c** Unrecaptured section 1250 gain | |
| **I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐ | | |
| **J** Partner's share of profit, loss, and capital: | **10** Net section 1231 gain (loss)<br>−192. | |
| | Beginning | Ending |
| Profit | 10.0000000% | 10.0000000% |
| Loss | 10.0000000% | 10.0000000% |
| Capital | 10.0000000% | 10.0000000% |

| | |
|---|---|
| **10** Net section 1231 gain (loss)<br>−192. | |
| **11** Other income (loss) | |

Check if decrease is due to sale or exchange of partnership interest ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse ........ $ | 19,895,824. | $ 24,264,947. |
| Qualified nonrecourse financing ....... $ | 1,761,077. | $ 0. |
| Recourse .......... $ | 0. | $ 30,000. |

Check this box if Item K includes liability amounts from lower tier partnerships. ☐

| **12** Section 179 deduction | |
|---|---|
| **13** Other deductions<br>A          2,469.<br>K         18,719. | |

**L        Partner's Capital Account Analysis**
SEE STATEMENT

| | |
|---|---|
| Beginning capital account ................ $ | 1,038,816. |
| Capital contributed during the year ........ $ | 894,448. |
| Current year net income (loss) ............. $ | −4,908,038. |
| Other increase (decrease) (attach explanation) .... $ | 4,871,211. |
| Withdrawals & distributions ............. $( ) |  |
| Ending capital account ................ $ | 1,896,437. |

| **14** Self-employment earnings (loss)<br>A          −4,909,890. | |
|---|---|
| **21** ☐ More than one activity for at-risk purposes* | |
| **22** ☐ More than one activity for passive activity purposes* | |

*See attached statement for additional information.

**M** Did the partner contribute property with a built-in gain or loss?<br>☐ Yes   ☒ No  If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning ................................... $ [blank]
Ending ...................................... $ [blank]

For IRS Use Only

911261 12-30-19  LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**      www.irs.gov/Form1065      Schedule K-1 (Form 1065) 2019

2

**CONFIDENTIAL**

ALECTO_00027162
**JA2365**

ALECTO HEALTHCARE SERVICES LLC                                                        46-0829723

SCHEDULE K-1              ALTERNATIVE MINIMUM TAX, ADJUSTED
                          GAIN OR LOSS, BOX 17, CODE B

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | SUBJECT TO SPECIAL RATES | AMOUNT |
|---|---|---|---|
| ORDINARY GAIN (LOSS) | SEE FORM 6251 INSTRUCTIONS | | -103. |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B | | | -103. |

SCHEDULE K-1              NONDEDUCTIBLE EXPENSES, BOX 18, CODE C

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION | 540. |
| OFFICER'S LIFE INSURANCE | | 2,583. |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH | SEE IRS SCH. K-1 INSTRUCTIONS | 12,774. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C | | 15,897. |

10340904 146892 629917                    2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027163
JA2366

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

```
SCHEDULE K-1         SECTION 199A INFORMATION, BOX 20, CODE Z
```

| DESCRIPTION | AMOUNT |
|---|---|

TRADE OR BUSINESS -
X - SSTB

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -27,576. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -27,576. |
| W-2 WAGES | 333,890. |
| UNADJUSTED BASIS OF ASSETS | 1,346. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -212,269. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -212,269. |
| W-2 WAGES | 3,009,382. |
| UNADJUSTED BASIS OF ASSETS | 1,466,056. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -538,637. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -538,637. |
| W-2 WAGES | 1,967,613. |
| UNADJUSTED BASIS OF ASSETS | 1,308,975. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -385,220. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -385,220. |
| W-2 WAGES | 2,421,645. |
| UNADJUSTED BASIS OF ASSETS | 332,492. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -3,762,043. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -3,762,043. |
| W-2 WAGES | 3,658,519. |
| UNADJUSTED BASIS OF ASSETS | 1,288,212. |

CONFIDENTIAL                                                   ALECTO_00027164
                                                                     JA2367

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

═══════════════════════════════════════════════════════════════════════════

SCH K-1
───────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════

SCHEDULE K-1          OTHER INFORMATION, BOX 20, CODE AH
───────────────────────────────────────────────────────────────────────────

DESCRIPTION                    PARTNER FILING INSTRUCTIONS          AMOUNT

BEGINNING TAX CAPITAL          PLEASE CONSULT YOUR TAX ADVISOR    -3,208,021.
ENDING TAX CAPITAL             PLEASE CONSULT YOUR TAX ADVISOR    -7,237,635.

CONFIDENTIAL                                                ALECTO_00027165
                                                                  JA2368

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) | |
|---|---|---|

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -4,909,885. | |
| INTEREST INCOME | 23,227. | |
| SECTION 1231 GAIN (LOSS) | -192. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -4,886,850. |
| CHARITABLE CONTRIBUTIONS | -2,469. | |
| OTHER DEDUCTIONS | -18,719. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -21,188. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -4,908,038. |

| | |
|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 192. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 160. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -773. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -331. |
| NONDEDUCTIBLE EXPENSES | -15,897. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 539,330. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 208,122. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 3,746,308. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 379,160. |
| INTEREST EXPENSE | -18,719. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 18,719. |
| SALARIES AND WAGES | 14,940. |
| TOTAL OTHER INCREASES OR DECREASES | 4,871,211. |

| SCHEDULE K-1 | ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS |
|---|---|

GAAP

CONFIDENTIAL                                            ALECTO_00027166
                                                         JA2369

Schedule K-1 (Form 1065) 2019                                                                                                        Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040 or 1040-SR.
For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

1.  Ordinary business income (loss). Determine whether the income (loss) is
    passive or nonpassive and enter on your return as follows.

|  |  | Report on |
| --- | --- | --- |
|  | Passive loss | See the Partner's Instructions |
|  | Passive income | Schedule E, line 28, column (h) |
|  | Nonpassive loss | See the Partner's Instructions |
|  | Nonpassive income | Schedule E, line 28, column (k) |
| 2. | Net rental real estate income (loss) | See the Partner's Instructions |
| 3. | Other net rental income (loss) |  |
|  | Net income | Schedule E, line 28, column (h) |
|  | Net loss | See the Partner's Instructions |
| 4a. | Guaranteed payment Services | See the Partner's Instructions |
| 4b. | Guaranteed payment Capital | See the Partner's Instructions) |
| 4c. | Guaranteed payment Total | See the Partner's Instructions |
| 5. | Interest income | Form 1040 or 1040-SR, line 2b |
| 6a. | Ordinary dividends | Form 1040 or 1040-SR, line 3b |
| 6b. | Qualified dividends | Form 1040 or 1040-SR, line 3a |
| 6c. | Dividend equivalents | See the Partner's Instructions |
| 7. | Royalties | Schedule E, line 4 |
| 8. | Net short-term capital gain (loss) | Schedule D, line 5 |
| 9a. | Net long-term capital gain (loss) | Schedule D, line 12 |
| 9b. | Collectibles (28%) gain (loss) | 28% Rate Gain Worksheet, line 4 |
|  |  | (Schedule D Instructions) |
| 9c. | Unrecaptured section 1250 gain | See the Partner's Instructions |
| 10. | Net section 1231 gain (loss) | See the Partner's Instructions |
| 11. | Other income (loss) |  |

Code

|  |  |  |
| --- | --- | --- |
| A | Other portfolio income (loss) | See the Partner's Instructions |
| B | Involuntary conversions | See the Partner's Instructions |
| C | Sec. 1256 contracts & straddles | Form 6781, line 1 |
| D | Mining exploration costs recapture | See Pub. 535 |
| E | Cancellation of debt |  |
| F | Section 743(b) positive adjustments |  |
| G | Section 965(a) inclusion |  |
| H | Income under subpart F (other | See the Partner's Instructions |
|  | than inclusions under sections |  |
|  | 951A and 965) |  |
| I | Other income (loss) |  |

| 12. | Section 179 deduction | See the Partner's Instructions |
| --- | --- | --- |
| 13. | Other deductions |  |

|  |  |  |
| --- | --- | --- |
| A | Cash contributions (60%) |  |
| B | Cash contributions (30%) |  |
| C | Noncash contributions (50%) |  |
| D | Noncash contributions (30%) | See the Partner's Instructions |
| E | Capital gain property to a 50% |  |
|  | organization (30%) |  |
| F | Capital gain property (20%) |  |
| G | Contributions (100%) |  |
| H | Investment interest expense | Form 4952, line 1 |
| I | Deductions - royalty income | Schedule E, line 19 |
| J | Section 59(e)(2) expenditures | See the Partner's Instructions |
| K | Excess business interest expense | See the Partner's Instructions |
| L | Deductions - portfolio (other) | Schedule A, line 16 |
| M | Amounts paid for medical insurance | Schedule A, line 1, or Schedule 1 |
|  |  | (Form 1040 or 1040-SR), line 16 |
| N | Educational assistance benefits | See the Partner's Instructions |
| O | Dependent care benefits | Form 2441, line 12 |
| P | Preproductive period expenses | See the Partner's Instructions |
| Q | Commercial revitalization deduction |  |
|  | from rental real estate activities | See Form 8582 Instructions |
| R | Pensions and IRAs | See the Partner's Instructions |
| S | Reforestation expense deduction | See the Partner's Instructions |
| T | through U | Reserved for future use |
| V | Section 743(b) negative adjustments |  |
| W | Other deductions | See the Partner's Instructions |
| X | Section 965(c) deduction |  |

| 14. | Self-employment earnings (loss) |  |
| --- | --- | --- |

Note: If you have a section 179 deduction or any partner-level deductions, see
the Partner's Instructions before completing Schedule SE.

|  |  |  |
| --- | --- | --- |
| A | Net earnings (loss) from |  |
|  | self-employment | Schedule SE, Section A or B |
| B | Gross farming or fishing income | See the Partner's Instructions |
| C | Gross non-farm income | See the Partner's Instructions |

15.  Credits

|  |  |  |
| --- | --- | --- |
| A | Low-income housing credit |  |
|  | (section 42(j)(5)) from pre-2008 |  |
|  | buildings |  |
| B | Low-income housing credit |  |
|  | (other) from pre-2008 buildings |  |
| C | Low-income housing credit (section |  |
|  | 42(j)(5)) from post-2007 buildings |  |
| D | Low-income housing credit (other) | See the Partner's Instructions |
|  | from post-2007 buildings |  |
| E | Qualified rehabilitation expenditures |  |
|  | (rental real estate) |  |
| F | Other rental real estate credits |  |
| G | Other rental credits |  |

911262 12-30-19

Code                                                                  Report on

|  |  |  |
| --- | --- | --- |
| H | Undistributed capital gains credit | Schedule 3 (Form 1040 or 1040-SR), |
|  |  | line 13, box a |
| I | Biofuel producer credit | See the Partner's Instructions |
| J | Work opportunity credit |  |
| K | Disabled access credit |  |
| L | Empowerment zone |  |
|  | employment credit |  |
| M | Credit for increasing research |  |
|  | activities | See the Partner's Instructions |
| N | Credit for employer social |  |
|  | security and Medicare taxes |  |
| O | Backup withholding |  |
| P | Other credits |  |

16.  Foreign transactions

|  |  |  |
| --- | --- | --- |
| A | Name of country or U.S. |  |
|  | possession |  |
| B | Gross income from all sources | Form 1116, Part I |
| C | Gross income sourced at partner |  |
|  | level |  |

Foreign gross income sourced at partnership level

|  |  |  |
| --- | --- | --- |
| D | Reserved for future use |  |
| E | Foreign branch category |  |
| F | Passive category | Form 1116, Part I |
| G | General category |  |
| H | Other |  |

Deductions allocated and apportioned at partner level

|  |  |  |
| --- | --- | --- |
| I | Interest expense | Form 1116, Part I |
| J | Other | Form 1116, Part I |

Deductions allocated and apportioned at partnership level to foreign source
income

|  |  |  |
| --- | --- | --- |
| K | Reserved for future use |  |
| L | Foreign branch category |  |
| M | Passive category | Form 1116, Part I |
| N | General category |  |
| O | Other |  |

Other information

|  |  |  |
| --- | --- | --- |
| P | Total foreign taxes paid | Form 1116, Part II |
| Q | Total foreign taxes accrued | Form 1116, Part II |
| R | Reduction in taxes available for credit | Form 1116, line 12 |
| S | Foreign trading gross receipts | Form 8873 |
| T | Extraterritorial income exclusion | Form 8873 |
| U | through V | Reserved for future use |
| W | Section 965 information | See the Partner's Instructions |
| X | Other foreign transactions |  |

17.  Alternative minimum tax (AMT) items

|  |  |  |
| --- | --- | --- |
| A | Post-1986 depreciation adjustment |  |
| B | Adjusted gain or loss | See the Partner's |
| C | Depletion (other than oil & gas) | Instructions and |
| D | Oil, gas, & geothermal - gross income | the Instructions for |
| E | Oil, gas, & geothermal - deductions | Form 6251 |
| F | Other AMT items |  |

18.  Tax-exempt income and nondeductible expenses

|  |  |  |
| --- | --- | --- |
| A | Tax-exempt interest income | Form 1040 or 1040-SR, line 2a |
| B | Other tax-exempt income | See the Partner's Instructions |
| C | Nondeductible expenses | See the Partner's Instructions |

19.  Distributions

|  |  |  |
| --- | --- | --- |
| A | Cash and marketable securities |  |
| B | Distribution subject to section 737 | See the Partner's Instructions |
| C | Other property |  |

20.  Other information

|  |  |  |
| --- | --- | --- |
| A | Investment income | Form 4952, line 4a |
| B | Investment expenses | Form 4952, line 5 |
| C | Fuel tax credit information | Form 4136 |
| D | Qualified rehabilitation expenditures |  |
|  | (other than rental real estate) |  |
| E | Basis of energy property | See the Partner's Instructions |
| F | through G |  |
| H | Recapture of investment credit | See Form 4255 |
| I | Recapture of other credits | See the Partner's Instructions |
| J | Look-back interest - completed |  |
|  | long-term contracts | See Form 8697 |
| K | Look-back interest - income forecast |  |
|  | method | See Form 8866 |
| L | Dispositions of property with |  |
|  | section 179 deductions |  |
| M | Recapture of section 179 deduction |  |
| N | Interest expense for corporate partners |  |
| O | through Y |  |
| Z | Section 199A information |  |
| AA | Section 704(c) information |  |
| AB | Section 751 gain (loss) | See the Partner's Instructions |
| AC | Section 1(h)(5) gain (loss) |  |
| AD | Deemed section 1250 |  |
|  | unrecaptured gain |  |
| AE | Excess taxable income |  |
| AF | Excess business interest income |  |
| AG | Gross receipts for section 59A(e) |  |
| AH | Other information |  |

54                                                                                                 2

CONFIDENTIAL

ALECTO_00027167
JA2370

**2**   Case 23-10787-JKS   Doc 307-2   Filed 02/29/24   Page 61 of 72

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: ALECTO HEALTHCARE SERVICES LLC                46-0829723
For: ROGER KRISSMAN

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -212,269. | -212,269. | -538,637. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 16,996. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -192. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 480. | | 574. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -212,269. | -212,269. | -538,637. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -12,119. | | -337. |
| Adjusted gain or loss | | | -103. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 16,996. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 3,009,382. | |
| - Unadjusted basis of assets | | 1,466,056. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

55                                                                              2

10340904 146892 629917          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027168
JA2371

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: ALECTO HEALTHCARE SERVICES LLC                                   46-0829723

For: ROGER KRISSMAN

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -538,637. | -385,220. | -385,220. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 6,217. | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -538,637. | -385,220. | -385,220. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 6,217. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 1,967,613. | | 2,421,645. |
| - Unadjusted basis of assets | 1,308,975. | | 332,492. |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

56                                                                                                2

CONFIDENTIAL

ALECTO_00027169
JA2372

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**

For: **ROGER KRISSMAN**

46-0829723

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -3,746,183. | -3,762,043. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 5. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -3,746,188. | -3,762,043. | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 7,671. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 5. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 3,658,519. | |
| - Unadjusted basis of assets | | 1,288,212. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

57

2

2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

**CONFIDENTIAL**

ALECTO_00027170

**JA2373**

651119

| Schedule K-1 (Form 1065) 2019 | Final K-1 ☐   Amended K-1 ☐   OMB No. 1545-0123 |
|---|---|

Department of the Treasury
Internal Revenue Service
For calendar year 2019, or tax year

**Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

beginning _____ ending _____

**Partner's Share of Income, Deductions, Credits, etc.** ▶ See separate instructions.

| Left column | Right column |
|---|---|
| **Part I   Information About the Partnership** | **1** Ordinary business income (loss)  −3,437,063.  |  **15** Credits |
| **A** Partnership's employer identification number  46-0829723 | **2** Net rental real estate income (loss) |
| **B** Partnership's name, address, city, state, and ZIP code | **16** Foreign transactions |
| | **3** Other net rental income (loss) |
| ALECTO HEALTHCARE SERVICES LLC  16310 BAKE PARKWAY SUITE 200  IRVINE, CA  92618 | **4a** Guaranteed payments for services |
| | **4b** Guaranteed payments for capital |
| **C** IRS Center where partnership filed return ▶  E-FILE | **4c** Total guaranteed payments |
| **D** ☐ Check if this is a publicly traded partnership (PTP) | **5** Interest income   16,258. |
| **Part II   Information About the Partner** | **6a** Ordinary dividends |
| **E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.) | **6b** Qualified dividends |
| **F** Name, address, city, state, and ZIP code for partner entered in E. See instructions. | **6c** Dividend equivalents |

Additional right-column items:

| Item | Value |
|---|---|
| **17** Alternative min tax (AMT) items   A   −3,350.   B*   −72. |
| **18** Tax-exempt income and nondeductible expenses   C*   STMT |
| **7** Royalties |
| **19** Distributions |

MICHAEL J SARRAO

MISSION VIEJO, CA   92692

| Left | Right |
|---|---|
| **G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member | **8** Net short-term capital gain (loss) |
| **H1** ☒ Domestic partner   ☐ Foreign partner | **9a** Net long-term capital gain (loss) |
| **H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:  TIN ____ Name ____ | **9b** Collectibles (28%) gain (loss) |
| **I1** What type of entity is this partner?  INDIVIDUAL | **9c** Unrecaptured section 1250 gain |
| **I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐ | |

**20** Other information   A   16,258.   Z   *   STMT   AH   *   STMT

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 7.0000000% | 7.0000000% |
| Loss | 7.0000000% | 7.0000000% |
| Capital | 7.0000000% | 7.0000000% |

Check if decrease is due to sale or exchange of partnership interest ☐

| **10** Net section 1231 gain (loss)  −134. |
| **11** Other income (loss) |

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 13,927,078. | $ 16,985,463. |
| Qualified nonrecourse financing | $ 1,232,754. | $ 0. |
| Recourse | $ 0. | $ 0. |

Check this box if Item K includes liability amounts from lower tier partnerships. ☐

| **12** Section 179 deduction |
| **13** Other deductions   A   1,729.   K   13,104. |

**L**   **Partner's Capital Account Analysis**
SEE STATEMENT

| | |
|---|---|
| Beginning capital account | $ 727,207. |
| Capital contributed during the year | $ 626,113. |
| Current year net income (loss) | $ −3,435,772. |
| Other increase (decrease) (attach explanation) | $ 3,409,986. |
| Withdrawals & distributions | $( ) |
| Ending capital account | $ 1,327,534. |

**14** Self-employment earnings (loss)   A   −3,437,067.

**21** ☐ More than one activity for at-risk purposes*
**22** ☐ More than one activity for passive activity purposes*
*See attached statement for additional information.

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No  If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning _____ $ _____
Ending _____ $ _____

For IRS Use Only

911261 12-30-19   LHA   **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**   www.irs.gov/Form1065   Schedule K-1 (Form 1065) 2019

3

CONFIDENTIAL

ALECTO_00027171
**JA2374**

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| SCHEDULE K-1 | ALTERNATIVE MINIMUM TAX, ADJUSTED GAIN OR LOSS, BOX 17, CODE B | | |

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | SUBJECT TO SPECIAL RATES | AMOUNT |
|---|---|---|---|
| ORDINARY GAIN (LOSS) | SEE FORM 6251 INSTRUCTIONS | | -72. |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B | | | -72. |

| SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES, BOX 18, CODE C | |

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION | 378. |
| OFFICER'S LIFE INSURANCE | | 1,809. |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH | SEE IRS SCH. K-1 INSTRUCTIONS | 8,944. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C | | 11,131. |

10340904 146892 629917              2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                                              ALECTO_00027172
                                                                        JA2375

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

========================================================================

SCHEDULE K-1          SECTION 199A INFORMATION, BOX 20, CODE Z
------------------------------------------------------------------------

DESCRIPTION                                                            AMOUNT
-----------

TRADE OR BUSINESS -
X - SSTB

  ORDINARY INCOME (LOSS)                                             -19,304.
  SELF-EMPLOYMENT EARNINGS(LOSS)                                     -19,304.
  W-2 WAGES                                                          233,732.
  UNADJUSTED BASIS OF ASSETS                                             943.

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

  ORDINARY INCOME (LOSS)                                            -148,595.
  SELF-EMPLOYMENT EARNINGS(LOSS)                                    -148,595.
  W-2 WAGES                                                        2,106,655.
  UNADJUSTED BASIS OF ASSETS                                       1,026,281.

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

  ORDINARY INCOME (LOSS)                                            -377,062.
  SELF-EMPLOYMENT EARNINGS(LOSS)                                    -377,062.
  W-2 WAGES                                                        1,377,387.
  UNADJUSTED BASIS OF ASSETS                                         916,321.

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

  ORDINARY INCOME (LOSS)                                            -269,665.
  SELF-EMPLOYMENT EARNINGS(LOSS)                                    -269,665.
  W-2 WAGES                                                        1,695,222.
  UNADJUSTED BASIS OF ASSETS                                         232,754.

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

  ORDINARY INCOME (LOSS)                                          -2,633,539.
  SELF-EMPLOYMENT EARNINGS(LOSS)                                  -2,633,539.
  W-2 WAGES                                                        2,561,070.
  UNADJUSTED BASIS OF ASSETS                                         901,786.

CONFIDENTIAL                                                    ALECTO_00027173
                                                                    JA2376

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

SCH K-1

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

SCHEDULE K-1              OTHER INFORMATION, BOX 20, CODE AH

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| BEGINNING TAX CAPITAL | PLEASE CONSULT YOUR TAX ADVISOR | -2,245,577. |
| ENDING TAX CAPITAL | PLEASE CONSULT YOUR TAX ADVISOR | -5,066,307. |

CONFIDENTIAL                                   ALECTO_00027174
                                                          JA2377

Case 23-10787-JKS   Doc 307-2   Filed 02/29/24   Page 68 of 72
ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) | |
|---|---|---|

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -3,437,063. | |
| INTEREST INCOME | 16,258. | |
| SECTION 1231 GAIN (LOSS) | -134. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -3,420,939. |
| CHARITABLE CONTRIBUTIONS | -1,729. | |
| OTHER DEDUCTIONS | -13,104. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -14,833. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -3,435,772. |

| | |
|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 134. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 112. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -541. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -232. |
| NONDEDUCTIBLE EXPENSES | -11,131. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 377,548. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 145,692. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 2,622,524. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 265,422. |
| INTEREST EXPENSE | -13,104. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 13,104. |
| SALARIES AND WAGES | 10,458. |
| TOTAL OTHER INCREASES OR DECREASES | 3,409,986. |

| SCHEDULE K-1 | ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS |
|---|---|

GAAP

62                                      PARTNER NUMBER 3
2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL
ALECTO_00027175
JA2378

Schedule K-1 (Form 1065) 2019                          Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040 or 1040-SR.
For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

1. Ordinary business income (loss). Determine whether the income (loss) is
   passive or nonpassive and enter on your return as follows.

| | | Report on |
|---|---|---|
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (h) |
| | Nonpassive loss | See the Partner's Instructions |
| | Nonpassive income | Schedule E, line 28, column (k) |
| 2. | Net rental real estate income (loss) | See the Partner's Instructions |
| 3. | Other net rental income (loss) | |
| | Net income | Schedule E, line 28, column (h) |
| | Net loss | See the Partner's Instructions |
| 4a. | Guaranteed payment Services | See the Partner's Instructions |
| 4b. | Guaranteed payment Capital | See the Partner's Instructions) |
| 4c. | Guaranteed payment Total | See the Partner's Instructions |
| 5. | Interest income | Form 1040 or 1040-SR, line 2b |
| 6a. | Ordinary dividends | Form 1040 or 1040-SR, line 3b |
| 6b. | Qualified dividends | Form 1040 or 1040-SR, line 3a |
| 6c. | Dividend equivalents | See the Partner's Instructions |
| 7. | Royalties | Schedule E, line 4 |
| 8. | Net short-term capital gain (loss) | Schedule D, line 5 |
| 9a. | Net long-term capital gain (loss) | Schedule D, line 12 |
| 9b. | Collectibles (28%) gain (loss) | 28% Rate Gain Worksheet, line 4 |
| | | (Schedule D Instructions) |
| 9c. | Unrecaptured section 1250 gain | See the Partner's Instructions |
| 10. | Net section 1231 gain (loss) | See the Partner's Instructions |
| 11. | Other income (loss) | |

Code
| A | Other portfolio income (loss) | See the Partner's Instructions |
|---|---|---|
| B | Involuntary conversions | See the Partner's Instructions |
| C | Sec. 1256 contracts & straddles | Form 6781, line 1 |
| D | Mining exploration costs recapture | See Pub. 535 |
| E | Cancellation of debt | |
| F | Section 743(b) positive adjustments | |
| G | Section 965(a) inclusion | |
| H | Income under subpart F (other | See the Partner's Instructions |
| | than inclusions under sections | |
| | 951A and 965) | |
| I | Other income (loss) | |

| 12. | Section 179 deduction | See the Partner's Instructions |
|---|---|---|
| 13. | Other deductions | |

| A | Cash contributions (60%) | |
|---|---|---|
| B | Cash contributions (30%) | |
| C | Noncash contributions (50%) | |
| D | Noncash contributions (30%) | See the Partner's Instructions |
| E | Capital gain property to a 50% | |
| | organization (30%) | |
| F | Capital gain property (20%) | |
| G | Contributions (100%) | |
| H | Investment interest expense | Form 4952, line 1 |
| I | Deductions - royalty income | Schedule E, line 19 |
| J | Section 59(e)(2) expenditures | See the Partner's Instructions |
| K | Excess business interest expense | See the Partner's Instructions |
| L | Deductions - portfolio (other) | Schedule A, line 16 |
| M | Amounts paid for medical insurance | Schedule A, line 1, or Schedule 1 |
| | | (Form 1040 or 1040-SR), line 16 |
| N | Educational assistance benefits | See the Partner's Instructions |
| O | Dependent care benefits | Form 2441, line 12 |
| P | Preproductive period expenses | See the Partner's Instructions |
| Q | Commercial revitalization deduction | |
| | from rental real estate activities | See Form 8582 Instructions |
| R | Pensions and IRAs | See the Partner's Instructions |
| S | Reforestation expense deduction | See the Partner's Instructions |
| T | through U | Reserved for future use |
| V | Section 743(b) negative adjustments | |
| W | Other deductions | See the Partner's Instructions |
| X | Section 965(c) deduction | |

14. Self-employment earnings (loss)

Note: If you have a section 179 deduction or any partner-level deductions, see
the Partner's Instructions before completing Schedule SE.

| A | Net earnings (loss) from | |
|---|---|---|
| | self-employment | Schedule SE, Section A or B |
| B | Gross farming or fishing income | See the Partner's Instructions |
| C | Gross non-farm income | See the Partner's Instructions |

15. Credits

| A | Low-income housing credit | |
|---|---|---|
| | (section 42(j)(5)) from pre-2008 | |
| | buildings | |
| B | Low-income housing credit | |
| | (other) from pre-2008 buildings | |
| C | Low-income housing credit (section | |
| | 42(j)(5)) from post-2007 buildings | |
| D | Low-income housing credit (other) | See the Partner's Instructions |
| | from post-2007 buildings | |
| E | Qualified rehabilitation expenditures | |
| | (rental real estate) | |
| F | Other rental real estate credits | |
| G | Other rental credits | |

911262 12-30-19

Code                 Report on

| H | Undistributed capital gains credit | Schedule 3 (Form 1040 or 1040-SR), |
|---|---|---|
| | | line 13, box a |
| I | Biofuel producer credit | See the Partner's Instructions |
| J | Work opportunity credit | |
| K | Disabled access credit | |
| L | Empowerment zone | |
| | employment credit | |
| M | Credit for increasing research | See the Partner's Instructions |
| | activities | |
| N | Credit for employer social | |
| | security and Medicare taxes | |
| O | Backup withholding | |
| P | Other credits | |

16. Foreign transactions

| A | Name of country or U.S. | |
|---|---|---|
| | possession | |
| B | Gross income from all sources | Form 1116, Part I |
| C | Gross income sourced at partner | |
| | level | |

Foreign gross income sourced at partnership level
| D | Reserved for future use | |
|---|---|---|
| E | Foreign branch category | |
| F | Passive category | Form 1116, Part I |
| G | General category | |
| H | Other | |

Deductions allocated and apportioned at partner level
| I | Interest expense | Form 1116, Part I |
|---|---|---|
| J | Other | Form 1116, Part I |

Deductions allocated and apportioned at partnership level to foreign source
income
| K | Reserved for future use | |
|---|---|---|
| L | Foreign branch category | |
| M | Passive category | Form 1116, Part I |
| N | General category | |
| O | Other | |

Other information
| P | Total foreign taxes paid | Form 1116, Part II |
|---|---|---|
| Q | Total foreign taxes accrued | Form 1116, Part II |
| R | Reduction in taxes available for credit | Form 1116, line 12 |
| S | Foreign trading gross receipts | Form 8873 |
| T | Extraterritorial income exclusion | Form 8873 |
| U | through V | Reserved for future use |
| W | Section 965 information | See the Partner's Instructions |
| X | Other foreign transactions | |

17. Alternative minimum tax (AMT) items
| A | Post-1986 depreciation adjustment | |
|---|---|---|
| B | Adjusted gain or loss | See the Partner's |
| C | Depletion (other than oil & gas) | Instructions and |
| D | Oil, gas, & geothermal - gross income | the Instructions for |
| E | Oil, gas, & geothermal - deductions | Form 6251 |
| F | Other AMT items | |

18. Tax-exempt income and nondeductible expenses
| A | Tax-exempt interest income | Form 1040 or 1040-SR, line 2a |
|---|---|---|
| B | Other tax-exempt income | See the Partner's Instructions |
| C | Nondeductible expenses | See the Partner's Instructions |

19. Distributions
| A | Cash and marketable securities | |
|---|---|---|
| B | Distribution subject to section 737 | See the Partner's Instructions |
| C | Other property | |

20. Other information
| A | Investment income | Form 4952, line 4a |
|---|---|---|
| B | Investment expenses | Form 4952, line 5 |
| C | Fuel tax credit information | Form 4136 |
| D | Qualified rehabilitation expenditures | |
| | (other than rental real estate) | See the Partner's Instructions |
| E | Basis of energy property | |
| F | through G | |
| H | Recapture of investment credit | See Form 4255 |
| I | Recapture of other credits | See the Partner's Instructions |
| J | Look-back interest - completed | |
| | long-term contracts | See Form 8697 |
| K | Look-back interest - income forecast | |
| | method | See Form 8866 |
| L | Dispositions of property with | |
| | section 179 deductions | |
| M | Recapture of section 179 deduction | |
| N | Interest expense for corporate partners | |
| O | through Y | |
| Z | Section 199A information | |
| AA | Section 704(c) information | |
| AB | Section 751 gain (loss) | See the Partner's Instructions |
| AC | Section 1(h)(5) gain (loss) | |
| AD | Deemed section 1250 | |
| | unrecaptured gain | |
| AE | Excess taxable income | |
| AF | Excess business interest income | |
| AG | Gross receipts for section 59A(e) | |
| AH | Other information | |

CONFIDENTIAL                         ALECTO_00027176<br>                                  JA2379

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

Name: ALECTO HEALTHCARE SERVICES LLC                                              46-0829723

For: MICHAEL J SARRAO

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -148,595. | -148,595. | -377,062. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 11,898. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -134. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 336. | | 402. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -148,595. | -148,595. | -377,062. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -8,484. | | -236. |
| Adjusted gain or loss | | | -72. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 11,898. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 2,106,655. | |
| - Unadjusted basis of assets | | 1,026,281. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

64                                                                                                    3

CONFIDENTIAL

ALECTO_00027177
JA2380

**3**   Case 23-10787-JKS   Doc 307-2   Filed 02/29/24   Page 71 of 72

## Schedule of Activities

For calendar year 2019, or tax year beginning _____, 2019, and ending _____

| Name: ALECTO HEALTHCARE SERVICES LLC | | | | | | | | | 46-0829723 |
|---|---|---|---|---|---|---|---|---|---|

For:  MICHAEL J SARRAO

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL | | | |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE | | | |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE | | | |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -377,062. | -269,665. | -269,665. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 4,351. | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -377,062. | -269,665. | -269,665. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 4,351. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 1,377,387. | | 1,695,222. |
| - Unadjusted basis of assets | 916,321. | | 232,754. |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

65

3

CONFIDENTIAL

ALECTO_00027178
JA2381

**3**   Case 23-10787-JKS   Doc 307-2   Filed 02/29/24   Page 72 of 72

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

| Name: ALECTO HEALTHCARE SERVICES LLC | | | | | | | | | | 46-0829723 |
|---|---|---|---|---|---|---|---|---|---|---|
| For: MICHAEL J SARRAO | | | | | | | | | | |

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | | |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | | |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -2,622,437. | -2,633,539. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 3. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -2,622,441. | -2,633,539. | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 5,370. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 3. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 2,561,070. | |
| - Unadjusted basis of assets | | 901,786. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

66

3

CONFIDENTIAL

ALECTO_00027179
**JA2382**

**<u>Exhibit B</u>**

**Part 2**

651119

| Schedule K-1 (Form 1065) | **2019** | | X Final K-1   Amended K-1    OMB No. 1545-0123 |
|---|---|---|---|

Department of the Treasury Internal Revenue Service    For calendar year 2019, or tax year

**Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

Partner's Share of Income, Deductions, Credits, etc.   ▶ See separate instructions.

beginning [ ] ending [ ]

| | | |
|---|---|---|
| **Part I   Information About the Partnership** | 1 Ordinary business income (loss)   -3,437,061. | 15 Credits |
| A Partnership's employer identification number   46-0829723 | 2 Net rental real estate income (loss) | |
| B Partnership's name, address, city, state, and ZIP code | 3 Other net rental income (loss) | 16 Foreign transactions |
| ALECTO HEALTHCARE SERVICES LLC 16310 BAKE PARKWAY SUITE 200 IRVINE, CA 92618 | 4a Guaranteed payments for services | |
| | 4b Guaranteed payments for capital | |
| | 4c Total guaranteed payments | |
| C IRS Center where partnership filed return ▶ E-FILE | 5 Interest income   16,259. | 17 Alternative min tax (AMT) items A   -3,350. B*   -72. |
| D [ ] Check if this is a publicly traded partnership (PTP) | | |
| **Part II   Information About the Partner** | 6a Ordinary dividends | |
| E Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.) | 6b Qualified dividends | 18 Tax-exempt income and nondeductible expenses C*   STMT |
| F Name, address, city, state, and ZIP code for partner entered in E. See instructions. PANCH JEYAKUMAR TUSTIN, CA 92782 | 6c Dividend equivalents | |
| | 7 Royalties | 19 Distributions |
| G X General partner or LLC member-manager   [ ] Limited partner or other LLC member | 8 Net short-term capital gain (loss) | 20 Other information A   16,259. |
| H1 X Domestic partner   [ ] Foreign partner | 9a Net long-term capital gain (loss) | Z   * STMT |
| H2 [ ] If the partner is a disregarded entity (DE), enter the partner's: TIN ___ Name ___ | 9b Collectibles (28%) gain (loss) | AH   * STMT |
| I1 What type of entity is this partner? INDIVIDUAL | 9c Unrecaptured section 1250 gain | |
| I2 If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here [ ] | | |
| J Partner's share of profit, loss, and capital: | 10 Net section 1231 gain (loss)   -134. | |

| | Beginning | Ending |
|---|---|---|
| Profit | 7.0000000% | 0.0000000% |
| Loss | 7.0000000% | 0.0000000% |
| Capital | 7.0000000% | 0.0000000% |

| 11 Other income (loss) | |
|---|---|

Check if decrease is due to sale or exchange of partnership interest [ ]

K Partner's share of liabilities:

| | Beginning | Ending | 12 Section 179 deduction |
|---|---|---|---|
| Nonrecourse $ | 13,927,077. | $ 0. | |
| Qualified nonrecourse financing $ | 1,232,754. | $ 0. | 13 Other deductions A   1,728. K   13,104. |
| Recourse $ | | 0. $ 0. | |

Check this box if Item K includes liability amounts from lower tier partnerships. [ ]

| L   Partner's Capital Account Analysis SEE STATEMENT | 14 Self-employment earnings (loss) A   -3,437,064. |
|---|---|
| Beginning capital account   $ 727,229. | |
| Capital contributed during the year   $ 626,113. | 21 [ ] More than one activity for at-risk purposes* |
| Current year net income (loss)   $ -3,435,768. | 22 [ ] More than one activity for passive activity purposes* |
| Other increase (decrease) (attach explanation) $ 3,409,990. | *See attached statement for additional information. |
| Withdrawals & distributions $( 1,327,564.) | |
| Ending capital account   $ 0. | |

M Did the partner contribute property with a built-in gain or loss? [ ] Yes   X No   If "Yes," attach statement. See instructions.

N Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss) Beginning $ ___ Ending $ ___

For IRS Use Only

911261 12-30-19   LHA   For Paperwork Reduction Act Notice, see Instructions for Form 1065.    www.irs.gov/Form1065    Schedule K-1 (Form 1065) 2019

4

CONFIDENTIAL

ALECTO_00027180
**JA2384**

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

---

SCHEDULE K-1              ALTERNATIVE MINIMUM TAX, ADJUSTED
                          GAIN OR LOSS, BOX 17, CODE B

---

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | SUBJECT TO SPECIAL RATES | AMOUNT |
|---|---|---|---|
| ORDINARY GAIN (LOSS) | SEE FORM 6251 INSTRUCTIONS | | -72. |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B | | | -72. |

---

SCHEDULE K-1        NONDEDUCTIBLE EXPENSES, BOX 18, CODE C

---

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION | 378. |
| OFFICER'S LIFE INSURANCE | | 1,809. |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH | SEE IRS SCH. K-1 INSTRUCTIONS | 8,941. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C | | 11,128. |

PARTNER NUMBER 4

CONFIDENTIAL

ALECTO_00027181
**JA2385**

ALECTO HEALTHCARE SERVICES LLC                                       46-0829723

---

SCHEDULE K-1        SECTION 199A INFORMATION, BOX 20, CODE Z

---

| DESCRIPTION | AMOUNT |
|---|---|

TRADE OR BUSINESS -
X - SSTB

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -19,304. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -19,304. |
| W-2 WAGES | 233,732. |
| UNADJUSTED BASIS OF ASSETS | 943. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -148,594. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -148,594. |
| W-2 WAGES | 2,106,654. |
| UNADJUSTED BASIS OF ASSETS | 1,026,282. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -377,061. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -377,061. |
| W-2 WAGES | 1,377,387. |
| UNADJUSTED BASIS OF ASSETS | 916,321. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -269,665. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -269,665. |
| W-2 WAGES | 1,695,222. |
| UNADJUSTED BASIS OF ASSETS | 232,754. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -2,633,539. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -2,633,539. |
| W-2 WAGES | 2,561,069. |
| UNADJUSTED BASIS OF ASSETS | 901,786. |

10340904 146892 629917        2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                                ALECTO_00027182
                                                      JA2386

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

═══════════════════════════════════════════════════════════════════════════════

SCH K-1
───────────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════════

SCHEDULE K-1              OTHER INFORMATION, BOX 20, CODE AH
───────────────────────────────────────────────────────────────────────────────

DESCRIPTION                   PARTNER FILING INSTRUCTIONS          AMOUNT
─────────────                 ───────────────────────────          ──────

BEGINNING TAX CAPITAL         PLEASE CONSULT YOUR TAX ADVISOR     -2,245,552.
ENDING TAX CAPITAL            PLEASE CONSULT YOUR TAX ADVISOR     -5,066,282.

CONFIDENTIAL                                                    ALECTO_00027183
                                                                           JA2387

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) | |
|---|---|---|

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -3,437,061. | |
| INTEREST INCOME | 16,259. | |
| SECTION 1231 GAIN (LOSS) | -134. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -3,420,936. |
| CHARITABLE CONTRIBUTIONS | -1,728. | |
| OTHER DEDUCTIONS | -13,104. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -14,832. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -3,435,768. |

| | |
|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 134. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 112. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -541. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -232. |
| NONDEDUCTIBLE EXPENSES | -11,128. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 377,547. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 145,692. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 2,622,524. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 265,423. |
| INTEREST EXPENSE | -13,104. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 13,104. |
| SALARIES AND WAGES | 10,459. |
| TOTAL OTHER INCREASES OR DECREASES | 3,409,990. |

| SCHEDULE K-1 | WITHDRAWALS AND DISTRIBUTIONS |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| TRANSFERRED CAPITAL | 1,327,564. |
| TOTAL TO SCHEDULE K-1, ITEM L, WITHDRAWALS AND DISTRIBUTIONS | 1,327,564. |

CONFIDENTIAL                                          ALECTO_00027184
                                                        JA2388

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

SCHEDULE K-1          ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS

GAAP

CONFIDENTIAL                                        ALECTO_00027185
                                                    JA2389

Schedule K-1 (Form 1065) 2019                                  **Page 2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040 or 1040-SR. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

| | | Report on |
|---|---|---|
| 1. | Ordinary business income (loss). Determine whether the income (loss) is passive or nonpassive and enter on your return as follows. | |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (h) |
| | Nonpassive loss | See the Partner's Instructions |
| | Nonpassive income | Schedule E, line 28, column (k) |
| 2. | Net rental real estate income (loss) | See the Partner's Instructions |
| 3. | Other net rental income (loss) | |
| | Net income | Schedule E, line 28, column (h) |
| | Net loss | See the Partner's Instructions |
| 4a. | Guaranteed payment Services | See the Partner's Instructions |
| 4b. | Guaranteed payment Capital | See the Partner's Instructions) |
| 4c. | Guaranteed payment Total | See the Partner's Instructions |
| 5. | Interest income | Form 1040 or 1040-SR, line 2b |
| 6a. | Ordinary dividends | Form 1040 or 1040-SR, line 3b |
| 6b. | Qualified dividends | Form 1040 or 1040-SR, line 3a |
| 6c. | Dividend equivalents | See the Partner's Instructions |
| 7. | Royalties | Schedule E, line 4 |
| 8. | Net short-term capital gain (loss) | Schedule D, line 5 |
| 9a. | Net long-term capital gain (loss) | Schedule D, line 12 |
| 9b. | Collectibles (28%) gain (loss) | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| 9c. | Unrecaptured section 1250 gain | See the Partner's Instructions |
| 10. | Net section 1231 gain (loss) | See the Partner's Instructions |
| 11. | Other income (loss) | |

Code

| A | Other portfolio income (loss) | See the Partner's Instructions |
|---|---|---|
| B | Involuntary conversions | See the Partner's Instructions |
| C | Sec. 1256 contracts & straddles | Form 6781, line 1 |
| D | Mining exploration costs recapture | See Pub. 535 |
| E | Cancellation of debt | |
| F | Section 743(b) positive adjustments | |
| G | Section 965(a) inclusion | |
| H | Income under subpart F (other than inclusions under sections 951A and 965) | See the Partner's Instructions |
| I | Other income (loss) | |

| 12. | Section 179 deduction | See the Partner's Instructions |
|---|---|---|
| 13. | Other deductions | |

| A | Cash contributions (60%) | |
|---|---|---|
| B | Cash contributions (30%) | |
| C | Noncash contributions (50%) | |
| D | Noncash contributions (30%) | See the Partner's Instructions |
| E | Capital gain property to a 50% organization (30%) | |
| F | Capital gain property (20%) | |
| G | Contributions (100%) | |
| H | Investment interest expense | Form 4952, line 1 |
| I | Deductions - royalty income | Schedule E, line 19 |
| J | Section 59(e)(2) expenditures | See the Partner's Instructions |
| K | Excess business interest expense | See the Partner's Instructions |
| L | Deductions - portfolio (other) | Schedule A, line 16 |
| M | Amounts paid for medical insurance | Schedule A, line 1, or Schedule 1 (Form 1040 or 1040-SR), line 16 |
| N | Educational assistance benefits | See the Partner's Instructions |
| O | Dependent care benefits | Form 2441, line 12 |
| P | Preproductive period expenses | See the Partner's Instructions |
| Q | Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| R | Pensions and IRAs | See the Partner's Instructions |
| S | Reforestation expense deduction | See the Partner's Instructions |
| T | through U | Reserved for future use |
| V | Section 743(b) negative adjustments | |
| W | Other deductions | See the Partner's Instructions |
| X | Section 965(c) deduction | |

| 14. | Self-employment earnings (loss) | |
|---|---|---|

Note: If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.

| A | Net earnings (loss) from self-employment | Schedule SE, Section A or B |
|---|---|---|
| B | Gross farming or fishing income | See the Partner's Instructions |
| C | Gross non-farm income | See the Partner's Instructions |

| 15. | Credits | |
|---|---|---|

| A | Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
|---|---|---|
| B | Low-income housing credit (other) from pre-2008 buildings | |
| C | Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| D | Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| E | Qualified rehabilitation expenditures (rental real estate) | |
| F | Other rental real estate credits | |
| G | Other rental credits | |

| | Code | | Report on |
|---|---|---|---|
| H | Undistributed capital gains credit | | Schedule 3 (Form 1040 or 1040-SR), line 13, box a |
| I | Biofuel producer credit | | See the Partner's Instructions |
| J | Work opportunity credit | | |
| K | Disabled access credit | | |
| L | Empowerment zone employment credit | | |
| M | Credit for increasing research activities | | See the Partner's Instructions |
| N | Credit for employer social security and Medicare taxes | | |
| O | Backup withholding | | |
| P | Other credits | | |

| 16. | Foreign transactions | | |
|---|---|---|---|
| A | Name of country or U.S. possession | | |
| B | Gross income from all sources | | Form 1116, Part I |
| C | Gross income sourced at partner level | | |

Foreign gross income sourced at partnership level

| D | Reserved for future use | |
|---|---|---|
| E | Foreign branch category | |
| F | Passive category | Form 1116, Part I |
| G | General category | |
| H | Other | |

Deductions allocated and apportioned at partner level

| I | Interest expense | Form 1116, Part I |
|---|---|---|
| J | Other | Form 1116, Part I |

Deductions allocated and apportioned at partnership level to foreign source income

| K | Reserved for future use | |
|---|---|---|
| L | Foreign branch category | |
| M | Passive category | Form 1116, Part I |
| N | General category | |
| O | Other | |

Other information

| P | Total foreign taxes paid | Form 1116, Part II |
|---|---|---|
| Q | Total foreign taxes accrued | Form 1116, Part II |
| R | Reduction in taxes available for credit | Form 1116, line 12 |
| S | Foreign trading gross receipts | Form 8873 |
| T | Extraterritorial income exclusion | Form 8873 |
| U | through V | Reserved for future use |
| W | Section 965 information | See the Partner's Instructions |
| X | Other foreign transactions | |

| 17. | Alternative minimum tax (AMT) items | |
|---|---|---|
| A | Post-1986 depreciation adjustment | See the Partner's |
| B | Adjusted gain or loss | Instructions and |
| C | Depletion (other than oil & gas) | the Instructions for |
| D | Oil, gas, & geothermal - gross income | Form 6251 |
| E | Oil, gas, & geothermal - deductions | |
| F | Other AMT items | |

| 18. | Tax-exempt income and nondeductible expenses | |
|---|---|---|
| A | Tax-exempt interest income | Form 1040 or 1040-SR, line 2a |
| B | Other tax-exempt income | See the Partner's Instructions |
| C | Nondeductible expenses | See the Partner's Instructions |

| 19. | Distributions | |
|---|---|---|
| A | Cash and marketable securities | |
| B | Distribution subject to section 737 | See the Partner's Instructions |
| C | Other property | |

| 20. | Other information | |
|---|---|---|
| A | Investment income | Form 4952, line 4a |
| B | Investment expenses | Form 4952, line 5 |
| C | Fuel tax credit information | Form 4136 |
| D | Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| E | Basis of energy property | |
| F | through G | |
| H | Recapture of investment credit | See Form 4255 |
| I | Recapture of other credits | See the Partner's Instructions |
| J | Look-back interest - completed long-term contracts | See Form 8697 |
| K | Look-back interest - income forecast method | See Form 8866 |
| L | Dispositions of property with section 179 deductions | |
| M | Recapture of section 179 deduction | |
| N | Interest expense for corporate partners | |
| O | through Y | |
| Z | Section 199A information | |
| AA | Section 704(c) information | |
| AB | Section 751 gain (loss) | See the Partner's Instructions |
| AC | Section 1(h)(5) gain (loss) | |
| AD | Deemed section 1250 unrecaptured gain | |
| AE | Excess taxable income | |
| AF | Excess business interest income | |
| AG | Gross receipts for section 59A(e) | |
| AH | Other information | |

911262 12-30-19

73                                         4

10340904 146892 629917          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

**CONFIDENTIAL**                                      **ALECTO_00027186**
**JA2390**

**4** Case 23-10787-JKS Doc 307-3 Filed 02/29/24 Page 9 of 72

## Schedule of Activities

For calendar year 2019, or tax year beginning _____, 2019, and ending _____.

Name: **ALECTO HEALTHCARE SERVICES LLC**   46-0829723

For: **PANCH JEYAKUMAR**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -148,594. | -148,594. | -377,061. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 11,898. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -134. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 336. | | 402. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -148,594. | -148,594. | -377,061. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -8,484. | | -236. |
| Adjusted gain or loss | | | -72. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 11,898. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 2,106,654. | |
| - Unadjusted basis of assets | | 1,026,282. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

74

4

2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL   ALECTO_00027187
**JA2391**

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: ALECTO HEALTHCARE SERVICES LLC

For: PANCH JEYAKUMAR

46-0829723

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -377,061. | -269,665. | -269,665. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 4,352. | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -377,061. | -269,665. | -269,665. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 4,352. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 1,377,387. | | 1,695,222. |
| - Unadjusted basis of assets | 916,321. | | 232,754. |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

75

4

10340904 146892 629917                      2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027188

JA2392

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**                    46-0829723
For: **PANCH JEYAKUMAR**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -2,622,437. | -2,633,539. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 3. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -2,622,440. | -2,633,539. | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 5,370. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 3. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 2,561,069. | |
| - Unadjusted basis of assets | | 901,786. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

76                                                                                      4

CONFIDENTIAL

ALECTO_00027189
**JA2393**

| Form **8308**<br>(Rev. September 2018)<br>Department of the Treasury<br>Internal Revenue Service | **Report of a Sale or Exchange of<br>Certain Partnership Interests**<br><br>► Go to www.irs.gov/Form8308 for the latest information. | | OMB No. 1545-0123 |
|---|---|---|---|
| Name of partnership | | Phone number | Employer identification number |
| ALECTO HEALTHCARE SERVICES LLC | | 323-932-5963 | 46-0829723 |

Number, street, and room or suite no. If a P.O. box, see instructions.

16310 BAKE PARKWAY SUITE 200

City or town, state or province, country, and ZIP or foreign postal code

IRVINE, CA  92618

| **Part I** | **Transferor Information** (Beneficial owner of the partnership interest immediately before the transfer of that interest) |
|---|---|

| Name | Identifying number |
|---|---|
| PANCH JEYAKUMAR | |

Number and street (including apt. no.)

City, state or province, country, and ZIP or foreign postal code

TUSTIN, CA  92782

**Notice to Transferors:** *The information on this form has been supplied to the Internal Revenue Service. The transferor in a section 751(a) exchange is required to treat a portion of the gain realized from the exchange as ordinary income. For more details, see Pub. 541, Partnerships.*

**Statement by Transferor:** *The transferor in a section 751(a) exchange is required under Regulations section 1.751-1(a)(3) to attach a statement relating to the sale or exchange to his or her return.*

| **Part II** | **Transferee Information** (Beneficial owner of the partnership interest immediately after the transfer of that interest) |
|---|---|

| Name | Identifying number |
|---|---|
| LAXMAN REDDY | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

CALABASAS, CA  91302

| **Part III** | **Date of Sale or Exchange of Partnership Interest** ► | 12/31/19 |
|---|---|---|

| Sign here only if you<br>are filing this form by<br>itself and not with<br>Form 1065 | Under penalties of perjury, I declare that I have examined this return, including accompanying attachments, and to the best of my knowledge and belief, it is true, correct, and complete.<br><br>Signature of partnership representative or partner or limited liability company member | Date |
|---|---|---|

Form **8308** (Rev. 9-2018)

4

CONFIDENTIAL

ALECTO_00027190<br>JA2394

651119

| Schedule K-1 (Form 1065) Department of the Treasury Internal Revenue Service | **2019** For calendar year 2019, or tax year | Final K-1 ☐   Amended K-1 ☐   OMB No. 1545-0123 **Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |
|---|---|---|

beginning [        ]  ending [        ]

**Partner's Share of Income, Deductions, Credits, etc.** ▶ **See separate instructions.**

| | |
|---|---|
| **Part I   Information About the Partnership** | |
| **A** Partnership's employer identification number <br> 46-0829723 | |
| **B** Partnership's name, address, city, state, and ZIP code <br><br> ALECTO HEALTHCARE SERVICES LLC <br> 16310 BAKE PARKWAY SUITE 200 <br> IRVINE, CA  92618 | |
| **C** IRS Center where partnership filed return ▶ <br> E-FILE | |
| **D** ☐ Check if this is a publicly traded partnership (PTP) | |
| **Part II   Information About the Partner** | |
| **E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.) | |
| **F** Name, address, city, state, and ZIP code for partner entered in E. See instructions. <br><br> MATT WILLIAMS <br><br> WEST HOLLYWOOD, CA   90046 | |

| 1 Ordinary business income (loss) | 15 Credits |
|---|---|
| -2,454,943. | |
| 2 Net rental real estate income (loss) | |
| | 16 Foreign transactions |
| 3 Other net rental income (loss) | |
| 4a Guaranteed payments for services | |
| 4b Guaranteed payments for capital | |
| 4c Total guaranteed payments | |
| | 17 Alternative min tax (AMT) items |
| 5 Interest income | A        -2,394. |
| 11,615. | B*          -52. |
| 6a Ordinary dividends | |
| | 18 Tax-exempt income and nondeductible expenses |
| 6b Qualified dividends | C*        STMT |
| 6c Dividend equivalents | |
| 7 Royalties | 19 Distributions |
| 8 Net short-term capital gain (loss) | |
| | 20 Other information |
| 9a Net long-term capital gain (loss) | A        11,615. |
| | Z   *          STMT |
| 9b Collectibles (28%) gain (loss) | AH  *          STMT |
| 9c Unrecaptured section 1250 gain | |
| 10 Net section 1231 gain (loss) -96. | |
| 11 Other income (loss) | |

| | Beginning | ☒ Limited partner or other LLC member |
|---|---|---|

**G** ☐ General partner or LLC member-manager     ☒ Limited partner or other LLC member

**H1** ☒ Domestic partner     ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's: <br> TIN _____ Name _____

**I1** What type of entity is this partner?   INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 5.0000000% | 5.0000000% |
| Loss | 5.0000000% | 5.0000000% |
| Capital | 5.0000000% | 5.0000000% |

Check if decrease is due to sale or exchange of partnership interest ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse $ | 9,947,912. | $ 12,132,473. |
| Qualified nonrecourse financing $ | 880,539. | $ 0. |
| Recourse $ | 0. | $ 0. |

☐ Check this box if Item K includes liability amounts from lower tier partnerships.

**L**         **Partner's Capital Account Analysis** <br>         SEE STATEMENT

| | | |
|---|---|---|
| Beginning capital account | $ | 504,568. |
| Capital contributed during the year | $ | 447,224. |
| Current year net income (loss) | $ | -2,454,018. |
| Other increase (decrease) (attach explanation) | $ | 2,435,604. |
| Withdrawals & distributions | $( | ) |
| Ending capital account | $ | 933,378. |

**M** Did the partner contribute property with a built-in gain or loss? <br> ☐ Yes   ☒ No  If "Yes," attach statement. See instructions.

**N**  Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss) <br> Beginning ......... $ _____ <br> Ending ......... $ _____

| 12 Section 179 deduction | |
|---|---|
| 13 Other deductions | |
| A        1,235. | |
| K        9,359. | |
| 14 Self-employment earnings (loss) | |
| A   -2,454,947. | |

21 ☐ More than one activity for at-risk purposes*

22 ☐ More than one activity for passive activity purposes*

*See attached statement for additional information.

For IRS Use Only

911261 12-30-19  LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**     www.irs.gov/Form1065     Schedule K-1 (Form 1065) 2019

6

CONFIDENTIAL

ALECTO_00027191
**JA2395**

ALECTO HEALTHCARE SERVICES LLC                                              46-0829723

| SCHEDULE K-1 | ALTERNATIVE MINIMUM TAX, ADJUSTED GAIN OR LOSS, BOX 17, CODE B |
|---|---|

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | SUBJECT TO SPECIAL RATES | AMOUNT |
|---|---|---|---|
| ORDINARY GAIN (LOSS) | SEE FORM 6251 INSTRUCTIONS | | -52. |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B | | | -52. |

| SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES, BOX 18, CODE C |
|---|---|

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION | 271. |
| OFFICER'S LIFE INSURANCE | | 1,291. |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH | SEE IRS SCH. K-1 INSTRUCTIONS | 6,387. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C | | 7,949. |

10340904 146892 629917                2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL
ALECTO_00027192
**JA2396**

ALECTO HEALTHCARE SERVICES LLC                                            46-0829723

=============================================================================

SCHEDULE K-1        SECTION 199A INFORMATION, BOX 20, CODE Z
─────────────────────────────────────────────────────────────────────────────

| DESCRIPTION | AMOUNT |
|---|---|

TRADE OR BUSINESS -
X - SSTB

| ORDINARY INCOME (LOSS) | -13,788. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -13,788. |
| W-2 WAGES | 166,945. |
| UNADJUSTED BASIS OF ASSETS | 673. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

| ORDINARY INCOME (LOSS) | -106,135. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -106,135. |
| W-2 WAGES | 1,504,691. |
| UNADJUSTED BASIS OF ASSETS | 733,028. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

| ORDINARY INCOME (LOSS) | -269,319. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -269,319. |
| W-2 WAGES | 983,807. |
| UNADJUSTED BASIS OF ASSETS | 654,487. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

| ORDINARY INCOME (LOSS) | -192,610. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -192,610. |
| W-2 WAGES | 1,210,822. |
| UNADJUSTED BASIS OF ASSETS | 166,246. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

| ORDINARY INCOME (LOSS) | -1,881,022. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -1,881,022. |
| W-2 WAGES | 1,829,260. |
| UNADJUSTED BASIS OF ASSETS | 644,107. |

CONFIDENTIAL                                                        ALECTO_00027193
                                                                        JA2397

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

═══════════════════════════════════════════════════════════════════════════

SCH K-1
───────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════

SCHEDULE K-1              OTHER INFORMATION, BOX 20, CODE AH
───────────────────────────────────────────────────────────────────────────

DESCRIPTION                    PARTNER FILING INSTRUCTIONS         AMOUNT

BEGINNING TAX CAPITAL          PLEASE CONSULT YOUR TAX ADVISOR    -1,489,039.
ENDING TAX CAPITAL             PLEASE CONSULT YOUR TAX ADVISOR    -3,503,846.

CONFIDENTIAL                                          ALECTO_00027194
                                                              **JA2398**

Case 23-10787-JKS   Doc 307-3   Filed 02/29/24   Page 17 of 72

ALECTO HEALTHCARE SERVICES LLC                                   46-0829723

---

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) | |
|---|---|---|

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -2,454,943. | |
| INTEREST INCOME | 11,615. | |
| SECTION 1231 GAIN (LOSS) | -96. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -2,443,424. |
| CHARITABLE CONTRIBUTIONS | -1,235. | |
| OTHER DEDUCTIONS | -9,359. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -10,594. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -2,454,018. |

| | |
|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 96. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 80. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -387. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -165. |
| NONDEDUCTIBLE EXPENSES | -7,949. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 269,665. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 104,061. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 1,873,154. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 189,579. |
| INTEREST EXPENSE | -9,359. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 9,359. |
| SALARIES AND WAGES | 7,470. |
| TOTAL OTHER INCREASES OR DECREASES | 2,435,604. |

---

| SCHEDULE K-1 | ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS |
|---|---|

GAAP

---

CONFIDENTIAL                                          ALECTO_00027195
                                                         JA2399

Schedule K-1 (Form 1065) 2019                        **Page 2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040 or 1040-SR. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

1. Ordinary business income (loss). Determine whether the income (loss) is passive or nonpassive and enter on your return as follows.

| | Report on |
|---|---|
| Passive loss | See the Partner's Instructions |
| Passive income | Schedule E, line 28, column (h) |
| Nonpassive loss | See the Partner's Instructions |
| Nonpassive income | Schedule E, line 28, column (k) |
| 2. Net rental real estate income (loss) | See the Partner's Instructions |
| 3. Other net rental income (loss) | |
|     Net income | Schedule E, line 28, column (h) |
|     Net loss | See the Partner's Instructions |
| 4a. Guaranteed payment Services | See the Partner's Instructions |
| 4b. Guaranteed payment Capital | See the Partner's Instructions) |
| 4c. Guaranteed payment Total | See the Partner's Instructions |
| 5. Interest income | Form 1040 or 1040-SR, line 2b |
| 6a. Ordinary dividends | Form 1040 or 1040-SR, line 3b |
| 6b. Qualified dividends | Form 1040 or 1040-SR, line 3a |
| 6c. Dividend equivalents | See the Partner's Instructions |
| 7. Royalties | Schedule E, line 4 |
| 8. Net short-term capital gain (loss) | Schedule D, line 5 |
| 9a. Net long-term capital gain (loss) | Schedule D, line 12 |
| 9b. Collectibles (28%) gain (loss) | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| 9c. Unrecaptured section 1250 gain | See the Partner's Instructions |
| 10. Net section 1231 gain (loss) | See the Partner's Instructions |
| 11. Other income (loss) | |

Code
| A | Other portfolio income (loss) | See the Partner's Instructions |
|---|---|---|
| B | Involuntary conversions | See the Partner's Instructions |
| C | Sec. 1256 contracts & straddles | Form 6781, line 1 |
| D | Mining exploration costs recapture | See Pub. 535 |
| E | Cancellation of debt | |
| F | Section 743(b) positive adjustments | |
| G | Section 965(a) inclusion | |
| H | Income under subpart F (other than inclusions under sections 951A and 965) | See the Partner's Instructions |
| I | Other income (loss) | |

| 12. | Section 179 deduction | See the Partner's Instructions |
|---|---|---|
| 13. | Other deductions | |

| A | Cash contributions (60%) | |
|---|---|---|
| B | Cash contributions (30%) | |
| C | Noncash contributions (50%) | |
| D | Noncash contributions (30%) | See the Partner's Instructions |
| E | Capital gain property to a 50% organization (30%) | |
| F | Capital gain property (20%) | |
| G | Contributions (100%) | |
| H | Investment interest expense | Form 4952, line 1 |
| I | Deductions - royalty income | Schedule E, line 19 |
| J | Section 59(e)(2) expenditures | See the Partner's Instructions |
| K | Excess business interest expense | See the Partner's Instructions |
| L | Deductions - portfolio (other) | Schedule A, line 16 |
| M | Amounts paid for medical insurance | Schedule A, line 1, or Schedule 1 (Form 1040 or 1040-SR), line 16 |
| N | Educational assistance benefits | See the Partner's Instructions |
| O | Dependent care benefits | Form 2441, line 12 |
| P | Preproductive period expenses | See the Partner's Instructions |
| Q | Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| R | Pensions and IRAs | See the Partner's Instructions |
| S | Reforestation expense deduction | See the Partner's Instructions |
| T | through U | Reserved for future use |
| V | Section 743(b) negative adjustments | |
| W | Other deductions | See the Partner's Instructions |
| X | Section 965(c) deduction | |

14. Self-employment earnings (loss)

Note: If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.

| A | Net earnings (loss) from self-employment | Schedule SE, Section A or B |
|---|---|---|
| B | Gross farming or fishing income | See the Partner's Instructions |
| C | Gross non-farm income | See the Partner's Instructions |

15. Credits

| A | Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
|---|---|---|
| B | Low-income housing credit (other) from pre-2008 buildings | |
| C | Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| D | Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| E | Qualified rehabilitation expenditures (rental real estate) | |
| F | Other rental real estate credits | |
| G | Other rental credits | |

Code                        Report on

| H | Undistributed capital gains credit | Schedule 3 (Form 1040 or 1040-SR), line 13, box a |
|---|---|---|
| I | Biofuel producer credit | See the Partner's Instructions |
| J | Work opportunity credit | |
| K | Disabled access credit | |
| L | Empowerment zone employment credit | |
| M | Credit for increasing research activities | See the Partner's Instructions |
| N | Credit for employer social security and Medicare taxes | |
| O | Backup withholding | |
| P | Other credits | |

16. Foreign transactions

| A | Name of country or U.S. possession | |
|---|---|---|
| B | Gross income from all sources | Form 1116, Part I |
| C | Gross income sourced at partner level | |

Foreign gross income sourced at partnership level
| D | Reserved for future use | |
|---|---|---|
| E | Foreign branch category | |
| F | Passive category | Form 1116, Part I |
| G | General category | |
| H | Other | |

Deductions allocated and apportioned at partner level
| I | Interest expense | Form 1116, Part I |
|---|---|---|
| J | Other | Form 1116, Part I |

Deductions allocated and apportioned at partnership level to foreign source income
| K | Reserved for future use | |
|---|---|---|
| L | Foreign branch category | |
| M | Passive category | Form 1116, Part I |
| N | General category | |
| O | Other | |

Other information
| P | Total foreign taxes paid | Form 1116, Part II |
|---|---|---|
| Q | Total foreign taxes accrued | Form 1116, Part II |
| R | Reduction in taxes available for credit | Form 1116, line 12 |
| S | Foreign trading gross receipts | Form 8873 |
| T | Extraterritorial income exclusion | Form 8873 |
| U | through V | Reserved for future use |
| W | Section 965 information | See the Partner's Instructions |
| X | Other foreign transactions | |

17. Alternative minimum tax (AMT) items
| A | Post-1986 depreciation adjustment | See the Partner's |
|---|---|---|
| B | Adjusted gain or loss | Instructions and |
| C | Depletion (other than oil & gas) | the Instructions for |
| D | Oil, gas, & geothermal - gross income | Form 6251 |
| E | Oil, gas, & geothermal - deductions | |
| F | Other AMT items | |

18. Tax-exempt income and nondeductible expenses
| A | Tax-exempt interest income | Form 1040 or 1040-SR, line 2a |
|---|---|---|
| B | Other tax-exempt income | See the Partner's Instructions |
| C | Nondeductible expenses | See the Partner's Instructions |

19. Distributions
| A | Cash and marketable securities | |
|---|---|---|
| B | Distribution subject to section 737 | See the Partner's Instructions |
| C | Other property | |

20. Other information
| A | Investment income | Form 4952, line 4a |
|---|---|---|
| B | Investment expenses | Form 4952, line 5 |
| C | Fuel tax credit information | Form 4136 |
| D | Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| E | Basis of energy property | |
| F | through G | |
| H | Recapture of investment credit | See Form 4255 |
| I | Recapture of other credits | See the Partner's Instructions |
| J | Look-back interest - completed long-term contracts | See Form 8697 |
| K | Look-back interest - income forecast method | See Form 8866 |
| L | Dispositions of property with section 179 deductions | |
| M | Recapture of section 179 deduction | |
| N | Interest expense for corporate partners | |
| O | through Y | |
| Z | Section 199A information | |
| AA | Section 704(c) information | |
| AB | Section 751 gain (loss) | See the Partner's Instructions |
| AC | Section 1(h)(5) gain (loss) | |
| AD | Deemed section 1250 unrecaptured gain | |
| AE | Excess taxable income | |
| AF | Excess business interest income | |
| AG | Gross receipts for section 59A(e) | |
| AH | Other information | |

911262 12-30-19

10340904 146892 629917          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027196
JA2400

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: ALECTO HEALTHCARE SERVICES LLC                                    46-0829723
For:  MATT WILLIAMS

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -106,135. | -106,135. | -269,319. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 8,499. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -96. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 240. | | 287. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -106,135. | -106,135. | -269,319. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -6,060. | | -169. |
| Adjusted gain or loss | | | -52. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 8,499. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,504,691. | |
| - Unadjusted basis of assets | | 733,028. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

10340904 146892 629917          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                          ALECTO_00027197
                                                                          JA2401

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**   46-0829723
For: **MATT WILLIAMS**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code | Description |
|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -269,319. | -192,610. | -192,610. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 3,108. | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -269,319. | -192,610. | -192,610. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 3,108. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 983,807. | | 1,210,822. |
| - Unadjusted basis of assets | 654,487. | | 166,246. |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

85

6

**CONFIDENTIAL**   ALECTO_00027198
**JA2402**

## Schedule of Activities

For calendar year 2019, or tax year beginning                    , 2019, and ending                    .

Name: ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

For: MATT WILLIAMS

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -1,873,091. | -1,881,022. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 3. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -1,873,095. | -1,881,022. | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 3,835. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 3. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,829,260. | |
| - Unadjusted basis of assets | | 644,107. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

10340904 146892 629917             2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                    ALECTO_00027199
                                                       JA2403

651119

| Schedule K-1 (Form 1065) | **2019** | | Final K-1 ☐  Amended K-1 ☐  OMB No. 1545-0123 |
|---|---|---|---|

Department of the Treasury
Internal Revenue Service                For calendar year 2019, or tax year

**Partner's Share of Income, Deductions, Credits, etc.**

beginning [    ] ending [    ]

▶ See separate instructions.

**Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

| | | | |
|---|---|---|---|
| **Part I**   Information About the Partnership | | 1 Ordinary business income (loss)  −2,454,942. | 15 Credits |
| A  Partnership's employer identification number  46-0829723 | | 2 Net rental real estate income (loss) | |
| B  Partnership's name, address, city, state, and ZIP code | | 3 Other net rental income (loss) | 16 Foreign transactions |
| ALECTO HEALTHCARE SERVICES LLC 16310 BAKE PARKWAY SUITE 200 IRVINE, CA  92618 | | 4a Guaranteed payments for services | |
| | | 4b Guaranteed payments for capital | |
| | | 4c Total guaranteed payments | |
| C  IRS Center where partnership filed return ▶ E-FILE | | | 17 Alternative min tax (AMT) items |
| D ☐ Check if this is a publicly traded partnership (PTP) | | 5 Interest income  11,612. | A  −2,391.  B*  −51. |
| **Part II**   Information About the Partner | | 6a Ordinary dividends | |
| E  Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.) | | 6b Qualified dividends | 18 Tax-exempt income and nondeductible expenses  C*  STMT |
| F  Name, address, city, state, and ZIP code for partner entered in E. See instructions. | | 6c Dividend equivalents | |
| STEVEN KAY | | 7 Royalties | 19 Distributions |
| SAN FRANCISCO, CA  94105 | | | |
| G ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member | | 8 Net short-term capital gain (loss) | |
| H1 ☒ Domestic partner   ☐ Foreign partner | | 9a Net long-term capital gain (loss) | 20 Other information  A  11,612.  Z  *  STMT |
| H2 ☐ If the partner is a disregarded entity (DE), enter the partner's:  TIN _____ Name _____ | | 9b Collectibles (28%) gain (loss) | AH  *  STMT |
| I1 What type of entity is this partner?  INDIVIDUAL | | 9c Unrecaptured section 1250 gain | |
| I2 If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐ | | | |
| J  Partner's share of profit, loss, and capital: | | 10 Net section 1231 gain (loss)  −96. | |
|  Beginning   Ending | | | |
| Profit  5.0000000%   5.0000000% | | 11 Other income (loss) | |
| Loss  5.0000000%   5.0000000% | | | |
| Capital  5.0000000%   5.0000000% | | | |
| Check if decrease is due to sale or exchange of partnership interest ☐ | | | |
| K  Partner's share of liabilities: | | 12 Section 179 deduction | |
|  Beginning   Ending | | | |
| Nonrecourse  $ 9,947,912.  $ 12,132,474. | | 13 Other deductions  A  1,234.  K  9,359. | |
| Qualified nonrecourse financing  $ 880,539.  $ 0. | | | |
| Recourse  $ 0.  $ 0. | | | |
| Check this box if Item K includes liability amounts from lower tier partnerships. ☐ | | 14 Self-employment earnings (loss)  A  0. | |
| L  Partner's Capital Account Analysis  SEE STATEMENT | | | |
| Beginning capital account  $ 488,857. | | 21 ☐ More than one activity for at-risk purposes* | |
| Capital contributed during the year  $ 447,224. | | 22 ☐ More than one activity for passive activity purposes* | |
| Current year net income (loss)  $ −2,454,019. | | *See attached statement for additional information. | |
| Other increase (decrease) (attach explanation)  $ 2,435,604. | | | |
| Withdrawals & distributions  $ ( ) | | | |
| Ending capital account  $ 917,666. | | | |
| M  Did the partner contribute property with a built-in gain or loss?  ☐ Yes  ☒ No  If "Yes," attach statement. See instructions. | | | |
| N  Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)  Beginning  $ _____  Ending  $ _____ | | | |

For IRS Use Only

911261 12-30-19  LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**    www.irs.gov/Form1065    Schedule K-1 (Form 1065) 2019

7

**CONFIDENTIAL**

**ALECTO_00027200**
**JA2404**

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| SCHEDULE K-1 | ALTERNATIVE MINIMUM TAX, ADJUSTED GAIN OR LOSS, BOX 17, CODE B | | |
|---|---|---|---|

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | SUBJECT TO SPECIAL RATES | AMOUNT |
|---|---|---|---|
| ORDINARY GAIN (LOSS) | SEE FORM 6251 INSTRUCTIONS | | -51. |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B | | | -51. |

| SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES, BOX 18, CODE C |
|---|---|

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION | 270. |
| OFFICER'S LIFE INSURANCE | | 1,292. |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH | SEE IRS SCH. K-1 INSTRUCTIONS | 6,388. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C | | 7,950. |

10340904 146892 629917                          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL
ALECTO_00027201
JA2405

ALECTO HEALTHCARE SERVICES LLC                                                    46-0829723

| SCHEDULE K-1         SECTION 199A INFORMATION, BOX 20, CODE Z | |
| --- | --- |

| DESCRIPTION | AMOUNT |
| --- | --- |

TRADE OR BUSINESS -
X - SSTB

| | |
| --- | --- |
| ORDINARY INCOME (LOSS) | -13,788. |
| W-2 WAGES | 166,945. |
| UNADJUSTED BASIS OF ASSETS | 673. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

| | |
| --- | --- |
| ORDINARY INCOME (LOSS) | -106,135. |
| W-2 WAGES | 1,504,691. |
| UNADJUSTED BASIS OF ASSETS | 733,028. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

| | |
| --- | --- |
| ORDINARY INCOME (LOSS) | -269,318. |
| W-2 WAGES | 983,807. |
| UNADJUSTED BASIS OF ASSETS | 654,488. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

| | |
| --- | --- |
| ORDINARY INCOME (LOSS) | -192,609. |
| W-2 WAGES | 1,210,823. |
| UNADJUSTED BASIS OF ASSETS | 166,246. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

| | |
| --- | --- |
| ORDINARY INCOME (LOSS) | -1,881,021. |
| W-2 WAGES | 1,829,260. |
| UNADJUSTED BASIS OF ASSETS | 644,106. |

CONFIDENTIAL                                      ALECTO_00027202
                                                                        JA2406

ALECTO HEALTHCARE SERVICES LLC                                        46-0829723

═══════════════════════════════════════════════════════════════════════════════

SCH K-1
───────────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════════

SCHEDULE K-1              OTHER INFORMATION, BOX 20, CODE AH
───────────────────────────────────────────────────────────────────────────────

DESCRIPTION                      PARTNER FILING INSTRUCTIONS          AMOUNT
───────────                                                          

BEGINNING TAX CAPITAL            PLEASE CONSULT YOUR TAX ADVISOR     -1,676,579.
ENDING TAX CAPITAL               PLEASE CONSULT YOUR TAX ADVISOR     -3,691,386.

10340904 146892 629917          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                               ALECTO_00027203
                                                                    JA2407

Case 23-10787-JKS   Doc 307-3   Filed 02/29/24   Page 26 of 72

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) |
| --- | --- |

| DESCRIPTION | AMOUNT | TOTALS |
| --- | --- | --- |
| ORDINARY INCOME (LOSS) | -2,454,942. | |
| INTEREST INCOME | 11,612. | |
| SECTION 1231 GAIN (LOSS) | -96. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -2,443,426. |
| CHARITABLE CONTRIBUTIONS | -1,234. | |
| OTHER DEDUCTIONS | -9,359. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -10,593. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -2,454,019. |

| | |
| --- | --- |
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 96. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 80. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -386. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -166. |
| NONDEDUCTIBLE EXPENSES | -7,950. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 269,666. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 104,061. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 1,873,153. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 189,580. |
| INTEREST EXPENSE | -9,359. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 9,359. |
| SALARIES AND WAGES | 7,470. |
| TOTAL OTHER INCREASES OR DECREASES | 2,435,604. |

| SCHEDULE K-1 | ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS |
| --- | --- |

GAAP

CONFIDENTIAL

ALECTO_00027204
JA2408

Schedule K-1 (Form 1065) 2019                                                                      Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040 or 1040-SR.
For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

1. Ordinary business income (loss). Determine whether the income (loss) is
   passive or nonpassive and enter on your return as follows.
                                                                    Report on
      Passive loss                              See the Partner's Instructions
      Passive income                            Schedule E, line 28, column (h)
      Nonpassive loss                           See the Partner's Instructions
      Nonpassive income                         Schedule E, line 28, column (k)
2. Net rental real estate income (loss)        See the Partner's Instructions
3. Other net rental income (loss)
      Net income                                Schedule E, line 28, column (h)
      Net loss                                  See the Partner's Instructions
4a. Guaranteed payment Services                 See the Partner's Instructions
4b. Guaranteed payment Capital                  See the Partner's Instructions)
4c. Guaranteed payment Total                    See the Partner's Instructions
5. Interest income                             Form 1040 or 1040-SR, line 2b
6a. Ordinary dividends                          Form 1040 or 1040-SR, line 3b
6b. Qualified dividends                         Form 1040 or 1040-SR, line 3a
6c. Dividend equivalents                        See the Partner's Instructions
7. Royalties                                   Schedule E, line 4
8. Net short-term capital gain (loss)          Schedule D, line 5
9a. Net long-term capital gain (loss)          Schedule D, line 12
9b. Collectibles (28%) gain (loss)              28% Rate Gain Worksheet, line 4
                                                (Schedule D Instructions)
9c. Unrecaptured section 1250 gain             See the Partner's Instructions
10. Net section 1231 gain (loss)               See the Partner's Instructions
11. Other income (loss)

      Code
      A   Other portfolio income (loss)         See the Partner's Instructions
      B   Involuntary conversions               See the Partner's Instructions
      C   Sec. 1256 contracts & straddles       Form 6781, line 1
      D   Mining exploration costs recapture    See Pub. 535
      E   Cancellation of debt
      F   Section 743(b) positive adjustments
      G   Section 965(a) inclusion
      H   Income under subpart F (other         See the Partner's Instructions
          than inclusions under sections
          951A and 965)
      I   Other income (loss)

12. Section 179 deduction                       See the Partner's Instructions
13. Other deductions

      A   Cash contributions (60%)
      B   Cash contributions (30%)
      C   Noncash contributions (50%)
      D   Noncash contributions (30%)           See the Partner's Instructions
      E   Capital gain property to a 50%
          organization (30%)
      F   Capital gain property (20%)
      G   Contributions (100%)
      H   Investment interest expense           Form 4952, line 1
      I   Deductions - royalty income           Schedule E, line 19
      J   Section 59(e)(2) expenditures         See the Partner's Instructions
      K   Excess business interest expense      See the Partner's Instructions
      L   Deductions - portfolio (other)        Schedule A, line 16
      M   Amounts paid for medical insurance    Schedule A, line 1, or Schedule 1
                                                (Form 1040 or 1040-SR), line 16
      N   Educational assistance benefits       See the Partner's Instructions
      O   Dependent care benefits               Form 2441, line 12
      P   Preproductive period expenses         See the Partner's Instructions
      Q   Commercial revitalization deduction
          from rental real estate activities    See Form 8582 Instructions
      R   Pensions and IRAs                     See the Partner's Instructions
      S   Reforestation expense deduction       See the Partner's Instructions
      T   through U                             Reserved for future use
      V   Section 743(b) negative adjustments
      W   Other deductions                      See the Partner's Instructions
      X   Section 965(c) deduction

14. Self-employment earnings (loss)

    Note: If you have a section 179 deduction or any partner-level deductions, see
    the Partner's Instructions before completing Schedule SE.

      A   Net earnings (loss) from
          self-employment                       Schedule SE, Section A or B
      B   Gross farming or fishing income       See the Partner's Instructions
      C   Gross non-farm income                 See the Partner's Instructions

15. Credits

      A   Low-income housing credit
          (section 42(j)(5)) from pre-2008
          buildings
      B   Low-income housing credit
          (other) from pre-2008 buildings
      C   Low-income housing credit (section
          42(j)(5)) from post-2007 buildings
      D   Low-income housing credit (other)     See the Partner's Instructions
          from post-2007 buildings
      E   Qualified rehabilitation expenditures
          (rental real estate)
      F   Other rental real estate credits
      G   Other rental credits

                                            Code
                                                                            Report on
      H   Undistributed capital gains credit    Schedule 3 (Form 1040 or 1040-SR),
                                                line 13, box a
      I   Biofuel producer credit               See the Partner's Instructions
      J   Work opportunity credit
      K   Disabled access credit
      L   Empowerment zone
          employment credit
      M   Credit for increasing research        See the Partner's Instructions
          activities
      N   Credit for employer social
          security and Medicare taxes
      O   Backup withholding
      P   Other credits

16. Foreign transactions
      A   Name of country or U.S.
          possession
      B   Gross income from all sources         Form 1116, Part I
      C   Gross income sourced at partner
          level
      Foreign gross income sourced at partnership level
      D   Reserved for future use
      E   Foreign branch category
      F   Passive category                      Form 1116, Part I
      G   General category
      H   Other

      Deductions allocated and apportioned at partner level
      I   Interest expense                      Form 1116, Part I
      J   Other                                 Form 1116, Part I

      Deductions allocated and apportioned at partnership level to foreign source
      income
      K   Reserved for future use
      L   Foreign branch category
      M   Passive category                      Form 1116, Part I
      N   General category
      O   Other

      Other information
      P   Total foreign taxes paid              Form 1116, Part II
      Q   Total foreign taxes accrued           Form 1116, Part II
      R   Reduction in taxes available for credit  Form 1116, line 12
      S   Foreign trading gross receipts        Form 8873
      T   Extraterritorial income exclusion     Form 8873
      U   through V                             Reserved for future use
      W   Section 965 information               See the Partner's Instructions
      X   Other foreign transactions

17. Alternative minimum tax (AMT) items
      A   Post-1986 depreciation adjustment
      B   Adjusted gain or loss                 See the Partner's
      C   Depletion (other than oil & gas)      Instructions and
      D   Oil, gas, & geothermal - gross income  the Instructions for
      E   Oil, gas, & geothermal - deductions   Form 6251
      F   Other AMT items

18. Tax-exempt income and nondeductible expenses
      A   Tax-exempt interest income            Form 1040 or 1040-SR, line 2a
      B   Other tax-exempt income               See the Partner's Instructions
      C   Nondeductible expenses                See the Partner's Instructions

19. Distributions
      A   Cash and marketable securities
      B   Distribution subject to section 737   See the Partner's Instructions
      C   Other property

20. Other information
      A   Investment income                     Form 4952, line 4a
      B   Investment expenses                   Form 4952, line 5
      C   Fuel tax credit information           Form 4136
      D   Qualified rehabilitation expenditures
          (other than rental real estate)
      E   Basis of energy property              See the Partner's Instructions
      F   through G
      H   Recapture of investment credit        See Form 4255
      I   Recapture of other credits            See the Partner's Instructions
      J   Look-back interest - completed
          long-term contracts                   See Form 8697
      K   Look-back interest - income forecast
          method                                See Form 8866
      L   Dispositions of property with
          section 179 deductions
      M   Recapture of section 179 deduction
      N   Interest expense for corporate partners
      O   through Y
      Z   Section 199A information
      AA  Section 704(c) information
      AB  Section 751 gain (loss)               See the Partner's Instructions
      AC  Section 1(h)(5) gain (loss)
      AD  Deemed section 1250
          unrecaptured gain
      AE  Excess taxable income
      AF  Excess business interest income
      AG  Gross receipts for section 59A(e)
      AH  Other information

911262 12-30-19
                                                      92                                                  7
10340904 146892 629917                          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                                                      ALECTO_00027205
                                                                                  JA2409

**7**   Case 23-10787-JKS   Doc 307-3   Filed 02/29/24   Page 28 of 72

### Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

Name: **ALECTO HEALTHCARE SERVICES LLC**   46-0829723
For: **STEVEN KAY**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -106,135. | -106,135. | -269,318. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 8,498. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -96. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 240. | | 287. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -6,059. | | -168. |
| Adjusted gain or loss | | | -51. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 8,498. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,504,691. | |
| - Unadjusted basis of assets | | 733,028. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

93   7

**CONFIDENTIAL**   **ALECTO_00027206**
**JA2410**

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: ALECTO HEALTHCARE SERVICES LLC                          46-0829723

For:  STEVEN KAY

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC – ALE |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC – ALE |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -269,318. | -192,609. | -192,609. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 3,108. | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 3,108. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 983,807. | | 1,210,823. |
| - Unadjusted basis of assets | 654,488. | | 166,246. |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

94                                                                          7

CONFIDENTIAL

ALECTO_00027207
**JA2411**

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

| Name: ALECTO HEALTHCARE SERVICES LLC | | | | | | | | 46-0829723 |
|---|---|---|---|---|---|---|---|---|

For: STEVEN KAY

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description | | |
|---|---|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -1,873,092. | -1,881,021. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 2. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 3,836. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 2. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,829,260. | |
| - Unadjusted basis of assets | | 644,106. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence    2 - Multi-Family Residence    3 - Vacation or Short-Term Rental    4 - Commercial    5 - Land    6 - Royalties    7 - Self-Rental    8 - Other

95                                                                                                                                          7

CONFIDENTIAL

ALECTO_00027208
**JA2412**

651119

| Schedule K-1 (Form 1065) Department of the Treasury Internal Revenue Service | **2019** | Final K-1 ☐  Amended K-1 ☐  OMB No. 1545-0123 |
|---|---|---|

**Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

For calendar year 2019, or tax year

beginning _____ ending _____

**Partner's Share of Income, Deductions, Credits, etc.** ▶ See separate instructions.

| | |
|---|---|
| **Part I    Information About the Partnership** | |
| A  Partnership's employer identification number 46-0829723 | |
| B  Partnership's name, address, city, state, and ZIP code | |
| ALECTO HEALTHCARE SERVICES LLC 16310 BAKE PARKWAY SUITE 200 IRVINE, CA  92618 | |
| C  IRS Center where partnership filed return ▶ E-FILE | |
| D ☐  Check if this is a publicly traded partnership (PTP) | |
| **Part II    Information About the Partner** | |
| E  Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.) | |
| F  Name, address, city, state, and ZIP code for partner entered in E. See instructions. HAYES IRREVOCABLE TRUST DALLAS, TX   75225 | |
| G ☐ General partner or LLC member-manager   ☐X Limited partner or other LLC member | |
| H1 ☐X Domestic partner   ☐ Foreign partner | |
| H2 ☐ If the partner is a disregarded entity (DE), enter the partner's: TIN _____ Name _____ | |
| I1  What type of entity is this partner?  TRUST | |
| I2  If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐ | |
| J  Partner's share of profit, loss, and capital: | |

| | Beginning | Ending |
|---|---|---|
| Profit | 5.0000000% | 5.0000000% |
| Loss | 5.0000000% | 5.0000000% |
| Capital | 5.0000000% | 5.0000000% |

Check if decrease is due to sale or exchange of partnership interest ☐

K  Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse ........ $ | 9,947,913. | $ 12,132,473. |
| Qualified nonrecourse financing ........ $ | 880,538. | $ 0. |
| Recourse ........ $ | 0. | $ 0. |

Check this box if Item K includes liability amounts from lower tier partnerships. ☐

**L    Partner's Capital Account Analysis**
SEE STATEMENT

| | |
|---|---|
| Beginning capital account ........ $ | 519,434. |
| Capital contributed during the year ........ $ | 447,224. |
| Current year net income (loss) ........ $ | -2,454,196. |
| Other increase (decrease) (attach explanation) ...... $ | 2,435,782. |
| Withdrawals & distributions ........ $( | ) |
| Ending capital account ........ $ | 948,244. |

M  Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☐X No  If "Yes," attach statement. See instructions.

N  Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning ........ $ _____
Ending ........ $ _____

Right column (Part III):

| | |
|---|---|
| 1 Ordinary business income (loss) -2,455,120. | 15 Credits |
| 2 Net rental real estate income (loss) | 16 Foreign transactions |
| 3 Other net rental income (loss) | |
| 4a Guaranteed payments for services | |
| 4b Guaranteed payments for capital | |
| 4c Total guaranteed payments | |
| 5 Interest income 11,616. | 17 Alternative min tax (AMT) items A  -2,393. B* -52. |
| 6a Ordinary dividends | 18 Tax-exempt income and nondeductible expenses C* STMT |
| 6b Qualified dividends | |
| 6c Dividend equivalents | |
| 7 Royalties | 19 Distributions |
| 8 Net short-term capital gain (loss) | 20 Other information A 11,616. Z * STMT AH * STMT |
| 9a Net long-term capital gain (loss) | |
| 9b Collectibles (28%) gain (loss) | |
| 9c Unrecaptured section 1250 gain | |
| 10 Net section 1231 gain (loss) -96. | |
| 11 Other income (loss) | |
| 12 Section 179 deduction | |
| 13 Other deductions A 1,235. K 9,361. | |
| 14 Self-employment earnings (loss) | |

21 ☐ More than one activity for at-risk purposes*
22 ☐ More than one activity for passive activity purposes*
*See attached statement for additional information.

For IRS Use Only

911261 12-30-19  LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**    www.irs.gov/Form1065    Schedule K-1 (Form 1065) 2019

8

CONFIDENTIAL

ALECTO_00027209
JA2413

ALECTO HEALTHCARE SERVICES LLC                                              46-0829723

| SCHEDULE K-1 | ALTERNATIVE MINIMUM TAX, ADJUSTED GAIN OR LOSS, BOX 17, CODE B | | |

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | SUBJECT TO SPECIAL RATES | AMOUNT |
|---|---|---|---|
| ORDINARY GAIN (LOSS) | SEE FORM 6251 INSTRUCTIONS | | -52. |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B | | | -52. |

| SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES, BOX 18, CODE C | |

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION | 270. |
| OFFICER'S LIFE INSURANCE | | 1,292. |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH | SEE IRS SCH. K-1 INSTRUCTIONS | 6,387. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C | | 7,949. |

10340904 146892 629917          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL
ALECTO_00027210
JA2414

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

| SCHEDULE K-1 | SECTION 199A INFORMATION, BOX 20, CODE Z |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|

TRADE OR BUSINESS -
X - SSTB

| ORDINARY INCOME (LOSS) | -13,789. |
| W-2 WAGES | 166,957. |
| UNADJUSTED BASIS OF ASSETS | 674. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

| ORDINARY INCOME (LOSS) | -106,142. |
| W-2 WAGES | 1,504,800. |
| UNADJUSTED BASIS OF ASSETS | 733,081. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

| ORDINARY INCOME (LOSS) | -269,338. |
| W-2 WAGES | 983,878. |
| UNADJUSTED BASIS OF ASSETS | 654,535. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

| ORDINARY INCOME (LOSS) | -192,624. |
| W-2 WAGES | 1,210,910. |
| UNADJUSTED BASIS OF ASSETS | 166,258. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

| ORDINARY INCOME (LOSS) | -1,881,158. |
| W-2 WAGES | 1,829,392. |
| UNADJUSTED BASIS OF ASSETS | 644,153. |

CONFIDENTIAL                                    ALECTO_00027211
                                                                  JA2415

ALECTO HEALTHCARE SERVICES LLC                                              46-0829723

═══════════════════════════════════════════════════════════════════════════════

SCH K-1

───────────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════════

SCHEDULE K-1              OTHER INFORMATION, BOX 20, CODE AH

───────────────────────────────────────────────────────────────────────────────

DESCRIPTION                      PARTNER FILING INSTRUCTIONS           AMOUNT

BEGINNING TAX CAPITAL            PLEASE CONSULT YOUR TAX ADVISOR    -1,603,982.
ENDING TAX CAPITAL               PLEASE CONSULT YOUR TAX ADVISOR    -3,618,789.

CONFIDENTIAL                                                  ALECTO_00027212
                                                                          JA2416

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) | | |
|---|---|---|---|

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -2,455,120. | |
| INTEREST INCOME | 11,616. | |
| SECTION 1231 GAIN (LOSS) | -96. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -2,443,600. |
| CHARITABLE CONTRIBUTIONS | -1,235. | |
| OTHER DEDUCTIONS | -9,361. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -10,596. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -2,454,196. |

| | |
|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 96. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 80. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -387. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -165. |
| NONDEDUCTIBLE EXPENSES | -7,949. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 269,685. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 104,069. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 1,873,290. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 189,593. |
| INTEREST EXPENSE | -9,361. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 9,361. |
| SALARIES AND WAGES | 7,470. |
| TOTAL OTHER INCREASES OR DECREASES | 2,435,782. |

| SCHEDULE K-1 | ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS |
|---|---|

GAAP

100                        PARTNER NUMBER 8
                                2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                                         ALECTO_00027213
                                                                          JA2417

Schedule K-1 (Form 1065) 2019                Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040 or 1040-SR.
For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

| | | Report on |
|---|---|---|
| 1. | Ordinary business income (loss). Determine whether the income (loss) is passive or nonpassive and enter on your return as follows. | |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (h) |
| | Nonpassive loss | See the Partner's Instructions |
| | Nonpassive income | Schedule E, line 28, column (k) |
| 2. | Net rental real estate income (loss) | See the Partner's Instructions |
| 3. | Other net rental income (loss) | |
| | Net income | Schedule E, line 28, column (h) |
| | Net loss | See the Partner's Instructions |
| 4a. | Guaranteed payment Services | See the Partner's Instructions |
| 4b. | Guaranteed payment Capital | See the Partner's Instructions) |
| 4c. | Guaranteed payment Total | See the Partner's Instructions |
| 5. | Interest income | Form 1040 or 1040-SR, line 2b |
| 6a. | Ordinary dividends | Form 1040 or 1040-SR, line 3b |
| 6b. | Qualified dividends | Form 1040 or 1040-SR, line 3a |
| 6c. | Dividend equivalents | See the Partner's Instructions |
| 7. | Royalties | Schedule E, line 4 |
| 8. | Net short-term capital gain (loss) | Schedule D, line 5 |
| 9a. | Net long-term capital gain (loss) | Schedule D, line 12 |
| 9b. | Collectibles (28%) gain (loss) | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| 9c. | Unrecaptured section 1250 gain | See the Partner's Instructions |
| 10. | Net section 1231 gain (loss) | See the Partner's Instructions |
| 11. | Other income (loss) | |

| | Code | | |
|---|---|---|---|
| | A | Other portfolio income (loss) | See the Partner's Instructions |
| | B | Involuntary conversions | See the Partner's Instructions |
| | C | Sec. 1256 contracts & straddles | Form 6781, line 1 |
| | D | Mining exploration costs recapture | See Pub. 535 |
| | E | Cancellation of debt | |
| | F | Section 743(b) positive adjustments | |
| | G | Section 965(a) inclusion | |
| | H | Income under subpart F (other than inclusions under sections 951A and 965) | See the Partner's Instructions |
| | I | Other income (loss) | |
| 12. | | Section 179 deduction | See the Partner's Instructions |
| 13. | | Other deductions | |
| | A | Cash contributions (60%) | |
| | B | Cash contributions (30%) | |
| | C | Noncash contributions (50%) | |
| | D | Noncash contributions (30%) | See the Partner's Instructions |
| | E | Capital gain property to a 50% organization (30%) | |
| | F | Capital gain property (20%) | |
| | G | Contributions (100%) | |
| | H | Investment interest expense | Form 4952, line 1 |
| | I | Deductions - royalty income | Schedule E, line 19 |
| | J | Section 59(e)(2) expenditures | See the Partner's Instructions |
| | K | Excess business interest expense | See the Partner's Instructions |
| | L | Deductions - portfolio (other) | Schedule A, line 16 |
| | M | Amounts paid for medical insurance | Schedule A, line 1, or Schedule 1 (Form 1040 or 1040-SR), line 16 |
| | N | Educational assistance benefits | See the Partner's Instructions |
| | O | Dependent care benefits | Form 2441, line 12 |
| | P | Preproductive period expenses | See the Partner's Instructions |
| | Q | Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| | R | Pensions and IRAs | See the Partner's Instructions |
| | S | Reforestation expense deduction | See the Partner's Instructions |
| | T | through U | Reserved for future use |
| | V | Section 743(b) negative adjustments | |
| | W | Other deductions | See the Partner's Instructions |
| | X | Section 965(c) deduction | |
| 14. | | Self-employment earnings (loss) | |

Note: If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.

| | | | |
|---|---|---|---|
| | A | Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| | B | Gross farming or fishing income | See the Partner's Instructions |
| | C | Gross non-farm income | See the Partner's Instructions |
| 15. | | Credits | |
| | A | Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
| | B | Low-income housing credit (other) from pre-2008 buildings | |
| | C | Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| | D | Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| | E | Qualified rehabilitation expenditures (rental real estate) | |
| | F | Other rental real estate credits | |
| | G | Other rental credits | |

| | Code | | Report on |
|---|---|---|---|
| | H | Undistributed capital gains credit | Schedule 3 (Form 1040 or 1040-SR), line 13, box a |
| | I | Biofuel producer credit | See the Partner's Instructions |
| | J | Work opportunity credit | |
| | K | Disabled access credit | |
| | L | Empowerment zone employment credit | |
| | M | Credit for increasing research activities | See the Partner's Instructions |
| | N | Credit for employer social security and Medicare taxes | |
| | O | Backup withholding | |
| | P | Other credits | |
| 16. | | Foreign transactions | |
| | A | Name of country or U.S. possession | |
| | B | Gross income from all sources | Form 1116, Part I |
| | C | Gross income sourced at partner level | |
| | | Foreign gross income sourced at partnership level | |
| | D | Reserved for future use | |
| | E | Foreign branch category | |
| | F | Passive category | Form 1116, Part I |
| | G | General category | |
| | H | Other | |
| | | Deductions allocated and apportioned at partner level | |
| | I | Interest expense | Form 1116, Part I |
| | J | Other | Form 1116, Part I |
| | | Deductions allocated and apportioned at partnership level to foreign source income | |
| | K | Reserved for future use | |
| | L | Foreign branch category | |
| | M | Passive category | Form 1116, Part I |
| | N | General category | |
| | O | Other | |
| | | Other information | |
| | P | Total foreign taxes paid | Form 1116, Part II |
| | Q | Total foreign taxes accrued | Form 1116, Part II |
| | R | Reduction in taxes available for credit | Form 1116, line 12 |
| | S | Foreign trading gross receipts | Form 8873 |
| | T | Extraterritorial income exclusion | Form 8873 |
| | U | through V | Reserved for future use |
| | W | Section 965 information | See the Partner's Instructions |
| | X | Other foreign transactions | |
| 17. | | Alternative minimum tax (AMT) items | |
| | A | Post-1986 depreciation adjustment | |
| | B | Adjusted gain or loss | See the Partner's |
| | C | Depletion (other than oil & gas) | Instructions and |
| | D | Oil, gas, & geothermal - gross income | the Instructions for |
| | E | Oil, gas, & geothermal - deductions | Form 6251 |
| | F | Other AMT items | |
| 18. | | Tax-exempt income and nondeductible expenses | |
| | A | Tax-exempt interest income | Form 1040 or 1040-SR, line 2a |
| | B | Other tax-exempt income | See the Partner's Instructions |
| | C | Nondeductible expenses | See the Partner's Instructions |
| 19. | | Distributions | |
| | A | Cash and marketable securities | |
| | B | Distribution subject to section 737 | See the Partner's Instructions |
| | C | Other property | |
| 20. | | Other information | |
| | A | Investment income | Form 4952, line 4a |
| | B | Investment expenses | Form 4952, line 5 |
| | C | Fuel tax credit information | Form 4136 |
| | D | Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| | E | Basis of energy property | |
| | F | through G | |
| | H | Recapture of investment credit | See Form 4255 |
| | I | Recapture of other credits | See the Partner's Instructions |
| | J | Look-back interest - completed long-term contracts | See Form 8697 |
| | K | Look-back interest - income forecast method | See Form 8866 |
| | L | Dispositions of property with section 179 deductions | |
| | M | Recapture of section 179 deduction | |
| | N | Interest expense for corporate partners | |
| | O | through Y | |
| | Z | Section 199A information | |
| | AA | Section 704(c) information | |
| | AB | Section 751 gain (loss) | See the Partner's Instructions |
| | AC | Section 1(h)(5) gain (loss) | |
| | AD | Deemed section 1250 unrecaptured gain | |
| | AE | Excess taxable income | |
| | AF | Excess business interest income | |
| | AG | Gross receipts for section 59A(e) | |
| | AH | Other information | |

911262 12-30-19

10340904 146892 629917       2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027214
JA2418

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

For:  HAYES IRREVOCABLE TRUST

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL |

|  | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -106,142. | -106,142. | -269,338. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 8,499. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -96. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 240. | | 287. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -6,060. | | -169. |
| Adjusted gain or loss | | | -52. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 8,499. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,504,800. | |
| - Unadjusted basis of assets | | 733,081. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

102

8

2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                                                                      ALECTO_00027215
**JA2419**

**8**  Case 23-10787-JKS  Doc 307-3  Filed 02/29/24  Page 38 of 72

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: ALECTO HEALTHCARE SERVICES LLC
46-0829723

For: HAYES IRREVOCABLE TRUST

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -269,338. | -192,624. | -192,624. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 3,109. | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 3,109. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 983,878. | | 1,210,910. |
| - Unadjusted basis of assets | 654,535. | | 166,258. |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20  1 - Single Family Residence  2 - Multi-Family Residence  3 - Vacation or Short-Term Rental  4 - Commercial  5 - Land  6 - Royalties  7 - Self-Rental  8 - Other

103

8

CONFIDENTIAL

ALECTO_00027216
JA2420

**8**   Case 23-10787-JKS   Doc 307-3   Filed 02/29/24   Page 39 of 72

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**                                    46-0829723

For: **HAYES IRREVOCABLE TRUST**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -1,873,227. | -1,881,158. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 3. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 3,836. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 3. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,829,392. | |
| - Unadjusted basis of assets | | 644,153. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

104                                                                                           8

CONFIDENTIAL

ALECTO_00027217
**JA2421**

651119

| Schedule K-1 (Form 1065) **2019** Department of the Treasury Internal Revenue Service | For calendar year 2019, or tax year | [X] Final K-1  [ ] Amended K-1    OMB No. 1545-0123 |
|---|---|---|

**Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

| beginning [ ] ending [ ] **Partner's Share of Income, Deductions, Credits, etc.**  ▶ **See separate instructions.** | |
|---|---|

| | | |
|---|---|---|
| **Part I   Information About the Partnership** | **1** Ordinary business income (loss) −2,454,944. | **15** Credits |
| **A** Partnership's employer identification number 46-0829723 | **2** Net rental real estate income (loss) | |
| **B** Partnership's name, address, city, state, and ZIP code | **3** Other net rental income (loss) | **16** Foreign transactions |
| ALECTO HEALTHCARE SERVICES LLC 16310 BAKE PARKWAY SUITE 200 IRVINE, CA  92618 | **4a** Guaranteed payments for services | |
| | **4b** Guaranteed payments for capital | |
| **C** IRS Center where partnership filed return ▶ E-FILE | **4c** Total guaranteed payments | |
| **D** [ ] Check if this is a publicly traded partnership (PTP) | **5** Interest income  11,612. | **17** Alternative min tax (AMT) items A −2,393. B* −51. |
| **Part II   Information About the Partner** | **6a** Ordinary dividends | |
| **E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.) | **6b** Qualified dividends | **18** Tax-exempt income and nondeductible expenses C* STMT |
| **F** Name, address, city, state, and ZIP code for partner entered in E. See instructions. AMAN DHUPER RANCHO CUCAMONGA, CA  91739 | **6c** Dividend equivalents | |
| | **7** Royalties | **19** Distributions |
| **G** [ ] General partner or LLC member-manager  [X] Limited partner or other LLC member | **8** Net short-term capital gain (loss) | **20** Other information A 11,612. |
| **H1** [X] Domestic partner  [ ] Foreign partner | **9a** Net long-term capital gain (loss) | Z * STMT |
| **H2** [ ] If the partner is a disregarded entity (DE), enter the partner's: TIN _____ Name _____ | **9b** Collectibles (28%) gain (loss) | AH * STMT |
| **I1** What type of entity is this partner?  INDIVIDUAL | **9c** Unrecaptured section 1250 gain | |
| **I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here [ ] | | |
| **J** Partner's share of profit, loss, and capital: | **10** Net section 1231 gain (loss) −96. | |
| Beginning / Ending Profit 5.0000000% / 0.0000000% Loss 5.0000000% / 0.0000000% Capital 5.0000000% / 0.0000000% | **11** Other income (loss) | |
| Check if decrease is due to sale or exchange of partnership interest [ ] | | |
| **K** Partner's share of liabilities: Beginning / Ending Nonrecourse $ 9,947,912. / $ 0. Qualified nonrecourse financing $ 880,539. / $ 0. Recourse $ 0. / $ 0. | **12** Section 179 deduction | |
| | **13** Other deductions A 1,234. K 9,359. | |
| [ ] Check this box if Item K includes liability amounts from lower tier partnerships. | | |
| **L**  Partner's Capital Account Analysis SEE STATEMENT | **14** Self-employment earnings (loss) A −2,454,946. | |
| Beginning capital account $ 482,280. | | |
| Capital contributed during the year $ 447,224. | **21** [ ] More than one activity for at-risk purposes* | |
| Current year net income (loss) $ −2,454,021. | **22** [ ] More than one activity for passive activity purposes* | |
| Other increase (decrease) (attach explanation) $ 2,435,604. | *See attached statement for additional information. | |
| Withdrawals & distributions $( 911,087.) | | |
| Ending capital account $ 0. | | |
| **M** Did the partner contribute property with a built-in gain or loss? [ ] Yes  [X] No  If "Yes," attach statement. See instructions. | | |
| **N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss) Beginning $ _____ Ending $ _____ | | |

For IRS Use Only

911261 12-30-19  LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**      www.irs.gov/Form1065      **Schedule K-1 (Form 1065) 2019**

9

CONFIDENTIAL

ALECTO_00027218
JA2422

ALECTO HEALTHCARE SERVICES LLC                                        46-0829723

========================================================================

SCHEDULE K-1                ALTERNATIVE MINIMUM TAX, ADJUSTED
                            GAIN OR LOSS, BOX 17, CODE B

_____

|                      |                             | SUBJECT TO SPECIAL |        |
| DESCRIPTION          | PARTNER FILING INSTRUCTIONS  | RATES              | AMOUNT |
|----------------------|------------------------------|--------------------|--------|
| ORDINARY GAIN (LOSS) | SEE FORM 6251 INSTRUCTIONS   |                    | -51.   |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B |             |                    | -51.   |

========================================================================

SCHEDULE K-1             NONDEDUCTIBLE EXPENSES, BOX 18, CODE C

_____

| DESCRIPTION                                    | PARTNER FILING INSTRUCTIONS   | AMOUNT |
|------------------------------------------------|-------------------------------|--------|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES      | NONDEDUCTIBLE PORTION         | 270.   |
|                                                |                               | 1,292. |
| OFFICER'S LIFE INSURANCE                        |                               |        |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH           | SEE IRS SCH. K-1 INSTRUCTIONS | 6,388. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C          |                               | 7,950. |

CONFIDENTIAL                                ALECTO_00027219
                                                       JA2423

ALECTO HEALTHCARE SERVICES LLC                                   46-0829723

| SCHEDULE K-1 | SECTION 199A INFORMATION, BOX 20, CODE Z |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|

TRADE OR BUSINESS -
X - SSTB

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -13,788. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -13,788. |
| W-2 WAGES | 166,945. |
| UNADJUSTED BASIS OF ASSETS | 673. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -106,135. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -106,135. |
| W-2 WAGES | 1,504,691. |
| UNADJUSTED BASIS OF ASSETS | 733,028. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -269,319. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -269,319. |
| W-2 WAGES | 983,807. |
| UNADJUSTED BASIS OF ASSETS | 654,488. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -192,610. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -192,610. |
| W-2 WAGES | 1,210,823. |
| UNADJUSTED BASIS OF ASSETS | 166,246. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -1,881,022. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -1,881,022. |
| W-2 WAGES | 1,829,260. |
| UNADJUSTED BASIS OF ASSETS | 644,106. |

CONFIDENTIAL                                          ALECTO_00027220
                                                          JA2424

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

═══════════════════════════════════════════════════════════════════════════

SCH K-1
───────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════

SCHEDULE K-1              OTHER INFORMATION, BOX 20, CODE AH
───────────────────────────────────────────────────────────────────────────

DESCRIPTION                    PARTNER FILING INSTRUCTIONS          AMOUNT
─────────────                  ───────────────────────────        ──────────

BEGINNING TAX CAPITAL          PLEASE CONSULT YOUR TAX ADVISOR     -1,588,886.
ENDING TAX CAPITAL             PLEASE CONSULT YOUR TAX ADVISOR     -3,603,693.

CONFIDENTIAL                                                ALECTO_00027221
                                                                   JA2425

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

---

SCHEDULE K-1            CURRENT YEAR NET INCOME (LOSS) AND
                       OTHER INCREASES(DECREASES)

---

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -2,454,944. | |
| INTEREST INCOME | 11,612. | |
| SECTION 1231 GAIN (LOSS) | -96. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -2,443,428. |
| CHARITABLE CONTRIBUTIONS | -1,234. | |
| OTHER DEDUCTIONS | -9,359. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -10,593. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -2,454,021. |

| | |
|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 96. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 80. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -386. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -166. |
| NONDEDUCTIBLE EXPENSES | -7,950. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 269,665. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 104,061. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 1,873,154. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 189,580. |
| INTEREST EXPENSE | -9,359. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 9,359. |
| SALARIES AND WAGES | 7,470. |
| TOTAL OTHER INCREASES OR DECREASES | 2,435,604. |

---

SCHEDULE K-1                WITHDRAWALS AND DISTRIBUTIONS

---

| DESCRIPTION | AMOUNT |
|---|---|
| TRANSFERRED CAPITAL | 911,087. |
| TOTAL TO SCHEDULE K-1, ITEM L, WITHDRAWALS AND DISTRIBUTIONS | 911,087. |

CONFIDENTIAL                                ALECTO_00027222
                                                          JA2426

ALECTO HEALTHCARE SERVICES LLC                                46-0829723

SCHEDULE K-1          ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS

GAAP

CONFIDENTIAL                                                    ALECTO_00027223
                                                              JA2427

Schedule K-1 (Form 1065) 2019                                                                                                    Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040 or 1040-SR.
For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

1. Ordinary business income (loss). Determine whether the income (loss) is passive or nonpassive and enter on your return as follows.

| | Report on |
|---|---|
| Passive loss | See the Partner's Instructions |
| Passive income | Schedule E, line 28, column (h) |
| Nonpassive loss | See the Partner's Instructions |
| Nonpassive income | Schedule E, line 28, column (k) |
| 2. Net rental real estate income (loss) | See the Partner's Instructions |
| 3. Other net rental income (loss) | |
| Net income | Schedule E, line 28, column (h) |
| Net loss | See the Partner's Instructions |
| 4a. Guaranteed payment Services | See the Partner's Instructions |
| 4b. Guaranteed payment Capital | See the Partner's Instructions) |
| 4c. Guaranteed payment Total | See the Partner's Instructions |
| 5. Interest income | Form 1040 or 1040-SR, line 2b |
| 6a. Ordinary dividends | Form 1040 or 1040-SR, line 3b |
| 6b. Qualified dividends | Form 1040 or 1040-SR, line 3a |
| 6c. Dividend equivalents | See the Partner's Instructions |
| 7. Royalties | Schedule E, line 4 |
| 8. Net short-term capital gain (loss) | Schedule D, line 5 |
| 9a. Net long-term capital gain (loss) | Schedule D, line 12 |
| 9b. Collectibles (28%) gain (loss) | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| 9c. Unrecaptured section 1250 gain | See the Partner's Instructions |
| 10. Net section 1231 gain (loss) | See the Partner's Instructions |
| 11. Other income (loss) | |

Code

| A | Other portfolio income (loss) | See the Partner's Instructions |
|---|---|---|
| B | Involuntary conversions | See the Partner's Instructions |
| C | Sec. 1256 contracts & straddles | Form 6781, line 1 |
| D | Mining exploration costs recapture | See Pub. 535 |
| E | Cancellation of debt | |
| F | Section 743(b) positive adjustments | |
| G | Section 965(a) inclusion | |
| H | Income under subpart F (other than inclusions under sections 951A and 965) | See the Partner's Instructions |
| I | Other income (loss) | |

12. Section 179 deduction                          See the Partner's Instructions
13. Other deductions

| A | Cash contributions (60%) | |
|---|---|---|
| B | Cash contributions (30%) | |
| C | Noncash contributions (50%) | |
| D | Noncash contributions (30%) | See the Partner's Instructions |
| E | Capital gain property to a 50% organization (30%) | |
| F | Capital gain property (20%) | |
| G | Contributions (100%) | |
| H | Investment interest expense | Form 4952, line 1 |
| I | Deductions - royalty income | Schedule E, line 19 |
| J | Section 59(e)(2) expenditures | See the Partner's Instructions |
| K | Excess business interest expense | See the Partner's Instructions |
| L | Deductions - portfolio (other) | Schedule A, line 16 |
| M | Amounts paid for medical insurance | Schedule A, line 1, or Schedule 1 (Form 1040 or 1040-SR), line 16 |
| N | Educational assistance benefits | See the Partner's Instructions |
| O | Dependent care benefits | Form 2441, line 12 |
| P | Preproductive period expenses | See the Partner's Instructions |
| Q | Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| R | Pensions and IRAs | See the Partner's Instructions |
| S | Reforestation expense deduction | See the Partner's Instructions |
| T | through U | Reserved for future use |
| V | Section 743(b) negative adjustments | |
| W | Other deductions | See the Partner's Instructions |
| X | Section 965(c) deduction | |

14. Self-employment earnings (loss)

Note: If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.

| A | Net earnings (loss) from self-employment | Schedule SE, Section A or B |
|---|---|---|
| B | Gross farming or fishing income | See the Partner's Instructions |
| C | Gross non-farm income | See the Partner's Instructions |

15. Credits

| A | Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
|---|---|---|
| B | Low-income housing credit (other) from pre-2008 buildings | |
| C | Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| D | Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| E | Qualified rehabilitation expenditures (rental real estate) | |
| F | Other rental real estate credits | |
| G | Other rental credits | |

| Code | | Report on |
|---|---|---|
| H | Undistributed capital gains credit | Schedule 3 (Form 1040 or 1040-SR), line 13, box a |
| I | Biofuel producer credit | See the Partner's Instructions |
| J | Work opportunity credit | |
| K | Disabled access credit | |
| L | Empowerment zone employment credit | |
| M | Credit for increasing research activities | See the Partner's Instructions |
| N | Credit for employer social security and Medicare taxes | |
| O | Backup withholding | |
| P | Other credits | |

16. Foreign transactions

| A | Name of country or U.S. possession | |
|---|---|---|
| B | Gross income from all sources | Form 1116, Part I |
| C | Gross income sourced at partner level | |

Foreign gross income sourced at partnership level

| D | Reserved for future use | |
|---|---|---|
| E | Foreign branch category | |
| F | Passive category | Form 1116, Part I |
| G | General category | |
| H | Other | |

Deductions allocated and apportioned at partner level

| I | Interest expense | Form 1116, Part I |
|---|---|---|
| J | Other | Form 1116, Part I |

Deductions allocated and apportioned at partnership level to foreign source income

| K | Reserved for future use | |
|---|---|---|
| L | Foreign branch category | |
| M | Passive category | Form 1116, Part I |
| N | General category | |
| O | Other | |

Other information

| P | Total foreign taxes paid | Form 1116, Part II |
|---|---|---|
| Q | Total foreign taxes accrued | Form 1116, Part II |
| R | Reduction in taxes available for credit | Form 1116, line 12 |
| S | Foreign trading gross receipts | Form 8873 |
| T | Extraterritorial income exclusion | Form 8873 |
| U | through V | Reserved for future use |
| W | Section 965 information | See the Partner's Instructions |
| X | Other foreign transactions | |

17. Alternative minimum tax (AMT) items

| A | Post-1986 depreciation adjustment | |
|---|---|---|
| B | Adjusted gain or loss | See the Partner's |
| C | Depletion (other than oil & gas) | Instructions and |
| D | Oil, gas, & geothermal - gross income | the Instructions for |
| E | Oil, gas, & geothermal - deductions | Form 6251 |
| F | Other AMT items | |

18. Tax-exempt income and nondeductible expenses

| A | Tax-exempt interest income | Form 1040 or 1040-SR, line 2a |
|---|---|---|
| B | Other tax-exempt income | See the Partner's Instructions |
| C | Nondeductible expenses | See the Partner's Instructions |

19. Distributions

| A | Cash and marketable securities | |
|---|---|---|
| B | Distribution subject to section 737 | See the Partner's Instructions |
| C | Other property | |

20. Other information

| A | Investment income | Form 4952, line 4a |
|---|---|---|
| B | Investment expenses | Form 4952, line 5 |
| C | Fuel tax credit information | Form 4136 |
| D | Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| E | Basis of energy property | |
| F | through G | |
| H | Recapture of investment credit | See Form 4255 |
| I | Recapture of other credits | See the Partner's Instructions |
| J | Look-back interest - completed long-term contracts | See Form 8697 |
| K | Look-back interest - income forecast method | See Form 8866 |
| L | Dispositions of property with section 179 deductions | |
| M | Recapture of section 179 deduction | |
| N | Interest expense for corporate partners | |
| O | through Y | |
| Z | Section 199A information | |
| AA | Section 704(c) information | |
| AB | Section 751 gain (loss) | See the Partner's Instructions |
| AC | Section 1(h)(5) gain (loss) | |
| AD | Deemed section 1250 unrecaptured gain | |
| AE | Excess taxable income | |
| AF | Excess business interest income | |
| AG | Gross receipts for section 59A(e) | |
| AH | Other information | |

911262 12-30-19

CONFIDENTIAL                                                                      ALECTO_00027224
JA2428

**9**   Case 23-10787-JKS   Doc 307-3   Filed 02/29/24   Page 47 of 72

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

| Name: ALECTO HEALTHCARE SERVICES LLC | | | | | | | | 46-0829723 |
|---|---|---|---|---|---|---|---|---|
| For: AMAN DHUPER | | | | | | | | |

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE | | |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE | | |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL | | |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -106,135. | -106,135. | -269,319. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 8,498. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -96. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 240. | | 287. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -106,135. | -106,135. | -269,319. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -6,060. | | -168. |
| Adjusted gain or loss | | | -51. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 8,498. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,504,691. | |
| - Unadjusted basis of assets | | 733,028. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

112

9

CONFIDENTIAL

ALECTO_00027225
**JA2429**

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**

For: **AMAN DHUPER**

46-0829723

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -269,319. | -192,610. | -192,610. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 3,108. | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -269,319. | -192,610. | -192,610. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 3,108. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 983,807. | | 1,210,823. |
| - Unadjusted basis of assets | 654,488. | | 166,246. |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

113

9

CONFIDENTIAL

**ALECTO_00027226**
**JA2430**

**9**   Case 23-10787-JKS   Doc 307-3   Filed 02/29/24   Page 49 of 72

### Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**   46-0829723

For: **AMAN DHUPER**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -1,873,092. | -1,881,022. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 2. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -1,873,094. | -1,881,022. | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 3,835. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 2. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,829,260. | |
| - Unadjusted basis of assets | | 644,106. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

114

9

CONFIDENTIAL

ALECTO_00027227

**JA2431**

| Form **8308** (Rev. September 2018) Department of the Treasury Internal Revenue Service | Report of a Sale or Exchange of Certain Partnership Interests ▶ Go to www.irs.gov/Form8308 for the latest information. | | OMB No. 1545-0123 |
|---|---|---|---|

| Name of partnership | Phone number | Employer identification number |
|---|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 323-932-5963 | 46-0829723 |

Number, street, and room or suite no. If a P.O. box, see instructions.

16310 BAKE PARKWAY SUITE 200

City or town, state or province, country, and ZIP or foreign postal code

IRVINE, CA 92618

**Part I**   **Transferor Information** (Beneficial owner of the partnership interest immediately before the transfer of that interest)

| Name | Identifying number |
|---|---|
| AMAN DHUPER | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

RANCHO CUCAMONGA, CA   91739

**Notice to Transferors:** *The information on this form has been supplied to the Internal Revenue Service. The transferor in a section 751(a) exchange is required to treat a portion of the gain realized from the exchange as ordinary income. For more details, see Pub. 541, Partnerships.*

**Statement by Transferor:** *The transferor in a section 751(a) exchange is required under Regulations section 1.751-1(a)(3) to attach a statement relating to the sale or exchange to his or her return.*

**Part II**   **Transferee Information** (Beneficial owner of the partnership interest immediately after the transfer of that interest)

| Name | Identifying number |
|---|---|
| LAXMAN REDDY | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

CALABASAS, CA   91302

**Part III**   Date of Sale or Exchange of Partnership Interest ▶   12/31/19

| Sign here only if you are filing this form by itself and not with Form 1065 | Under penalties of perjury, I declare that I have examined this return, including accompanying attachments, and to the best of my knowledge and belief, it is true, correct, and complete. |
|---|---|
| | ▶ _____   ▶ _____ Signature of partnership representative or partner or limited liability company member   Date |

LHA
919971
04-01-19

Form **8308** (Rev. 9-2018)

115   9

10340904 146892 629917   2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027228
**JA2432**

## 2019 TAX RETURN FILING INSTRUCTIONS
CALIFORNIA FORM 568

### FOR THE YEAR ENDING
December 31, 2019

**Prepared For:**

Alecto Healthcare Services LLC
16310 Bake Parkway Suite 200
Irvine, CA 92618

**Prepared By:**

Moss Adams LLP
2040 Main Street Suite 900
Irvine, CA 92614

**To Be Signed and Dated By:**

A member of the LLC

**Amount of Tax:**

| | | |
|---|---|---|
| Total tax | $ | 800 |
| Less: payments and credits | $ | 25,180 |
| Plus other amount | $ | 0 |
| Plus interest and penalties | $ | 0 |
| Overpayment | $ | 24,380 |

**Overpayment:**

| | | | |
|---|---|---|---|
| Credit to your estimated tax | $ | 0 | |
| Other amount | $ | 800 | Credit to tax on Form 3522 |
| Refunded to you | $ | 23,580 | |

**Make Check Payable To:**

Not applicable

**Mail Tax Return To:**

This return has qualified for electronic filing. After you have reviewed your return for
completeness and accuracy, please sign, date and return Form 8453-LLC to our office.
We will then transmit your return electronically to the FTB.

**Forms to be Distributed to Partners:**

Enclosed are copies of Schedule K-1 to be distributed to the members.

**Return Must be Mailed On or Before:**

Return Form 8453-LLC to us by October 15, 2020.

**Special Instructions:**

Do not mail the paper copy of the return to the FTB.

Payment of tax must be made electronically via the Franchise Tax Board website at:

WWW.FTB.CA.GOV/PAY

| TAXABLE YEAR 2019 | **Limited Liability Company**<br>**Return of Income** | ■ | 929851 12-30-19<br>CALIFORNIA FORM<br>**568** |

```
201223510349  ALEC  46-0829723                   19
TYB  01-01-2019  TYE  12-31-2019
ALECTO HEALTHCARE SERVICES LLC

16310 BAKE PARKWAY SUITE 200
IRVINE          CA  92618

ACCTMETHOD 2  08-13-2012  ASSETS       26796334.
INITIAL 0  FINAL 0  AMENDED 0  PROTECTIVE 0
```

I  (1) During this taxable year, did another person or legal entity acquire control or majority ownership (more than a 50% interest) of this LLC or any legal entity in which the LLC holds a controlling or majority interest that owned California real property (i.e., land, buildings), leased such property for a term of 35 years or more, or leased such property from a government agency for any term?  ..... ● ☐ Yes  ☒ No

(2) During this taxable year, did this LLC acquire control or majority ownership (more than a 50% interest) in another legal entity that owned California real property (i.e., land, buildings), leased such property for a term of 35 years or more, or leased such property from a government agency for any term?  ..... ● ☐ Yes  ☒ No

(3) During this taxable year, has more than 50% of the LLC's ownership interests cumulatively transferred in one or more transactions after an interest in California real property (i.e., land, buildings) was transferred to it that was excluded from property tax reassessment under Revenue and Taxation Code Section 62(a)(2) and it was not reported on a previous year's tax return?  ..... ● ☐ Yes  ☒ No

**(Yes requires filing of statement, penalties may apply - see instructions.)**

Complete Schedule IW, LLC Income Worksheet (on Side 7) first to determine line 1.

| | | | | Whole dollars only |
|---|---|---|---|---|
| | 1 Total income from Schedule IW, Limited Liability Company Income Worksheet. See instructions  ..... ● | 1 | 86,111 | 00 |
| | 2 Limited Liability Company fee. See instructions  ..... ● | 2 | 0 | 00 |
| | 3 2019 annual Limited Liability Company tax. See instructions  ..... ● | 3 | 800 | 00 |
| | 4 Nonconsenting nonresident members' tax liability from Schedule T (Side 4)  ..... ● | 4 | | 00 |
| | 5 Partnership level tax. See instructions  ..... ● | 5 | | 00 |
| | 6 **Total tax and fee.** Add line 2, line 3, line 4, and line 5  ..... ● | 6 | 800 | 00 |
| | 7 Amount paid with form FTB 3537 and 2019 form FTB 3522 and form FTB 3536  **STATEMENT 1** ● | 7 | 23,480 | 00 |
| | 8 Overpayment from prior year allowed as a credit  ..... ● | 8 | 1,700 | 00 |
| | 9 Withholding (Form 592-B and/or 593)  ..... ● | 9 | | 00 |
| | 10 **Total payments.** Add line 7, line 8, and line 9  ..... ● | 10 | 25,180 | 00 |
| | 11 **Use tax. This is not a total line.** See instructions  ..... ● | 11 | | 00 |
| | 12 Payments balance. If line 10 is more than line 11, subtract line 11 from line 10  ..... ● | 12 | 25,180 | 00 |
| | 13 **Use tax balance.** If line 11 is more than line 10, subtract line 10 from line 11  ..... ● | 13 | | 00 |

*Enclose, but do not staple, any payment.*

■                     022    3671194                     Form 568 2019 **Side 1**    ■

**CONFIDENTIAL**

929861 12-30-19

|  | | Whole dollars only |
|---|---|---|
| 14 **Tax and fee due.** If line 6 is more than line 12, subtract line 12 from line 6 ● | 14 | 00 |
| 15 **Overpayment.** If line 12 is more than line 6, subtract line 6 from line 12 ● | 15 | 24,380 00 |
| 16 Amount of line 15 to be credited to 2020 tax or fee ● | 16 | 800 00 |
| 17 **Refund.** If the total of line 16 is less than line 15, subtract the total from line 15 ● **17** | | 23,580 00 |
| 18 Penalties and interest. See instructions ● | 18 | 0 00 |
| 19 **Total amount due.** Add line 13, line 14, line 16, and line 18, then subtract line 15 from the result ● **19** | | .00 |

J   Principal business activity code (**Do not** leave blank) ● **622000**

Business activity **HOLDING COMPANY**          Product or service **HOLDING COMPANY**

K   Enter the maximum number of members in the LLC at any time during the year. For multiple member LLCs, attach a
California Schedule K-1 (568) for each of these members ● **8**

L   Is this LLC an investment partnership? See General Information O ● ☐ Yes  ☒ No

M  (1) Is this LLC apportioning or allocating income to California using Schedule R? ● ☒ Yes  ☐ No
    (2) If "No," was this LLC registered in California without earning any income sourced in this state during the taxable
        year? ◉ ☐ Yes  ☐ No

N   Was there a distribution of property or a transfer (for example, by sale or death) of an LLC interest during the taxable
    year? ● ☒ Yes  ☐ No

P   (1) Does the LLC have any foreign (non-U.S.) nonresident members? ● ☐ Yes  ☒ No

    (2) Does the LLC have any domestic (non-foreign) nonresident members? ● ☒ Yes  ☐ No

    (3) Were Form 592, Form 592-A, Form 592-B, and Form 592-F filed for these members? ● ☐ Yes  ☒ No

Q   Are any members in this LLC also LLCs or partnerships? ● ☐ Yes  ☒ No

R   Is this LLC under audit by the IRS or has it been audited in a prior year? ● ☐ Yes  ☒ No

S   Is this LLC a member or partner in another multiple member LLC or partnership? ● ☒ Yes  ☐ No
    If "Yes," complete Schedule EO, Part I.

T   Is this LLC a publicly traded partnership as defined in IRC Section 469(k)(2)? ☐ Yes  ☒ No

U  (1) Is this LLC a business entity disregarded for tax purposes? ● ☐ Yes  ☒ No
    (2) If "Yes," see instructions and complete Side 1, Side 2, Side 3, Schedule B, Side 5, and Side 7, if applicable. Are
        there credits or credit carryovers attributable to the disregarded entity? ● ☐ Yes  ☐ No
    (3) If "Yes" to U(1), does the disregarded entity have total income derived from or attributable to California that is less
        than the LLC's total income from all sources? ☐ Yes  ☐ No

V   Has the LLC included a Reportable Transaction, or Listed Transaction within this return?
    (See instructions for definitions). If "Yes," complete and attach federal Form 8886 for each transaction ● ☐ Yes  ☒ No

W   Did this LLC file the Federal Schedule M-3 (federal Form 1065)? ● ☒ Yes  ☐ No

X   Is this LLC a direct owner of an entity that filed a federal Schedule M-3? ● ☐ Yes  ☒ No

Y   Does the LLC have a beneficial interest in a trust or is it a grantor of a Trust? ● ☐ Yes  ☒ No
    If "Yes," attach schedule of trusts and federal identification numbers.
Z   Does this LLC own an interest in a business entity disregarded for tax purposes? ◉ ☒ Yes  ☐ No
    If "Yes," complete Schedule EO, Part II.

    *(continued on Side 3)*

Side 2 Form 568 2019          022          3672194

CONFIDENTIAL

ALECTO_00027232
**JA2436**

929871 12-30-19

*(continued from Side 2)*

AA  Is any member of the LLC related (as defined in IRC Section 267(c)(4)) to any other member of the LLC?   ●  ☐ Yes  ☒ No
BB  Is any member of the LLC a trust for the benefit of any person related (as defined in IRC Section 267(c)(4))
to any other member?   ●  ☐ Yes  ☒ No

CC  (1) Is the LLC deferring any income from the disposition of assets? (see instructions)   ●  ☐ Yes  ☒ No

(2) If "Yes," enter the year of asset disposition   ●
DD  Is the LLC reporting previously deferred Income from:
(see instructions)   ● ☐ Installment Sale   ● ☐ IRC §1031   ● ☐ IRC §1033   ● ☐ Other

EE  "Doing business as" name. See instructions:   ●

FF  (1) Has this LLC operated as another entity type such as a Corporation, S Corporation, General Partnership,
Limited Partnership, or Sole Proprietorship in the previous five (5) years?   ●  ☐ Yes  ☒ No
(2) If "Yes", provide prior FEIN(s) if different, business name(s), and entity type(s) for prior returns
filed with the FTB and/or IRS (see instructions):

GG  (1) Has this LLC previously operated outside California?   ●  ☐ Yes  ☒ No

(2) Is this the first year of doing business in California?   ●  ☐ Yes  ☒ No

| Single Member LLC Information and Consent - Complete only if the LLC is disregarded. | ● Federal TIN/ SSN |
|---|---|
| Sole Owner's name (as shown on owner's return)  ◉ | FEIN/CA Corp no./CA SOS File no. |
| Street Address, City, State, and ZIP Code | |

● What type of entity is the ultimate owner of this SMLLC? Check only one box:
☐ (1) Individual       ☐ (2) C Corporation        ☐ (3) Pass-Through (S corporation, partnership,
☐ (4) Estate/Trust     ☐ (5) Exempt Organization      LLC classified as a partnership)

Member's Consent Statement: I consent to the jurisdiction of the State of California to tax my LLC income and
agree to file returns and pay tax as may be required by the Franchise Tax Board.

Signature ▶ _____  Date _____

To learn about your privacy rights, how we may use your information, and the consequences for not providing the requested information, go to ftb.ca.gov/forms and search for 1131.
To request this notice by mail, call 800.852.5711.

**Sign Here**
Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of authorized member or manager ▶ _____  Date _____   Telephone ●
Authorized member or manager's email address (optional) MSARRAO@SARRAOLAW.COM

| Paid Preparer's Use Only | Paid preparer's signature ▶ DUSTIN MARCINIAK | Date 09/04/20 | Check if self-employed ☐ | PTIN ● P00309414 |
|---|---|---|---|---|
| | Firm's name (or yours, if self-employed) and address ▶ MOSS ADAMS LLP  2040 MAIN STREET  SUITE 900  IRVINE, CA 92614 | | | Firm's FEIN ● 91-0189318  Telephone ●949-221-4000 |

May the FTB discuss this return with the preparer shown above (see instructions)?   ● ☒ Yes  ☐ No

022   3673194   Form 568 2019 **Side 3**

CONFIDENTIAL

ALECTO_00027233
JA2437

929881 12-30-19

## Schedule A  Cost of Goods Sold

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | 00 |
| 2 | Purchases less cost of items withdrawn for personal use | 2 | 00 |
| 3 | Cost of labor | 3 | 00 |
| 4 | Additional IRC Section 263A costs. Attach schedule | 4 | 00 |
| 5 | Other costs. Attach schedule | 5 | 00 |
| 6 | **Total.** Add line 1 through line 5 | 6 | 00 |
| 7 | Inventory at end of year | 7 | 00 |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on Schedule B, line 2 | 8 | 00 |

9  a Check all methods used for valuing closing inventory:

(1) ☐ Cost  (2) ☐ Lower of cost or market as described in Treas. Reg. Section 1.471-4  (3) ☐ Write down of 'subnormal' goods as described in Treas. Reg. Section 1.471-2(c)  (4) ☐ Other. Specify method used and attach explanation

b Check this box if the LIFO inventory method was adopted this taxable year for any goods. If checked, attach federal Form 970 ....... ☐

c Do the rules of IRC Section 263A (with respect to property produced or acquired for resale) apply to the LLC? .......... ☐ Yes ☐ No

d Was there any change (other than for IRC Section 263A purposes) in determining quantities, cost, or valuations between opening and closing inventory? If "Yes," attach explanation ..... ☐ Yes ☐ No

## Schedule B  Income and Deductions

**Caution:** Include **only** trade or business income and expenses on line 1a through line 22 below. See the instructions for more information.

| | | | |
|---|---|---|---|
| 1 | a Gross receipts or sales $ __4,284,619__ b Less returns and allowances $ _____ c Balance ● | 1c | 4,284,619 00 |
| 2 | Cost of goods sold (Schedule A, line 8) ......... ◉ | 2 | 00 |
| 3 | GROSS PROFIT. Subtract line 2 from line 1c ......... ● | 3 | 4,284,619 00 |
| 4 | Total ordinary income from other LLCs, partnerships, and fiduciaries. Attach schedule ......... ● | 4 | 00 |
| 5 | Total ordinary loss from other LLCs, partnerships, and fiduciaries. Attach schedule    STMT 5  ● | 5 | -52,484,903 00 |
| 6 | Total farm profit. Attach federal Schedule F (Form 1040 or 1040-SR) ......... ● | 6 | 00 |
| 7 | Total farm loss. Attach federal Schedule F (Form 1040 or 1040-SR) ......... ● | 7 | 00 |
| 8 | Total gains included on Schedule D-1, Part II, line 17 (**gain only**) ......... ● | 8 | 00 |
| 9 | Total losses included on Schedule D-1, Part II, line 17 (**loss only**) ......... ● | 9 | 00 |
| 10 | Other income. Attach schedule    SEE STATEMENT 2  ● | 10 | 20,980 00 |
| 11 | Other loss. Attach schedule ......... ● | 11 | 00 |
| 12 | **Total income (loss).** Combine line 3 through line 11 ......... ● | 12 | -48,179,304 00 |
| 13 | Salaries and wages (other than to members) ......... | 13 | 3,338,982 00 |
| 14 | Guaranteed payments to members ......... ◉ | 14 | 00 |
| 15 | Bad debts ......... ● | 15 | 00 |
| 16 | Deductible interest expense not claimed elsewhere on return ......... ◉ | 16 | 187,281 00 |
| 17 | a Depreciation and amortization. Att form FTB 3885L $ __7,060__ b Less depreciation reported on Sch A and elsewhere on return $ _____ c Balance ● | 17c | 7,060 00 |
| 18 | Depletion. Do not deduct oil and gas depletion ......... | 18 | 00 |
| 19 | Retirement plans, etc. ......... | 19 | 00 |
| 20 | Employee benefit programs ......... | 20 | 259,280 00 |
| 21 | Other deductions. Attach schedule    SEE STATEMENT 4  ● | 21 | 972,334 00 |
| 22 | **Total deductions.** Add line 13 through line 21 ......... ● | 22 | 4,764,937 00 |
| 23 | Ordinary income (loss) from trade or business activities. Subtract line 22 from line 12 ......... ● | 23 | -52,944,241 00 |

_Income_ (label for lines 1–12) · _Deductions_ (label for lines 13–23)

## Schedule T  Nonconsenting Nonresident Members' Tax Liability. Attach additional sheets if necessary.

| (a) Member's name | (b) SSN, ITIN, or FEIN | (c) Distributive share of income | (d) Tax rate | (e) Member's total tax due (see instructions) | (f) Amount withheld by this LLC on this member - reported on Form 592-B | (g) Member's net tax due |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Total the amount of tax due. Enter the total here and on Side 1, line 4. If less than zero enter -0- ..................................... _____ 00

**Side 4** Form 568 2019        022        3674194

929882 12-30-19

## Schedule K    Members' Shares of Income, Deductions, Credits, etc.

| (a) Distributive share items | | (b) Amounts from federal K (1065) | (c) California adjustments | (d) Total amounts using California law |
|---|---|---|---|---|
| 1 Ordinary income (loss) from trade or business activities | 1 | •-49,100,099 | -3,844,142 • | -52,944,241 |
| 2 Net income (loss) from rental real estate activities. Attach federal Form 8825 | 2 | | • | |
| 3 a Gross income (loss) from other rental activities | 3a | | • | |
| b Less expenses. Attach schedule | 3b | | | |
| C Net income (loss) from other rental activities. Subtract line 3b from line 3a | 3c | | | • |
| 4 Guaranteed payments to members | 4 | | | • |
| 5 Interest income          SEE STATEMENT 6 | 5 | 232,271 | | • 232,271 |
| 6 Dividends | 6 | | | • |
| 7 Royalties | 7 | | | • |
| 8 Net short-term capital gain (loss). Attach Schedule D (568) | 8 | | | • |
| 9 Net long-term capital gain (loss). Attach Schedule D (568) | 9 | | | • |
| 10 a Total gain under IRC Section 1231 (other than due to casualty or theft) | 10a | | | • |
| b Total loss under IRC Section 1231 (other than due to casualty or theft) | 10b | -1,918 | | • -1,918 |
| 11 a Other portfolio income (loss). Attach schedule | 11a | | | • |
| b Total other income. Attach schedule | 11b | | | • |
| c Total other loss. Attach schedule | 11c | | | |
| 12 Expense deduction for recovery property (IRC Section 179). Attach schedule | 12 | | | |
| 13 a Charitable contributions. Attach schedule    STMT 8 | 13a | 24,690 | | 24,690 |
| b Investment interest expense | 13b | | | • |
| c 1 Total expenditures to which IRC Section 59(e) election may apply | 13c1 | | | |
| 2 Type of expenditures | 13c2 | | | |
| d Deductions related to portfolio income | 13d | | | |
| e Other deductions. Attach schedule | 13e | 187,193 | -187,193 • | |
| 15 a Withholding on LLC allocated to all members | 15a | | | |
| b Low-income housing credit | 15b | | | |
| c Credits other than the credit shown on line 15b related to rental real estate activities. Attach schedule | 15c | | | |
| d Credits related to other rental activities. Attach schedule | 15d | | | |
| e Nonconsenting nonresident members' tax paid by LLC | 15e | | | |
| f Other credits. Attach schedule | 15f | | | • |
| 17 a Depreciation adjustment on property placed in service after 1986 | 17a | -47,855 | -28,461 | -76,316 |
| b Adjusted gain or loss    SEE STATEMENT 11 | 17b | -1,030 | | -1,030 |
| c Depletion (other than oil and gas) | 17c | | | |
| d Gross income from oil, gas, and geothermal properties | 17d | | | |
| e Deductions allocable to oil, gas, and geothermal properties | 17e | | | |
| f Other alternative minimum tax items. Attach schedule | 17f | | | |
| 18 a Tax-exempt interest income | 18a | | | |
| b Other tax-exempt income | 18b | | | • |
| c Nondeductible expenses    SEE STATEMENT 9 | 18c | 158,989 | 6,240 | 165,229 |
| 19 a Distributions of money (cash and marketable securities) | 19a | | • | |
| b Distribution of property other than money | 19b | | • | |
| 20 a Investment income | 20a | 232,271 | | 232,271 |
| b Investment expenses | 20b | | | |
| c Other information. See instructions    STMT 10 | 20c | | | |
| 21 a Total distributive income/payment items. Combine lines 1, 2, and 3c through 11c. From the result, subtract the sum of lines 12 through 13e. | 21a | -49,081,629 | -3,656,949 | •-52,738,578 |

Income (Loss)
Deductions
Credits
Alternative Minimum Tax (AMT) Items
Other Information

### Analysis

| b Analysis of members: | (a) Corporate | (b) Individual | | (c) Partnership | (d) Exempt Organization | (e) Nominee/Other | (f) LLC |
|---|---|---|---|---|---|---|---|
| | | i. Active | ii. Passive | | | | |
| Members | | -47,464,663 | -2636865 | | | -2637050 | |

022    3675194    Form 568 2019 **Side 5**

CONFIDENTIAL

ALECTO_00027235
JA2439

929883 12-30-19

**Schedule L** Balance Sheets. See the instructions for Schedule L, before completing Schedules L, M-1, and M-2.

| Assets | Beginning of taxable year | | End of taxable year | |
|---|---|---|---|---|
| | (a) | (b) | (c) | (d) |
| 1 Cash | | 107,203 | | 356,458 |
| 2 a Trade notes and accounts receivable | 1,364,490 | | 1,296,349 | |
| b Less allowance for bad debts | ( 1,000,000) | 364,490 | ( 1,000,000) | 296,349 |
| 3 Inventories | | | | ● |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets. Attach schedule | STATEMENT 15 | 548,440 | | ● 652,960 |
| 7 Mortgage and real estate loans | | | | |
| 8 Other investments. Attach schedule | STATEMENT 16 | 15,670,881 | | ● 25,489,819 |
| 9 a Buildings and other depreciable assets | 13,467 | | 13,467 | |
| b Less accumulated depreciation | ( 8,230)● | 5,237 | ( 12,719)● | 748 |
| 10 a Depletable assets | | | | |
| b Less accumulated depletion | ( ) | | ( ) | |
| 11 Land (net of any amortization) | | ● | | ● |
| 12 a Intangible assets (amortizable only) | 12,433 | | | |
| b Less accumulated amortization | ( ) | 12,433 | ( ) | |
| 13 Other assets. Attach schedule | | | | ● |
| 14 Total assets | | 16,708,684 | | 26,796,334 |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | 1,679,150 | | ● 2,139,683 |
| 16 Mortgages, notes, bonds payable in less than 1 year | | | | ● |
| 17 Other current liabilities. Attach schedule | STATEMENT 17 | 894,891 | | 1,235,770 |
| 18 All nonrecourse loans | | ● | | ● |
| 19 Mortgages, notes, bonds payable in 1 year or more | | ● 4,039,464 | | ● 4,749,523 |
| 20 Other liabilities. Attach schedule | | | | ● |
| 21 Members' capital accounts | | ● 10,095,179 | | ● 18,671,358 |
| 22 Total liabilities and capital | | 16,708,684 | | 26,796,334 |

**Schedule M-1** Reconciliation of Income (Loss) per Books With Income (Loss) per Return. Use total amount under California law. See instructions.

| | | | | |
|---|---|---|---|---|
| 1 Net income (loss) per books | -368,299 | 6 Income recorded on books this year not included on Schedule K, line 1 through line 11c. Itemize: | | |
| 2 Income included on Schedule K, line 1 through line 11c not recorded on books this year. Itemize ● | | a Tax-exempt interest $ | | |
| | | b Other STMT 13 $ 48730438 | | |
| 3 Guaranteed payments (other than health insurance) | | c Total. Add line 6a and line 6b ● | | 48,730,438 |
| 4 Expenses recorded on books this year not included on Schedule K, line 1 through line 13e. Itemize: | | 7 Deductions included on Schedule K, line 1 through line 13e not charged against book income this year. Itemize: | | |
| a Depreciation $ 2,133 | | a Depreciation $ | | |
| b Travel and entertainment $ 5,403 | | b Other STMT 14 $ 4,002,125 | | |
| c Annual LLC tax $ | | c Total. Add line 7a and line 7b ● | | 4,002,125 |
| d Other STMT 12 $ 354,748 | | 8 Total. Add line 6c and line 7c | | 52,732,563 |
| e Total. Add line 4a through line 4d ● | 362,284 | 9 Income (loss) (Schedule K, line 21a.) Subtract line 8 from line 5 | | -52,738,578 |
| 5 Total of line 1 through line 4e | -6,015 | | | |

**Schedule M-2** Analysis of Members' Capital Accounts. Use California amounts.

| | | | | |
|---|---|---|---|---|
| 1 Balance at beginning of year | 10,095,179 | 5 Total of line 1 through line 4 | | 20,910,009 |
| 2 Capital contributed during year | | 6 Distributions: a Cash ● | | 2,238,651 |
| a Cash ● | 11,183,129 | b Property ● | | |
| b Property ● | | 7 Other decreases. Itemize ● | | |
| 3 Net income (loss) per books | -368,299 | 8 Total of line 6 and line 7 | | 2,238,651 |
| 4 Other increases. Itemize ● | | 9 Balance at end of year. Subtract line 8 from line 5 | | 18,671,358 |

**Schedule O** Amounts from Liquidation used to Capitalize a Limited Liability Company. (Complete only if initial return box is checked on Side 1, Question H.)

Name of entity liquidated (if more than one, attach a schedule)

Type of entity: ☐ (1) C Corporation ☐ (2) S Corporation ☐ (3) Partnership ☐ (4) Limited Partnership ☐ (5) Sole Proprietor ☐ (6) Farmer

Entity identification number(s): FEIN ___ SSN or ITIN ___ CA Corp. No. ___ CA SOS File No. ___

Amount of liquidation gains recognized to capitalize the LLC ● ___

Side 6 Form 568 2019   | 022 |   3676194

CONFIDENTIAL

929884 12-30-19

**Schedule IW**  Limited Liability Company (LLC) Income Worksheet

Enter your California income amounts on the worksheet. All amounts entered must be assigned for California law differences. **Use only amounts that are from sources derived from or attributable to California when completing lines 1-17 of this worksheet.** If your business is both within and outside of California, see Schedule IW instructions to assign the correct amounts to California. If the LLC is wholly within California, the total income amount is assigned to California and is entered beginning with line 1a. If the single member LLC (SMLLC) does not meet the 3 million criteria for filing Schedule B (568) and Schedule K (568), the SMLLC is still required to complete Schedule IW. Disregarded entities that do not meet the filing requirements to complete Schedule B or Schedule K should prepare Schedule IW by entering the California amounts attributable to the disregarded entity from the member's federal Schedule B, C, D, E, F (Form 1040 or 1040-SR), or additional schedules associated with other activities. **Do not enter amounts on this worksheet that have already been reported by another LLC to determine its fee.**
See instructions on page 14 of the Form 568 Booklet for more information on how to complete Schedule IW.

| | | | |
|---|---|---|---|
| 1 | **a** Total California income from Form 568, Schedule B, line 3. See instructions | **1a** 80,923 | |
| | **b** Enter the California cost of goods sold from Form 568, Schedule B, line 2 and from federal Schedule F (Form 1040 or 1040-SR) (plus California adjustments) associated with the receipts assigned to California on lines 1a and 4 | **1b** | |
| 2 | **a** If the answer to Question U(1) on Form 568 Side 2, is "Yes", include the gross income of this disregarded entity that is not included in lines 1 and 8 through 16 | **2a** | |
| | **b** Enter the cost of goods sold of disregarded entities associated with the receipts assigned to California on line 2a | **2b** | |
| 3 | **a** LLC's distributive share of ordinary income from pass-through entities | **3a** | |
| | **b** Enter the LLC's distributive share of cost of goods sold from other pass-through entities associated with the receipt assigned to California on line 3a (see Schedule K-1s (565), Table 3, line 1a) | **3b** | |
| | **c** Enter the LLC's distributive share of deductions from other pass-through entities associated with the receipt assigned to California on line 3a (see Schedule K-1s (565), Table 3, line 1b) | **3c** | |
| 4 | Add gross farm income from federal Schedule F (Form 1040 or 1040-SR). Use California amounts | **4** | |
| 5 | Enter the total of other income (not loss) from Form 568, Schedule B, line 10 | **5** 5,100 | |
| 6 | Enter the total gains (not losses) from Form 568, Schedule B, line 8 | **6** | |
| 7 | **Add line 1a through line 6** | | **7** 86,023 |
| 8 | California rental real estate | | |
| | **a** Enter the total gross rents from federal Form 8825, line 18a | **8a** | |
| | **b** Enter the total gross rents from all Schedule K-1s (565), Table 3, line 2 | **8b** | |
| | **c** Add line 8a and line 8b | | **8c** |
| 9 | Other California rentals. | | |
| | **a** Enter the amount from Schedule K (568), line 3a | **9a** | |
| | **b** Enter the amount from all Schedule K-1s (565), Table 3, line 3 | **9b** | |
| | **c** Add lines 9a and 9b | | **9c** |
| 10 | **California interest.** Enter the amount from Form 568, Schedule K, line 5 | | **10** 88 |
| 11 | **California dividends.** Enter the amount from Form 568, Schedule K, line 6 | | **11** |
| 12 | **California royalties.** Enter the amount from Form 568, Schedule K, line 7 | | **12** |
| 13 | **California capital gains.** Enter the capital gains (not losses) included in the amounts from Form 568, Sch. K, lines 8 and 9 | | **13** |
| 14 | **California 1231 gains.** Enter the amount of total gains (not losses) from Form 568, Schedule K, line 10a | | **14** |
| 15 | **Other California portfolio income (not loss).** Enter the amount from Form 568, Schedule K, line 11a | | **15** |
| 16 | **Other California income (not loss) not included in line 5.** Enter the amount from Form 568, Schedule K, line 11b | | **16** |
| 17 | **Total California income.** Add lines 7, 8c, 9c, 10, 11, 12, 13, 14, 15, and 16. Line 17 may not be a negative number. Enter here and on Form 568, Side 1, line 1. If less than zero enter -0- | | **17** 86,111 |

022   3677194

Form 568 2019 **Side 7**

**CONFIDENTIAL**

ALECTO_00027237
**JA2441**

ALECTO HEALTHCARE SERVICES LLC                                       46-0829723

| CA 568 | AMOUNT PAID WITH FORMS 3537, 3522, 3536 | STATEMENT 1 |
|--------|------------------------------------------|-------------|

| DESCRIPTION | AMOUNT |
|-------------|--------|
| AMOUNT PAID WITH FORM 3537 | 23,480. |
| AMOUNT PAID WITH FORM 3522 | 0. |
| AMOUNT PAID WITH FORM 3536 | 0. |
| TOTAL TO FORM 568, LINE 7 | 23,480. |

| CA | OTHER INCOME | STATEMENT 2 |
|----|--------------|-------------|

| DESCRIPTION | AMOUNT |
|-------------|--------|
| OTHER INCOME | 20,980. |
| TOTAL TO TRADE OR BUSINESS INCOME SCHEDULE, LINE 10 | 20,980. |

| CA | DEPRECIATION AND AMORTIZATION | STATEMENT 3 |
|----|-------------------------------|-------------|

| DESCRIPTION | REPORTED ELSEWHERE | REPORTED ON PAGE 1 |
|-------------|---------------------|---------------------|
| DEPRECIATION - TRADE OR BUSINESS |  | 2,356. |
| AMORTIZATION - TRADE OR BUSINESS |  | 4,704. |
| TOTAL TO LINES 17B AND 17C |  | 7,060. |

CONFIDENTIAL

ALECTO_00027238
JA2442

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

===================================================================================

| CA | OTHER DEDUCTIONS | STATEMENT 4 |
|----|------------------|-------------|

| DESCRIPTION | AMOUNT |
|-------------|--------|
| AUTOMOBILE EXPENSE | 22,998. |
| BANK SERVICE CHARGES | 21,466. |
| COMPUTER AND INTERNET EXPENSES | 12,593. |
| DUES AND SUBSCRIPTIONS | 13,537. |
| INSURANCE | 102,537. |
| MEALS | 5,403. |
| PROFESSIONAL FEES | 227,313. |
| PURCHASED SERVICES | 202,802. |
| SUPPLIES AND OTHER | 11,651. |
| TRAVEL EXPENSES | 97,427. |
| UTILITIES | 29,943. |
| RENT | 68,414. |
| PAYROLL TAXES | 145,810. |
| TAXES AND LICENSES | 7,200. |
| REPAIRS | 3,240. |
| TOTAL TRADE OR BUSINESS OTHER DEDUCTIONS, LINE 21 | 972,334. |

===================================================================================

| CA | ORDINARY LOSS FROM OTHER PARTNERSHIPS AND FIDUCIARIES | | STATEMENT 5 |
|----|-------------------------------------------------------|--|-------------|

| NAME AND ADDRESS | EMPLOYER ID | AMOUNT |
|------------------|-------------|--------|
| ALECTO HEALTHCARE SERVICES LOS ANGELES<br>5000 E SPRING ST STE 400<br>LONG BEACH, CA 90815 | 90-0999512 | <5,783,319.> |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC<br>1325 LOCUST AVENUE<br>FAIRMONT, WV 26554 | 35-2507149 | <5,386,507.> |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC<br>500 N. HIGHLAND AVENUE<br>SHERMAN, TX 75092 | 37-1760423 | <3,852,294.> |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC<br>16310 BAKE PARKWAY SUITE 200<br>IRVINE, CA 92618 | 36-4857044 | <37,462,783.> |
| TOTAL TO TRADE OR BUSINESS INCOME SCHEDULE, LINE 5 | | <52,484,903.> |

CONFIDENTIAL                                          ALECTO_00027239
                                                                          JA2443

ALECTO HEALTHCARE SERVICES LLC                                              46-0829723

| CA SCHEDULE K | INTEREST INCOME | STATEMENT 6 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| INTEREST - ALECTO HEALTHCARE SERVICES LOS ANGELES | 169,969. |
| INTEREST - ALECTO HEALTHCARE SERVICES SHERMAN LLC | 62,166. |
| INTEREST - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 48. |
| INTEREST INCOME | 88. |
| TOTAL TO SCHEDULE K, LINE 5 | 232,271. |

| CA SCHEDULE K | SECTION 1231 GAINS AND LOSSES | | STATEMENT 7 |
|---|---|---|---|

| DESCRIPTION | GAIN | LOSS |
|---|---|---|
| PASSTHROUGH FROM ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | <1,918.> |
| TOTAL TO SCHEDULE K, LINES 10A AND 10B | | <1,918.> |

| CA SCHEDULE K | CHARITABLE CONTRIBUTIONS | | STATEMENT 8 |
|---|---|---|---|

| DESCRIPTION | TYPE | AMOUNT |
|---|---|---|
| CHARITABLE CONTRIBUTIONS | CASH (50%) | 14,150. |
| PASSED THROUGH FROM ALECTO HEALTHCARE SE | CASH (50%) | 4,800. |
| PASSED THROUGH FROM ALECTO HEALTHCARE SE | CASH (50%) | 5,740. |
| TOTAL TO SCHEDULE K, LINE 13A | | 24,690. |

| CA SCHEDULE K | NONDEDUCTIBLE EXPENSES | STATEMENT 9 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| OFFICER'S LIFE INSURANCE | 25,837. |
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 5,403. |
| STATE AND LOCAL INCOME/FRANCHISE TAXES - CALIFORNIA | 4,800. |
| NONDEDUCTIBLE EXPENSE - PASSTHROUGH | 125,137. |
| NONDEDUCTIBLE EXPENSE - PASSTHROUGH | 1,198. |
| NONDEDUCTIBLE EXPENSE - PASSTHROUGH | 1,561. |
| NONDEDUCTIBLE EXPENSE - PASSTHROUGH | 1,293. |
| TOTAL TO SCHEDULE K, LINE 18C | 165,229. |

CONFIDENTIAL                                                            ALECTO_00027240
                                                                         JA2444

ALECTO HEALTHCARE SERVICES LLC                                     46-0829723

―――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――

CA SCHEDULE K    AGGREGATE GROSS RECEIPTS FOR AMT EXCLUSION    STATEMENT 10

―――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――

DESCRIPTION                                                       AMOUNT
―――――――――――                                                      ――――――

ACTIVITY: PASSTHROUGH                                             232,183.
GROSS SALES LESS RETURNS                                        4,284,619.
TRADE OR BUSINESS OTHER INCOME                                     20,980.
INTEREST                                                              88.
                                                                 ――――――――
TOTAL                                                          4,537,870.
                                                                 ════════

―――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――

CA SCHEDULE K                 ADJUSTED GAIN OR LOSS            STATEMENT 11

―――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――

DESCRIPTION                                                       AMOUNT
―――――――――――                                                      ――――――

AMT BASIS ADJUSTMENT FROM PASSTHROUGH                             <1,030.>
                                                                 ――――――――
TOTAL TO SCHEDULE K, LINE 17B                                    <1,030.>
                                                                 ════════

ADJUSTED GAIN OR LOSS ALLOCABLE TO:

  ORDINARY GAIN OR LOSS                                          <1,030.>
  SHORT-TERM CAPITAL GAIN OR LOSS
  LONG-TERM CAPITAL GAIN OR LOSS
  SECTION 1231 GAIN OR LOSS


―――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――

CA SCHEDULE M-1            BOOK EXPENSES NOT ON RETURN          STATEMENT 12

―――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――

DESCRIPTION                                                       AMOUNT
―――――――――――                                                      ――――――

INTEREST EXPENSE                                                 187,193.
OFFICER'S LIFE INSURANCE                                          25,837.
EXCESS BOOK OVER TAX AMORTIZATION                                  7,729.
STATE TAX EXPENSE                                                  4,800.
NONDEDUCTIBLE EXPENSES FROM PASSTHROUGH                          129,189.
                                                                 ――――――――
TOTAL TO SCHEDULE M-1, LINE 4                                    354,748.
                                                                 ════════

CONFIDENTIAL                                            **ALECTO_00027241**
                                                                 **JA2445**

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| CA SCHEDULE M-1 | INCOME PER BOOKS NOT ON RETURN | STATEMENT 13 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 2,081,276. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 5,393,445. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 3,791,689. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 37,464,028. |
| TOTAL TO SCHEDULE M-1, LINE 6 | 48,730,438. |

| CA SCHEDULE M-1 | RETURN DEDUCTIONS NOT ON BOOKS | STATEMENT 14 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| PASSTHROUGH ADJUSTMENT | 3,665,529. |
| SALARIES AND WAGES | 149,403. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 187,193. |
| TOTAL TO SCHEDULE M-1, LINE 7 | 4,002,125. |

| CA SCHEDULE L | OTHER CURRENT ASSETS | STATEMENT 15 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| DUE FROM AFFILIATE | 50,000. | 50,000. |
| OTHER CURRENT ASSETS | 46,356. | 79,756. |
| OTHER RECEIVABLES | 0. | 34,704. |
| PREPAID EXPENSES | 452,084. | 488,500. |
| TOTAL TO SCHEDULE L, LINE 6 | 548,440. | 652,960. |

| CA SCHEDULE L | OTHER INVESTMENTS | STATEMENT 16 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| INTERCOMPANY RECEIVABLE | 15,670,881. | 25,489,819. |
| TOTAL TO SCHEDULE L, LINE 8 | 15,670,881. | 25,489,819. |

CONFIDENTIAL                                                    ALECTO_00027242
                                                                    JA2446

ALECTO HEALTHCARE SERVICES LLC                                      46-0829723

| CA SCHEDULE L | OTHER CURRENT LIABILITIES | | STATEMENT 17 |
|---|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| ACCRUED PAYROLL | 158,472. | 88,910. |
| ACCRUED PTO | 132,997. | 99,470. |
| OTHER ACCRUED EXPENSES | 603,422. | 1,047,390. |
| TOTAL TO SCHEDULE L, LINE 17 | 894,891. | 1,235,770. |

CONFIDENTIAL                                          ALECTO_00027243
                                                    JA2447

| TAXABLE YEAR | | | | | 929031 11-05-19<br>CALIFORNIA SCHEDULE |
|---|---|---|---|---|---|
| **2019** | **Pass-Through Entity Ownership** | | | | **EO (568)** |

| Name as shown on tax return | California Secretary of State (SOS) file number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 201223510349 |
| | FEIN<br>46-0829723 |

**Part I - Partial Ownership**  List the entities in which the taxpayer holds ownership of less than 100%.

| Name of Entity | CA SOS file no. | FEIN | CA Source Income. See instrs. | Profit and Loss Percentage. See instructions. | |
|---|---|---|---|---|---|
| | | | | Profit | Loss |
| 1 •ALECTO HEALTHCARE SERVI | •201233110239 | •90-0999512 | • X | •0.8000000 | •1.0000000 |
| 2 •ALECTO HEALTHCARE SERVI | • | •35-2507149 | • | •0.8000000 | •0.8000000 |
| 3 •ALECTO HEALTHCARE SERVI | • | •37-1760423 | • | •0.8000000 | •0.8000000 |
| 4 •ALECTO HEALTHCARE SERVI | • | •36-4857044 | • | • | • |
| 5 •OLYMPIA HEALTH CARE LLC | •201417510296 | •42-1643090 | • X | •0.6400000 | •1.0000000 |
| 6 •SHERMAN/GRAYSON HOSPITA | • | •27-2025690 | • | •0.8000000 | •0.8000000 |
| 7 •SHERMAN/GRAYSON HEALTH | • | •27-2025835 | • | •0.8000000 | •0.8000000 |
| 8 •SHERMAN/GRAYSON SPONSOR | • | •35-2518088 | • | •0.8000000 | •0.8000000 |
| 9 •ALECTO HEALTHCARE SERVI | • | •47-1310470 | • | •0.8000000 | •0.8000000 |
| 10 •HORIZON REAL ESTATE HOL | •201415410293 | •57-1226547 | • X | •0.8000000 | •0.8000000 |
| 11 •ALECTO HEALTHCARE SERVI | • | •36-4857044 | • | •0.8000000 | •0.8000000 |
| 12 •ALECTO HEALTHCARE SERVI | • | •37-1848845 | • | •0.8000000 | •0.8000000 |
| 13 •ALECTO HEALTHCARE SERVI | • | •37-1848949 | • | •0.8000000 | •0.8000000 |
| 14 •ALECTO EAST OHIO PHYSIC | • | •82-0677410 | • | •0.8000000 | •0.8000000 |
| 15 • | • | • | • | • | • |
| 16 • | • | • | • | • | • |
| 17 • | • | • | • | • | • |
| 18 • | • | • | • | • | • |
| 19 • | • | • | • | • | • |
| 20 • | • | • | • | • | • |
| 21 • | • | • | • | • | • |
| 22 • | • | • | • | • | • |
| 23 • | • | • | • | • | • |
| 24 • | • | • | • | • | • |
| 25 • | • | • | • | • | • |
| 26 • | • | • | • | • | • |
| 27 • | • | • | • | • | • |

**Part II - Full Ownership**  List the disregarded entities in which the taxpayer holds full ownership of 100%.

| Name of Entity | CA SOS file no. | FEIN | CA Source Income. See instrs. | Full Ownership |
|---|---|---|---|---|
| 1 •SPAULDING MANAGMENT LLC | •201032310068 | •27-4025215 | • X | 100% |
| 2 •ACCELERON SERVICES LLC | •201310610308 | •90-0987801 | • X | 100% |
| 3 •ALECTO HEALTHCARE SERVICES HAYWARD | •201226310054 | •36-4743580 | • X | 100% |
| 4 •ALECTO HEALTHCARE SERVICES INDIANA | •201234710036 | • | • X | 100% |
| 5 •UNITED MEDICAL MANAGEMENT LLC | •201411410256 | •38-3933131 | • X | 100% |
| 6 • | • | • | • | 100% |
| 7 • | • | • | • | 100% |
| 8 • | • | • | • | 100% |
| 9 • | • | • | • | 100% |
| 10 • | • | • | • | 100% |
| 11 • | • | • | • | 100% |

022   8331194

Schedule EO (568) 2019

**CONFIDENTIAL**

ALECTO_00027244
JA2448

| **SCHEDULE M-3** (Form 1065) | **Net Income (Loss) Reconciliation for Certain Partnerships** | | OMB No. 1545-0123 |
|---|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 1065. ▶ Go to www.irs.gov/Form1065 for instructions and the latest information. | | **2019** |

| Name of partnership | Employer identification number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

**This Schedule M-3 is being filed because (check all that apply):**

A  [X]  The amount of the partnership's total assets at the end of the tax year is equal to $10 million or more.

B  [X]  The amount of the partnership's adjusted total assets for the tax year is equal to $10 million or more. If box B is checked, enter the amount of adjusted total assets for the tax year   247,808,992.  .

C  ☐  The amount of total receipts for the tax year is equal to $35 million or more. If box C is checked, enter the total receipts for the tax year _____ .

D  ☐  An entity that is a reportable entity partner with respect to the partnership owns or is deemed to own an interest of 50% or more in the partnership's capital, profit, or loss on any day during the tax year of the partnership.

| Name of Reportable Entity Partner | Identifying Number | Maximum Percentage Owned or Deemed Owned |
|---|---|---|
| | | |
| | | |

E  ☐  Voluntary Filer.

**Part I    Financial Information and Net Income (Loss) Reconciliation**

**1a** Did the partnership file SEC Form 10-K for its income statement period ending with or within this tax year?

☐ **Yes.** Skip lines 1b and 1c and complete lines 2 through 11 with respect to that SEC Form 10-K.

[X] **No.** Go to line 1b. See instructions if multiple non-tax-basis income statements are prepared.

**b** Did the partnership prepare a certified audited non-tax-basis income statement for that period?

☐ **Yes.** Skip line 1c and complete lines 2 through 11 with respect to that income statement.

[X] **No.** Go to line 1c.

**c** Did the partnership prepare a non-tax-basis income statement for that period?

[X] **Yes.** Complete lines 2 through 11 with respect to that income statement.

☐ **No.** Skip lines 2 through 3b and enter the partnership's net income (loss) per its books and records on line 4a.

**2** Enter the income statement period:    Beginning 01/01/2019    Ending 12/31/2019

**3a** Has the partnership's income statement been restated for the income statement period on line 2?

☐ **Yes.** (If "Yes," attach a statement and the amount of each item restated.)

[X] **No.**

**b** Has the partnership's income statement been restated for any of the five income statement periods immediately preceding the period on line 2?

☐ **Yes.** (If "Yes," attach a statement and the amount of each item restated.)

[X] **No.**

| | | | |
|---|---|---|---|
| **4a** Worldwide consolidated net income (loss) from income statement source identified in Part I, line 1 | | **4a** | -368,299. |
| **b** Indicate accounting standard used for line 4a (see instructions). | | | |
|    1 [X] GAAP    2 ☐ IFRS    3 ☐ Section 704(b) | | | |
|    4 ☐ Tax-basis    5 ☐ Other (Specify) ▶ | | | |
| **5a** Net income from noninclludible foreign entities (attach statement) | | **5a** | ( ) |
| **b** Net loss from noninclludible foreign entities (attach statement and enter as a positive amount) | | **5b** | |
| **6a** Net income from noninclludible U.S. entities (attach statement) | | **6a** | ( ) |
| **b** Net loss from noninclludible U.S. entities (attach statement and enter as a positive amount) | | **6b** | |
| **7a** Net income (loss) of other foreign disregarded entities (attach statement) | | **7a** | |
| **b** Net income (loss) of other U.S. disregarded entities (attach statement) | | **7b** | |
| **8** Adjustment to eliminations of transactions between includible entities and noninclludible entities (attach stmt.) | | **8** | |
| **9** Adjustment to reconcile income statement period to tax year (attach statement) | | **9** | |
| **10** Other adjustments to reconcile to amount on line 11 (attach statement) | | **10** | |
| **11** **Net income (loss) per income statement of the partnership**. Combine lines 4a through 10 | | **11** | -368,299. |

**Note:** Part I, line 11, must equal Part II, line 26, column (a), or Schedule M-1, line 1. See instructions.

**12** Enter the total amount (not just the partnership's share) of the assets and liabilities of all entities included or removed on the following lines.

| | Total Assets | Total Liabilities |
|---|---|---|
| **a** Included on Part I, line 4 | 26,796,334. | 8,124,976. |
| **b** Removed on Part I, line 5 | | |
| **c** Removed on Part I, line 6 | | |
| **d** Included on Part I, line 7 | | |

For Paperwork Reduction Act Notice, see the instructions for your return.                                    Schedule M-3 (Form 1065) 2019

910991 01-13-20    LHA

CONFIDENTIAL

Schedule M-3 (Form 1065) 2019

Page 2

| Name of partnership | | | | Employer identification number |
|---|---|---|---|---|
| ALECTO HEALTHCARE SERVICES LLC | | | | 46-0829723 |

**Part II** — Reconciliation of Net Income (Loss) per Income Statement of Partnership with Income (Loss) per Return

| Income (Loss) Items | (a) Income (Loss) per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Income (Loss) per Tax Return |
|---|---|---|---|---|
| Attach statements for lines 1 through 10. | | | | |
| 1 Income (loss) from equity method foreign corporations | | | | |
| 2 Gross foreign dividends not previously taxed | | | | |
| 3 Subpart F, QEF, and similar income inclusions | | | | |
| 4 Gross foreign distributions previously taxed | | | | |
| 5 Income (loss) from equity method U.S. corporations | | | | |
| 6 U.S. dividends | | | | |
| 7 Income (loss) from U.S. partnerships  STMT 18 | | -48,732,356. | 127,749. | -48,604,607. |
| 8 Income (loss) from foreign partnerships | | | | |
| 9 Income (loss) from other pass-through entities | | | | |
| 10 Items relating to reportable transactions | | | | |
| 11 Interest income (see instructions) | 88. | | | 88. |
| 12 Total accrual to cash adjustment | | | | |
| 13 Hedging transactions | | | | |
| 14 Mark-to-market income (loss) | | | | |
| 15 Cost of goods sold (see instructions) | ( ) | | | ( ) |
| 16 Sale versus lease (for sellers and/or lessors) | | | | |
| 17 Section 481(a) adjustments | | | | |
| 18 Unearned/deferred revenue | | | | |
| 19 Income recognition from long-term contracts | | | | |
| 20 Original issue discount and other imputed interest | | | | |
| 21a Income statement gain/loss on sale, exchange, abandonment, worthlessness, or other disposition of assets other than inventory and pass-through entities | | | | |
| b Gross capital gains from Schedule D, excluding amounts from pass-through entities | | | | |
| c Gross capital losses from Schedule D, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses | | | | |
| d Net gain/loss reported on Form 4797, line 17, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses | | | | |
| e Abandonment losses | | | | |
| f Worthless stock losses (attach statement) | | | | |
| g Other gain/loss on disposition of assets other than inventory | | | | |
| 22 Other income (loss) items with differences (attach statement) | | | | |
| 23 Total income (loss) items. Combine lines 1 through 22 | 88. | -48,732,356. | 127,749. | -48,604,519. |
| 24 Total expense/deduction items. (From Part III, line 31) (see instructions) | -3,447,775. | -139,963. | 31,240. | -3,556,498. |
| 25 Other items with no differences  STMT 19 | 3,079,388. | | | 3,079,388. |
| 26 Reconciliation totals. Combine lines 23 through 25 | -368,299. | -48,872,319. | 158,989. | -49,081,629. |

Note: Line 26, column (a), must equal Part I, line 11, and column (d) must equal Form 1065, Analysis of Net Income (Loss), line 1.

Schedule M-3 (Form 1065) 2019

910992
01-13-20

CONFIDENTIAL

ALECTO_00027246
**JA2450**

Schedule M-3 (Form 1065) 2019

Page 3

| Name of partnership | | | | Employer identification number |
|---|---|---|---|---|
| ALECTO HEALTHCARE SERVICES LLC | | | | 46-0829723 |

**Part III**   Reconciliation of Net Income (Loss) per Income Statement of Partnership With Income (Loss) per Return - Expense/Deduction Items

| | Expense/Deduction Items | (a)<br>Expense per<br>Income Statement | (b)<br>Temporary<br>Difference | (c)<br>Permanent<br>Difference | (d)<br>Deduction per<br>Tax Return |
|---|---|---|---|---|---|
| 1 | State and local current income tax expense | 3,200. | 1,600. | | 4,800. |
| 2 | State and local deferred income tax expense | | | | |
| 3 | Foreign current income tax expense (other than foreign withholding taxes) | | | | |
| 4 | Foreign deferred income tax expense | | | | |
| 5 | Equity-based compensation | | | | |
| 6 | Meals and entertainment .......... STMT 21 | 10,806. | | -5,403. | 5,403. |
| 7 | Fines and penalties | | | | |
| 8 | Judgments, damages, awards, and similar costs | | | | |
| 9 | Guaranteed payments | | | | |
| 10 | Pension and profit-sharing | | | | |
| 11 | Other post-retirement benefits | | | | |
| 12 | Deferred compensation | | | | |
| 13 | Charitable contribution of cash and tangible property ................ STMT 22 | 14,150. | | | 14,150. |
| 14 | Charitable contribution of intangible property | | | | |
| 15 | Organizational expenses as per Regulations section 1.709-2(a) | | | | |
| 16 | Syndication expenses as per Regulations section 1.709-2(b) | | | | |
| 17 | Current year acquisition/reorganization investment banking fees | | | | |
| 18 | Current year acquisition/reorganization legal and accounting fees | | | | |
| 19 | Amortization/impairment of goodwill | | | | |
| 20 | Amortization of acquisition, reorganization, and start-up costs | | | | |
| 21 | Other amortization or impairment write-offs ................ STMT 23 | 12,433. | -7,729. | | 4,704. |
| 22 | Reserved | | | | |
| 23a | Depletion - Oil & Gas | | | | |
| b | Depletion - Other than Oil & Gas | | | | |
| 24 | Intangible drilling & development costs | | | | |
| 25 | Depreciation | 4,489. | -3,311. | | 1,178. |
| 26 | Bad debt expense | | | | |
| 27 | Interest expense (see instructions) | 187,281. | -187,193. | | 88. |
| 28 | Purchase versus lease (for purchasers and/or lessees) | | | | |
| 29 | Research and development costs | | | | |
| 30 | Other expense/deduction items with differences (attach statement) ................ STMT 24 | 3,215,416. | 336,596. | -25,837. | 3,526,175. |
| 31 | Total expense/deduction items. Combine lines 1 through 30. Enter here and on Part II, line 24, reporting positive amounts as negative and negative amounts as positive | 3,447,775. | 139,963. | -31,240. | 3,556,498. |

Schedule M-3 (Form 1065) 2019

910993
01-13-20

ALECTO_00027247
JA2451

| Form **8916-A** (Rev. November 2019) Department of the Treasury Internal Revenue Service | **Supplemental Attachment to Schedule M-3** ▶ Attach to Schedule M-3 for Form 1065, 1120, 1120-L, 1120-PC, or 1120-S. ▶ Go to www.irs.gov/Form1120 for the latest information. | OMB No. 1545-0123 |
|---|---|---|

Name of common parent
ALECTO HEALTHCARE SERVICES LLC

Employer identification number
46-0829723

Name of subsidiary

Employer identification number

### Part I   Cost of Goods Sold

| Cost of Goods Sold Items | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
|---|---|---|---|---|
| 1  Amounts attributable to cost flow assumptions | | | | |
| 2  Amounts attributable to: | | | | |
| a  Stock option expense | | | | |
| b  Other equity-based compensation | | | | |
| c  Meals and entertainment | | | | |
| d  Parachute payments | | | | |
| e  Compensation with section 162(m) limitation | | | | |
| f  Pension and profit sharing | | | | |
| g  Other post-retirement benefits | | | | |
| h  Deferred compensation | | | | |
| i  Reserved | | | | |
| j  Amortization | | | | |
| k  Depletion | | | | |
| l  Depreciation | | | | |
| m  Corporate-owned life insurance premiums | | | | |
| n  Other section 263A costs | | | | |
| 3  Inventory shrinkage accruals | | | | |
| 4  Excess inventory and obsolescence reserves | | | | |
| 5  Lower of cost or market write-downs | | | | |
| 6  Other items with differences (attach statement) | | | | |
| 7  Other items with no differences | | | | |
| 8  **Total cost of goods sold**. Add lines 1 through 7 in columns a, b, c, and d. Enter totals on the applicable Schedule M-3. See instructions | | | | |

LHA   **For Paperwork Reduction Act Notice, see instructions.**

Form **8916-A**  (Rev. 11-2019)

913315
12-11-19

**ALECTO_00027248**
**JA2452**

Form 8916-A (Rev. 11-2019) ALECTO HEALTHCARE SERVICES LLC                                    46-0829723  Page **2**

### Part II   Interest Income

| | Interest Income Item | (a) Income (Loss) per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Income (Loss) per Tax Return |
|---|---|---|---|---|---|
| 1 | Tax-exempt interest income | | | | |
| 2 | Interest income from hybrid securities | | | | |
| 3 | Sale/lease interest income | | | | |
| 4a | Intercompany interest income - From outside tax affiliated group | | | | |
| 4b | Intercompany interest income - From tax affiliated group | | | | |
| 5 | Other interest income                        STMT  26 | 88. | | | 88. |
| 6 | Total interest income. Add lines 1 through 5 in columns a, b, c, and d. Enter total on the applicable Schedule M-3. See instructions. | 88. | | | 88. |

### Part III   Interest Expense

| | Interest Expense Item | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
|---|---|---|---|---|---|
| 1 | Interest expense from hybrid securities | | | | |
| 2 | Lease/purchase interest expense | | | | |
| 3a | Intercompany interest expense - Paid to outside tax affiliated group | | | | |
| 3b | Intercompany interest expense - Paid to tax affiliated group | | | | |
| 4 | Other interest expense                       STMT  27 | 187,281. | -187,193. | | 88. |
| 5 | Total interest expense. Add lines 1 through 4 in columns a, b, c, and d. Enter total on the applicable Schedule M-3. See instructions. | 187,281. | -187,193. | | 88. |

Form **8916-A**  (Rev. 11-2019)

913316
12-11-19

ALECTO HEALTHCARE SERVICES LLC                          46-0829723

| SCHEDULE M-3 | INCOME (LOSS) FROM U.S. PARTNERSHIPS | STATEMENT 18 |
|---|---|---|

NAME

| EIN | END OF YEAR PERCENTAGE PROFIT-SHARING | END OF YEAR PERCENTAGE LOSS-SHARING | INCOME (LOSS) PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | INCOME (LOSS) PER TAX RETURN |
|---|---|---|---|---|---|---|
| ALECTO HEALTHCARE SERVICES LOS ANGELES 90-0999512 | | | 0. | -2,081,276. | 123,697. | -1,957,579. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC 35-2507149 | | | 0. | -5,395,363. | 1,198. | -5,394,165. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC 37-1760423 | | | 0. | -3,791,689. | 1,561. | -3,790,128. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC 36-4857044 | | | 0. | -37,464,028. | 1,293. | -37,462,735. |
| TOTAL TO M-3, PART II, LINE 7 | | | 0. | -48,732,356. | 127,749. | -48,604,607. |

| SCHEDULE M-3 | OTHER INCOME (LOSS) AND EXPENSE / DEDUCTION ITEMS WITH NO DIFFERENCES | STATEMENT 19 |
|---|---|---|

| DESCRIPTION | PER INCOME STATEMENT | PER TAX RETURN |
|---|---|---|
| OTHER INCOME (LOSS) - SEE STATEMENT | 4,305,599. | 4,305,599. |
| OTHER EXPENSE / DEDUCTION - SEE STATEMENT | -1,226,211. | -1,226,211. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 25 | 3,079,388. | 3,079,388. |

| SCHEDULE M-3 | OTHER INCOME (LOSS) ITEMS WITH NO DIFFERENCES | STATEMENT 20 |
|---|---|---|

| DESCRIPTION | INCOME (LOSS) PER INCOME STATEMENT | INCOME (LOSS) PER TAX RETURN |
|---|---|---|
| OTHER INCOME | 20,980. | 20,980. |
| SALES | 4,284,619. | 4,284,619. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 25 | 4,305,599. | 4,305,599. |

CONFIDENTIAL

ALECTO_00027250
JA2454

**<u>Exhibit B</u>**

**Part 3**

ALECTO HEALTHCARE SERVICES LLC

46-0829723

| SCHEDULE M-3 | MEALS AND ENTERTAINMENT | | | STATEMENT 21 |
|---|---|---|---|---|
| DESCRIPTION | EXPENSE PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | DEDUCTION PER TAX RETURN |
| MEALS AND ENTERTAINMENT FROM TRADE OR BUSINESS | 10,806. | | -5,403. | 5,403. |
| TOTAL | 10,806. | | -5,403. | 5,403. |

| SCHEDULE M-3 | CHARITABLE CONTRIBUTION OF CASH AND TANGIBLE PROPERTY | | | STATEMENT 22 |
|---|---|---|---|---|
| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | EXPENSE/ DEDUCTION PER TAX RETURN |
| CHARITABLE CONTRIBUTIONS | 14,150. | | 0. | 14,150. |
| TOTAL | 14,150. | | 0. | 14,150. |

| SCHEDULE M-3 | OTHER AMORTIZATION OR IMPAIRMENT WRITE-OFFS | | | STATEMENT 23 |
|---|---|---|---|---|
| DESCRIPTION | EXPENSE PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | DEDUCTION PER TAX RETURN |
| LOAN COSTS | 4,704. | | 0. | 4,704. |
| OTHER AMORTIZATION | 7,729. | -7,729. | 0. | 0. |
| TOTAL | 12,433. | -7,729. | 0. | 4,704. |

CONFIDENTIAL

ALECTO_00027251
**JA2456**

ALECTO HEALTHCARE SERVICES LLC                                              46-0829723

================================================================================

SCHEDULE M-3        OTHER EXPENSE/DEDUCTION ITEMS WITH DIFFERENCES      STATEMENT 24

| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | EXPENSE/ DEDUCTION PER TAX RETURN |
|---|---|---|---|---|
| EXCESS BUSINESS INTEREST EXPENSE | 0. | 187,193. | 0. | 187,193. |
| OFFICER'S LIFE INSURANCE | 25,837. | | -25,837. | 0. |
| SALARIES AND WAGES | 3,189,579. | 149,403. | 0. | 3,338,982. |
| TOTAL TO M-3, PART III, LINE 30 | 3,215,416. | 336,596. | -25,837. | 3,526,175. |

================================================================================

SCHEDULE M-3                OTHER EXPENSE/DEDUCTION ITEMS              STATEMENT 25
                            WITH NO DIFFERENCES

| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | EXPENSE/ DEDUCTION PER TAX RETURN |
|---|---|---|
| AUTOMOBILE EXPENSE | 22,998. | 22,998. |
| BANK SERVICE CHARGES | 21,466. | 21,466. |
| COMPUTER AND INTERNET EXPENSES | 12,593. | 12,593. |
| DUES AND SUBSCRIPTIONS | 13,537. | 13,537. |
| EMPLOYEE BENEFIT PROGRAMS | 259,280. | 259,280. |
| INSURANCE | 102,537. | 102,537. |
| PAYROLL TAXES | 145,810. | 145,810. |
| PROFESSIONAL FEES | 227,313. | 227,313. |
| PURCHASED SERVICES | 202,802. | 202,802. |
| RENT EXPENSE | 68,414. | 68,414. |
| REPAIRS | 3,240. | 3,240. |
| SUPPLIES AND OTHER | 11,651. | 11,651. |
| TAXES AND LICENSES | 7,200. | 7,200. |
| TRAVEL EXPENSES | 97,427. | 97,427. |
| UTILITIES | 29,943. | 29,943. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 25 | 1,226,211. | 1,226,211. |

CONFIDENTIAL                                            ALECTO_00027252
                                                                      JA2457

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| FORM 8916-A | OTHER INTEREST INCOME | | | STATEMENT 26 |
|---|---|---|---|---|
| DESCRIPTION | PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | PER TAX RETURN |
| INTEREST INCOME | 88. | 0. | 0. | 88. |
| TOTAL TO PART II, LINE 5 | 88. | 0. | 0. | 88. |

| FORM 8916-A | OTHER INTEREST EXPENSE | | | STATEMENT 27 |
|---|---|---|---|---|
| DESCRIPTION | PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | PER TAX RETURN |
| INTEREST EXPENSE | 187,281. | -187,193. | 0. | 88. |
| TOTAL TO PART III, LINE 4 | 187,281. | -187,193. | 0. | 88. |

CONFIDENTIAL

ALECTO_00027253
JA2458

939241 12-13-19

| TAXABLE YEAR **2019** | **Sales of Business Property** (Also Involuntary Conversions and Recapture Amounts Under IRC Sections 179 and 280F(b)(2)) | CALIFORNIA SCHEDULE **D-1** |
|---|---|---|

Complete and attach this schedule to your tax return only if your California gains or losses are different from your federal gains or losses.

| Name(s) as shown on tax return | SSN, ITIN, CA SOS file no., California Corp. no., or FEIN |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 201223510349<br>46-0829723 |

**Part I   Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty and Theft - Property Held More Than 1 Year**
Use federal Form 4684, Casualties and Thefts, to report involuntary conversions from casualty and theft.

**1** Enter the gross proceeds from sales or exchanges reported to you for 2019 on federal Form 1099-S, Proceeds From Real Estate Transactions (or a substitute statement), that you will be including on line 2 or line 10, (column (d)), or on line 23 ................................................. ⊙ **1**

| **2** (a) Description of property | (b) Date acquired (mm/dd/yyyy) | (c) Date sold (mm/dd/yyyy) | (d) Gross sales price | (e) Depreciation allowed or allowable since acquisition | (f) Cost or other basis, plus improvements and expense of sale | (g) Gain or (Loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|
| ⊙ | ⊙ | ⊙ | ⊙ | ⊙ | ⊙ | ⊙ |
| ⊙ | ⊙ | ⊙ | ⊙ | ⊙ | ⊙ | ⊙ |
| ⊙ STATEMENT 28 | | ⊙ | ⊙ | ⊙ | ⊙ | ⊙ <1,918> |

**3** Gain, if any, from federal Form 4684, line 39 .................................................................................... ⊙ **3**

**4** IRC Section 1231 gain from installment sales from FTB 3805E, line 26 or line 37 ................................ ⊙ **4**

**5** IRC Section 1231 gain or (loss) from like-kind exchanges from federal Form 8824 (completed using California amounts) ..... ⊙ **5**

**6** Gain, if any, from line 35, from other than casualty and theft ........................................................... ⊙ **6**

**7** Combine line 2 through line 6. Enter gain or (loss) here and on the appropriate line as follows: ................. ⊙ **7** <1,918>

IRC Section 179 Assets: For reporting the sale or disposition of assets for which an IRC Section 179 expense deduction was claimed in a prior year, see instructions. **Partnerships or Limited Liability Companies (classified as partnerships):** Enter the gain or (loss) on Schedule K (565 or 568), line 10. Skip lines 8, 9, 11, and 12 below. **S corporations:** If line 7 is zero or a loss, enter the amount on line 11 below and skip line 8 and line 9. If line 7 is a gain, continue to line 8. **All others:** If line 7 is zero or a loss, enter the amount on line 11 below and skip line 8 and line 9. If line 7 is a gain and you did not have any prior year IRC Section 1231 losses, or they were recaptured in an earlier year, enter the gain as follows: **Form 540 and Form 540NR filers**, enter the gain on Schedule D (540 or 540NR), line 1, and skip lines 8, 9, and 12 below; **Form 100 and Form 100W filers**, enter the gain on Form 100 or 100W, Side 6, Schedule D, Part II, line 6, and skip lines 8, 9, and 12 below.

**8** Nonrecaptured net IRC Section 1231 losses from prior years. Enter as a positive number. See instructions .............. ⊙ **8**

**9** Subtract line 8 from line 7. If zero or less, enter -0- ......................................................................... ⊙ **9**

**S corporations:** If line 9 is more than zero, enter this amount on Schedule D (100S), Section B, Part II, line 5 and enter the amount, if any, from line 8 on line 12 below. If line 9 is zero, enter the amount from line 7 on line 12 below. **All others:** If line 9 is more than zero, enter the amount from line 8 on line 12 below, and enter the amount from line 9 as follows: **Form 540 and Form 540NR filers**, enter as a capital gain on Schedule D (540 or 540NR), line 1; **Form 100 and Form 100W filers**, enter the gain on Form 100 or 100W, Side 6, Schedule D, Part II, line 6. If line 9 is zero, enter the amount from line 7 on line 12 below. See instructions.

**Part II   Section A - Ordinary Gains and Losses**

**10** Ordinary gains and losses not included on line 11 through line 16 (include property held 1 year or less):

| ⊙ | ⊙ | ⊙ | ⊙ | ⊙ | ⊙ | ⊙ |
|---|---|---|---|---|---|---|
| ⊙ | ⊙ | ⊙ | ⊙ | ⊙ | ⊙ | ⊙ |
| ⊙ | ⊙ | ⊙ | ⊙ | ⊙ | ⊙ | ⊙ |

**11** Loss, if any, from line 7 ............................................................................................................ ⊙ **11** ( )

**12** Gain, if any, from line 7, or amount from line 8, if applicable. See instructions .......................................... ⊙ **12**

**13** Gain, if any, from line 34 ........................................................................................................... ⊙ **13**

**14** Net gain or (loss) from federal Form 4684, line 31 and line 38a (completed using California amounts) ................ ⊙ **14**

**15** Ordinary gain from installment sales from form FTB 3805E, line 25 or line 36. See instructions ................... ⊙ **15**

**16** Ordinary gain or (loss) from like-kind exchanges from federal Form 8824 (completed using California amounts) ........ ⊙ **16**

**17** Combine line 10 through line 16 .................................................................................................. ⊙ **17**

**18** For all except individual tax returns, enter the amount from line 17 on the appropriate line of your tax return and skip line a and line b below. For individual tax returns, complete line a and line b below; see instructions.

**a** If the loss on line 11 includes a loss from federal Form 4684, Section B, Part II, column (b)(ii) of line 30 or line 35, enter that part of the loss here. See instructions ................................................................ ⊙ **18a**

**b** Redetermine the gain or (loss) on line 17, excluding the loss, if any, on line 18a. Enter here and on line 20 ........... ⊙ **18b**

For Privacy Notice, get FTB 1131 ENG/SP.     022     7811194     Schedule D-1 2019   **Side 1**

CONFIDENTIAL

ALECTO_00027254
JA2459

## Part II   Section B - Adjusting California Ordinary Gain or Loss  For individual tax returns (Form 540 and Form 540NR) only.

| | | |
|---|---|---|
| 19 Enter ordinary federal gain or (loss) from federal Schedule 1 (Form 1040 or 1040-SR), line 4 | 19 | |
| 20 Enter ordinary California gain or (loss) from line 18b | 20 | |
| 21 Ordinary gain or loss adjustment: Compare line 19 and line 20. See instructions. | | |
| **a** If line 19 is more than line 20, enter the difference here and on Sch. CA (540), Part I or Sch. CA (540NR), Part II, Section B, line 4, col. B | 21a | |
| **b** If line 20 is more than line 19, enter the difference here and on Sch. CA (540), Part I or Sch. CA (540NR), Part II, Section B, line 4, col. C | 21b | |

## Part III   Gain from Disposition of Property Under IRC Sections 1245, 1250, 1252, 1254, and 1255

Description of IRC Sections 1245, 1250, 1252, 1254, and 1255 property.

| | Date acquired (mm/dd/yyyy) | Date sold (mm/dd/yyyy) |
|---|---|---|
| 22 A | | |
| B | | |
| C | | |
| D | | |

| Relate the properties on lines 22A through 22D to these columns ▶ | | Property A | Property B | Property C | Property D |
|---|---|---|---|---|---|
| 23 Gross sales price | 23 | | | | |
| 24 Cost or other basis plus expense of sale | 24 | | | | |
| 25 Depreciation (or depletion) allowed or allowable | 25 | | | | |
| 26 Adjusted basis. Subtract line 25 from line 24 | 26 | | | | |
| 27 Total gain. Subtract line 26 from line 23 | 27 | | | | |
| **28 If IRC Section 1245 property:** | | | | | |
| a Depreciation allowed or allowable from line 25 | 28a | | | | |
| b Enter the **smaller** of line 27 or line 28a | 28b | | | | |
| **29 If IRC Section 1250 property:** If straight-line depreciation was used, enter -0- on line 29g, except for a corporation subject to IRC Sec. 291: | | | | | |
| a Additional depreciation after 12/31/76 | 29a | | | | |
| b Applicable percentage multiplied by the **smaller** of line 27 or line 29a | 29b | | | | |
| c Subtract line 29a from line 27. If line 27 is not more than line 29a, skip line 29d and line 29e | 29c | | | | |
| d Additional depreciation after 12/31/70 and before 1/1/77 | 29d | | | | |
| e Enter the **smaller** of line 29c or line 29d | 29e | | | | |
| f IRC Section 291 amount (for corporations only) | 29f | | | | |
| g Add line 29b, line 29e, and line 29f | 29g | | | | |
| **30 If IRC Section 1252 property:** Skip section if you did not dispose of farm land or if form is being completed for a partnership. | | | | | |
| a Soil, water, and land clearing expenses | 30a | | | | |
| b Applicable percentage multiplied by line 30a | 30b | | | | |
| c Enter the **smaller** of line 27 or line 30b | 30c | | | | |
| **31 If IRC Section 1254 property:** | | | | | |
| a Intangible drilling and development costs deducted after 12/31/76 | 31a | | | | |
| b Enter the **smaller** of line 27 or line 31a | 31b | | | | |
| **32 If IRC Section 1255 property:** | | | | | |
| a Applicable percentage of payments excluded from income under IRC Section 126 | 32a | | | | |
| b Enter the **smaller** of line 27 or line 32a | 32b | | | | |

**Summary of Part III Gains.** Complete property column A through column D for line 23 through line 32b before going to line 33.

| | | |
|---|---|---|
| 33 Total gains for all properties. Add column A through column D of line 27 | 33 | |
| 34 Add column A through column D of lines 28b, 29g, 30c, 31b, and 32b. Enter here and on line 13 | 34 | |
| 35 Subtract line 34 from line 33. Enter the portion from other than casualty and theft here and on line 6. Enter the portion from casualty and theft on federal Form 4684, line 33 | 35 | |

## Part IV   Recapture Amounts Under IRC Sections 179 and 280F(b)(2) When Business Use Drops to 50% or Less

| | | | (a) Expense deductions | (b) Recovery deductions |
|---|---|---|---|---|
| 36 Expense deductions or recovery deductions. See instructions | 36 | | | |
| 37 Depreciation or recovery deductions. See instructions | 37 | | | |
| 38 Recapture amount. Subtract line 37 from line 36. See instructions | 38 | | | |

CONFIDENTIAL

ALECTO_00027255
JA2460

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

| CA SCHEDULE D-1 | | PART I - SALES OR EXCHANGES OF PROPERTY | | | | STATEMENT 28 |
|---|---|---|---|---|---|---|
| (A) DESC. OF PROPERTY | (B) DATE ACQUIRED | (C) DATE SOLD | (D) SALES PRICE | (E) DEPR. ALLOWED | (F) COST OR OTHER BASIS | (G) GAIN OR LOSS |
| PASSTHROUGH FROM ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | | 0. | 0. | 0. | <1,918.> |
| TOTAL TO SCHEDULE D-1, LN 2 | | | 0. | 0. | 0. | <1,918.> |

CONFIDENTIAL

ALECTO_00027256
JA2461

| TAXABLE YEAR 2019 | **Apportionment and Allocation of Income** | | | CALIFORNIA SCHEDULE **R** |

Attach this schedule behind the California tax return and prior to the supporting schedules.

For calendar year 2019 or fiscal year beginning month (mm/dd/yyyy) **01/01/2019** , and ending (mm/dd/yyyy) **12/31/2019** .

Name as shown on your California tax return
SSN, ITIN, FEIN, CA corp no., or CA SOS file no.

ALECTO HEALTHCARE SERVICES LLC
201223510349
46-0829723

Water's-Edge Filers Only: If controlled foreign corporations are included in the combined report, attach form FTB 2416.

Complete Schedule R (Side 1 and Side 2) and all applicable Schedules (R-1 through R-7). See General Information for Schedule R.

| | | | |
|---|---|---|---|
| 1 a Net income (loss) after state adjustments from Form 100 or Form 100W, Side 2, line 17; Form 100S, line 14; | | | |
| Form 100X, line 4. Form 565 and Form 568 filers: Enter the total of line 1 through line 11c from Schedule K (565 or 568) | | | |
| less the total of line 12 through line 13e from Schedule K (565 or 568) | ● 1a | -52,738,578 | 00 |
| b Water's-edge foreign investment interest offset from form FTB 2424, line 17 | ● 1b | | 00 |
| c Total. Combine line 1a and line 1b | ● 1c | -52,738,578 | 00 |

Nonbusiness Income (Loss) from All Sources. See General Information A for definitions and examples.

| | | | | | | |
|---|---|---|---|---|---|---|
| 2 Dividends included on line 1a and not deducted on Form 100, Side 2, line 11; | | | | | | |
| Form 100W, Side 2, lines 11a/b; or Form 100S, Side 2, lines 9 and 10 | ● 2 | | 00 | | | |
| 3 Interest. Attach schedule | ● 3 | 232,271 | 00 | | STMT 29 | |
| 4 Net income (loss) from the rental of property from Schedule R-3, line 3, column (c) | ● 4 | | 00 | | | |
| 5 Royalties. Attach schedule | ● 5 | | 00 | | | |
| 6 Gain (loss) from the sale of assets from Schedule R-4, line 2, column (e) | ● 6 | | 00 | | | |
| 7 Gain (loss) from sale of a nonbusiness interest in a partnership or LLC. Attach sch | ● 7 | | 00 | | | |
| 8 Miscellaneous nonbusiness income (loss). Attach schedule | ● 8 | | 00 | | | |
| 9 Total nonbusiness income (loss). Combine line 2 through line 8 | | | | ● 9 | 232,271 | 00 |

Business Income (Loss) before Apportionment (subject to a separate apportionment formula)

| | | | | | | |
|---|---|---|---|---|---|---|
| 10 Nonunitary partnership or LLC business income (loss) | ● 10 | | 00 | | | |
| 11 Income (loss) from a separate trade or business. Attach supplemental Schedule R | ● 11 | | 00 | | | |
| 12 Business income (loss) deferred from prior years. See General Information L | ● 12 | | 00 | | | |
| 13 Capital gain (loss) netting subject to separate apportionment. See Gen Information M | ● 13 | | 00 | | | |
| 14 Total separately apportionable business income (loss). Combine line 10 through line 13 | | | | ● 14 | | 00 |
| 15 Tot business inc (loss) subject to apportionment for this trade or business, subtract the sum of ln 9 and ln 14 from ln 1c | | | | ● 15 | -52,970,849 | 00 |
| 16 Interest offset from Schedule R-5, line 7 or line 16 (California domiciliaries only) | | | | ● 16 | | 00 |
| 17 Business Income (loss) for this trade or business subject to apportionment. Combine line 15 and line 16 | | | | ● 17 | -52,970,849 | 00 |
| 18 a Apportionment percentage from Schedule R-1, Part A, line 2 or Part B, line 5 | | | | ● 18a | 24.3096 | % |
| b Business income (loss) apportioned to California. Multiply line 17 by line 18a | | | | ● 18b | -12,877,002 | 00 |

Nonbusiness Income (Loss) Allocable to California. If no income (loss) is allocable to California, do not complete line 19
through line 26, enter -0- on line 27 and go to Side 2, line 28.

| | | | |
|---|---|---|---|
| 19 Dividends and interest income (if taxpayer's commercial domicile is in California): | | | |
| a Dividends included in line 2 above | ● 19a | | 00 |
| b Interest included in line 3 above | ● 19b | 232,271 | 00 |
| 20 Net income (loss) from the rental of property within California from Schedule R-3, line 3, column (b) | ● 20 | | 00 |
| 21 Royalties. Attach schedule | ● 21 | | 00 |
| 22 Gain (loss) from the sale of assets within California from Schedule R-4, line 2, total of column (b) and column (d). | | | |
| Combined reporting groups, see General Information M | ● 22 | | 00 |
| 23 Gain (loss) from sale of a nonbusiness interest in a partnership or LLC. Attach schedule | ● 23 | | 00 |
| 24 Miscellaneous nonbusiness income (loss). Attach schedule | ● 24 | | 00 |
| 25 Total nonbusiness income (loss) allocable to California. Combine line 19a through line 24 | ● 25 | 232,271 | 00 |
| 26 Interest offset from line 16 allocated to income included on line 19a and line 19b (California domiciliary only). | | | |
| See General Information J | ● 26 | | 00 |
| 27 Net nonbusiness income (loss) allocable to California. Subtract line 26 from line 25 | ● 27 | 232,271 | 00 |

For Privacy Notice, get FTB 1131 ENG/SP.   022   8011194   030841 12-13-19   Schedule R 2019 Side 1

ALECTO_00027257
JA2462

■

| Name as shown on your California tax return | | | | SSN, ITIN, FEIN, CA corp no., or CA SOS file no. |
|---|---|---|---|---|
| | | | | 201223510349 |
| ALECTO HEALTHCARE SERVICES LLC | | | | 46-0829723 |

**California Business Income (Loss)** subject to a separate apportionment formula.

| | | | | | | |
|---|---|---|---|---|---|---|
| 28 | California business income (loss) from a nonunitary partnership or LLC ............ ● | 28 | | 00 | | |
| 29 | California income (loss) from a separate trade or business. Attach | | | | | |
| | supplemental schedule R. ........................................................................... ● | 29 | | 00 | | |
| 30 | California business income (loss) deferred from prior yrs. See General Information L ● | 30 | | 00 | | |
| 31 | Total business income (loss) separately apportioned to California. Combine line 28 through line 30 ........................... ● | | | | 31 | 00 |

**Net Income (Loss) for California Purpose**

| | | | | |
|---|---|---|---|---|
| 32 | Post-apportioned and allocated amounts from capital gain (loss) netting. | | | |
| | See General Information M ......................................................................................................................... ● | | 32 | 00 |
| 33 | Net income (loss) for California purposes before contributions adjustment. Combine line 18b, 27, 31, and 32 ................ ● | | 33 | -12,644,731 00 |
| 34 | Contributions adjustment from Schedule R-6, line 15 ...................................................................................... ● | | 34 | 00 |
| 35 | Net income (loss) for California purposes. Combine line 33 and line 34. Enter here and on Form 100 or Form 100W, | | | |
| | Side 2, line 18 or Form 100S, Side 2, line 15 ............................................................................................. ● | | 35 | -12,644,731 00 |

**Complete the applicable
Schedules R-1 through R-7,
starting on Side 3.**

**CONFIDENTIAL**                                                                 **ALECTO_00027258**
                                                                                **JA2463**

Name as shown on your California tax return

SSN, ITIN, FEIN, CA corp no., or CA SOS file no.

201223510349

ALECTO HEALTHCARE SERVICES LLC

46-0829723

**Schedule R-1  Apportionment Formula.**

**Part A  Standard Method - Single-Sales Factor Formula.** Complete this part only if the corporation uses the single-sales factor formula.

| See General Information G and Specific Instructions. | (a) Total within and outside California | (b) Total within California | (c) Percent within California ((b) ÷ (a)) x 100 |
|---|---|---|---|
| **1 Sales:** Gross receipts, less returns, and allowances | 251,420,584 | | |
| **a** Sales delivered or shipped to California purchasers. | | | |
| (i) Shipped from outside California | | 0 | |
| (ii) Shipped from within California | | 62,216,573 | |
| **b** Sales shipped from California to: | | | |
| (i) The United States Government | | 0 | |
| (ii) Purchasers in a state where the taxpayer is not taxable | | ● 0 | |
| **c** Total other gross receipts | ● 6,876,079 | | |
| (i) Sales from services | | ● | |
| (ii) Sales or other income from intangibles | | ● | |
| (iii) Sales from rental, leasing or licensing of tangible or real property | | ● 0 | |
| (iv) Sales from other gross receipts | | ● 574,312 | |
| **d** Sales from partnerships or LLCs treated as partnerships | ● | ● | |
| **Total sales** | ● 258,296,663 | ● 62,790,885 | |
| **2 Apportionment percentage**. Divide total sales column (b) by total sales column (a) and multiply the result by 100. Enter the result here and on Schedule R, Side 1, line 18a. See General Information H | | | ● 24.3096 % |

**Part B  Three-Factor Formula.** Complete this part only if the corporation uses the three-factor formula.

| | (a) Total within and outside California | (b) Total within California | (c) Percent within California ((b) ÷ (a)) x 100 |
|---|---|---|---|
| **1 Property:** Use the average yearly value of owned real and tangible personal property used in the business at original cost. See General Information E. Exclude property not connected with the business and the value of construction in progress. Inventory | | | |
| Buildings | | | |
| Machinery and equipment (including delivery equipment) | | | |
| Furniture and fixtures | | | |
| Land | | | |
| Other tangible assets. Attach schedule | | | |
| Rented property used in the business. See General Information E | | | |
| **Total property** | ● | ● | ● % |
| **2 Payroll:** Use employee wages, salaries, commissions, and other compensation related to business income. See General Information F. | | | |
| **Total payroll** | ● | ● | ● % |
| **3 Sales:** Gross receipts, less returns, and allowances. See General Information G and Specific Instructions | | | |
| **a** Sales delivered or shipped to California purchasers. | | | |
| (i) Shipped from outside California | | | |
| (ii) Shipped from within California | | | |
| **b** Sales shipped from California to: | | | |
| (i) The United States Government | | | |
| (ii) Purchasers in a state where the taxpayer is not taxable | | | |
| **c** Total other gross receipts | ● | ● | |
| **Total sales** | ● | ● | ● % |
| **4 Total percent.** Add the percentages in col (c) | | | ● % |
| **5 Apportionment percentage**. Divide line 4 by 3, enter the result here and on Schedule R, Side 1, line 18a. See General Information H | | | ● % |

CONFIDENTIAL

ALECTO_00027259
**JA2464**

| Name as shown on your California tax return | SSN, ITIN, FEIN, CA corp no., or CA SOS file no. 201223510349 |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

**Schedule R-2** Sales and General Questionaire. Attach additional sheets if necessary.

1 Describe briefly the nature and location(s) of the California business activities.
HOLDING COMPANY; 16310 BAKE PARKWAY SUITE 200, IRVINE, CA 92618

2 State the exact title and principal business activity of all joint ventures, partnerships, or LLCs in which the corporation has an interest.
SEE CALIFORNIA SCHEDULE EO

3 Does the California sales figure on Schedule R-1 (or a comparable schedule in a combined report) include all sales shipped from California where the purchaser is the
U.S. Government? ☒ Yes ☐ No If "No," explain.

4 Does the California sales figure on Schedule R-1 (or a comparable schedule in a combined report) include all sales shipped from California to states in which the
taxpayer is not subject to tax? See General Information G and Specific Instructions. ☒ Yes ☐ No If "No," explain.

5 a Did the taxpayer use reasonable approximation to assign sales under Schedule R-1, Part A, line 1c (i)-(iv)? ............................... ● ☐ Yes ☒ No
If "Yes," provide a brief description.

b Did the taxpayer change reasonable approximation method to assign sales from the last tax return filed? See Specific Instructions ............ ☐ Yes ☒ No
If "Yes," provide a brief description of the new method.

6 Are the nonbusiness items reported on Schedule R, Side 1, line 2 through line 8, and the apportionment factor items reported on Schedule R-1 treated consistently on
all state tax returns filed by the taxpayer? ☒ Yes ☐ No If "No," explain.

7 Has this corporation or any member of its combined unitary group changed the way income is apportioned or allocated to California from prior year tax returns?
See General Information I. ☐ Yes ☒ No If "Yes," explain.

8 Does the California sales figure on Schedule R-1 (or comparable sch in a combined report) include all sales shipped to California destinations? ☒ Yes ☐ No
If "No," indicate the name of the selling member and the nature of the sales activity believed to be immune.

9 Does the California sales figure on Schedule R-1 (or comparable schedule in a combined report) include all sales delivered to customers outside California
which have an ultimate destination in California? ☒ Yes ☐ No If "No," explain.

**Schedule R-3** Net Income (Loss) from the Rental of Nonbusiness Property

| | (a) Total outside California | (b) Total within California | (c) Total outside and within California (a) + (b) |
|---|---|---|---|
| 1 Income from rents | | | |
| 2 Rental deductions | | | |
| 3 Net income (loss) from rents. Subtract line 2 from line 1. Enter the result here and enter column (c) on Side 1, line 4; enter column (b) on Side 1, line 20 | | ● | ● |

**Schedule R-4** Gain (Loss) from the Sale of Nonbusiness Assets

California sales of nonbusiness assets include transactions involving: (1) real property located in California; (2) tangible personal property, if it had a situs in California at the time of sale, or if the corporation is commercially domiciled in California and not taxable in the state where the property had a situs at the time of sale; and (3) intangible personal property if the corporation's commercial domicile is in California or the income is otherwise allocable to California.

| Description of property sold | Real estate and other tangible assets | | Intangible assets | | Total |
|---|---|---|---|---|---|
| | (a) Gain (loss) from outside California | (b) Gain (loss) from within California | (c) Gain (loss) from outside California | (d) Gain (loss) from within California | (e) Gain (loss) (a) + (b) +(c) + (d) |
| 1 | ● | ● | ● | ● | ● |
| | ● | ● | ● | ● | ● |
| | ● | ● | ● | ● | ● |
| 2 Total gain (loss) | ● | ● | ● | ● | ● |

Enter total gain (loss) line 2, column (e) on Side 1, line 6 and enter total of line 2, columns (b) and (d) on Side 1, line 22.

939844 12-13-19 **Side 4** Schedule R 2019    022    8014194

CONFIDENTIAL
ALECTO_00027260
JA2465

ALECTO HEALTHCARE SERVICES LLC                                       46-0829723

| CA SCHEDULE R | PORTFOLIO INTEREST INCOME | STATEMENT 29 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| INTEREST - ALECTO HEALTHCARE SERVICES LOS ANGELES | 169,969. |
| INTEREST - ALECTO HEALTHCARE SERVICES SHERMAN LLC | 62,166. |
| INTEREST - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 48. |
| INTEREST INCOME | 88. |
| TOTAL TO SCHEDULE R, LINE 3 | 232,271. |

CONFIDENTIAL

ALECTO_00027261
**JA2466**

929931 11-05-19

**TAXABLE YEAR**
**2019**

## Depreciation and Amortization



**CALIFORNIA FORM**
**3885L**

| Name as shown on return | | | | | | | California Secretary of State (SOS) file no. |
|---|---|---|---|---|---|---|---|

California Secretary of State (SOS) file no.
201223510349

FEIN

ALECTO HEALTHCARE SERVICES LLC

46-0829723

| Tangible and intangible assets placed in service during the 2019 taxable year: | | | Depreciation of assets | | | Amortization of property | | |
|---|---|---|---|---|---|---|---|---|
| (a)<br>Description of property | (b)<br>Date placed<br>in service<br>(mm/dd/yyyy) | (c)<br>Cost or other<br>basis | (d)<br>Method of<br>figuring<br>depreciation | (e)<br>Life or<br>rate | (f)<br>Depreciation for<br>this year | (g)<br>Code<br>section | (h)<br>Period<br>or percentage | (i)<br>Amortization for<br>this year |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

1   Enter line 1, column (f) and column (i) totals ........................................................... 1

**Depreciation**

Be sure to make adjustments for any basis differences when calculating depreciation.

2   California depreciation for assets placed in service beginning before the 2019 taxable year .................................................. 2   2,356

3   Total California depreciation. Add line 1(f) totals and line 2 ................................................................................................ 3   2,356

**Amortization**

Be sure to make adjustments for any basis differences when calculating amortization.

4   California amortization for intangibles placed in service beginning before the 2019 taxable year ................................................. 4   4,704

5   Total California amortization. Add line 1(i) totals and line 4 ............................................................................................... 5   4,704

6   Total depreciation and amortization. Add line 3 and line 5. Enter the total here and on Form 568, Schedule B, line 17a,
    if from a trade or business, or on federal Form 8825, line 14, if from rental real estate activities ......................................... 6   7,060

7   IRC Section 179 expense deduction from line 12 of the worksheet in the instructions ............... 7

8   Carryover of disallowed deduction to 2020 from line 13 of the worksheet in the instructions ....... 8

022   7651194

FTB 3885L 2019

**CONFIDENTIAL**

**ALECTO_00027262**
**JA2467**

STATE ALTERNATIVE MINIMUM TAX DEPRECIATION REPORT

| Asset No. | Description | Date Acquired | AMT Method | AMT Life | AMT Cost Or Basis | AMT Accumulated | ACE Cost Or Basis | Regular Depreciation | AMT Depreciation | ACE Depreciation |
|---|---|---|---|---|---|---|---|---|---|---|
| 7 | FURNITURE | 070117 | 150DB | 7.00 | 13,467. | 4,020. | 13,467. | 2,356. | 2,024. | 0. |
| | TOTALS | | | | 13,467. | 4,020. | 13,467. | 2,356. | 2,024. | 0. |
| | MACRS AMT ADJUSTMENT | | | | | | | | 332. | |

028108
04-01-19

33

| CA TOB REC | RECONCILIATION OF CALIFORNIA ORDINARY INCOME TO FEDERAL ORDINARY INCOME | | | **2019** |
|---|---|---|---|---|

NAME | | | | EMPLOYER ID

ALECTO HEALTHCARE SERVICES LLC | | | | 46-0829723

| DESCRIPTION | FEDERAL | CALIFORNIA | DIFFERENCE |
|---|---|---|---|
| **1 A** GROSS RECEIPT OR SALES | 4,284,619. | 4,284,619. | |
| **1 B** LESS RETURNS AND ALLOWANCES | | | |
| | | | |
| **1 C** BALANCE (LINE 1A - 1B) | 4,284,619. | 4,284,619. | |
| **2** COST OF GOODS SOLD AND/OR OPERATIONS | | | |
| | | | |
| **3** GROSS PROFIT (LINE 1C - 2) | 4,284,619. | 4,284,619. | |
| **4** ORDINARY INCOME (LOSS) FROM OTHER PARTNERSHIPS AND FIDUCIARIES | <48,824,332. | <52,484,903. | 3,660,571. |
| **5** NET FARM PROFIT (LOSS) | | | |
| **6** NET GAIN (LOSS) FROM FORM 4797 OR FORM D-1 | | | |
| **7** OTHER INCOME (LOSS) | 20,980. | 20,980. | |
| | | | |
| **8** TOTAL INCOME (LOSS) (COMBINE LINES 3 THROUGH 7) | <44,518,733. | <48,179,304. | 3,660,571. |
| | | | |
| **9** SALARIES AND WAGES | 3,338,982. | 3,338,982. | |
| **10** GUARANTEED PAYMENTS | | | |
| **11** REPAIRS | 3,240. | 3,240. | |
| **12** BAD DEBTS | | | |
| **13** RENT | 68,414. | 68,414. | |
| **14** TAXES | 157,810. | 153,010. | 4,800. |
| **15** DEDUCTIBLE INTEREST EXPENSE NOT CLAIMED ELSEWHERE | 88. | 187,281. | <187,193.> |
| **16** DEPRECIATION | 1,178. | 7,060. | <5,882.> |
| **17** DEPLETION | | | |
| **18** RETIREMENT PLANS, ETC | | | |
| **19** EMPLOYEE BENEFIT PROGRAMS | 259,280. | 259,280. | |
| **20** OTHER DEDUCTIONS | 752,374. | 747,670. | 4,704. |
| | | | |
| **21** TOTAL DEDUCTIONS (ADD LINE 9 THROUGH 20) | 4,581,366. | 4,764,937. | <183,571.> |
| | | | |
| **22** ORDINARY INCOME (LOSS) (SUBTRACT LINE 21 FROM 8) | <49,100,099. | <52,944,241. | 3,844,142. |

929231 04-01-19

CONFIDENTIAL

ALECTO_00027264
**JA2469**

| CA REC | RECONCILIATION OF CALIFORNIA SOURCE AMOUNT | 2019 |
|---|---|---|

| NAME | | | EMPLOYER ID |
|---|---|---|---|
| ALECTO HEALTHCARE SERVICES LLC | | | 46-0829723 |

| DESCRIPTION | CALIFORNIA SCHEDULE K AMOUNT | NON-CALIFORNIA SOURCE AMOUNT | CALIFORNIA SOURCE AMOUNT |
|---|---|---|---|
| 1 Ordinary Income (loss) from trade or business activities | <52,944,241.> | <40,073,708.> | <12,870,533.> |
| 2 Net Income (loss) from rental real estate activities | | | |
| 3 Net income (loss) from other rental activities | | | |
| 4 Guaranteed payments to partners | | | |
| 5 Interest Income | 232,271. | 232,271. | |
| 6 Dividends | | | |
| 7 Royalties | | | |
| 8 Net short-term capital gain (loss) | | | |
| 9 Net long-term capital gain (loss) | | | |
| 10 a Total Gain under IRC Section 1231 (other than due to casualty or theft) | | | |
| b Total Loss under IRC Section 1231 (other then due to casualty or theft) | <1,918.> | | <1,918.> |
| 11 a Other portfolio income (loss) | | | |
| b Total other income | | | |
| c Total other loss | | | |
| 12 Expense deduction for recovery property (IRC Section 179) | | | |
| 13 a Charitable contributions: | | | |
| i) 50% Limit | 24,690. | | 24,690. |
| ii) 30% Limit | | | |
| iii) 20% Limit | | | |
| b Investment interest expense | | | |
| c Section 59(e) expenditures | | | |
| d Deductions related to portfolio income | | | |
| e Other deductions | | | |
| 17 a Depreciation adjustment on property in service after 1986 | <76,316.> | <57,764.> | <18,552.> |
| b Adjusted gain or (loss) | <1,030.> | <780.> | <250.> |
| c Depletion (other than oil and gas) | | | |
| d Gross income from oil, gas, and geothermal properties | | | |
| e Deductions allocable to oil, gas, and geothermal properties | | | |
| f Other alternative minimum tax items | | | |
| 18 a Tax-exempt interest income | | | |
| b Other tax-exempt income | | | |
| c Nondeductible expenses | 165,229. | 125,062. | 40,167. |
| 20 a Investment income | 232,271. | 232,271. | |
| b Investment expenses | | | |

CONFIDENTIAL

ALECTO_00027265
JA2470

1   Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 17 of 83

| TAXABLE YEAR | Member's Share of Income, | 929421 12-18-19 |
| --- | --- | --- |
| **2019** | **Deductions, Credits, etc.** | CALIFORNIA SCHEDULE<br>**K-1 (568)** |

TYB   01-01-2019   TYE   12-31-2019

LAXMAN          REDDY

CALABASAS          CA   91302

46-0829723          201223510349
ALECTO HEALTHCARE SERVICES LLC

16310 BAKE PARKWAY SUITE 200
IRVINE          CA   92618

**A** What type of entity is this member? ● See instructions.

| | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| **(1)** [X] Individual | **(4)** [ ] C Corporation | **(7)** [ ] LLP | **(10)** [ ] Exempt Organization |
| **(2)** [ ] S Corporation | **(5)** [ ] General Partnership | **(8)** [ ] LLC | **(11)** [ ] Disregarded Entity |
| **(3)** [ ] Estate/Trust | **(6)** [ ] Limited Partnership | **(9)** [ ] IRA/Keogh/SEP | |

**B** Is this member a foreign member? ............................................................................................... ●   [ ] Yes   [X] No

**C** Enter member's percentage (without regard to special allocations) of:

| | (i) Beginning | | (ii) Ending | |
| --- | --- | --- | --- | --- |
| Profit | 56.0000 | % ● | 68.0000 | % |
| Loss | 56.0000 | % ● | 68.0000 | % |
| Capital | 56.0000 | % ● | 68.0000 | % |

**D** Member's share of liabilities:

| | (i) Beginning | | (ii) Ending |
| --- | --- | --- | --- |
| Nonrecourse | $ 111,416,618 |00 ● $ | 165,001,639 |00 |
| Qualified nonrecourse financing | $ 9,862,033 |00 ● $ | 0 |00 |
| Recourse | $ 4,039,464 |00 ● $ | 5,129,523 |00 |

**E** Reportable transaction or tax shelter registration number(s)

**F (1)** Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) ............................................................... ◉ [ ]

**(2)** Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) ............................................................... ◉ [ ]
**G** Check here if this is: ● **(1)** [ ] A final Schedule K-1 (568)   **(2)** [ ] An amended Schedule K-1 (568)

**H** Is this member a resident of California? ............................................................................................... ● [X] Yes ▶ [ ] No

| For Privacy Notice, get FTB 1131 ENG/SP. | 022 | 7901194 | Schedule K-1 (568) 2019 **Side 1** |
| --- | --- | --- | --- |
| | | | 1 |

CONFIDENTIAL

ALECTO_00027266
JA2471

929422 12-18-19

| Member's name | Member's identifying number |
|---|---|
| LAXMAN REDDY | |

**I** Analysis of member's capital account: Check the box  ● **(1)** ☐ Tax Basis   **(2)** ☒ GAAP **(3)** ☐ IRC Section 704(b) Book **(4)** ☐ Other (explain)

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Member's share of line 3, line 4, and line 7 Form 568, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year, combine column (a) through column (d) |
|---|---|---|---|---|
| ● 5,606,788 ● | 7,247,559 ● | -206,248 ● ( | ) ● | 12,648,099 |

Caution: Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| (a) Distributive share items | (b) Amounts from federal Schedule K-1 (1065) | (c) California adjustments | (d) Total amounts using California law. Combine col. (b) and col. (c) | (e) California source amounts and credits |
|---|---|---|---|---|
| **Income (Loss)** | | | | |
| 1 Ordinary income (loss) from trade or business activities | -27496141 | -2,152,725 | ● -29648866 ▶ | -7,207,521 |
| 2 Net income (loss) from rental real estate activities | | | ● | ▶ |
| 3 Net income (loss) from other rental activities | | | ◉ | ◉ |
| 4 Guaranteed payments to members | | | ● | ▶ |
| 5 Interest income | 130,072 | | ● 130,072 | ▶ |
| 6 Dividends | | | ● | ▶ |
| 7 Royalties | | | ● | ▶ |
| 8 Net short-term capital gain (loss) | | | ● | ▶ |
| 9 Net long-term capital gain (loss) | | | ● | ▶ |
| 10 a Total gain under IRC Section 1231 (other than due to casualty or theft) | | | ● | ▶ |
| b Total loss under IRC Section 1231 (other than due to casualty or theft) | -1,074 | | ● -1,074 | ▶ -1,074 |
| 11 a Other portfolio income (loss). Attach schedule | | | ● | ▶ |
| b Total other income | | | ● | ▶ |
| c Total other loss | | | ● | ▶ |
| **Deductions** | | | | |
| 12 Expense deduction for recovery prop. (IRC Section 179) | | | | |
| 13 a Charitable contributions  STMT | 13,826 | | | 13,826 |
| b Investment interest expense | | | | |
| c 1 Total expenditures to which an IRC Section 59(e) election may apply | | | | |
| 2 Type of expenditures _____ | | | | |
| d Deductions related to portfolio income | | | | |
| e Other deductions | 104,828 | -104,828 | | |

Side 2 Schedule K-1 (568) 2019    022    7902194

1

CONFIDENTIAL

ALECTO_00027267
JA2472

929423  12-18-19

| Member's name | | | Member's identifying number | |
|---|---|---|---|---|
| LAXMAN REDDY | | | | |

| | (a)<br>Distributive share items | (b)<br>Amounts from<br>federal Schedule K-1<br>(1065) | (c)<br>California<br>adjustments | (d)<br>Total amounts using<br>California law. Combine<br>col. (b) and col. (c) | (e)<br>California<br>source amounts<br>and credits |
|---|---|---|---|---|---|
| **Credits** | **15 a** Total withholding (equals amount on<br>Form 592-B if calendar year LLC) | | | ● | ▶ |
| | **b** Low-income housing credit | | | | |
| | **c** Credits other than line 15b related to<br>rental real estate activities | | | | |
| | **d** Credits related to other rental<br>activities | | | | |
| | **e** Nonconsenting nonresident member's<br>tax paid by LLC | | | | |
| | **f** Other credits - Attach required<br>schedules or statements | | | | |
| **Alternative Minimum Tax (AMT) Items** | **17 a** Depreciation adjustment on property<br>placed in service after 1986 | −26,799 | −15,938 ● | −42,737 ● | −10,389 |
| | **b** Adjusted gain or loss | −577 | | −577 | −140 |
| | **c** Depletion (other than oil & gas) | | | | |
| | **d** Gross income from oil, gas, and<br>geothermal properties | | | | |
| | **e** Deductions allocable to oil, gas, and<br>geothermal properties | | | | |
| | **f** Other alternative minimum tax<br>items | | | | |
| **Tax-exempt income and Nondeductible Expenses** | **18 a** Tax-exempt interest income | | | | |
| | **b** Other tax-exempt income | | | | |
| | **c** Nondeductible expenses   STMT | 89,035 | 3,494 | 92,529 | 22,493 |
| **Distributions** | **19 a** Distributions of money (cash and<br>marketable securities) | | | ● | |
| | **b** Distributions of property other than money | | | ● | |
| **Other Information** | **20 a** Investment income | 130,072 | | 130,072 | |
| | **b** Investment expenses | | | | |
| | **c** Other information. See instructions | STMT | | | |

022    7903194

Schedule K-1 (568) 2019  **Side 3**
1

**CONFIDENTIAL**

ALECTO_00027268
**JA2473**

929424 12-18-19

**Member's name**
LAXMAN REDDY

**Member's identifying number**

**Other Member Information**

**Table 1** - Member's share of nonbusiness income from intangibles (source of income is dependent on residence or commercial domicile of the member):

Interest .. $ | 130,072 | Sec. 1231 Gains/Losses  $ | | Capital Gains/Losses  $ |

Dividends  $ | | Royalties .................. $ | | Other ..................... $ |

FOR USE BY MEMBERS ONLY - See instructions.

**Table 2** - Member's share of distributive items.

A. Member's share of the LLC's business income. See instructions.    $
B. Member's share of nonbusiness income from real and tangible personal property sourced or allocable to California.

Capital Gains/Losses ........................... $ | | Rents/Royalties ..................... $ |

Sec. 1231 Gains/Losses ........................ $ | | Other ........................................ $ |

C. Member's distributive share of the LLC's property, payroll, and sales:

| Factors | Total within and outside California | Total within California |
|---|---|---|
| Property: Beginning ................................ $ | | $ |
| Property: Ending ................................ $ | | $ |
| Property: Annual rent expense ............. $ | | $ |
| Payroll ................................................. $ | | $ |
| Sales ................................................. $ | | $ |

CONFIDENTIAL

ALECTO_00027269
JA2474

ALECTO HEALTHCARE SERVICES LLC                                       46-0829723

| CA SCHEDULE K-1 | CHARITABLE CONTRIBUTIONS | | |
|---|---|---|---|

| DESCRIPTION | | AMOUNT | AMOUNT CA SOURCE |
|---|---|---|---|
| CHARITABLE CONTRIBUTIONS - 50 PERCENT LIMIT | | 13,826. | |
| TOTAL TO SCHEDULE K-1, LINE 13A | | 13,826. | |

| CA SCHEDULE K-1 | COLUMN C RECONCILIATION |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| ORDINARY INCOME (LOSS) | <27,496,141.> |
| INTEREST INCOME | 130,072. |
| SECTION 1231 GAIN (LOSS) | <1,074.> |
| CHARITABLE CONTRIBUTIONS | <13,826.> |
| OTHER DEDUCTIONS | <104,828.> |
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 1,074. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 896. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | <4,328.> |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | <1,854.> |
| NONDEDUCTIBLE EXPENSES | <89,035.> |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 3,020,339. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 1,165,518. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 20,979,921. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 2,123,352. |
| INTEREST EXPENSE | <104,828.> |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 104,828. |
| SALARIES AND WAGES | 83,666. |
| TOTAL TO SCHEDULE K-1 ANALYSIS OF CAPITAL ACCOUNT, COLUMN C | <206,248.> |

| CA SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| OFFICER'S LIFE INSURANCE | 14,469. |
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 3,026. |
| NONDEDUCTIBLE EXPENSE FROM PASSTHROUGH | 72,346. |
| STATE INCOME/FRANCHISE TAXES | 2,688. |
| TOTAL TO SCHEDULE K-1, LINE 18C | 92,529. |

CONFIDENTIAL                                          ALECTO_00027270
                                                              JA2475

ALECTO HEALTHCARE SERVICES LLC                                      46-0829723

═══════════════════════════════════════════════════════════════════════════════

CA SCHEDULE K-1    AGGREGATE GROSS RECEIPTS FOR AMT EXCLUSION

───────────────────────────────────────────────────────────────────────────────

| DESCRIPTION | AMOUNT |
|---|---|
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES LOS ANGELES - ALECTO HEA | 95,183. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALECTO HEA | 34,813. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC - ALECT | 27. |
| GROSS SALES LESS RETURNS | 2,399,387. |
| TRADE OR BUSINESS OTHER INCOME | 11,749. |
| INTEREST | 49. |
| TOTAL | 2,541,208. |

CONFIDENTIAL                                                    ALECTO_00027271
                                                                    **JA2476**

1    Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 23 of 83

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

Name: **ALECTO HEALTHCARE SERVICES LLC**                   46-0829723
For:  **LAXMAN REDDY**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC – ALE |

| | Activity - 1 | Activity - 4 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -3,238,669. | -3,016,453. | -2,157,291. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 95,183. | | 34,813. |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | -1,074. | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 2,688. | 3,214. | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -83,994. | -1,887. | |
| Adjusted gain or loss | | -577. | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 95,183. | | 34,813. |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
| - Unadjusted basis of assets | | | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

42                                                                                          1

10340904 146892 629917                 2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027272
JA2477

## Schedule of Activities

For calendar year 2019, or tax year beginning           , 2019, and ending

Name: **ALECTO HEALTHCARE SERVICES LLC**                   46-0829723

For:    **LAXMAN REDDY**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code | Description | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | | |

| | Activity - 6 | Activity - | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -20,979,224. | | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 27. | | |
| Dividends - Ordinary dividends | | | |
|    - Qualified dividends | | | |
|    - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
|    - Collectibles (28%) gain (loss) | | | |
|    - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
|    - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
|    - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 42,958. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 27. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
|    - Unadjusted basis of assets | | | |
|    - REIT dividends | | | |
|    - Cooperative qualified business income | | | |
|    - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

43                                       1

CONFIDENTIAL

ALECTO_00027273
**JA2478**

TAXABLE YEAR
2019 **Member's Share of Income, Deductions, Credits, etc.**

929421 12-18-19
CALIFORNIA SCHEDULE
**K-1 (568)**

TYB   01-01-2019   TYE   12-31-2019

ROGER            KRISSMAN

UPLAND            CA   91786

46-0829723        201223510349
ALECTO HEALTHCARE SERVICES LLC

16310 BAKE PARKWAY SUITE 200
IRVINE            CA   92618

---

**A** What type of entity is this member? ● See instructions.

| | | | | | |
|---|---|---|---|---|---|
| (1) [X] Individual | (4) [ ] C Corporation | (7) [ ] LLP | (10) [ ] Exempt Organization | | |
| (2) [ ] S Corporation | (5) [ ] General Partnership | (8) [ ] LLC | (11) [ ] Disregarded Entity | | |
| (3) [ ] Estate/Trust | (6) [ ] Limited Partnership | (9) [ ] IRA/Keogh/SEP | | | |

**B** Is this member a foreign member? ...................................................................................... ● [ ] Yes [X] No

**C** Enter member's percentage (without regard to special allocations) of:

| | (i) Beginning | | (ii) Ending | |
|---|---|---|---|---|
| Profit | 10.0000 % ● | | 10.0000 % | |
| Loss | 10.0000 % ● | | 10.0000 % | |
| Capital | 10.0000 % ● | | 10.0000 % | |

| | (i) Beginning | | (ii) Ending | |
|---|---|---|---|---|
| **D** Member's share of liabilities: | | | | |
| Nonrecourse | $ 19,895,824 00 | ● $ | 24,264,947 00 | |
| Qualified nonrecourse financing | $ 1,761,077 00 | ● $ | 0 00 | |
| Recourse | $ 0 00 | ● $ | 30,000 00 | |

**E** Reportable transaction or tax shelter registration number(s)

**F** (1) Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) ...................................................... ◉ [ ]

(2) Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) ...................................................... ◉ [ ]

**G** Check here if this is: ● (1) [ ] A final Schedule K-1 (568)   (2) [ ] An amended Schedule K-1 (568)

**H** Is this member a resident of California? ...................................................................................... ● [X] Yes ▶ [ ] No

---

| | | | |
|---|---|---|---|
| For Privacy Notice, get FTB 1131 ENG/SP. | 022 | 7901194 | Schedule K-1 (568) 2019 **Side 1** |
| | | | 2 |

**CONFIDENTIAL**

**2**   Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 26 of 83

929422 12-18-19

| Member's name | Member's identifying number |
|---|---|
| ROGER KRISSMAN | |

**I** Analysis of member's capital account: Check the box   ● **(1)** ☐ Tax Basis   **(2)** ☒ GAAP **(3)** ☐ IRC Section 704(b) Book **(4)** ☐ Other (explain)

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Member's share of line 3, line 4, and line 7 Form 568, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year, combine column (a) through column (d) |
|---|---|---|---|---|
| ● 1,038,816 ● | 894,448 ● | -36,827 ●( | ) ● | 1,896,437 |

**Caution:** Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| | (a) Distributive share items | (b) Amounts from federal Schedule K-1 (1065) | (c) California adjustments | (d) Total amounts using California law. Combine col. (b) and col. (c) | (e) California source amounts and credits |
|---|---|---|---|---|---|
| | **1** Ordinary income (loss) from trade or business activities | -4,909,885 | -384,406 | ● -5,294,291 ▶ | -1,287,021 |
| | **2** Net income (loss) from rental real estate activities | | | ● | ▶ |
| | **3** Net income (loss) from other rental activities | | | ◉ | ◉ |
| | **4** Guaranteed payments to members | | | ● | ▶ |
| | **5** Interest income | 23,227 | | ● 23,227 | ▶ |
| | **6** Dividends | | | ● | ▶ |
| Income (Loss) | **7** Royalties | | | ● | ▶ |
| | **8** Net short-term capital gain (loss) | | | ● | ▶ |
| | **9** Net long-term capital gain (loss) | | | ● | ▶ |
| | **10 a** Total gain under IRC Section 1231 (other than due to casualty or theft) | | | ● | ▶ |
| | **b** Total loss under IRC Section 1231 (other than due to casualty or theft) | -192 | | ● -192 | ▶ -192 |
| | **11 a** Other portfolio income (loss). Attach schedule | | | ● | ▶ |
| | **b** Total other income | | | ● | ▶ |
| | **c** Total other loss | | | ● | ▶ |
| | **12** Expense deduction for recovery prop. (IRC Section 179) | | | | |
| | **13 a** Charitable contributions STMT | 2,469 | | 2,469 | |
| Deductions | **b** Investment interest expense | | | | |
| | **c 1** Total expenditures to which an IRC Section 59(e) election may apply | | | | |
| | **2** Type of expenditures | | | | |
| | **d** Deductions related to portfolio income | | | | |
| | **e** Other deductions | 18,719 | -18,719 | | |

**Side 2** Schedule K-1 (568) 2019    022    7902194

2

CONFIDENTIAL

ALECTO_00027275
JA2480

929423  12-18-19

| Member's name | | | | Member's identifying number |
|---|---|---|---|---|
| ROGER KRISSMAN | | | | |

| | (a)<br>Distributive share items | (b)<br>Amounts from<br>federal Schedule K-1<br>(1065) | (c)<br>California<br>adjustments | (d)<br>Total amounts using<br>California law. Combine<br>col. (b) and col. (c) | (e)<br>California<br>source amounts<br>and credits |
|---|---|---|---|---|---|
| **Credits** | **15 a** Total withholding (equals amount on<br>Form 592-B if calendar year LLC) ...... | | | ● | ▶ |
| | **b** Low-income housing credit ............... | | | | |
| | **c** Credits other than line 15b related to<br>rental real estate activities ................. | | | | |
| | **d** Credits related to other rental<br>activities ........................................ | | | | |
| | **e** Nonconsenting nonresident member's<br>tax paid by LLC ............................. | | | | |
| | **f** Other credits - Attach required<br>schedules or statements .................. | | | | |
| **Alternative Minimum Tax (AMT) Items** | **17 a** Depreciation adjustment on property<br>placed in service after 1986 .............. | −4,785 | −2,847 ◉ | −7,632 ◉ | −1,855 |
| | **b** Adjusted gain or loss ...................... | −103 | | −103 | −25 |
| | **c** Depletion (other than oil & gas) ............ | | | | |
| | **d** Gross income from oil, gas, and<br>geothermal properties ........................ | | | | |
| | **e** Deductions allocable to oil, gas, and<br>geothermal properties ........................ | | | | |
| | **f** Other alternative minimum tax<br>items .............................................. | | | | |
| **Tax-exempt Income and Nondeductible Expenses** | **18 a** Tax-exempt interest income ............... | | | | |
| | **b** Other tax-exempt income ................... | | | | |
| | **c** Nondeductible expenses .....STMT.... | 15,897 | 624 | 16,521 | 4,016 |
| **Distributions** | **19 a** Distributions of money (cash and<br>marketable securities) ........................ | | | ◉ | |
| | **b** Distributions of property other than money | | | ◉ | |
| **Other Information** | **20 a** Investment income ............................ | 23,227 | | 23,227 | |
| | **b** Investment expenses ........................ | | | | |
| | **c** Other information. See instructions ... | STMT | | | |

022   7903194

Schedule K-1 (568) 2019  **Side 3**
2

CONFIDENTIAL

ALECTO_00027276
**JA2481**

929424 12-18-19

**Member's name**
ROGER KRISSMAN

**Member's identifying number**

**Other Member Information**

**Table 1** - Member's share of nonbusiness income from intangibles (source of income is dependent on residence or commercial domicile of the member):

Interest ... $    23,227    Sec. 1231 Gains/Losses  $                    Capital Gains/Losses  $

Dividends  $                    Royalties .................  $                    Other ....................  $

FOR USE BY MEMBERS ONLY - See instructions.

**Table 2** - Member's share of distributive items.

A. Member's share of the LLC's business income. See instructions.    $

B. Member's share of nonbusiness income from real and tangible personal property sourced or allocable to California.

Capital Gains/Losses ............................ $                    Rents/Royalties .................... $

Sec. 1231 Gains/Losses ...................... $                    Other ........................................ $

C. Member's distributive share of the LLC's property, payroll, and sales:

| Factors | Total within and outside California | Total within California |
|---|---|---|
| Property: Beginning ............................. $ | | $ |
| Property: Ending ............................. $ | | $ |
| Property: Annual rent expense ............. $ | | $ |
| Payroll ............................................. $ | | $ |
| Sales ............................................. $ | | $ |

**Side 4** Schedule K-1 (568) 2019    022    7904194    2

CONFIDENTIAL

ALECTO_00027277
JA2482

ALECTO HEALTHCARE SERVICES LLC 46-0829723

CA SCHEDULE K-1 CHARITABLE CONTRIBUTIONS

| DESCRIPTION | AMOUNT | AMOUNT CA SOURCE |
|---|---|---|
| CHARITABLE CONTRIBUTIONS - 50 PERCENT LIMIT | 2,469. | |
| TOTAL TO SCHEDULE K-1, LINE 13A | 2,469. | |

CA SCHEDULE K-1 COLUMN C RECONCILIATION

| DESCRIPTION | AMOUNT |
|---|---|
| ORDINARY INCOME (LOSS) | <4,909,885.> |
| INTEREST INCOME | 23,227. |
| SECTION 1231 GAIN (LOSS) | <192.> |
| CHARITABLE CONTRIBUTIONS | <2,469.> |
| OTHER DEDUCTIONS | <18,719.> |
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 192. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 160. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | <773.> |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | <331.> |
| NONDEDUCTIBLE EXPENSES | <15,897.> |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 539,330. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 208,122. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 3,746,308. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 379,160. |
| INTEREST EXPENSE | <18,719.> |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 18,719. |
| SALARIES AND WAGES | 14,940. |
| TOTAL TO SCHEDULE K-1 ANALYSIS OF CAPITAL ACCOUNT, COLUMN C | <36,827.> |

CA SCHEDULE K-1 NONDEDUCTIBLE EXPENSES

| DESCRIPTION | AMOUNT |
|---|---|
| OFFICER'S LIFE INSURANCE | 2,583. |
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 540. |
| NONDEDUCTIBLE EXPENSE FROM PASSTHROUGH | 12,918. |
| STATE INCOME/FRANCHISE TAXES | 480. |
| TOTAL TO SCHEDULE K-1, LINE 18C | 16,521. |

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

CA SCHEDULE K-1    AGGREGATE GROSS RECEIPTS FOR AMT EXCLUSION

| DESCRIPTION | AMOUNT |
|---|---|
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES LOS ANGELES - ALECTO HEA | 16,996. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALECTO HEA | 6,217. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC - ALECT | 5. |
| GROSS SALES LESS RETURNS | 428,462. |
| TRADE OR BUSINESS OTHER INCOME | 2,098. |
| INTEREST | 9. |
| TOTAL | 453,787. |

CONFIDENTIAL

ALECTO_00027279
**JA2484**

**2**   Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 31 of 83

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

Name: **ALECTO HEALTHCARE SERVICES LLC**           46-0829723

For: **ROGER KRISSMAN**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC – ALE |

| | Activity - 1 | Activity - 4 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -578,317. | -538,637. | -385,220. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 16,996. | | 6,217. |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | -192. | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 480. | 574. | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -14,999. | -337. | |
| Adjusted gain or loss | | -103. | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 16,996. | | 6,217. |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
| - Unadjusted basis of assets | | | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

50                                                                                                2

CONFIDENTIAL                                                                       ALECTO_00027280
                                                                                          JA2485

**2**   Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 32 of 83

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**                                    46-0829723

For: **ROGER KRISSMAN**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -3,746,183. | | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 5. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 7,671. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 5. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
| - Unadjusted basis of assets | | | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

51

2

10340904 146892 629917                    2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                                        **ALECTO_00027281**
                                                                              **JA2486**

| TAXABLE YEAR **Member's Share of Income,** | | 929421 12-18-19 CALIFORNIA SCHEDULE |
|---|---|---|
| **2019** **Deductions, Credits, etc.** | ■ | **K-1 (568)** |

TYB    01-01-2019    TYE    12-31-2019

MICHAEL       J    SARRAO

MISSION VIEJO        CA    92692

46-0829723          201223510349
ALECTO HEALTHCARE SERVICES LLC

16310 BAKE PARKWAY SUITE 200
IRVINE              CA    92618

---

**A** What type of entity is this member? ● See instructions.

(1) ☒ Individual        (4) ☐ C Corporation        (7) ☐ LLP        (10) ☐ Exempt Organization
(2) ☐ S Corporation     (5) ☐ General Partnership   (8) ☐ LLC        (11) ☐ Disregarded Entity

(3) ☐ Estate/Trust      (6) ☐ Limited Partnership   (9) ☐ IRA/Keogh/SEP

**B** Is this member a foreign member? .................................................................................... ● ☐ Yes ☒ No

**C** Enter member's percentage (without regard to special allocations) of:

| | (i) Beginning | | (ii) Ending | |
|---|---|---|---|---|
| Profit | 7.0000 | % ● | 7.0000 | % |
| Loss | 7.0000 | % ● | 7.0000 | % |
| Capital | 7.0000 | % ● | 7.0000 | % |

| | (i) Beginning | | (ii) Ending | |
|---|---|---|---|---|
| **D** Member's share of liabilities: | | | | |
| Nonrecourse | $ 13,927,078 | 00 ● $ | 16,985,463 | 00 |
| Qualified nonrecourse financing | $ 1,232,754 | 00 ● $ | 0 | 00 |
| Recourse | $ 0 | 00 ● $ | 0 | 00 |

**E** Reportable transaction or tax shelter registration number(s)

**F** (1) Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) ........................................................ ◉ ☐

(2) Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) ............................................... ◉ ☐
**G** Check here if this is: ● (1) ☐ A final Schedule K-1 (568)   (2) ☐ An amended Schedule K-1 (568)

**H** Is this member a resident of California? .................................................................................... ● ☒ Yes ▶ ☐ No

| ■ For Privacy Notice, get FTB 1131 ENG/SP. | 022 | 7901194 | | Schedule K-1 (568) 2019 **Side 1** ■ |
|---|---|---|---|---|

3

**CONFIDENTIAL**

929422 12-18-19

| Member's name | Member's identifying number |
|---|---|
| MICHAEL  J  SARRAO | |

I Analysis of member's capital account: Check the box  ● (1) ☐ Tax Basis  (2) ☒ GAAP (3) ☐  IRC Section 704(b) Book (4) ☐  Other (explain)

| (a)<br>Capital account at beginning of year | (b)<br>Capital contributed during year | (c)<br>Member's share of line 3, line 4, and<br>line 7 Form 568, Schedule M-2 | (d)<br>Withdrawals and distributions | (e)<br>Capital account at end of year,<br>combine column (a) through column (d) |
|---|---|---|---|---|
| ●    727,207 ● | 626,113 ● | -25,786 ● ( | ) ● | 1,327,534 |

Caution: Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| | (a)<br>Distributive share items | (b)<br>Amounts from<br>federal Schedule K-1<br>(1065) | (c)<br>California<br>adjustments | (d)<br>Total amounts using<br>California law. Combine<br>col. (b) and col. (c) | (e)<br>California<br>source amounts<br>and credits |
|---|---|---|---|---|---|
| **Income (Loss)** | 1 Ordinary income (loss) from trade<br>or business activities | -3,437,063 | -269,094 ● | -3,706,157 ▶ | -900,952 |
| | 2 Net income (loss) from rental real<br>estate activities | | | ● | ▶ |
| | 3 Net income (loss) from other rental<br>activities | | | ◉ | ◉ |
| | 4 Guaranteed payments to members | | | ● | ▶ |
| | 5 Interest income | 16,258 | | ●    16,258 | ▶ |
| | 6 Dividends | | | ● | ▶ |
| | 7 Royalties | | | ● | ▶ |
| | 8 Net short-term capital gain (loss) | | | ● | ▶ |
| | 9 Net long-term capital gain (loss) | | | ● | ▶ |
| | 10 a Total gain under IRC Section 1231<br>(other than due to casualty or theft) | | | ● | ▶ |
| | b Total loss under IRC Section 1231<br>(other than due to casualty or theft) | -134 | | ●    -134 | ▶    -134 |
| | 11 a Other portfolio income (loss).<br>Attach schedule | | | ● | ▶ |
| | b Total other income | | | ● | ▶ |
| | c Total other loss | | | ● | ▶ |
| **Deductions** | 12 Expense deduction for recovery prop.<br>(IRC Section 179) | | | | |
| | 13 a Charitable contributions   STMT | 1,729 | | 1,729 | |
| | b Investment interest expense | | | | |
| | c 1 Total expenditures to which an IRC<br>Section 59(e) election may apply | | | | |
| | 2 Type of expenditures | | | | |
| | d Deductions related to portfolio<br>income | | | | |
| | e Other deductions | 13,104 | -13,104 | | |

CONFIDENTIAL

ALECTO_00027283
JA2488

929423 12-18-19

| Member's name | | | | Member's identifying number |
|---|---|---|---|---|
| MICHAEL J SARRAO | | | | |

| | (a)<br>Distributive share items | (b)<br>Amounts from<br>federal Schedule K-1<br>(1065) | (c)<br>California<br>adjustments | (d)<br>Total amounts using<br>California law. Combine<br>col. (b) and col. (c) | (e)<br>California<br>source amounts<br>and credits |
|---|---|---|---|---|---|
| **Credits** | 15 a Total withholding (equals amount on<br>Form 592-B if calendar year LLC) ...... | | | ● | ▶ |
| | b Low-income housing credit ............... | | | | |
| | c Credits other than line 15b related to<br>rental real estate activities ................. | | | | |
| | d Credits related to other rental<br>activities ...................................... | | | | |
| | e Nonconsenting nonresident member's<br>tax paid by LLC ............................... | | | | |
| | f Other credits - Attach required<br>schedules or statements ............... | | | | |
| **Alternative Minimum Tax<br>(AMT) Items** | 17 a Depreciation adjustment on property<br>placed in service after 1986 .............. | -3,350 | -1,992 ● | -5,342 ● | -1,299 |
| | b Adjusted gain or loss ..................... | -72 | | -72 | -18 |
| | c Depletion (other than oil & gas) ............ | | | | |
| | d Gross income from oil, gas, and<br>geothermal properties ..................... | | | | |
| | e Deductions allocable to oil, gas, and<br>geothermal properties ..................... | | | | |
| | f Other alternative minimum tax<br>items ........................................ | | | | |
| **Tax-exempt Income<br>and Nondeductible<br>Expenses** | 18 a Tax-exempt interest income ............... | | | | |
| | b Other tax-exempt income ................. | | | | |
| | c Nondeductible expenses ...STMT... | 11,131 | 437 | 11,568 | 2,812 |
| **Distributions** | 19 a Distributions of money (cash and<br>marketable securities) ..................... | | | ● | |
| | b Distributions of property other than money | | | ● | |
| **Other<br>Information** | 20 a Investment income ........................... | 16,258 | | 16,258 | |
| | b Investment expenses ..................... | | | | |
| | c Other information. See instructions ... | STMT | | | |

CONFIDENTIAL

ALECTO_00027284
**JA2489**

929424 12-18-19

| Member's name | Member's identifying number |
|---|---|
| MICHAEL J SARRAO | |

**Other Member Information**

Table 1 - Member's share of nonbusiness income from intangibles (source of income is dependent on residence or commercial domicile of the member):

Interest __ $ [ 16,258 ] Sec. 1231 Gains/Losses $ [ ]    Capital Gains/Losses $ [ ]

Dividends $ [ ]    Royalties ................. $ [ ]    Other ..................... $ [ ]

FOR USE BY MEMBERS ONLY - See instructions.

Table 2 - Member's share of distributive items.

A. Member's share of the LLC's business income. See instructions. $ [ ]

B. Member's share of nonbusiness income from real and tangible personal property sourced or allocable to California.

Capital Gains/Losses ............................ $ [ ]    Rents/Royalties ...................... $ [ ]

Sec. 1231 Gains/Losses ...................... $ [ ]    Other ......................................... $ [ ]

C. Member's distributive share of the LLC's property, payroll, and sales:

| Factors | | Total within and outside California | Total within California |
|---|---|---|---|
| Property: Beginning ............................. $ | | [ ] | $ [ ] |
| Property: Ending ............................ $ | | [ ] | $ [ ] |
| Property: Annual rent expense ............... $ | | [ ] | $ [ ] |
| Payroll ............................................. $ | | [ ] | $ [ ] |
| Sales ............................................ $ | | [ ] | $ [ ] |

CONFIDENTIAL    ALECTO_00027285
**JA2490**

ALECTO HEALTHCARE SERVICES LLC                                              46-0829723

| CA SCHEDULE K-1 | CHARITABLE CONTRIBUTIONS | | |
|---|---|---|---|
| DESCRIPTION | | AMOUNT | AMOUNT CA SOURCE |
| CHARITABLE CONTRIBUTIONS - 50 PERCENT LIMIT | | 1,729. | |
| TOTAL TO SCHEDULE K-1, LINE 13A | | 1,729. | |

| CA SCHEDULE K-1 | COLUMN C RECONCILIATION |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| ORDINARY INCOME (LOSS) | <3,437,063.> |
| INTEREST INCOME | 16,258. |
| SECTION 1231 GAIN (LOSS) | <134.> |
| CHARITABLE CONTRIBUTIONS | <1,729.> |
| OTHER DEDUCTIONS | <13,104.> |
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 134. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 112. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | <541.> |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | <232.> |
| NONDEDUCTIBLE EXPENSES | <11,131.> |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 377,548. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 145,692. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 2,622,524. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 265,422. |
| INTEREST EXPENSE | <13,104.> |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 13,104. |
| SALARIES AND WAGES | 10,458. |
| TOTAL TO SCHEDULE K-1 ANALYSIS OF CAPITAL ACCOUNT, COLUMN C | <25,786.> |

| CA SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| OFFICER'S LIFE INSURANCE | 1,809. |
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 378. |
| NONDEDUCTIBLE EXPENSE FROM PASSTHROUGH | 9,045. |
| STATE INCOME/FRANCHISE TAXES | 336. |
| TOTAL TO SCHEDULE K-1, LINE 18C | 11,568. |

CONFIDENTIAL                                              ALECTO_00027286
                                                                          JA2491

ALECTO HEALTHCARE SERVICES LLC                                  46-0829723

---

CA SCHEDULE K-1    AGGREGATE GROSS RECEIPTS FOR AMT EXCLUSION

---

| DESCRIPTION | AMOUNT |
|---|---|
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES LOS ANGELES - ALECTO HEA | 11,898. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALECTO HEA | 4,351. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC - ALECT | 3. |
| GROSS SALES LESS RETURNS | 299,923. |
| TRADE OR BUSINESS OTHER INCOME | 1,468. |
| INTEREST | 6. |
| TOTAL | 317,649. |

CONFIDENTIAL                                        ALECTO_00027287
                                                              **JA2492**

3   Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 39 of 83
## Schedule of Activities

For calendar year 2019, or tax year beginning , 2019, and ending .

Name: **ALECTO HEALTHCARE SERVICES LLC**     46-0829723

For: **MICHAEL J SARRAO**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |

| | Activity - 1 | Activity - 4 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -404,839. | -377,062. | -269,665. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 11,898. | | 4,351. |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | -134. | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 336. | 402. | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -10,499. | -236. | |
| Adjusted gain or loss | | -72. | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 11,898. | | 4,351. |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
| - Unadjusted basis of assets | | | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

58   3

CONFIDENTIAL   ALECTO_00027288
**JA2493**

3    Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 40 of 83
**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

Name: **ALECTO HEALTHCARE SERVICES LLC**                           46-0829723
For:  **MICHAEL J SARRAO**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -2,622,437. | | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 3. | | |
| Dividends - Ordinary dividends | | | |
|     - Qualified dividends | | | |
|     - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
|     - Collectibles (28%) gain (loss) | | | |
|     - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
|     - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
|     - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 5,370. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 3. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
|     - Unadjusted basis of assets | | | |
|     - REIT dividends | | | |
|     - Cooperative qualified business income | | | |
|     - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence  2 - Multi-Family Residence  3 - Vacation or Short-Term Rental  4 - Commercial  5 - Land  6 - Royalties  7 - Self-Rental  8 - Other

59                                                                                3

10340904 146892 629917          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

**CONFIDENTIAL**

ALECTO_00027289
**JA2494**

| TAXABLE YEAR **Member's Share of Income,** | | 929421 12-18-19 CALIFORNIA SCHEDULE |
|---|---|---|
| **2019** Deductions, Credits, etc. | | **K-1 (568)** |

TYB   01-01-2019   TYE   12-31-2019

PANCH          JEYAKUMAR

TUSTIN              CA   92782

46-0829723          201223510349
ALECTO HEALTHCARE SERVICES LLC

16310 BAKE PARKWAY SUITE 200
IRVINE              CA   92618

---

**A** What type of entity is this member? ● See instructions.

(1) [X] Individual      (4) ☐ C Corporation      (7) ☐ LLP      (10) ☐ Exempt Organization
(2) ☐ S Corporation    (5) ☐ General Partnership  (8) ☐ LLC      (11) ☐ Disregarded Entity

(3) ☐ Estate/Trust     (6) ☐ Limited Partnership  (9) ☐ IRA/Keogh/SEP

**B** Is this member a foreign member? ................................................... ● ☐ Yes [X] No

**C** Enter member's percentage (without regard to special allocations) of:

| | (i) Beginning | | (ii) Ending | |
|---|---|---|---|---|
| Profit | 7.0000 | % ● | 0.0000 | % |
| Loss | 7.0000 | % ● | 0.0000 | % |
| Capital | 7.0000 | % ● | 0.0000 | % |

**D** Member's share of liabilities:

| | (i) Beginning | | (ii) Ending | |
|---|---|---|---|---|
| Nonrecourse | $ 13,927,077 | 00 ● $ | | 00 |
| Qualified nonrecourse financing | $ 1,232,754 | 00 ● $ | 0 | 00 |
| Recourse | $ 0 | 00 ● $ | 0 | 00 |

**E** Reportable transaction or tax shelter registration number(s)

**F (1)** Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) ........................................... ◉ ☐

**(2)** Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) ........................................... ◉ ☐
**G** Check here if this is:  ● **(1)** [X] A final Schedule K-1 (568)   **(2)** ☐ An amended Schedule K-1 (568)

**H** Is this member a resident of California? ........................................................... ● [X] Yes ▶ ☐ No

| For Privacy Notice, get FTB 1131 ENG/SP. | 022 | 7901194 | Schedule K-1 (568) 2019 **Side 1** |
|---|---|---|---|
| | | | 4 |

**CONFIDENTIAL**

ALECTO_00027290
**JA2495**

4       Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 42 of 83

929422 12-18-19

| Member's name | Member's identifying number |
|---|---|
| PANCH JEYAKUMAR | |

**I** Analysis of member's capital account: Check the box  ● **(1)** ☐ Tax Basis   **(2)** ☒ GAAP **(3)** ☐   IRC Section 704(b) Book **(4)** ☐   Other (explain)

| (a)<br>Capital account at beginning of year | (b)<br>Capital contributed during year | (c)<br>Member's share of line 3, line 4, and<br>line 7 Form 568, Schedule M-2 | (d)<br>Withdrawals and distributions | (e)<br>Capital account at end of year,<br>combine column (a) through column (d) |
|---|---|---|---|---|
| ● 727,229 ● | 626,113 ● | −25,778 ●( | 1,327,564) ● | 0 |

**Caution:** Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| | (a)<br>Distributive share items | (b)<br>Amounts from<br>federal Schedule K-1<br>(1065) | (c)<br>California<br>adjustments | (d)<br>Total amounts using<br>California law. Combine<br>col. (b) and col. (c) | (e)<br>California<br>source amounts<br>and credits |
|---|---|---|---|---|---|
| **Income (Loss)** | 1 Ordinary income (loss) from trade or business activities | −3,437,061 | −269,094 ● | −3,706,155 ▶ | −900,951 |
| | 2 Net income (loss) from rental real estate activities | | | ● | ▶ |
| | 3 Net income (loss) from other rental activities | | | ◉ | ◉ |
| | 4 Guaranteed payments to members | | | ● | ▶ |
| | 5 Interest income | 16,259 | | ● 16,259 ▶ | |
| | 6 Dividends | | | ● | ▶ |
| | 7 Royalties | | | ● | ▶ |
| | 8 Net short-term capital gain (loss) | | | ● | ▶ |
| | 9 Net long-term capital gain (loss) | | | ● | ▶ |
| | 10 a Total gain under IRC Section 1231 (other than due to casualty or theft) | | | ● | ▶ |
| | b Total loss under IRC Section 1231 (other than due to casualty or theft) | −134 | | ● −134 ▶ | −134 |
| | 11 a Other portfolio income (loss). Attach schedule | | | ● | ▶ |
| | b Total other income | | | ● | ▶ |
| | c Total other loss | | | ● | ▶ |
| **Deductions** | 12 Expense deduction for recovery prop. (IRC Section 179) | | | | |
| | 13 a Charitable contributions   STMT | 1,728 | | 1,728 | |
| | b Investment interest expense | | | | |
| | c 1 Total expenditures to which an IRC Section 59(e) election may apply | | | | |
| | 2 Type of expenditures | | | | |
| | d Deductions related to portfolio income | | | | |
| | e Other deductions | 13,104 | −13,104 | | |

CONFIDENTIAL

ALECTO_00027291
JA2496

929423 12-18-19

| Member's name | | | | Member's identifying number | |
|---|---|---|---|---|---|
| PANCH JEYAKUMAR | | | | | |

| | (a) Distributive share items | (b) Amounts from federal Schedule K-1 (1065) | (c) California adjustments | (d) Total amounts using California law. Combine col. (b) and col. (c) | (e) California source amounts and credits |
|---|---|---|---|---|---|
| **Credits** | **15 a** Total withholding (equals amount on Form 592-B if calendar year LLC) ...... | | | ● | ▶ |
| | **b** Low-income housing credit ............... | | | | |
| | **c** Credits other than line 15b related to rental real estate activities .................. | | | | |
| | **d** Credits related to other rental activities ........................................ | | | | |
| | **e** Nonconsenting nonresident member's tax paid by LLC ............................. | | | | |
| | **f** Other credits · Attach required schedules or statements ................ | | | | |
| **Alternative Minimum Tax (AMT) Items** | **17 a** Depreciation adjustment on property placed in service after 1986 .............. | -3,350 | -1,991 ⊙ | -5,341 ⊙ | -1,298 |
| | **b** Adjusted gain or loss ..................... | -72 | | -72 | -18 |
| | **c** Depletion (other than oil & gas) ............ | | | | |
| | **d** Gross income from oil, gas, and geothermal properties ........................ | | | | |
| | **e** Deductions allocable to oil, gas, and geothermal properties ........................ | | | | |
| | **f** Other alternative minimum tax items ................................................ | | | | |
| **Tax-exempt Income and Nondeductible Expenses** | **18 a** Tax-exempt interest income ............... | | | | |
| | **b** Other tax-exempt income ................. | | | | |
| | **c** Nondeductible expenses ...STMT... | 11,128 | 437 | 11,565 | 2,811 |
| **Distributions** | **19 a** Distributions of money (cash and marketable securities) ........................ | | | ⊙ | |
| | **b** Distributions of property other than money | | | ⊙ | |
| **Other Information** | **20 a** Investment income ........................... | 16,259 | | 16,259 | |
| | **b** Investment expenses ......................... | | | | |
| | **c** Other information. See instructions ... | STMT | | | |

**CONFIDENTIAL**

ALECTO_00027292
**JA2497**

929424 12-18-19

**Member's name**
PANCH JEYAKUMAR

**Member's identifying number**

**Other Member Information**

**Table 1** - Member's share of nonbusiness income from intangibles (source of income is dependent on residence or commercial domicile of the member):

Interest ... $ 16,259  Sec. 1231 Gains/Losses $ ____    Capital Gains/Losses $ ____

Dividends $ ____    Royalties ............. $ ____    Other .............. $ ____

FOR USE BY MEMBERS ONLY - See instructions.

**Table 2** - Member's share of distributive items.

A. Member's share of the LLC's business income. See instructions.    $ ____

B. Member's share of nonbusiness income from real and tangible personal property sourced or allocable to California.

Capital Gains/Losses ..................... $ ____    Rents/Royalties .................. $ ____

Sec. 1231 Gains/Losses ..................... $ ____    Other ................................... $ ____

C. Member's distributive share of the LLC's property, payroll, and sales:

| Factors | | Total within and outside California | Total within California |
|---|---|---|---|
| Property: Beginning .................... $ | | | $ |
| Property: Ending .................... $ | | | $ |
| Property: Annual rent expense ............. $ | | | $ |
| Payroll ..................................... $ | | | $ |
| Sales ..................................... $ | | | $ |

CONFIDENTIAL    ALECTO_00027293
JA2498

ALECTO HEALTHCARE SERVICES LLC                                                46-0829723

---

| CA SCHEDULE K-1 | CHARITABLE CONTRIBUTIONS | |
| --- | --- | --- |

| DESCRIPTION | AMOUNT | AMOUNT CA SOURCE |
| --- | --- | --- |
| CHARITABLE CONTRIBUTIONS - 50 PERCENT LIMIT | 1,728. | |
| TOTAL TO SCHEDULE K-1, LINE 13A | 1,728. | |

---

| CA SCHEDULE K-1 | COLUMN C RECONCILIATION |
| --- | --- |

| DESCRIPTION | AMOUNT |
| --- | --- |
| ORDINARY INCOME (LOSS) | <3,437,061.> |
| INTEREST INCOME | 16,259. |
| SECTION 1231 GAIN (LOSS) | <134.> |
| CHARITABLE CONTRIBUTIONS | <1,728.> |
| OTHER DEDUCTIONS | <13,104.> |
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 134. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 112. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | <541.> |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | <232.> |
| NONDEDUCTIBLE EXPENSES | <11,128.> |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 377,547. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 145,692. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 2,622,524. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 265,423. |
| INTEREST EXPENSE | <13,104.> |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 13,104. |
| SALARIES AND WAGES | 10,459. |
| TOTAL TO SCHEDULE K-1 ANALYSIS OF CAPITAL ACCOUNT, COLUMN C | <25,778.> |

---

| CA SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES |
| --- | --- |

| DESCRIPTION | AMOUNT |
| --- | --- |
| OFFICER'S LIFE INSURANCE | 1,809. |
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 378. |
| NONDEDUCTIBLE EXPENSE FROM PASSTHROUGH | 9,042. |
| STATE INCOME/FRANCHISE TAXES | 336. |
| TOTAL TO SCHEDULE K-1, LINE 18C | 11,565. |

CONFIDENTIAL                                                **ALECTO_00027294**
                                                                **JA2499**

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

═══════════════════════════════════════════════════════════════════════════

CA SCHEDULE K-1    AGGREGATE GROSS RECEIPTS FOR AMT EXCLUSION

───────────────────────────────────────────────────────────────────────────

| DESCRIPTION | AMOUNT |
|---|---|
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES LOS ANGELES - ALECTO HEA | 11,898. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALECTO HEA | 4,352. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC - ALECT | 3. |
| GROSS SALES LESS RETURNS | 299,923. |
| TRADE OR BUSINESS OTHER INCOME | 1,469. |
| INTEREST | 6. |
| TOTAL | 317,651. |

CONFIDENTIAL
ALECTO_00027295
**JA2500**

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

| Name: ALECTO HEALTHCARE SERVICES LLC | | | | | | | | 46-0829723 |
|---|---|---|---|---|---|---|---|---|
| For: PANCH JEYAKUMAR | | | | | | | | |

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE | | |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL | | |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC – ALE | | |

| | Activity - 1 | Activity - 4 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -404,839. | -377,061. | -269,665. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 11,898. | | 4,352. |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | -134. | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 336. | 402. | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -10,499. | -236. | |
| Adjusted gain or loss | | -72. | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 11,898. | | 4,352. |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
| - Unadjusted basis of assets | | | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

66                                                                                                           4

10340904 146892 629917            2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027296
JA2501

**4**      Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 48 of 83

## Schedule of Activities

For calendar year 2019, or tax year beginning                    , 2019, and ending                    .

| Name: ALECTO HEALTHCARE SERVICES LLC | | | | | | | | 46-0829723 |
|---|---|---|---|---|---|---|---|---|
| For: PANCH JEYAKUMAR | | | | | | | | |

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description | | |
|---|---|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | |

| | Activity - 6 | Activity - | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -2,622,437. | | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 3. | | |
| Dividends  - Ordinary dividends | | | |
|           - Qualified dividends | | | |
|           - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
|           - Collectibles (28%) gain (loss) | | | |
|           - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
|           - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
|           - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 5,370. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 3. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
|           - Unadjusted basis of assets | | | |
|           - REIT dividends | | | |
|           - Cooperative qualified business income | | | |
|           - Cooperative W-2 wages | | | |

925001 02-10-20        1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

67

4

CONFIDENTIAL

**ALECTO_00027297**
**JA2502**

| TAXABLE YEAR **Member's Share of Income,** | 929421 12-18-19 CALIFORNIA SCHEDULE |
|---|---|
| **2019** **Deductions, Credits, etc.** | **K-1 (568)** |

TYB   01-01-2019   TYE   12-31-2019

MATT          WILLIAMS

WEST HOLLYWOOD        CA   90046

46-0829723        201223510349
ALECTO HEALTHCARE SERVICES LLC

16310 BAKE PARKWAY SUITE 200
IRVINE            CA   92618

---

**A** What type of entity is this member? • See instructions.

(1) [X] Individual    (4) [ ] C Corporation    (7) [ ] LLP    (10) [ ] Exempt Organization
(2) [ ] S Corporation    (5) [ ] General Partnership    (8) [ ] LLC    (11) [ ] Disregarded Entity

(3) [ ] Estate/Trust    (6) [ ] Limited Partnership    (9) [ ] IRA/Keogh/SEP

**B** Is this member a foreign member? ................................................................................................................ •   [ ] Yes   [X] No

**C** Enter member's percentage (without regard to special allocations) of:

|  | (i) Beginning | | (ii) Ending | |
|---|---|---|---|---|
| Profit | 5.0000 | % • | 5.0000 | % |
| Loss | 5.0000 | % • | 5.0000 | % |
| Capital | 5.0000 | % • | 5.0000 | % |

| **D** Member's share of liabilities: | (i) Beginning | | (ii) Ending | |
|---|---|---|---|---|
| Nonrecourse | $ 9,947,912 00 | • $ | 12,132,473 00 | |
| Qualified nonrecourse financing | $ 880,539 00 | • $ | 0 00 | |
| Recourse | $ 0 00 | • $ | 0 00 | |

**E** Reportable transaction or tax shelter registration number(s)

**F** (1) Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) ........................................................ ⊙ [ ]

(2) Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) ........................................................ ⊙ [ ]

**G** Check here if this is: • (1) [ ] A final Schedule K-1 (568)   (2) [ ] An amended Schedule K-1 (568)

**H** Is this member a resident of California? ................................................................................................................ • [X] Yes ▶ [ ] No

For Privacy Notice, get FTB 1131 ENG/SP.    022    7901194    Schedule K-1 (568) 2019 **Side 1**
6

CONFIDENTIAL

ALECTO_00027298
JA2503

6        Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 50 of 83

929422 12-18-19

| Member's name | Member's Identifying number |
|---|---|
| MATT WILLIAMS | |

I  Analysis of member's capital account: Check the box  ● (1) ☐ Tax Basis   (2) ☒ GAAP (3) ☐ IRC Section 704(b) Book (4) ☐ Other (explain)

| (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Member's share of line 3, line 4, and line 7 Form 568, Schedule M-2 | (d) Withdrawals and distributions | (e) Capital account at end of year, combine column (a) through column (d) |
|---|---|---|---|---|
| ●  504,568 ● | 447,224 ● | -18,414 ● ( | ) ● | 933,378 |

Caution: Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| | (a) Distributive share items | (b) Amounts from federal Schedule K-1 (1065) | (c) California adjustments | (d) Total amounts using California law. Combine col. (b) and col. (c) | (e) California source amounts and credits |
|---|---|---|---|---|---|
| **Income (Loss)** | 1 Ordinary income (loss) from trade or business activities | -2,454,943 | -192,202 ● | -2,647,145 ▶ | -643,510 |
| | 2 Net income (loss) from rental real estate activities | | | ● | ▶ |
| | 3 Net income (loss) from other rental activities | | | ◉ | ◉ |
| | 4 Guaranteed payments to members | | | ● | ▶ |
| | 5 Interest income | 11,615 | | ● 11,615 | ▶ |
| | 6 Dividends | | | ● | ▶ |
| | 7 Royalties | | | ● | ▶ |
| | 8 Net short-term capital gain (loss) | | | ● | ▶ |
| | 9 Net long-term capital gain (loss) | | | ● | ▶ |
| | 10 a Total gain under IRC Section 1231 (other than due to casualty or theft) | | | ● | ▶ |
| | b Total loss under IRC Section 1231 (other than due to casualty or theft) | -96 | | ● -96 | ▶ -96 |
| | 11 a Other portfolio income (loss). Attach schedule | | | ● | ▶ |
| | b Total other income | | | ● | ▶ |
| | c Total other loss | | | ● | ▶ |
| **Deductions** | 12 Expense deduction for recovery prop. (IRC Section 179) | | | | |
| | 13 a Charitable contributions STMT | 1,235 | | 1,235 | |
| | b Investment interest expense | | | | |
| | c 1 Total expenditures to which an IRC Section 59(e) election may apply | | | | |
| | 2 Type of expenditures | | | | |
| | d Deductions related to portfolio income | | | | |
| | e Other deductions | 9,359 | -9,359 | | |

CONFIDENTIAL

ALECTO_00027299
JA2504

929423 12-18-19

| Member's name | Member's identifying number |
|---|---|
| MATT WILLIAMS | |

| | (a)<br>Distributive share items | (b)<br>Amounts from<br>federal Schedule K-1<br>(1065) | (c)<br>California<br>adjustments | (d)<br>Total amounts using<br>California law. Combine<br>col. (b) and col. (c) | (e)<br>California<br>source amounts<br>and credits |
|---|---|---|---|---|---|
| **Credits** | **15 a** Total withholding (equals amount on<br>Form 592-B if calendar year LLC) ...... | | | ● | ▶ |
| | **b** Low-income housing credit ............... | | | | |
| | **c** Credits other than line 15b related to<br>rental real estate activities .................. | | | | |
| | **d** Credits related to other rental<br>activities ...................................... | | | | |
| | **e** Nonconsenting nonresident member's<br>tax paid by LLC ................................ | | | | |
| | **f** Other credits - Attach required<br>schedules or statements .................. | | | | |
| **Alternative Minimum Tax (AMT) Items** | **17 a** Depreciation adjustment on property<br>placed in service after 1986 .............. | -2,394 | -1,424 ◉ | -3,818 ◉ | -928 |
| | **b** Adjusted gain or loss ..................... | -52 | | -52 | -13 |
| | **c** Depletion (other than oil & gas) ............ | | | | |
| | **d** Gross income from oil, gas, and<br>geothermal properties ..................... | | | | |
| | **e** Deductions allocable to oil, gas, and<br>geothermal properties ..................... | | | | |
| | **f** Other alternative minimum tax<br>items ........................................... | | | | |
| **Tax-exempt Income and Nondeductible Expenses** | **18 a** Tax-exempt interest income ............... | | | | |
| | **b** Other tax-exempt income ................. | | | | |
| | **c** Nondeductible expenses ....STMT... | 7,949 | 312 | 8,261 | 2,008 |
| **Distributions** | **19 a** Distributions of money (cash and<br>marketable securities) ..................... | | | ◉ | |
| | **b** Distributions of property other than money | | | ◉ | |
| **Other Information** | **20 a** Investment income .......................... | 11,615 | | 11,615 | |
| | **b** Investment expenses ...................... | | | | |
| | **c** Other information. See instructions ... | STMT | | | |

CONFIDENTIAL

ALECTO_00027300
JA2505

929424 12-18-19

| Member's name | Member's identifying number |
|---|---|
| MATT WILLIAMS | |

**Other Member Information**

**Table 1** - Member's share of nonbusiness income from intangibles (source of income is dependent on residence or commercial domicile of the member):

Interest ... $   11,615   Sec. 1231 Gains/Losses  $              Capital Gains/Losses  $

Dividends  $              Royalties ............... $              Other .................... $

FOR USE BY MEMBERS ONLY - See instructions.

**Table 2** - Member's share of distributive items.

A.  Member's share of the LLC's business income. See instructions.    $

B.  Member's share of nonbusiness income from real and tangible personal property sourced or allocable to California.

Capital Gains/Losses .......................... $              Rents/Royalties ..................... $

Sec. 1231 Gains/Losses ...................... $              Other ...................................... $

C.  Member's distributive share of the LLC's property, payroll, and sales:

| Factors | Total within and outside California | Total within California |
|---|---|---|
| Property: Beginning ................................ $ | | $ |
| Property: Ending ................................ $ | | $ |
| Property: Annual rent expense ............... $ | | $ |
| Payroll ................................................ $ | | $ |
| Sales ................................................ $ | | $ |

**Side 4** Schedule K-1 (568) 2019      022     7904194

6

CONFIDENTIAL

ALECTO_00027301
JA2506

ALECTO HEALTHCARE SERVICES LLC                                       46-0829723

| CA SCHEDULE K-1 | CHARITABLE CONTRIBUTIONS | | |
|---|---|---|---|
| DESCRIPTION | | AMOUNT | AMOUNT CA SOURCE |
| CHARITABLE CONTRIBUTIONS - 50 PERCENT LIMIT | | 1,235. | |
| TOTAL TO SCHEDULE K-1, LINE 13A | | 1,235. | |

| CA SCHEDULE K-1 | COLUMN C RECONCILIATION |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| ORDINARY INCOME (LOSS) | <2,454,943.> |
| INTEREST INCOME | 11,615. |
| SECTION 1231 GAIN (LOSS) | <96.> |
| CHARITABLE CONTRIBUTIONS | <1,235.> |
| OTHER DEDUCTIONS | <9,359.> |
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 96. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 80. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | <387.> |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | <165.> |
| NONDEDUCTIBLE EXPENSES | <7,949.> |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 269,665. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 104,061. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 1,873,154. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 189,579. |
| INTEREST EXPENSE | <9,359.> |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 9,359. |
| SALARIES AND WAGES | 7,470. |
| TOTAL TO SCHEDULE K-1 ANALYSIS OF CAPITAL ACCOUNT, COLUMN C | <18,414.> |

| CA SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| OFFICER'S LIFE INSURANCE | 1,291. |
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 271. |
| NONDEDUCTIBLE EXPENSE FROM PASSTHROUGH | 6,459. |
| STATE INCOME/FRANCHISE TAXES | 240. |
| TOTAL TO SCHEDULE K-1, LINE 18C | 8,261. |

                                                            PARTNER NUMBER 6
10340904 146892 629917          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                    ALECTO_00027302
                                                              JA2507

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

CA SCHEDULE K-1    AGGREGATE GROSS RECEIPTS FOR AMT EXCLUSION

| DESCRIPTION | AMOUNT |
|---|---|
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES LOS ANGELES - ALECTO HEA | 8,499. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALECTO HEA | 3,108. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC - ALECT | 3. |
| GROSS SALES LESS RETURNS | 214,231. |
| TRADE OR BUSINESS OTHER INCOME | 1,049. |
| INTEREST | 4. |
| TOTAL | 226,894. |

CONFIDENTIAL                                    ALECTO_00027303
                                                    **JA2508**

**6**        Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 55 of 83
**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ , _____

| Name: | ALECTO HEALTHCARE SERVICES LLC | | | | | | 46-0829723 |
|---|---|---|---|---|---|---|---|
| For: | MATT WILLIAMS | | | | | | |

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE | | | |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL | | | |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC – ALE | | | |

| | Activity - 1 | Activity - 4 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -289,158. | -269,319. | -192,610. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 8,499. | | 3,108. |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | -96. | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 240. | 287. | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -7,500. | -169. | |
| Adjusted gain or loss | | -52. | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 8,499. | | 3,108. |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
| - Unadjusted basis of assets | | | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

74                                                                                                  6

CONFIDENTIAL

ALECTO_00027304
**JA2509**

**6**     Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 56 of 83

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ . ____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**                                              46-0829723

For: **MATT WILLIAMS**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -1,873,091. | | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 3. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 3,835. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 3. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
| - Unadjusted basis of assets | | | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20      1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

10340904 146892 629917                    2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                                                                        **ALECTO_00027305**
                                                                                                         **JA2510**

929421 12-18-19

| TAXABLE YEAR 2019 | **Member's Share of Income, Deductions, Credits, etc.** | ■ | CALIFORNIA SCHEDULE K-1 (568) |

TYB   01-01-2019   TYE   12-31-2019

STEVEN             KAY

SAN FRANCISCO        CA   94105

46-0829723         201223510349
ALECTO HEALTHCARE SERVICES LLC

16310 BAKE PARKWAY SUITE 200
IRVINE             CA   92618

**A** What type of entity is this member? ● See instructions.

(1) $\boxed{X}$ Individual   (4) ☐ C Corporation   (7) ☐ LLP   (10) ☐ Exempt Organization
(2) ☐ S Corporation   (5) ☐ General Partnership   (8) ☐ LLC   (11) ☐ Disregarded Entity

(3) ☐ Estate/Trust   (6) ☐ Limited Partnership   (9) ☐ IRA/Keogh/SEP

**B** Is this member a foreign member? .................................................................................................... ● ☐ Yes $\boxed{X}$ No

**C** Enter member's percentage (without regard to special allocations) of:

| | (i) Beginning | | (ii) Ending | |
|---|---|---|---|---|
| Profit | 5.0000 | % ● | 5.0000 | % |
| Loss | 5.0000 | % ● | 5.0000 | % |
| Capital | 5.0000 | % ● | 5.0000 | % |

| | (i) Beginning | | (ii) Ending | |
|---|---|---|---|---|
| **D** Member's share of liabilities: | | | | |
| Nonrecourse | $ 9,947,912 | 00 ● $ | 12,132,474 | 00 |
| Qualified nonrecourse financing | $ 880,539 | 00 ● $ | 0 | 00 |
| Recourse | $ 0 | 00 ● $ | 0 | 00 |

**E** Reportable transaction or tax shelter registration number(s)

**F** (1) Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) .................................................................. ◉ ☐

(2) Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) ............................................................... ◉ ☐
**G** Check here if this is: ● (1) ☐ A final Schedule K-1 (568)   (2) ☐ An amended Schedule K-1 (568)

**H** Is this member a resident of California? .................................................................................................... ● $\boxed{X}$ Yes ▶ ☐ No

| ■ For Privacy Notice, get FTB 1131 ENG/SP. | 022 | 7901194 | | Schedule K-1 (568) 2019 **Side 1** ■ |
|---|---|---|---|---|

7

CONFIDENTIAL

7    Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 58 of 83

929422 12-18-19

**Member's name**
STEVEN KAY

**Member's identifying number**

I Analysis of member's capital account: Check the box  ● **(1)** ☐ Tax Basis   **(2)** ☒ GAAP **(3)** ☐ IRC Section 704(b) Book **(4)** ☐ Other (explain)

| (a)<br>Capital account at beginning of year | (b)<br>Capital contributed during year | (c)<br>Member's share of line 3, line 4, and<br>line 7 Form 568, Schedule M-2 | (d)<br>Withdrawals and distributions | (e)<br>Capital account at end of year,<br>combine column (a) through column (d) |
|---|---|---|---|---|
| ● 488,857 ● | 447,224 ● | -18,415 ● ( | ) ● | ● 917,666 |

Caution: Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| | (a)<br>Distributive share items | (b)<br>Amounts from<br>federal Schedule K-1<br>(1065) | (c)<br>California<br>adjustments | (d)<br>Total amounts using<br>California law. Combine<br>col. (b) and col. (c) | (e)<br>California<br>source amounts<br>and credits |
|---|---|---|---|---|---|
| Income (Loss) | 1 Ordinary income (loss) from trade<br>or business activities | -2,454,942 | -192,203 ● | -2,647,145 ▶ | -643,510 |
| | 2 Net income (loss) from rental real<br>estate activities | | | ● | ▶ |
| | 3 Net income (loss) from other rental<br>activities | | | ◉ | ◉ |
| | 4 Guaranteed payments to members | | | ● | ▶ |
| | 5 Interest income | 11,612 | | ● 11,612 | ▶ |
| | 6 Dividends | | | ● | ▶ |
| | 7 Royalties | | | ● | ▶ |
| | 8 Net short-term capital gain (loss) | | | ● | ▶ |
| | 9 Net long-term capital gain (loss) | | | ● | ▶ |
| | 10 a Total gain under IRC Section 1231<br>(other than due to casualty or theft) | | | ● | ▶ |
| | b Total loss under IRC Section 1231<br>(other than due to casualty or theft) | -96 | | ● -96 | ▶ -96 |
| | 11 a Other portfolio income (loss).<br>Attach schedule | | | ● | ▶ |
| | b Total other income | | | ● | ▶ |
| | c Total other loss | | | ● | ▶ |
| Deductions | 12 Expense deduction for recovery prop.<br>(IRC Section 179) | | | | |
| | 13 a Charitable contributions   STMT | 1,234 | | 1,234 | |
| | b Investment interest expense | | | | |
| | c 1 Total expenditures to which an IRC<br>Section 59(e) election may apply | | | | |
| | 2 Type of expenditures | | | | |
| | d Deductions related to portfolio<br>income | | | | |
| | e Other deductions | 9,359 | -9,359 | | |

Side 2 Schedule K-1 (568) 2019    022    7902194

7

CONFIDENTIAL

ALECTO_00027307
JA2512

929423  12-18-19

| Member's name | Member's identifying number |
|---|---|
| STEVEN KAY | |

| | (a)<br>Distributive share items | (b)<br>Amounts from<br>federal Schedule K-1<br>(1065) | (c)<br>California<br>adjustments | (d)<br>Total amounts using<br>California law. Combine<br>col. (b) and col. (c) | (e)<br>California<br>source amounts<br>and credits |
|---|---|---|---|---|---|
| **Credits** | **15 a** Total withholding (equals amount on<br>Form 592-B if calendar year LLC) ...... | | | ● | ▶ |
| | **b** Low-income housing credit ............... | | | | |
| | **c** Credits other than line 15b related to<br>rental real estate activities .................. | | | | |
| | **d** Credits related to other rental<br>activities ........................................ | | | | |
| | **e** Nonconsenting nonresident member's<br>tax paid by LLC .............................. | | | | |
| | **f** Other credits - Attach required<br>schedules or statements ................ | | | | |
| **Alternative Minimum Tax (AMT) Items** | **17 a** Depreciation adjustment on property<br>placed in service after 1986 .............. | -2,391 | -1,423 ● | -3,814 ● | -927 |
| | **b** Adjusted gain or loss ..................... | -51 | | -51 | -12 |
| | **c** Depletion (other than oil & gas) ............ | | | | |
| | **d** Gross income from oil, gas, and<br>geothermal properties ........................ | | | | |
| | **e** Deductions allocable to oil, gas, and<br>geothermal properties ........................ | | | | |
| | **f** Other alternative minimum tax<br>items ............................................... | | | | |
| **Tax-exempt Income and Nondeductible Expenses** | **18 a** Tax-exempt interest income ............... | | | | |
| | **b** Other tax-exempt income .................. | | | | |
| | **c** Nondeductible expenses ....STMT.... | 7,950 | 312 | 8,262 | 2,008 |
| **Distributions** | **19 a** Distributions of money (cash and<br>marketable securities) ...................... | | | ● | |
| | **b** Distributions of property other than money | | | ● | |
| **Other Information** | **20 a** Investment income ........................... | 11,612 | | 11,612 | |
| | **b** Investment expenses ........................ | | | | |
| | **c** Other information. See instructions ... | STMT | | | |

CONFIDENTIAL

ALECTO_00027308
JA2513

929424 12-18-19

| Member's name | Member's identifying number |
|---|---|
| STEVEN KAY | |

**Other Member Information**

**Table 1** - Member's share of nonbusiness income from intangibles (source of income is dependent on residence or commercial domicile of the member):

Interest ... $ **11,612**  Sec. 1231 Gains/Losses $ _____    Capital Gains/Losses $ _____

Dividends $ _____  Royalties ............... $ _____    Other ................. $ _____

FOR USE BY MEMBERS ONLY - See instructions.

**Table 2** - Member's share of distributive items.

A. Member's share of the LLC's business income. See instructions.    $ _____

B. Member's share of nonbusiness income from real and tangible personal property sourced or allocable to California.

Capital Gains/Losses ........................ $ _____    Rents/Royalties ..................... $ _____

Sec. 1231 Gains/Losses ..................... $ _____    Other .................................. $ _____

C. Member's distributive share of the LLC's property, payroll, and sales:

| Factors | | Total within and outside California | Total within California |
|---|---|---|---|
| Property: Beginning ............... | $ | | $ |
| Property: Ending ................... | $ | | $ |
| Property: Annual rent expense ........... | $ | | $ |
| Payroll ..................................... | $ | | $ |
| Sales ....................................... | $ | | $ |

CONFIDENTIAL

ALECTO_00027309
JA2514

ALECTO HEALTHCARE SERVICES LLC                                           46-0829723

---

| CA SCHEDULE K-1 | CHARITABLE CONTRIBUTIONS | | |
|---|---|---|---|

| DESCRIPTION | | AMOUNT | AMOUNT CA SOURCE |
|---|---|---|---|
| CHARITABLE CONTRIBUTIONS - 50 PERCENT LIMIT | | 1,234. | |
| TOTAL TO SCHEDULE K-1, LINE 13A | | 1,234. | |

---

| CA SCHEDULE K-1 | COLUMN C RECONCILIATION | |
|---|---|---|

| DESCRIPTION | | AMOUNT |
|---|---|---|
| ORDINARY INCOME (LOSS) | | <2,454,942.> |
| INTEREST INCOME | | 11,612. |
| SECTION 1231 GAIN (LOSS) | | <96.> |
| CHARITABLE CONTRIBUTIONS | | <1,234.> |
| OTHER DEDUCTIONS | | <9,359.> |
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | | 96. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | | 80. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | | <386.> |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | | <166.> |
| NONDEDUCTIBLE EXPENSES | | <7,950.> |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | 269,666. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | | 104,061. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | 1,873,153. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | | 189,580. |
| INTEREST EXPENSE | | <9,359.> |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | | 9,359. |
| SALARIES AND WAGES | | 7,470. |
| TOTAL TO SCHEDULE K-1 ANALYSIS OF CAPITAL ACCOUNT, COLUMN C | | <18,415.> |

---

| CA SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES | |
|---|---|---|

| DESCRIPTION | | AMOUNT |
|---|---|---|
| OFFICER'S LIFE INSURANCE | | 1,292. |
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | | 270. |
| NONDEDUCTIBLE EXPENSE FROM PASSTHROUGH | | 6,460. |
| STATE INCOME/FRANCHISE TAXES | | 240. |
| TOTAL TO SCHEDULE K-1, LINE 18C | | 8,262. |

CONFIDENTIAL                                                          ALECTO_00027310
                                                                         JA2515

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

═══════════════════════════════════════════════════════════════════════════

CA SCHEDULE K-1   AGGREGATE GROSS RECEIPTS FOR AMT EXCLUSION

───────────────────────────────────────────────────────────────────────────

| DESCRIPTION | AMOUNT |
|---|---|
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES LOS ANGELES – ALECTO HEA | 8,498. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES SHERMAN LLC – ALECTO HEA | 3,108. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC – ALECT | 2. |
| GROSS SALES LESS RETURNS | 214,231. |
| TRADE OR BUSINESS OTHER INCOME | 1,049. |
| INTEREST | 4. |
| TOTAL | 226,892. |

10340904 146892 629917          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                          ALECTO_00027311
                                                                **JA2516**

**7**   Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 63 of 83

## Schedule of Activities

For calendar year 2019, or tax year beginning _____, 2019, and ending ____.   ._   ._

Name: ALECTO HEALTHCARE SERVICES LLC                    46-0829723
For:  STEVEN KAY

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC – ALE |

| | Activity - 1 | Activity - 4 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -289,159. | -269,318. | -192,609. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 8,498. | | 3,108. |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | -96. | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 240. | 287. | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -7,499. | -168. | |
| Adjusted gain or loss | | -51. | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 8,498. | | 3,108. |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
| - Unadjusted basis of assets | | | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

82                                                                                          7

CONFIDENTIAL

ALECTO_00027312
JA2517

**7**   Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 64 of 83

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

| Name: ALECTO HEALTHCARE SERVICES LLC | | | | | | | 46-0829723 | |
|---|---|---|---|---|---|---|---|---|
| For: STEVEN KAY | | | | | | | | |

| Description of Activity | Activity Number 6 | 100% Disposed | PTP | P/T 199A | Type Code * 8 | Description ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | |
|---|---|---|---|---|---|---|---|---|

| | Activity - 6 | Activity - | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -1,873,092. | | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 2. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 3,836. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 2. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
| - Unadjusted basis of assets | | | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

10340904 146892 629917                2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                                                    ALECTO_00027313
**JA2518**

929421 12-18-19

| TAXABLE YEAR<br>2019 | **Member's Share of Income,**<br>**Deductions, Credits, etc.** | CALIFORNIA SCHEDULE<br>**K-1 (568)** |
|---|---|---|

TYB   01-01-2019   TYE   12-31-2019

HAYES IRREVOCABLE TRUST

DALLAS            TX   75225

46-0829723          201223510349
ALECTO HEALTHCARE SERVICES LLC

16310 BAKE PARKWAY SUITE 200
IRVINE            CA   92618

A What type of entity is this member? ● See instructions.

(1) ☐ Individual        (4) ☐ C Corporation        (7) ☐ LLP            (10) ☐ Exempt Organization
(2) ☐ S Corporation     (5) ☐ General Partnership   (8) ☐ LLC            (11) ☐ Disregarded Entity

(3) ☒ Estate/Trust      (6) ☐ Limited Partnership   (9) ☐ IRA/Keogh/SEP

B Is this member a foreign member? ............................................................................................. ● ☐ Yes ☒ No

C Enter member's percentage (without regard to special allocations) of:

| | (i) Beginning | | (ii) Ending | |
|---|---|---|---|---|
| Profit | 5.0000 | % ● | 5.0000 | % |
| Loss | 5.0000 | % ● | 5.0000 | % |
| Capital | 5.0000 | % ● | 5.0000 | % |

| | (i) Beginning | | (ii) Ending | |
|---|---|---|---|---|
| D Member's share of liabilities: | | | | |
| Nonrecourse | $ 9,947,913 00 | ● $ | 12,132,473 00 | |
| Qualified nonrecourse financing | $ 880,538 00 | ● $ | 0 00 | |
| Recourse | $ 0 00 | ● $ | 0 00 | |

E Reportable transaction or tax shelter registration number(s)

F (1) Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) ...................................................... ◉ ☐

(2) Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) ...................................................... ◉ ☐

G Check here if this is: ● (1) ☐ A final Schedule K-1 (568)   (2) ☐ An amended Schedule K-1 (568)

H Is this member a resident of California? ...................................................................................... ● ☐ Yes ▶ ☒ No

| For Privacy Notice, get FTB 1131 ENG/SP. | 022 | 7901194 | | Schedule K-1 (568) 2019 **Side 1** |
|---|---|---|---|---|

8

CONFIDENTIAL

ALECTO_00027314
JA2519

929422 12-18-19

| Member's name | | | | Member's identifying number | |
|---|---|---|---|---|---|
| HAYES IRREVOCABLE TRUST | | | | | |

I Analysis of member's capital account: Check the box  ● **(1)** ☐ Tax Basis   **(2)** ☒ GAAP **(3)** ☐ IRC Section 704(b) Book **(4)** ☐ Other (explain)

| | (a) Capital account at beginning of year | (b) Capital contributed during year | (c) Member's share of line 3, line 4, and line 7 Form 568, Schedule M-2 | | (d) Withdrawals and distributions | (e) Capital account at end of year, combine column (a) through column (d) |
|---|---|---|---|---|---|---|
| ● | 519,434 ● | 447,224 ● | -18,414 ● ( | | ) ● | 948,244 |

**Caution:** Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| | (a) Distributive share items | (b) Amounts from federal Schedule K-1 (1065) | (c) California adjustments | (d) Total amounts using California law. Combine col. (b) and col. (c) | (e) California source amounts and credits |
|---|---|---|---|---|---|
| | 1 Ordinary income (loss) from trade or business activities | -2,455,120 | -192,215 ● | -2,647,335 ► | -643,557 |
| | 2 Net income (loss) from rental real estate activities | | | ● | ► |
| | 3 Net income (loss) from other rental activities | | | ◉ | ◉ |
| | 4 Guaranteed payments to members | | | ● | ► |
| | 5 Interest income | 11,616 | | ● 11,616 ► | |
| | 6 Dividends | | | ● | ► |
| Income (Loss) | 7 Royalties | | | ● | ► |
| | 8 Net short-term capital gain (loss) | | | ● | ► |
| | 9 Net long-term capital gain (loss) | | | ● | ► |
| | 10 a Total gain under IRC Section 1231 (other than due to casualty or theft) | | | ● | ► |
| | b Total loss under IRC Section 1231 (other than due to casualty or theft) | -96 | | ● -96 ► | -96 |
| | 11 a Other portfolio income (loss). Attach schedule | | | ● | ► |
| | b Total other income | | | ● | ► |
| | c Total other loss | | | ● | ► |
| | 12 Expense deduction for recovery prop. (IRC Section 179) | | | | |
| | 13 a Charitable contributions   STMT | 1,235 | | 1,235 | |
| Deductions | b Investment interest expense | | | | |
| | c 1 Total expenditures to which an IRC Section 59(e) election may apply | | | | |
| | 2 Type of expenditures | | | | |
| | d Deductions related to portfolio income | | | | |
| | e Other deductions | 9,361 | -9,361 | | |

**Side 2** Schedule K-1 (568) 2019      022      7902194

8

CONFIDENTIAL

ALECTO_00027315
JA2520

929423 12-18-19

| Member's name | | | Member's identifying number | |
|---|---|---|---|---|
| HAYES IRREVOCABLE TRUST | | | | |

| | (a)<br>Distributive share items | (b)<br>Amounts from<br>federal Schedule K-1<br>(1065) | (c)<br>California<br>adjustments | (d)<br>Total amounts using<br>California law. Combine<br>col. (b) and col. (c) | (e)<br>California<br>source amounts<br>and credits |
|---|---|---|---|---|---|
| **Credits** | **15 a** Total withholding (equals amount on<br>Form 592-B if calendar year LLC) | | | ● | ▶ |
| | **b** Low-income housing credit | | | | |
| | **c** Credits other than line 15b related to<br>rental real estate activities | | | | |
| | **d** Credits related to other rental<br>activities | | | | |
| | **e** Nonconsenting nonresident member's<br>tax paid by LLC | | | | |
| | **f** Other credits - Attach required<br>schedules or statements | | | | |
| **Alternative Minimum Tax (AMT) Items** | **17 a** Depreciation adjustment on property<br>placed in service after 1986 | −2,393 | −1,424 ● | −3,817 ● | −928 |
| | **b** Adjusted gain or loss | −52 | | −52 | −13 |
| | **c** Depletion (other than oil & gas) | | | | |
| | **d** Gross income from oil, gas, and<br>geothermal properties | | | | |
| | **e** Deductions allocable to oil, gas, and<br>geothermal properties | | | | |
| | **f** Other alternative minimum tax<br>items | | | | |
| **Tax-exempt Income and Nondeductible Expenses** | **18 a** Tax-exempt interest income | | | | |
| | **b** Other tax-exempt income | | | | |
| | **c** Nondeductible expenses    STMT | 7,949 | 312 | 8,261 | 2,008 |
| **Distributions** | **19 a** Distributions of money (cash and<br>marketable securities) | | | ● | |
| | **b** Distributions of property other than money | | | ● | |
| **Other Information** | **20 a** Investment income | 11,616 | | 11,616 | |
| | **b** Investment expenses | | | | |
| | **c** Other information. See instructions | STMT | | | |

022    7903194

Schedule K-1 (568) 2019  **Side 3**
8

CONFIDENTIAL

ALECTO_00027316
**JA2521**

929424  12-18-19

**Member's name**
HAYES IRREVOCABLE TRUST

**Member's identifying number**

**Other Member Information**

Table 1 - Member's share of nonbusiness income from intangibles (source of income is dependent on residence or commercial domicile of the member):

Interest ... $ | 11,616 | Sec. 1231 Gains/Losses $ | | Capital Gains/Losses $ |

Dividends $ | | Royalties ................. $ | | Other ..................... $ |

FOR USE BY MEMBERS ONLY - See instructions.

Table 2 - Member's share of distributive items.

A. Member's share of the LLC's business income. See instructions. $

B. Member's share of nonbusiness income from real and tangible personal property sourced or allocable to California.

Capital Gains/Losses ........................... $ | | Rents/Royalties ...................... $ |

Sec. 1231 Gains/Losses ...................... $ | | Other .......................................... $ |

C. Member's distributive share of the LLC's property, payroll, and sales:

| Factors | Total within and outside California | Total within California |
|---|---|---|
| Property: Beginning ................................ $ | | $ |
| Property: Ending ................................ $ | | $ |
| Property: Annual rent expense ............... $ | | $ |
| Payroll ................................................. $ | | $ |
| Sales ................................................. $ | | $ |

**CONFIDENTIAL**

ALECTO_00027317
**JA2522**

ALECTO HEALTHCARE SERVICES LLC                                      46-0829723

| CA SCHEDULE K-1 | CHARITABLE CONTRIBUTIONS | | |
|---|---|---|---|

| DESCRIPTION | | AMOUNT | AMOUNT CA SOURCE |
|---|---|---|---|
| CHARITABLE CONTRIBUTIONS - 50 PERCENT LIMIT | | 1,235. | |
| TOTAL TO SCHEDULE K-1, LINE 13A | | 1,235. | |

| CA SCHEDULE K-1 | COLUMN C RECONCILIATION | |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| ORDINARY INCOME (LOSS) | <2,455,120.> |
| INTEREST INCOME | 11,616. |
| SECTION 1231 GAIN (LOSS) | <96.> |
| CHARITABLE CONTRIBUTIONS | <1,235.> |
| OTHER DEDUCTIONS | <9,361.> |
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 96. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 80. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | <387.> |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | <165.> |
| NONDEDUCTIBLE EXPENSES | <7,949.> |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 269,685. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 104,069. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 1,873,290. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 189,593. |
| INTEREST EXPENSE | <9,361.> |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 9,361. |
| SALARIES AND WAGES | 7,470. |
| TOTAL TO SCHEDULE K-1 ANALYSIS OF CAPITAL ACCOUNT, COLUMN C | <18,414.> |

| CA SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES | |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| OFFICER'S LIFE INSURANCE | 1,292. |
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 270. |
| NONDEDUCTIBLE EXPENSE FROM PASSTHROUGH | 6,459. |
| STATE INCOME/FRANCHISE TAXES | 240. |
| TOTAL TO SCHEDULE K-1, LINE 18C | 8,261. |

CONFIDENTIAL

ALECTO_00027318
**JA2523**

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

═══════════════════════════════════════════════════════════════════════════

CA SCHEDULE K-1   AGGREGATE GROSS RECEIPTS FOR AMT EXCLUSION

───────────────────────────────────────────────────────────────────────────

| DESCRIPTION | AMOUNT |
|---|---|
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES LOS ANGELES - ALECTO HEA | 8,499. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALECTO HEA | 3,109. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC - ALECT | 3. |
| GROSS SALES LESS RETURNS | 214,231. |
| TRADE OR BUSINESS OTHER INCOME | 1,049. |
| INTEREST | 4. |
| TOTAL | 226,895. |

CONFIDENTIAL                                    ALECTO_00027319
                                                          **JA2524**

**8**   Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 71 of 83
**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

Name: **ALECTO HEALTHCARE SERVICES LLC**   46-0829723
For: **HAYES IRREVOCABLE TRUST**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC – ALE |

| | Activity - 1 | Activity - 4 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -289,179. | -269,338. | -192,624. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 8,499. | | 3,109. |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | -96. | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 240. | 287. | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -7,500. | -169. | |
| Adjusted gain or loss | | -52. | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 8,499. | | 3,109. |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
| - Unadjusted basis of assets | | | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

90   8

CONFIDENTIAL   ALECTO_00027320
**JA2525**

**8**    Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 72 of 83

### Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

| Name: ALECTO HEALTHCARE SERVICES LLC | | | | | | | 46-0829723 |
|---|---|---|---|---|---|---|---|
| For: HAYES IRREVOCABLE TRUST | | | | | | | |

| Description of Activity | Activity Number 6 | 100% Disposed | PTP | P/T 199A | Type Code * 8 | Description ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | |
|---|---|---|---|---|---|---|---|---|

| | Activity - 6 | Activity - | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -1,873,227. | | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 3. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 3,836. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 3. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
| - Unadjusted basis of assets | | | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

91    8

10340904 146892 629917    2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027321
**JA2526**

| TAXABLE YEAR **Member's Share of Income,** | | 929421 12-18-19 CALIFORNIA SCHEDULE |
| --- | --- | --- |
| **2019** **Deductions, Credits, etc.** | | **K-1 (568)** |

TYB   01-01-2019   TYE   12-31-2019

AMAN            DHUPER

RANCHO CUCAMONGA    CA   91739

46-0829723         201223510349
ALECTO HEALTHCARE SERVICES LLC

16310 BAKE PARKWAY SUITE 200
IRVINE             CA   92618

**A** What type of entity is this member? ● See instructions.

(1) ☒ Individual    (4) ☐ C Corporation       (7) ☐ LLP           (10) ☐ Exempt Organization
(2) ☐ S Corporation  (5) ☐ General Partnership   (8) ☐ LLC           (11) ☐ Disregarded Entity

(3) ☐ Estate/Trust   (6) ☐ Limited Partnership   (9) ☐ IRA/Keogh/SEP

**B** Is this member a foreign member? ............................................................................................ ● ☐ Yes ☒ No

**C** Enter member's percentage (without regard to special allocations) of:

|  | (i) Beginning | | (ii) Ending | |
| --- | --- | --- | --- | --- |
| Profit | 5.0000 | % ● | 0.0000 | % |
| Loss | 5.0000 | % ● | 0.0000 | % |
| Capital | 5.0000 | % ● | 0.0000 | % |

|  | (i) Beginning | | (ii) Ending | |
| --- | --- | --- | --- | --- |
| **D** Member's share of liabilities: | | | | |
| Nonrecourse | $ 9,947,912 |00 ● $ | | 00 |
| Qualified nonrecourse financing | $ 880,539 |00 ● $ | | 0 |00 |
| Recourse | $ 0 |00 ● $ | | 0 |00 |

**E** Reportable transaction or tax shelter registration number(s)

**F** (1) Check here if this is a publicly traded partnership as defined in IRC Section 469(k)(2) .................................................................. ◉ ☐

(2) Check here if this is an investment partnership (R&TC Sections 17955 and 23040.1) .................................................................. ◉ ☐
**G** Check here if this is:  ● (1) ☒ A final Schedule K-1 (568)   (2) ☐ An amended Schedule K-1 (568)

**H** Is this member a resident of California? .................................................................................... ● ☒ Yes ▶ ☐ No

| For Privacy Notice, get FTB 1131 ENG/SP. | 022 | 7901194 | | Schedule K-1 (568) 2019 **Side 1** |
| --- | --- | --- | --- | --- |
| | | | | 9 |

**CONFIDENTIAL**

ALECTO_00027322
**JA2527**

9      Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 74 of 83

929422 12-18-19

| Member's name | Member's identifying number |
|---|---|
| AMAN DHUPER | |

I Analysis of member's capital account: Check the box  ● **(1)** ☐ Tax Basis    **(2)** ☒ GAAP **(3)** ☐   IRC Section 704(b) Book **(4)** ☐   Other (explain)

| (a)<br>Capital account at beginning of year | (b)<br>Capital contributed during year | (c)<br>Member's share of line 3, line 4, and<br>line 7 Form 568, Schedule M-2 | (d)<br>Withdrawals and distributions | (e)<br>Capital account at end of year,<br>combine column (a) through column (d) |
|---|---|---|---|---|
| ● 482,280 ● | 447,224 ● | −18,417 ●( | 911,087) ● | 0 |

**Caution:** Refer to Member's Instructions for Schedule K-1 (568) before entering information from this schedule on your California return.

| | (a)<br>Distributive share items | (b)<br>Amounts from<br>federal Schedule K-1<br>(1065) | (c)<br>California<br>adjustments | (d)<br>Total amounts using<br>California law. Combine<br>col. (b) and col. (c) | (e)<br>California<br>source amounts<br>and credits |
|---|---|---|---|---|---|
| | **1** Ordinary income (loss) from trade<br>or business activities | −2,454,944 | −192,203 | ● −2,647,147 ▶ | −643,511 |
| | **2** Net income (loss) from rental real<br>estate activities | | | ● | ▶ |
| | **3** Net income (loss) from other rental<br>activities | | | ◉ | ◉ |
| | **4** Guaranteed payments to members | | | ● | ▶ |
| | **5** Interest income | 11,612 | | ● 11,612 | ▶ |
| Income (Loss) | **6** Dividends | | | ● | ▶ |
| | **7** Royalties | | | ● | ▶ |
| | **8** Net short-term capital gain (loss) | | | ● | ▶ |
| | **9** Net long-term capital gain (loss) | | | ● | ▶ |
| | **10 a** Total gain under IRC Section 1231<br>(other than due to casualty or theft) | | | ● | ▶ |
| | **b** Total loss under IRC Section 1231<br>(other than due to casualty or theft) | −96 | | ● −96 | ▶ −96 |
| | **11 a** Other portfolio income (loss).<br>Attach schedule | | | ● | ▶ |
| | **b** Total other income | | | ● | ▶ |
| | **c** Total other loss | | | ● | ▶ |
| | **12** Expense deduction for recovery prop.<br>(IRC Section 179) | | | | |
| | **13 a** Charitable contributions   STMT | 1,234 | | 1,234 | |
| Deductions | **b** Investment interest expense | | | | |
| | **c 1** Total expenditures to which an IRC<br>Section 59(e) election may apply | | | | |
| | **2** Type of expenditures | | | | |
| | **d** Deductions related to portfolio<br>income | | | | |
| | **e** Other deductions | 9,359 | −9,359 | | |

CONFIDENTIAL

ALECTO_00027323
**JA2528**

929423  12-18-19

| Member's name | Member's identifying number |
|---|---|
| AMAN DHUPER | |

| | (a)<br>Distributive share items | (b)<br>Amounts from federal Schedule K-1 (1065) | (c)<br>California adjustments | (d)<br>Total amounts using California law. Combine col. (b) and col. (c) | (e)<br>California source amounts and credits |
|---|---|---|---|---|---|
| **Credits** | **15 a** Total withholding (equals amount on Form 592-B if calendar year LLC) | | | ● | ▶ |
| | **b** Low-income housing credit | | | | |
| | **c** Credits other than line 15b related to rental real estate activities | | | | |
| | **d** Credits related to other rental activities | | | | |
| | **e** Nonconsenting nonresident member's tax paid by LLC | | | | |
| | **f** Other credits · Attach required schedules or statements | | | | |
| **Alternative Minimum Tax (AMT) Items** | **17 a** Depreciation adjustment on property placed in service after 1986 | -2,393 | -1,422 ◉ | -3,815 ◉ | -927 |
| | **b** Adjusted gain or loss | -51 | | -51 | -12 |
| | **c** Depletion (other than oil & gas) | | | | |
| | **d** Gross income from oil, gas, and geothermal properties | | | | |
| | **e** Deductions allocable to oil, gas, and geothermal properties | | | | |
| | **f** Other alternative minimum tax items | | | | |
| **Tax-exempt Income and Nondeductible Expenses** | **18 a** Tax-exempt interest income | | | | |
| | **b** Other tax-exempt income | | | | |
| | **c** Nondeductible expenses    STMT | 7,950 | 312 | 8,262 | 2,008 |
| **Distributions** | **19 a** Distributions of money (cash and marketable securities) | | | ◉ | |
| | **b** Distributions of property other than money | | | ◉ | |
| **Other Information** | **20 a** Investment income | 11,612 | | 11,612 | |
| | **b** Investment expenses | | | | |
| | **c** Other information. See instructions | STMT | | | |

022    7903194

Schedule K-1 (568) 2019  **Side 3**
9

ALECTO_00027324
**JA2529**

929424 12-18-19

| Member's name | Member's identifying number |
|---|---|
| AMAN DHUPER | |

**Other Member Information**

**Table 1** - Member's share of nonbusiness income from intangibles (source of income is dependent on residence or commercial domicile of the member):

Interest __ $ | 11,612 | Sec. 1231 Gains/Losses $ |                Capital Gains/Losses $

Dividends $ |                Royalties .............. $ |                Other .............. $

FOR USE BY MEMBERS ONLY - See instructions.

**Table 2** - Member's share of distributive items.

A. Member's share of the LLC's business income. See instructions.    $

B. Member's share of nonbusiness income from real and tangible personal property sourced or allocable to California.

Capital Gains/Losses .............. $                Rents/Royalties .............. $

Sec. 1231 Gains/Losses .............. $                Other .............. $

C. Member's distributive share of the LLC's property, payroll, and sales:

| Factors | Total within and outside California | Total within California |
|---|---|---|
| Property: Beginning .............. $ | | $ |
| Property: Ending .............. $ | | $ |
| Property: Annual rent expense .............. $ | | $ |
| Payroll .............. $ | | $ |
| Sales .............. $ | | $ |

CONFIDENTIAL

ALECTO_00027325
JA2530

ALECTO HEALTHCARE SERVICES LLC                                        46-0829723

| CA SCHEDULE K-1 | CHARITABLE CONTRIBUTIONS | |
|---|---|---|

| DESCRIPTION | AMOUNT | AMOUNT CA SOURCE |
|---|---|---|
| CHARITABLE CONTRIBUTIONS - 50 PERCENT LIMIT | 1,234. | |
| TOTAL TO SCHEDULE K-1, LINE 13A | 1,234. | |

| CA SCHEDULE K-1 | COLUMN C RECONCILIATION |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| ORDINARY INCOME (LOSS) | <2,454,944.> |
| INTEREST INCOME | 11,612. |
| SECTION 1231 GAIN (LOSS) | <96.> |
| CHARITABLE CONTRIBUTIONS | <1,234.> |
| OTHER DEDUCTIONS | <9,359.> |
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 96. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 80. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | <386.> |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | <166.> |
| NONDEDUCTIBLE EXPENSES | <7,950.> |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 269,665. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 104,061. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 1,873,154. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 189,580. |
| INTEREST EXPENSE | <9,359.> |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 9,359. |
| SALARIES AND WAGES | 7,470. |
| TOTAL TO SCHEDULE K-1 ANALYSIS OF CAPITAL ACCOUNT, COLUMN C | <18,417.> |

| CA SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| OFFICER'S LIFE INSURANCE | 1,292. |
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 270. |
| NONDEDUCTIBLE EXPENSE FROM PASSTHROUGH | 6,460. |
| STATE INCOME/FRANCHISE TAXES | 240. |
| TOTAL TO SCHEDULE K-1, LINE 18C | 8,262. |

10340904 146892 629917              2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                                ALECTO_00027326
                                                                         JA2531

ALECTO HEALTHCARE SERVICES LLC                                         46-0829723

---

CA SCHEDULE K-1    AGGREGATE GROSS RECEIPTS FOR AMT EXCLUSION

---

| DESCRIPTION | AMOUNT |
|---|---|
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES LOS ANGELES - ALECTO HEA | 8,498. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALECTO HEA | 3,108. |
| PASSTHROUGH: ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC - ALECT | 2. |
| GROSS SALES LESS RETURNS | 214,231. |
| TRADE OR BUSINESS OTHER INCOME | 1,049. |
| INTEREST | 4. |
| TOTAL | 226,892. |

CONFIDENTIAL                                          ALECTO_00027327
                                                                        JA2532

9        Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 79 of 83

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

Name: **ALECTO HEALTHCARE SERVICES LLC**                46-0829723

For: **AMAN DHUPER**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |

| | Activity - 1 | Activity - 4 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -289,159. | -269,319. | -192,610. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 8,498. | | 3,108. |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | -96. | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 240. | 287. | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -7,499. | -168. | |
| Adjusted gain or loss | | -51. | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 8,498. | | 3,108. |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
| - Unadjusted basis of assets | | | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

98                                                                            9

CONFIDENTIAL

ALECTO_00027328
**JA2533**

9       Case 23-10787-JKS   Doc 307-4   Filed 02/29/24   Page 80 of 83
**Schedule of Activities**

For calendar year 2019, or tax year beginning                    , 2019, and ending                    .

Name: **ALECTO HEALTHCARE SERVICES LLC**                                              46-0829723

For: **AMAN DHUPER**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -1,873,092. | | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 2. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 3,835. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 2. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | | |
| - Unadjusted basis of assets | | | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20      1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

99                                                                                                    9

10340904 146892 629917                      2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                                                    **ALECTO_00027329**
                                                                                              **JA2534**

## 2019 TAX RETURN FILING INSTRUCTIONS

OHIO COMPOSITE INCOME TAX FORM IT-4708

### FOR THE YEAR ENDING

December 31, 2019

**Prepared For:**

Alecto Healthcare Services LLC
16310 Bake Parkway Suite 200
Irvine, CA  92618

**Prepared By:**

Moss Adams LLP
2040 Main Street  Suite 900
Irvine, CA 92614

**To Be Signed and Dated By:**

Not applicable

**Amount of Tax:**

| | | |
|---|---|---|
| Total tax | $ | 0 |
| Less: payments and credits | $ | 0 |
| Plus: other amount | $ | 0 |
| Plus: interest and penalties | $ | 0 |
| No Payment Required | $ | |

**Overpayment:**

Not applicable

**Make Check Payable To:**

Not applicable

**Mail Tax Return To:**

The Ohio return has qualified for electronic filing. Please review your return for
completeness and accuracy. We will then transmit your return electronically to the
OHDOT.

**Return Must be Mailed On or Before:**

Return federal Form 8879-PE to us as soon as possible.

**Special Instructions:**

Do not mail a paper copy of the return to the OHDOT.

Enclosed are copies of Schedule K-1 to be distributed to the partners.

**CONFIDENTIAL**

Do not staple or paper clip

 **Ohio**

Department of Taxation

Rev. 11/04/19

**2019 Ohio IT 4708**

**Pass-Through Entity**

**Composite Income Tax Return**



19160185

09 04 20   Use only black ink and UPPERCASE letters. Amount fields use only whole dollar amounts, no cents.

|  |  |
|---|---|
| Check here if <u>amended</u> return    **X**    Check here if the <u>federal extension</u> was granted | Check here if <u>final</u> return |

Reporting Period Start Date
01 01 19

FEIN
46 0829723

**Entity Type:** (check only one)

☐ S corporation
**X** Limited liability company
☐ Partnership
☐ Other

Reporting Period End Date
12 31 19

Name of pass-through entity
ALECTO HEALTHCARE SERVICES LLC

Address (if address change, check box)
16310 BAKE PARKWAY SUITE 200
City                                        State    ZIP code
IRVINE                                      CA      92618

Foreign State Code      Country Code      Foreign country (if the mailing address is outside the U.S.)      Foreign postal code

| Total number of investors | Number of investors included on return | Ownership percentage of investors on return | Apportionment ratio, line 6 | Ohio charter or license no. (if S corp) |
|---|---|---|---|---|
| 8 | 8 | 1.0000 | 0.120161 | |

**Questionnaire**

|  | Yes | No | N/A |
|---|---|---|---|
| A. If the pass-through entity is an S corporation, did the pass-through entity pay any compensation or remuneration to any nonresident investors or nonresident members of the investor's family? If yes, include a list of those individuals (include SSNs) who received such compensation or remuneration and the amount(s) | | | X |
| B. If the pass-through entity is, or is treated as, a partnership for federal income tax purposes, did the pass-through entity make any guaranteed payments to any of its partners or equity investors? If yes, include a list of those partners or equity investors (include SSNs and FEINs) who received such guaranteed payments and the amount(s) | | X | |

**Schedule I - Taxable Income, Tax, Payments and Net Amount Due Calculations**

| | | |
|---|---|---|
| 1. Total income (loss) (from Schedule II, line 33) | 1. − | 48869746 |
| 2. Total deductions (from Schedule III, line 38) | 2. | 1122 |
| 3. Income (loss) to be allocated and apportioned (line 1 minus line 2) | 3. − | 48870868 |
| 4. Net allocable nonbusiness income (loss) everywhere, if any, and gain (loss) described in Ohio Revised Code (R.C.) section 5747.212. (Include explanation and supporting schedules) | 4. | 0 |
| 5. Apportionable income (loss) (line 3 minus line 4) | 5. − | 48870868 |
| 6. Ohio apportionment ratio (from Schedule IV, line 42) | 6. | 0.120161 |
| 7. Income (loss) apportioned to Ohio (line 5 times line 6) | 7. − | 5872372 |
| 8. Net nonbusiness income (loss) allocated to Ohio and gain (loss) apportioned to Ohio per R.C. section 5747.212. (Include explanation and supporting schedules.) | 8. | 0 |
| 9. Ohio taxable income (add lines 7 and 8, if less than zero, enter zero) | 9. | 0 |



☐☐ ☐☐ ☐☐ ☐☐☐☐
MM   DD   YY   CODE

971821 11-04-19   CCH
**2019 IT 4708 - pg. 1 of 7**

**CONFIDENTIAL**

ALECTO_00027331
**JA2536**

 **Ohio** | Department of Taxation
Rev. 11/04/19

**2019 Ohio IT 4708**
**Pass-Through Entity**
**Composite Income Tax Return**


19160285

FEIN
46 0829723

**Schedule I - Taxable Income, Tax, Payments and Net Amount Due Calculations...cont.**

| | | |
|---|---|---|
| 10. Tax before credits (tax rate change, see instructions) | 10. | 0 |
| 11. Nonrefundable business credits (include Schedule E) | 11. | 0 |
| 12. Tax due after nonrefundable business credits. Line 10 minus line 11. (If less than zero, enter zero) | 12. | 0 |
| 13. Interest penalty on underpayment of estimated tax (include Ohio IT/SD 2210) | 13. | 0 |
| 14. Ohio IT 4708 UPC payments for the taxable year | 14. | 0 |
| 15. Ohio IT 1140 UPC payments transferred to this form and any payments made with previously filed return(s) for this taxable year | 15. | 0 |
| 16. Ohio IT 4708 UPC payments transferred to Ohio IT 1140 and overpayments, if any, previously claimed for this taxable year | 16. | 0 |
| 17. Total net Ohio estimated tax payments for 2019 (sum of lines 14 and 15 minus line 16) | 17. | 0 |
| 18. Total refundable business credits (from Schedule V, line 49) | 18. | 0 |
| 19. Total of lines 17 and 18 | 19. | 0 |
| 20. Overpayment, if any (line 19 minus the sum of lines 12 and 13, if less than zero, enter zero) YOUR REFUND ▶ | 20. | 0 |
| 21. Net amount due, if any (sum of lines 12 and 13 minus line 19, if less than zero, enter zero) | 21. | 0 |
| 22. Interest and penalty due on late-paid tax and/or late-filed return, if any | 22. | 0 |
| 23. Total amount due, if any (add lines 21 and 22). Make check payable to Ohio Treasurer of State, include Ohio UPC and place FEIN on check **AMOUNT DUE** ▶ | 23. | 0 |

**If your refund is $1.00 or less, no refund will be issued. If you owe $1.00 or less, no payment is necessary.**

| | | |
|---|---|---|
| **Sign Here (required):** I have read this return. Under penalties of perjury, I declare that, to the best of my knowledge and belief, the return and all enclosures are true, correct and complete. | | Do not staple or paper clip. Place any supporting documents, including Ohio IT K-1(s), after the last page of this return. |
| JEREMY REDDIN | | |
| Pass-through entity officer or agent (print) CFO | (323) 932 5963 | **Mail to:** |
| Title of officer or agent (print) | Phone number | **Ohio Dept. of Taxation** |
| Signature of pass-through entity officer or agent DUSTIN MARCINIAK | Date (MM/DD/YY) 949-221-4000 | **P.O. Box 181140** **Columbus, OH 43218-1140** |
| Preparer's name (print) DUSTIN.MARCINIAK@MOS | Phone number P00309414 | Instructions for this form are on |
| Preparer's e-mail address | PTIN | our website at tax.ohio.gov. |
| Do you authorize your preparer to contact us regarding this return? | Yes  X  No | |




971822 11-04-19   CCH
**2019 IT 4708 - pg. 2 of 7**

CONFIDENTIAL

ALECTO_00027332
**JA2537**

**<u>Exhibit B</u>**

**Part 4**

 **Ohio** | Department of Taxation Rev. 11/04/19

**2019 Ohio IT 4708**
**Pass-Through Entity**
**Composite Income Tax Return**


19160385

FEIN
46  0829723

## Schedule II - Income and Adjustments

Amounts reflected in Schedule II and Schedule III are the combined amounts from the federal Schedule K-1(s) for the taxable year for only those investors who are participating in the filing of this return. **Include with this return a copy of the applicable federal 1120S or 1065 and K-1(s) of participating investors.**

| | | |
|---|---|---|
| 24. Ordinary business income (loss) | 24. − | 49100099 |
| 25. The investors' shares of expenses and losses incurred in connection with all direct and indirect transactions between the pass-through entity and its related members, including certain investors' family members | 25. | 0 |
| 26. Guaranteed payments that the pass-through entity made to each investor participating in the filing of this return if such investor directly or indirectly owns at least 20% of the pass-through entity | 26. | 0 |
| 27. Compensation that the pass-through entity paid to each investor participating in the filing of this return if such investor directly or indirectly owns at least 20% of the pass-through entity. Reciprocity agreements do not apply | 27. | 0 |
| 28. Net income or (loss) from rental activities other than amount shown on line 24 | 28. | 0 |
| 29. Portfolio income (loss). See note below. | | |
| a. Interest income | 29a. | 232271 |
| b. Dividends | 29b. | 0 |
| c. Royalties | 29c. | 0 |
| d. Net short-term capital gain (loss) | 29d. | 0 |
| e. Net long-term capital gain (loss). Exclude from this line any capital loss carryforward amount. **Note:** If adding lines 29d and 29e results in a net loss, the net allowable loss for the sum of these two lines cannot exceed the product of $3,000 and the number of participating investors included in this return | 29e. | 0 |
| f. Other portfolio income (loss) | 29f. | 0 |
| 30. Net gain (loss) under Internal Revenue Code (I.R.C.) section 1231 | 30. − | 1918 |
| 31. Adjustment for I.R.C. sections 168(k) and 179 depreciation expense and any applicable federal conformity adjustments. Complete Schedule VI    2/3    5/6    6/6 (check applicable box) | 31. | 0 |
| 32. Other income (loss) (include explanation and supporting schedule) | 32. | 0 |
| 33. Total income (loss) (add lines 24-32; enter here and on Schedule I, line 1) | 33. − | 48869746 |




971823  11-04-19    CCH
**2019 IT 4708 - pg. 3 of 7**

**CONFIDENTIAL**

**ALECTO_00027333**
**JA2539**

 **Ohio** | Department of Taxation Rev. 11/04/19 | **2019 Ohio IT 4708 Pass-Through Entity Composite Income Tax Return**


19160485

FEIN
46 0829723

### Schedule III - Deductions

List only those deductions that have not already been used to reduce any income items set forth in Schedule II.

| | | |
|---|---|---|
| 34. I.R.C. section 179 expense not deducted in calculating line 24 | 34. | 0 |
| 35. Adjustment for I.R.C. sections 168(k) and 179 depreciation expense added back in applicable previous years and federal conformity adjustments. Complete Schedule VI **STMT 2** | 35. | 1122 |
| 36. Net federal interest and dividends exempt from state taxation | 36. | 0 |
| 37. Exempt gains from the sale of Ohio state or local government bonds | 37. | 0 |
| 38. Total deductions (add lines 34-37; enter here and on Schedule I, line 2) | 38. | 1122 |

### Schedule IV - Apportionment Worksheet

Use this schedule to calculate the apportionment ratio for a pass-through entity that is not a financial institution as defined in R.C. section 5725.01. If the pass-through entity is a financial institution, refer to the instructions. **Note:** All ratios are to be carried to six decimal places.

| 39. Property | Within Ohio | | Total Everywhere |
|---|---|---|---|
| a) Owned (average cost) | 57734964 | | 271144991 |
| | **Within Ohio** | | **Total Everywhere** |
| b) Rented (annual rental x 8) | 16104408 | | 112580512 |
| | **Within Ohio** | | **Total Everywhere** |
| c) Total (lines 40a and 40b) | 73839372 | ÷ | 383725503 |
| | = Ratio 0.192428 | x Weight 0.20 | = Weighted Ratio 0.038486 |
| 40. Payroll | **Within Ohio** 11725260 | ÷ | **Total Everywhere** 116558683 |
| | = Ratio 0.100595 | x Weight 0.20 | Weighted Ratio 0.020119 |
| 41. Sales | **Within Ohio** 26499579 | ÷ | **Total Everywhere** 258296663 |
| | = Ratio 0.102594 | x Weight 0.60 | = Weighted Ratio 0.061556 |
| | | | **Weighted Ratio** |

42. Total weighted apportionment ratio (add lines 39c, 40 and 41). Enter ratio here and on Schedule I, line 6 ... 42. **0.120161**

**Note:** If the denominator of any factor is zero, the weight given to the other factors must be proportionately increased so that the total weight given to the combined number of factors used is 100%, i.e., if no property/payroll, use 25% and 75%; if no sales, use 50% property/payroll; if only one factor, use 100%.



971824 11-04-19    CCH
**2019 IT 4708 - pg. 4 of 7**

CONFIDENTIAL

 **Ohio** | Department of Taxation
Rev. 11/04/19

**2019 Ohio IT 4708**
**Pass-Through Entity**
**Composite Income Tax Return**


19160585

FEIN
46 0829723

## Schedule V - Refundable Business Credits

Note: Certificates from the Ohio Development Services Agency and/or Ohio IT K-1(s) must be included to verify each refundable credit claimed.

| | | |
|---|---|---|
| 43. Historic preservation credit (include a copy of the credit certificate) | 43. | 0 |
| 44. Job creation credit and job retention credit (include a copy of the credit certificate) | 44. | 0 |
| 45. Pass-through entity credit (include a copy of the Ohio IT K-1) | 45. | 0 |
| 46. Venture capital credit (include a copy of the credit certificate) | 46. | 0 |
| 47. Motion picture / Broadway production credit (include a copy of the credit certificate) | 47. | 0 |
| 48. Financial Institutions Tax (FIT) credit (include a copy of the Ohio IT K-1) | 48. | 0 |
| 49. Total refundable business credits (add lines 43-48; enter here and on Schedule I, line 18) | 49. | 0 |

## Schedule VI - 168K Bonus Depreciation and 179 Expense Add-back Schedule

Check the box if the depreciation adjustment has been waived

50. Total current year sections 168K bonus depreciation and 179 expense add-back   50.   0
51. Prior years add-back amount and applicable add-back ratio

| | Column (A) - Amount | Column (B) - Ratio | | |
|---|---|---|---|---|
| 51a. Year Prior | 0 | 2/3 | 5/6 | 6/6 |
| 51b. 2 Years Prior | 5612 | 2/3  X | 5/6 | 6/6 |
| 51c. 3 Years Prior | 0 | 2/3 | 5/6 | 6/6 |
| 51d. 4 Years Prior | 0 | 2/3 | 5/6 | 6/6 |
| 51e. 5 Years Prior | 0 | 2/3 | 5/6 | 6/6 |

## Schedule VII - Investor Information

Provide investor information for all (resident and nonresident) investors in the pass-through entity. List investors by highest to lowest ownership percentage. Use an additional sheet, if necessary.

X   Check the box if the investor is included on the return.

| SSN | FEIN | | | Percent of ownership 0.6800 | Amount of PTE tax credit 0 |
|---|---|---|---|---|---|

| First name/entity LAXMAN | | M.I. | Last name REDDY | | |
|---|---|---|---|---|---|

Address

| City CALABASAS | | | State CA | ZIP code 91302 | |
|---|---|---|---|---|---|



971825 11-04-19   CCH
**2019 IT 4708 - pg. 5 of 7**

CONFIDENTIAL

ALECTO_00027335
**JA2541**

 **Ohio** | Department of Taxation
Rev. 11/04/19

### 2019 Ohio IT 4708
### Pass-Through Entity
### Composite Income Tax Return


19160685

FEIN
46 0829723

## Schedule VII - Investor Information...cont.

Provide investor information for all (resident and nonresident) investors in the pass-through entity. List investors by highest to lowest ownership percentage. Use an additional sheet, if necessary.

X   Check the box if the investor is included on the return.

| SSN | FEIN | | Percent of ownership 0.1000 | Amount of PTE tax credit 0 |
|---|---|---|---|---|

First name/entity: ROGER    M.I.    Last name: KRISSMAN

Address:

| City: UPLAND | | State: CA | ZIP code: 91786 |

---

X   Check the box if the investor is included on the return.

| SSN | FEIN | | Percent of ownership 0.0700 | Amount of PTE tax credit 0 |
|---|---|---|---|---|

First name/entity: MICHAEL    M.I.: J    Last name: SARRAO

Address:

| City: MISSION VIEJO | | State: CA | ZIP code: 92692 |

---

X   Check the box if the investor is included on the return.

| SSN | FEIN | | Percent of ownership 0.0500 | Amount of PTE tax credit 0 |
|---|---|---|---|---|

First name/entity: MATT    M.I.    Last name: WILLIAMS

Address:

| City: WEST HOLLYWOOD | | State: CA | ZIP code: 90046 |



971826 11-04-19   CCH
**2019 IT 4708 - pg. 6 of 7**

CONFIDENTIAL

ALECTO_00027336
**JA2542**

 **Ohio** | Department of Taxation
Rev. 11/04/19

**2019 Ohio IT 4708**
**Pass-Through Entity**
**Composite Income Tax Return**


19160785

FEIN
46 0829723

## Schedule VII - Investor Information...cont.

Provide investor information for all (resident and nonresident) investors in the pass-through entity. List investors by highest to lowest ownership percentage.
Use an additional sheet, if necessary.

**X**    Check the box if the investor is included on the return.

| SSN | FEIN | Percent of ownership | Amount of PTE tax credit |
|---|---|---|---|
| | | 0.0500 | 0 |

| First name/entity | M.I. | Last name |
|---|---|---|
| STEVEN | | KAY |

Address

| City | State | ZIP code |
|---|---|---|
| SAN FRANCISCO | CA | 94105 |

---

**X**    Check the box if the investor is included on the return.

| SSN | FEIN | Percent of ownership | Amount of PTE tax credit |
|---|---|---|---|
| | | 0.0500 | 0 |

| First name/entity | M.I. | Last name |
|---|---|---|
| HAYES IRREVOCAB | | |

Address

| City | State | ZIP code |
|---|---|---|
| DALLAS | TX | 75225 |

---

**X**    Check the box if the investor is included on the return.

| SSN | FEIN | Percent of ownership | Amount of PTE tax credit |
|---|---|---|---|
| 4 | | 0.0000 | 0 |

| First name/entity | M.I. | Last name |
|---|---|---|
| PANCH | | JEYAKUMAR |

Address

| City | State | ZIP code |
|---|---|---|
| TUSTIN | CA | 92782 |



971827 11-04-19   CCH
**2019 IT 4708 - pg. 7 of 7**

**CONFIDENTIAL**

**ALECTO_00027337**
**JA2543**



ALECTO HEALTHCARE SERVICES LLC                                              46-0829723

```
OH IT 4708             LIST OF PARTICIPATING INVESTORS          STATEMENT 1
```

| PARTICIPATING INVESTOR'S NAME | TAXABLE INCOME | EFFECTIVE RATIO <INV/TOTAL> |
|---|---|---|
| LAXMAN REDDY | −3,288,538. | 0 |
| ROGER KRISSMAN | −587,222. | 0 |
| MICHAEL J SARRAO | −411,073. | 0 |
| PANCH JEYAKUMAR | −411,072. | 0 |
| MATT WILLIAMS | −293,604. | 0 |
| STEVEN KAY | −293,604. | 0 |
| HAYES IRREVOCABLE TRUST | −293,632. | 0 |
| AMAN DHUPER | −293,605. | 0 |
| | −5,872,350. | 0 |

```
OHIO IT 4708      BONUS AND SECTION 179 DEPRECIATION DEDUCTION      STATEMENT 2
```

| YEAR | DEPRECIATION TAKEN | ADD−BACK METHOD | TOTAL ADD−BACK | | | CURRENT YEAR DEDUCTION |
|---|---|---|---|---|---|---|
| 2017 | 6,734. | X  5/6  = | 5,612. | X  1/5  = | | 1,122. |
| | | | | | | 1,122. |

PERCENTAGE OF ALL PARTICIPATING INVESTORS                       1.0000000

TOTAL I.R.C 168(K) BONUS AND I.R.C 179 DEPRECIATION
DEDUCTION TO FORM IT 4708, SCHEDULE III, LINE 35               1,122.

CONFIDENTIAL                                              ALECTO_00027338
                                                                         JA2544

 **Ohio** | Department of Taxation | Rev. 11/04/19

**2019 Ohio IT 4708**
**Pass-Through Entity**
**Composite Income Tax Return**



10211411

FEIN
46-0829723

## Schedule VII - Investor Information...cont.

Provide investor information for all (resident and nonresident) investors in the pass-through entity. List investors by highest to lowest ownership percentage. Use an additional sheet, if necessary.

**X**   Check the box if the investor is included on the return.

| SSN | FEIN | | Percent of ownership | Amount of PTE tax credit |
|---|---|---|---|---|
| | | | 0.0000 | 0 |

First name/entity: **AMAN**     M.I.     Last name: **DHUPER**

Address:

City: **RANCHO CUCAMONGA**     State: **CA**     ZIP code: **91739**

---

Check the box if the investor is included on the return.

| SSN | FEIN | | Percent of ownership | Amount of PTE tax credit |
|---|---|---|---|---|

First name/entity:     M.I.     Last name:

Address:

City:     State:     ZIP code:

---

Check the box if the investor is included on the return.

| SSN | FEIN | | Percent of ownership | Amount of PTE tax credit |
|---|---|---|---|---|

First name/entity:     M.I.     Last name:

Address:

City:     State:     ZIP code:

---

**CONFIDENTIAL**

**ALECTO_00027339**
**JA2545**

Case 23-10787-JKS    Doc 307-5    Filed 02/29/24    Page 9 of 70

Do not staple or paper clip.

**Ohio** | Department of Taxation
Rev. 10/19

2019

**Ohio IT K-1**

Use only black ink and UPPERCASE letters.



10211411

☐ Check here if this is an **amended** K-1.

For calendar year **2019**    or taxable year beginning _____ and ending _____

Investor's / beneficiary's SSN / FEIN [_____]    Entity FEIN **46-0829723**    Entity type **LLC**

| Investor's / beneficiary's name, address and ZIP code or Foreign address and Foreign postal code | Pass-through entity's name, address and ZIP code or Foreign address and Foreign postal code |
|---|---|
| LAXMAN REDDY | ALECTO HEALTHCARE SERVICES LLC |
| | 16310 BAKE PARKWAY SUITE 200 |
| CALABASAS, CA   91302 | IRVINE, CA   92618 |
| Foreign State Code        Country Code | Foreign State Code        Country Code |

| Investor's percentage of | Beginning of year | | End of year | | |
|---|---|---|---|---|---|
| Profit-sharing | 56.0000000 | % | 68.0000000 | % | ☐ IT 1140 qualified investor |
| Loss-sharing | 56.0000000 | % | 68.0000000 | % | ☒ IT 4708 composite investor |
| Ownership of capital | 56.0000000 | % | 68.0000000 | % | ☐ Nonapplicable |

**Entity Apportionment Percentage**

| | Ohio | Everywhere |
|---|---|---|
| Property | 73839372. | 383725503. |
| Payroll | 11725260. | 116558683. |
| Sales | 26499579. | 258296663. |
| Total apportionment percentage | | 0.120161 |

**Depreciation Information**    (☐ check box if depreciation adjustment has been waived)

Total current year sections 168K bonus depreciation and 179 expense adjustment _____

Prior years add-back (indicate add-back deduction time frame next to amount, i.e., 2/3, 5/6, 6/6)

5612. 5/6 _____ / _____ / _____ / _____ /
2017

**Investor's / Beneficiary's Share of Ohio Taxable Income and Tax Credits**

1. a. Ohio taxable income _____ **-3288463.**
   b. Ohio apportioned guaranteed payments/compensation _____
   c. Ohio apportioned depreciation adjustment _____ **-75.**
   **Total** Ohio taxable income .......................................................................... 1. _____**-3288538.**
2. Nonrefundable business credits (include certificate(s)) .................................. 2. _____
3. Ohio tax paid on behalf of this investor / beneficiary (net of overpayments) (credit for Ohio taxes **paid by this entity**) ...................................................................................................... 3. _____
4. Total indirect pass-through entity credit, W2 withholding or 1099 withholding ( **attach W2/1099 when applicable**) 4. _____
   FEIN(s) of pass-through entity (payors) _____
5. Job creation credit and job retention credit (include certificate) · percent of credit claimed _____% .......... 5. _____

6. Ohio historic preservation credit (include certificate) · percent of credit claimed _____%..................... 6. _____
7. Losses on loans made to Ohio venture capital program ............................................................... 7. _____

8. Motion picture / Broadway production credit (include certificate) · percent of credit claimed _____% ...... 8. _____
9. Financial Institutions Tax (FIT) credit ................................................................................... 9. _____
   FEIN of the entity that paid the FIT _____

**Supplemental Information**
PRIOR YEAR ADDBACK AMOUNTS ARE UNAPPORTIONED ENTITY TOTALS

971221 11-05-19

10

**Ohio IT K-1 - pg. 1 of 1**

**CONFIDENTIAL**

ALECTO_00027340
**JA2546**

Case 23-10787-JKS   Doc 307-5   Filed 02/29/24   Page 10 of 70

**Ohio** | Department of Taxation
Rev. 10/19



2019

**Ohio IT K-1**
Use only black ink and UPPERCASE letters.

☐ Check here if this is an **amended** K-1.



For calendar year **2019** or taxable year beginning _____ and ending _____

Investor's / beneficiary's SSN / FEIN [ ]   Entity FEIN **46-0829723**   Entity type **LLC**

Investor's / beneficiary's name, address and ZIP code or Foreign address and Foreign postal code
ROGER KRISSMAN

UPLAND, CA  91786

| Foreign State Code | Country Code |

Pass-through entity's name, address and ZIP code or Foreign address and Foreign postal code
ALECTO HEALTHCARE SERVICES LLC
16310 BAKE PARKWAY SUITE 200
IRVINE, CA  92618

| Foreign State Code | Country Code |

| Investor's percentage of | Beginning of year | | End of year | | |
|---|---|---|---|---|---|
| Profit-sharing | 10.0000000 | % | 10.0000000 | % | ☐ IT 1140 qualified investor |
| Loss-sharing | 10.0000000 | % | 10.0000000 | % | ☒ IT 4708 composite investor |
| Ownership of capital | 10.0000000 | % | 10.0000000 | % | ☐ Nonapplicable |

| **Entity Apportionment Percentage** | **Ohio** | **Everywhere** |
|---|---|---|
| Property | 73839372. | 383725503. |
| Payroll | 11725260. | 116558683. |
| Sales | 26499579. | 258296663. |
| Total apportionment percentage | | 0.120161 |

**Depreciation Information**  (☐ check box if depreciation adjustment has been waived)
Total current year sections 168K bonus depreciation and 179 expense adjustment ...........................
Prior years add-back (indicate add-back deduction time frame next to amount, i.e., 2/3, 5/6, 6/6)

5612. 5/6 _____ / _____ / _____ / _____ /
2017

**Investor's / Beneficiary's Share of Ohio Taxable Income and Tax Credits**

1. a. Ohio taxable income _____ -587209.
   b. Ohio apportioned guaranteed payments/compensation _____
   c. Ohio apportioned depreciation adjustment _____ -13.
   **Total** Ohio taxable income ........................................................................................ 1. _____ -587222.
2. Nonrefundable business credits (include certificate(s)) ..................................................... 2. _____
3. Ohio tax paid on behalf of this investor / beneficiary (net of overpayments) (credit for Ohio taxes **paid by this entity**) ............................................................................................................................ 3. _____
4. Total indirect pass-through entity credit, W2 withholding or 1099 withholding ( **attach W2/1099 when applicable** ) 4. _____
   FEIN(s) of pass-through entity (payors) _____
5. Job creation credit and job retention credit (include certificate) · percent of credit claimed _____ % ........ 5. _____

6. Ohio historic preservation credit (include certificate) · percent of credit claimed _____ % ..................... 6. _____
7. Losses on loans made to Ohio venture capital program ..................................................... 7. _____

8. Motion picture / Broadway production credit (include certificate) · percent of credit claimed _____ % ........ 8. _____
9. Financial Institutions Tax (FIT) credit ............................................................................. 9. _____
   FEIN of the entity that paid the FIT _____

**Supplemental Information**
PRIOR YEAR ADDBACK AMOUNTS ARE UNAPPORTIONED ENTITY TOTALS

971221 11-05-19

11

**Ohio IT K-1 - pg. 1 of 1**

CONFIDENTIAL

ALECTO_00027341
JA2547

Case 23-10787-JKS    Doc 307-5    Filed 02/29/24    Page 11 of 70

Do not staple or paper clip.

**Ohio** | Department of Taxation
Rev. 10/19

2019

**Ohio IT K-1**
Use only black ink and UPPERCASE letters.



10211411

☐ Check here if this is an amended K-1.

For calendar year **2019** or taxable year beginning _____ and ending _____

Investor's / beneficiary's SSN / FEIN ▮▮▮▮▮▮   Entity FEIN **46-0829723**   Entity type **LLC**

Investor's / beneficiary's name, address and ZIP code or Foreign address and Foreign postal code

MICHAEL J SARRAO
▮▮▮▮▮▮▮▮▮▮
MISSION VIEJO, CA    92692

Foreign State Code        Country Code

Pass-through entity's name, address and ZIP code or Foreign address and Foreign postal code

ALECTO HEALTHCARE SERVICES LLC
16310 BAKE PARKWAY SUITE 200
IRVINE, CA    92618

Foreign State Code        Country Code

| Investor's percentage of | Beginning of year | End of year | |
|---|---|---|---|
| Profit-sharing | 7.0000000 % | 7.0000000 % | ☐ IT 1140 qualified investor |
| Loss-sharing | 7.0000000 % | 7.0000000 % | ☒ IT 4708 composite investor |
| Ownership of capital | 7.0000000 % | 7.0000000 % | ☐ Nonapplicable |

**Entity Apportionment Percentage**

| | Ohio | Everywhere |
|---|---|---|
| Property | 73839372. | 383725503. |
| Payroll | 11725260. | 116558683. |
| Sales | 26499579. | 258296663. |
| Total apportionment percentage | | 0.120161 |

**Depreciation Information**   (☐ check box if depreciation adjustment has been waived)

Total current year sections 168K bonus depreciation and 179 expense adjustment ........................ _____

Prior years add-back (indicate add-back deduction time frame next to amount, i.e., 2/3, 5/6, 6/6)

5612. **5/6** _____ / _____ _____ / _____ _____ / _____ _____ / _____
2017

**Investor's / Beneficiary's Share of Ohio Taxable Income and Tax Credits**

1. a. Ohio taxable income _____ −411064.
   b. Ohio apportioned guaranteed payments/compensation _____
   c. Ohio apportioned depreciation adjustment _____ −9.
   **Total** Ohio taxable income ........................................................................ 1. _____ −411073.
2. Nonrefundable business credits (include certificate(s)) ......................................... 2. _____
3. Ohio tax paid on behalf of this investor / beneficiary (net of overpayments) (credit for Ohio taxes **paid by this entity**) ........................................................................................................ 3. _____
4. Total indirect pass-through entity credit, W2 withholding or 1099 withholding ( **attach W2/1099 when applicable**) 4. _____
   FEIN(s) of pass-through entity (payors) _____
5. Job creation credit and job retention credit (include certificate) - percent of credit claimed _____% ......... 5. _____

6. Ohio historic preservation credit (include certificate) - percent of credit claimed _____% ........................ 6. _____
7. Losses on loans made to Ohio venture capital program ................................................................. 7. _____

8. Motion picture / Broadway production credit (include certificate) - percent of credit claimed _____% ......... 8. _____
9. Financial Institutions Tax (FIT) credit ........................................................................................ 9. _____
   FEIN of the entity that paid the FIT _____

**Supplemental Information**
PRIOR YEAR ADDBACK AMOUNTS ARE UNAPPORTIONED ENTITY TOTALS

971221 11-05-19

12

Ohio IT K-1 - pg. 1 of 1

10340904 146892 629917         2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027342
**JA2548**

Case 23-10787-JKS    Doc 307-5    Filed 02/29/24    Page 12 of 70

Do not staple or paper clip.

| **Ohio** | Department of Taxation<br>Rev. 10/19 | 2019<br>Ohio IT K-1<br>Use only black ink and UPPERCASE letters. | <br>10211411 |

☐ Check here if this is an **amended** K-1.

For calendar year __2019__ or taxable year beginning _____ and ending _____

Investor's / beneficiary's SSN / FEIN [                    ]    Entity FEIN __46-0829723__    Entity type __LLC__

Investor's / beneficiary's name, address and ZIP code or Foreign address and Foreign postal code

PANCH JEYAKUMAR

TUSTIN, CA   92782

| | | |
|---|---|---|
| | Foreign State Code | Country Code |

Pass-through entity's name, address and ZIP code or Foreign address and Foreign postal code

ALECTO HEALTHCARE SERVICES LLC
16310 BAKE PARKWAY SUITE 200
IRVINE, CA   92618

| | | |
|---|---|---|
| | Foreign State Code | Country Code |

| Investor's percentage of | Beginning of year | End of year | |
|---|---|---|---|
| Profit-sharing | 7.0000000 % | 0.0000000 % | ☐ IT 1140 qualified investor |
| Loss-sharing | 7.0000000 % | 0.0000000 % | ☒ IT 4708 composite investor |
| Ownership of capital | 7.0000000 % | 0.0000000 % | ☐ Nonapplicable |

**Entity Apportionment Percentage**

| | Ohio | Everywhere |
|---|---|---|
| Property | 73839372. | 383725503. |
| Payroll | 11725260. | 116558683. |
| Sales | 26499579. | 258296663. |
| Total apportionment percentage | | 0.120161 |

**Depreciation Information**    (☐ check box if depreciation adjustment has been waived)

Total current year sections 168K bonus depreciation and 179 expense adjustment ............................... _____

Prior years add-back (indicate add-back deduction time frame next to amount, i.e., 2/3, 5/6, 6/6)

5612.  5 /6 _____ / _____ / _____ / _____ /
2017

**Investor's / Beneficiary's Share of Ohio Taxable Income and Tax Credits**

1. a. Ohio taxable income _____ −411063.
   b. Ohio apportioned guaranteed payments/compensation _____
   c. Ohio apportioned depreciation adjustment _____ −9.
   **Total** Ohio taxable income ........................................................................................ 1. _____ −411072.

2. Nonrefundable business credits (include certificate(s)) .................................................... 2. _____

3. Ohio tax paid on behalf of this investor / beneficiary (net of overpayments) (credit for Ohio taxes **paid by this entity**) ........................................................................................................ 3. _____

4. Total indirect pass-through entity credit, W2 withholding or 1099 withholding ( **attach W2/1099 when applicable**) 4. _____
   FEIN(s) of pass-through entity (payors) _____

5. Job creation credit and job retention credit (include certificate) · percent of credit claimed _____% ........... 5. _____

6. Ohio historic preservation credit (include certificate) · percent of credit claimed _____% ..................... 6. _____

7. Losses on loans made to Ohio venture capital program ...................................................... 7. _____

8. Motion picture / Broadway production credit (include certificate) · percent of credit claimed _____% ......... 8. _____

9. Financial Institutions Tax (FIT) credit ........................................................................ 9. _____
   FEIN of the entity that paid the FIT _____

**Supplemental Information**
PRIOR YEAR ADDBACK AMOUNTS ARE UNAPPORTIONED ENTITY TOTALS
_____
_____

971221  11-05-19

Ohio IT K-1 - pg. 1 of 1

13

CONFIDENTIAL

ALECTO_00027343
JA2549

Case 23-10787-JKS   Doc 307-5   Filed 02/29/24   Page 13 of 70

Do not staple or paper clip.

**Ohio** | Department of Taxation
Rev. 10/19

**2019**

**Ohio IT K-1**
Use only black ink and UPPERCASE letters.



10211411

☐ Check here if this is an **amended** K-1.

For calendar year __2019__ or taxable year beginning _____ and ending _____

Investor's / beneficiary's SSN / FEIN _____    Entity FEIN __46-0829723__   Entity type __LLC__

Investor's / beneficiary's name, address and ZIP code or Foreign address and Foreign postal code
MATT WILLIAMS

WEST HOLLYWOOD, CA    90046

| Foreign State Code | Country Code |

Pass-through entity's name, address and ZIP code or Foreign address and Foreign postal code
ALECTO HEALTHCARE SERVICES LLC
16310 BAKE PARKWAY SUITE 200
IRVINE, CA    92618

| Foreign State Code | Country Code |

| Investor's percentage of | Beginning of year | | End of year | |
|---|---|---|---|---|
| Profit-sharing | 5.0000000 | % | 5.0000000 | % |
| Loss-sharing | 5.0000000 | % | 5.0000000 | % |
| Ownership of capital | 5.0000000 | % | 5.0000000 | % |

☐ IT 1140 qualified investor
☒ IT 4708 composite investor
☐ Nonapplicable

**Entity Apportionment Percentage**

| | Ohio | Everywhere |
|---|---|---|
| Property | 73839372. | 383725503. |
| Payroll | 11725260. | 116558683. |
| Sales | 26499579. | 258296663. |
| Total apportionment percentage | | 0.120161 |

**Depreciation Information**    (☒ check box if depreciation adjustment has been waived)

Total current year sections 168K bonus depreciation and 179 expense adjustment ................................

Prior years add-back (indicate add-back deduction time frame next to amount, i.e., 2/3, 5/6, 6/6)

5612. 5/6 _____ / _____ / _____ / _____ /
2017

**Investor's / Beneficiary's Share of Ohio Taxable Income and Tax Credits**

1. a. Ohio taxable income _____ −293604.
   b. Ohio apportioned guaranteed payments/compensation _____
   c. Ohio apportioned depreciation adjustment _____
   **Total** Ohio taxable income ........................................................................................... 1. _____ −293604.

2. Nonrefundable business credits (include certificate(s)) ................................................................ 2. _____

3. Ohio tax paid on behalf of this investor / beneficiary (net of overpayments) (credit for Ohio taxes **paid by this entity**) ........................................................................................................................... 3. _____

4. Total indirect pass-through entity credit, W2 withholding or 1099 withholding ( **attach W2/1099 when applicable**) 4. _____
   FEIN(s) of pass-through entity (payors) _____

5. Job creation credit and job retention credit (include certificate) · percent of credit claimed _____% ........ 5. _____

6. Ohio historic preservation credit (include certificate) · percent of credit claimed _____% ........................ 6. _____

7. Losses on loans made to Ohio venture capital program ........................................................................ 7. _____

8. Motion picture / Broadway production credit (include certificate) · percent of credit claimed _____% ........ 8. _____

9. Financial Institutions Tax (FIT) credit ........................................................................................... 9. _____
   FEIN of the entity that paid the FIT _____

**Supplemental Information**
PRIOR YEAR ADDBACK AMOUNTS ARE UNAPPORTIONED ENTITY TOTALS

971221 11-05-19

14

Ohio IT K-1 - pg. 1 of 1

CONFIDENTIAL

ALECTO_00027344
**JA2550**

Case 23-10787-JKS    Doc 307-5    Filed 02/29/24    Page 14 of 70

Do not staple or paper clip.

**Ohio** | Department of Taxation
Rev. 10/19



2019

**Ohio IT K-1**
Use only black ink and UPPERCASE letters.



10211411

☐ Check here if this is an amended K-1.

For calendar year __2019__  or taxable year beginning _____  and ending _____

Investor's / beneficiary's SSN / FEIN [_____]    Entity FEIN __46-0829723__    Entity type __LLC__

Investor's / beneficiary's name, address and ZIP code or Foreign address and Foreign postal code
STEVEN KAY

SAN FRANCISCO, CA    94105

| Foreign State Code | Country Code |

Pass-through entity's name, address and ZIP code or Foreign address and Foreign postal code
ALECTO HEALTHCARE SERVICES LLC
16310 BAKE PARKWAY SUITE 200
IRVINE, CA    92618

| Foreign State Code | Country Code |

| Investor's percentage of | Beginning of year | | End of year | |
|---|---|---|---|---|
| Profit-sharing | 5.0000000 | % | 5.0000000 | % |
| Loss-sharing | 5.0000000 | % | 5.0000000 | % |
| Ownership of capital | 5.0000000 | % | 5.0000000 | % |

☐ IT 1140 qualified investor
☒ IT 4708 composite investor
☐ Nonapplicable

**Entity Apportionment Percentage**

| | Ohio | Everywhere |
|---|---|---|
| Property | 73839372. | 383725503. |
| Payroll | 11725260. | 116558683. |
| Sales | 26499579. | 258296663. |
| Total apportionment percentage | | 0.120161 |

**Depreciation Information**    (☒ check box if depreciation adjustment has been waived)
Total current year sections 168K bonus depreciation and 179 expense adjustment  ........................................
Prior years add-back (indicate add-back deduction time frame next to amount, i.e., 2/3, 5/6, 6/6)

__5612. 5/6__  _____ / _____  _____ / _____  _____ / _____  _____ /
__2017__

**Investor's / Beneficiary's Share of Ohio Taxable Income and Tax Credits**

1. a. Ohio taxable income _____ −293604.
   b. Ohio apportioned guaranteed payments/compensation _____
   c. Ohio apportioned depreciation adjustment _____
   **Total** Ohio taxable income  .................................................................................................  1. _____ −293604.
2. Nonrefundable business credits (include certificate(s))  ...........................................................  2. _____
3. Ohio tax paid on behalf of this investor / beneficiary (net of overpayments) (credit for Ohio taxes **paid by this entity**)  ...........................................................................................................................  3. _____
4. Total indirect pass-through entity credit, W2 withholding or 1099 withholding ( **attach W2/1099 when applicable**)  4. _____
   FEIN(s) of pass-through entity (payors) _____
5. Job creation credit and job retention credit (include certificate) - percent of credit claimed _____%  ........  5. _____

6. Ohio historic preservation credit (include certificate) - percent of credit claimed _____%  .........................  6. _____
7. Losses on loans made to Ohio venture capital program  .....................................................................  7. _____

8. Motion picture / Broadway production credit (include certificate) - percent of credit claimed _____%  ........  8. _____
9. Financial Institutions Tax (FIT) credit  .....................................................................................................  9. _____
   FEIN of the entity that paid the FIT _____

**Supplemental Information**
PRIOR YEAR ADDBACK AMOUNTS ARE UNAPPORTIONED ENTITY TOTALS
_____
_____

971221 11-05-19

10340904 146892 629917

15

Ohio IT K-1 - pg. 1 of 1

2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

**CONFIDENTIAL**

ALECTO_00027345
**JA2551**

Case 23-10787-JKS   Doc 307-5   Filed 02/29/24   Page 15 of 70

Do not staple or paper clip.

**Ohio** | **Department of Taxation** | **2019**
Rev. 10/19

**Ohio IT K-1**
Use only black ink and UPPERCASE letters.



☐ Check here if this is an amended K-1.

For calendar year __2019__ or taxable year beginning _____ and ending _____

Investor's / beneficiary's SSN / FEIN _____    Entity FEIN __46-0829723__   Entity type __LLC__

Investor's / beneficiary's name, address and ZIP code or Foreign address and Foreign postal code
HAYES IRREVOCABLE TRUST

DALLAS, TX   75225
Foreign State Code         Country Code

Pass-through entity's name, address and ZIP code or Foreign address and Foreign postal code
ALECTO HEALTHCARE SERVICES LLC
16310 BAKE PARKWAY SUITE 200
IRVINE, CA   92618
Foreign State Code         Country Code

| Investor's percentage of | Beginning of year | | End of year | |
|---|---|---|---|---|
| Profit-sharing | 5.0000000 | % | 5.0000000 | % |
| Loss-sharing | 5.0000000 | % | 5.0000000 | % |
| Ownership of capital | 5.0000000 | % | 5.0000000 | % |

☐ IT 1140 qualified investor
☒ IT 4708 composite investor
☐ Nonapplicable

**Entity Apportionment Percentage**

| | Ohio | Everywhere |
|---|---|---|
| Property | 73839372. | 383725503. |
| Payroll | 11725260. | 116558683. |
| Sales | 26499579. | 258296663. |
| Total apportionment percentage | | 0.120161 |

**Depreciation Information**   (☐ check box if depreciation adjustment has been waived)
Total current year sections 168K bonus depreciation and 179 expense adjustment ..............................
Prior years add-back (indicate add-back deduction time frame next to amount, i.e., 2/3, 5/6, 6/6)

5612. 5/6 _____ / _____ / _____ / _____ /
2017

**Investor's / Beneficiary's Share of Ohio Taxable Income and Tax Credits**

1. a. Ohio taxable income _____ -293625.
   b. Ohio apportioned guaranteed payments/compensation _____
   c. Ohio apportioned depreciation adjustment _____ -7.
   **Total** Ohio taxable income ......................................................................................... 1. _____ -293632.
2. Nonrefundable business credits (include certificate(s)) .................................................... 2. _____
3. Ohio tax paid on behalf of this investor / beneficiary (net of overpayments) (credit for Ohio taxes **paid by this entity**) .................................................................................................. 3. _____
4. Total indirect pass-through entity credit, W2 withholding or 1099 withholding ( **attach W2/1099 when applicable**) 4. _____
   FEIN(s) of pass-through entity (payors) _____
5. Job creation credit and job retention credit (include certificate) - percent of credit claimed _____% ...... 5. _____

6. Ohio historic preservation credit (include certificate) - percent of credit claimed _____% .............. 6. _____
7. Losses on loans made to Ohio venture capital program ........................................................... 7. _____

8. Motion picture / Broadway production credit (include certificate) - percent of credit claimed _____% ...... 8. _____
9. Financial Institutions Tax (FIT) credit ........................................................................ 9. _____
   FEIN of the entity that paid the FIT _____

**Supplemental Information**
PRIOR YEAR ADDBACK AMOUNTS ARE UNAPPORTIONED ENTITY TOTALS

971221 11-05-19

Ohio IT K-1 - pg. 1 of 1

16



2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

**CONFIDENTIAL**

ALECTO_00027346
**JA2552**

Do not staple or paper clip.

| Ohio | Department of Taxation Rev. 10/19 | 2019 Ohio IT K-1 Use only black ink and UPPERCASE letters. |  |
|---|---|---|---|

☐ Check here if this is an **amended** K-1.

For calendar year **2019** or taxable year beginning _____ and ending _____

Investor's / beneficiary's SSN / FEIN [_____]    Entity FEIN **46-0829723**    Entity type **LLC**

| Investor's / beneficiary's name, address and ZIP code or Foreign address and Foreign postal code | Pass-through entity's name, address and ZIP code or Foreign address and Foreign postal code |
|---|---|
| AMAN DHUPER | ALECTO HEALTHCARE SERVICES LLC |
| | 16310 BAKE PARKWAY SUITE 200 |
| RANCHO CUCAMONGA,  CA    91739 | IRVINE,  CA    92618 |
| Foreign State Code          Country Code | Foreign State Code          Country Code |

| Investor's percentage of | Beginning of year | End of year | |
|---|---|---|---|
| Profit-sharing | 5.0000000 % | 0.0000000 % | ☐ IT 1140 qualified investor |
| Loss-sharing | 5.0000000 % | 0.0000000 % | ☒ IT 4708 composite investor |
| Ownership of capital | 5.0000000 % | 0.0000000 % | ☐ Nonapplicable |

| **Entity Apportionment Percentage** | **Ohio** | **Everywhere** |
|---|---|---|
| Property | 73839372. | 383725503. |
| Payroll | 11725260. | 116558683. |
| Sales | 26499579. | 258296663. |
| Total apportionment percentage | | 0.120161 |

**Depreciation Information**  (☒ check box if depreciation adjustment has been waived)

Total current year sections 168K bonus depreciation and 179 expense adjustment ................................................

Prior years add-back (indicate add-back deduction time frame next to amount, i.e., 2/3, 5/6, 6/6)

5612. 5/6 _____ / _____ / _____ / _____ /
2017

**Investor's / Beneficiary's Share of Ohio Taxable Income and Tax Credits**

1. a. Ohio taxable income _____ −293605.
   b. Ohio apportioned guaranteed payments/compensation _____
   c. Ohio apportioned depreciation adjustment _____
   **Total** Ohio taxable income ........................................................................................................ 1. _____ −293605.

2. Nonrefundable business credits (include certificate(s)) ......................................................................... 2. _____

3. Ohio tax paid on behalf of this investor / beneficiary (net of overpayments) (credit for Ohio taxes **paid by this entity**) ................................................................................................................................................. 3. _____

4. Total indirect pass-through entity credit, W2 withholding or 1099 withholding ( **attach W2/1099 when applicable**) 4. _____
   FEIN(s) of pass-through entity (payors) _____

5. Job creation credit and job retention credit (include certificate) · percent of credit claimed _____% .......... 5. _____

6. Ohio historic preservation credit (include certificate) · percent of credit claimed _____%......................... 6. _____

7. Losses on loans made to Ohio venture capital program ....................................................................... 7. _____

8. Motion picture / Broadway production credit (include certificate) · percent of credit claimed _____% ........ 8. _____

9. Financial Institutions Tax (FIT) credit ................................................................................................. 9. _____
   FEIN of the entity that paid the FIT _____

**Supplemental Information**
PRIOR YEAR ADDBACK AMOUNTS ARE UNAPPORTIONED ENTITY TOTALS

_____

_____

971221 11-05-19

**Ohio IT K-1 - pg. 1 of 1**

CONFIDENTIAL

ALECTO_00027347
**JA2553**



Form **1065**

EXTENSION GRANTED TO 09/15/20
**U.S. Return of Partnership Income**

OMB No. 1545-0123

**2019**

Department of the Treasury
Internal Revenue Service

For calendar year 2019, or tax year beginning _____ , ending _____ ,
▶ Go to *www.irs.gov/Form1065* for instructions and the latest information.

| **A** Principal business activity | Name of partnership | | | **D** Employer identification number |
|---|---|---|---|---|
| HOLDING COMPANY | ALECTO HEALTHCARE SERVICES LLC | | | 46-0829723 |
| **B** Principal product or service | Type or Print | Number, street, and room or suite no. If a P.O. box, see instructions. | | **E** Date business started |
| | | 16310 BAKE PARKWAY SUITE 200 | | 08/13/2012 |
| HOLDING COMPANY | | City or town, state or province, country, and ZIP or foreign postal code | | **F** Total assets |
| **C** Business code number | | | | |
| 622000 | IRVINE | | CA 92618 | $26,796,334. |

**G** Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change (5) ☐ Amended return
**H** Check accounting method: (1) ☐ Cash (2) ☒ Accrual (3) ☐ Other (specify) ▶ _____
**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ 8
**J** Check if Schedules C and M-3 are attached ................................................ ▶ ☐
**K** Check if partnership: **(1)** ☐ Aggregated activities for section 465 at-risk purposes **(2)** ☐ Grouped activities for section 469 passive activity purposes

**Caution:** Include **only** trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

| | | | | |
|---|---|---|---|---|
| | **1a** Gross receipts or sales | 1a | 4,284,619. | |
| | **b** Returns and allowances | 1b | | |
| | **c** Balance. Subtract line 1b from line 1a | | 1c | 4,284,619. |
| | **2** Cost of goods sold (attach Form 1125-A) | | 2 | |
| Income | **3** Gross profit. Subtract line 2 from line 1c | | 3 | 4,284,619. |
| | **4** Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) STMT 1 | | 4 | -48,824,332. |
| | **5** Net farm profit (loss) (attach Schedule F (Form 1040 or 1040-SR)) | | 5 | |
| | **6** Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | 6 | |
| | **7** Other income (loss) (attach statement) SEE STATEMENT 2 | | 7 | 20,980. |
| | **8** **Total income (loss).** Combine lines 3 through 7 | | 8 | -44,518,733. |

| | | | | |
|---|---|---|---|---|
| Deductions (see instructions for limitations) | **9** Salaries and wages (other than to partners) (less employment credits) | | 9 | 3,338,982. |
| | **10** Guaranteed payments to partners | | 10 | |
| | **11** Repairs and maintenance | | 11 | 3,240. |
| | **12** Bad debts | | 12 | |
| | **13** Rent | | 13 | 68,414. |
| | **14** Taxes and licenses SEE STATEMENT 3 | | 14 | 157,810. |
| | **15** Interest (see instructions) | | 15 | 88. |
| | **16a** Depreciation (if required, attach Form 4562) 16a 1,178. | | | |
| | **b** Less depreciation reported on Form 1125-A and elsewhere on return 16b | | 16c | 1,178. |
| | **17** Depletion **(Do not deduct oil and gas depletion.)** | | 17 | |
| | **18** Retirement plans, etc. | | 18 | |
| | **19** Employee benefit programs | | 19 | 259,280. |
| | **20** Other deductions (attach statement) SEE STATEMENT 4 | | 20 | 752,374. |
| | **21** **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | | 21 | 4,581,366. |
| | **22** **Ordinary business income (loss).** Subtract line 21 from line 8 | | 22 | -49,100,099. |

| | | | | |
|---|---|---|---|---|
| Tax and Payments | **23** Interest due under the look-back method-completed long-term contracts (attach Form 8697) | | 23 | |
| | **24** Interest due under the look-back method-income forecast method (attach Form 8866) | | 24 | |
| | **25** BBA AAR imputed underpayment (see instructions) | | 25 | |
| | **26** Other taxes (see instructions) | | 26 | |
| | **27** **Total balance due.** Add lines 23 through 26 | | 27 | |
| | **28** Payment (see instructions) | | 28 | |
| | **29** **Amount owed.** If line 28 is smaller than line 27, enter amount owed | | 29 | |
| | **30** **Overpayment.** If line 28 is larger than line 27, enter overpayment | | 30 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true,correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ _____
Signature of partner or limited liability company member

Date _____

May the IRS discuss this return with the preparer shown below?
☒ Yes ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| DUSTIN MARCINIAK | DUSTIN MARCINIAK | 09/04/20 | | P00309414 |

Firm's name ▶ MOSS ADAMS LLP Firm's EIN ▶ 91-0189318
Firm's address ▶ 2040 MAIN STREET SUITE 900
IRVINE, CA 92614 Phone no. 949-221-4000

LHA **For Paperwork Reduction Act Notice, see separate instructions.** 911001 12-30-19 Form **1065** (2019)

Form 1065 (2019) ALECTO HEALTHCARE SERVICES LLC   46-0829723  Page **2**

## Schedule B | Other Information

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box: | | | | | |

a ☐ Domestic general partnership  b ☐ Domestic limited partnership
c ☒ Domestic limited liability company  d ☐ Domestic limited liability partnership
e ☐ Foreign partnership  f ☐ Other ▶

| | | | Yes | No |
|---|---|---|---|---|
| 2 | At the end of the tax year: | | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | | X |
| b | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X | |
| 3 | At the end of the tax year, did the partnership: | | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below | | X | |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| OLYMPIA PLAZA MANAGEMENT INC | 45-2658339 | UNITED STATES | 100.00 |
| FRMC PHYSICIANS INC | 47-1693245 | UNITED STATES | 80.00 |
| SHERMAN MD PROVIDER INC | 47-2194631 | UNITED STATES | 80.00 |
| SHERMAN ANESTHESIA, INC. | 81-4037665 | UNITED STATES | 80.00 |
| ALECTO EAST OHIO PHYSICIANS, INC. | 82-0677410 | UNITED STATES | 80.00 |

b Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below ..............  X

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| SEE STATEMENT 5 | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| 4 | Does the partnership satisfy **all four** of the following conditions? | | |
| a | The partnership's total receipts for the tax year were less than $250,000. | | |
| b | The partnership's total assets at the end of the tax year were less than $ 1 million. | | |
| c | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| d | The partnership is not filing and is not required to file Schedule M-3 | | X |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; item F on page 1 of Form 1065; or item L on Schedule K-1. | | |
| 5 | Is this partnership a publicly traded partnership, as defined in section 469(k)(2)? | | X |
| 6 | During the tax year, did the partnership have any debt that was canceled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| 7 | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| 8 | At any time during calendar year 2019, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). If "Yes," enter the name of the foreign country ▶ | | X |
| 9 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions | | X |
| 10 a | Is the partnership making, or had it previously made (and not revoked), a section 754 election? | | X |
| | See instructions for details regarding a section 754 election. | | |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |

911011 12-30-19  Form **1065** (2019)

CONFIDENTIAL

ALECTO_00027349
**JA2555**

Form 1065 (2019)  ALECTO HEALTHCARE SERVICES LLC                                46-0829723   Page **3**

| Schedule B | Other Information (continued) | | |
|---|---|---|---|
| | | **Yes** | **No** |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a | | |
| | substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section | | |
| | 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| 11 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a | | |
| | like-kind exchange or contributed such property to another entity (other than disregarded entities wholly | | |
| | owned by the partnership throughout the tax year) ............................................................................. ▶ ☐ | | |
| 12 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other | | |
| | undivided interest in partnership property? | | X |
| 13 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign | | |
| | Disregarded Entities (FDEs) and Foreign Branches (FBs), enter the number of Forms 8858 attached. See | | |
| | instructions ................................................................................. ▶ | | |
| 14 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's | | |
| | Information Statement of Section 1446 Withholding Tax, filed for this partnership ............... ▶ | | X |
| 15 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached | | |
| | to this return ................................................................................. ▶ | | |
| 16 a | Did you make any payments in 2019 that would require you to file Form(s) 1099? See instructions ..................... | X | |
| b | If "Yes," did you or will you file required Form(s) 1099? ................................................... | X | |
| 17 | Enter the number of Forms 5471, Information Return of U.S. Persons With Respect To Certain Foreign | | |
| | Corporations, attached to this return ................................................................ ▶ | | |
| 18 | Enter the number of partners that are foreign governments under section 892 .................. ▶ | | |
| 19 | During the partnership's tax year, did the partnership make any payments that would require it to file Form 1042 | | |
| | and 1042-S under chapter 3 (sections 1441 through 1464) or chapter 4 (sections 1471 through 1474)? ................... | | X |
| 20 | Was the partnership a specified domestic entity required to file Form 8938 for the tax year? See the Instructions | | |
| | for Form 8938 ............................................................................... | | X |
| 21 | Is the partnership a section 721(c) partnership, as defined in Regulations section 1.721(c)-1T(b)(14)? ..................... | | X |
| 22 | During the tax year, did the partnership pay or accrue any interest or royalty for which the deduction is not allowed under | | |
| | section 267A? See instructions ........................................................................ | | X |
| | If "Yes," enter the total amount of the disallowed deductions ........................ ▶ $ | | |
| 23 | Did the partnership have an election under section 163(j) for any real property trade or business or any farming | | |
| | business in effect during the tax year? See instructions ................................................ | | X |
| 24 | Does the partnership satisfy one or more of the following? See instructions ...................................... | | X |
| a | The partnership owns a pass-through entity with current, or prior year carryover, excess business interest | | |
| | expense. | | |
| b | The partnership's aggregate average annual gross receipts (determined under section 448(c)) for the 3 tax years | | |
| | preceding the current tax year are more than $26 million and the partnership has business interest. | | |
| c | The partnership is a tax shelter (see instructions) and the partnership has business interest expense. | | |
| | If "Yes" to any, complete and attach Form 8990. | | |
| 25 | Is the partnership electing out of the centralized partnership audit regime under section 6221(b)? See instructions ............. | | X |
| | If "Yes," the partnership must complete Schedule B-2 (Form 1065). Enter the total from Schedule B-2, Part III, | | |
| | line 3 ........................................................................................ ▶ | | |
| | If "No," complete Designation of Partnership Representative below. | | |

**Designation of Partnership Representative** (see instructions)

Enter below the information for the partnership representative (PR) for the tax year covered by this return.

Name of PR ▶ **MIKE SARRAO**

| U.S. address of PR ▶ | **16310 BAKE PARKWAY SUITE 200** **IRVINE, CA 92618** | U.S. phone number of PR | **949-783-3976** |
|---|---|---|---|

If the PR is an entity, name of the designated individual for the PR ▶

| U.S. address of designated individual ▶ | | U.S. phone number of designated individual ▶ | |
|---|---|---|---|

| 26 | Is the partnership attaching Form 8996 to certify as a Qualified Opportunity Fund? ......................... | | X |
|---|---|---|---|
| | If "Yes," enter the amount from Form 8996, line 14 ............................ ▶ $ | | |
| 27 | Enter the number of foreign partners subject to section 864(c)(8) as a result of transferring all or a portion of an | | |
| | interest in the partnership or of receiving a distribution from the partnership ................ ▶ | | |
| 28 | At any time during the tax year, were there any transfers between the partnership and its partners subject to the | | |
| | disclosure requirements of Regulations section 1.707-8? ................................................... | | X |

Form **1065** (2019)

911021 12-30-19

CONFIDENTIAL

ALECTO_00027350
**JA2556**

Form 1065 (2019)    ALECTO HEALTHCARE SERVICES LLC                    46-0829723    Page **4**

| Schedule K | Partners' Distributive Share Items | | | Total amount |
|---|---|---|---|---|
| Income (Loss) | **1** Ordinary business income (loss) (page 1, line 22) | | **1** | -49,100,099. |
| | **2** Net rental real estate income (loss) (attach Form 8825) | | **2** | |
| | **3a** Other gross rental income (loss) | 3a | | |
| | **b** Expenses from other rental activities (attach statement) | 3b | | |
| | **c** Other net rental income (loss). Subtract line 3b from line 3a | | **3c** | |
| | **4** Guaranteed payments: **a** Services 4a    **b** Capital 4b | | | |
| | **c** Total. Add lines 4a and 4b | | **4c** | |
| | **5** Interest income                    SEE STATEMENT 6 | | **5** | 232,271. |
| | **6** Dividends and dividend equivalents:  **a** Ordinary dividends | | **6a** | |
| | **b** Qualified dividends 6b    **c** Dividend equivalents 6c | | | |
| | **7** Royalties | | **7** | |
| | **8** Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | | **8** | |
| | **9a** Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | | **9a** | |
| | **b** Collectibles (28%) gain (loss) | 9b | | |
| | **c** Unrecaptured section 1250 gain (attach statement) | 9c | | |
| | **10** Net section 1231 gain (loss) (attach Form 4797) | | **10** | -1,918. |
| | **11** Other income (loss) (see instructions) Type ▶ | | **11** | |
| Deductions | **12** Section 179 deduction (attach Form 4562) | | **12** | |
| | **13a** Contributions                 SEE STATEMENT 7 | | **13a** | 24,690. |
| | **b** Investment interest expense | | **13b** | |
| | **c** Section 59(e)(2) expenditures:  **(1)** Type ▶ _____  **(2)** Amount ▶ | | **13c(2)** | |
| | **d** Other deductions (see instructions) Type ▶    SEE STATEMENT 8 | | **13d** | 187,193. |
| Self-Employ-ment | **14a** Net earnings (loss) from self-employment | | **14a** | -44,190,084. |
| | **b** Gross farming or fishing income | | **14b** | |
| | **c** Gross nonfarm income | | **14c** | |
| Credits | **15a** Low-income housing credit (section 42(j)(5)) | | **15a** | |
| | **b** Low-income housing credit (other) | | **15b** | |
| | **c** Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | | **15c** | |
| | **d** Other rental real estate credits (see instructions) Type ▶ | | **15d** | |
| | **e** Other rental credits (see instructions)    Type ▶ | | **15e** | |
| | **f** Other credits (see instructions)    Type ▶ | | **15f** | |
| Foreign Transactions | **16a** Name of country or U.S. possession ▶ | | | |
| | **b** Gross income from all sources | | **16b** | |
| | **c** Gross income sourced at partner level | | **16c** | |
| | Foreign gross income sourced at partnership level | | | |
| | **d** Reserved for future use ▶    **e** Foreign branch category ▶ | | **16e** | |
| | **f** Passive category ▶    **g** General category ▶    **h** Other ▶ | | **16h** | |
| | Deductions allocated and apportioned at partner level | | | |
| | **i** Interest expense ▶    **j** Other ▶ | | **16j** | |
| | Deductions allocated and apportioned at partnership level to foreign source income | | | |
| | **k** Reserved for future use ▶    **l** Foreign branch category ▶ | | **16l** | |
| | **m** Passive category ▶    **n** General category ▶    **o** Other ▶ | | **16o** | |
| | **p** Total foreign taxes (check one): ▶  Paid ☐  Accrued ☐ | | **16p** | |
| | **q** Reduction in taxes available for credit (attach statement) | | **16q** | |
| | **r** Other foreign tax information (attach statement) | | | |
| Alternative Minimum Tax (AMT) Items | **17a** Post-1986 depreciation adjustment | | **17a** | -47,855. |
| | **b** Adjusted gain or loss                SEE STATEMENT 9 | | **17b** | -1,030. |
| | **c** Depletion (other than oil and gas) | | **17c** | |
| | **d** Oil, gas, and geothermal properties - gross income | | **17d** | |
| | **e** Oil, gas, and geothermal properties - deductions | | **17e** | |
| | **f** Other AMT items (attach statement) | | **17f** | |
| Other Information | **18a** Tax-exempt interest income | | **18a** | |
| | **b** Other tax-exempt income | | **18b** | |
| | **c** Nondeductible expenses              SEE STATEMENT 10 | | **18c** | 158,989. |
| | **19a** Distributions of cash and marketable securities | | **19a** | 0. |
| | **b** Distributions of other property | | **19b** | |
| | **20a** Investment income | | **20a** | 232,271. |
| | **b** Investment expenses | | **20b** | |
| | **c** Other items and amounts (attach statement)    STMT 11 | | | |

Form **1065** (2019)

911041 12-30-19

10340904 146892 629917              2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027351
**JA2557**

Case 23-10787-JKS    Doc 307-5    Filed 02/29/24    Page 21 of 70

Form 1065 (2019)  ALECTO HEALTHCARE SERVICES LLC                    46-0829723  Page **5**

## Analysis of Net Income (Loss)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16p | | | | | | | **1** | $-49,081,629.$ |

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt Organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | | $-44173412.$ | $-2,454,021.$ | | | $-2,454,196.$ |

---

## Schedule L | Balance Sheets per Books

| Assets | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|
| | (a) | (b) | (c) | (d) |
| 1 Cash | | 107,203. | | 356,458. |
| 2a Trade notes and accounts receivable | 1,364,490. | | 1,296,349. | |
| b Less allowance for bad debts | 1,000,000. | 364,490. | 1,000,000. | 296,349. |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach statement) | STATEMENT 13 | 548,440. | | 652,960. |
| 7a Loans to partners (or persons related to partners) | | | | |
| b Mortgage and real estate loans | | | | |
| 8 Other investments (attach statement) | STATEMENT 14 | 15,670,881. | | 25,489,819. |
| 9a Buildings and other depreciable assets | 13,467. | | 13,467. | |
| b Less accumulated depreciation | 8,230. | 5,237. | 12,719. | 748. |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | | | |
| 12a Intangible assets (amortizable only) | 12,433. | | | |
| b Less accumulated amortization | | 12,433. | | |
| 13 Other assets (attach statement) | | | | |
| 14 Total assets | | 16,708,684. | | 26,796,334. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | 1,679,150. | | 2,139,683. |
| 16 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 Other current liabilities (attach statement) | STATEMENT 15 | 894,891. | | 1,235,770. |
| 18 All nonrecourse loans | | | | |
| 19a Loans from partners (or persons related to partners) | | | | |
| b Mortgages, notes, bonds payable in 1 year or more | | 4,039,464. | | 4,749,523. |
| 20 Other liabilities (attach statement) | | | | |
| 21 Partners' capital accounts | | 10,095,179. | | 18,671,358. |
| 22 Total liabilities and capital | | 16,708,684. | | 26,796,334. |

## Schedule M-1 | Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note: The partnership may be required to file Schedule M-3. See instructions.

| | | | | |
|---|---|---|---|---|
| 1 Net income (loss) per books | | 6 Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | a Tax-exempt interest $ | | |
| 3 Guaranteed payments (other than health insurance) | | 7 Deductions included on Schedule K, lines 1 through 13d, and 16p, not charged against book income this year (itemize): | | |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16p (itemize): | | a Depreciation $ | | |
| a Depreciation $ | | 8 Add lines 6 and 7 | | |
| b Travel and entertainment $ | | 9 Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | | |
| 5 Add lines 1 through 4 | | | | |

## Schedule M-2 | Analysis of Partners' Capital Accounts                    STMT 12

| | | | | |
|---|---|---|---|---|
| 1 Balance at beginning of year | 10,095,179. | 6 Distributions: a Cash | | 2,238,651. |
| 2 Capital contributed: a Cash | 11,183,129. | b Property | | |
| STMT 17 b Property | | 7 Other decreases (itemize): | | |
| 3 Net income (loss) per books | -368,299. | | | |
| 4 Other increases (itemize): | | 8 Add lines 6 and 7 | | 2,238,651. |
| 5 Add lines 1 through 4 | 20,910,009. | 9 Balance at end of year. Subtract line 8 from line 5 | | 18,671,358. |

911042 12-30-19

10340904 146892 629917

Form **1065** (2019)

2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027352

**JA2558**

| SCHEDULE B-1<br>(Form 1065)<br>(Rev. August 2019)<br>Department of the Treasury<br>Internal Revenue Service | **Information on Partners Owning 50% or More of the Partnership**<br>▶ Attach to Form 1065.<br>▶ Go to www.irs.gov/Form1065 for the latest information. | OMB No. 1545-0123 |
|---|---|---|

| Name of partnership | Employer identification number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

**Part I**  **Entities Owning 50% or More of the Partnership**  (Form 1065, Schedule B, Question 2a (Question 3a for 2009 through 2017))

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, tax-exempt organization, or any foreign government that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Part II**  **Individuals or Estates Owning 50% or More of the Partnership**  (Form 1065, Schedule B, Question 2b (Question 3b for 2009 through 2017))

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| LAXMAN REDDY | | UNITED STATES | 56.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

LHA  **For Paperwork Reduction Act Notice, see the Instructions for Form 1065.**        Schedule B-1 (Form 1065) (Rev. 8-2019)

924551 11-13-19

CONFIDENTIAL                                           **ALECTO_00027353**
                                                         **JA2559**

| **SCHEDULE M-3**<br>(Form 1065)<br><br>Department of the Treasury<br>Internal Revenue Service | **Net Income (Loss) Reconciliation<br>for Certain Partnerships**<br>▶ Attach to Form 1065.<br>▶ Go to www.irs.gov/Form1065 for instructions and the latest information. | OMB No. 1545-0123<br><br>**2019** |
|---|---|---|

| Name of partnership | Employer identification number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

This Schedule M-3 is being filed because (check all that apply):

A  [X]  The amount of the partnership's total assets at the end of the tax year is equal to $10 million or more.

B  [X]  The amount of the partnership's adjusted total assets for the tax year is equal to $10 million or more. If box B is checked,
enter the amount of adjusted total assets for the tax year   247,808,992. .

C  [ ]  The amount of total receipts for the tax year is equal to $35 million or more. If box C is checked, enter the total
receipts for the tax year _____ .

D  [ ]  An entity that is a reportable entity partner with respect to the partnership owns or is deemed to own an interest of 50%
or more in the partnership's capital, profit, or loss on any day during the tax year of the partnership.

| Name of Reportable Entity Partner | Identifying Number | Maximum Percentage Owned or<br>Deemed Owned |
|---|---|---|
| | | |
| | | |

E  [ ]  Voluntary Filer.

**Part I**      **Financial Information and Net Income (Loss) Reconciliation**

1a  Did the partnership file SEC Form 10-K for its income statement period ending with or within this tax year?

    [ ]  **Yes.** Skip lines 1b and 1c and complete lines 2 through 11 with respect to that SEC Form 10-K.

    [X]  **No.** Go to line 1b. See instructions if multiple non-tax-basis income statements are prepared.

  b  Did the partnership prepare a certified audited non-tax-basis income statement for that period?

    [ ]  **Yes.** Skip line 1c and complete lines 2 through 11 with respect to that income statement.

    [X]  **No.** Go to line 1c.

  c  Did the partnership prepare a non-tax-basis income statement for that period?

    [X]  **Yes.** Complete lines 2 through 11 with respect to that income statement.

    [ ]  **No.** Skip lines 2 through 3b and enter the partnership's net income (loss) per its books and records on line 4a.

2   Enter the income statement period:    Beginning 01/01/2019      Ending 12/31/2019

3a  Has the partnership's income statement been restated for the income statement period on line 2?

    [ ]  **Yes.** (If "Yes," attach a statement and the amount of each item restated.)

    [X]  **No.**

  b  Has the partnership's income statement been restated for any of the five income statement periods immediately preceding the period on line 2?

    [ ]  **Yes.** (If "Yes," attach a statement and the amount of each item restated.)

    [X]  **No.**

| | | |
|---|---|---|
| 4a  Worldwide consolidated net income (loss) from income statement source identified in Part I, line 1 | 4a | -368,299. |
| b  Indicate accounting standard used for line 4a (see instructions). | | |
|   1 [X] GAAP    2 [ ] IFRS    3 [ ] Section 704(b) | | |
|   4 [ ] Tax-basis    5 [ ] Other (Specify) ▶ | | |
| 5a  Net income from nonincludible foreign entities (attach statement) | 5a | ( ) |
| b  Net loss from nonincludible foreign entities (attach statement and enter as a positive amount) | 5b | |
| 6a  Net income from nonincludible U.S. entities (attach statement) | 6a | ( ) |
| b  Net loss from nonincludible U.S. entities (attach statement and enter as a positive amount) | 6b | |
| 7a  Net income (loss) of other foreign disregarded entities (attach statement) | 7a | |
| b  Net income (loss) of other U.S. disregarded entities (attach statement) | 7b | |
| 8  Adjustment to eliminations of transactions between includible entities and nonincludible entities (attach stmt.) | 8 | |
| 9  Adjustment to reconcile income statement period to tax year (attach statement) | 9 | |
| 10  Other adjustments to reconcile to amount on line 11 (attach statement) | 10 | |
| 11  **Net income (loss) per income statement of the partnership.** Combine lines 4a through 10 | 11 | -368,299. |

**Note:** Part I, line 11, must equal Part II, line 26, column (a), or Schedule M-1, line 1. See instructions.

12  Enter the total amount (not just the partnership's share) of the assets and liabilities of all entities included or removed on the following lines.

| | Total Assets | Total Liabilities |
|---|---|---|
| a  Included on Part I, line 4 | 26,796,334. | 8,124,976. |
| b  Removed on Part I, line 5 | | |
| c  Removed on Part I, line 6 | | |
| d  Included on Part I, line 7 | | |

For Paperwork Reduction Act Notice, see the instructions for your return.                                      Schedule M-3 (Form 1065) 2019

910991 01-13-20   LHA

10340904 146892 629917                          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

Schedule M-3 (Form 1065) 2019

Page **2**

| Name of partnership | Employer identification number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

**Part II** Reconciliation of Net Income (Loss) per Income Statement of Partnership with Income (Loss) per Return

| | Income (Loss) Items | (a) Income (Loss) per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Income (Loss) per Tax Return |
|---|---|---|---|---|---|
| | Attach statements for lines 1 through 10. | | | | |
| 1 | Income (loss) from equity method foreign corporations | | | | |
| 2 | Gross foreign dividends not previously taxed | | | | |
| 3 | Subpart F, QEF, and similar income inclusions | | | | |
| 4 | Gross foreign distributions previously taxed | | | | |
| 5 | Income (loss) from equity method U.S. corporations | | | | |
| 6 | U.S. dividends | | | | |
| 7 | Income (loss) from U.S. partnerships   STMT 18 | | -48,732,356. | 127,749. | -48,604,607. |
| 8 | Income (loss) from foreign partnerships | | | | |
| 9 | Income (loss) from other pass-through entities | | | | |
| 10 | Items relating to reportable transactions | | | | |
| 11 | Interest income (see instructions) | 88. | | | 88. |
| 12 | Total accrual to cash adjustment | | | | |
| 13 | Hedging transactions | | | | |
| 14 | Mark-to-market income (loss) | | | | |
| 15 | Cost of goods sold (see instructions) | ( ) | | | ( ) |
| 16 | Sale versus lease (for sellers and/or lessors) | | | | |
| 17 | Section 481(a) adjustments | | | | |
| 18 | Unearned/deferred revenue | | | | |
| 19 | Income recognition from long-term contracts | | | | |
| 20 | Original issue discount and other imputed interest | | | | |
| 21a | Income statement gain/loss on sale, exchange, abandonment, worthlessness, or other disposition of assets other than inventory and pass-through entities | | | | |
| b | Gross capital gains from Schedule D, excluding amounts from pass-through entities | | | | |
| c | Gross capital losses from Schedule D, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses | | | | |
| d | Net gain/loss reported on Form 4797, line 17, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses | | | | |
| e | Abandonment losses | | | | |
| f | Worthless stock losses (attach statement) | | | | |
| g | Other gain/loss on disposition of assets other than inventory | | | | |
| 22 | Other income (loss) items with differences (attach statement) | | | | |
| 23 | Total income (loss) items. Combine lines 1 through 22 | 88. | -48,732,356. | 127,749. | -48,604,519. |
| 24 | Total expense/deduction items. (From Part III, line 31) (see instructions) | -3,447,775. | -139,963. | 31,240. | -3,556,498. |
| 25 | Other items with no differences   STMT 19 | 3,079,388. | | | 3,079,388. |
| 26 | Reconciliation totals. Combine lines 23 through 25 | -368,299. | -48,872,319. | 158,989. | -49,081,629. |

**Note:** Line 26, column (a), must equal Part I, line 11, and column (d) must equal Form 1065, Analysis of Net Income (Loss), line 1.

Schedule M-3 (Form 1065) 2019

910992
01-13-20

CONFIDENTIAL

ALECTO_00027355
**JA2561**

Schedule M-3 (Form 1065) 2019 — Page **3**

| Name of partnership | Employer identification number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

**Part III**  Reconciliation of Net Income (Loss) per Income Statement of Partnership With Income (Loss) per Return - Expense/Deduction Items

| | Expense/Deduction Items | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
|---|---|---|---|---|---|
| 1 | State and local current income tax expense | 3,200. | 1,600. | | 4,800. |
| 2 | State and local deferred income tax expense | | | | |
| 3 | Foreign current income tax expense (other than foreign withholding taxes) | | | | |
| 4 | Foreign deferred income tax expense | | | | |
| 5 | Equity-based compensation | | | | |
| 6 | Meals and entertainment ......... STMT 21 | 10,806. | | -5,403. | 5,403. |
| 7 | Fines and penalties | | | | |
| 8 | Judgments, damages, awards, and similar costs | | | | |
| 9 | Guaranteed payments | | | | |
| 10 | Pension and profit-sharing | | | | |
| 11 | Other post-retirement benefits | | | | |
| 12 | Deferred compensation | | | | |
| 13 | Charitable contribution of cash and tangible property ........ STMT 22 | 14,150. | | | 14,150. |
| 14 | Charitable contribution of intangible property | | | | |
| 15 | Organizational expenses as per Regulations section 1.709-2(a) | | | | |
| 16 | Syndication expenses as per Regulations section 1.709-2(b) | | | | |
| 17 | Current year acquisition/reorganization investment banking fees | | | | |
| 18 | Current year acquisition/reorganization legal and accounting fees | | | | |
| 19 | Amortization/impairment of goodwill | | | | |
| 20 | Amortization of acquisition, reorganization, and start-up costs | | | | |
| 21 | Other amortization or impairment write-offs ........ STMT 23 | 12,433. | -7,729. | | 4,704. |
| 22 | Reserved | | | | |
| 23a | Depletion - Oil & Gas | | | | |
| b | Depletion - Other than Oil & Gas | | | | |
| 24 | Intangible drilling & development costs | | | | |
| 25 | Depreciation | 4,489. | -3,311. | | 1,178. |
| 26 | Bad debt expense | | | | |
| 27 | Interest expense (see instructions) | 187,281. | -187,193. | | 88. |
| 28 | Purchase versus lease (for purchasers and/or lessees) | | | | |
| 29 | Research and development costs | | | | |
| 30 | Other expense/deduction items with differences (attach statement) ........ STMT 24 | 3,215,416. | 336,596. | -25,837. | 3,526,175. |
| 31 | Total expense/deduction items. Combine lines 1 through 30. Enter here and on Part II, line 24, reporting positive amounts as negative and negative amounts as positive | 3,447,775. | 139,963. | -31,240. | 3,556,498. |

Schedule M-3 (Form 1065) 2019

910993
01-13-20

CONFIDENTIAL

ALECTO_00027356
**JA2562**

| Form **4562** | | **Depreciation and Amortization**<br>(Including Information on Listed Property)   **OTHER**   1 | | | | OMB No. 1545-0172<br>**2019** |
|---|---|---|---|---|---|---|
| Department of the Treasury<br>Internal Revenue Service   (99) | | ▶ Attach to your return.<br>▶ Go to www.irs.gov/Form4562 for instructions and the latest information. | | | | Attachment<br>Sequence No. **179** |

Name(s) shown on return: ALECTO HEALTHCARE SERVICES LLC

Business or activity to which this form relates

Identifying number: 46-0829723

**Part I** Election To Expense Certain Property Under Section 179 Note: If you have any listed property, complete Part V before you complete Part I.

| | | |
|---|---|---|
| 1 Maximum amount (see instructions) | 1 | |
| 2 Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 Threshold cost of section 179 property before reduction in limitation | 3 | |
| 4 Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

| | | |
|---|---|---|
| 7 Listed property. Enter the amount from line 29 ............ 7 | | |
| 8 Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 Tentative deduction. Enter the **smaller** of line 5 or line 8 | 9 | |
| 10 Carryover of disallowed deduction from line 13 of your 2018 Form 4562 | 10 | |
| 11 Business income limitation. Enter the smaller of business income (not less than zero) or line 5 | 11 | |
| 12 Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11 | 12 | |
| 13 Carryover of disallowed deduction to 2020. Add lines 9 and 10, less line 12 ▶ 13 | | |

Note: Don't use Part II or Part III below for listed property. Instead, use Part V.

**Part II** Special Depreciation Allowance and Other Depreciation (Don't include listed property.)

| | | |
|---|---|---|
| 14 Special depreciation allowance for qualified property (other than listed property) placed in service during<br>the tax year | 14 | |
| 15 Property subject to section 168(f)(1) election | 15 | |
| 16 Other depreciation (including ACRS) | 16 | |

**Part III** MACRS Depreciation (Don't include listed property. See instructions.)

**Section A**

| | | |
|---|---|---|
| 17 MACRS deductions for assets placed in service in tax years beginning before 2019 | 17 | 1,178. |
| 18 If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ▶ ☐ | | |

**Section B - Assets Placed in Service During 2019 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only - see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs. | | S/L | |
| h Residential rental property | / | | 27.5 yrs. | MM | S/L | |
| | / | | 27.5 yrs. | MM | S/L | |
| i Nonresidential real property | / | | 39 yrs. | MM | S/L | |
| | / | | | MM | S/L | |

**Section C - Assets Placed in Service During 2019 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs. | | S/L | |
| c 30-year | / | | 30 yrs. | MM | S/L | |
| d 40-year | / | | 40 yrs. | MM | S/L | |

**Part IV** Summary (See instructions.)

| | | |
|---|---|---|
| 21 Listed property. Enter amount from line 28 | 21 | |
| 22 **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21.<br>Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instr. | 22 | 1,178. |
| 23 For assets shown above and placed in service during the current year, enter the<br>portion of the basis attributable to section 263A costs | 23 | |

916251 12-12-19   LHA   **For Paperwork Reduction Act Notice, see separate instructions.**

10340904 146892 629917

2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

Form **4562** (2019)

**CONFIDENTIAL**

**ALECTO_00027357**
**JA2563**

Form 4562 (2019)          ALECTO HEALTHCARE SERVICES LLC                    46-0829723  Page **2**

**Part V**  Listed Property (Include automobiles, certain other vehicles, certain aircraft, and property used for entertainment, recreation, or amusement.)

Note: For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete **only** 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A - Depreciation and Other Information (Caution:** See the instructions for limits for passenger automobiles.)

24a  Do you have evidence to support the business/investment use claimed?  ☐ **Yes**  ☐ **No**  24b If "Yes," is the evidence written?  ☐ **Yes**  ☐ **No**

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use | | | | | | 25 | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | : : | % | | | | | | |
| | : : | % | | | | | | |
| | : : | % | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | : : | % | | | | S/L - | | |
| | : : | % | | | | S/L - | | |
| | : : | % | | | | S/L - | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 | | | | | | 28 | | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 | | | | | | | 29 | |

**Section B - Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle | | (b) Vehicle | | (c) Vehicle | | (d) Vehicle | | (e) Vehicle | | (f) Vehicle | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (**don't** include commuting miles) | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 | | | | | | | | | | | | |
| 34 Was the vehicle available for personal use during off-duty hours? | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? | | | | | | | | | | | | |

**Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **aren't** more than 5% owners or related persons.

| | | Yes | No |
|---|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? | | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners | | | |
| 39 Do you treat all use of vehicles by employees as personal use? | | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? | | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? | | | |

Note: If your answer to 37, 38, 39, 40, or 41 is "Yes," don't complete Section B for the covered vehicles.

**Part VI**  Amortization

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2019 tax year: | | | | | |
| | : : | | | | |
| | : : | | | | |
| 43 Amortization of costs that began before your 2019 tax year | | | | 43 | 4,704. |
| 44 **Total.** Add amounts in column (f). See the instructions for where to report | | | | 44 | 4,704. |

916252 12-12-19                                                                    Form **4562** (2019)

CONFIDENTIAL

ALECTO_00027358
**JA2564**

| Form **4797**<br>Department of the Treasury<br>Internal Revenue Service | **Sales of Business Property**<br>(Also Involuntary Conversions and Recapture Amounts Under Sections 179 and 280F(b)(2))<br>▶ Attach to your tax return.<br>▶ Go to www.irs.gov/Form4797 for instructions and the latest information. | | | OMB No. 1545-0184<br>**2019**<br>Attachment<br>Sequence No. **27** |

Name(s) shown on return | Identifying number
--- | ---
ALECTO HEALTHCARE SERVICES LLC | 46-0829723

**1** Enter the gross proceeds from sales or exchanges reported to you for 2019 on Form(s) 1099-B or 1099-S (or substitute statement) that you are including on line 2, 10, or 20. See instructions ........................................... | | 1 |

| **Part I** | **Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft - Most Property Held More Than 1 Year** (see instructions) |

| **(a)** Description of property | **(b)** Date acquired (mo., day, yr.) | **(c)** Date sold (mo., day, yr.) | **(d)** Gross sales price | **(e)** Depreciation allowed or allowable since acquisition | **(f)** Cost or other basis, plus improvements and expense of sale | **(g)** Gain or (loss)<br>Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|
| 2 PASSTHROUGH FROM ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | | | | | |
| | | | | | | -1,918. |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---|
| **3** Gain, if any, from Form 4684, line 39 ........................................................................................ | 3 | |
| **4** Section 1231 gain from installment sales from Form 6252, line 26 or 37 ........................................ | 4 | |
| **5** Section 1231 gain or (loss) from like-kind exchanges from Form 8824 ............................................ | 5 | |
| **6** Gain, if any, from line 32, from other than casualty or theft ........................................................ | 6 | |
| **7** Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows .............. | 7 | -1,918. |

**Partnerships and S corporations.** Report the gain or (loss) following the instructions for Form 1065, Schedule K, line 10, or Form 1120-S, Schedule K, line 9. Skip lines 8, 9, 11, and 12 below.

**Individuals, partners, S corporation shareholders, and all others.** If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 is a gain and you didn't have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain from line 7 as a long-term capital gain on the Schedule D filed with your return and skip lines 8, 9, 11, and 12 below.

| | | |
|---|---|---|
| **8** Nonrecaptured net section 1231 losses from prior years. See instructions ........................................ | 8 | |
| **9** Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on the Schedule D filed with your return. See instructions ............................................ | 9 | |

| **Part II** | **Ordinary Gains and Losses** (see instructions) |

**10** Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less):

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---|
| **11** Loss, if any, from line 7 ............................................................................................................ | 11 | ( ) |
| **12** Gain, if any, from line 7 or amount from line 8, if applicable ............................................................ | 12 | |
| **13** Gain, if any, from line 31 ........................................................................................................ | 13 | |
| **14** Net gain or (loss) from Form 4684, lines 31 and 38a ...................................................................... | 14 | |
| **15** Ordinary gain from installment sales from Form 6252, line 25 or 36 .................................................. | 15 | |
| **16** Ordinary gain or (loss) from like-kind exchanges from Form 8824 .................................................... | 16 | |
| **17** Combine lines 10 through 16 ...................................................................................................... | 17 | |

**18** For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines a and b below. For individual returns, complete lines a and b below.

| | | |
|---|---|---|
| **a** If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the loss from income-producing property on Schedule A (Form 1040 or Form 1040-SR), line 16. (Do not include any loss on property used as an employee.) Identify as from "Form 4797, line 18a." See instructions ...................................... | 18a | |
| **b** Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Schedule 1 (Form 1040 or Form 1040-SR), Part I, line 4 .......................................................................... | 18b | |

LHA **For Paperwork Reduction Act Notice, see separate instructions.** | Form **4797** (2019)

918001
12-04-19

ALECTO HEALTHCase 23510787SJKSLC Doc 307-5   Filed 02/29/24   Page 29 of 70        46-0829723

Form 4797 (2019)                                                                                                    Page 2

| Part III | Gain From Disposition of Property Under Sections 1245, 1250, 1252, 1254, and 1255  (see instructions) |

| 19 (a) Description of section 1245, 1250, 1252, 1254, or 1255 property: | | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) |
|---|---|---|---|
| A | | | |
| B | | | |
| C | | | |
| D | | | |

| | These columns relate to the properties on lines 19A through 19D. | ▶ | Property A | Property B | Property C | Property D |
|---|---|---|---|---|---|---|
| 20 | Gross sales price (Note: See line 1 before completing.) | 20 | | | | |
| 21 | Cost or other basis plus expense of sale | 21 | | | | |
| 22 | Depreciation (or depletion) allowed or allowable | 22 | | | | |
| 23 | Adjusted basis. Subtract line 22 from line 21 | 23 | | | | |
| 24 | Total gain. Subtract line 23 from line 20 | 24 | | | | |
| 25 | **If section 1245 property:** | | | | | |
| | a Depreciation allowed or allowable from line 22 | 25a | | | | |
| | b Enter the **smaller** of line 24 or 25a | 25b | | | | |
| 26 | **If section 1250 property:** If straight line depreciation was used, enter -0- on line 26g, except for a corporation subject to section 291. | | | | | |
| | a Additional depreciation after 1975 | 26a | | | | |
| | b Applicable percentage multiplied by the **smaller** of line 24 or line 26a | 26b | | | | |
| | c Subtract line 26a from line 24. If residential rental property **or** line 24 isn't more than line 26a, skip lines 26d and 26e | 26c | | | | |
| | d Additional depreciation after 1969 and before 1976 | 26d | | | | |
| | e Enter the **smaller** of line 26c or 26d | 26e | | | | |
| | f Section 291 amount (corporations only) | 26f | | | | |
| | g Add lines 26b, 26e, and 26f | 26g | | | | |
| 27 | **If section 1252 property:** Skip this section if you didn't dispose of farmland or if this form is being completed for a partnership. | | | | | |
| | a Soil, water, and land clearing expenses | 27a | | | | |
| | b Line 27a multiplied by applicable percentage | 27b | | | | |
| | c Enter the **smaller** of line 24 or 27b | 27c | | | | |
| 28 | **If section 1254 property:** | | | | | |
| | a Intangible drilling and development costs, expenditures for development of mines and other natural deposits, mining exploration costs, and depletion | 28a | | | | |
| | b Enter the **smaller** of line 24 or 28a | 28b | | | | |
| 29 | **If section 1255 property:** | | | | | |
| | a Applicable percentage of payments excluded from income under section 126 | 29a | | | | |
| | b Enter the **smaller** of line 24 or 29a | 29b | | | | |

**Summary of Part III Gains.** Complete property columns A through D through line 29b before going to line 30.

| | | | |
|---|---|---|---|
| 30 | Total gains for all properties. Add property columns A through D, line 24 | 30 | |
| 31 | Add property columns A through D, lines 25b, 26g, 27c, 28b, and 29b. Enter here and on line 13 | 31 | |
| 32 | Subtract line 31 from line 30. Enter the portion from casualty or theft on Form 4684, line 33. Enter the portion from other than casualty or theft on Form 4797, line 6 | 32 | |

| Part IV | Recapture Amounts Under Sections 179 and 280F(b)(2)  When Business Use Drops to 50% or Less |

(see instructions)

| | | | (a) Section 179 | (b) Section 280F(b)(2) |
|---|---|---|---|---|
| 33 | Section 179 expense deduction or depreciation allowable in prior years | 33 | | |
| 34 | Recomputed depreciation. See instructions | 34 | | |
| 35 | Recapture amount. Subtract line 34 from line 33. See the instructions for where to report | 35 | | |

918002
12-04-19

Form **4797** (2019)

| Form **4797** | | | **Sales of Business Property** | | | | OMB No. 1545-0184 |
|---|---|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | | | (Also Involuntary Conversions and Recapture Amounts Under Sections 179 and 280F(b)(2)) ▶ Attach to your tax return. ▶ Go to www.irs.gov/Form4797 for instructions and the latest information. | | | | **2019** Attachment Sequence No. **27** |

| Name(s) shown on return | | | | | | Identifying number | |
|---|---|---|---|---|---|---|---|
| ALECTO HEALTHCARE SERVICES LLC | | | | | | 46-0829723 | |

**1** Enter the gross proceeds from sales or exchanges reported to you for 2019 on Form(s) 1099-B or 1099-S (or substitute statement) that you are including on line 2, 10, or 20. See instructions ...... | | | | | | | **1** | |

**Part I**　Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft - Most Property Held More Than 1 Year (see instructions)

| **(a)** Description of property | **(b)** Date acquired (mo., day, yr.) | **(c)** Date sold (mo., day, yr.) | **(d)** Gross sales price | **(e)** Depreciation allowed or allowable since acquisition | **(f)** Cost or other basis, plus improvements and expense of sale | **(g)** Gain or (loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|
| 2 PASSTHROUGH FROM ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | | | | | |
| | | | | | | -1,918. |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---|
| **3** Gain, if any, from Form 4684, line 39 ..................................................................................... | **3** | |
| **4** Section 1231 gain from installment sales from Form 6252, line 26 or 37 ..................................... | **4** | |
| **5** Section 1231 gain or (loss) from like-kind exchanges from Form 8824 ........................................ | **5** | |
| **6** Gain, if any, from line 32, from other than casualty or theft ...................................................... | **6** | |
| **7** Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows ........ | **7** | -1,918. |

**Partnerships and S corporations**. Report the gain or (loss) following the instructions for Form 1065, Schedule K, line 10, or Form 1120-S, Schedule K, line 9. Skip lines 8, 9, 11, and 12 below.

**Individuals, partners, S corporation shareholders, and all others**. If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 is a gain and you didn't have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain from line 7 as a long-term capital gain on the Schedule D filed with your return and skip lines 8, 9, 11, and 12 below.

| | | |
|---|---|---|
| **8** Nonrecaptured net section 1231 losses from prior years. See instructions ..................................... | **8** | |
| **9** Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on the Schedule D filed with your return. See instructions ....................................... | **9** | |

**Part II**　Ordinary Gains and Losses (see instructions)

**10** Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less):

| PASSTHROUGH FROM ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | -1,030. |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---|
| **11** Loss, if any, from line 7 ........................................................................................................ | **11** ( | ) |
| **12** Gain, if any, from line 7 or amount from line 8, if applicable ..................................................... | **12** | |
| **13** Gain, if any, from line 31 ...................................................................................................... | **13** | |
| **14** Net gain or (loss) from Form 4684, lines 31 and 38a .............................................................. | **14** | |
| **15** Ordinary gain from installment sales from Form 6252, line 25 or 36 .......................................... | **15** | |
| **16** Ordinary gain or (loss) from like-kind exchanges from Form 8824 .............................................. | **16** | |
| **17** Combine lines 10 through 16 .................................................................................................. | **17** | -1,030. |

**18** For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines a and b below. For individual returns, complete lines a and b below.

| | | |
|---|---|---|
| **a** If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the loss from income-producing property on Schedule A (Form 1040 or Form 1040-SR), line 16. (Do not include any loss on property used as an employee.) Identify as from "Form 4797, line 18a." See instructions .......................... | **18a** | |
| **b** Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Schedule 1 (Form 1040 or Form 1040-SR), Part I, line 4 ..................................................................... | **18b** | |

LHA　**For Paperwork Reduction Act Notice, see separate instructions.** Form **4797** (2019)

918001 12-04-19

ALECTO HEALTHCase 23-10787-JKSLC Doc 307-5   Filed 02/29/24   Page 31 of 70    46-0829723
Form 4797 (2019)                         ALTERNATIVE MINIMUM TAX                                    Page 2

| Part III | Gain From Disposition of Property Under Sections 1245, 1250, 1252, 1254, and 1255 (see instructions) | | | | |
|---|---|---|---|---|---|

| | **19 (a)** Description of section 1245, 1250, 1252, 1254, or 1255 property: | | | | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) |
|---|---|---|---|---|---|---|
| A | | | | | | |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |

| | These columns relate to the properties on lines 19A through 19D. ▶ | | Property A | Property B | Property C | Property D |
|---|---|---|---|---|---|---|
| 20 | Gross sales price (**Note:** See line 1 before completing.) | 20 | | | | |
| 21 | Cost or other basis plus expense of sale | 21 | | | | |
| 22 | Depreciation (or depletion) allowed or allowable | 22 | | | | |
| 23 | Adjusted basis. Subtract line 22 from line 21 | 23 | | | | |
| 24 | Total gain. Subtract line 23 from line 20 | 24 | | | | |
| 25 | **If section 1245 property:** | | | | | |
| | **a** Depreciation allowed or allowable from line 22 | 25a | | | | |
| | **b** Enter the **smaller** of line 24 or 25a | 25b | | | | |
| 26 | **If section 1250 property:** If straight line depreciation was used, enter -0- on line 26g, except for a corporation subject to section 291. | | | | | |
| | **a** Additional depreciation after 1975 | 26a | | | | |
| | **b** Applicable percentage multiplied by the **smaller** of line 24 or line 26a | 26b | | | | |
| | **c** Subtract line 26a from line 24. If residential rental property **or** line 24 isn't more than line 26a, skip lines 26d and 26e | 26c | | | | |
| | **d** Additional depreciation after 1969 and before 1976 | 26d | | | | |
| | **e** Enter the **smaller** of line 26c or 26d | 26e | | | | |
| | **f** Section 291 amount (corporations only) | 26f | | | | |
| | **g** Add lines 26b, 26e, and 26f | 26g | | | | |
| 27 | **If section 1252 property:** Skip this section if you didn't dispose of farmland or if this form is being completed for a partnership. | | | | | |
| | **a** Soil, water, and land clearing expenses | 27a | | | | |
| | **b** Line 27a multiplied by applicable percentage | 27b | | | | |
| | **c** Enter the **smaller** of line 24 or 27b | 27c | | | | |
| 28 | **If section 1254 property:** | | | | | |
| | **a** Intangible drilling and development costs, expenditures for development of mines and other natural deposits, mining exploration costs, and depletion | 28a | | | | |
| | **b** Enter the **smaller** of line 24 or 28a | 28b | | | | |
| 29 | **If section 1255 property:** | | | | | |
| | **a** Applicable percentage of payments excluded from income under section 126 | 29a | | | | |
| | **b** Enter the **smaller** of line 24 or 29a | 29b | | | | |

**Summary of Part III Gains.** Complete property columns A through D through line 29b before going to line 30.

| | | | |
|---|---|---|---|
| 30 | Total gains for all properties. Add property columns A through D, line 24 | 30 | |
| 31 | Add property columns A through D, lines 25b, 26g, 27c, 28b, and 29b. Enter here and on line 13 | 31 | |
| 32 | Subtract line 31 from line 30. Enter the portion from casualty or theft on Form 4684, line 33. Enter the portion from other than casualty or theft on Form 4797, line 6 | 32 | |

| Part IV | Recapture Amounts Under Sections 179 and 280F(b)(2) When Business Use Drops to 50% or Less |
|---|---|

(see instructions)

| | | | (a) Section 179 | (b) Section 280F(b)(2) |
|---|---|---|---|---|
| 33 | Section 179 expense deduction or depreciation allowable in prior years | 33 | | |
| 34 | Recomputed depreciation. See instructions | 34 | | |
| 35 | Recapture amount. Subtract line 34 from line 33. See the instructions for where to report | 35 | | |

918002
12-04-19                                                                          Form 4797 (2019)

| Form **8308**<br>(Rev. September 2018)<br>Department of the Treasury<br>Internal Revenue Service | **Report of a Sale or Exchange of<br>Certain Partnership Interests**<br>▶ Go to www.irs.gov/Form8308 for the latest information. | | OMB No. 1545-0123 |
|---|---|---|---|
| Name of partnership | | Phone number | Employer identification number |
| ALECTO HEALTHCARE SERVICES LLC | | 323-932-5963 | 46-0829723 |

Number, street, and room or suite no. If a P.O. box, see instructions.

16310 BAKE PARKWAY SUITE 200

City or town, state or province, country, and ZIP or foreign postal code

IRVINE, CA   92618

| **Part I** | **Transferor Information** (Beneficial owner of the partnership interest immediately before the transfer of that interest) |
|---|---|

| Name | Identifying number |
|---|---|
| PANCH JEYAKUMAR | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

TUSTIN, CA   92782

**Notice to Transferors:** *The information on this form has been supplied to the Internal Revenue Service. The transferor in a section 751(a) exchange is required to treat a portion of the gain realized from the exchange as ordinary income. For more details, see Pub. 541, Partnerships.*

**Statement by Transferor:** *The transferor in a section 751(a) exchange is required under Regulations section 1.751-1(a)(3) to attach a statement relating to the sale or exchange to his or her return.*

| **Part II** | **Transferee Information** (Beneficial owner of the partnership interest immediately after the transfer of that interest) |
|---|---|

| Name | Identifying number |
|---|---|
| LAXMAN REDDY | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

CALABASAS, CA   91302

| **Part III** | **Date of Sale or Exchange of Partnership Interest** ▶ | 12/31/19 |
|---|---|---|

| **Sign here only if you<br>are filing this form by<br>itself and not with<br>Form 1065** | Under penalties of perjury, I declare that I have examined this return, including accompanying attachments, and to the best of my knowledge and belief, it is true, correct, and complete.<br><br>▶ _____<br>Signature of partnership representative or partner or limited liability company member | ▶ _____<br>Date |
|---|---|---|

LHA
919971
04-01-19

Form **8308** (Rev. 9-2018)

CONFIDENTIAL

ALECTO_00027363
JA2569

| Form **8308**<br>(Rev. September 2018)<br>Department of the Treasury<br>Internal Revenue Service | **Report of a Sale or Exchange of**<br>**Certain Partnership Interests**<br>▶ Go to www.irs.gov/Form8308 for the latest information. | | OMB No. 1545-0123 |
|---|---|---|---|
| Name of partnership | | Phone number | Employer identification number |
| ALECTO HEALTHCARE SERVICES LLC | | 323-932-5963 | 46-0829723 |

Number, street, and room or suite no. If a P.O. box, see instructions.

16310 BAKE PARKWAY SUITE 200

City or town, state or province, country, and ZIP or foreign postal code

IRVINE, CA  92618

---

**Part I**    **Transferor Information** (Beneficial owner of the partnership interest immediately before the transfer of that interest)

| Name | Identifying number |
|---|---|
| AMAN DHUPER | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

RANCHO CUCAMONGA, CA  91739

**Notice to Transferors:** *The information on this form has been supplied to the Internal Revenue Service. The transferor in a section 751(a) exchange is required to treat a portion of the gain realized from the exchange as ordinary income. For more details, see Pub. 541, Partnerships.*

**Statement by Transferor:** *The transferor in a section 751(a) exchange is required under Regulations section 1.751-1(a)(3) to attach a statement relating to the sale or exchange to his or her return.*

---

**Part II**    **Transferee Information** (Beneficial owner of the partnership interest immediately after the transfer of that interest)

| Name | Identifying number |
|---|---|
| LAXMAN REDDY | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

CALABASAS, CA  91302

---

**Part III**    Date of Sale or Exchange of Partnership Interest ▶    12/31/19

| Sign here only if you<br>are filing this form by<br>itself and not with<br>Form 1065 | Under penalties of perjury, I declare that I have examined this return, including accompanying attachments, and to the best of my knowledge and belief, it is true, correct, and complete.<br><br>Signature of partnership representative or partner or limited liability company member | Date |
|---|---|---|

CONFIDENTIAL
ALECTO_00027364
JA2570

Form **8916-A**
(Rev. November 2019)
Department of the Treasury
Internal Revenue Service

**Supplemental Attachment to Schedule M-3**

► Attach to Schedule M-3 for Form 1065, 1120, 1120-L, 1120-PC, or 1120-S.
► Go to www.irs.gov/Form1120 for the latest information.

OMB No. 1545-0123

Name of common parent
ALECTO HEALTHCARE SERVICES LLC

Employer identification number
46-0829723

Name of subsidiary

Employer identification number

**Part I   Cost of Goods Sold**

| Cost of Goods Sold Items | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
|---|---|---|---|---|
| 1 Amounts attributable to cost flow assumptions | | | | |
| 2 Amounts attributable to: | | | | |
| a Stock option expense | | | | |
| b Other equity-based compensation | | | | |
| c Meals and entertainment | | | | |
| d Parachute payments | | | | |
| e Compensation with section 162(m) limitation | | | | |
| f Pension and profit sharing | | | | |
| g Other post-retirement benefits | | | | |
| h Deferred compensation | | | | |
| i Reserved | | | | |
| j Amortization | | | | |
| k Depletion | | | | |
| l Depreciation | | | | |
| m Corporate-owned life insurance premiums | | | | |
| n Other section 263A costs | | | | |
| 3 Inventory shrinkage accruals | | | | |
| 4 Excess inventory and obsolescence reserves | | | | |
| 5 Lower of cost or market write-downs | | | | |
| 6 Other items with differences (attach statement) | | | | |
| 7 Other items with no differences | | | | |
| 8 **Total cost of goods sold**. Add lines 1 through 7 in columns a, b, c, and d. Enter totals on the applicable Schedule M-3. See instructions | | | | |

LHA   **For Paperwork Reduction Act Notice, see instructions.**

Form **8916-A** (Rev. 11-2019)

913315
12-11-19

10340904 146892 629917                    2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

Form 8916-A (Rev. 11-2019) ALECTO HEALTHCARE SERVICES LLC                46-0829723  Page **2**

## Part II   Interest Income

| | Interest Income Item | (a) Income (Loss) per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Income (Loss) per Tax Return |
|---|---|---|---|---|---|
| 1 | Tax-exempt interest income | | | | |
| 2 | Interest income from hybrid securities | | | | |
| 3 | Sale/lease interest income | | | | |
| 4a | Intercompany interest income - From outside tax affiliated group | | | | |
| 4b | Intercompany interest income - From tax affiliated group | | | | |
| 5 | Other interest income                    STMT 26 | 88. | | | 88. |
| 6 | Total interest income. Add lines 1 through 5 in columns a, b, c, and d. Enter total on the applicable Schedule M-3. See instructions. | 88. | | | 88. |

## Part III   Interest Expense

| | Interest Expense Item | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
|---|---|---|---|---|---|
| 1 | Interest expense from hybrid securities | | | | |
| 2 | Lease/purchase interest expense | | | | |
| 3a | Intercompany interest expense - Paid to outside tax affiliated group | | | | |
| 3b | Intercompany interest expense - Paid to tax affiliated group | | | | |
| 4 | Other interest expense                   STMT 27 | 187,281. | -187,193. | | 88. |
| 5 | Total interest expense. Add lines 1 through 4 in columns a, b, c, and d. Enter total on the applicable Schedule M-3. See instructions. | 187,281. | -187,193. | | 88. |

Form **8916-A**  (Rev. 11-2019)

913316
12-11-19

10340904 146892 629917            2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027366
**JA2572**

| Form **8925** | **Report of Employer-Owned Life Insurance Contracts** | | OMB No. 1545-2089 |
|---|---|---|---|
| (Rev. September 2017)<br>Department of the Treasury<br>Internal Revenue Service (99) | ► Attach to the policyholder's tax return. See instructions.<br>► Go to www.irs.gov/Form8925 for the latest information. | | Attachment<br>Sequence No. **160** |

| Name(s) shown on return | Identifying number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

| Name of policyholder, if different from above<br>2 | Identifying number, if different from above |
|---|---|

Type of business

| | | | |
|---|---|---|---|
| 1 | Enter the number of employees the policyholder had at the end of the tax year .......................... | 1 | 11. |
| 2 | Enter the number of employees included on line 1 who were insured at the end of the tax year under the policyholder's employer-owned life insurance contract(s) issued after August 17, 2006. See *Section 1035 exchanges* for an exception ............................................................................ | 2 | 2. |
| 3 | Enter the total amount of employer-owned life insurance in force at the end of the tax year for employees who were insured under the contract(s) specified on line 2 ........................................................ | 3 | 5,500,000. |
| 4a | Does the policyholder have a valid consent for each employee included on line 2? See instructions ................................................................. [X] Yes ☐ No | | |
| b | If "No," enter the number of employees included on line 2 for whom the policyholder does not have a valid consent ............................................................................ | 4b | |

920591 04-01-19   LHA   **For Paperwork Reduction Act Notice, see instructions.**                                   Form **8925** (Rev. 9-2017)

10340904 146892 629917                 2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

| Form **8990** | **Limitation on Business Interest Expense Under Section 163(j)** | | OMB No. 1545-0123 |
|---|---|---|---|
| (Rev. May 2020) | ▶ Attach to your tax return. | | |
| Department of the Treasury Internal Revenue Service | ▶ Go to www.irs.gov/Form8990 for instructions and the latest information. | | |

| Taxpayer name(s) shown on tax return | Identification number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

If Form 8990 relates to an information return for a foreign entity (for example, Form 5471), enter:

Name of foreign entity ▶ _____

Employer identification number, if any ▶ _____

Reference ID number ▶ _____

## Part I — Computation of Allowable Business Interest Expense

*Part I is completed by all taxpayers subject to section 163(j). Schedule A and Schedule B need to be completed before Part I when the taxpayer is a partner or shareholder of a pass-through entity subject to section 163(j).*

### Section I - Business Interest Expense

| | | | | | |
|---|---|---|---|---|---|
| 1 | Current year business interest expense (not including floor plan financing interest expense), before the section 163(j) limitation | 1 | 187,281. | | |
| 2 | Disallowed business interest expense carryforwards from prior years. (Does not apply to a partnership) | 2 | | | |
| 3 | Partner's excess business interest expense treated as paid or accrued in current year (Schedule A, line 44, column (h)) | 3 | | | |
| 4 | Floor plan financing interest expense. See instructions | 4 | | | |
| 5 | **Total business interest expense.** Add lines 1 through 4 ▶ | | | 5 | 187,281. |

### Section II - Adjusted Taxable Income

**Taxable Income**

| | | | | |
|---|---|---|---|---|
| 6 | **Taxable income.** See instructions | | 6 | -49,081,629. |

**Additions** (adjustments to be made if amounts are taken into account on line 6)

| | | | | | |
|---|---|---|---|---|---|
| 7 | Any item of loss or deduction that is not properly allocable to a trade or business of the taxpayer. See instructions | 7 | | | |
| 8 | Any business interest expense not from a pass-through entity. See instructions | 8 | 187,281. | | |
| 9 | Amount of any net operating loss deduction under section 172 | 9 | | | |
| 10 | Amount of any qualified business income deduction allowed under section 199A | 10 | | | |
| 11 | Deduction allowable for depreciation, amortization, or depletion attributable to a trade or business. See instructions | 11 | 5,882. | | |
| 12 | Amount of any loss or deduction items from a pass-through entity. See instructions | 12 | 48,836,790. | | |
| 13 | Other additions. See instructions | 13 | | | |
| 14 | Total current year partner's excess taxable income (Schedule A, line 44, column (f)) | 14 | | | |
| 15 | Total current year S corporation shareholder's excess taxable income (Schedule B, line 46, column (c)) | 15 | | | |
| 16 | **Total.** Add lines 7 through 15 ▶ | | | 16 | 49,029,953. |

**Reductions** (adjustments to be made if amounts are taken into account on line 6)

| | | | | | |
|---|---|---|---|---|---|
| 17 | Any item of income or gain that is not properly allocable to a trade or business of the taxpayer. See instructions | 17 | ( | | |
| 18 | Any business interest income not from a pass-through entity. See instructions | 18 | ( 88. | | |
| 19 | Amount of any income or gain items from a pass-through entity. See instructions | 19 | ( 232,183. | | |
| 20 | Other reductions. See instructions | 20 | ( | | |
| 21 | **Total.** Combine lines 17 through 20 ▶ | | | 21 | ( 232,271.) |
| 22 | **Adjusted taxable income.** Combine lines 6, 16, and 21. (If zero or less, enter -0-.) ▶ | | | 22 | |

LHA **For Paperwork Reduction Act Notice, see the instructions.**

Form **8990** (Rev. 5-2020)

923211 06-29-20

CONFIDENTIAL

ALECTO_00027368
JA2574

Form 8990 (Rev. 5-2020)                                                                                              Page **2**

## Section III - Business Interest Income

| | | | | | |
|---|---|---|---|---|---|
| 23 | Current year business interest income. See instructions | 23 | 88. | | |
| 24 | Excess business interest income from pass-through entities (total of Schedule A, line 44, column (g), and Schedule B, line 46, column (d)) | 24 | | | |
| 25 | **Total.** Add lines 23 and 24 | | ▶ | 25 | 88. |

## Section IV - Section 163(j) Limitation Calculations

### Limitation on Business Interest Expense

| | | | | | |
|---|---|---|---|---|---|
| 26 | Multiply adjusted taxable income (line 22) by the applicable percentage. See instructions | 26 | | | |
| 27 | Business interest income (line 25) | 27 | 88. | | |
| 28 | Floor plan financing interest expense (line 4) | 28 | | | |
| 29 | **Total.** Add lines 26, 27, and 28 | | ▶ | 29 | 88. |

### Allowable Business Interest Expense

| | | | |
|---|---|---|---|
| 30 | **Total current year business interest expense deduction.** See instructions | 30 | 88. |

### Carryforward

| | | | |
|---|---|---|---|
| 31 | **Disallowed business interest expense.** Subtract line 29 from line 5. (If zero or less, enter -0-.) | 31 | 187,193. |

### Part II   Partnership Pass-Through Items

*Part II is only completed by a partnership that is subject to section 163(j). The partnership items below are allocated to the partners and are not carried forward by the partnership. See the instructions for more information.*

### Excess Business Interest Expense

| | | | |
|---|---|---|---|
| 32 | **Excess business interest expense.** Enter amount from line 31 | 32 | 187,193. |

### Excess Taxable Income (If you entered an amount on line 32, skip lines 33 through 37.)

| | | | |
|---|---|---|---|
| 33 | Subtract the sum of lines 4 and 25 from line 5. (If zero or less, enter -0-.) | 33 | |
| 34 | Subtract line 33 from line 26. (If zero or less, enter -0-.) | 34 | |
| 35 | Divide line 34 by line 26. Enter the result as a decimal. (If line 26 is zero, enter -0-.) | 35 | |
| 36 | **Excess taxable income.** Multiply line 35 by line 22 | 36 | |

### Excess Business Interest Income

| | | | |
|---|---|---|---|
| 37 | **Excess business interest income.** Subtract the sum of lines 1, 2, and 3 from line 25. (If zero or less, enter -0-.) | 37 | |

### Part III   S Corporation Pass-Through Items

*Part III is only completed by S corporations that are subject to section 163(j). The S corporation items below are allocated to the shareholders. See the instructions for more information.*

### Excess Taxable Income

| | | | |
|---|---|---|---|
| 38 | Subtract the sum of lines 4 and 25 from line 5. (If zero or less, enter -0-.) | 38 | |
| 39 | Subtract line 38 from line 26. (If zero or less, enter -0-.) | 39 | |
| 40 | Divide line 39 by line 26. Enter the result as a decimal. (If line 26 is zero, enter -0-.) | 40 | |
| 41 | **Excess taxable income.** Multiply line 40 by line 22 | 41 | |

### Excess Business Interest Income

| | | | |
|---|---|---|---|
| 42 | **Excess business interest income.** Subtract the sum of lines 1, 2, and 3 from line 25. (If zero or less, enter -0-.) | 42 | |

Form **8990** (Rev. 5-2020)

923212 06-29-20

10340904 146892 629917                          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027369
**JA2575**

Form 8990 (Rev. 5-2020)   Page 3

**SCHEDULE A** — Summary of Partner's Section 163(j) Excess Items

Any taxpayer that owns an interest in a partnership subject to section 163(j) should complete Schedule A before completing Part I.

| (a) Name of partnership | (b) EIN | Excess Business Interest Expense | | | (f) Current year excess taxable income | (g) Current year excess business interest income | (h) Excess business interest expense treated as paid or accrued (see instructions) | (i) Current year excess business interest expense carryforward (e) minus (h) |
|---|---|---|---|---|---|---|---|---|
| | | (c) Current year | (d) Prior year carryforward | (e) Total (c) plus (d) | | | | |
| **43** ALECTO HEALTHCARE SERVICES LOS ANGELES | 90-0999512 | 2,728,405. | 2,412,792. | 5,141,197. | 0. | 0. | 0. | 5,141,197. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 35-2507149 | 1,856,996. | | 0. | 1,856,996. | 0. | 0. | 1,856,996. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 37-1760423 | 1,607,374. | 1,324,556. | 2,931,930. | 0. | 0. | 0. | 2,931,930. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 36-4857044 | 1,597,701. | 1,120,897. | 2,718,598. | 0. | 0. | 0. | 2,718,598. |
| **44** Total | | | | | 0. | 0. | 0. | |

**SCHEDULE B** — Summary of S Corporation Shareholder's Excess Taxable Income and Excess Business Interest Income

Any taxpayer that is required to complete Part I and is a shareholder in an S corporation that has excess taxable income or excess business interest income should complete Schedule B before completing Part I.

| (a) Name of S corporation | (b) EIN | (c) Current year excess taxable income | (d) Current year excess business interest income |
|---|---|---|---|
| **45** | | | |
| | | | |
| | | | |
| | | | |
| **46** Total | | 0. | 0. |

Form 8990 (Rev. 5-2020)

923213 08-09-20

CONFIDENTIAL

ALECTO_00027370

Case 23-10787-JKS   Doc 307-5   Filed 02/29/24   Page 40 of 70

ALECTO HEALTHCARE SERVICES LLC

**Business Interest Expense**

46-0829723

| Description | Prior Disallowed Business Interest Expense | Business Interest Expense | Business Interest Expense Ratio | Limited Business Interest Expense | Disallowed Business Interest Expense |
|---|---|---|---|---|---|
| | | 187,283. | 1.000000 | 88. | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Total | | 187,283. | 1.000000 | 88. | 0. |

922301 08-28-19

CONFIDENTIAL

ALECTO_00027371

Section 1.263(a)-1(f) De Minimis Safe Harbor Election


Alecto Healthcare Services LLC
16310 Bake Parkway Suite 200
Irvine, CA  92618

Employer Identification Number:  46-0829723

For the Year Ending December 31, 2019

Alecto Healthcare Services LLC is making the de minimis safe harbor
election under Reg. Sec. 1.263(a)-1(f).

CONFIDENTIAL

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

==================================================================================

FORM 1065        INCOME (LOSS) FROM OTHER PARTNERSHIPS, ETC.        STATEMENT 1

NAME AND ADDRESS                                      EMPLOYER ID     AMOUNT
-------------------                                  -----------     ------

ALECTO HEALTHCARE SERVICES LOS ANGELES
5000 E SPRING ST STE 400
LONG BEACH, CA 90815                                 90-0999512    -2,122,748.
ALECTO HEALTHCARE SERVICES FAIRMONT LLC
1325 LOCUST AVENUE
FAIRMONT, WV 26554                                   35-2507149    -5,386,507.
ALECTO HEALTHCARE SERVICES SHERMAN LLC
500 N. HIGHLAND AVENUE
SHERMAN, TX 75092                                    37-1760423    -3,852,294.
ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC
16310 BAKE PARKWAY SUITE 200
IRVINE, CA 92618                                     36-4857044   -37,462,783.
                                                                 ------------
TOTAL TO FORM 1065, LINE 4                                        -48,824,332.
                                                                 ============


FORM 1065                     OTHER INCOME                          STATEMENT 2

DESCRIPTION                                                         AMOUNT
------------                                                        ------

OTHER INCOME                                                        20,980.
                                                                   --------
TOTAL TO FORM 1065, LINE 7                                          20,980.
                                                                   ========


FORM 1065                     TAX EXPENSE                           STATEMENT 3

DESCRIPTION                                                         AMOUNT
------------                                                        ------

CALIFORNIA TAXES - BASED ON INCOME                                  4,800.
PAYROLL TAXES                                                     145,810.
TAXES AND LICENSES                                                  7,200.
                                                                  --------
TOTAL TO FORM 1065, LINE 14                                       157,810.
                                                                  ========

CONFIDENTIAL                                               ALECTO_00027373
                                                                      **JA2579**

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

═══════════════════════════════════════════════════════════════════════════

| FORM 1065 | OTHER DEDUCTIONS | STATEMENT 4 |
|-----------|------------------|-------------|

═══════════════════════════════════════════════════════════════════════════

| DESCRIPTION | AMOUNT |
|-------------|--------|
| AMORTIZATION EXPENSE | 4,704. |
| AUTOMOBILE EXPENSE | 22,998. |
| BANK SERVICE CHARGES | 21,466. |
| COMPUTER AND INTERNET EXPENSES | 12,593. |
| DUES AND SUBSCRIPTIONS | 13,537. |
| INSURANCE | 102,537. |
| MEALS | 5,403. |
| PROFESSIONAL FEES | 227,313. |
| PURCHASED SERVICES | 202,802. |
| SUPPLIES AND OTHER | 11,651. |
| TRAVEL EXPENSES | 97,427. |
| UTILITIES | 29,943. |
| TOTAL TO FORM 1065, LINE 20 | 752,374. |

CONFIDENTIAL                                    **ALECTO_00027374**
                                                                **JA2580**

ALECTO HEALTHCARE SERVICES LLC                                            46-0829723

═══════════════════════════════════════════════════════════════════════════════════

                      THE ENTITY OWNS 20% OR MORE DIRECTLY OR     STATEMENT 5
                      50% OR MORE OVERALL OF PARTNERSHIPS OR TRUSTS

───────────────────────────────────────────────────────────────────────────────────

| NAME OF ENTITY | EIN NUMBER | |
|---|---|---|
| | COUNTRY OF ORGANIZATION | PCT OWNED |
| SPAULDING MANAGMENT LLC | 27-4025215 | |
| | UNITED STATES | 100.00 |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 90-0999512 | |
| | UNITED STATES | 100.00 |
| ACCELERON SERVICES LLC | 90-0987801 | |
| | UNITED STATES | 100.00 |
| ALECTO HEALTHCARE SERVICES HAYWARD LLC | 36-4743580 | |
| | UNITED STATES | 100.00 |
| ALECTO HEALTHCARE SERVICES INDIANA LLC | | |
| | UNITED STATES | 100.00 |
| UNITED MEDICAL MANAGEMENT LLC | 38-3933131 | |
| | UNITED STATES | 100.00 |
| OLYMPIA HEALTH CARE LLC | 42-1643090 | |
| | UNITED STATES | 64.00 |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 35-2507149 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 37-1760423 | |
| | UNITED STATES | 80.00 |
| SHERMAN/GRAYSON HOSPITAL LLC | 27-2025690 | |
| | UNITED STATES | 80.00 |
| SHERMAN/GRAYSON HEALTH SERVICES LLC | 27-2025835 | |
| | UNITED STATES | 80.00 |
| SHERMAN/GRAYSON SPONSOR LLC | 35-2518088 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES FAIRMONT HOSPI | 47-1310470 | |
| | UNITED STATES | 80.00 |
| HORIZON REAL ESTATE HOLDINGS LLC | 57-1226547 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY | 36-4857044 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES WHEELING, LLC | 37-1848845 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES MARTINS FERRY | 37-1848949 | |
| | UNITED STATES | 80.00 |

CONFIDENTIAL                                                          ALECTO_00027375
                                                                         JA2581

ALECTO HEALTHCARE SERVICES LLC                                         46-0829723

| SCHEDULE K | INTEREST INCOME | | STATEMENT 6 |
|---|---|---|---|

| DESCRIPTION | | U.S. BONDS | OTHER |
|---|---|---|---|
| INTEREST - ALECTO HEALTHCARE SERVICES LOS ANGELES | | | 169,969. |
| INTEREST - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | | 48. |
| INTEREST - ALECTO HEALTHCARE SERVICES SHERMAN LLC | | | 62,166. |
| INTEREST INCOME | | | 88. |
| TOTAL TO SCHEDULE K, LINE 5 | | | 232,271. |

| SCHEDULE K | CHARITABLE CONTRIBUTIONS | | STATEMENT 7 |
|---|---|---|---|

| DESCRIPTION | | TYPE | AMOUNT |
|---|---|---|---|
| CONTRIBUTIONS - ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | CASH (60%) | 5,740. |
| CONTRIBUTIONS - ALECTO HEALTHCARE SERVICES LOS ANGELES | | CASH (60%) | 4,800. |
| CHARITABLE CONTRIBUTIONS | | CASH (60%) | 14,150. |
| TOTALS TO SCHEDULE K, LINE 13A | | | 24,690. |

| SCHEDULE K | OTHER DEDUCTIONS | STATEMENT 8 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| EXCESS BUSINESS INTEREST EXPENSE | 187,193. |
| TOTAL INCLUDED IN SCHEDULE K, LINE 13D | 187,193. |

CONFIDENTIAL

ALECTO_00027376
**JA2582**

ALECTO HEALTHCARE SERVICES LLC                                       46-0829723

---

| SCHEDULE K | ADJUSTED GAIN OR LOSS | STATEMENT 9 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| AMT BASIS ADJUSTMENT FROM PASSTHROUGH | −1,030. |
| TOTAL TO SCHEDULE K, LINE 17B | −1,030. |

| | SUBJECT TO SPECIAL RATES | AMOUNT |
|---|---|---|
| ADJUSTED GAIN OR LOSS ALLOCABLE TO: | | |
| ORDINARY GAIN OR LOSS | | −1,030. |
| SHORT-TERM CAPITAL GAIN OR LOSS | | |
| LONG-TERM CAPITAL GAIN OR LOSS | | |
| SECTION 1231 GAIN OR LOSS | | |
| COLLECTIBLES - 28% RATE | | |
| UNRECAPTURED SECTION 1250 GAIN - 25% RATE | | |

---

| SCHEDULE K | NONDEDUCTIBLE EXPENSE | STATEMENT 10 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 5,403. |
| NONDEDUCTIBLE EXPENSE FROM PASSTHROUGH | 127,749. |
| OFFICER'S LIFE INSURANCE | 25,837. |
| TOTAL TO SCHEDULE K, LINE 18C | 158,989. |

---

| SCHEDULE K | OTHER ITEMS | STATEMENT 11 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| SECTION 199A - ORDINARY INCOME (LOSS) | −49,258,702. |
| SECTION 199A W-2 WAGES | 113,913,392. |
| SECTION 199A UNADJUSTED BASIS OF ASSETS | 43,971,941. |
| BEGINNING TAX CAPITAL | −31,853,158. |
| ENDING TAX CAPITAL | −72,149,298. |

CONFIDENTIAL                                                ALECTO_00027377
                                                                    JA2583

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| SCHEDULE M-2 | DISTRIBUTIONS | STATEMENT 12 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| TRANSFERRED CAPITAL | 2,238,651. |
| TOTAL TO SCHEDULE M-2, LINE 6A | 2,238,651. |

| SCHEDULE L | OTHER CURRENT ASSETS | STATEMENT 13 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| DUE FROM AFFILIATE | 50,000. | 50,000. |
| OTHER CURRENT ASSETS | 46,356. | 79,756. |
| OTHER RECEIVABLES | 0. | 34,704. |
| PREPAID EXPENSES | 452,084. | 488,500. |
| TOTAL TO SCHEDULE L, LINE 6 | 548,440. | 652,960. |

| SCHEDULE L | OTHER INVESTMENTS | STATEMENT 14 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| INTERCOMPANY RECEIVABLE | 15,670,881. | 25,489,819. |
| TOTAL TO SCHEDULE L, LINE 8 | 15,670,881. | 25,489,819. |

| SCHEDULE L | OTHER CURRENT LIABILITIES | STATEMENT 15 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| ACCRUED PAYROLL | 158,472. | 88,910. |
| ACCRUED PTO | 132,997. | 99,470. |
| OTHER ACCRUED EXPENSES | 603,422. | 1,047,390. |
| TOTAL TO SCHEDULE L, LINE 17 | 894,891. | 1,235,770. |

CONFIDENTIAL                                          ALECTO_00027378
                                                                            **JA2584**

ALECTO HEALTHCARE SERVICES LLC                                                46-0829723

| FORM 1065 | PARTNERS' CAPITAL ACCOUNT SUMMARY | | | STATEMENT 16 |
|---|---|---|---|---|
| PARTNER NUMBER | BEGINNING CAPITAL | CAPITAL CONTRIBUTED | SCHEDULE M-2 LNS 3, 4 & 7 | WITH-DRAWALS | ENDING CAPITAL |
| 1 | 5,606,788. | 7,247,559. | -206,248. | | 12,648,099. |
| 2 | 1,038,816. | 894,448. | -36,827. | | 1,896,437. |
| 3 | 727,207. | 626,113. | -25,786. | | 1,327,534. |
| 4 | 727,229. | 626,113. | -25,778. | 1,327,564. | 0. |
| 6 | 504,568. | 447,224. | -18,414. | | 933,378. |
| 7 | 488,857. | 447,224. | -18,415. | | 917,666. |
| 8 | 519,434. | 447,224. | -18,414. | | 948,244. |
| 9 | 482,280. | 447,224. | -18,417. | 911,087. | 0. |
| TOTAL | 10,095,179. | 11,183,129. | -368,299. | 2,238,651. | 18,671,358. |

CONFIDENTIAL                                              **ALECTO_00027379**
                                                                          **JA2585**

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| SCHEDULE M-2 | CONTRIBUTIONS | STATEMENT 17 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| TRANSFERRED CAPITAL | 2,238,651. |
| CONTRIBUTIONS TO CAPITAL | 8,944,478. |
| TOTAL TO SCHEDULE M-2, LINE 2 | 11,183,129. |

| SCHEDULE M-3 | INCOME (LOSS) FROM U.S. PARTNERSHIPS | STATEMENT 18 |
|---|---|---|

NAME

| EIN | END OF YEAR PERCENTAGE | | INCOME (LOSS) PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | INCOME (LOSS) PER TAX RETURN |
|---|---|---|---|---|---|---|
| | PROFIT-SHARING | LOSS-SHARING | | | | |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | | | | | | |
| 90-0999512 | | | 0. | -2,081,276. | 123,697. | -1,957,579. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | | | | | |
| 35-2507149 | | | 0. | -5,395,363. | 1,198. | -5,394,165. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | | | | | | |
| 37-1760423 | | | 0. | -3,791,689. | 1,561. | -3,790,128. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | | | | | |
| 36-4857044 | | | 0. | -37,464,028. | 1,293. | -37,462,735. |
| TOTAL TO M-3, PART II, LINE 7 | | | 0. | -48,732,356. | 127,749. | -48,604,607. |

| SCHEDULE M-3 | OTHER INCOME (LOSS) AND EXPENSE / DEDUCTION ITEMS WITH NO DIFFERENCES | STATEMENT 19 |
|---|---|---|

| DESCRIPTION | PER INCOME STATEMENT | PER TAX RETURN |
|---|---|---|
| OTHER INCOME (LOSS) - SEE STATEMENT | 4,305,599. | 4,305,599. |
| OTHER EXPENSE / DEDUCTION - SEE STATEMENT | -1,226,211. | -1,226,211. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 25 | 3,079,388. | 3,079,388. |

CONFIDENTIAL                                      ALECTO_00027380
                                                                **JA2586**

ALECTO HEALTHCARE SERVICES LLC                                            46-0829723

=========================================================================================

| SCHEDULE M-3 | OTHER INCOME (LOSS) ITEMS WITH NO DIFFERENCES | STATEMENT 20 |

| DESCRIPTION | INCOME (LOSS) PER INCOME STATEMENT | INCOME (LOSS) PER TAX RETURN |
|---|---|---|
| OTHER INCOME | 20,980. | 20,980. |
| SALES | 4,284,619. | 4,284,619. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 25 | 4,305,599. | 4,305,599. |

| SCHEDULE M-3 | MEALS AND ENTERTAINMENT | | | STATEMENT 21 |

| DESCRIPTION | EXPENSE PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | DEDUCTION PER TAX RETURN |
|---|---|---|---|---|
| MEALS AND ENTERTAINMENT FROM TRADE OR BUSINESS | 10,806. | | -5,403. | 5,403. |
| TOTAL | 10,806. | | -5,403. | 5,403. |

| SCHEDULE M-3 | CHARITABLE CONTRIBUTION OF CASH AND TANGIBLE PROPERTY | | | STATEMENT 22 |

| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | EXPENSE/ DEDUCTION PER TAX RETURN |
|---|---|---|---|---|
| CHARITABLE CONTRIBUTIONS | 14,150. | | 0. | 14,150. |
| TOTAL | 14,150. | | 0. | 14,150. |

CONFIDENTIAL

ALECTO_00027381
**JA2587**

ALECTO HEALTHCARE SERVICES LLC                                                           46-0829723

| SCHEDULE M-3 | OTHER AMORTIZATION OR IMPAIRMENT WRITE-OFFS | | STATEMENT 23 | |
|---|---|---|---|---|
| DESCRIPTION | EXPENSE PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | DEDUCTION PER TAX RETURN |
| LOAN COSTS | 4,704. | | 0. | 4,704. |
| OTHER AMORTIZATION | 7,729. | -7,729. | 0. | 0. |
| TOTAL | 12,433. | -7,729. | 0. | 4,704. |

| SCHEDULE M-3 | OTHER EXPENSE/DEDUCTION ITEMS WITH DIFFERENCES | | | STATEMENT 24 |
|---|---|---|---|---|
| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | EXPENSE/ DEDUCTION PER TAX RETURN |
| EXCESS BUSINESS INTEREST EXPENSE | 0. | 187,193. | 0. | 187,193. |
| OFFICER'S LIFE INSURANCE | 25,837. | | -25,837. | 0. |
| SALARIES AND WAGES | 3,189,579. | 149,403. | 0. | 3,338,982. |
| TOTAL TO M-3, PART III, LINE 30 | 3,215,416. | 336,596. | -25,837. | 3,526,175. |

CONFIDENTIAL

ALECTO_00027382
**JA2588**

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

═══════════════════════════════════════════════════════════════════════════════

SCHEDULE M-3              OTHER EXPENSE/DEDUCTION ITEMS                STATEMENT 25
                              WITH NO DIFFERENCES
───────────────────────────────────────────────────────────────────────────────

| DESCRIPTION | EXPENSE/<br>DEDUCTION<br>PER INCOME<br>STATEMENT | EXPENSE/<br>DEDUCTION<br>PER TAX<br>RETURN |
|---|---|---|
| AUTOMOBILE EXPENSE | 22,998. | 22,998. |
| BANK SERVICE CHARGES | 21,466. | 21,466. |
| COMPUTER AND INTERNET EXPENSES | 12,593. | 12,593. |
| DUES AND SUBSCRIPTIONS | 13,537. | 13,537. |
| EMPLOYEE BENEFIT PROGRAMS | 259,280. | 259,280. |
| INSURANCE | 102,537. | 102,537. |
| PAYROLL TAXES | 145,810. | 145,810. |
| PROFESSIONAL FEES | 227,313. | 227,313. |
| PURCHASED SERVICES | 202,802. | 202,802. |
| RENT EXPENSE | 68,414. | 68,414. |
| REPAIRS | 3,240. | 3,240. |
| SUPPLIES AND OTHER | 11,651. | 11,651. |
| TAXES AND LICENSES | 7,200. | 7,200. |
| TRAVEL EXPENSES | 97,427. | 97,427. |
| UTILITIES | 29,943. | 29,943. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 25 | 1,226,211. | 1,226,211. |

───────────────────────────────────────────────────────────────────────────────

FORM 8916-A               OTHER INTEREST INCOME                       STATEMENT 26

| DESCRIPTION | PER INCOME<br>STATEMENT | TEMPORARY<br>DIFFERENCE | PERMANENT<br>DIFFERENCE | PER TAX<br>RETURN |
|---|---|---|---|---|
| INTEREST INCOME | 88. | 0. | 0. | 88. |
| TOTAL TO PART II, LINE 5 | 88. | 0. | 0. | 88. |

───────────────────────────────────────────────────────────────────────────────

FORM 8916-A               OTHER INTEREST EXPENSE                      STATEMENT 27

| DESCRIPTION | PER INCOME<br>STATEMENT | TEMPORARY<br>DIFFERENCE | PERMANENT<br>DIFFERENCE | PER TAX<br>RETURN |
|---|---|---|---|---|
| INTEREST EXPENSE | 187,281. | -187,193. | 0. | 88. |
| TOTAL TO PART III, LINE 4 | 187,281. | -187,193. | 0. | 88. |

CONFIDENTIAL                                                  ALECTO_00027383
**JA2589**

651119

| Schedule K-1 (Form 1065) <br> Department of the Treasury <br> Internal Revenue Service | **2019** <br> For calendar year 2019, or tax year | | ☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123 |
|---|---|---|---|

**Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

beginning [ ] ending [ ]

**Partner's Share of Income, Deductions, Credits, etc.** ▶ See separate instructions.

| | |
|---|---|
| **Part I   Information About the Partnership** | |
| A Partnership's employer identification number <br> 46-0829723 | |
| B Partnership's name, address, city, state, and ZIP code <br><br> ALECTO HEALTHCARE SERVICES LLC <br> 16310 BAKE PARKWAY SUITE 200 <br> IRVINE, CA  92618 | |
| C IRS Center where partnership filed return ▶ <br> E-FILE | |
| D ☐ Check if this is a publicly traded partnership (PTP) | |
| **Part II   Information About the Partner** | |
| E Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.) | |
| F Name, address, city, state, and ZIP code for partner entered in E. See instructions. <br><br> LAXMAN REDDY <br><br> CALABASAS, CA   91302 | |

| 1 Ordinary business income (loss) | -27,496,141. |
|---|---|
| 2 Net rental real estate income (loss) | |
| 3 Other net rental income (loss) | |
| 4a Guaranteed payments for services | |
| 4b Guaranteed payments for capital | |
| 4c Total guaranteed payments | |
| 5 Interest income | 130,072. |
| 6a Ordinary dividends | |
| 6b Qualified dividends | |
| 6c Dividend equivalents | |
| 7 Royalties | |
| 8 Net short-term capital gain (loss) | |
| 9a Net long-term capital gain (loss) | |
| 9b Collectibles (28%) gain (loss) | |
| 9c Unrecaptured section 1250 gain | |
| 10 Net section 1231 gain (loss) | -1,074. |
| 11 Other income (loss) | |

| 15 Credits | |
|---|---|
| **16 Foreign transactions** | |

| 17 Alternative min tax (AMT) items | |
|---|---|
| A | -26,799. |
| B* | -577. |

| 18 Tax-exempt income and nondeductible expenses | |
|---|---|
| C* | STMT |

| 19 Distributions | |
|---|---|

| **20 Other information** | |
|---|---|
| A | 130,072. |
| Z | * STMT |
| AH | * STMT |

G ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

H1 ☒ Domestic partner    ☐ Foreign partner

H2 ☐ If the partner is a disregarded entity (DE), enter the partner's: TIN ___ Name ___

I1 What type of entity is this partner?  INDIVIDUAL

I2 If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

J Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 56.0000000% | 68.0000000% |
| Loss | 56.0000000% | 68.0000000% |
| Capital | 56.0000000% | 68.0000000% |

Check if decrease is due to sale or exchange of partnership interest ☐

K Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 111,416,618. | $ 165,001,639. |
| Qualified nonrecourse financing | $ 9,862,033. | $ 0. |
| Recourse | $ 4,039,464. | $ 5,129,523. |

Check this box if Item K includes liability amounts from lower tier partnerships.

L   **Partner's Capital Account Analysis**   SEE STATEMENT

| Beginning capital account | $ 5,606,788. |
|---|---|
| Capital contributed during the year | $ 7,247,559. |
| Current year net income (loss) | $ -27,485,797. |
| Other increase (decrease) (attach explanation) | $ 27,279,549. |
| Withdrawals & distributions | $ ( ) |
| Ending capital account | $ 12,648,099. |

M Did the partner contribute property with a built-in gain or loss? ☐ Yes  ☒ No  If "Yes," attach statement. See instructions.

N Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning $ ___   Ending $ ___

| 12 Section 179 deduction | |
|---|---|
| 13 Other deductions | |
| A | 13,826. |
| K | 104,828. |
| 14 Self-employment earnings (loss) | |
| A | -27,496,170. |

21 ☐ More than one activity for at-risk purposes*
22 ☐ More than one activity for passive activity purposes*
*See attached statement for additional information.

For IRS Use Only

911261 12-30-19  LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**   www.irs.gov/Form1065   Schedule K-1 (Form 1065) 2019
1

CONFIDENTIAL
ALECTO_00027384
JA2590

ALECTO HEALTHCARE SERVICES LLC                                              46-0829723

═══════════════════════════════════════════════════════════════════════════════

SCHEDULE K-1            ALTERNATIVE MINIMUM TAX, ADJUSTED
                        GAIN OR LOSS, BOX 17, CODE B

─────────────────────────────────────────────────────────────────────────────────

|                                        |                              | SUBJECT TO SPECIAL RATES |          |
|----------------------------------------|------------------------------|--------------------------|----------|
| DESCRIPTION                            | PARTNER FILING INSTRUCTIONS  |                          | AMOUNT   |
| ORDINARY GAIN (LOSS)                   | SEE FORM 6251 INSTRUCTIONS   |                          | -577.    |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B  |                              |                          | -577.    |

═══════════════════════════════════════════════════════════════════════════════

SCHEDULE K-1            NONDEDUCTIBLE EXPENSES, BOX 18, CODE C

─────────────────────────────────────────────────────────────────────────────────

| DESCRIPTION                            | PARTNER FILING INSTRUCTIONS  | AMOUNT   |
|----------------------------------------|------------------------------|----------|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION     | 3,026.   |
| OFFICER'S LIFE INSURANCE               |                              | 14,469.  |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH   | SEE IRS SCH. K-1 INSTRUCTIONS | 71,540. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C  |                              | 89,035.  |

CONFIDENTIAL                                                       ALECTO_00027385
                                                                          **JA2591**

ALECTO HEALTHCARE SERVICES LLC                                              46-0829723

SCHEDULE K-1          SECTION 199A INFORMATION, BOX 20, CODE Z

| DESCRIPTION | AMOUNT |
|---|---|

TRADE OR BUSINESS -
X - SSTB

| ORDINARY INCOME (LOSS) | -154,430. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -154,430. |
| W-2 WAGES | 1,869,836. |
| UNADJUSTED BASIS OF ASSETS | 7,542. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

| ORDINARY INCOME (LOSS) | -1,188,743. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -1,188,743. |
| W-2 WAGES | 16,853,018. |
| UNADJUSTED BASIS OF ASSETS | 8,210,147. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

| ORDINARY INCOME (LOSS) | -3,016,453. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -3,016,453. |
| W-2 WAGES | 11,018,952. |
| UNADJUSTED BASIS OF ASSETS | 7,330,471. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

| ORDINARY INCOME (LOSS) | -2,157,291. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -2,157,291. |
| W-2 WAGES | 13,561,600. |
| UNADJUSTED BASIS OF ASSETS | 1,862,009. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

| ORDINARY INCOME (LOSS) | -21,068,042. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -21,068,042. |
| W-2 WAGES | 20,488,293. |
| UNADJUSTED BASIS OF ASSETS | 7,214,196. |

CONFIDENTIAL                                          ALECTO_00027386
                                                                          JA2592

ALECTO HEALTHCARE SERVICES LLC                                           46-0829723

─────────────────────────────────────────────────────────────────────────────

SCH K-1
─────────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

─────────────────────────────────────────────────────────────────────────────

SCHEDULE K-1              OTHER INFORMATION, BOX 20, CODE AH
─────────────────────────────────────────────────────────────────────────────

DESCRIPTION                      PARTNER FILING INSTRUCTIONS         AMOUNT

BEGINNING TAX CAPITAL            PLEASE CONSULT YOUR TAX ADVISOR    -17,795,522.
ENDING TAX CAPITAL               PLEASE CONSULT YOUR TAX ADVISOR    -40,361,360.


─────────────────────────────────────────────────────────────────────────────

SCHEDULE K-1              CAPITAL CONTRIBUTED DURING THE YEAR
─────────────────────────────────────────────────────────────────────────────

DESCRIPTION                                                          AMOUNT

CONTRIBUTIONS TO CAPITAL                                            5,008,908.
TRANSFERRED CAPITAL                                                 2,238,651.

TOTAL TO SCHEDULE K-1, ITEM L, CAPITAL CONTRIBUTED                  7,247,559.


                                                          PARTNER NUMBER 1
10340904 146892 629917            2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                           ALECTO_00027387
                                                                    JA2593

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) | |
|---|---|---|

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -27,496,141. | |
| INTEREST INCOME | 130,072. | |
| SECTION 1231 GAIN (LOSS) | -1,074. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -27,367,143. |
| CHARITABLE CONTRIBUTIONS | -13,826. | |
| OTHER DEDUCTIONS | -104,828. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -118,654. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -27,485,797. |

| | |
|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 1,074. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 896. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -4,328. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -1,854. |
| NONDEDUCTIBLE EXPENSES | -89,035. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 3,020,339. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 1,165,518. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 20,979,921. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 2,123,352. |
| INTEREST EXPENSE | -104,828. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 104,828. |
| SALARIES AND WAGES | 83,666. |
| TOTAL OTHER INCREASES OR DECREASES | 27,279,549. |

| SCHEDULE K-1 | ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS |
|---|---|

GAAP

CONFIDENTIAL                                            ALECTO_00027388
                                                                    JA2594

1    Case 23-10787-JKS   Doc 307-5   Filed 02/29/24   Page 58 of 70
## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: ALECTO HEALTHCARE SERVICES LLC    46-0829723
For: LAXMAN REDDY

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -1,188,743. | -1,188,743. | -3,016,453. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 95,183. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -1,074. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 2,688. | | 3,214. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -1,188,743. | -1,188,743. | -3,016,453. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -67,870. | | -1,887. |
| Adjusted gain or loss | | | -577. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 95,183. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 16,853,018. | |
| - Unadjusted basis of assets | | 8,210,147. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

1

CONFIDENTIAL

ALECTO_00027389
JA2595

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**

For: **LAXMAN REDDY**

46-0829723

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -3,016,453. | -2,157,291. | -2,157,291. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 34,813. | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -3,016,453. | -2,157,291. | -2,157,291. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 34,813. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 11,018,952. | | 13,561,600. |
| - Unadjusted basis of assets | 7,330,471. | | 1,862,009. |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

1

10340904 146892 629917                2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027390

JA2596

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**                                   46-0829723

For: **LAXMAN REDDY**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -20,979,224. | -21,068,042. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 27. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -20,979,253. | -21,068,042. | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 42,958. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 27. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 20,488,293. | |
| - Unadjusted basis of assets | | 7,214,196. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

1

CONFIDENTIAL

ALECTO_00027391
**JA2597**

| Form **8308** (Rev. September 2018) Department of the Treasury Internal Revenue Service | **Report of a Sale or Exchange of Certain Partnership Interests** ▶ Go to www.irs.gov/Form8308 for the latest information. | | OMB No. 1545-0123 |
|---|---|---|---|
| Name of partnership | | Phone number | Employer identification number |
| ALECTO HEALTHCARE SERVICES LLC | | 323-932-5963 | 46-0829723 |

Number, street, and room or suite no. If a P.O. box, see instructions.

16310 BAKE PARKWAY SUITE 200

City or town, state or province, country, and ZIP or foreign postal code

IRVINE, CA   92618

---

**Part I**    **Transferor Information** (Beneficial owner of the partnership interest immediately before the transfer of that interest)

| Name | Identifying number |
|---|---|
| PANCH JEYAKUMAR | |

Number and street (including apt. no.)

City, state or province, country, and ZIP or foreign postal code

TUSTIN, CA   92782

**Notice to Transferors:** *The information on this form has been supplied to the Internal Revenue Service. The transferor in a section 751(a) exchange is required to treat a portion of the gain realized from the exchange as ordinary income. For more details, see Pub. 541, Partnerships.*

**Statement by Transferor:** *The transferor in a section 751(a) exchange is required under Regulations section 1.751-1(a)(3) to attach a statement relating to the sale or exchange to his or her return.*

---

**Part II**    **Transferee Information** (Beneficial owner of the partnership interest immediately after the transfer of that interest)

| Name | Identifying number |
|---|---|
| LAXMAN REDDY | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

CALABASAS, CA   91302

---

**Part III**    Date of Sale or Exchange of Partnership Interest  ▶          12/31/19

| Sign here only if you are filing this form by itself and not with Form 1065 | Under penalties of perjury, I declare that I have examined this return, including accompanying attachments, and to the best of my knowledge and belief, it is true, correct, and complete. |
|---|---|
| | Signature of partnership representative or partner or limited liability company member _____ Date |

LHA
919971
04-01-19

Form **8308** (Rev. 9-2018)

10340904 146892 629917          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027392
**JA2598**

| Form **8308** (Rev. September 2018)<br>Department of the Treasury<br>Internal Revenue Service | **Report of a Sale or Exchange of Certain Partnership Interests**<br>▶ Go to www.irs.gov/Form8308 for the latest information. | | OMB No. 1545-0123 |
|---|---|---|---|
| Name of partnership | | Phone number | Employer identification number |

ALECTO HEALTHCARE SERVICES LLC    323-932-5963    46-0829723

Number, street, and room or suite no. If a P.O. box, see instructions.

16310 BAKE PARKWAY SUITE 200

City or town, state or province, country, and ZIP or foreign postal code

IRVINE, CA    92618

**Part I**    **Transferor Information** (Beneficial owner of the partnership interest immediately before the transfer of that interest)

| Name | Identifying number |
|---|---|

AMAN DHUPER

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

RANCHO CUCAMONGA, CA    91739

**Notice to Transferors:** *The information on this form has been supplied to the Internal Revenue Service. The transferor in a section 751(a) exchange is required to treat a portion of the gain realized from the exchange as ordinary income. For more details, see Pub. 541, Partnerships.*

**Statement by Transferor:** *The transferor in a section 751(a) exchange is required under Regulations section 1.751-1(a)(3) to attach a statement relating to the sale or exchange to his or her return.*

**Part II**    **Transferee Information** (Beneficial owner of the partnership interest immediately after the transfer of that interest)

| Name | Identifying number |
|---|---|

LAXMAN REDDY

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

CALABASAS, CA    91302

**Part III**    Date of Sale or Exchange of Partnership Interest ▶    12/31/19

| Sign here only if you are filing this form by itself and not with Form 1065 | Under penalties of perjury, I declare that I have examined this return, including accompanying attachments, and to the best of my knowledge and belief, it is true, correct, and complete.<br><br>Signature of partnership representative or partner or limited liability company member      Date |
|---|---|

CONFIDENTIAL
ALECTO_00027393
JA2599

2          Case 23-10787-JKS   Doc 307-5   Filed 02/29/24   Page 63 of 70

651119

| Schedule K-1 (Form 1065) | **2019** | | Final K-1 | Amended K-1 | OMB No. 1545-0123 |
|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | For calendar year 2019, or tax year | | **Part III** | **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** | |

| beginning | ending | | 1 Ordinary business income (loss) −4,909,885. | 15 Credits |
|---|---|---|---|---|

**Partner's Share of Income, Deductions, Credits, etc.** ▶ See separate instructions.

| | | 2 Net rental real estate income (loss) | 16 Foreign transactions |
|---|---|---|---|

**Part I   Information About the Partnership**

**A** Partnership's employer identification number
46-0829723

| | 3 Other net rental income (loss) | |
|---|---|---|

**B** Partnership's name, address, city, state, and ZIP code

ALECTO HEALTHCARE SERVICES LLC
16310 BAKE PARKWAY SUITE 200
IRVINE, CA   92618

| 4a Guaranteed payments for services | |
|---|---|
| 4b Guaranteed payments for capital | |
| 4c Total guaranteed payments | |

**C** IRS Center where partnership filed return ▶
E-FILE

| | 17 Alternative min tax (AMT) items |
|---|---|
| 5 Interest income            23,227. | A            −4,785. |
| | B*            −103. |

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II   Information About the Partner**

| 6a Ordinary dividends | |
|---|---|

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)

| 6b Qualified dividends | 18 Tax-exempt income and nondeductible expenses |
|---|---|
| | C*            STMT |

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.

ROGER KRISSMAN

| 6c Dividend equivalents | |
|---|---|

| | 7 Royalties | 19 Distributions |
|---|---|

UPLAND, CA   91786

| **G** ☒ General partner or LLC member-manager | ☐ Limited partner or other LLC member | 8 Net short-term capital gain (loss) | |
|---|---|---|---|
| **H1** ☒ Domestic partner | ☐ Foreign partner | | 20 Other information |
| **H2** ☐ If the partner is a disregarded entity (DE), enter the partner's: | | 9a Net long-term capital gain (loss) | A            23,227. |
| TIN _____ Name _____ | | | Z   *            STMT |
| **I1** What type of entity is this partner?   INDIVIDUAL | | 9b Collectibles (28%) gain (loss) | AH   *            STMT |
| **I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐ | | 9c Unrecaptured section 1250 gain | |

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 10.0000000% | 10.0000000% |
| Loss | 10.0000000% | 10.0000000% |
| Capital | 10.0000000% | 10.0000000% |

| 10 Net section 1231 gain (loss)       −192. | |
|---|---|
| 11 Other income (loss) | |

Check if decrease is due to sale or exchange of partnership interest ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse    $ | 19,895,824. | $ 24,264,947. |
| Qualified nonrecourse financing   $ | 1,761,077. | $ 0. |
| Recourse    $ | 0. | $ 30,000. |

| 12 Section 179 deduction | |
|---|---|
| 13 Other deductions | |
| A            2,469. | |
| K            18,719. | |

☐ Check this box if Item K includes liability amounts from lower tier partnerships.

**L   Partner's Capital Account Analysis**
SEE STATEMENT

| | |
|---|---|
| Beginning capital account    $ | 1,038,816. |
| Capital contributed during the year    $ | 894,448. |
| Current year net income (loss)    $ | −4,908,038. |
| Other increase (decrease) (attach explanation)    $ | 4,871,211. |
| Withdrawals & distributions    $( | ) |
| Ending capital account    $ | 1,896,437. |

| 14 Self-employment earnings (loss) | |
|---|---|
| A            −4,909,890. | |

**21** ☐ More than one activity for at-risk purposes*
**22** ☐ More than one activity for passive activity purposes*
*See attached statement for additional information.*

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning ................................... $ _____
Ending ...................................... $ _____

For IRS Use Only

911261 12-30-19   LHA   **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**          www.irs.gov/Form1065          Schedule K-1 (Form 1065) 2019

2

CONFIDENTIAL                    **ALECTO_00027394**
                                                                **JA2600**

ALECTO HEALTHCARE SERVICES LLC                                       46-0829723

===============================================================================

SCHEDULE K-1            ALTERNATIVE MINIMUM TAX, ADJUSTED
                        GAIN OR LOSS, BOX 17, CODE B

-------------------------------------------------------------------------------

|                                      |                                | SUBJECT TO SPECIAL |           |
| DESCRIPTION                          | PARTNER FILING INSTRUCTIONS    | RATES              | AMOUNT    |
|--------------------------------------|--------------------------------|--------------------|-----------|
| ORDINARY GAIN (LOSS)                 | SEE FORM 6251 INSTRUCTIONS     |                    | -103.     |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B |                               |                    | -103.     |

===============================================================================

SCHEDULE K-1            NONDEDUCTIBLE EXPENSES, BOX 18, CODE C

-------------------------------------------------------------------------------

| DESCRIPTION                                | PARTNER FILING INSTRUCTIONS     | AMOUNT   |
|--------------------------------------------|---------------------------------|----------|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES  | NONDEDUCTIBLE PORTION           | 540.     |
| OFFICER'S LIFE INSURANCE                    |                                 | 2,583.   |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH        | SEE IRS SCH. K-1 INSTRUCTIONS   | 12,774.  |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C      |                                 | 15,897.  |

CONFIDENTIAL                                        ALECTO_00027395
                                                              JA2601

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

SCHEDULE K-1         SECTION 199A INFORMATION, BOX 20, CODE Z

| DESCRIPTION | AMOUNT |
|---|---|

TRADE OR BUSINESS -
X - SSTB

| ORDINARY INCOME (LOSS) | -27,576. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -27,576. |
| W-2 WAGES | 333,890. |
| UNADJUSTED BASIS OF ASSETS | 1,346. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

| ORDINARY INCOME (LOSS) | -212,269. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -212,269. |
| W-2 WAGES | 3,009,382. |
| UNADJUSTED BASIS OF ASSETS | 1,466,056. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

| ORDINARY INCOME (LOSS) | -538,637. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -538,637. |
| W-2 WAGES | 1,967,613. |
| UNADJUSTED BASIS OF ASSETS | 1,308,975. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

| ORDINARY INCOME (LOSS) | -385,220. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -385,220. |
| W-2 WAGES | 2,421,645. |
| UNADJUSTED BASIS OF ASSETS | 332,492. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

| ORDINARY INCOME (LOSS) | -3,762,043. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -3,762,043. |
| W-2 WAGES | 3,658,519. |
| UNADJUSTED BASIS OF ASSETS | 1,288,212. |

CONFIDENTIAL

ALECTO_00027396
JA2602

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

═══════════════════════════════════════════════════════════════════════════════

SCH K-1
───────────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════════

SCHEDULE K-1                  OTHER INFORMATION, BOX 20, CODE AH
───────────────────────────────────────────────────────────────────────────────

DESCRIPTION                     PARTNER FILING INSTRUCTIONS            AMOUNT
─────────────                   ───────────────────────────           ──────────

BEGINNING TAX CAPITAL           PLEASE CONSULT YOUR TAX ADVISOR       -3,208,021.
ENDING TAX CAPITAL              PLEASE CONSULT YOUR TAX ADVISOR       -7,237,635.

CONFIDENTIAL                                        ALECTO_00027397
                                                            **JA2603**

ALECTO HEALTHCARE SERVICES LLC                                            46-0829723

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) | |
|---|---|---|

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -4,909,885. | |
| INTEREST INCOME | 23,227. | |
| SECTION 1231 GAIN (LOSS) | -192. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -4,886,850. |
| CHARITABLE CONTRIBUTIONS | -2,469. | |
| OTHER DEDUCTIONS | -18,719. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -21,188. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -4,908,038. |

| | |
|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 192. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 160. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -773. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -331. |
| NONDEDUCTIBLE EXPENSES | -15,897. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 539,330. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 208,122. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 3,746,308. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 379,160. |
| INTEREST EXPENSE | -18,719. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 18,719. |
| SALARIES AND WAGES | 14,940. |
| TOTAL OTHER INCREASES OR DECREASES | 4,871,211. |

| SCHEDULE K-1 | ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS |
|---|---|

GAAP

CONFIDENTIAL                                                    ALECTO_00027398
JA2604

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**  **46-0829723**
For: **ROGER KRISSMAN**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -212,269. | -212,269. | -538,637. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 16,996. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -192. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 480. | | 574. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -212,269. | -212,269. | -538,637. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -12,119. | | -337. |
| Adjusted gain or loss | | | -103. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 16,996. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 3,009,382. | |
| - Unadjusted basis of assets | | 1,466,056. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

2

CONFIDENTIAL

ALECTO_00027399
**JA2605**

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**                          46-0829723

For: **ROGER KRISSMAN**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -538,637. | -385,220. | -385,220. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 6,217. | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -538,637. | -385,220. | -385,220. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 6,217. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 1,967,613. | | 2,421,645. |
| - Unadjusted basis of assets | 1,308,975. | | 332,492. |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence    2 - Multi-Family Residence    3 - Vacation or Short-Term Rental    4 - Commercial    5 - Land    6 - Royalties    7 - Self-Rental    8 - Other

2

CONFIDENTIAL

ALECTO_00027400
**JA2606**

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**                                          46-0829723

For: **ROGER KRISSMAN**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -3,746,183. | -3,762,043. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 5. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -3,746,188. | -3,762,043. | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 7,671. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 5. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 3,658,519. | |
| - Unadjusted basis of assets | | 1,288,212. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

2

10340904 146892 629917                     2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

**CONFIDENTIAL**

ALECTO_00027401
**JA2607**

**Exhibit B**

**Part 5**

651119

| Schedule K-1 (Form 1065) | **2019** | | Final K-1 ☐ Amended K-1 ☐ OMB No. 1545-0123 |
|---|---|---|---|
| Department of the Treasury Internal Revenue Service | For calendar year 2019, or tax year | | **Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |

| | | | |
|---|---|---|---|
| beginning ☐ ending ☐ **Partner's Share of Income, Deductions, Credits, etc.** ► See separate instructions. | | 1 Ordinary business income (loss) −3,437,063. | 15 Credits |
| **Part I Information About the Partnership** | | 2 Net rental real estate income (loss) | |
| | | | 16 Foreign transactions |
| A Partnership's employer identification number 46-0829723 | | 3 Other net rental income (loss) | |
| B Partnership's name, address, city, state, and ZIP code | | 4a Guaranteed payments for services | |
| ALECTO HEALTHCARE SERVICES LLC 16310 BAKE PARKWAY SUITE 200 IRVINE, CA 92618 | | 4b Guaranteed payments for capital | |
| | | 4c Total guaranteed payments | |
| C IRS Center where partnership filed return ► E-FILE | | | 17 Alternative min tax (AMT) items |
| | | 5 Interest income        16,258. | A       −3,350. |
| D ☐ Check if this is a publicly traded partnership (PTP) | | | B*       −72. |
| **Part II Information About the Partner** | | 6a Ordinary dividends | |
| E Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.) | | | 18 Tax-exempt income and nondeductible expenses |
| | | 6b Qualified dividends | C*       STMT |
| F Name, address, city, state, and ZIP code for partner entered in E. See instructions. | | 6c Dividend equivalents | |
| MICHAEL J SARRAO | | | |
| | | 7 Royalties | 19 Distributions |
| MISSION VIEJO, CA 92692 | | | |
| G ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member | | 8 Net short-term capital gain (loss) | |
| | | | 20 Other information |
| H1 ☒ Domestic partner    ☐ Foreign partner | | 9a Net long-term capital gain (loss) | A       16,258. |
| H2 ☐ If the partner is a disregarded entity (DE), enter the partner's: | | | Z  *       STMT |
| TIN _____ Name _____ | | 9b Collectibles (28%) gain (loss) | AH *       STMT |
| I1 What type of entity is this partner? INDIVIDUAL | | 9c Unrecaptured section 1250 gain | |
| I2 If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐ | | | |
| J Partner's share of profit, loss, and capital: | | 10 Net section 1231 gain (loss)        −134. | |
| Beginning            Ending | | | |
| Profit    7.0000000%        7.0000000% | | 11 Other income (loss) | |
| Loss    7.0000000%        7.0000000% | | | |
| Capital   7.0000000%        7.0000000% | | | |
| Check if decrease is due to sale or exchange of partnership interest ☐ | | | |
| K Partner's share of liabilities: | | 12 Section 179 deduction | |
| Beginning            Ending | | | |
| Nonrecourse ..... $ 13,927,078. $ 16,985,463. | | 13 Other deductions | |
| Qualified nonrecourse financing ..... $ 1,232,754. $      0. | | A       1,729. | |
| Recourse ..... $      0. $      0. | | K       13,104. | |
| Check this box if Item K includes liability amounts from lower tier partnerships. ☐ | | | |
| L Partner's Capital Account Analysis SEE STATEMENT | | 14 Self-employment earnings (loss) A       −3,437,067. | |
| Beginning capital account ..... $ 727,207. | | | |
| Capital contributed during the year ..... $ 626,113. | | 21 ☐ More than one activity for at-risk purposes* | |
| Current year net income (loss) ..... $ −3,435,772. | | 22 ☐ More than one activity for passive activity purposes* | |
| Other increase (decrease) (attach explanation) ..... $ 3,409,986. | | *See attached statement for additional information. | |
| Withdrawals & distributions ..... $ ( ) | | | |
| Ending capital account ..... $ 1,327,534. | | | |
| M Did the partner contribute property with a built-in gain or loss? ☐ Yes ☒ No If "Yes," attach statement. See instructions. | | | |
| N Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss) | | | |
| Beginning ..... $ _____ | | | |
| Ending ..... $ _____ | | | |

911261 12-30-19  LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**        www.irs.gov/Form1065        Schedule K-1 (Form 1065) 2019

3

**CONFIDENTIAL**

ALECTO_00027402
**JA2609**

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

---

| SCHEDULE K-1 | ALTERNATIVE MINIMUM TAX, ADJUSTED GAIN OR LOSS, BOX 17, CODE B |

---

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | SUBJECT TO SPECIAL RATES | AMOUNT |
|---|---|---|---|
| ORDINARY GAIN (LOSS) | SEE FORM 6251 INSTRUCTIONS | | -72. |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B | | | -72. |

---

| SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES, BOX 18, CODE C |

---

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION | 378. |
| OFFICER'S LIFE INSURANCE | | 1,809. |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH | SEE IRS SCH. K-1 INSTRUCTIONS | 8,944. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C | | 11,131. |

10340904 146892 629917            2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027403
**JA2610**

ALECTO HEALTHCARE SERVICES LLC                                       46-0829723

---

SCHEDULE K-1        SECTION 199A INFORMATION, BOX 20, CODE Z

---

| DESCRIPTION | AMOUNT |
|---|---|

TRADE OR BUSINESS -
X - SSTB

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -19,304. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -19,304. |
| W-2 WAGES | 233,732. |
| UNADJUSTED BASIS OF ASSETS | 943. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -148,595. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -148,595. |
| W-2 WAGES | 2,106,655. |
| UNADJUSTED BASIS OF ASSETS | 1,026,281. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -377,062. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -377,062. |
| W-2 WAGES | 1,377,387. |
| UNADJUSTED BASIS OF ASSETS | 916,321. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -269,665. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -269,665. |
| W-2 WAGES | 1,695,222. |
| UNADJUSTED BASIS OF ASSETS | 232,754. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -2,633,539. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -2,633,539. |
| W-2 WAGES | 2,561,070. |
| UNADJUSTED BASIS OF ASSETS | 901,786. |

CONFIDENTIAL                                                       ALECTO_00027404
                                                                    JA2611

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

═══════════════════════════════════════════════════════════════════════════

SCH K-1
───────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════

SCHEDULE K-1             OTHER INFORMATION, BOX 20, CODE AH
───────────────────────────────────────────────────────────────────────────

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| BEGINNING TAX CAPITAL | PLEASE CONSULT YOUR TAX ADVISOR | -2,245,577. |
| ENDING TAX CAPITAL | PLEASE CONSULT YOUR TAX ADVISOR | -5,066,307. |

CONFIDENTIAL                                          ALECTO_00027405
                                                              **JA2612**

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) | |
|---|---|---|

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -3,437,063. | |
| INTEREST INCOME | 16,258. | |
| SECTION 1231 GAIN (LOSS) | -134. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -3,420,939. |
| CHARITABLE CONTRIBUTIONS | -1,729. | |
| OTHER DEDUCTIONS | -13,104. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -14,833. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -3,435,772. |

| | |
|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 134. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 112. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -541. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -232. |
| NONDEDUCTIBLE EXPENSES | -11,131. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 377,548. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 145,692. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 2,622,524. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 265,422. |
| INTEREST EXPENSE | -13,104. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 13,104. |
| SALARIES AND WAGES | 10,458. |
| TOTAL OTHER INCREASES OR DECREASES | 3,409,986. |

| SCHEDULE K-1 | ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS |
|---|---|

GAAP

CONFIDENTIAL                                          ALECTO_00027406
                                                             **JA2613**

**3**    Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 7 of 78

## Schedule of Activities

For calendar year 2019, or tax year beginning                          , 2019, and ending                          .

Name: ALECTO HEALTHCARE SERVICES LLC    46-0829723

For: MICHAEL J SARRAO

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -148,595. | -148,595. | -377,062. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 11,898. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -134. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 336. | | 402. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -148,595. | -148,595. | -377,062. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -8,484. | | -236. |
| Adjusted gain or loss | | | -72. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 11,898. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 2,106,655. | |
| - Unadjusted basis of assets | | 1,026,281. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

3

CONFIDENTIAL

ALECTO_00027407
JA2614

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: ALECTO HEALTHCARE SERVICES LLC

For: MICHAEL J SARRAO

46-0829723

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -377,062. | -269,665. | -269,665. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 4,351. | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -377,062. | -269,665. | -269,665. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 4,351. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 1,377,387. | | 1,695,222. |
| - Unadjusted basis of assets | 916,321. | | 232,754. |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

3

CONFIDENTIAL

ALECTO_00027408

JA2615

**3**   Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 9 of 78

## Schedule of Activities

For calendar year 2019, or tax year beginning                     , 2019, and ending                     .

Name: ALECTO HEALTHCARE SERVICES LLC                                                    46-0829723

For: MICHAEL J SARRAO

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -2,622,437. | -2,633,539. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 3. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -2,622,441. | -2,633,539. | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 5,370. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 3. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 2,561,070. | |
| - Unadjusted basis of assets | | 901,786. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

3

CONFIDENTIAL

ALECTO_00027409
JA2616

4          Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 10 of 78

651119

| Schedule K-1 (Form 1065) | **2019** | | |
|---|---|---|---|
| Department of the Treasury Internal Revenue Service | For calendar year 2019, or tax year | | |

[X] Final K-1 ☐ Amended K-1    OMB No. 1545-0123

**Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

| beginning ☐ ending ☐ | |
|---|---|
| **Partner's Share of Income, Deductions, Credits, etc.** | ▶ See separate instructions. |

**Part I   Information About the Partnership**

**A** Partnership's employer identification number
46-0829723

**B** Partnership's name, address, city, state, and ZIP code

ALECTO HEALTHCARE SERVICES LLC
16310 BAKE PARKWAY SUITE 200
IRVINE, CA   92618

**C** IRS Center where partnership filed return ▶
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II   Information About the Partner**

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.

PANCH JEYAKUMAR

TUSTIN, CA   92782

**G** [X] General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H1** [X] Domestic partner    ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN _____ Name _____

**I1** What type of entity is this partner?   INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 7.0000000% | 0.0000000% |
| Loss | 7.0000000% | 0.0000000% |
| Capital | 7.0000000% | 0.0000000% |

Check if decrease is due to sale or exchange of partnership interest ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse $ | 13,927,077. | $ 0. |
| Qualified nonrecourse financing $ | 1,232,754. | $ 0. |
| Recourse $ | 0. | $ 0. |

☐ Check this box if Item K includes liability amounts from lower tier partnerships.

**L**   **Partner's Capital Account Analysis**
SEE STATEMENT

| | |
|---|---|
| Beginning capital account $ | 727,229. |
| Capital contributed during the year $ | 626,113. |
| Current year net income (loss) $ | -3,435,768. |
| Other increase (decrease) (attach explanation) $ | 3,409,990. |
| Withdrawals & distributions $( | 1,327,564.) |
| Ending capital account $ | 0. |

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   [X] No   If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning $ _____
Ending $ _____

| 1 Ordinary business income (loss) | -3,437,061. |
|---|---|
| 2 Net rental real estate income (loss) | |
| 3 Other net rental income (loss) | |
| 4a Guaranteed payments for services | |
| 4b Guaranteed payments for capital | |
| 4c Total guaranteed payments | |
| 5 Interest income | 16,259. |
| 6a Ordinary dividends | |
| 6b Qualified dividends | |
| 6c Dividend equivalents | |
| 7 Royalties | |
| 8 Net short-term capital gain (loss) | |
| 9a Net long-term capital gain (loss) | |
| 9b Collectibles (28%) gain (loss) | |
| 9c Unrecaptured section 1250 gain | |
| 10 Net section 1231 gain (loss) | -134. |
| 11 Other income (loss) | |
| 12 Section 179 deduction | |
| 13 Other deductions | |
| A | 1,728. |
| K | 13,104. |
| 14 Self-employment earnings (loss) | |
| A | -3,437,064. |

| 15 Credits | |
|---|---|
| **16 Foreign transactions** | |

| 17 Alternative min tax (AMT) items | |
|---|---|
| A | -3,350. |
| B* | -72. |

| 18 Tax-exempt income and nondeductible expenses | |
|---|---|
| C* | STMT |

| 19 Distributions | |
|---|---|

| 20 Other information | |
|---|---|
| A | 16,259. |
| Z   * | STMT |
| AH   * | STMT |

**21** ☐ More than one activity for at-risk purposes*
**22** ☐ More than one activity for passive activity purposes*
*See attached statement for additional information.

For IRS Use Only

911261 12-30-19  LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**     www.irs.gov/Form1065     **Schedule K-1 (Form 1065) 2019**

4

CONFIDENTIAL

ALECTO_00027410
JA2617

Case 23-10787-JKS    Doc 307-6    Filed 02/29/24    Page 11 of 78

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

```
SCHEDULE K-1              ALTERNATIVE MINIMUM TAX, ADJUSTED
                         GAIN OR LOSS, BOX 17, CODE B
```

|  |  | SUBJECT TO SPECIAL | |
| DESCRIPTION | PARTNER FILING INSTRUCTIONS | RATES | AMOUNT |
| --- | --- | --- | --- |
| ORDINARY GAIN (LOSS) | SEE FORM 6251 INSTRUCTIONS | | -72. |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B | | | -72. |

```
SCHEDULE K-1          NONDEDUCTIBLE EXPENSES, BOX 18, CODE C
```

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
| --- | --- | --- |
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION | 378. |
| OFFICER'S LIFE INSURANCE | | 1,809. |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH | SEE IRS SCH. K-1 INSTRUCTIONS | 8,941. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C | | 11,128. |

CONFIDENTIAL

ALECTO_00027411
**JA2618**

ALECTO HEALTHCARE SERVICES LLC                                        46-0829723

| SCHEDULE K-1 | SECTION 199A INFORMATION, BOX 20, CODE Z |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|

TRADE OR BUSINESS -
X - SSTB

| ORDINARY INCOME (LOSS) | -19,304. |
|---|---|
| SELF-EMPLOYMENT EARNINGS(LOSS) | -19,304. |
| W-2 WAGES | 233,732. |
| UNADJUSTED BASIS OF ASSETS | 943. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

| ORDINARY INCOME (LOSS) | -148,594. |
|---|---|
| SELF-EMPLOYMENT EARNINGS(LOSS) | -148,594. |
| W-2 WAGES | 2,106,654. |
| UNADJUSTED BASIS OF ASSETS | 1,026,282. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

| ORDINARY INCOME (LOSS) | -377,061. |
|---|---|
| SELF-EMPLOYMENT EARNINGS(LOSS) | -377,061. |
| W-2 WAGES | 1,377,387. |
| UNADJUSTED BASIS OF ASSETS | 916,321. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

| ORDINARY INCOME (LOSS) | -269,665. |
|---|---|
| SELF-EMPLOYMENT EARNINGS(LOSS) | -269,665. |
| W-2 WAGES | 1,695,222. |
| UNADJUSTED BASIS OF ASSETS | 232,754. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

| ORDINARY INCOME (LOSS) | -2,633,539. |
|---|---|
| SELF-EMPLOYMENT EARNINGS(LOSS) | -2,633,539. |
| W-2 WAGES | 2,561,069. |
| UNADJUSTED BASIS OF ASSETS | 901,786. |

CONFIDENTIAL                                          ALECTO_00027412
                                                            JA2619

ALECTO HEALTHCARE SERVICES LLC                                           46-0829723

═══════════════════════════════════════════════════════════════════════════════

SCH K-1
───────────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════════

SCHEDULE K-1              OTHER INFORMATION, BOX 20, CODE AH
───────────────────────────────────────────────────────────────────────────────

DESCRIPTION                    PARTNER FILING INSTRUCTIONS          AMOUNT
─────────────                  ───────────────────────────         ──────────

BEGINNING TAX CAPITAL          PLEASE CONSULT YOUR TAX ADVISOR      -2,245,552.
ENDING TAX CAPITAL             PLEASE CONSULT YOUR TAX ADVISOR      -5,066,282.

CONFIDENTIAL                                                ALECTO_00027413
                                                                          JA2620

ALECTO HEALTHCARE SERVICES LLC                                        46-0829723

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) | |
|---|---|---|

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -3,437,061. | |
| INTEREST INCOME | 16,259. | |
| SECTION 1231 GAIN (LOSS) | -134. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -3,420,936. |
| CHARITABLE CONTRIBUTIONS | -1,728. | |
| OTHER DEDUCTIONS | -13,104. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -14,832. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -3,435,768. |

| | | |
|---|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | | 134. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | | 112. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | | -541. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | | -232. |
| NONDEDUCTIBLE EXPENSES | | -11,128. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | 377,547. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | | 145,692. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | 2,622,524. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | | 265,423. |
| INTEREST EXPENSE | | -13,104. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | | 13,104. |
| SALARIES AND WAGES | | 10,459. |
| TOTAL OTHER INCREASES OR DECREASES | | 3,409,990. |

| SCHEDULE K-1 | WITHDRAWALS AND DISTRIBUTIONS |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| TRANSFERRED CAPITAL | 1,327,564. |
| TOTAL TO SCHEDULE K-1, ITEM L, WITHDRAWALS AND DISTRIBUTIONS | 1,327,564. |

CONFIDENTIAL                                    ALECTO_00027414
                                                            JA2621

ALECTO HEALTHCARE SERVICES LLC                                      46-0829723

SCHEDULE K-1          ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS

GAAP

CONFIDENTIAL

ALECTO_00027415
**JA2622**

**4**    Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 16 of 78

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: ALECTO HEALTHCARE SERVICES LLC     46-0829723

For: PANCH JEYAKUMAR

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES - ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -148,594. | -148,594. | -377,061. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 11,898. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -134. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 336. | | 402. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -148,594. | -148,594. | -377,061. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | - |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -8,484. | | -236. |
| Adjusted gain or loss | | | -72. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 11,898. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 2,106,654. | |
| - Unadjusted basis of assets | | 1,026,282. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

4

CONFIDENTIAL

ALECTO_00027416
JA2623

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**                                      46-0829723

For: **PANCH JEYAKUMAR**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -377,061. | -269,665. | -269,665. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 4,352. | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -377,061. | -269,665. | -269,665. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 4,352. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 1,377,387. | | 1,695,222. |
| - Unadjusted basis of assets | 916,321. | | 232,754. |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

4

10340904 146892 629917                      2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027417
JA2624

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**    46-0829723

For: **PANCH JEYAKUMAR**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -2,622,437. | -2,633,539. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 3. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -2,622,440. | -2,633,539. | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 5,370. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 3. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 2,561,069. | |
| - Unadjusted basis of assets | | 901,786. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

4

CONFIDENTIAL

ALECTO_00027418
**JA2625**

| Form **8308**<br>(Rev. September 2018)<br>Department of the Treasury<br>Internal Revenue Service | Report of a Sale or Exchange of<br>Certain Partnership Interests<br><br>▶ Go to www.irs.gov/Form8308 for the latest information. | | OMB No. 1545-0123 |
|---|---|---|---|
| Name of partnership | | Phone number | Employer identification number |
| ALECTO HEALTHCARE SERVICES LLC | | 323-932-5963 | 46-0829723 |

Number, street, and room or suite no. If a P.O. box, see instructions.

16310 BAKE PARKWAY SUITE 200

City or town, state or province, country, and ZIP or foreign postal code

IRVINE, CA   92618

---

**Part I**   **Transferor Information** (Beneficial owner of the partnership interest immediately before the transfer of that interest)

| Name | Identifying number |
|---|---|
| PANCH JEYAKUMAR | |

Number and street (including apt. no.)

City, state or province, country, and ZIP or foreign postal code

TUSTIN, CA   92782

**Notice to Transferors:** *The information on this form has been supplied to the Internal Revenue Service. The transferor in a section 751(a) exchange is required to treat a portion of the gain realized from the exchange as ordinary income. For more details, see Pub. 541, Partnerships.*

**Statement by Transferor:** *The transferor in a section 751(a) exchange is required under Regulations section 1.751-1(a)(3) to attach a statement relating to the sale or exchange to his or her return.*

---

**Part II**   **Transferee Information** (Beneficial owner of the partnership interest immediately after the transfer of that interest)

| Name | Identifying number |
|---|---|
| LAXMAN REDDY | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

CALABASAS, CA   91302

---

**Part III**   Date of Sale or Exchange of Partnership Interest ▶         12/31/19

| Sign here only if you are filing this form by itself and not with Form 1065 | Under penalties of perjury, I declare that I have examined this return, including accompanying attachments, and to the best of my knowledge and belief, it is true, correct, and complete.<br><br>▶_____<br>Signature of partnership representative or partner or limited liability company member | ▶_____<br>Date |
|---|---|---|

LHA
919971
04-01-19

Form **8308** (Rev. 9-2018)

4

CONFIDENTIAL

**ALECTO_00027419**
**JA2626**

651119

| Schedule K-1 (Form 1065) | 2019 | | Final K-1 ☐   Amended K-1 ☐   OMB No. 1545-0123 |
|---|---|---|---|
| Department of the Treasury Internal Revenue Service | For calendar year 2019, or tax year | | **Part III** **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |

| | |
|---|---|
| beginning [        ] ending [        ] | 1 Ordinary business income (loss)  −2,454,943. |
| **Partner's Share of Income, Deductions, Credits, etc.** ▶ See separate instructions. | 2 Net rental real estate income (loss) |

| | |
|---|---|
| **Part I** **Information About the Partnership** | 3 Other net rental income (loss) |

| | 15 Credits |
|---|---|
| | 16 Foreign transactions |

**A** Partnership's employer identification number  46-0829723

**B** Partnership's name, address, city, state, and ZIP code

ALECTO HEALTHCARE SERVICES LLC
16310 BAKE PARKWAY SUITE 200
IRVINE, CA   92618

**C** IRS Center where partnership filed return ▶
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

| **Part II** **Information About the Partner** |
|---|

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.

MATT WILLIAMS

WEST HOLLYWOOD, CA   90046

| | |
|---|---|
| **G** ☐ General partner or LLC member-manager | ☒ Limited partner or other LLC member |
| **H1** ☒ Domestic partner | ☐ Foreign partner |
| **H2** ☐ If the partner is a disregarded entity (DE), enter the partner's: |
| TIN _____ Name _____ |

**I1** What type of entity is this partner?   INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 5.0000000% | 5.0000000% |
| Loss | 5.0000000% | 5.0000000% |
| Capital | 5.0000000% | 5.0000000% |

Check if decrease is due to sale or exchange of partnership interest ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse $ | 9,947,912. | $ 12,132,473. |
| Qualified nonrecourse financing $ | 880,539. | $ 0. |
| Recourse $ | 0. | $ 0. |

Check this box if Item K includes liability amounts from lower tier partnerships. ☐

**L** **Partner's Capital Account Analysis**
SEE STATEMENT

| | |
|---|---|
| Beginning capital account $ | 504,568. |
| Capital contributed during the year $ | 447,224. |
| Current year net income (loss) $ | −2,454,018. |
| Other increase (decrease) (attach explanation) $ | 2,435,604. |
| Withdrawals & distributions $( | ) |
| Ending capital account $ | 933,378. |

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning ........ $ _____
Ending ........ $ _____

Right column items:

| 4a Guaranteed payments for services | |
|---|---|
| 4b Guaranteed payments for capital | |
| 4c Total guaranteed payments | |
| 5 Interest income | 11,615. |
| 6a Ordinary dividends | |
| 6b Qualified dividends | |
| 6c Dividend equivalents | |
| 7 Royalties | |
| 8 Net short-term capital gain (loss) | |
| 9a Net long-term capital gain (loss) | |
| 9b Collectibles (28%) gain (loss) | |
| 9c Unrecaptured section 1250 gain | |
| 10 Net section 1231 gain (loss) | −96. |
| 11 Other income (loss) | |
| 12 Section 179 deduction | |
| 13 Other deductions | A 1,235.   K 9,359. |
| 14 Self-employment earnings (loss) | A −2,454,947. |

| 17 Alternative min tax (AMT) items | |
|---|---|
| A | −2,394. |
| B* | −52. |

| 18 Tax-exempt income and nondeductible expenses | |
|---|---|
| C* | STMT |

| 19 Distributions | |
|---|---|

| 20 Other information | |
|---|---|
| A | 11,615. |
| Z | * STMT |
| AH | * STMT |

21 ☐ More than one activity for at-risk purposes*
22 ☐ More than one activity for passive activity purposes*
*See attached statement for additional information.

For IRS Use Only

911261 12-30-19   LHA   **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**   www.irs.gov/Form1065   Schedule K-1 (Form 1065) 2019

6

CONFIDENTIAL

ALECTO_00027420
JA2627

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

=====================================================================================

SCHEDULE K-1              ALTERNATIVE MINIMUM TAX, ADJUSTED
                          GAIN OR LOSS, BOX 17, CODE B

-------------------------------------------------------------------------------------

|                                        |                              | SUBJECT TO SPECIAL |        |
| DESCRIPTION                            | PARTNER FILING INSTRUCTIONS  | RATES              | AMOUNT |
|----------------------------------------|------------------------------|--------------------|--------|
| ORDINARY GAIN (LOSS)                   | SEE FORM 6251 INSTRUCTIONS   |                    | -52.   |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B  |                              |                    | -52.   |


=====================================================================================

SCHEDULE K-1           NONDEDUCTIBLE EXPENSES, BOX 18, CODE C

-------------------------------------------------------------------------------------

| DESCRIPTION                            | PARTNER FILING INSTRUCTIONS   | AMOUNT  |
|----------------------------------------|-------------------------------|---------|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION      | 271.    |
| OFFICER'S LIFE INSURANCE               |                               | 1,291.  |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH   | SEE IRS SCH. K-1 INSTRUCTIONS | 6,387.  |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C  |                               | 7,949.  |

CONFIDENTIAL                                                    ALECTO_00027421
                                                                       **JA2628**

ALECTO HEALTHCARE SERVICES LLC                                                46-0829723

═══════════════════════════════════════════════════════════════════════════════════════

SCHEDULE K-1        SECTION 199A INFORMATION, BOX 20, CODE Z
───────────────────────────────────────────────────────────────────────────────────────

DESCRIPTION                                                                   AMOUNT
──────────                                                                    ──────

TRADE OR BUSINESS -
X - SSTB

  ORDINARY INCOME (LOSS)                                                      -13,788.
  SELF-EMPLOYMENT EARNINGS(LOSS)                                             -13,788.
  W-2 WAGES                                                                  166,945.
  UNADJUSTED BASIS OF ASSETS                                                     673.

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

  ORDINARY INCOME (LOSS)                                                    -106,135.
  SELF-EMPLOYMENT EARNINGS(LOSS)                                            -106,135.
  W-2 WAGES                                                                1,504,691.
  UNADJUSTED BASIS OF ASSETS                                                 733,028.

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

  ORDINARY INCOME (LOSS)                                                    -269,319.
  SELF-EMPLOYMENT EARNINGS(LOSS)                                            -269,319.
  W-2 WAGES                                                                  983,807.
  UNADJUSTED BASIS OF ASSETS                                                 654,487.

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

  ORDINARY INCOME (LOSS)                                                    -192,610.
  SELF-EMPLOYMENT EARNINGS(LOSS)                                            -192,610.
  W-2 WAGES                                                                1,210,822.
  UNADJUSTED BASIS OF ASSETS                                                 166,246.

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

  ORDINARY INCOME (LOSS)                                                  -1,881,022.
  SELF-EMPLOYMENT EARNINGS(LOSS)                                          -1,881,022.
  W-2 WAGES                                                                1,829,260.
  UNADJUSTED BASIS OF ASSETS                                                 644,107.

CONFIDENTIAL                                                  ALECTO_00027422
                                                                              **JA2629**

ALECTO HEALTHCARE SERVICES LLC                                      46-0829723

═══════════════════════════════════════════════════════════════════════════════

SCH K-1
─────────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════════

SCHEDULE K-1              OTHER INFORMATION, BOX 20, CODE AH
─────────────────────────────────────────────────────────────────────────────

DESCRIPTION                    PARTNER FILING INSTRUCTIONS         AMOUNT
───────────                    ─────────────────────────          ──────

BEGINNING TAX CAPITAL          PLEASE CONSULT YOUR TAX ADVISOR    -1,489,039.
ENDING TAX CAPITAL             PLEASE CONSULT YOUR TAX ADVISOR    -3,503,846.

PARTNER NUMBER 6

CONFIDENTIAL                                              ALECTO_00027423
                                                                   **JA2630**

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) | |
|---|---|---|

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -2,454,943. | |
| INTEREST INCOME | 11,615. | |
| SECTION 1231 GAIN (LOSS) | -96. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -2,443,424. |
| CHARITABLE CONTRIBUTIONS | -1,235. | |
| OTHER DEDUCTIONS | -9,359. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -10,594. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -2,454,018. |

| | | |
|---|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | | 96. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | | 80. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | | -387. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | | -165. |
| NONDEDUCTIBLE EXPENSES | | -7,949. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | 269,665. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | | 104,061. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | 1,873,154. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | | 189,579. |
| INTEREST EXPENSE | | -9,359. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | | 9,359. |
| SALARIES AND WAGES | | 7,470. |
| TOTAL OTHER INCREASES OR DECREASES | | 2,435,604. |

| SCHEDULE K-1 | ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS |
|---|---|

GAAP

CONFIDENTIAL

ALECTO_00027424
**JA2631**

**6**   Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 25 of 78

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

Name: **ALECTO HEALTHCARE SERVICES LLC**   46-0829723

For: **MATT WILLIAMS**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -106,135. | -106,135. | -269,319. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 8,499. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -96. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 240. | | 287. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -106,135. | -106,135. | -269,319. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -6,060. | | -169. |
| Adjusted gain or loss | | | -52. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 8,499. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,504,691. | |
| - Unadjusted basis of assets | | 733,028. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

6

**CONFIDENTIAL**

**ALECTO_00027425**
**JA2632**

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

Name: ALECTO HEALTHCARE SERVICES LLC          46-0829723

For: MATT WILLIAMS

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -269,319. | -192,610. | -192,610. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 3,108. | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -269,319. | -192,610. | -192,610. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 3,108. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 983,807. | | 1,210,822. |
| - Unadjusted basis of assets | 654,487. | | 166,246. |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

6

CONFIDENTIAL

ALECTO_00027426
**JA2633**

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**   **46-0829723**

For: **MATT WILLIAMS**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -1,873,091. | -1,881,022. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 3. | | |
| Dividends - Ordinary dividends | | | |
|     - Qualified dividends | | | |
|     - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
|     - Collectibles (28%) gain (loss) | | | |
|     - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -1,873,095. | -1,881,022. | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
|     - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
|     - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 3,835. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 3. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,829,260. | |
|     - Unadjusted basis of assets | | 644,107. | |
|     - REIT dividends | | | |
|     - Cooperative qualified business income | | | |
|     - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

6

10340904 146892 629917   2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL   **ALECTO_00027427**
**JA2634**

651119

| Schedule K-1<br>(Form 1065)<br>Department of the Treasury<br>Internal Revenue Service | **2019**<br>For calendar year 2019, or tax year | ☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123 |
|---|---|---|

**Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

| | beginning | ending |
|---|---|---|

**Partner's Share of Income, Deductions, Credits, etc.** ► See separate instructions.

| Part I  Information About the Partnership | |
|---|---|
| A  Partnership's employer identification number<br>46-0829723 | |
| B  Partnership's name, address, city, state, and ZIP code<br><br>ALECTO HEALTHCARE SERVICES LLC<br>16310 BAKE PARKWAY SUITE 200<br>IRVINE, CA   92618 | |
| C  IRS Center where partnership filed return ►<br>E-FILE | |
| D ☐ Check if this is a publicly traded partnership (PTP) | |

| Part II  Information About the Partner | |
|---|---|
| E  Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.) | |
| F  Name, address, city, state, and ZIP code for partner entered in E. See instructions.<br><br>STEVEN KAY<br><br>SAN FRANCISCO, CA   94105 | |

| G ☐ General partner or LLC<br>member-manager | ☒ Limited partner or other LLC<br>member |
|---|---|

| H1 ☒ Domestic partner | ☐ Foreign partner |
|---|---|

H2 ☐ If the partner is a disregarded entity (DE), enter the partner's:

TIN _____ Name _____

I1  What type of entity is this partner?   INDIVIDUAL

I2  If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

J  Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 5.0000000% | 5.0000000% |
| Loss | 5.0000000% | 5.0000000% |
| Capital | 5.0000000% | 5.0000000% |

Check if decrease is due to sale or exchange of partnership interest ☐

K  Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse ........ $ | 9,947,912. | $ 12,132,474. |
| Qualified nonrecourse<br>financing ........ $ | 880,539. | $ 0. |
| Recourse ........ $ | 0. | $ 0. |

☐ Check this box if Item K includes liability amounts from lower tier partnerships.

| L | Partner's Capital Account Analysis |
|---|---|

SEE STATEMENT

| Beginning capital account | $ | 488,857. |
|---|---|---|
| Capital contributed during the year | $ | 447,224. |
| Current year net income (loss) | $ | -2,454,019. |
| Other increase (decrease) (attach explanation) | $ | 2,435,604. |
| Withdrawals & distributions | $( | ) |
| Ending capital account | $ | 917,666. |

M  Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No  If "Yes," attach statement. See instructions.

N  Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning ........ $ _____
Ending ........ $ _____

**Right column (Part III):**

| 1 Ordinary business income (loss)<br>-2,454,942. | 15 Credits |
|---|---|
| 2 Net rental real estate income (loss) | |
| 3 Other net rental income (loss) | 16 Foreign transactions |
| 4a Guaranteed payments for services | |
| 4b Guaranteed payments for capital | |
| 4c Total guaranteed payments | |
| 5 Interest income<br>11,612. | 17 Alternative min tax (AMT) items<br>A  -2,391.<br>B*  -51. |
| 6a Ordinary dividends | |
| 6b Qualified dividends | 18 Tax-exempt income and<br>nondeductible expenses<br>C*  STMT |
| 6c Dividend equivalents | |
| 7 Royalties | 19 Distributions |
| 8 Net short-term capital gain (loss) | 20 Other information<br>A  11,612. |
| 9a Net long-term capital gain (loss) | Z  *  STMT<br>AH  *  STMT |
| 9b Collectibles (28%) gain (loss) | |
| 9c Unrecaptured section 1250 gain | |
| 10 Net section 1231 gain (loss)<br>-96. | |
| 11 Other income (loss) | |
| 12 Section 179 deduction | |
| 13 Other deductions<br>A  1,234.<br>K  9,359. | |
| 14 Self-employment earnings (loss)<br>A  0. | |

21 ☐ More than one activity for at-risk purposes*
22 ☐ More than one activity for passive activity purposes*
*See attached statement for additional information.

For IRS Use Only

911261 12-30-19  LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**        www.irs.gov/Form1065        Schedule K-1 (Form 1065) 2019

7

CONFIDENTIAL

ALECTO_00027428
**JA2635**

Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 29 of 78

ALECTO HEALTHCARE SERVICES LLC                                                46-0829723

| SCHEDULE K-1 | ALTERNATIVE MINIMUM TAX, ADJUSTED<br>GAIN OR LOSS, BOX 17, CODE B |

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | SUBJECT TO<br>SPECIAL<br>RATES | AMOUNT |
|---|---|---|---|
| ORDINARY GAIN (LOSS) | SEE FORM 6251 INSTRUCTIONS | | -51. |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B | | | -51. |

| SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES, BOX 18, CODE C |

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| EXCLUDED MEALS AND<br>ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION | 270. |
| OFFICER'S LIFE INSURANCE | | 1,292. |
| NONDEDUCTIBLE EXPENSES -<br>PASSTHROUGH | SEE IRS SCH. K-1 INSTRUCTIONS | 6,388. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C | | 7,950. |

CONFIDENTIAL

ALECTO_00027429
**JA2636**

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

---

SCHEDULE K-1       SECTION 199A INFORMATION, BOX 20, CODE Z

---

| DESCRIPTION | AMOUNT |
|---|---|
| TRADE OR BUSINESS -<br>X - SSTB | |
| ORDINARY INCOME (LOSS) | -13,788. |
| W-2 WAGES | 166,945. |
| UNADJUSTED BASIS OF ASSETS | 673. |
| PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A | |
| ORDINARY INCOME (LOSS) | -106,135. |
| W-2 WAGES | 1,504,691. |
| UNADJUSTED BASIS OF ASSETS | 733,028. |
| PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC - | |
| ORDINARY INCOME (LOSS) | -269,318. |
| W-2 WAGES | 983,807. |
| UNADJUSTED BASIS OF ASSETS | 654,488. |
| PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A | |
| ORDINARY INCOME (LOSS) | -192,609. |
| W-2 WAGES | 1,210,823. |
| UNADJUSTED BASIS OF ASSETS | 166,246. |
| PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL | |
| ORDINARY INCOME (LOSS) | -1,881,021. |
| W-2 WAGES | 1,829,260. |
| UNADJUSTED BASIS OF ASSETS | 644,106. |

CONFIDENTIAL                                              ALECTO_00027430
                                                                     **JA2637**

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

═══════════════════════════════════════════════════════════════════════════════

SCH K-1

───────────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════════

SCHEDULE K-1              OTHER INFORMATION, BOX 20, CODE AH

───────────────────────────────────────────────────────────────────────────────

DESCRIPTION                    PARTNER FILING INSTRUCTIONS          AMOUNT
─────────────                  ───────────────────────────          ──────

BEGINNING TAX CAPITAL          PLEASE CONSULT YOUR TAX ADVISOR    -1,676,579.
ENDING TAX CAPITAL             PLEASE CONSULT YOUR TAX ADVISOR    -3,691,386.

PARTNER NUMBER 7

CONFIDENTIAL                                                    ALECTO_00027431
                                                                      JA2638

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) | | |
|---|---|---|---|

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -2,454,942. | |
| INTEREST INCOME | 11,612. | |
| SECTION 1231 GAIN (LOSS) | -96. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -2,443,426. |
| CHARITABLE CONTRIBUTIONS | -1,234. | |
| OTHER DEDUCTIONS | -9,359. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -10,593. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -2,454,019. |

| | |
|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 96. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 80. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -386. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -166. |
| NONDEDUCTIBLE EXPENSES | -7,950. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 269,666. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 104,061. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 1,873,153. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 189,580. |
| INTEREST EXPENSE | -9,359. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 9,359. |
| SALARIES AND WAGES | 7,470. |
| TOTAL OTHER INCREASES OR DECREASES | 2,435,604. |

| SCHEDULE K-1 | ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS |
|---|---|

GAAP

CONFIDENTIAL                                              ALECTO_00027432
                                                                **JA2639**

**7**   Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 33 of 78

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____

Name: **ALECTO HEALTHCARE SERVICES LLC**                         46-0829723

For: **STEVEN KAY**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -106,135. | -106,135. | -269,318. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 8,498. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -96. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 240. | | 287. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -6,059. | | -168. |
| Adjusted gain or loss | | | -51. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 8,498. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,504,691. | |
| - Unadjusted basis of assets | | 733,028. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

7

CONFIDENTIAL

**ALECTO_00027433**
**JA2640**

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

| Name: **ALECTO HEALTHCARE SERVICES LLC** | | | | | | | | | | 46-0829723 |
|---|---|---|---|---|---|---|---|---|---|---|
| For: **STEVEN KAY** | | | | | | | | | | |

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL | | | | |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC – ALE | | | | |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC – ALE | | | | |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -269,318. | -192,609. | -192,609. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 3,108. | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 3,108. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 983,807. | | 1,210,823. |
| - Unadjusted basis of assets | 654,488. | | 166,246. |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

7

2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027434
**JA2641**

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**
For: **STEVEN KAY**

46-0829723

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -1,873,092. | -1,881,021. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 2. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 3,836. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 2. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,829,260. | |
| - Unadjusted basis of assets | | 644,106. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20     1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

7

CONFIDENTIAL

ALECTO_00027435
JA2642

651119

| Schedule K-1 (Form 1065)<br>Department of the Treasury<br>Internal Revenue Service | **2019**<br>For calendar year 2019, or tax year | | Final K-1      Amended K-1      OMB No. 1545-0123 | |
|---|---|---|---|---|
| | | | **Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items** | |
| beginning ____  ending ____ | | | 1 Ordinary business income (loss)<br>-2,455,120. | 15 Credits |
| **Partner's Share of Income, Deductions, Credits, etc.** ▶ See separate instructions. | | | 2 Net rental real estate income (loss) | |
| **Part I   Information About the Partnership** | | | | 16 Foreign transactions |
| A  Partnership's employer identification number<br>46-0829723 | | | 3 Other net rental income (loss) | |
| B  Partnership's name, address, city, state, and ZIP code | | | 4a Guaranteed payments for services | |
| ALECTO HEALTHCARE SERVICES LLC<br>16310 BAKE PARKWAY SUITE 200<br>IRVINE, CA   92618 | | | 4b Guaranteed payments for capital | |
| | | | 4c Total guaranteed payments | |
| C  IRS Center where partnership filed return ▶<br>E-FILE | | | | 17 Alternative min tax (AMT) items |
| | | | 5 Interest income<br>11,616. | A   -2,393.<br>B*   -52. |
| D [ ]  Check if this is a publicly traded partnership (PTP) | | | | |
| **Part II   Information About the Partner** | | | 6a Ordinary dividends | |
| E  Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.) | | | | 18 Tax-exempt income and nondeductible expenses |
| | | | 6b Qualified dividends | C*   STMT |
| F  Name, address, city, state, and ZIP code for partner entered in E. See instructions. | | | | |
| | | | 6c Dividend equivalents | |
| HAYES IRREVOCABLE TRUST | | | | |
| | | | 7 Royalties | 19 Distributions |
| DALLAS, TX   75225 | | | | |
| G [ ]  General partner or LLC member-manager   [X] Limited partner or other LLC member | | | 8 Net short-term capital gain (loss) | |
| | | | | 20 Other information |
| H1 [X] Domestic partner   [ ] Foreign partner | | | 9a Net long-term capital gain (loss) | A   11,616. |
| H2 [ ]  If the partner is a disregarded entity (DE), enter the partner's: | | | | Z  *   STMT |
| TIN ____  Name ____ | | | 9b Collectibles (28%) gain (loss) | AH  *   STMT |
| I1  What type of entity is this partner?  TRUST | | | | |
| I2  If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here [ ] | | | 9c Unrecaptured section 1250 gain | |
| J  Partner's share of profit, loss, and capital: | | | | |
| | Beginning | Ending | 10 Net section 1231 gain (loss)<br>-96. | |
| Profit | 5.0000000% | 5.0000000% | | |
| Loss | 5.0000000% | 5.0000000% | 11 Other income (loss) | |
| Capital | 5.0000000% | 5.0000000% | | |
| Check if decrease is due to sale or exchange of partnership interest [ ] | | | | |
| K  Partner's share of liabilities: | | | | |
| | Beginning | Ending | 12 Section 179 deduction | |
| Nonrecourse ....... $ | 9,947,913. | $ 12,132,473. | | |
| Qualified nonrecourse financing ....... $ | 880,538. | $ 0. | 13 Other deductions<br>A   1,235. | |
| Recourse ......... $ | 0. | $ 0. | K   9,361. | |
| Check this box if Item K includes liability amounts from lower tier partnerships. [ ] | | | | |
| L  **Partner's Capital Account Analysis**<br>SEE STATEMENT | | | 14 Self-employment earnings (loss) | |
| Beginning capital account ......... $ | | 519,434. | | |
| Capital contributed during the year ......... $ | | 447,224. | 21 [ ] More than one activity for at-risk purposes* | |
| Current year net income (loss) ......... $ | | -2,454,196. | 22 [ ] More than one activity for passive activity purposes* | |
| Other increase (decrease) (attach explanation) ..... $ | | 2,435,782. | *See attached statement for additional information. | |
| Withdrawals & distributions ......... $( | | ) | | |
| Ending capital account ......... $ | | 948,244. | | |
| M  Did the partner contribute property with a built-in gain or loss?<br>[ ] Yes   [X] No  If "Yes," attach statement. See instructions. | | | | |
| N  Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)<br>Beginning ......... $ ____<br>Ending ......... $ ____ | | | | |

911261 12-30-19  LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**      www.irs.gov/Form1065      Schedule K-1 (Form 1065) 2019

8

CONFIDENTIAL

ALECTO_00027436
**JA2643**

ALECTO HEALTHCARE SERVICES LLC                                                46-0829723

| SCHEDULE K-1 | ALTERNATIVE MINIMUM TAX, ADJUSTED GAIN OR LOSS, BOX 17, CODE B | | |

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | SUBJECT TO SPECIAL RATES | AMOUNT |
|---|---|---|---|
| ORDINARY GAIN (LOSS) | SEE FORM 6251 INSTRUCTIONS | | -52. |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B | | | -52. |

| SCHEDULE K-1 | NONDEDUCTIBLE EXPENSES, BOX 18, CODE C | |

| DESCRIPTION | PARTNER FILING INSTRUCTIONS | AMOUNT |
|---|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION | 270. |
| OFFICER'S LIFE INSURANCE | | 1,292. |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH | SEE IRS SCH. K-1 INSTRUCTIONS | 6,387. |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C | | 7,949. |

CONFIDENTIAL                                          ALECTO_00027437
                                                                    **JA2644**

ALECTO HEALTHCARE SERVICES LLC                                           46-0829723

| SCHEDULE K-1 | SECTION 199A INFORMATION, BOX 20, CODE Z |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|

TRADE OR BUSINESS -
X - SSTB

| ORDINARY INCOME (LOSS) | -13,789. |
| W-2 WAGES | 166,957. |
| UNADJUSTED BASIS OF ASSETS | 674. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

| ORDINARY INCOME (LOSS) | -106,142. |
| W-2 WAGES | 1,504,800. |
| UNADJUSTED BASIS OF ASSETS | 733,081. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

| ORDINARY INCOME (LOSS) | -269,338. |
| W-2 WAGES | 983,878. |
| UNADJUSTED BASIS OF ASSETS | 654,535. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

| ORDINARY INCOME (LOSS) | -192,624. |
| W-2 WAGES | 1,210,910. |
| UNADJUSTED BASIS OF ASSETS | 166,258. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

| ORDINARY INCOME (LOSS) | -1,881,158. |
| W-2 WAGES | 1,829,392. |
| UNADJUSTED BASIS OF ASSETS | 644,153. |

CONFIDENTIAL

ALECTO_00027438
JA2645

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

═══════════════════════════════════════════════════════════════════════════

SCH K-1
───────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════

SCHEDULE K-1            OTHER INFORMATION, BOX 20, CODE AH
───────────────────────────────────────────────────────────────────────────

DESCRIPTION                   PARTNER FILING INSTRUCTIONS          AMOUNT
─────────────                 ───────────────────────────         ──────────

BEGINNING TAX CAPITAL         PLEASE CONSULT YOUR TAX ADVISOR    -1,603,982.
ENDING TAX CAPITAL            PLEASE CONSULT YOUR TAX ADVISOR    -3,618,789.

CONFIDENTIAL                                                ALECTO_00027439
                                                                 JA2646

ALECTO HEALTHCARE SERVICES LLC                                      46-0829723

---

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND<br>OTHER INCREASES(DECREASES) | |
|---|---|---|

---

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -2,455,120. | |
| INTEREST INCOME | 11,616. | |
| SECTION 1231 GAIN (LOSS) | -96. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -2,443,600. |
| CHARITABLE CONTRIBUTIONS | -1,235. | |
| OTHER DEDUCTIONS | -9,361. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -10,596. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -2,454,196. |

| | |
|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 96. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON<br>BOOKS | 80. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -387. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -165. |
| NONDEDUCTIBLE EXPENSES | -7,949. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 269,685. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 104,069. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 1,873,290. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 189,593. |
| INTEREST EXPENSE | -9,361. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 9,361. |
| SALARIES AND WAGES | 7,470. |
| TOTAL OTHER INCREASES OR DECREASES | 2,435,782. |

---

| SCHEDULE K-1 | ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS |
|---|---|

GAAP

CONFIDENTIAL

ALECTO_00027440
**JA2647**

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**                                         46-0829723

For: **HAYES IRREVOCABLE TRUST**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE | | | |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE | | | |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL | | | |
| | | | | | | Activity - 1 | Activity - 1 | Activity - 4 |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -106,142. | -106,142. | -269,338. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 8,499. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -96. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 240. | | 287. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -6,060. | | -169. |
| Adjusted gain or loss | | | -52. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 8,499. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,504,800. | |
| - Unadjusted basis of assets | | 733,081. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

8

**CONFIDENTIAL**

ALECTO_00027441
**JA2648**

**Schedule of Activities**

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**                46-0829723

For: **HAYES IRREVOCABLE TRUST**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code | Description | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL | | | |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE | | | |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE | | | |
| | | | | | | | Activity - 4 | Activity - 5 | Activity - 5 |
| Ordinary business income (loss) | | | | | | | -269,338. | -192,624. | -192,624. |
| Net rental real estate income (loss) | | | | | | | | | |
| Other net rental income (loss) | | | | | | | | | |
| Interest income | | | | | | | | 3,109. | |
| Dividends  - Ordinary dividends | | | | | | | | | |
| - Qualified dividends | | | | | | | | | |
| - Dividend equivalents (1065 only) | | | | | | | | | |
| Royalties | | | | | | | | | |
| Net short-term capital gain (loss) | | | | | | | | | |
| Net long-term capital gain (loss) | | | | | | | | | |
| - Collectibles (28%) gain (loss) | | | | | | | | | |
| - Unrecaptured Section 1250 gain | | | | | | | | | |
| Net section 1231 gain (loss) | | | | | | | | | |
| Other portfolio income | | | | | | | | | |
| Section 1256 contracts and straddles | | | | | | | | | |
| Other income | | | | | | | | | |
| Section 179 deduction | | | | | | | | | |
| Charitable contributions | | | | | | | | | |
| Portfolio deductions | | | | | | | | | |
| Investment interest expense | | | | | | | | | |
| Section 59(e)(2) expenditures | | | | | | | | | |
| Excess business interest expense | | | | | | | | | |
| Other deductions | | | | | | | | | |
| Net earnings from self-employment | | | | | | | | | |
| Gross farming or fishing income | | | | | | | | | |
| Gross nonfarm income | | | | | | | | | |
| LIH credit - Section 42(j)(5) partnerships | | | | | | | | | |
| - Other | | | | | | | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | | | | | | | |
| Other rental credits | | | | | | | | | |
| Credits related to other rental activities | | | | | | | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | | | | | | | |
| - Other | | | | | | | | | |
| Other credits | | | | | | | | | |
| Post-1986 depreciation adjustment | | | | | | | | | |
| Adjusted gain or loss | | | | | | | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | | | | | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | | | | | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | | | | | | | |
| Depletion (other than oil and gas) | | | | | | | | | |
| Oil, gas and geothermal properties - gross income | | | | | | | | | |
| Oil, gas and geothermal properties - deductions | | | | | | | | | |
| Other AMT items | | | | | | | | | |
| Investment income | | | | | | | | 3,109. | |
| Investment expenses | | | | | | | | | |
| Section 199A - W-2 wages | | | | | | | 983,878. | | 1,210,910. |
| - Unadjusted basis of assets | | | | | | | 654,535. | | 166,258. |
| - REIT dividends | | | | | | | | | |
| - Cooperative qualified business income | | | | | | | | | |
| - Cooperative W-2 wages | | | | | | | | | |

925001 02-10-20    1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

8

**CONFIDENTIAL**

ALECTO_00027442
**JA2649**

**8**   Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 43 of 78

## Schedule of Activities

For calendar year 2019, or tax year beginning _____, 2019, and ending _____

Name: **ALECTO HEALTHCARE SERVICES LLC**                                          46-0829723

For: **HAYES IRREVOCABLE TRUST**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description |
|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -1,873,227. | -1,881,158. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 3. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 3,836. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 3. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,829,392. | |
| - Unadjusted basis of assets | | 644,153. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

8

CONFIDENTIAL

ALECTO_00027443
**JA2650**

9          Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 44 of 78

651119

| Schedule K-1 (Form 1065) Department of the Treasury Internal Revenue Service | **2019** For calendar year 2019, or tax year | [X] Final K-1 | [ ] Amended K-1 | OMB No. 1545-0123 |
|---|---|---|---|---|

**Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

beginning _____ ending _____
**Partner's Share of Income, Deductions, Credits, etc.**  ▶ **See separate instructions.**

| Part I   Information About the Partnership | | | |
|---|---|---|---|
| **A** Partnership's employer identification number | 1 Ordinary business income (loss) | 15 Credits | |
| 46-0829723 | -2,454,944. | | |
| **B** Partnership's name, address, city, state, and ZIP code | 2 Net rental real estate income (loss) | | |
| | | 16 Foreign transactions | |
| ALECTO HEALTHCARE SERVICES LLC | 3 Other net rental income (loss) | | |
| 16310 BAKE PARKWAY SUITE 200 | | | |
| IRVINE, CA  92618 | 4a Guaranteed payments for services | | |
| **C** IRS Center where partnership filed return ▶ | | | |
| E-FILE | 4b Guaranteed payments for capital | | |
| **D** [ ] Check if this is a publicly traded partnership (PTP) | | | |
| | 4c Total guaranteed payments | | |
| | | 17 Alternative min tax (AMT) items | |
| | 5 Interest income | A | -2,393. |
| | 11,612. | B* | -51. |

| Part II   Information About the Partner | 6a Ordinary dividends | | |
|---|---|---|---|
| **E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.) | | 18 Tax-exempt income and nondeductible expenses | |
| | 6b Qualified dividends | C* | STMT |
| **F** Name, address, city, state, and ZIP code for partner entered in E. See instructions. | 6c Dividend equivalents | | |
| AMAN DHUPER | | | |
| | 7 Royalties | 19 Distributions | |
| RANCHO CUCAMONGA, CA   91739 | | | |
| **G** [ ] General partner or LLC member-manager  [X] Limited partner or other LLC member | 8 Net short-term capital gain (loss) | | |
| | | 20 Other information | |
| **H1** [X] Domestic partner  [ ] Foreign partner | 9a Net long-term capital gain (loss) | A | 11,612. |
| **H2** [ ] If the partner is a disregarded entity (DE), enter the partner's: | | Z | * STMT |
| TIN _____ Name _____ | 9b Collectibles (28%) gain (loss) | AH | * STMT |
| **I1** What type of entity is this partner?  INDIVIDUAL | 9c Unrecaptured section 1250 gain | | |
| **I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here [ ] | | | |
| **J** Partner's share of profit, loss, and capital: | 10 Net section 1231 gain (loss) | | |
| | Beginning | Ending | -96. |
| Profit | 5.0000000% | 0.0000000% | 11 Other income (loss) |
| Loss | 5.0000000% | 0.0000000% | |
| Capital | 5.0000000% | 0.0000000% | |
| Check if decrease is due to sale or exchange of partnership interest [ ] | | | |
| **K** Partner's share of liabilities: | 12 Section 179 deduction | | |
| | Beginning | Ending | |
| Nonrecourse ........ $ 9,947,912. | $ 0. | 13 Other deductions | |
| Qualified nonrecourse financing ........ $ 880,539. | $ 0. | A | 1,234. |
| Recourse ........ $ 0. | $ 0. | K | 9,359. |
| [ ] Check this box if Item K includes liability amounts from lower tier partnerships. | | | |

| **L**   Partner's Capital Account Analysis | | 14 Self-employment earnings (loss) | |
|---|---|---|---|
| SEE STATEMENT | | A | -2,454,946. |
| Beginning capital account ........ $ | 482,280. | | |
| Capital contributed during the year ........ $ | 447,224. | **21** [ ] More than one activity for at-risk purposes* | |
| Current year net income (loss) ........ $ | -2,454,021. | **22** [ ] More than one activity for passive activity purposes* | |
| Other increase (decrease) (attach explanation) ........ $ | 2,435,604. | *See attached statement for additional information. | |
| Withdrawals & distributions ........ $ ( | 911,087.) | | |
| Ending capital account ........ $ | 0. | | |
| **M** Did the partner contribute property with a built-in gain or loss? [ ] Yes  [X] No  If "Yes," attach statement. See instructions. | | | |
| **N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss) | | | |
| Beginning ........ $ _____ | | | |
| Ending ........ $ _____ | | | |

For IRS Use Only

911261 12-30-19  LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**    www.irs.gov/Form1065    **Schedule K-1 (Form 1065) 2019**

9

**CONFIDENTIAL**

ALECTO_00027444
**JA2651**

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

====================================================================================

SCHEDULE K-1              ALTERNATIVE MINIMUM TAX, ADJUSTED
                          GAIN OR LOSS, BOX 17, CODE B

------------------------------------------------------------------------------------

|                                       |                              | SUBJECT TO SPECIAL |          |
| DESCRIPTION                           | PARTNER FILING INSTRUCTIONS  | RATES              | AMOUNT   |
|---------------------------------------|------------------------------|--------------------|----------|
| ORDINARY GAIN (LOSS)                  | SEE FORM 6251 INSTRUCTIONS   |                    | -51.     |
| TOTAL TO SCHEDULE K-1, BOX 17, CODE B |                              |                    | -51.     |


====================================================================================

SCHEDULE K-1              NONDEDUCTIBLE EXPENSES, BOX 18, CODE C

------------------------------------------------------------------------------------

| DESCRIPTION                             | PARTNER FILING INSTRUCTIONS     | AMOUNT  |
|-----------------------------------------|---------------------------------|---------|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | NONDEDUCTIBLE PORTION         | 270.    |
| OFFICER'S LIFE INSURANCE                 |                                 | 1,292.  |
| NONDEDUCTIBLE EXPENSES - PASSTHROUGH     | SEE IRS SCH. K-1 INSTRUCTIONS   | 6,388.  |
| TOTAL TO SCHEDULE K-1, BOX 18, CODE C    |                                 | 7,950.  |

PARTNER NUMBER 9

CONFIDENTIAL

ALECTO_00027445
**JA2652**

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

SCHEDULE K-1        SECTION 199A INFORMATION, BOX 20, CODE Z

| DESCRIPTION | AMOUNT |
|---|---|

TRADE OR BUSINESS -
X - SSTB

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -13,788. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -13,788. |
| W-2 WAGES | 166,945. |
| UNADJUSTED BASIS OF ASSETS | 673. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES LOS ANGELES - A

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -106,135. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -106,135. |
| W-2 WAGES | 1,504,691. |
| UNADJUSTED BASIS OF ASSETS | 733,028. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES FAIRMONT LLC -

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -269,319. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -269,319. |
| W-2 WAGES | 983,807. |
| UNADJUSTED BASIS OF ASSETS | 654,488. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES SHERMAN LLC - A

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -192,610. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -192,610. |
| W-2 WAGES | 1,210,823. |
| UNADJUSTED BASIS OF ASSETS | 166,246. |

PASSTHROUGH - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LL

| | |
|---|---|
| ORDINARY INCOME (LOSS) | -1,881,022. |
| SELF-EMPLOYMENT EARNINGS(LOSS) | -1,881,022. |
| W-2 WAGES | 1,829,260. |
| UNADJUSTED BASIS OF ASSETS | 644,106. |

CONFIDENTIAL                                              ALECTO_00027446
                                                          JA2653

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

═══════════════════════════════════════════════════════════════════════════════

SCH K-1
───────────────────────────────────────────────────────────────────────────────

THE SECTION 199A AMOUNTS TO BE USED IN THE CALCULATION OF QUALIFIED BUSINESS
INCOME DEDUCTION ON YOUR 1040/1041 RETURN ARE REPORTED ON LINE 20, UNDER CODE
Z. PLEASE CONSULT YOUR TAX ADVISOR REGARDING THE CALCULATION OF THE QUALIFIED
BUSINESS INCOME DEDUCTION, INCLUDING THE POSSIBLE AGGREGATIONS AND LIMITATIONS
THAT MAY APPLY AND THE FILING OF THE 1.199A-4(C)(2)(I) ANNUAL DISCLOSURE
STATEMENT.

═══════════════════════════════════════════════════════════════════════════════

SCHEDULE K-1             OTHER INFORMATION, BOX 20, CODE AH
───────────────────────────────────────────────────────────────────────────────

DESCRIPTION                    PARTNER FILING INSTRUCTIONS        AMOUNT
─────────────                  ───────────────────────────       ──────

BEGINNING TAX CAPITAL          PLEASE CONSULT YOUR TAX ADVISOR    -1,588,886.
ENDING TAX CAPITAL             PLEASE CONSULT YOUR TAX ADVISOR    -3,603,693.


PARTNER NUMBER 9

CONFIDENTIAL                                         ALECTO_00027447
                                                                   JA2654

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

| SCHEDULE K-1 | CURRENT YEAR NET INCOME (LOSS) AND OTHER INCREASES(DECREASES) | |
|---|---|---|

| DESCRIPTION | AMOUNT | TOTALS |
|---|---|---|
| ORDINARY INCOME (LOSS) | -2,454,944. | |
| INTEREST INCOME | 11,612. | |
| SECTION 1231 GAIN (LOSS) | -96. | |
| SCHEDULE K-1 INCOME SUBTOTAL | | -2,443,428. |
| CHARITABLE CONTRIBUTIONS | -1,234. | |
| OTHER DEDUCTIONS | -9,359. | |
| SCHEDULE K-1 DEDUCTIONS SUBTOTAL | | -10,593. |
| NET INCOME (LOSS) PER SCHEDULE K-1 | | -2,454,021. |

| | |
|---|---|
| GAIN/LOSS ON BOOKS AND NOT ON RETURN | 96. |
| MISCELLANEOUS DEDUCTIONS ON RETURN AND NOT ON BOOKS | 80. |
| AMORTIZATION ON BOOKS AND NOT ON RETURN | -386. |
| DEPRECIATION ON BOOKS AND NOT ON RETURN | -166. |
| NONDEDUCTIBLE EXPENSES | -7,950. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 269,665. |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 104,061. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | 1,873,154. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 189,580. |
| INTEREST EXPENSE | -9,359. |
| OTHER BOOK / TAX EXPENSE DIFFERENCES | 9,359. |
| SALARIES AND WAGES | 7,470. |
| TOTAL OTHER INCREASES OR DECREASES | 2,435,604. |

| SCHEDULE K-1 | WITHDRAWALS AND DISTRIBUTIONS |
|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| TRANSFERRED CAPITAL | 911,087. |
| TOTAL TO SCHEDULE K-1, ITEM L, WITHDRAWALS AND DISTRIBUTIONS | 911,087. |

CONFIDENTIAL                          ALECTO_00027448
                                                      **JA2655**

ALECTO HEALTHCARE SERVICES LLC                                      46-0829723

SCHEDULE K-1         ITEM L. PARTNER'S CAPITAL ACCOUNT ANALYSIS

GAAP

CONFIDENTIAL

**9**   Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 50 of 78

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: ALECTO HEALTHCARE SERVICES LLC                                   46-0829723

For: AMAN DHUPER

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 1 | | | | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 1 | | | X | 8 | ALECTO HEALTHCARE SERVICES LOS ANGELES – ALE |
| | 4 | | | | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC – AL |

| | Activity - 1 | Activity - 1 | Activity - 4 |
|---|---|---|---|
| Ordinary business income (loss) | -106,135. | -106,135. | -269,319. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 8,498. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | -96. |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | 240. | | 287. |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -106,135. | -106,135. | -269,319. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | -6,060. | | -168. |
| Adjusted gain or loss | | | -51. |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 8,498. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,504,691. | |
| - Unadjusted basis of assets | | 733,028. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

9

CONFIDENTIAL

ALECTO_00027450
JA2657

**9**    Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 51 of 78

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**                                        46-0829723

For: **AMAN DHUPER**

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code * | Description |
|---|---|---|---|---|---|---|
| | 4 | | | X | 8 | ALECTO HEALTHCARE SERVICES FAIRMONT LLC - AL |
| | 5 | | | | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |
| | 5 | | | X | 8 | ALECTO HEALTHCARE SERVICES SHERMAN LLC - ALE |

| | Activity - 4 | Activity - 5 | Activity - 5 |
|---|---|---|---|
| Ordinary business income (loss) | -269,319. | -192,610. | -192,610. |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | | 3,108. | |
| Dividends - Ordinary dividends | | | |
|   - Qualified dividends | | | |
|   - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
|   - Collectibles (28%) gain (loss) | | | |
|   - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -269,319. | -192,610. | -192,610. |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
|   - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
|   - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | 3,108. | |
| Investment expenses | | | |
| Section 199A - W-2 wages | 983,807. | | 1,210,823. |
|   - Unadjusted basis of assets | 654,488. | | 166,246. |
|   - REIT dividends | | | |
|   - Cooperative qualified business income | | | |
|   - Cooperative W-2 wages | | | |

925001 02-10-20    1 - Single Family Residence  2 - Multi-Family Residence  3 - Vacation or Short-Term Rental  4 - Commercial  5 - Land  6 - Royalties  7 - Self-Rental  8 - Other

9

CONFIDENTIAL

**JA2658**

**9**   Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 52 of 78

## Schedule of Activities

For calendar year 2019, or tax year beginning _____ , 2019, and ending _____ .

Name: **ALECTO HEALTHCARE SERVICES LLC**

For: **AMAN DHUPER**

46-0829723

| Description of Activity | Activity Number | 100% Disposed | PTP | P/T 199A | Type Code* | Description | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 6 | | | | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | | |
| | 6 | | | X | 8 | ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | | |

| | Activity - 6 | Activity - 6 | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | -1,873,092. | -1,881,022. | |
| Net rental real estate income (loss) | | | |
| Other net rental income (loss) | | | |
| Interest income | 2. | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| - Dividend equivalents (1065 only) | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Excess business interest expense | | | |
| Other deductions | | | |
| Net earnings from self-employment | -1,873,094. | -1,881,022. | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | 3,835. | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | 2. | | |
| Investment expenses | | | |
| Section 199A - W-2 wages | | 1,829,260. | |
| - Unadjusted basis of assets | | 644,106. | |
| - REIT dividends | | | |
| - Cooperative qualified business income | | | |
| - Cooperative W-2 wages | | | |

925001 02-10-20   1 - Single Family Residence   2 - Multi-Family Residence   3 - Vacation or Short-Term Rental   4 - Commercial   5 - Land   6 - Royalties   7 - Self-Rental   8 - Other

9

10340904 146892 629917                    2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027452
**JA2659**

| Form **8308**<br>(Rev. September 2018)<br>Department of the Treasury<br>Internal Revenue Service | **Report of a Sale or Exchange of<br>Certain Partnership Interests**<br><br>▶ Go to www.irs.gov/Form8308 for the latest information. | | OMB No. 1545-0123 |
|---|---|---|---|
| Name of partnership | | Phone number | Employer identification number |
| ALECTO HEALTHCARE SERVICES LLC | | 323-932-5963 | 46-0829723 |

Number, street, and room or suite no. If a P.O. box, see instructions.

16310 BAKE PARKWAY SUITE 200

City or town, state or province, country, and ZIP or foreign postal code

IRVINE, CA   92618

**Part I**   **Transferor Information** (Beneficial owner of the partnership interest immediately before the transfer of that interest)

| Name | Identifying number |
|---|---|
| AMAN DHUPER | |

Number and street (including apt. no.)

City or town, state or province, country, and ZIP or foreign postal code

RANCHO CUCAMONGA, CA   91739

**Notice to Transferors:** *The information on this form has been supplied to the Internal Revenue Service. The transferor in a section 751(a) exchange is required to treat a portion of the gain realized from the exchange as ordinary income. For more details, see Pub. 541, Partnerships.*

**Statement by Transferor:** *The transferor in a section 751(a) exchange is required under Regulations section 1.751-1(a)(3) to attach a statement relating to the sale or exchange to his or her return.*

**Part II**   **Transferee Information** (Beneficial owner of the partnership interest immediately after the transfer of that interest)

| Name | Identifying number |
|---|---|
| LAXMAN REDDY | |

Number and street (including apt. no.)

5524 AMBER CIRCLE

City or town, state or province, country, and ZIP or foreign postal code

CALABASAS, CA   91302

**Part III**   Date of Sale or Exchange of Partnership Interest ▶   12/31/19

| Sign here only if you<br>are filing this form by<br>itself and not with<br>Form 1065 | Under penalties of perjury, I declare that I have examined this return, including accompanying attachments, and to the best of my knowledge<br>and belief, it is true, correct, and complete.<br><br>Signature of partnership representative or partner or limited liability company member | Date |
|---|---|---|

LHA<br>919971<br>04-01-19

Form **8308** (Rev. 9-2018)

9

CONFIDENTIAL

ALECTO_00027453<br>**JA2660**

# 2019 TAX RETURN FILING INSTRUCTIONS
WEST VIRGINIA FORM SPF-100

## FOR THE YEAR ENDING
December 31, 2019

**Prepared For:**

Alecto Healthcare Services LLC
16310 Bake Parkway Suite 200
Irvine, CA  92618

**Prepared By:**

Moss Adams LLP
2040 Main Street  Suite 900
Irvine, CA 92614

**To Be Signed and Dated By:**

Not applicable

**Amount of Tax:**

| | | |
|---|---|---|
| Total tax | $ | 0 |
| Less: payments and credits | $ | 0 |
| Plus other amount | $ | 0 |
| Plus interest and penalties | $ | 0 |
| No pmt required | $ | |

**Overpayment:**

Not applicable

**Make Check Payable To:**

Not applicable

**Mail Tax Return To:**

The West Virginia return has qualified for electronic filing. Please review your return for
completeness and accuracy.  We will then transmit your return electronically to the WV
Tax Dept.

**Forms to be Distributed to Partners:**

Enclosed are copies of Schedule K-1 to be distributed to the members.

**Return Must be Mailed On or Before:**

Return federal Form 8879-PE to us by September 15, 2020.

**Special Instructions:**

Do not mail the paper copy of the return to the WV Tax Dept.

**CONFIDENTIAL**

**ALECTO_00027454**
**JA2661**

| **SPF-100**<br>Rev 5-19   (1019) | West Virginia Income Tax Return<br>S Corporation & Partnership (Pass-Through Entity) | **2019** |
|---|---|---|

| TAX PERIOD BEGINNING<br>MM/DD/YYYY | 01012019 | ENDING<br>MM/DD/YYYY | 12312019 | EXTENDED<br>DUE DATE<br>MM/DD/YYYY | |
|---|---|---|---|---|---|

| ENTITY NAME | FEIN | WV ACCOUNT NUMBER |
|---|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 460829723 | |

| MAILING ADDRESS |
|---|
HAS THE PARTNERSHIP ELECTED OUT OF THE CENTRALIZED AUDIT REGIME UNDER IRC SECTION 6221(b)?

16310 BAKE PARKWAY SUITE 200

☐ Yes  ☒ NO   IF NO, PROVIDE A DESIGNATION OF THE STATE PARTNERSHIP REPRESENTATIVE (OR THE FEDERAL PARTNERSHIP REPRESENTATIVE)

| CITY | STATE | ZIP | REPRESENTATIVE FIRST NAME | LAST NAME |
|---|---|---|---|---|
| IRVINE | CA | 92618 | MIKE | SARRAO |

| STATE OF DOMICILE | NAICS | ☐ CHANGE OF ADDRESS | REPRESENTATIVE TIN | REPRESENTATIVE US PHONE |
|---|---|---|---|---|
| | 622000 | | | 9497833976 |

| CONTACT FIRST NAME | CONTACT LAST NAME | REPRESENTATIVE US ADDRESS |
|---|---|---|
| MIKE | SARRAO | 16310 BAKE PARKWAY SUITE 200 |

| CONTACT PHONE | CONTACT EMAIL | |
|---|---|---|
| 3239325963 | MSARRAO@SARRAOLAW.COM | IRVINE   CA  92618 |

**CHECK ALL APPLICABLE BOXES**

1) ENTITY TYPE: ☐ S-CORPORATION (INCLUDE 1120S)   ☒ PARTNERSHIP (INCLUDE 1065)

2) RETURN TYPE  ☒ ANNUAL   ☐ INITIAL   ☐ FINAL   ☐ AMENDED   ☐ OTHER

☐ 52/53 WEEK FILER   DAY OF WEEK ENDING _____   ☐ FISCAL

3) IF FINAL/SHORT/ INITIAL RETURN
☐ CEASED OPERATIONS IN WV   ☐ CHANGE OF OWNERSHIP   ☐ CHANGE OF FILING STATUS   ☐ MERGER
☐ SUCCESSOR   FEIN OF PREDECESSOR _____   ☐ TECHNICAL TERMINATIONS   ☐ OTHER _____

4) ACTIVITY DESCRIPTION:   ☐ WHOLLY WV ACTIVITY   ☒ MULTISTATE ACTIVITY

5) REPORTABLE ENTITIES (ALL ENTITIES MUST BE INCLUDED ON SCHEDULE C OR SCHEDULE D):
☒ ANY PTE YOU ARE A PARTNER, MEMBER, OR SHAREHOLDER DOING BUSINESS IN WV

☐ ANY ENTITY YOU OWN 80% OF VOTING STOCK   ☒ ANY DISREGARDED ENTITY

☐ ANY ENTITY THAT OWNED MORE THAN 80% OF YOUR STOCK   ☐ ANY CONTROLLED FOREIGN CORPORATION

| | | (A) INCOME | (B) WITHHOLDING |
|---|---|---|---|
| 6) | WV DISTRIBUTIVE INCOME OF RESIDENTS | .00 | |
| 7) | WV DISTRIBUTIVE INCOME OF NONRESIDENTS FILING ON A NONRESIDENT COMPOSITE TAX RETURN AND WITHHOLDING DUE **(SCHEDULE SP, COLUMN F)** | .00 | .00 |
| 8) | WV DISTRIBUTIVE INCOME OF NONRESIDENTS SUBJECT TO WV WITHHOLDING TAX THAT ARE NOT FILING A NONRESIDENT COMPOSITE TAX RETURN AND WITHHOLDING DUE **(SCHEDULE SP, COLUMN G)** | -18139981 .00 | .00 |
| 9) | WV DISTRIBUTIVE INCOME OF NONRESIDENTS WHO HAVE ATTESTED ON A NRW-4 THAT THEY WILL FILE AND PAY WV INCOME TAX DIRECTLY | .00 | |
| 10) | TOTAL WV INCOME (SUM OF LINE 6 THROUGH 9, MUST MATCH SCHEDULE A, LINE 13) | -18139981 .00 | |
| 11) | TOTAL WV WITHHOLDING DUE (LINE 7 PLUS LINE 8) | | .00 |

986861 10-10-19

CA54201901

CONFIDENTIAL

ALECTO_00027455
**JA2662**

| NAME ALECTO HEALTHCARE SERVICES LLC | | FEIN 460829723 | |
|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 11. Total WV-withholding due (from previous page) | 11 | | | .00 |
| 12. Prior year carryforward credit | 12 | | .00 | |
| 13. Estimated and extension payments | 13 | | .00 | |
| 14. Total Withholding credits (see instructions) | | | | |
| ☐ CHECK HERE IF WITHHOLDING IS FROM NRSR (NONRESIDENT SALE OF REAL ESTATE) | 14 | | .00 | |
| 15. Payments (add lines 12 through 14; must match total on Schedule C) | 15 | | | .00 |
| 16. Overpayment previously refunded or credited (amended return only) | 16 | | | .00 |
| 17. TOTAL PAYMENTS (subtract line 16 from line 15) | 17 | | | .00 |
| 18. Tax Due - If line 17 is smaller than line 11, enter amount owed. If line 17 is larger than line 11 skip to line 22 | 18 | | | .00 |
| 19. Interest for late payment | 19 | | | .00 |
| 20. Additions to tax for late filing and/or late payment | 20 | | | .00 |
| 21. Total Due with this return (add lines 18 through 20) Make check payable to West Virginia State Tax Department | 21 | | | 0 .00 |
| 22. Overpayment (line 17 less line 11) | 22 | | .00 | |
| 23. Amount of line 22 to be credited to next year's tax | 23 | | .00 | |
| 24. Amount to be refunded (line 22 minus line 23) | 24 | | .00 | |

**Direct Deposit** ☐ CHECKING   ☐ SAVINGS
of Refund

ROUTING NUMBER                                    ACCOUNT NUMBER

PLEASE REVIEW YOUR ACCOUNT INFORMATION FOR ACCURACY. INCORRECT ACCOUNT INFORMATION MAY RESULT IN A $15.00 RETURNED PAYMENT CHARGE.
PLEASE SEE INSTRUCTIONS FOR PAYMENT OPTIONS.

I authorize the State Tax Department to discuss my return with my preparer  ☒ YES  ☐ NO

Under penalty of perjury, I declare that I have examined this return, accompanying schedules, and statements, and to the best of my knowledge and belief, it is true, correct and complete.

MIKE SARRAO
_____        _____                              _____
Signature of Officer/Partner or Member        Print name of Officer/Partner or Member                              Date

MEMBER                                          MSARRAO@SARRAOLAW.COM                3239325963
Title                                          Email                                          Business Telephone #

DUSTIN MARCINIAK                DUSTIN MARCINIAK                        090420
Signature of paid preparer        Print name of Preparer                        Date

MOSS ADAMS LLP
IRVINE, CA 92614                DUSTIN.MARCINIAK@MOSSADA                9492214000
Firm's name and address                Preparer's Email                                Preparer's Telephone #

MAIL TO:  WEST VIRGINIA STATE TAX DEPARTMENT
          TAX ACCOUNT ADMINISTRATION DIVISION
          PO BOX 11751
          CHARLESTON WV 25324-1751

CA54201902

985862  10-10-19

CONFIDENTIAL                                    ALECTO_00027456
                                                                **JA2663**

| SCHEDULE A SPF-100 (1019) | Income/Loss Modifications to Federal Pass-Through Income | | 2019 |
|---|---|---|---|
| 1. Income/Loss: S corporation use Federal Form 1120S; Partnership use Federal Form 1065 | | 1 | -49100099 .00 |
| 2. Other income: S corporation use Federal Form 1120S, Schedule K; Partnership use Federal Form 1065, Schedule K ........................ SEE STATEMENT 1 | | 2 | 230353 .00 |
| 3. Other expenses/deductions: S corporation use Federal Form 1120S, Schedule K; Partnership use Federal Form 1065, Schedule K ............... SEE STATEMENT 2 | | 3 | 211883 .00 |
| 4. **TOTAL FEDERAL INCOME:** Add lines 1 and 2 minus line 3 - Attach federal return .............. | | 4 | -49081629 .00 |
| 5. Modifications Increasing Federal Income (Schedule B, Line 6) ..................................... | | 5 | .00 |
| 6. Modifications decreasing Federal Income (Schedule B, Line 12) ..................................... | | 6 | .00 |
| 7. Modified Federal S Corporation/Partnership income (sum of lines 4 plus line 5 minus line 6) ... Wholly WV Entity go to line 13. Multistate Entity continue to line 8. | | 7 | -49081629 .00 |
| 8. Total nonbusiness income allocated everywhere from Form SPF-100APT, Schedule A-1, Column 3, Line 9 | | 8 | .00 |
| 9. Income subject to apportionment (line 7 less line 8) ............................................ | | 9 | -49081629 .00 |
| 10. West Virginia apportionment factor (Round to 6 decimal places) from SPF-100APT Schedule B, Part 1, line 8; or, if applicable, from SPF-100APT Schedule B, Part 2, Column 3; or SPF-100APT Schedule B, Part 3, Column 3 ................ | 10  0.369588 | | |
| 11. Multistate S Corporation/Partnership's apportioned income (line 9 multiplied by line 10) ........ | | 11 | -18139981 .00 |
| 12. Nonbusiness income allocated to West Virginia. From Form SPF-100APT, Schedule A-2, line 9 | | 12 | .00 |
| 13. West Virginia income (wholly WV entities enter amount from line 7; multistate entities add lines 11 and line 12). **You must complete Schedule SP** ................................ | | 13 | -18139981 .00 |

986863 10-10-19



CA54201903

CONFIDENTIAL

ALECTO_00027457
JA2664

| SCHEDULE B SPF-100 (1019) | MODIFICATIONS TO FEDERAL S CORPORATION AND PARTNERSHIP INCOME | | 2019 |
|---|---|---|---|

**Adjustments** *Increasing*

| | | | |
|---|---|---|---|
| 1. Interest or dividend income on federal obligations which is exempt from federal tax but subject to state tax | 1 | | .00 |
| 2. Interest or dividend income on state and local bonds other than bonds from West Virginia sources | 2 | | .00 |
| 3. Interest on money borrowed to purchase bonds earning income exempt from West Virginia tax | 3 | | .00 |
| 4. Qualifying 402(e) lump-sum income NOT included in federal adjusted gross income but subject to state tax | 4 | | .00 |
| 5. Other: _____ | 5 | | .00 |
| **TOTAL INCREASING ADJUSTMENTS** | | | |
| 6. (Add lines 1 through 5; enter here and on Schedule A, line 5) | 6 | | .00 |

**Adjustments** *Decreasing*

| | | | |
|---|---|---|---|
| 7. Interest or dividends received on United States or West Virginia obligations included in federal adjusted gross income but exempt from state tax | 7 | | .00 |
| 8. Refunds of state and local income taxes received and reported as income to the IRS | 8 | | .00 |
| 9. Qualified Opportunity Zone business income | 9 | | .00 |
| 10. Other: _____ | 10 | | .00 |
| 11. Allowance for governmental obligations/obligations secured by residential property (Complete Schedule B-1) | 11 | | .00 |
| 12. **TOTAL DECREASING ADJUSTMENTS** (Add lines 7 through 11; enter here and on Schedule A, line 6) | 12 | | .00 |

**Schedule B-1**
**ALLOWANCE FOR GOVERNMENTAL OBLIGATIONS/OBLIGATIONS SECURED BY RESIDENTIAL PROPERTY (§11-24-6(f))**

| | | | |
|---|---|---|---|
| 1. Federal obligations and securities | 1 | | .00 |
| 2. Obligations of WV and political subdivisions of WV | 2 | | .00 |
| 3. Investments or loans primarily secured by mortgages or deeds of trust on residential property located in WV | 3 | | .00 |
| 4. Loans primarily secured by a lien or security agreement on a mobile home or double-wide located in WV | 4 | | .00 |
| 5. TOTAL (add lines 1 through 4) | 5 | | .00 |
| 6. Total assets as shown on Schedule L, Federal Form 1120S or Federal Form 1065 | 6 | | .00 |
| 7. Line 5 divided by line 6 (round to 6 decimal places) ___ 7 | | | |
| 8. **ADJUSTED INCOME.** (Add schedule A line 4 and Schedule B line 6. Subtract the sum of Schedule B lines 7 through 10) | 8 | -49081629 | .00 |
| 9. **ALLOWANCE** (line 7 x line 8, disregard sign) Enter here and on Schedule B line 11 | 9 | | .00 |

CA54201904

CONFIDENTIAL

ALECTO_00027458
JA2665

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| WV/SPF-100 | OTHER INCOME | STATEMENT 1 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| INTEREST INCOME | 232,271. |
| NET GAIN (LOSS) UNDER SECTION 1231 | -1,918. |
| TOTAL TO FORM SPF-100, PAGE 3, LINE 2 | 230,353. |

CONFIDENTIAL                                                          **ALECTO_00027459**
                                                                        **JA2666**

ALECTO HEALTHCARE SERVICES LLC                                      46-0829723

| WV/SPF-100 | OTHER EXPENSES/DEDUCTIONS | STATEMENT 2 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| CHARITABLE CONTRIBUTIONS | 24,690. |
| OTHER DEDUCTIONS | 187,193. |
| TOTAL TO FORM SPF-100, PAGE 3, LINE 3 | 211,883. |

CONFIDENTIAL

ALECTO_00027460
JA2667

# REPORTABLE ENTITIES & SCHEDULE OF TAX PAYMENTS

**SCHEDULE C** SPF-100 (1019)

**2019**

If the number of entities to be reported on Schedule C exceeds 10, you must import the spreadsheet through www.MyTaxes.WVtax.

| NAME OF ENTITY | FEIN | DATE OF PAYMENT | | | TYPE: WITHHOLDING, ESTIMATED, EXTENSION, OTHER PMTS OR PRIOR YEAR CREDIT | AMOUNT OF PAYMENT |
|---|---|---|---|---|---|---|
| | | MM | DD | YYYY | | |
| | | | | | | .00 |
| | | | | | | .00 |
| | | | | | | .00 |
| | | | | | | .00 |
| | | | | | | .00 |
| | | | | | | .00 |
| | | | | | | .00 |
| | | | | | | .00 |
| | | | | | | .00 |
| | | | | | | .00 |
| TOTAL (AMOUNT MUST AGREE WITH AMOUNT ON SPF-100, LINE 15) | | | | | | 0 .00 |

# SCHEDULE OF REPORTABLE ENTITIES

**SCHEDULE D** SPF-100

**2019**

If the number of entities to be reported on Schedule D exceeds 10, you must import the spreadsheet through www.MyTaxes.WVtax.
Disregarded entities will be filing under the parents West Virginia account number.

| NAME OF ENTITY | FEIN | PARENT NAME | PARENT FEIN | EXPLANATION |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

SEE STATEMENT 3

986865 10-10-19

CA54201905

CONFIDENTIAL

ALECTO_00027461
JA2668

ALECTO HEALTHCARE SERVICES LLC                                      46-0829723

| WV SCHEDULE D | | WEST VIRGINIA REPORTABLE ENTITIES | | STATEMENT 3 | |
|---|---|---|---|---|---|
| NAME OF ENTITY | FEIN | PARENT NAME | PARENT FEIN | EXPLANATION | |
| SURNISE REAL ES | 57-1226548 | | | | |
| SPAULDING MANAG | 27-4025215 | | | | |
| ALECTO HEALTHCA | 36-4743580 | | | | |
| ALECTO HEALTHCA | 00-0000000 | | | | |
| ACCELERON SERVI | 90-0987801 | | | | |
| UNITED MEDICAL | 38-3933131 | | | | |
| PLAZA MEDICAL O | 45-2698455 | | | | |
| ALECTO HEALTHCA | 90-0999512 | | | | |
| ALECTO HEALTHCA | 35-2507149 | | | | |
| ALECTO HEALTHCA | 37-1760423 | | | | |
| ALECTO HEALTHCA | 36-4857044 | | | | |

CONFIDENTIAL                                      ALECTO_00027462
                                                                 JA2669

# SPF-100APT ALLOCATION AND APPORTIONMENT 2019 FOR MULTISTATE BUSINESSES

REV 5-19 (1019)

**FEIN** 460829723

This form is used by entities that are subject to tax in more than one state to allocate and apportion their income to the State of West Virginia. Complete and attach to Form SPF-100. See instructions for information on APT Schedules A1, A2, and B, Part 1, 2, & 3.

### APT SCHEDULE A1 EVERYWHERE
### ALLOCATION OF NONBUSINESS INCOME FOR MULTISTATE BUSINESSES (§11-24-7)

| TYPES OF ALLOCABLE INCOME | Column 1 GROSS INCOME | | Column 2 RELATED EXPENSES | | Column 3 NET INCOME | |
|---|---|---|---|---|---|---|
| 1. Rents | | .00 | | .00 | | .00 |
| 2. Royalties | | .00 | | .00 | | .00 |
| 3. Capital gains/losses | | .00 | | .00 | | .00 |
| 4. Interest | | .00 | | .00 | | .00 |
| 5. Dividends | | .00 | | .00 | | .00 |
| 6. Patent/copyright royalties | | .00 | | .00 | | .00 |
| 7. Gain - sale of natural resources (IRC Sec. 631 (a)(b)) | | .00 | | .00 | | .00 |
| 8. Income from nonunitary sources reported on the schedule K-1 | | | | | | .00 |
| 9. Nonbusiness income/loss Sum of lines 1 through 8, of column 3. Enter total of Column on SPF-100 Schedule A, Line 8 | | | | | | .00 |

### APT SCHEDULE A2 WEST VIRGINIA
### ALLOCATION OF NONBUSINESS INCOME FOR MULTISTATE BUSINESSES (§11-24-7)

| TYPES OF ALLOCABLE INCOME | Column 1 GROSS INCOME | | Column 2 RELATED EXPENSES | | Column 3 NET INCOME | |
|---|---|---|---|---|---|---|
| 1. Rents | | .00 | | .00 | | .00 |
| 2. Royalties | | .00 | | .00 | | .00 |
| 3. Capital gains/losses | | .00 | | .00 | | .00 |
| 4. Interest | | .00 | | .00 | | .00 |
| 5. Dividends | | .00 | | .00 | | .00 |
| 6. Patent/copyright royalties | | .00 | | .00 | | .00 |
| 7. Gain - sale of natural resources (IRC Sec. 631 (a)(b)) | | .00 | | .00 | | .00 |
| 8. Income from nonunitary sources reported on the schedule K-1 | | | | | | .00 |
| 9. Net nonbusiness income/loss allocated to West Virginia Sum of lines 1 through 8, column 3. Enter on SPF-100 Schedule A, Line 12 | | | | | | .00 |

986901 10-10-19

CA54201907

CONFIDENTIAL

ALECTO_00027463
JA2670

(SPF-100APT) (1019)

FEIN

460829723

## FAILURE TO COMPLETE
## SPF-100APT, SCHEDULE B WILL RESULT
## IN 100% APPORTIONMENT TO WV

## APT SCHEDULE B
### APPORTIONMENT FACTORS FOR MULTISTATE S CORPORATIONS/PARTNERSHIPS (§11-24-7)

### PART 1 - REGULAR FACTOR

LINES 1 & 2: Divide Column 1 by Column 2 and enter six (6) digit decimal in column 3.
LINE 5: Column 1 - Enter line 3. Column 2 - line 3 less line 4. Divide column 1 by column 2 and enter six (6) digit decimal in column 3.

| | Column 1 West Virginia | Column 2 Everywhere | Column 3 Decimal Fraction (6 digits) |
|---|---|---|---|
| 1. Total Property | 171273341 .00 | 383725504 .00 | .446343 |
| 2. Total Payroll | 45717053 .00 | 116558683 .00 | .392223 |
| 3. Total sales | 82627296 .00 | 258296663 .00 | |
| 4. Sales to purchasers in a state where you are not taxable | | .00 | |
| 5. Adjusted sales | 82627296 .00 | 258296663 .00 | .319893 |
| 6. Adjusted sales (enter line 5 again) | 82627296 .00 | 258296663 .00 | .319893 |
| 7. **TOTAL:** add Column 3, Lines 1, 2, 5, and 6 | | | 1.478352 |
| 8. **APPORTIONMENT FACTOR** - Line 7 divided by the number 4, reduced by the number of factors showing zero in column 2, lines 1, 2, 5, and 6. Enter six (6) digits after the decimal. Enter on SPF-100, Schedule A, line 10 | | | .369588 |

### PART 2 - MOTOR CARRIER FACTOR (§11-24-7A)

Divide Column 1 by Column 2 and enter six (6) digit decimal in Column 3
Enter on SPF-100, Schedule A, line 10

| VEHICLE MILEAGE | Column 1 West Virginia | Column 2 Everywhere | Column 3 Decimal Fraction (6 digits) |
|---|---|---|---|
| | | | |

### PART 3 - FINANCIAL ORGANIZATION FACTOR (§11-24-7B)

Divide Column 1 by Column 2 and enter six (6) digit decimal in column 3
Enter on SPF-100, Schedule A, line 10

| GROSS RECEIPTS | Column 1 West Virginia | Column 2 Everywhere | Column 3 Decimal Fraction (6 digits) |
|---|---|---|---|
| | .00 | .00 | |

986903  10-10-19

CA54201908

CONFIDENTIAL

ALECTO_00027464
JA2671

Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 65 of 78

**SCHEDULE SP (1019) SPF-100**

# SUMMARY OF K-1 SHAREHOLDERS/PARTNERS OWNERSHIP AND COMPUTATION OF WITHHOLDING TAX — 2019

| | (A) SHAREHOLDER/ PARTNER NAME ◄ Mark if a single shareholder/ partner has 100% ownership | (B) SSN/FEIN | (C) CHECK ONLY ONE | | | | (D) PERCENTAGE OF OWNERSHIP to the sixth decimal place | (E) WV DISTRIBUTIVE INCOME | (F) TAX WITHHELD FOR NONRESIDENT COMPOSITE | (G) TAX WITHHELD FOR OTHER NONRESIDENT |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1 WV RESIDENT | 2 NONRESIDENT COMPOSITE | 3 NONRESIDENT | 4 NONRESIDENT NRW-4 | | | | |
| 1 | LAXMAN REDDY | | | | ☒ | | 0. 680000 | -12335187 | .00 | .00 |
| 2 | ROGER KRISSMAN | | | | ☒ | | 0. 100000 | -1813998 | .00 | .00 |
| 3 | MICHAEL J SARRA | | | | ☒ | | 0. 070000 | -1269799 | .00 | .00 |
| 4 | PANCH JEYAKUMAR | | | | ☒ | | 0. 000000 | | .00 | .00 |
| 5 | MATT WILLIAMS | | | | ☒ | | 0. 050000 | -906999 | .00 | .00 |
| 6 | STEVEN KAY | | | | ☒ | | 0. 050000 | -906999 | .00 | .00 |
| 7 | HAYES IRREVOCAB | | | | ☒ | | 0. 050000 | -906999 | .00 | .00 |
| 8 | AMAN DHUPER | | | | ☒ | | 0. 000000 | | .00 | .00 |
| 9 | | | | | | | | | .00 | .00 |
| 10 | | | | | | | | | .00 | .00 |
| 11 | | | | | | | | | .00 | .00 |
| 12 | | | | | | | | | .00 | .00 |
| | Page totals | | | | | | | -18139981 | .00 | .00 |
| | SP Schedule Grand Total | | | | | | | -18139981 | .00 | .00 |

Taxpayers reporting more than twelve (12) shareholders/partners must upload the import spreadsheet electronically at www.myfaxes.wvtax.gov.
• Transfer Total of Column F to **line 7 (Withholding column) of SPF-100**
• Transfer Total of Column G to **line 8 (Withholding column) of SPF-100**

**TOTALS FOR ALL PAGES OF SCHEDULE SP MUST BE REPORTED ON THE FIRST PAGE "SP SCHEDULE GRAND TOTAL" LINE.**

| FEIN 460829723 | Total WV Income | -18139981 |

*B6661 10-10-19*

CONFIDENTIAL

C454201909

ALECTO_00027465

JA2672

Case 23-10787-JKS   Doc 307-6   Filed 02/29/24   Page 66 of 78

EXTENSION GRANTED TO  09/15/20

Form **1065**

**U.S. Return of Partnership Income**

OMB No. 1545-0123

**2019**

Department of the Treasury
Internal Revenue Service

For calendar year 2019, or tax year beginning _____ , ending _____ ,
▶ Go to www.irs.gov/Form1065 for instructions and the latest information.

| | | |
|---|---|---|
| **A** Principal business activity | Name of partnership | **D** Employer identification number |
| HOLDING COMPANY | ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |
| **B** Principal product or service | Type or Print  Number, street, and room or suite no. If a P.O. box, see instructions. | **E** Date business started |
| | 16310 BAKE PARKWAY SUITE 200 | 08/13/2012 |
| HOLDING COMPANY | City or town, state or province, country, and ZIP or foreign postal code | **F** Total assets |
| **C** Business code number | IRVINE                                          CA 92618 | $26,796,334. |
| 622000 | | |

**G** Check applicable boxes: **(1)** ☐ Initial return **(2)** ☐ Final return **(3)** ☐ Name change **(4)** ☐ Address change **(5)** ☐ Amended return
**H** Check accounting method: **(1)** ☐ Cash **(2)** ☒ Accrual **(3)** ☐ Other (specify) ▶
**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶  8
**J** Check if Schedules C and M-3 are attached ........................................................................................ ▶ ☐
**K** Check if partnership: **(1)** ☐ Aggregated activities for section 465 at-risk purposes **(2)** ☐ Grouped activities for section 469 passive activity purposes

**Caution:** Include **only** trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

| | | | | |
|---|---|---|---|---|
| **Income** | **1a** Gross receipts or sales | | 1a | 4,284,619. |
| | **b** Returns and allowances | | 1b | |
| | **c** Balance. Subtract line 1b from line 1a | | 1c | 4,284,619. |
| | **2** Cost of goods sold (attach Form 1125-A) | | 2 | |
| | **3** Gross profit. Subtract line 2 from line 1c | | 3 | 4,284,619. |
| | **4** Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) STMT 4 | | 4 | -48,824,332. |
| | **5** Net farm profit (loss) (attach Schedule F (Form 1040 or 1040-SR)) | | 5 | |
| | **6** Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | 6 | |
| | **7** Other income (loss) (attach statement) SEE STATEMENT 5 | | 7 | 20,980. |
| | **8** **Total income (loss).** Combine lines 3 through 7 | | 8 | -44,518,733. |
| **Deductions (see instructions for limitations)** | **9** Salaries and wages (other than to partners) (less employment credits) | | 9 | 3,338,982. |
| | **10** Guaranteed payments to partners | | 10 | |
| | **11** Repairs and maintenance | | 11 | 3,240. |
| | **12** Bad debts | | 12 | |
| | **13** Rent | | 13 | 68,414. |
| | **14** Taxes and licenses SEE STATEMENT 6 | | 14 | 157,810. |
| | **15** Interest (see instructions) | | 15 | 88. |
| | **16a** Depreciation (if required, attach Form 4562) | 16a | 1,178. | |
| | **b** Less depreciation reported on Form 1125-A and elsewhere on return | 16b | | 16c | 1,178. |
| | **17** Depletion **(Do not deduct oil and gas depletion.)** | | 17 | |
| | **18** Retirement plans, etc. | | 18 | |
| | **19** Employee benefit programs | | 19 | 259,280. |
| | **20** Other deductions (attach statement) SEE STATEMENT 7 | | 20 | 752,374. |
| | **21** **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 | | 21 | 4,581,366. |
| | **22** **Ordinary business income (loss).** Subtract line 21 from line 8 | | 22 | -49,100,099. |
| **Tax and Payments** | **23** Interest due under the look-back method-completed long-term contracts (attach Form 8697) | | 23 | |
| | **24** Interest due under the look-back method-income forecast method (attach Form 8866) | | 24 | |
| | **25** BBA AAR imputed underpayment (see instructions) | | 25 | |
| | **26** Other taxes (see instructions) | | 26 | |
| | **27** **Total balance due.** Add lines 23 through 26 | | 27 | |
| | **28** Payment (see instructions) | | 28 | |
| | **29** **Amount owed.** If line 28 is smaller than line 27, enter amount owed | | 29 | |
| | **30** **Overpayment.** If line 28 is larger than line 27, enter overpayment | | 30 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ _____
Signature of partner or limited liability company member

Date _____

May the IRS discuss this return with the preparer shown below?
☒ Yes ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| DUSTIN MARCINIAK | DUSTIN MARCINIAK | 09/04/20 | | P00309414 |
| Firm's name ▶ MOSS ADAMS LLP | | | Firm's EIN ▶ 91-0189318 | |
| Firm's address ▶ 2040 MAIN STREET  SUITE 900  IRVINE, CA 92614 | | | Phone no.  949-221-4000 | |

**LHA  For Paperwork Reduction Act Notice, see separate instructions.**     1Ⓑ1001 12-30-19     Form **1065** (2019)

10340904 146892 629917                    2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

**CONFIDENTIAL**

ALECTO_00027466
**JA2673**

Form 1065 (2019)  ALECTO HEALTHCARE SERVICES LLC                          46-0829723   Page **2**

| **Schedule B** | **Other Information** | | | | |
|---|---|---|---|---|---|

**1** What type of entity is filing this return? Check the applicable box:                    **Yes** | **No**

  **a** ☐ Domestic general partnership     **b** ☐ Domestic limited partnership

  **c** ☒ Domestic limited liability company     **d** ☐ Domestic limited liability partnership

  **e** ☐ Foreign partnership     **f** ☐ Other ▶

**2** At the end of the tax year:

  **a** Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-

    exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit,

    loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule

    B-1, Information on Partners Owning 50% or More of the Partnership ......................................................... **X**

  **b** Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of

    the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information

    on Partners Owning 50% or More of the Partnership ........................................................................... **X**

**3** At the end of the tax year, did the partnership:

  **a** Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of

    stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions.

    If "Yes," complete (i) through (iv) below ...................................................................................... **X**

| **(i)** Name of Corporation | **(ii)** Employer Identification Number (if any) | **(iii)** Country of Incorporation | **(iv)** Percentage Owned in Voting Stock |
|---|---|---|---|
| OLYMPIA PLAZA MANAGEMENT INC | 45-2658339 | UNITED STATES | 100.00 |
| FRMC PHYSICIANS INC | 47-1693245 | UNITED STATES | 80.00 |
| SHERMAN MD PROVIDER INC | 47-2194631 | UNITED STATES | 80.00 |
| SHERMAN ANESTHESIA, INC. | 81-4037665 | UNITED STATES | 80.00 |
| ALECTO EAST OHIO PHYSICIANS, INC. | 82-0677410 | UNITED STATES | 80.00 |

  **b** Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss,

    or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial

    interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below ............ **X**

| **(i)** Name of Entity | **(ii)** Employer Identification Number (if any) | **(iii)** Type of Entity | **(iv)** Country of Organization | **(v)** Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| SEE STATEMENT 8 | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**4** Does the partnership satisfy **all four** of the following conditions?                    **Yes** | **No**

  **a** The partnership's total receipts for the tax year were less than $250,000.

  **b** The partnership's total assets at the end of the tax year were less than $ 1 million.

  **c** Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including

    extensions) for the partnership return.

  **d** The partnership is not filing and is not required to file Schedule M-3 ...................................................... **X**

    If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; item F on page 1 of Form 1065;

    or item L on Schedule K-1.

**5** Is this partnership a publicly traded partnership, as defined in section 469(k)(2)? ........................................... **X**

**6** During the tax year, did the partnership have any debt that was canceled, was forgiven, or had the terms modified

  so as to reduce the principal amount of the debt? ................................................................................. **X**

**7** Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide

  information on any reportable transaction? .......................................................................................... **X**

**8** At any time during calendar year 2019, did the partnership have an interest in or a signature or other authority over

  a financial account in a foreign country (such as a bank account, securities account, or other financial account)?

  See instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and

  Financial Accounts (FBAR). If "Yes," enter the name of the foreign country ▶ ............................................. **X**

**9** At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or

  transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report

  Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions ............................... **X**

**10 a** Is the partnership making, or had it previously made (and not revoked), a section 754 election? ........................ **X**

  See instructions for details regarding a section 754 election.

  **b** Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes,"

    attach a statement showing the computation and allocation of the basis adjustment. See instructions ............... **X**

911011 12-30-19                                                                 Form **1065** (2019)

13

CONFIDENTIAL

ALECTO_00027467
**JA2674**

Form 1065 (2019)  ALECTO HEALTHCARE SERVICES LLC                           46-0829723   Page **3**

| Schedule B | Other Information *(continued)* | | | |
|---|---|---|---|---|
| | | | Yes | No |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | | X |
| 11 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly owned by the partnership throughout the tax year) ........................................................................... ▶ ☐ | | | |
| 12 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? | | | X |
| 13 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities (FDEs) and Foreign Branches (FBs), enter the number of Forms 8858 attached. See instructions  ▶ | | | |
| 14 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership  ▶ | | | X |
| 15 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return  ▶ | | | |
| 16 a | Did you make any payments in 2019 that would require you to file Form(s) 1099? See instructions | | X | |
| b | If "Yes," did you or will you file required Form(s) 1099? | | X | |
| 17 | Enter the number of Forms 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return  ▶ | | | |
| 18 | Enter the number of partners that are foreign governments under section 892  ▶ | | | |
| 19 | During the partnership's tax year, did the partnership make any payments that would require it to file Form 1042 and 1042-S under chapter 3 (sections 1441 through 1464) or chapter 4 (sections 1471 through 1474)? | | | X |
| 20 | Was the partnership a specified domestic entity required to file Form 8938 for the tax year? See the Instructions for Form 8938 | | | X |
| 21 | Is the partnership a section 721(c) partnership, as defined in Regulations section 1.721(c)-1T(b)(14)? | | | X |
| 22 | During the tax year, did the partnership pay or accrue any interest or royalty for which the deduction is not allowed under section 267A? See instructions | | | X |
| | If "Yes," enter the total amount of the disallowed deductions  ▶ $ | | | |
| 23 | Did the partnership have an election under section 163(j) for any real property trade or business or any farming business in effect during the tax year? See instructions | | | X |
| 24 | Does the partnership satisfy one or more of the following? See instructions | | | X |
| a | The partnership owns a pass-through entity with current, or prior year carryover, excess business interest expense. | | | |
| b | The partnership's aggregate average annual gross receipts (determined under section 448(c)) for the 3 tax years preceding the current tax year are more than $26 million and the partnership has business interest. | | | |
| c | The partnership is a tax shelter (see instructions) and the partnership has business interest expense. If "Yes" to any, complete and attach Form 8990. | | | |
| 25 | Is the partnership electing out of the centralized partnership audit regime under section 6221(b)? See instructions If "Yes," the partnership must complete Schedule B-2 (Form 1065). Enter the total from Schedule B-2, Part III, line 3  ▶ _____ If "No," complete Designation of Partnership Representative below. | | | X |

**Designation of Partnership Representative** (see instructions)

Enter below the information for the partnership representative (PR) for the tax year covered by this return.

Name of PR ▶ MIKE SARRAO

| U.S. address of PR ▶ | 16310 BAKE PARKWAY SUITE 200 IRVINE, CA 92618 | U.S. phone number of PR | 949-783-3976 |
|---|---|---|---|

If the PR is an entity, name of the designated individual for the PR ▶

| U.S. address of designated individual ▶ | _____ | U.S. phone number of designated individual ▶ | |
|---|---|---|---|

| 26 | Is the partnership attaching Form 8996 to certify as a Qualified Opportunity Fund? ........................... | | | X |
|---|---|---|---|---|
| | If "Yes," enter the amount from Form 8996, line 14  ▶ $ | | | |
| 27 | Enter the number of foreign partners subject to section 864(c)(8) as a result of transferring all or a portion of an interest in the partnership or of receiving a distribution from the partnership  ▶ | | | |
| 28 | At any time during the tax year, were there any transfers between the partnership and its partners subject to the disclosure requirements of Regulations section 1.707-8? | | | X |

Form **1065** (2019)

911021 12-30-19

14

CONFIDENTIAL

ALECTO_00027468

JA2675

Form 1065 (2019)  ALECTO HEALTHCARE SERVICES LLC                                    46-0829723  Page 4

| Schedule K | Partners' Distributive Share Items | | Total amount |
|---|---|---|---|
| | 1 Ordinary business income (loss) (page 1, line 22) | 1 | -49,100,099. |
| | 2 Net rental real estate income (loss) (attach Form 8825) | 2 | |
| | 3a Other gross rental income (loss)        3a | | |
| | b Expenses from other rental activities (attach statement)        3b | | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 Guaranteed payments:    a Services  4a        b Capital  4b | | |
| | c Total. Add lines 4a and 4b | 4c | |
| Income (Loss) | 5 Interest income                SEE STATEMENT 9 | 5 | 232,271. |
| | 6 Dividends and dividend equivalents:  a Ordinary dividends | 6a | |
| | b Qualified dividends  6b            c Dividend equivalents  6c | | |
| | 7 Royalties | 7 | |
| | 8 Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | 8 | |
| | 9a Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | 9a | |
| | b Collectibles (28%) gain (loss)        9b | | |
| | c Unrecaptured section 1250 gain (attach statement)        9c | | |
| | 10 Net section 1231 gain (loss) (attach Form 4797) | 10 | -1,918. |
| | 11 Other income (loss) (see instructions) Type ▶ | 11 | |
| Deductions | 12 Section 179 deduction (attach Form 4562) | 12 | |
| | 13a Contributions                SEE STATEMENT 10 | 13a | 24,690. |
| | b Investment interest expense | 13b | |
| | c Section 59(e)(2) expenditures: (1) Type ▶          (2) Amount ▶ | 13c(2) | |
| | d Other deductions (see instructions) Type ▶        SEE STATEMENT 11 | 13d | 187,193. |
| Self-Employ-ment | 14a Net earnings (loss) from self-employment | 14a | -44,190,084. |
| | b Gross farming or fishing income | 14b | |
| | c Gross nonfarm income | 14c | |
| Credits | 15a Low-income housing credit (section 42(j)(5)) | 15a | |
| | b Low-income housing credit (other) | 15b | |
| | c Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | 15c | |
| | d Other rental real estate credits (see instructions) Type ▶ | 15d | |
| | e Other rental credits (see instructions)    Type ▶ | 15e | |
| | f Other credits (see instructions)        Type ▶ | 15f | |
| Foreign Transactions | 16a Name of country or U.S. possession ▶ | | |
| | b Gross income from all sources | 16b | |
| | c Gross income sourced at partner level | 16c | |
| | Foreign gross income sourced at partnership level | | |
| | d Reserved for future use ▶        e Foreign branch category ▶ | 16e | |
| | f Passive category ▶        g General category ▶        h Other ▶ | 16h | |
| | Deductions allocated and apportioned at partner level | | |
| | i Interest expense ▶        j Other ▶ | 16j | |
| | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | k Reserved for future use ▶        l Foreign branch category ▶ | 16l | |
| | m Passive category ▶        n General category ▶        o Other ▶ | 16o | |
| | p Total foreign taxes (check one): ▶    Paid ☐    Accrued ☐ | 16p | |
| | q Reduction in taxes available for credit (attach statement) | 16q | |
| | r Other foreign tax information (attach statement) | | |
| Alternative Minimum Tax (AMT) Items | 17a Post-1986 depreciation adjustment | 17a | -47,855. |
| | b Adjusted gain or loss                SEE STATEMENT 12 | 17b | -1,030. |
| | c Depletion (other than oil and gas) | 17c | |
| | d Oil, gas, and geothermal properties - gross income | 17d | |
| | e Oil, gas, and geothermal properties - deductions | 17e | |
| | f Other AMT items (attach statement) | 17f | |
| Other Information | 18a Tax-exempt interest income | 18a | |
| | b Other tax-exempt income | 18b | |
| | c Nondeductible expenses        SEE STATEMENT 13 | 18c | 158,989. |
| | 19a Distributions of cash and marketable securities | 19a | 0. |
| | b Distributions of other property | 19b | |
| | 20a Investment income | 20a | 232,271. |
| | b Investment expenses | 20b | |
| | c Other items and amounts (attach statement)        STMT 14 | | |

911041 12-30-19                                    15                                    Form 1065 (2019)

10340904 146892 629917                2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                                    ALECTO_00027469
                                                                            JA2676

Form 1065 (2019)   ALECTO HEALTHCARE SERVICES LLC                                    46-0829723   Page **5**

## Analysis of Net Income (Loss)

**1** Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16p ............... | **1** | $-49,081,629.$

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt Organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | | $-44173412.$ | $-2,454,021.$ | | | $-2,454,196.$ |

## Schedule L   Balance Sheets per Books

| Assets | Beginning of tax year (a) | Beginning of tax year (b) | End of tax year (c) | End of tax year (d) |
|---|---|---|---|---|
| **1** Cash | | 107,203. | | 356,458. |
| **2a** Trade notes and accounts receivable | 1,364,490. | | 1,296,349. | |
| **b** Less allowance for bad debts | 1,000,000. | 364,490. | 1,000,000. | 296,349. |
| **3** Inventories | | | | |
| **4** U.S. government obligations | | | | |
| **5** Tax-exempt securities | | | | |
| **6** Other current assets (attach statement) | STATEMENT 16 | 548,440. | | 652,960. |
| **7a** Loans to partners (or persons related to partners) | | | | |
| **b** Mortgage and real estate loans | | | | |
| **8** Other investments (attach statement) | STATEMENT 17 | 15,670,881. | | 25,489,819. |
| **9a** Buildings and other depreciable assets | 13,467. | | 13,467. | |
| **b** Less accumulated depreciation | 8,230. | 5,237. | 12,719. | 748. |
| **10a** Depletable assets | | | | |
| **b** Less accumulated depletion | | | | |
| **11** Land (net of any amortization) | | | | |
| **12a** Intangible assets (amortizable only) | 12,433. | | | |
| **b** Less accumulated amortization | | 12,433. | | |
| **13** Other assets (attach statement) | | | | |
| **14** Total assets | | 16,708,684. | | 26,796,334. |
| **Liabilities and Capital** | | | | |
| **15** Accounts payable | | 1,679,150. | | 2,139,683. |
| **16** Mortgages, notes, bonds payable in less than 1 year | | | | |
| **17** Other current liabilities (attach statement) | STATEMENT 18 | 894,891. | | 1,235,770. |
| **18** All nonrecourse loans | | | | |
| **19a** Loans from partners (or persons related to partners) | | | | |
| **b** Mortgages, notes, bonds payable in 1 year or more | | 4,039,464. | | 4,749,523. |
| **20** Other liabilities (attach statement) | | | | |
| **21** Partners' capital accounts | | 10,095,179. | | 18,671,358. |
| **22** Total liabilities and capital | | 16,708,684. | | 26,796,334. |

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return

**Note:** The partnership may be required to file Schedule M-3. See instructions.

| | | | |
|---|---|---|---|
| **1** Net income (loss) per books | | **6** Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| **2** Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | **a** Tax-exempt interest $ | |
| **3** Guaranteed payments (other than health insurance) | | **7** Deductions included on Schedule K, lines 1 through 13d, and 16p, not charged against book income this year (itemize): | |
| **4** Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16p (itemize): | | **a** Depreciation $ | |
| **a** Depreciation $ | | **8** Add lines 6 and 7 | |
| **b** Travel and entertainment $ | | **9** Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | |
| **5** Add lines 1 through 4 | | | |

## Schedule M-2   Analysis of Partners' Capital Accounts                       STMT 15

| | | | |
|---|---|---|---|
| **1** Balance at beginning of year | 10,095,179. | **6** Distributions: **a** Cash | 2,238,651. |
| **2** Capital contributed: **a** Cash | 11,183,129. | **b** Property | |
| STMT 20   **b** Property | | **7** Other decreases (itemize): | |
| **3** Net income (loss) per books | -368,299. | | |
| **4** Other increases (itemize): | | **8** Add lines 6 and 7 | 2,238,651. |
| **5** Add lines 1 through 4 | 20,910,009. | **9** Balance at end of year. Subtract line 8 from line 5 | 18,671,358. |

911042 12-30-19

16

Form **1065** (2019)

CONFIDENTIAL

ALECTO_00027470
JA2677

ALECTO HEALTHCARE SERVICES LLC                                      46-0829723

====================================================================

FORM 1065       INCOME (LOSS) FROM OTHER PARTNERSHIPS, ETC.     STATEMENT 4


| NAME AND ADDRESS | EMPLOYER ID | AMOUNT |
|---|---|---|
| ALECTO HEALTHCARE SERVICES LOS ANGELES<br>5000 E SPRING ST STE 400<br>LONG BEACH, CA 90815 | 90-0999512 | -2,122,748. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC<br>1325 LOCUST AVENUE<br>FAIRMONT, WV 26554 | 35-2507149 | -5,386,507. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC<br>500 N. HIGHLAND AVENUE<br>SHERMAN, TX 75092 | 37-1760423 | -3,852,294. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC<br>16310 BAKE PARKWAY SUITE 200<br>IRVINE, CA 92618 | 36-4857044 | -37,462,783. |
| TOTAL TO FORM 1065, LINE 4 | | -48,824,332. |


FORM 1065                      OTHER INCOME                     STATEMENT 5


| DESCRIPTION | AMOUNT |
|---|---|
| OTHER INCOME | 20,980. |
| TOTAL TO FORM 1065, LINE 7 | 20,980. |


FORM 1065                      TAX EXPENSE                      STATEMENT 6


| DESCRIPTION | AMOUNT |
|---|---|
| CALIFORNIA TAXES - BASED ON INCOME | 4,800. |
| PAYROLL TAXES | 145,810. |
| TAXES AND LICENSES | 7,200. |
| TOTAL TO FORM 1065, LINE 14 | 157,810. |

CONFIDENTIAL                                               ALECTO_00027471
                                                              **JA2678**

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

| FORM 1065 | OTHER DEDUCTIONS | STATEMENT 7 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| AMORTIZATION EXPENSE | 4,704. |
| AUTOMOBILE EXPENSE | 22,998. |
| BANK SERVICE CHARGES | 21,466. |
| COMPUTER AND INTERNET EXPENSES | 12,593. |
| DUES AND SUBSCRIPTIONS | 13,537. |
| INSURANCE | 102,537. |
| MEALS | 5,403. |
| PROFESSIONAL FEES | 227,313. |
| PURCHASED SERVICES | 202,802. |
| SUPPLIES AND OTHER | 11,651. |
| TRAVEL EXPENSES | 97,427. |
| UTILITIES | 29,943. |
| TOTAL TO FORM 1065, LINE 20 | 752,374. |

CONFIDENTIAL

ALECTO_00027472
JA2679

ALECTO HEALTHCARE SERVICES LLC                                                                46-0829723

THE ENTITY OWNS 20% OR MORE DIRECTLY OR       STATEMENT 8
50% OR MORE OVERALL OF PARTNERSHIPS OR TRUSTS

| NAME OF ENTITY | EIN NUMBER | |
|---|---|---|
| | COUNTRY OF ORGANIZATION | PCT OWNED |
| SPAULDING MANAGMENT LLC | 27-4025215 | |
| | UNITED STATES | 100.00 |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | 90-0999512 | |
| | UNITED STATES | 100.00 |
| ACCELERON SERVICES LLC | 90-0987801 | |
| | UNITED STATES | 100.00 |
| ALECTO HEALTHCARE SERVICES HAYWARD LLC | 36-4743580 | |
| | UNITED STATES | 100.00 |
| ALECTO HEALTHCARE SERVICES INDIANA LLC | | |
| | UNITED STATES | 100.00 |
| UNITED MEDICAL MANAGEMENT LLC | 38-3933131 | |
| | UNITED STATES | 100.00 |
| OLYMPIA HEALTH CARE LLC | 42-1643090 | |
| | UNITED STATES | 64.00 |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | 35-2507149 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | 37-1760423 | |
| | UNITED STATES | 80.00 |
| SHERMAN/GRAYSON HOSPITAL LLC | 27-2025690 | |
| | UNITED STATES | 80.00 |
| SHERMAN/GRAYSON HEALTH SERVICES LLC | 27-2025835 | |
| | UNITED STATES | 80.00 |
| SHERMAN/GRAYSON SPONSOR LLC | 35-2518088 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES FAIRMONT HOSPI | 47-1310470 | |
| | UNITED STATES | 80.00 |
| HORIZON REAL ESTATE HOLDINGS LLC | 57-1226547 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY | 36-4857044 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES WHEELING, LLC | 37-1848845 | |
| | UNITED STATES | 80.00 |
| ALECTO HEALTHCARE SERVICES MARTINS FERRY | 37-1848949 | |
| | UNITED STATES | 80.00 |

CONFIDENTIAL                                              ALECTO_00027473
                                                      JA2680

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| SCHEDULE K | INTEREST INCOME | | STATEMENT 9 |
|---|---|---|---|

| DESCRIPTION | | U.S. BONDS | OTHER |
|---|---|---|---|
| INTEREST - ALECTO HEALTHCARE SERVICES LOS ANGELES | | | 169,969. |
| INTEREST - ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | | 48. |
| INTEREST - ALECTO HEALTHCARE SERVICES SHERMAN LLC | | | 62,166. |
| INTEREST INCOME | | | 88. |
| TOTAL TO SCHEDULE K, LINE 5 | | | 232,271. |

| SCHEDULE K | CHARITABLE CONTRIBUTIONS | | STATEMENT 10 |
|---|---|---|---|

| DESCRIPTION | TYPE | | AMOUNT |
|---|---|---|---|
| CONTRIBUTIONS - ALECTO HEALTHCARE SERVICES FAIRMONT LLC | CASH (60%) | | 5,740. |
| CONTRIBUTIONS - ALECTO HEALTHCARE SERVICES LOS ANGELES | CASH (60%) | | 4,800. |
| CHARITABLE CONTRIBUTIONS | CASH (60%) | | 14,150. |
| TOTALS TO SCHEDULE K, LINE 13A | | | 24,690. |

| SCHEDULE K | OTHER DEDUCTIONS | STATEMENT 11 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| EXCESS BUSINESS INTEREST EXPENSE | 187,193. |
| TOTAL INCLUDED IN SCHEDULE K, LINE 13D | 187,193. |

CONFIDENTIAL                                                         ALECTO_00027474
                                                                         JA2681

ALECTO HEALTHCARE SERVICES LLC                                     46-0829723

| SCHEDULE K | ADJUSTED GAIN OR LOSS | STATEMENT 12 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| AMT BASIS ADJUSTMENT FROM PASSTHROUGH | -1,030. |
| TOTAL TO SCHEDULE K, LINE 17B | -1,030. |

|  | SUBJECT TO SPECIAL RATES | AMOUNT |
|---|---|---|
| ADJUSTED GAIN OR LOSS ALLOCABLE TO: |  |  |
| ORDINARY GAIN OR LOSS |  | -1,030. |
| SHORT-TERM CAPITAL GAIN OR LOSS |  |  |
| LONG-TERM CAPITAL GAIN OR LOSS |  |  |
| SECTION 1231 GAIN OR LOSS |  |  |
| COLLECTIBLES - 28% RATE |  |  |
| UNRECAPTURED SECTION 1250 GAIN - 25% RATE |  |  |

| SCHEDULE K | NONDEDUCTIBLE EXPENSE | STATEMENT 13 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| EXCLUDED MEALS AND ENTERTAINMENT EXPENSES | 5,403. |
| NONDEDUCTIBLE EXPENSE FROM PASSTHROUGH | 127,749. |
| OFFICER'S LIFE INSURANCE | 25,837. |
| TOTAL TO SCHEDULE K, LINE 18C | 158,989. |

| SCHEDULE K | OTHER ITEMS | STATEMENT 14 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| SECTION 199A - ORDINARY INCOME (LOSS) | -49,258,702. |
| SECTION 199A W-2 WAGES | 113,913,392. |
| SECTION 199A UNADJUSTED BASIS OF ASSETS | 43,971,941. |
| BEGINNING TAX CAPITAL | -31,853,158. |
| ENDING TAX CAPITAL | -72,149,298. |

CONFIDENTIAL                                                        ALECTO_00027475
                                                                    JA2682

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| SCHEDULE M-2 | DISTRIBUTIONS | STATEMENT 15 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| TRANSFERRED CAPITAL | 2,238,651. |
| TOTAL TO SCHEDULE M-2, LINE 6A | 2,238,651. |

| SCHEDULE L | OTHER CURRENT ASSETS | STATEMENT 16 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| DUE FROM AFFILIATE | 50,000. | 50,000. |
| OTHER CURRENT ASSETS | 46,356. | 79,756. |
| OTHER RECEIVABLES | 0. | 34,704. |
| PREPAID EXPENSES | 452,084. | 488,500. |
| TOTAL TO SCHEDULE L, LINE 6 | 548,440. | 652,960. |

| SCHEDULE L | OTHER INVESTMENTS | STATEMENT 17 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| INTERCOMPANY RECEIVABLE | 15,670,881. | 25,489,819. |
| TOTAL TO SCHEDULE L, LINE 8 | 15,670,881. | 25,489,819. |

| SCHEDULE L | OTHER CURRENT LIABILITIES | STATEMENT 18 |
|---|---|---|

| DESCRIPTION | BEGINNING OF TAX YEAR | END OF TAX YEAR |
|---|---|---|
| ACCRUED PAYROLL | 158,472. | 88,910. |
| ACCRUED PTO | 132,997. | 99,470. |
| OTHER ACCRUED EXPENSES | 603,422. | 1,047,390. |
| TOTAL TO SCHEDULE L, LINE 17 | 894,891. | 1,235,770. |

CONFIDENTIAL                                              ALECTO_00027476
                                                                      JA2683

ALECTO HEALTHCARE SERVICES LLC                                                46-0829723

| FORM 1065 | | PARTNERS' CAPITAL ACCOUNT SUMMARY | | | STATEMENT 19 |
|---|---|---|---|---|---|
| PARTNER NUMBER | BEGINNING CAPITAL | CAPITAL CONTRIBUTED | SCHEDULE M-2 LNS 3, 4 & 7 | WITH-DRAWALS | ENDING CAPITAL |
| 1 | 5,606,788. | 7,247,559. | -206,248. | | 12,648,099. |
| 2 | 1,038,816. | 894,448. | -36,827. | | 1,896,437. |
| 3 | 727,207. | 626,113. | -25,786. | | 1,327,534. |
| 4 | 727,229. | 626,113. | -25,778. | 1,327,564. | 0. |
| 6 | 504,568. | 447,224. | -18,414. | | 933,378. |
| 7 | 488,857. | 447,224. | -18,415. | | 917,666. |
| 8 | 519,434. | 447,224. | -18,414. | | 948,244. |
| 9 | 482,280. | 447,224. | -18,417. | 911,087. | 0. |
| TOTAL | 10,095,179. | 11,183,129. | -368,299. | 2,238,651. | 18,671,358. |

CONFIDENTIAL

ALECTO_00027477
JA2684

ALECTO HEALTHCARE SERVICES LLC                                46-0829723

| SCHEDULE M-2 | CONTRIBUTIONS | STATEMENT 20 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| TRANSFERRED CAPITAL | 2,238,651. |
| CONTRIBUTIONS TO CAPITAL | 8,944,478. |
| TOTAL TO SCHEDULE M-2, LINE 2 | 11,183,129. |

CONFIDENTIAL

ALECTO_00027478
**JA2685**

**<u>Exhibit B</u>**

**Part 6**

| **SCHEDULE B-1**<br>**(Form 1065)**<br>(Rev. August 2019)<br>Department of the Treasury<br>Internal Revenue Service | **Information on Partners Owning 50% or**<br>**More of the Partnership**<br>▶ Attach to Form 1065.<br>▶ Go to www.irs.gov/Form1065 for the latest information. | OMB No. 1545-0123 |
|---|---|---|

| Name of partnership | Employer identification number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

**Part I**  **Entities Owning 50% or More of the Partnership**  (Form 1065, Schedule B, Question 2a (Question 3a for 2009 through 2017))

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, tax-exempt organization, or any foreign government that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Part II**  **Individuals or Estates Owning 50% or More of the Partnership**  (Form 1065, Schedule B, Question 2b (Question 3b for 2009 through 2017))

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| LAXMAN REDDY | | UNITED STATES | 56.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

LHA  **For Paperwork Reduction Act Notice, see the Instructions for Form 1065.**          **Schedule B-1 (Form 1065) (Rev. 8-2019)**

924551 11-13-19

10340904 146892 629917          2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL                                                                    **ALECTO_00027479**
                                                                                          **JA2687**

| SCHEDULE M-3 (Form 1065) | Net Income (Loss) Reconciliation for Certain Partnerships | OMB No. 1545-0123 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 1065. ▶ Go to www.irs.gov/Form1065 for instructions and the latest information. | **2019** |

| Name of partnership | Employer identification number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

This Schedule M-3 is being filed because (check all that apply):

A **[X]** The amount of the partnership's total assets at the end of the tax year is equal to $10 million or more.

B **[X]** The amount of the partnership's adjusted total assets for the tax year is equal to $10 million or more. If box B is checked, enter the amount of adjusted total assets for the tax year   **247,808,992.** .

C [ ] The amount of total receipts for the tax year is equal to $35 million or more. If box C is checked, enter the total receipts for the tax year _____ .

D [ ] An entity that is a reportable entity partner with respect to the partnership owns or is deemed to own an interest of 50% or more in the partnership's capital, profit, or loss on any day during the tax year of the partnership.

| Name of Reportable Entity Partner | Identifying Number | Maximum Percentage Owned or Deemed Owned |
|---|---|---|
|  |  |  |
|  |  |  |

E [ ] Voluntary Filer.

### Part I   Financial Information and Net Income (Loss) Reconciliation

**1a** Did the partnership file SEC Form 10-K for its income statement period ending with or within this tax year?

  [ ] **Yes.** Skip lines 1b and 1c and complete lines 2 through 11 with respect to that SEC Form 10-K.

  [X] **No.** Go to line 1b. See instructions if multiple non-tax-basis income statements are prepared.

**b** Did the partnership prepare a certified audited non-tax-basis income statement for that period?

  [ ] **Yes.** Skip line 1c and complete lines 2 through 11 with respect to that income statement.

  [X] **No.** Go to line 1c.

**c** Did the partnership prepare a non-tax-basis income statement for that period?

  [X] **Yes.** Complete lines 2 through 11 with respect to that income statement.

  [ ] **No.** Skip lines 2 through 3b and enter the partnership's net income (loss) per its books and records on line 4a.

**2** Enter the income statement period:   Beginning **01/01/2019**   Ending **12/31/2019**

**3a** Has the partnership's income statement been restated for the income statement period on line 2?

  [ ] **Yes.** (If "Yes," attach a statement and the amount of each item restated.)

  [X] **No.**

**b** Has the partnership's income statement been restated for any of the five income statement periods immediately preceding the period on line 2?

  [ ] **Yes.** (If "Yes," attach a statement and the amount of each item restated.)

  [X] **No.**

| | | |
|---|---|---|
| **4a** Worldwide consolidated net income (loss) from income statement source identified in Part I, line 1 | **4a** | **-368,299.** |
| **b** Indicate accounting standard used for line 4a (see instructions).   1 [X] GAAP   2 [ ] IFRS   3 [ ] Section 704(b)   4 [ ] Tax-basis   5 [ ] Other (Specify) ▶ | | |
| **5a** Net income from noncludible foreign entities (attach statement) | **5a** | ( ) |
| **b** Net loss from noncludible foreign entities (attach statement and enter as a positive amount) | **5b** | |
| **6a** Net income from noncludible U.S. entities (attach statement) | **6a** | ( ) |
| **b** Net loss from noncludible U.S. entities (attach statement and enter as a positive amount) | **6b** | |
| **7a** Net income (loss) of other foreign disregarded entities (attach statement) | **7a** | |
| **b** Net income (loss) of other U.S. disregarded entities (attach statement) | **7b** | |
| **8** Adjustment to eliminations of transactions between includible entities and noncludible entities (attach stmt.) | **8** | |
| **9** Adjustment to reconcile income statement period to tax year (attach statement) | **9** | |
| **10** Other adjustments to reconcile to amount on line 11 (attach statement) | **10** | |
| **11** **Net income (loss) per income statement of the partnership.** Combine lines 4a through 10 | **11** | **-368,299.** |

Note: Part I, line 11, must equal Part II, line 26, column (a), or Schedule M-1, line 1. See instructions.

**12** Enter the total amount (not just the partnership's share) of the assets and liabilities of all entities included or removed on the following lines.

| | Total Assets | Total Liabilities |
|---|---|---|
| **a** Included on Part I, line 4 | 26,796,334. | 8,124,976. |
| **b** Removed on Part I, line 5 | | |
| **c** Removed on Part I, line 6 | | |
| **d** Included on Part I, line 7 | | |

For Paperwork Reduction Act Notice, see the instructions for your return.

Schedule M-3 (Form 1065) 2019

910991 01-13-20   LHA

26

10340904 146892 629917        2019.04020 ALECTO HEALTHCARE SERVICE 629917_1

CONFIDENTIAL

ALECTO_00027480

**JA2688**

Schedule M-3 (Form 1065) 2019

Page 2

| Name of partnership | | | Employer identification number |
|---|---|---|---|
| ALECTO HEALTHCARE SERVICES LLC | | | 46-0829723 |

**Part II**    Reconciliation of Net Income (Loss) per Income Statement of Partnership with Income (Loss) per Return

| | Income (Loss) Items | (a) Income (Loss) per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Income (Loss) per Tax Return |
|---|---|---|---|---|---|
| | Attach statements for lines 1 through 10. | | | | |
| 1 | Income (loss) from equity method foreign corporations | | | | |
| 2 | Gross foreign dividends not previously taxed | | | | |
| 3 | Subpart F, QEF, and similar income inclusions | | | | |
| 4 | Gross foreign distributions previously taxed | | | | |
| 5 | Income (loss) from equity method U.S. corporations | | | | |
| 6 | U.S. dividends | | | | |
| 7 | Income (loss) from U.S. partnerships  STMT  21 | | -48,732,356. | 127,749. | -48,604,607. |
| 8 | Income (loss) from foreign partnerships | | | | |
| 9 | Income (loss) from other pass-through entities | | | | |
| 10 | Items relating to reportable transactions | | | | |
| 11 | Interest income (see instructions) | 88. | | | 88. |
| 12 | Total accrual to cash adjustment | | | | |
| 13 | Hedging transactions | | | | |
| 14 | Mark-to-market income (loss) | | | | |
| 15 | Cost of goods sold (see instructions) | ( ) | | | ( ) |
| 16 | Sale versus lease (for sellers and/or lessors) | | | | |
| 17 | Section 481(a) adjustments | | | | |
| 18 | Unearned/deferred revenue | | | | |
| 19 | Income recognition from long-term contracts | | | | |
| 20 | Original issue discount and other imputed interest | | | | |
| 21a | Income statement gain/loss on sale, exchange, abandonment, worthlessness, or other disposition of assets other than inventory and pass-through entities | | | | |
| b | Gross capital gains from Schedule D, excluding amounts from pass-through entities | | | | |
| c | Gross capital losses from Schedule D, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses | | | | |
| d | Net gain/loss reported on Form 4797, line 17, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses | | | | |
| e | Abandonment losses | | | | |
| f | Worthless stock losses (attach statement) | | | | |
| g | Other gain/loss on disposition of assets other than inventory | | | | |
| 22 | Other income (loss) items with differences (attach statement) | | | | |
| 23 | Total income (loss) items. Combine lines 1 through 22 | 88. | -48,732,356. | 127,749. | -48,604,519. |
| 24 | Total expense/deduction items. (From Part III, line 31) (see instructions) | -3,447,775. | -139,963. | 31,240. | -3,556,498. |
| 25 | Other items with no differences  STMT  22 | 3,079,388. | | | 3,079,388. |
| 26 | Reconciliation totals. Combine lines 23 through 25 | -368,299. | -48,872,319. | 158,989. | -49,081,629. |

**Note:** Line 26, column (a), must equal Part I, line 11, and column (d) must equal Form 1065, Analysis of Net Income (Loss), line 1.

Schedule M-3 (Form 1065) 2019

910992
01-13-20

CONFIDENTIAL

ALECTO_00027481
**JA2689**

Schedule M-3 (Form 1065) 2019

Page 3

| Name of partnership | Employer identification number |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | 46-0829723 |

**Part III** Reconciliation of Net Income (Loss) per Income Statement of Partnership With Income (Loss) per Return - Expense/Deduction Items

| | Expense/Deduction Items | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
|---|---|---|---|---|---|
| 1 | State and local current income tax expense | 3,200. | 1,600. | | 4,800. |
| 2 | State and local deferred income tax expense | | | | |
| 3 | Foreign current income tax expense (other than foreign withholding taxes) | | | | |
| 4 | Foreign deferred income tax expense | | | | |
| 5 | Equity-based compensation | | | | |
| 6 | Meals and entertainment          STMT 24 | 10,806. | | -5,403. | 5,403. |
| 7 | Fines and penalties | | | | |
| 8 | Judgments, damages, awards, and similar costs | | | | |
| 9 | Guaranteed payments | | | | |
| 10 | Pension and profit-sharing | | | | |
| 11 | Other post-retirement benefits | | | | |
| 12 | Deferred compensation | | | | |
| 13 | Charitable contribution of cash and tangible property          STMT 25 | 14,150. | | | 14,150. |
| 14 | Charitable contribution of intangible property | | | | |
| 15 | Organizational expenses as per Regulations section 1.709-2(a) | | | | |
| 16 | Syndication expenses as per Regulations section 1.709-2(b) | | | | |
| 17 | Current year acquisition/reorganization investment banking fees | | | | |
| 18 | Current year acquisition/reorganization legal and accounting fees | | | | |
| 19 | Amortization/impairment of goodwill | | | | |
| 20 | Amortization of acquisition, reorganization, and start-up costs | | | | |
| 21 | Other amortization or impairment write-offs          STMT 26 | 12,433. | -7,729. | | 4,704. |
| 22 | Reserved | | | | |
| 23a | Depletion - Oil & Gas | | | | |
| b | Depletion - Other than Oil & Gas | | | | |
| 24 | Intangible drilling & development costs | | | | |
| 25 | Depreciation | 4,489. | -3,311. | | 1,178. |
| 26 | Bad debt expense | | | | |
| 27 | Interest expense (see instructions) | 187,281. | -187,193. | | 88. |
| 28 | Purchase versus lease (for purchasers and/or lessees) | | | | |
| 29 | Research and development costs | | | | |
| 30 | Other expense/deduction items with differences (attach statement)          STMT 27 | 3,215,416. | 336,596. | -25,837. | 3,526,175. |
| 31 | Total expense/deduction items. Combine lines 1 through 30. Enter here and on Part II, line 24, reporting positive amounts as negative and negative amounts as positive | 3,447,775. | 139,963. | -31,240. | 3,556,498. |

Schedule M-3 (Form 1065) 2019

910993
01-13-20

CONFIDENTIAL

ALECTO_00027482
JA2690

ALECTO HEALTHCARE SERVICES LLC                                          46-0829723

| SCHEDULE M-3 | | INCOME (LOSS) FROM U.S. PARTNERSHIPS | | | STATEMENT 21 |

### NAME

| EIN | END OF YEAR PERCENTAGE | | INCOME (LOSS) PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | INCOME (LOSS) PER TAX RETURN |
|---|---|---|---|---|---|---|
| | PROFIT-SHARING | LOSS-SHARING | | | | |
| ALECTO HEALTHCARE SERVICES LOS ANGELES | | | | | | |
| 90-0999512 | | | 0. | -2,081,276. | 123,697. | -1,957,579. |
| ALECTO HEALTHCARE SERVICES FAIRMONT LLC | | | | | | |
| 35-2507149 | | | 0. | -5,395,363. | 1,198. | -5,394,165. |
| ALECTO HEALTHCARE SERVICES SHERMAN LLC | | | | | | |
| 37-1760423 | | | 0. | -3,791,689. | 1,561. | -3,790,128. |
| ALECTO HEALTHCARE SERVICES OHIO VALLEY, LLC | | | | | | |
| 36-4857044 | | | 0. | -37,464,028. | 1,293. | -37,462,735. |
| TOTAL TO M-3, PART II, LINE 7 | | | 0. | -48,732,356. | 127,749. | -48,604,607. |

| SCHEDULE M-3 | OTHER INCOME (LOSS) AND EXPENSE / DEDUCTION ITEMS WITH NO DIFFERENCES | STATEMENT 22 |

| DESCRIPTION | PER INCOME STATEMENT | PER TAX RETURN |
|---|---|---|
| OTHER INCOME (LOSS) - SEE STATEMENT | 4,305,599. | 4,305,599. |
| OTHER EXPENSE / DEDUCTION - SEE STATEMENT | -1,226,211. | -1,226,211. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 25 | 3,079,388. | 3,079,388. |

| SCHEDULE M-3 | OTHER INCOME (LOSS) ITEMS WITH NO DIFFERENCES | STATEMENT 23 |

| DESCRIPTION | INCOME (LOSS) PER INCOME STATEMENT | INCOME (LOSS) PER TAX RETURN |
|---|---|---|
| OTHER INCOME | 20,980. | 20,980. |
| SALES | 4,284,619. | 4,284,619. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 25 | 4,305,599. | 4,305,599. |

CONFIDENTIAL                                          ALECTO_00027483
                                                                       JA2691

ALECTO HEALTHCARE SERVICES LLC                                    46-0829723

═══════════════════════════════════════════════════════════════════════════

| SCHEDULE M-3 | MEALS AND ENTERTAINMENT | | | STATEMENT 24 |
|---|---|---|---|---|

| DESCRIPTION | EXPENSE PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | DEDUCTION PER TAX RETURN |
|---|---|---|---|---|
| MEALS AND ENTERTAINMENT FROM TRADE OR BUSINESS | 10,806. | | -5,403. | 5,403. |
| TOTAL | 10,806. | | -5,403. | 5,403. |

═══════════════════════════════════════════════════════════════════════════

| SCHEDULE M-3 | CHARITABLE CONTRIBUTION OF CASH AND TANGIBLE PROPERTY | | | STATEMENT 25 |
|---|---|---|---|---|

| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | EXPENSE/ DEDUCTION PER TAX RETURN |
|---|---|---|---|---|
| CHARITABLE CONTRIBUTIONS | 14,150. | | 0. | 14,150. |
| TOTAL | 14,150. | | 0. | 14,150. |

═══════════════════════════════════════════════════════════════════════════

| SCHEDULE M-3 | OTHER AMORTIZATION OR IMPAIRMENT WRITE-OFFS | | | STATEMENT 26 |
|---|---|---|---|---|

| DESCRIPTION | EXPENSE PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | DEDUCTION PER TAX RETURN |
|---|---|---|---|---|
| LOAN COSTS | 4,704. | | 0. | 4,704. |
| OTHER AMORTIZATION | 7,729. | -7,729. | 0. | 0. |
| TOTAL | 12,433. | -7,729. | 0. | 4,704. |

CONFIDENTIAL                                      ALECTO_00027484
                                                          **JA2692**

ALECTO HEALTHCARE SERVICES LLC                                           46-0829723

═══════════════════════════════════════════════════════════════════════════════

SCHEDULE M-3      OTHER EXPENSE/DEDUCTION ITEMS WITH DIFFERENCES      STATEMENT 27

| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | EXPENSE/ DEDUCTION PER TAX RETURN |
|---|---|---|---|---|
| EXCESS BUSINESS INTEREST EXPENSE | 0. | 187,193. | 0. | 187,193. |
| OFFICER'S LIFE INSURANCE | 25,837. | | -25,837. | 0. |
| SALARIES AND WAGES | 3,189,579. | 149,403. | 0. | 3,338,982. |
| TOTAL TO M-3, PART III, LINE 30 | 3,215,416. | 336,596. | -25,837. | 3,526,175. |

─────────────────────────────────────────────────────────────────────────────

SCHEDULE M-3                OTHER EXPENSE/DEDUCTION ITEMS              STATEMENT 28
                               WITH NO DIFFERENCES

| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | EXPENSE/ DEDUCTION PER TAX RETURN |
|---|---|---|
| AUTOMOBILE EXPENSE | 22,998. | 22,998. |
| BANK SERVICE CHARGES | 21,466. | 21,466. |
| COMPUTER AND INTERNET EXPENSES | 12,593. | 12,593. |
| DUES AND SUBSCRIPTIONS | 13,537. | 13,537. |
| EMPLOYEE BENEFIT PROGRAMS | 259,280. | 259,280. |
| INSURANCE | 102,537. | 102,537. |
| PAYROLL TAXES | 145,810. | 145,810. |
| PROFESSIONAL FEES | 227,313. | 227,313. |
| PURCHASED SERVICES | 202,802. | 202,802. |
| RENT EXPENSE | 68,414. | 68,414. |
| REPAIRS | 3,240. | 3,240. |
| SUPPLIES AND OTHER | 11,651. | 11,651. |
| TAXES AND LICENSES | 7,200. | 7,200. |
| TRAVEL EXPENSES | 97,427. | 97,427. |
| UTILITIES | 29,943. | 29,943. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 25 | 1,226,211. | 1,226,211. |

CONFIDENTIAL                                             ALECTO_00027485
                                                                         JA2693

| K-1<br>REV 5-19 | ☒ FROM SP 1 | Schedule of WV Partner/Shareholder/Member/Beneficiary<br>Income, Loss, Modification, Credits, and Withholding | | | | | 2019 |
|---|---|---|---|---|---|---|---|

### TAXABLE YEAR OF ORGANIZATION

| BEGINNING | | | | ENDING | | | |
|---|---|---|---|---|---|---|---|
| 01<br>MM | 01<br>DD | 2019<br>YYYY | | 12<br>MM | 31<br>DD | 2019<br>YYYY | |

| ORGANIZATION NAME (please type or print) | | | NAME OF PARTNER/SHAREHOLDER/MEMBER/BENEFICIARY | | | |
|---|---|---|---|---|---|---|

ALECTO HEALTHCARE SERVICES LLC     LAXMAN REDDY

| STREET or POST OFFICE BOX | | | STREET or POST OFFICE BOX | | | |
|---|---|---|---|---|---|---|

16310 BAKE PARKWAY SUITE 200

| CITY | STATE | ZIP | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| IRVINE | CA | 92618 | CALABASAS | CA | 91302 |

| WEST VIRGINIA IDENTIFICATION NUMBER | FEDERAL IDENTIFICATION NUMBER | FEIN | WV IDENTIFICATION NUMBER |
|---|---|---|---|
| | 460829723 | | |

CHECK ONE:

☐ S Corporation

☒ Limited Liability Company

☐ Partnership   ☐ Fiduciary

| | | |
|---|---|---|
| 1. Income subject to withholding for nonresident as reported on organization's S Corporation, Partnership or Fiduciary Return | $ -12335187 | .00 |
| 2. Amount of West Virginia income tax withheld (see instructions) | $ | .00 |
| PERCENTAGE OF OWNERSHIP | 68.000000 | % |

### INCOME

| | | | |
|---|---|---|---|
| 1. Distributive pro rata share of income allocable to West Virginia | 1 | | .00 |

### ADDITIONS

| | | | |
|---|---|---|---|
| 2. Interest or dividend income on federal obligations which is exempt from federal tax but subject to state tax | 2 | | .00 |
| 3. Interest or dividend income on state and local bonds other than bonds from West Virginia sources | 3 | | .00 |
| 4. Interest on money borrowed to purchase bonds earning income exempt from West Virginia tax | 4 | | .00 |
| 5. Any amount not included in federal income that was an eligible contribution for the Neighborhood Investment Program Tax Credit | 5 | | .00 |
| 6. Other Income deducted from federal adjusted gross income but subject to state tax | 6 | | .00 |

### SUBTRACTIONS

| | | | |
|---|---|---|---|
| 7. Interest or dividends received on United State or West Virginia obligations included in federal adjusted gross income but exempt from state tax | 7 | | .00 |
| 8. Refunds of state and local income taxes received and reported as income to the IRS | 8 | | .00 |
| 9. Other income included into federal adjusted gross income but excluded from state income tax | 9 | | .00 |
| 10. Allowance for governmental obligations secured by residential property | 10 | | .00 |

CA54201911

986871 10-10-19   (1019)

CONFIDENTIAL

ALECTO_00027486
JA2694

| NAME | ALECTO HEALTHCARE SERVICES LLC | | FEIN | 460829723 | |

## CREDITS ALLOCABLE TO PARTNER/SHAREHOLDER/MEMBER

| | | | |
|---|---|---|---|
| 11. Economic Opportunity Tax Credit | 11 | | .00 |
| 12. Environmental Agricultural Equipment Tax Credit | 12 | | .00 |
| 13. WV Neighborhood Investment Program Credit | 13 | | .00 |
| 14. Apprentice Training Tax Credit | 14 | | .00 |
| 15. Film Industry Investment Tax Credit | 15 | | .00 |
| 16. Alternative Fuel Tax Credit | 16 | | .00 |
| 17. Innovative Mine Safety Tax Credit | 17 | | .00 |
| 18. Historic Rehabilitated Buildings Tax Credit | 18 | | .00 |
| 19. West Virginia Military Incentive Tax Credit | 19 | | .00 |
| 20. Farm to Food Bank Tax Credit | 20 | | .00 |

**ADDITIONAL INFORMATION**

986872 10-10-19   (1019)

CA54201912

CONFIDENTIAL

ALECTO_00027487
**JA2695**

| K-1 REV 5-19 | ☒ FROM SP 2 | Schedule of WV Partner/Shareholder/Member/Beneficiary Income, Loss, Modification, Credits, and Withholding | 2019 |
|---|---|---|---|

**TAXABLE YEAR OF ORGANIZATION**

| BEGINNING | 01 MM | 01 DD | 2019 YYYY | ENDING | 12 MM | 31 DD | 2019 YYYY |
|---|---|---|---|---|---|---|---|

| ORGANIZATION NAME (please type or print) | NAME OF PARTNER/SHAREHOLDER/MEMBER/BENEFICIARY |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | ROGER KRISSMAN |

| STREET or POST OFFICE BOX | STREET or POST OFFICE BOX |
|---|---|
| 16310 BAKE PARKWAY SUITE 200 | |

| CITY | STATE | ZIP | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| IRVINE | CA | 92618 | UPLAND | CA | 91786 |

| WEST VIRGINIA IDENTIFICATION NUMBER | FEDERAL IDENTIFICATION NUMBER 460829723 | FEIN | WV IDENTIFICATION NUMBER |
|---|---|---|---|

CHECK ONE:

☐ S Corporation

☒ Limited Liability Company

☐ Partnership   ☐ Fiduciary

1. Income subject to withholding for nonresident as reported on organization's S Corporation, Partnership or Fiduciary Return    $ −1813998 .00

2. Amount of West Virginia income tax withheld (see instructions)    $ .00

PERCENTAGE OF OWNERSHIP    10.000000 %

**INCOME**

| | | | |
|---|---|---|---|
| 1. Distributive pro rata share of income allocable to West Virginia | | 1 | .00 |

**ADDITIONS**

| | | | |
|---|---|---|---|
| 2. Interest or dividend income on federal obligations which is exempt from federal tax but subject to state tax | | 2 | .00 |
| 3. Interest or dividend income on state and local bonds other than bonds from West Virginia sources | | 3 | .00 |
| 4. Interest on money borrowed to purchase bonds earning income exempt from West Virginia tax | | 4 | .00 |
| 5. Any amount not included in federal income that was an eligible contribution for the Neighborhood Investment Program Tax Credit | | 5 | .00 |
| 6. Other Income deducted from federal adjusted gross income but subject to state tax | | 6 | .00 |

**SUBTRACTIONS**

| | | | |
|---|---|---|---|
| 7. Interest or dividends received on United State or West Virginia obligations included in federal adjusted gross income but exempt from state tax | | 7 | .00 |
| 8. Refunds of state and local income taxes received and reported as income to the IRS | | 8 | .00 |
| 9. Other income included into federal adjusted gross income but excluded from state income tax | | 9 | .00 |
| 10. Allowance for governmental obligations secured by residential property | | 10 | .00 |

CA54201911

986871 10-10-19   (1019)

CONFIDENTIAL

ALECTO_00027488
JA2696

| NAME | ALECTO HEALTHCARE SERVICES LLC | FEIN | 460829723 |

**CREDITS ALLOCABLE TO PARTNER/SHAREHOLDER/MEMBER**

| | | | |
|---|---|---|---|
| 11. Economic Opportunity Tax Credit | 11 | | .00 |
| 12. Environmental Agricultural Equipment Tax Credit | 12 | | .00 |
| 13. WV Neighborhood Investment Program Credit | 13 | | .00 |
| 14. Apprentice Training Tax Credit | 14 | | .00 |
| 15. Film Industry Investment Tax Credit | 15 | | .00 |
| 16. Alternative Fuel Tax Credit | 16 | | .00 |
| 17. Innovative Mine Safety Tax Credit | 17 | | .00 |
| 18. Historic Rehabilitated Buildings Tax Credit | 18 | | .00 |
| 19. West Virginia Military Incentive Tax Credit | 19 | | .00 |
| 20. Farm to Food Bank Tax Credit | 20 | | .00 |

**ADDITIONAL INFORMATION**

986872 10-10-19   (1019)

CA54201912

CONFIDENTIAL

ALECTO_00027489
**JA2697**

| K-1<br>REV 5-19 | ☒ FROM SP 3 | Schedule of WV Partner/Shareholder/Member/Beneficiary<br>Income, Loss, Modification, Credits, and Withholding | | | | | | 2019 |

## TAXABLE YEAR OF ORGANIZATION

| BEGINNING | | | | ENDING | | | |
|---|---|---|---|---|---|---|---|
| 01<br>MM | 01<br>DD | 2019<br>YYYY | | 12<br>MM | 31<br>DD | 2019<br>YYYY | |

ORGANIZATION NAME (please type or print) | NAME OF PARTNER/SHAREHOLDER/MEMBER/BENEFICIARY

ALECTO HEALTHCARE SERVICES LLC | MICHAEL J SARRAO

STREET or POST OFFICE BOX | STREET or POST OFFICE BOX

16310 BAKE PARKWAY SUITE 200

| CITY | STATE | ZIP | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| IRVINE | CA | 92618 | MISSION VIEJO | CA | 92692 |

| WEST VIRGINIA IDENTIFICATION NUMBER | FEDERAL IDENTIFICATION NUMBER<br>460829723 | FEIN | WV IDENTIFICATION NUMBER |
|---|---|---|---|

CHECK ONE:

☐ S Corporation

☒ Limited Liability Company

☐ Partnership   ☐ Fiduciary

1. Income subject to withholding for nonresident as reported on organization's S Corporation, Partnership or Fiduciary Return        $ -1269799 .00

2. Amount of West Virginia income tax withheld (see instructions)        $ .00

PERCENTAGE OF OWNERSHIP        7.000000 %

## INCOME

| | | |
|---|---|---|
| 1. Distributive pro rata share of income allocable to West Virginia | 1 | .00 |

## ADDITIONS

| | | |
|---|---|---|
| 2. Interest or dividend income on federal obligations which is exempt from federal tax but subject to state tax | 2 | .00 |
| 3. Interest or dividend income on state and local bonds other than bonds from West Virginia sources | 3 | .00 |
| 4. Interest on money borrowed to purchase bonds earning income exempt from West Virginia tax | 4 | .00 |
| 5. Any amount not included in federal income that was an eligible contribution for the Neighborhood Investment Program Tax Credit | 5 | .00 |
| 6. Other Income deducted from federal adjusted gross income but subject to state tax | 6 | .00 |

## SUBTRACTIONS

| | | |
|---|---|---|
| 7. Interest or dividends received on United State or West Virginia obligations included in federal adjusted gross income but exempt from state tax | 7 | .00 |
| 8. Refunds of state and local income taxes received and reported as income to the IRS | 8 | .00 |
| 9. Other income included into federal adjusted gross income but excluded from state income tax | 9 | .00 |
| 10. Allowance for governmental obligations secured by residential property | 10 | .00 |

CA54201911

986871 10-10-19   (1019)

ALECTO_00027490
JA2698

| NAME | ALECTO HEALTHCARE SERVICES LLC | FEIN | 460829723 |

**CREDITS ALLOCABLE TO PARTNER/SHAREHOLDER/MEMBER**

| | | | |
|---|---|---|---|
| 11. Economic Opportunity Tax Credit | 11 | | .00 |
| 12. Environmental Agricultural Equipment Tax Credit | 12 | | .00 |
| 13. WV Neighborhood Investment Program Credit | 13 | | .00 |
| 14. Apprentice Training Tax Credit | 14 | | .00 |
| 15. Film Industry Investment Tax Credit | 15 | | .00 |
| 16. Alternative Fuel Tax Credit | 16 | | .00 |
| 17. Innovative Mine Safety Tax Credit | 17 | | .00 |
| 18. Historic Rehabilitated Buildings Tax Credit | 18 | | .00 |
| 19. West Virginia Military Incentive Tax Credit | 19 | | .00 |
| 20. Farm to Food Bank Tax Credit | 20 | | .00 |

**ADDITIONAL INFORMATION**

986872 10-10-19   (1019)

CA54201912

CONFIDENTIAL

ALECTO_00027491
**JA2699**

**K-1** ☒ FROM SP REV 5-19 4

## Schedule of WV Partner/Shareholder/Member/Beneficiary Income, Loss, Modification, Credits, and Withholding

**2019**

### TAXABLE YEAR OF ORGANIZATION

| BEGINNING | 01 MM | 01 DD | 2019 YYYY | ENDING | 12 MM | 31 DD | 2019 YYYY |
|---|---|---|---|---|---|---|---|

| ORGANIZATION NAME (please type or print) | NAME OF PARTNER/SHAREHOLDER/MEMBER/BENEFICIARY |
|---|---|

ALECTO HEALTHCARE SERVICES LLC | PANCH JEYAKUMAR

| STREET or POST OFFICE BOX | STREET or POST OFFICE BOX |
|---|---|

16310 BAKE PARKWAY SUITE 200

| CITY | STATE | ZIP | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| IRVINE | CA | 92618 | TUSTIN | CA | 92782 |

| WEST VIRGINIA IDENTIFICATION NUMBER | FEDERAL IDENTIFICATION NUMBER | FEIN | WV IDENTIFICATION NUMBER |
|---|---|---|---|
| | 460829723 | | |

CHECK ONE:

☐ S Corporation

☒ Limited Liability Company

☐ Partnership   ☐ Fiduciary

1. Income subject to withholding for nonresident as reported on organization's S Corporation, Partnership or Fiduciary Return  $ .00

2. Amount of West Virginia income tax withheld (see instructions)  $ .00

PERCENTAGE OF OWNERSHIP %

### INCOME

| | | |
|---|---|---|
| 1. Distributive pro rata share of income allocable to West Virginia | 1 | .00 |

### ADDITIONS

| | | |
|---|---|---|
| 2. Interest or dividend income on federal obligations which is exempt from federal tax but subject to state tax | 2 | .00 |
| 3. Interest or dividend income on state and local bonds other than bonds from West Virginia sources | 3 | .00 |
| 4. Interest on money borrowed to purchase bonds earning income exempt from West Virginia tax | 4 | .00 |
| 5. Any amount not included in federal income that was an eligible contribution for the Neighborhood Investment Program Tax Credit | 5 | .00 |
| 6. Other Income deducted from federal adjusted gross income but subject to state tax | 6 | .00 |

### SUBTRACTIONS

| | | |
|---|---|---|
| 7. Interest or dividends received on United State or West Virginia obligations included in federal adjusted gross income but exempt from state tax | 7 | .00 |
| 8. Refunds of state and local income taxes received and reported as income to the IRS | 8 | .00 |
| 9. Other income included into federal adjusted gross income but excluded from state income tax | 9 | .00 |
| 10. Allowance for governmental obligations secured by residential property | 10 | .00 |

||||||| CA54201911

986871 10-10-19 (1019)

CONFIDENTIAL

ALECTO_00027492
JA2700

| NAME | ALECTO HEALTHCARE SERVICES LLC | | FEIN | 460829723 |

## CREDITS ALLOCABLE TO PARTNER/SHAREHOLDER/MEMBER

| | | | |
|---|---|---|---|
| 11. Economic Opportunity Tax Credit | 11 | | .00 |
| 12. Environmental Agricultural Equipment Tax Credit | 12 | | .00 |
| 13. WV Neighborhood Investment Program Credit | 13 | | .00 |
| 14. Apprentice Training Tax Credit | 14 | | .00 |
| 15. Film Industry Investment Tax Credit | 15 | | .00 |
| 16. Alternative Fuel Tax Credit | 16 | | .00 |
| 17. Innovative Mine Safety Tax Credit | 17 | | .00 |
| 18. Historic Rehabilitated Buildings Tax Credit | 18 | | .00 |
| 19. West Virginia Military Incentive Tax Credit | 19 | | .00 |
| 20. Farm to Food Bank Tax Credit | 20 | | .00 |

## ADDITIONAL INFORMATION

986872 10-10-19   (1019)

CA54201912

CONFIDENTIAL

ALECTO_00027493
JA2701

Case 23-10787-JKS   Doc 307-7   Filed 02/29/24   Page 17 of 24

| K-1 REV 5-19 | ☒ FROM SP 6 | Schedule of WV Partner/Shareholder/Member/Beneficiary Income, Loss, Modification, Credits, and Withholding | | 2019 |
|---|---|---|---|---|

### TAXABLE YEAR OF ORGANIZATION

| BEGINNING | 01 MM | 01 DD | 2019 YYYY | ENDING | 12 MM | 31 DD | 2019 YYYY |
|---|---|---|---|---|---|---|---|

| ORGANIZATION NAME (please type or print) | NAME OF PARTNER/SHAREHOLDER/MEMBER/BENEFICIARY |
|---|---|

ALECTO HEALTHCARE SERVICES LLC

MATT WILLIAMS

STREET or POST OFFICE BOX

STREET or POST OFFICE BOX

16310 BAKE PARKWAY SUITE 200

| CITY | STATE | ZIP | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| IRVINE | CA | 92618 | WEST HOLLYWOOD | CA | 90046 |

| WEST VIRGINIA IDENTIFICATION NUMBER | FEDERAL IDENTIFICATION NUMBER | FEIN | WV IDENTIFICATION NUMBER |
|---|---|---|---|
| | 460829723 | | |

CHECK ONE:

☐ S Corporation

☒ Limited Liability Company

☐ Partnership   ☐ Fiduciary

| 1. Income subject to withholding for nonresident as reported on organization's S Corporation, Partnership or Fiduciary Return | $ | -906999 | .00 |
|---|---|---|---|
| 2. Amount of West Virginia income tax withheld (see instructions) | $ | | .00 |

| PERCENTAGE OF OWNERSHIP | 5.000000 | % |
|---|---|---|

### INCOME

| 1. Distributive pro rata share of income allocable to West Virginia | 1 | | .00 |
|---|---|---|---|

### ADDITIONS

| 2. Interest or dividend income on federal obligations which is exempt from federal tax but subject to state tax | 2 | | .00 |
|---|---|---|---|
| 3. Interest or dividend income on state and local bonds other than bonds from West Virginia sources | 3 | | .00 |
| 4. Interest on money borrowed to purchase bonds earning income exempt from West Virginia tax | 4 | | .00 |
| 5. Any amount not included in federal income that was an eligible contribution for the Neighborhood Investment Program Tax Credit | 5 | | .00 |
| 6. Other Income deducted from federal adjusted gross income but subject to state tax | 6 | | .00 |

### SUBTRACTIONS

| 7. Interest or dividends received on United State or West Virginia obligations included in federal adjusted gross income but exempt from state tax | 7 | | .00 |
|---|---|---|---|
| 8. Refunds of state and local income taxes received and reported as income to the IRS | 8 | | .00 |
| 9. Other income included into federal adjusted gross income but excluded from state income tax | 9 | | .00 |
| 10. Allowance for governmental obligations secured by residential property | 10 | | .00 |



986871 10-10-19   (1019)

CONFIDENTIAL

ALECTO_00027494
JA2702

| NAME | ALECTO HEALTHCARE SERVICES LLC | FEIN | 460829723 |

## CREDITS ALLOCABLE TO PARTNER/SHAREHOLDER/MEMBER

| | | | |
|---|---|---|---|
| 11. Economic Opportunity Tax Credit | 11 | | .00 |
| 12. Environmental Agricultural Equipment Tax Credit | 12 | | .00 |
| 13. WV Neighborhood Investment Program Credit | 13 | | .00 |
| 14. Apprentice Training Tax Credit | 14 | | .00 |
| 15. Film Industry Investment Tax Credit | 15 | | .00 |
| 16. Alternative Fuel Tax Credit | 16 | | .00 |
| 17. Innovative Mine Safety Tax Credit | 17 | | .00 |
| 18. Historic Rehabilitated Buildings Tax Credit | 18 | | .00 |
| 19. West Virginia Military Incentive Tax Credit | 19 | | .00 |
| 20. Farm to Food Bank Tax Credit | 20 | | .00 |

## ADDITIONAL INFORMATION

986872  10-10-19   (1019)

CA54201912

| K-1 ☒ FROM SP | | Schedule of WV Partner/Shareholder/Member/Beneficiary | | | | | | 2019 |
|---|---|---|---|---|---|---|---|---|
| REV 5-19 | 7 | Income, Loss, Modification, Credits, and Withholding | | | | | | |

**TAXABLE YEAR OF ORGANIZATION**

| BEGINNING | 01 MM | 01 DD | 2019 YYYY | ENDING | 12 MM | 31 DD | 2019 YYYY |
|---|---|---|---|---|---|---|---|

| ORGANIZATION NAME (please type or print) | NAME OF PARTNER/SHAREHOLDER/MEMBER/BENEFICIARY |
|---|---|
| ALECTO HEALTHCARE SERVICES LLC | STEVEN KAY |

| STREET or POST OFFICE BOX | STREET or POST OFFICE BOX |
|---|---|
| 16310 BAKE PARKWAY SUITE 200 | |

| CITY | STATE | ZIP | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| IRVINE | CA | 92618 | SAN FRANCISCO | CA | 94105 |

| WEST VIRGINIA IDENTIFICATION NUMBER | FEDERAL IDENTIFICATION NUMBER | FEIN | WV IDENTIFICATION NUMBER |
|---|---|---|---|
| | 460829723 | | |

CHECK ONE:

☐ S Corporation

☒ Limited Liability Company

☐ Partnership   ☐ Fiduciary

| | | |
|---|---|---|
| 1. Income subject to withholding for nonresident as reported on organization's S Corporation, Partnership or Fiduciary Return | $ | -906999 .00 |
| 2. Amount of West Virginia income tax withheld (see instructions) | $ | .00 |
| PERCENTAGE OF OWNERSHIP | | 5.000000 % |

**INCOME**

| | | | |
|---|---|---|---|
| 1. Distributive pro rata share of income allocable to West Virginia | 1 | | .00 |

**ADDITIONS**

| | | | |
|---|---|---|---|
| 2. Interest or dividend income on federal obligations which is exempt from federal tax but subject to state tax | 2 | | .00 |
| 3. Interest or dividend income on state and local bonds other than bonds from West Virginia sources | 3 | | .00 |
| 4. Interest on money borrowed to purchase bonds earning income exempt from West Virginia tax | 4 | | .00 |
| 5. Any amount not included in federal income that was an eligible contribution for the Neighborhood Investment Program Tax Credit | 5 | | .00 |
| 6. Other Income deducted from federal adjusted gross income but subject to state tax | 6 | | .00 |

**SUBTRACTIONS**

| | | | |
|---|---|---|---|
| 7. Interest or dividends received on United State or West Virginia obligations included in federal adjusted gross income but exempt from state tax | 7 | | .00 |
| 8. Refunds of state and local income taxes received and reported as income to the IRS | 8 | | .00 |
| 9. Other income included into federal adjusted gross income but excluded from state income tax | 9 | | .00 |
| 10. Allowance for governmental obligations secured by residential property | 10 | | .00 |

CA54201911

986871  10-10-19   (1019)

CONFIDENTIAL

ALECTO_00027496
JA2704

| NAME | ALECTO HEALTHCARE SERVICES LLC | FEIN | 460829723 |

## CREDITS ALLOCABLE TO PARTNER/SHAREHOLDER/MEMBER

| | | |
|---|---|---|
| 11. Economic Opportunity Tax Credit | 11 | .00 |
| 12. Environmental Agricultural Equipment Tax Credit | 12 | .00 |
| 13. WV Neighborhood Investment Program Credit | 13 | .00 |
| 14. Apprentice Training Tax Credit | 14 | .00 |
| 15. Film Industry Investment Tax Credit | 15 | .00 |
| 16. Alternative Fuel Tax Credit | 16 | .00 |
| 17. Innovative Mine Safety Tax Credit | 17 | .00 |
| 18. Historic Rehabilitated Buildings Tax Credit | 18 | .00 |
| 19. West Virginia Military Incentive Tax Credit | 19 | .00 |
| 20. Farm to Food Bank Tax Credit | 20 | .00 |

**ADDITIONAL INFORMATION**

986872  10-10-19    (1019)

CA54201912

CONFIDENTIAL

ALECTO_00027497
**JA2705**

Case 23-10787-JKS   Doc 307-7   Filed 02/29/24   Page 21 of 24

| K-1 REV 5-19 | ☒ FROM SP 8 | Schedule of WV Partner/Shareholder/Member/Beneficiary Income, Loss, Modification, Credits, and Withholding | 2019 |
|---|---|---|---|

**TAXABLE YEAR OF ORGANIZATION**

| BEGINNING | 01 MM | 01 DD | 2019 YYYY | ENDING | 12 MM | 31 DD | 2019 YYYY |
|---|---|---|---|---|---|---|---|

| ORGANIZATION NAME (please type or print) | | | | NAME OF PARTNER/SHAREHOLDER/MEMBER/BENEFICIARY | | | |
|---|---|---|---|---|---|---|---|
| ALECTO HEALTHCARE SERVICES LLC | | | | HAYES IRREVOCABLE TRUST | | | |
| STREET or POST OFFICE BOX | | | | STREET or POST OFFICE BOX | | | |
| 16310 BAKE PARKWAY SUITE 200 | | | | | | | |
| CITY | STATE | ZIP | | CITY | | STATE | ZIP |
| IRVINE | CA | 92618 | | DALLAS | | TX | 75225 |
| WEST VIRGINIA IDENTIFICATION NUMBER | FEDERAL IDENTIFICATION NUMBER | | | FEIN | | WV IDENTIFICATION NUMBER | |
| | 460829723 | | | | | | |

CHECK ONE:

☐ S Corporation

☒ Limited Liability Company

☐ Partnership   ☐ Fiduciary

| | | |
|---|---|---|
| 1. Income subject to withholding for nonresident as reported on organization's S Corporation, Partnership or Fiduciary Return | $ -906999 | .00 |
| 2. Amount of West Virginia income tax withheld (see instructions) | $ | .00 |
| PERCENTAGE OF OWNERSHIP | 5.000000 | % |

**INCOME**

| | | | |
|---|---|---|---|
| 1. Distributive pro rata share of income allocable to West Virginia | 1 | | .00 |

**ADDITIONS**

| | | | |
|---|---|---|---|
| 2. Interest or dividend income on federal obligations which is exempt from federal tax but subject to state tax | 2 | | .00 |
| 3. Interest or dividend income on state and local bonds other than bonds from West Virginia sources | 3 | | .00 |
| 4. Interest on money borrowed to purchase bonds earning income exempt from West Virginia tax | 4 | | .00 |
| 5. Any amount not included in federal income that was an eligible contribution for the Neighborhood Investment Program Tax Credit | 5 | | .00 |
| 6. Other Income deducted from federal adjusted gross income but subject to state tax | 6 | | .00 |

**SUBTRACTIONS**

| | | | |
|---|---|---|---|
| 7. Interest or dividends received on United State or West Virginia obligations included in federal adjusted gross income but exempt from state tax | 7 | | .00 |
| 8. Refunds of state and local income taxes received and reported as income to the IRS | 8 | | .00 |
| 9. Other income included into federal adjusted gross income but excluded from state income tax | 9 | | .00 |
| 10. Allowance for governmental obligations secured by residential property | 10 | | .00 |

CA54201911

986871 10-10-19   (1019)

CONFIDENTIAL

ALECTO_00027498
**JA2706**

| NAME | ALECTO HEALTHCARE SERVICES LLC | FEIN | 460829723 |

## CREDITS ALLOCABLE TO PARTNER/SHAREHOLDER/MEMBER

| | | |
|---|---|---|
| 11. Economic Opportunity Tax Credit | 11 | .00 |
| 12. Environmental Agricultural Equipment Tax Credit | 12 | .00 |
| 13. WV Neighborhood Investment Program Credit | 13 | .00 |
| 14. Apprentice Training Tax Credit | 14 | .00 |
| 15. Film Industry Investment Tax Credit | 15 | .00 |
| 16. Alternative Fuel Tax Credit | 16 | .00 |
| 17. Innovative Mine Safety Tax Credit | 17 | .00 |
| 18. Historic Rehabilitated Buildings Tax Credit | 18 | .00 |
| 19. West Virginia Military Incentive Tax Credit | 19 | .00 |
| 20. Farm to Food Bank Tax Credit | 20 | .00 |

## ADDITIONAL INFORMATION

986872 10-10-19   (1019)

CA54201912

CONFIDENTIAL

| K-1 REV 5-19 | ☒ FROM SP 9 | Schedule of WV Partner/Shareholder/Member/Beneficiary Income, Loss, Modification, Credits, and Withholding | | | | 2019 |

### TAXABLE YEAR OF ORGANIZATION

| BEGINNING | 01 MM | 01 DD | 2019 YYYY | ENDING | 12 MM | 31 DD | 2019 YYYY |

| ORGANIZATION NAME (please type or print) | NAME OF PARTNER/SHAREHOLDER/MEMBER/BENEFICIARY |

ALECTO HEALTHCARE SERVICES LLC

AMAN DHUPER

STREET or POST OFFICE BOX

16310 BAKE PARKWAY SUITE 200

STREET or POST OFFICE BOX

| CITY | STATE | ZIP | CITY | STATE | ZIP |

IRVINE    CA    92618

RANCHO CUCAMONGA    CA    91739

| WEST VIRGINIA IDENTIFICATION NUMBER | FEDERAL IDENTIFICATION NUMBER | FEIN | WV IDENTIFICATION NUMBER |

460829723

CHECK ONE:

☐ S Corporation

☒ Limited Liability Company

☐ Partnership    ☐ Fiduciary

1. Income subject to withholding for nonresident as reported on organization's S Corporation, Partnership or Fiduciary Return        $ _____ .00

2. Amount of West Virginia income tax withheld (see instructions)        $ _____ .00

PERCENTAGE OF OWNERSHIP        _____ %

### INCOME

| | | |
|---|---|---|
| 1. Distributive pro rata share of income allocable to West Virginia | 1 | .00 |

### ADDITIONS

| | | |
|---|---|---|
| 2. Interest or dividend income on federal obligations which is exempt from federal tax but subject to state tax | 2 | .00 |
| 3. Interest or dividend income on state and local bonds other than bonds from West Virginia sources | 3 | .00 |
| 4. Interest on money borrowed to purchase bonds earning income exempt from West Virginia tax | 4 | .00 |
| 5. Any amount not included in federal income that was an eligible contribution for the Neighborhood Investment Program Tax Credit | 5 | .00 |
| 6. Other Income deducted from federal adjusted gross income but subject to state tax | 6 | .00 |

### SUBTRACTIONS

| | | |
|---|---|---|
| 7. Interest or dividends received on United State or West Virginia obligations included in federal adjusted gross income but exempt from state tax | 7 | .00 |
| 8. Refunds of state and local income taxes received and reported as income to the IRS | 8 | .00 |
| 9. Other income included into federal adjusted gross income but excluded from state income tax | 9 | .00 |
| 10. Allowance for governmental obligations secured by residential property | 10 | .00 |

CA54201911

986871 10-10-19    (1019)

CONFIDENTIAL

ALECTO_00027500
JA2708

| NAME | ALECTO HEALTHCARE SERVICES LLC | | FEIN | 460829723 |

**CREDITS ALLOCABLE TO PARTNER/SHAREHOLDER/MEMBER**

| | | | |
|---|---|---|---|
| 11. Economic Opportunity Tax Credit | 11 | | .00 |
| 12. Environmental Agricultural Equipment Tax Credit | 12 | | .00 |
| 13. WV Neighborhood Investment Program Credit | 13 | | .00 |
| 14. Apprentice Training Tax Credit | 14 | | .00 |
| 15. Film Industry Investment Tax Credit | 15 | | .00 |
| 16. Alternative Fuel Tax Credit | 16 | | .00 |
| 17. Innovative Mine Safety Tax Credit | 17 | | .00 |
| 18. Historic Rehabilitated Buildings Tax Credit | 18 | | .00 |
| 19. West Virginia Military Incentive Tax Credit | 19 | | .00 |
| 20. Farm to Food Bank Tax Credit | 20 | | .00 |

**ADDITIONAL INFORMATION**

986872 10-10-19   (1019)

CA54201912

CONFIDENTIAL

**Exhibit C**

ALECTO HEALTHCARE SERVICES LLC

A Delaware Limited Liability Company

AMENDED AND RESTATED

OPERATING AGREEMENT

CONFIDENTIAL

## ALECTO HEALTHCARE SERVICES LLC

### AMENDED AND RESTATED

### OPERATING AGREEMENT

This Operating Agreement (this "Agreement") is entered into this first day of December 2012 and is to be effective with the opening of business on the first day of January 2013, by and among the Persons identified as Members (each a "Member" and collectively the "Members") in Exhibit A which is incorporated herein by reference. Except as otherwise provided, the capitalized terms used in this Agreement shall have the meanings set forth in Article I hereof.

WHEREAS, Alecto Healthcare Services LLC, formerly known as Alecto Healthcare LLC (the "Company"), was formed as a limited liability company under the laws of the State of Delaware by the filing of the Certificate of Formation with the Delaware Secretary of State on August 13, 2012 (the "Effective Date"), as amended by Certificate of Amendment filed with the Delaware Secretary of State on August 15, 2012; and

WHEREAS, the Company was formed to manage, purchase and/or operate acute care hospitals throughout the United States (the "Business"); and

WHEREAS, Lex Reddy, as the then sole member, entered into an Operating Agreement dated August 22, 2012 (the "Original Agreement") providing for the organization and operation of the Company; and

WHEREAS, Lex Reddy desires to admit additional members, subject to their execution of this Agreement and upon payment of the Capital Contributions hereinafter provided; and

WHEREAS, the Members desire to enter into this Agreement to create two classes of Membership, to provide for their respective rights, obligations and duties, and to set forth the provisions for the management and governance of the Company; and

NOW, THEREFORE, in consideration of the mutual covenants herein expressed, and for other valuable consideration, the receipt of which is hereby acknowledged, the parties hereto hereby agree as follows:

### ARTICLE I
#### Definitions

The following defined terms used in this Agreement shall have the meanings specified below:

"Act" shall mean the Delaware Limited Liability Company Act, in effect at the time of the initial filing of the Articles, and as thereafter amended from time to time.

"Adjusted Capital Account Deficit" shall mean, with respect to any Member, the deficit balance, if any, in such Member's aggregate Capital Account as of the end of the relevant fiscal year, after giving effect to the following adjustments:

1

(a) Credit to such Capital Account any amounts which such Member is obligated to restore pursuant to any provision of this Agreement or is deemed to be obligated to restore pursuant to Regulations Section 1.704-2(g)(1) and 1.704-2(i)(5); and

(b) Debit to such Capital Account the items described in Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) and (6).

The foregoing definition is intended to comply with the provisions of Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

"Adverse Terminating Event" shall have the meaning set forth in Section 4.3.

"Affiliated Person" or "Affiliate" shall mean, with reference to a specified Person, (a) any member of such Person's Immediate Family, (b) any Person who owns directly or indirectly ten percent (10%) or more of the beneficial ownership in such Person, (c) any one or more Legal Representatives of such Person and/or any Persons referred to in the preceding clauses (a) or (b); and (d) any entity in which any one or more of such Person and/or the Persons referred to in the preceding clauses (a), (b) or (c) owns directly or indirectly ten percent (10%) or more of the beneficial ownership.

"Agreement" shall mean this Amended and Restated Operating Agreement as it may be amended, supplemented, or restated from time to time.

"Applicable Federal Rate" shall mean the Applicable Federal Rate as that term is defined in Code Section 1274(d)(1), whether the short-term, mid-term or long-term rate, as the case may be, as published from time to time by the Secretary of the Treasury.

"Approval of the Board" or "Board Acting by Approval" and any grammatical variation thereof, shall mean consent, approval or vote of a majority of the Managers then in office.

"Articles" shall mean the Certificate of Formation creating the Company, and as may, from time to time, be amended in accordance with the Act.

"Bankruptcy" shall mean any of the following:

(a) If any Member shall file a voluntary petition in bankruptcy, or shall file any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under the present or any future federal bankruptcy act or any other present or future applicable federal, state, or other statute or law relating to bankruptcy, insolvency, or other relief for debtors, or shall file any answer or other pleading admitting or failing to contest the material allegations of any petition in bankruptcy or any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief filed against such Member, or shall seek or consent to or acquiesce in the appointment of any trustee, receiver, conservator, or liquidator of such Member or of all or any substantial part of his or her properties or his or her interest in the Company (the term "acquiesce" as used herein includes but is not limited to the failure to file a petition or motion to vacate or discharge any order, judgment, or decree within thirty days after such order, judgment or decree);

2

ALECTO_00028650
JA2713

(b)      If a court of competent jurisdiction shall enter in an order, judgment or decree approving a petition filed against any Member seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under the present or any future federal bankruptcy act or any other present or future applicable federal, state, or other statute or law relating to bankruptcy, insolvency, or other relief for debtors and such Member shall acquiesce in the entry of such order, judgment, or decree, or if any Member shall suffer the entry of an order for relief under Title 11 of the United States Code and such order, judgment, or decree shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive) from the date of entry thereof, or if any trustee, receiver, conservator, or liquidator of any Member or of all or any substantial part of his or her properties or his or her interest in the Company shall be appointed without the consent or acquiescence of such Member and such appointment shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive); or

(c)      If any Member shall make an assignment for the benefit of creditors or take any other similar action for the protection or benefit of creditors.

"Board" or "Board of Managers" shall refer collectively to the Persons named to be the Managers in this Agreement and any Person who becomes an additional, substitute or replacement Manager as permitted by this Agreement, in each such Person's capacity on the Board of Managers of the Company.

"Book Value" shall mean, with respect to any asset of the Company, such asset's adjusted basis for federal income tax purposes, except that:

(a)      The initial Book Value of any asset contributed by a Member of the Company shall be the gross fair market value of such asset (reduced for any liabilities to which it is subject or which the Company assumes), as such value is determined by Approval of the Board, and for which credit is given to the contributing Member under this Agreement;

(b)      The Book Values of all assets of the Company shall be adjusted to equal their respective gross fair market values, as determined by Approval of the Board, at and as of the following times:

(i)      The acquisition of an additional or new interest in the Company by a new or existing Member in exchange for other than a de minimis Capital Contribution by such Member, if the Board, acting by Approval, reasonably determines that such adjustment is necessary or appropriate to reflect the relative economic interests of the Members;

(ii)      The distribution by the Company to a Member of more than a de minimis amount of any asset of the Company (including cash or cash equivalents) as consideration for all or any portion of an interest in the Company, if the Board, acting by Approval, reasonably determines that such adjustment is necessary or appropriate to reflect the relative economic interests of the Members; and

(iii)      The liquidation of the Company within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g).

CONFIDENTIAL

(c)     The Book Value of the assets of the Company shall be increased (or decreased) to reflect any adjustment to the adjusted basis of such assets pursuant to Section 734(b) or Section 743(b) of the Code, but only to the extent such adjustments are taken into account in determining Capital Accounts pursuant to Regulations Section 1.704 1(b)(2)(iv)(m); provided, however, that Book Value shall not be adjusted pursuant to this clause (c) to the extent that the Managers, acting by Approval, determines that an adjustment pursuant to the immediately preceding clause (b) is necessary or appropriate in connection with the transaction that would otherwise result in an adjustment pursuant to this clause (c).

If the Book Value of an asset has been determined or adjusted pursuant to the preceding clauses (a), (b) or (c), such Book Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset for purposes of computing Profits or Losses.

"Capital Account" shall mean a capital account maintained and adjusted in accordance with the Code and the Regulations, including the Regulations under Section 704(b) and (c) of the Code. The Capital Account of each Member shall be:

(a)     Credited with all payments made to the Company by such Member on account of Capital Contributions (and as to any property other than cash or a promissory note of the contributing Member, the agreed (as indicated by the Approval of the Board) fair market value of such property, net of liabilities secured by such property and assumed by the Company or subject to which such contributed property is taken) and by such Member's allocable share of Profits and items in the nature of income and gain of the Company;

(b)     Charged with the amount of any distributions to such Member (and as to any distributions of property other than cash or a promissory note of a Member or the Company, by the agreed fair market value of such property, net of liabilities secured by such property and assumed by such Member or subject to which such distributed property is taken), and by such Member's allocable share of Losses and items in the nature of Losses and deductions of the Company;

(c)     Adjusted simultaneously with the making of any adjustment to the Book Value of the Company's assets pursuant to the definition thereof, to reflect the aggregate net adjustments to such Book Value as if the Company recognized Profit or Loss equal to the respective amount of such aggregate net adjustments immediately before the event causing such adjustments; and

(d)     Otherwise appropriately adjusted to reflect transactions of the Company and the Members.

"Capital Contribution" shall mean the amount of cash and the value of any other property contributed to the Company by a Member.

"Class A Member" shall mean any Member holding Class A Units in the Company, in each such Member's capacity as a holder of Class A Units.

"Class B Member" shall mean initially Lex Reddy, and shall include any Member subsequently holding Class B Units in the Company.

4

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time.

"Consent of the Class B Members" shall mean the written consent or approval of the Class B Members.

"Depreciation" shall mean, for each year or other period, an amount equal to the depreciation, amortization or other cost recovery deduction allowable for federal income tax purposes with respect to an asset for such year or other period, except that if the Book Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of such year or other period, Depreciation shall be an amount that bears the same relationship to the Book Value of such asset as the depreciation, amortization or other cost recovery deduction computed for tax purposes with respect to such asset for such period bears to the adjusted tax basis for such asset, or if such asset has a zero adjusted tax basis, Depreciation shall be determined with reference to the initial Book Value of such asset using any reasonable method selected by Approval of the Board, but not less than depreciation allowable for tax purposes for such year.

"Disability" shall mean the inability of a Class A Member by reason of mental or physical illness, disease or injury, to perform services for the Business on a substantially full time basis for a minimum period of six (6) consecutive months or six (6) months cumulatively in any twelve (12) month period as determined by the Approval of the Board.

"Formula Amount" shall mean the deemed value of the Company for purposes of redemption of a Member's ownership interest in the Company pursuant to Section 4.3 hereof. The Formula Amount shall be determined as follows: (i) if the Company has been in operation for less than one (1) calendar year, the Formula Amount shall equal the actual amount of cash equity invested in the Company by all Members; or (ii) if the Company has been in operation for more than one (1) calendar year, but less than five (5) calendar years, the Formula Amount shall be equal to the product of a multiple (which initially shall be three (3)) (the "Multiple") times the Company's net operating income (in accordance with generally accepted accounting principles), excluding extraordinary gains and losses, calculated before deduction of interest, taxes, depreciation and amortization ("EBITDA"), then minus all of the Company's outstanding long-term debt and long-term liabilities (including equipment lease financing obligations) as of the date of the Terminating Event determined in accordance with generally accepted accounting principles. For this purpose, the annual net operating income of the Company and its EBITDA shall be based on the calendar year immediately prior to the year in which the Terminating Event occurs. For example, if the Terminating Event occurs in 2014 the Formula Amount shall be calculated by multiplying the Multiple by EBITDA for the calendar year 2013, then subtracting all of the Company's outstanding long-term debt and long-term liabilities (including equipment lease financing obligations) as of the date of the Terminating Event determined in accordance with generally accepted accounting principles. If the Company has been in operation for at least five (5) full calendar years, the Formula Amount shall be equal to the Multiple times the average of the Company's EBITDA for the most recent two (2) fully completed prior calendar years, then minus all of the Company's outstanding long-term debt and long-term liabilities (including equipment lease financing obligations) as of the date of the Terminating Event determined in accordance with generally accepted accounting principles.

5

CONFIDENTIAL

"Immediate Family" with respect to any individual, shall mean his or her ancestors, spouse, issue, spouses of issue, any trust principally for the benefit of any one or more of such individuals, his or her estate, and any entity beneficially owned by such individuals or trusts for their principal benefit.

"Legal Representative" shall mean, with respect to any individual, a duly appointed executor, administrator, guardian, conservator, trustee, personal representative or other legal representative appointed as a result of the death, minority or incompetency of such individual.

"Losses" shall have the meaning provided below under the heading "Profits and Losses."

"Manager" shall refer to each Person named as a Manager by the Members pursuant to this Agreement and any Person who becomes an additional, substitute or replacement Manager as permitted by this Agreement, in each such Person's capacity as a Manager of the Company. "Managers" or "Board" shall refer collectively to the Persons named as Managers by the Members pursuant to this Agreement and any Person who becomes an additional, substitute or replacement Manager as permitted by this Agreement, in each such Person's capacity as a Manager of the Company.

"Member" shall mean any Person named as a Member in this Agreement and any Person who becomes an additional, substitute or replacement Member as permitted by this Agreement, in each such Person's capacity as a Member of the Company.

"Member Minimum Gain" shall mean "partner nonrecourse debt minimum gain" as that term is defined in Regulations Section 1.704-2(i)(2).

"Member Nonrecourse Debt" shall mean "partner nonrecourse debt" or "partner nonrecourse liability" as those terms are defined in Regulations Section 1.704-2(b)(4).

"Member Nonrecourse Deductions" shall mean "partner nonrecourse deductions" as that term is defined in Regulations Section 1.704-2(i)(1).

"Minimum Gain" shall have the meaning given in Regulations Section 1.704-2(d).

"Multiple" shall have the meaning used in the calculation of the Formula Amount.

"Non-Adverse Terminating Event" shall have the meaning set forth in Section 4.3.

"Nonrecourse Deductions" shall have the meaning given in Regulations Section 1.704-2(b)(1).

"Person" or "Party" shall mean any natural person, partnership (whether general or limited), limited liability company, trust, estate, association or corporation.

"Profits and Losses" shall mean, for each year or other period, an amount equal to the Company's taxable income or loss for such year or period, determined in accordance with Code Section 703(a) (for this purpose, all items of income, gain, loss, or deduction required to be

6

stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or loss), with the following adjustments:

(a)     Any income of the Company that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to this provision shall be added to such taxable income or loss;

(b)     Any expenditures of the Company described in Code Section 705(a)(2)(B) or treated as Code Section 705(a)(2)(B) expenditures pursuant to Regulations Section 1.704-1(b)(2)(iv)(i), and not otherwise taken into account in computing Profits or Losses pursuant to this provision, shall be subtracted from such taxable income or added to such loss;

(c)     Gain or loss from a disposition of property of the Company with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Book Value of such property, rather than its adjusted tax basis;

(d)     In lieu of the depreciation, amortization and other cost recovery deductions taken into account in computing taxable income or loss, there shall be taken into account the Depreciation on the assets for such fiscal year or other period; and

(e)     Any items which are separately allocated pursuant to Sections 6.5 and/or 6.6 which otherwise would have been taken into account in calculating Profits and Losses pursuant to the above provisions shall not be taken into account and, as the case may be, shall be added to or deducted from such amounts so as to be not part of the calculation of the Profits or Losses.

If the Company's taxable income or loss for such year, as adjusted in the manner provided above, is a positive amount, such amount shall be the Company's Profits for such year; and if negative, such amount shall be the Company's Losses for such year.

"Reasonable Reserves" shall mean such amount as the Board acting by Approval, shall deem reasonably necessary to meet the foreseeable liabilities or obligations of the Company taking into consideration historic costs as well as reasonably projected cash flow, and including, but not limited to, (i) the normal expenses of the operation and management of its activities, as such liabilities and obligations become due and payable, and (ii) the expenses of any redemptions pursuant to the provisions of this Agreement.

"Regulations" shall mean the Regulations promulgated under the Code, and any successor provisions to such Regulations, as such Regulations may be amended from time to time.

"Retirement" shall mean when a Class A Member ceases to provide services for the Company on a substantially full-time basis as the Board of Managers, acting by Approval, shall have determined.

"Supermajority Approval" shall mean the written consent or approval of the Members holding a majority of the Class A Units then issued and outstanding and the Consent of the Class B Members.

7

"Terminating Capital Transaction" shall mean a sale or other disposition of all or substantially all of the assets of the Company.

"Transfer" and any grammatical variation thereof shall refer to any sale, exchange, issuance, redemption, assignment, distribution, encumbrance, hypothecation, gift, pledge, retirement, resignation, transfer or other withdrawal, disposition or alienation in any way as to any interest of a Member. Transfer shall specifically, without limitation of the above, include assignments and distributions resulting from death, incompetency, Bankruptcy, liquidation and dissolution.

"Unit" shall mean a unit or share of interest in the Company. The interest of each Unit in the Company shall be equal to one (1) divided by the total number of Units then authorized and outstanding (including, but not limited to, Class A Units and Class B Units).

"Unit Proportion" shall mean the number of Units held by a Member divided by all Units then issued and outstanding.

The definitions set forth in the Act shall be applicable, to the extent not inconsistent herewith, to define terms not defined herein and to supplement definitions contained herein.

## ARTICLE II
## Organizational Powers and Membership

2.1     Organization.  The Board of Managers shall file such articles, certificates and documents as appropriate to comply with the applicable requirements for the operation of a limited liability company in accordance with the laws of any jurisdictions in which the Company shall conduct business and shall continue to do so as long as the Company conducts business therein.  By Approval of the Board, the Company may establish places of business within and without the State of Delaware, as and when required by its business and in furtherance of its purposes set forth in Section 2.2 hereof, and may appoint agents for service of process in all jurisdictions in which the Company shall conduct business.

2.2     Purposes and Powers of the Company.  The Company is organized for the general purposes of (i) operating the Business, (ii) engaging in other activities in connection therewith which are necessary or beneficial to the Business, and (iii) engaging in any other lawful business activity permitted under the Act consistent with the foregoing.  To that end, the Company, subject to the terms of this Agreement, may enter into any kind of activity and to perform and carry out contracts of any kind necessary to, or in connection with, or incidental to the accomplishment of, the purposes of the Company, so long as said activities and contracts may be lawfully carried on or performed by a limited liability company under the laws of the State of Delaware.

2.3     Regulatory Regulations.  The Members understand that the Company's and the Business operations may subject to various state and federal laws regulating permissible relationships with entities such as the Company.  It is the intent of the parties that the Company operate in a manner consistent with all applicable laws.  Accordingly, each Member represents and warrants and covenants as of the date hereof and while the Member is a Member, that such Member has not been barred or suspended from participation in any state or federal

8

governmental healthcare program, including, but not limited to, the Medicare or Medicaid programs.

2.4    Membership.

(a)    There shall be two (2) authorized classes of Members of the Company: Class A Members and Class B Members. All Members shall have (based on Units held) the same economic rights. The Members, acting as Members, shall have no right to act for or bind the Company. The initial Class A Members and the initial Class B Member are identified in Exhibit A hereto.

(b)    No Person shall be eligible to become a Class A Member (or remain a Class A Member, as applicable) unless such Class A Member is a Person who is an Eligible Employee. For the purposes of this Agreement, an "Eligible Employee" is a Person who provides services to the Company or an Affilialte of the Company on a substantially full time basis either as an employee or an independent contractor, unless such requirement is waived by the Managers. The requirements of this Section 2.4(b) shall not apply to the Class B Members.

2.5    Investment Through Asset Protection Vehicle. Notwithstanding anything herein to the contrary, a Class A Member ("Entity Owner") may invest through a pension plan, trust, limited liability company or other similar entity ("Entity Investor") as long as the following conditions are met: (i) the Entity Investor is owned by an Eligible Employee and/or his or her Immediate Family; (ii) any breach of this Agreement by the Entity Investor or the Entity Owner, or the occurrence of a Terminating Event related to the Entity Owner or the Entity Investor, shall be treated as a Terminating Event under this Agreement; (iii) if a Terminating Event occurs with respect to the Entity Owner, the Entity Investor's Units will be redeemed in accordance with Section 4.3 of this Agreement; (iv) the Entity Owner agrees to be bound by each of the covenants contained in this Agreement, including, without limitation, all confidentiality and non-competition covenants, and agrees to abide by the requirements of an eligible Class A Member in this Section 2.3 and Section 2.4(b) hereof, as if such Entity Owner were a direct owner of the Company; and (v) the Entity Owner agrees to sign a counterpart signature page to this Agreement, as such other documents as the Company may reasonably require.

## ARTICLE III
## Capital Contributions and Liability of Members

3.1    Capital Accounts. A separate Capital Account shall be maintained for each Member, including any Member who shall hereafter acquire an interest in the Company.

3.2    Capital Contributions.

(a)    Capital Contributions. The Members have made or shall make the Capital Contributions in the amounts set forth in Exhibit A. The Class A Members shall initially own forty nine thousand (49,000) Units and shall collectively at all times hold forty nine percent (49%) interest in the Company, and the Class B Members shall initially own fifty one thousand Units and shall collectively at all times hold fifty one percent (51%) interest in the Company. Additional issuances of Units to Eligible Employees shall be solely of Class A Units, with the resulting dilution of their percentage interests in the Company, it being expressly understood that

9

no additional Class B Units are to be issued without the approval of all Class B Members. No Member shall have preemptive rights to acquire any Units to be issued by the Company after the date of this Agreement.

       (b)    Loans. Except as set forth in this Article III, and except with Supermajority Approval pursuant to Section 7.4 hereof, no Member or Manager shall be entitled, obligated or required to make any loan to or guarantee a loan for the Company or make any Capital Contribution to the Company in addition to such Member's Capital Contribution made pursuant to Section 3.2(a) hereof. No loan made to the Company by any Member or Manager shall constitute a Capital Contribution to the Company for any purpose.

       (c)    Additional Capital Contributions. Additional Capital Contributions may be required only with the Supermajority Approval pursuant to Section 7.4 hereof and otherwise in accordance with Article V below.

    3.3    No Withdrawal of or Interest on Capital. Except as otherwise provided in this Agreement, (i) no Member shall have any right to demand and receive property of the Company in exchange for all or any portion of such Member's Capital Contribution or Capital Account, and (ii) no interest or preferred return shall accrue or be paid on any Capital Contribution or Capital Account.

    3.4    Liability of Members. No Member, in his, her or its capacity as a Member, shall have any liability to restore any negative balance of such Member's Capital Account or to contribute to, or in respect of, the liabilities or the obligations of the Company, or to restore any amounts distributed from the Company, except as may be required specifically under this Agreement, the Act or other applicable law. Except to the extent otherwise provided in this Agreement or otherwise agreed to, or as required by law, in no event shall any Member, in such Member's capacity as a Member, be personally liable for any liabilities or obligations of the Company or any of its Members.

    3.5    Managers as Members. No Manager is required to hold any Units in the Company in order to serve as a Manager.

    3.6    Additional Members. Additional Members may be admitted to the Company only upon Supermajority Approval, including the terms of admission, and the Approval of the Board of Managers in accordance with the terms of Article VII hereof and upon execution and delivery by the new Member of a counterpart of this Agreement, delivery of the required Capital Contribution (as determined by the Board of Managers) and execution and delivery of such other documents, instruments and items as the Managers may require. Issuance of Units to new Members shall be subject to compliance with Section 3.2 hereof. All such issuances shall be structured such that the amount paid for Units is not less than fair market value, payments are made in cash or such other consideration as is approved by the Board of Managers.

CONFIDENTIAL

ALECTO_00028658
JA2721

## ARTICLE IV
## Members And Units

4.1    Classification of Members. There shall be two (2) classes of Members of the Company: a Class A Member Class and Class B Member Class. All Members shall have (based on Units held) the same economic rights.

4.2    Withdrawal of a Class A Member. No Class A Member has the right to withdraw or resign from the Company at any time, except upon Supermajority Approval. If a Class A Member withdraws or resigns as a Member in violation of this Section 4.2, or through such Member's action causes such Member to fail to satisfy the conditions of Membership (such as failing to qualify as an Eligible Employee), such Member hereby agrees that such withdrawal, resignation or action will constitute a breach of this Agreement. The Company may offset any damages due to such a breach against any amounts otherwise distributable to such Member. In the event that the Act or a final court ruling entitles the Class A Member to receive a distribution upon withdrawal in violation of this Section 4.2, such distribution shall be equal to the Member's Capital Account. The foregoing represents the parties' reasonable best efforts to determine the damages that would stem from a Class A Member's breach of this Section 4.2.

4.3    Redemption of a Member.

(a)    Terminating Events are categorized as either Adverse Terminating Events or Non-Adverse Terminating Events for purposes of differentiating the Company's redemption obligations to the Member to whom or which an event occurs.

(b)    For purposes of this Section, an "Adverse Terminating Event" means:

(i)    with respect to any Member:

A.    the improper Transfer (or attempt to Transfer) of Units;

B.    the exclusion, suspension or debarment of a Member from participation in the Medicare or Medicaid programs;

C.    the exclusion, suspension or debarment of a Member by any State health care licensing authority;

D.    the conviction of any felony;

E.    any uncured material breach of a provision of this Agreement;

F.    any event of Bankruptcy; or

G.    the failure to make guaranties or any capital contribution required pursuant to Section 5.1.

11

ALECTO_00028659
JA2722

(ii)  with respect to a Class A Member, in addition to Section 4.3(b)(i) above:

    A.  the failure by the Class A Member to meet the Eligible Employee requirements set forth in Section 2.4.

(c)  For purposes of this Section, a "Non-Adverse Terminating Event" means:

    (i)  With respect to a Class A Member:

        A.  death;

        B.  the adjudication of incompetence;

        C.  Disability; or

        D.  Retirement.

(d)  Each Terminating Event, if subject to cure within thirty (30) days, shall trigger termination only after written notice is provided and if a cure has not been made of the Terminating Event within such thirty (30) day period.

(e)  If a Terminating Event (whether Adverse or Non-Adverse) shall occur with respect to any Member, the Company may elect, at the Company's sole option and upon written notice to such Member within six (6) months after the Company has received actual knowledge of the Terminating Event (meaning knowledge of a majority of the Board of Managers without knowledge being imputed from one Manager to another), to purchase the Member's Units and the Member must sell such Units to the Company at a price as determined as follows:

(i)  Subject to Section 4.3(f), if any Member's Units are purchased by the Company because of the occurrence of an Adverse Terminating Event, the amount the Company shall pay for the Units owned by such Member shall be the Formula Amount determined as of the date of the Terminating Event multiplied by the Member's Unit Proportion, discounted by forty percent (40%) (the "Adverse Purchase Price").

(ii)  Subject to Section 4.3(f), if any Member's Units are purchased by the Company because of the occurrence of a Non-Adverse Terminating Event, the amount the Company shall pay for the Units owned by such Member shall be the Formula Amount multiplied by the Member's Unit Proportion (the "Non-Adverse Purchase Price"). The "Adverse Purchase Price," and the "Non-Adverse Purchase Price" may be referred to collectively as the "Valuation Price."

(f)  For purposes of this Section 4.3, the Formula Amount (as defined in Article I) is intended as a means of approximating fair market value while minimizing disputes and appraisal-related costs and expenses regarding valuation of Units for purposes of redemption.

12

ALECTO_00028660
JA2723

(i)    All calculations used to determine the Formula Amount shall be performed by the Company's regularly retained accountants and such calculations shall be final and binding upon all parties to this Agreement. All Members acknowledge and agree that the Formula Amount may be an inexact approximation of fair market value, and all Members waive any and all rights to contest the use of the Formula Amount for any and all purposes in lieu of an appraisal or other method.

(ii)    The Board of Managers, in its sole discretion, with Supermajority Approval, shall have the ability to adjust the Multiple used to arrive at the Formula Amount (as defined in Article I) based on its assessment of the operations, expansion opportunities, market conditions and other factors the Board of Managers deems appropriate for the Company on an annual basis or whenever determined; provided, once adjusted, the Multiple may not be adjusted for the next twelve (12) months; and provided further, a Multiple adjustment taking effect after the occurrence of a Terminating Event will not affect the Formula Amount with respect to the Member for whom the Terminating Event had occurred. Rather, in that case, the Multiple shall remain the Multiple in effect on the effective date of such Member's Terminating Event.

Payments for Units hereunder shall be made as follows: twenty percent (20%) on the initial payment date, which shall be within ninety (90) days after the determination of the Valuation Price (the "Purchase Date") (which in no event shall be more than six (6) months after the Terminating Event, and twenty percent (20%) of the Valuation Price on each of the anniversaries of the Purchase Date with interest on the outstanding principal balance accruing at the Prime Rate shown in the Money Rates Section of the Wall Street Journal on the Purchase Date until the principal is paid in full. Notwithstanding any delay in the payment of amounts due, a Member's rights as a Member shall cease on the Purchase Date. Aggregate payments to be made in connection with all redemptions shall not exceed seven and one-half percent (7.5%) of the Company's collected revenues in any year. If payments are so restricted, payments shall be made in proportion to amounts owed to all Members being redeemed. In sum, notwithstanding the provisions of this Article, the Company shall not be required to make payments to former Members pursuant to this Section 4.3 which, in the aggregate, would exceed seven and one-half percent (7.5%) of the aggregate collections of the Company for any such period. If the aggregate amount of payments otherwise due to former Members pursuant to this Section would reasonably be expected to exceed this limitation in any calendar year or portion thereof, the Company, with the Approval of the Board, shall pay such former Members, on a pro rata basis, based on the amount still owed such Members, quarterly payments totaling seven and one-half percent (7.5%) of the Company's anticipated aggregate collections for such period, and the balance of that period's payment obligations to such former Members shall be deferred to the following calendar year or years, until such amounts can be paid without violating such limitation with respect to any such year or years. Within sixty (60) days following the end of each calendar year, the Company shall make a pro rata adjusted payment to the former Members if and to the extent that actual aggregate collections during the prior year (or relevant portion thereof) have exceeded the anticipated amount.

13

CONFIDENTIAL

## ARTICLE V
## Additional Capital

5.1     Funding Capital Requirements.

(a)     In the event that the Company requires additional funds to carry out its purposes, to conduct its business, or to meet its obligations, the Company may borrow funds from such lender(s), including Members and Managers, on such terms and conditions as are Approved by the Board of Managers, all on such terms as reflect fair market value. It is specifically provided that (except as set forth in Section 3.2 and 5.1(c)) no such terms or conditions shall impose any personal liability on any Member without the prior written consent of such Member.

(b)     No Member or Manager shall be obligated to make any Capital Contributions or loans to the Company (except as provided in Sections 3.2 and 7.4 of this Agreement), or otherwise supply or make available any funds to the Company, even if the failure to do so would result in a default of any of the Company's obligations or the loss or termination of all or any part of the Company's assets or business.

(c)     The Company may require that additional Capital Contributions be made by the Members upon Supermajority Approval pursuant to Section 7.4 hereof. If a Member fails to deliver to the Company such an additional requested Capital Contribution within ten (10) business days of a request by the Board to do so, the Company, after giving thirty (30) days notice of such failure, may elect (i) to subordinate such Member's Unit Proportion to that of all non-defaulting Members for the amount of the additional Capital Contribution, plus interest of 12% per annum, compounded annually, or, if lower, the highest rate allowed by law (the "Applicable Interest Rate"); (ii) to borrow on behalf of such Member that amount necessary to meet such Member's commitment and the charging of interest thereon of up to the Applicable Interest Rate, with repayments of such indebtedness made from the first distributions related to such Member's Membership interest; (iii) allow the remaining Members to make contributions in excess of their proportionate shares, on a pro rata basis, to the extent such Members desire to make such contributions, with a corresponding adjustment to such contributing Members' Unit Proportion in the Company to reflect their relative Capital Contributions; or (iv) dilute such Member's Unit Proportion by issuing to those Members that have made the required additional Capital Contribution a number of Units equal to the Diluted Issuance Amount. The "*Diluted Issuance Amount*" for each contributing Member shall mean a number of Units equal to: (1) the total amount of the additional Capital Contribution made by the particular Member with respect to the specific additional Capital Contribution required, *divided by* (2) the Deemed Unit Value. The "*Deemed Unit Value*" shall mean an amount equal to: (I) the Formula Amount as of the time of the additional Capital Contribution *divided by* (II) the total number of Units outstanding in the Company prior to the additional Capital Contribution, then discounted by forty percent (40%). Any Member who fails to make the required additional Capital Contribution shall not be issued any additional Units under this subsection 5.1(c)(iv).

5.2     Third Party Liabilities. The provisions of this Article and of Section 3.2 hereof are not intended to be for the benefit of any creditor or other Person (other than a Member in his, her or its capacity as a Member) to whom any debts, liabilities or obligations are owed by (or

14

who otherwise has any claim against) the Company or any of the Members. Moreover, notwithstanding anything contained in this Agreement, including specifically but without limitation this Article, no such creditor or other Person shall obtain any rights under this Agreement or shall, by reason of this Agreement, make any claim in respect of any debt, liability or obligation (or otherwise) against the Company or any Member.

## ARTICLE VI
### Distributions; Profits and Losses

6.1    Distribution of Company Funds - In General. Except as necessary to comply with the Sections of this Article VI, distribution of Company funds to the Members shall be subject to Approval of the Board, taking into account future cash needs of the Company, Reasonable Reserves and such other factors as are considered by the Board of Managers, within their sole and absolute discretion. All distributions approved by the Board of Managers shall be distributed among the Members on a pro rata basis based on each Member's Unit Proportion.

6.2    Distribution Upon Dissolution. Proceeds from a Terminating Capital Transaction and/or other amounts or assets available upon dissolution, and after payment of, or adequate provision for, the debts and obligations of the Company, shall be distributed and applied in the following priority:

(a)    First, to fund reserves for liabilities not then due and owing and for contingent liabilities to the extent deemed reasonable by Approval of the Board, provided that, upon the expiration of such period of time as the Board, acting by Approval, shall deem advisable, the balance of such reserves remaining after payment of such contingencies shall be distributed in the manner hereinafter set forth in this Section; and

(b)    Second, to the Members, an amount sufficient to reduce the Members' Capital Accounts to zero, in proportion to the positive balances in such Capital Accounts after reflecting in such Capital Accounts all adjustments thereto necessitated by (i) all other Company transactions (distributions and allocations of Profits and Losses and items of income, gain, deduction and loss) and (ii) such Terminating Capital Transaction; and

(c)    Finally, to the extent funds remain, to the Members of the Company on a pro rata basis based on eadch Member's Unit Proportion.

6.3    Distribution of Assets in Kind. No Member shall have the right to require any distribution of any assets of the Company in kind. If any assets of the Company are distributed in kind, such assets shall be distributed on the basis of their respective fair market values as determined by the Approval of the Board. Any Member entitled to any interest in such assets shall, unless otherwise determined by the Approval of the Board, receive separate assets of the Company and not an interest as tenant-in-common, with other Members so entitled, in each asset being distributed.

6.4    Allocation of Profits and Losses. After giving effect to the allocations set forth in Sections 6.5 and 6.6 which affect the Members' distributive shares, Profits and Losses shall be allocated among the Members on a pro rata basis, based on the proportion of Units then held by each such Member to the total number of Units then issued and outstanding.

15

**ALECTO_00028663**
**JA2726**

6.5    Required Regulatory Allocations.

(a)    Limitation on and Reallocation of Losses. At no time shall any allocations of Losses, or any item of loss or deduction, be made to a Member if and to the extent such allocation would cause such Member to have, or would increase the deficit in, any Adjusted Capital Account Deficit of such Member at the end of any fiscal year. To the extent any Losses or items are not allocated to one or more Members pursuant to the preceding sentence, such Losses shall be allocated to the Members to which such losses or items may be allocated without violation of this Section 6.5(a).

(b)    Minimum Gain Chargeback. If there is a net decrease in the Minimum Gain of the Company during any fiscal year, then items of income or gain of the Company for such fiscal year (and, if necessary, subsequent fiscal years) shall be allocated to each Member in an amount equal to such Member's share of the net decrease in the Minimum Gain, determined in accordance with Regulations Section 1.704-2(d)(1). A Member's share of the net decrease in the Minimum Gain of the Company shall be determined in accordance with Regulations Section 1.704-2(g). The items of income and gain to be so allocated shall be determined in accordance with Regulations Section 1.704-2(j)(2)(i).

(c)    Nonrecourse Deductions. Nonrecourse Deductions for any fiscal year or other period (not including any Member Nonrecourse Deductions allocated pursuant to Section 6.5(d)) shall be allocated among the Members on a pro rata basis, based on the proportion of Units then held by each such Member to the total number of Units then issued and outstanding. Solely for purposes of determining each Member's proportionate share of the "excess nonrecourse liabilities" of the Company, within the meaning of Regulations Section 1.752-3(a)(3), the Company Profits shall be allocated among the Members on a pro rata basis, based on the proportion of Units then held by each such Member to the total number of Units then issued and outstanding. The items of losses, deductions and Code Section 705(a)(2)(B) expenditures to be so allocated shall be determined in accordance with Regulations Section 1.704-2(j)(1)(ii).

(d)    Member Nonrecourse Deductions. Any Member Nonrecourse Deductions for any fiscal year or other period shall be allocated to the Member who bears the economic risk of loss with respect to the nonrecourse liability, as determined and defined under Regulations Section 1.704-2(b)(4), to which such Member Nonrecourse Deductions are attributable in accordance with Regulations Section 1.704-2(i)(1). The items of losses, deductions and Code Section 705(a)(2)(b) expenditures to be so allocated shall be determined in accordance with Regulations Section 1.704-2(j)(1)(ii).

(e)    Member Minimum Gain Chargeback. Notwithstanding any contrary provisions of this Article VI, other than Section 6.5(b) above, if there is a net decrease in Member Minimum Gain attributable to Member Nonrecourse Debt during any fiscal year, then each Member who has a share of such Member Minimum Gain, determined in accordance with Regulations Section 1.704-2(i), shall be allocated items of income and gain of the Company, determined in accordance with Regulations Section 1.704-2(j)(2)(ii), for such fiscal year (and, if necessary, subsequent fiscal years) in an amount equal to each such Member's share of the net decrease in such Member Minimum Gain, determined in accordance with Regulations Section 1.704-2(i)(3) and 2(i)(5).

16

CONFIDENTIAL

ALECTO_00028664
JA2727

(f)    Qualified Income Offset. If any Member unexpectedly receives an item described in Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6), items of income and gain shall be allocated to each such Member in an amount and manner sufficient to eliminate, as quickly as possible and to the extent required by Regulations Section 1.704-1(b)(2)(ii)(d), the Adjusted Capital Account Deficit of such Member, provided that an allocation pursuant to this Section 6.5(f) shall only be made if and to the extent that such Member would have an Adjusted Capital Account Deficit after accounting for all other allocations provided for in this Article VI other than that described in this Section 6.5(f).

(g)    Basis Adjustment. To the extent an adjustment to the adjusted tax basis of any Company asset pursuant to either of Code Sections 734(b) or 743(b) is required to be taken into account in determining Capital Accounts pursuant to Regulations Section 1.704-1(b)(2)(iv)(m), the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be allocated to the Members in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to said Section of the Regulations.

(h)    Gross Income Allocation. If at the end of any Company fiscal year any Member has a Capital Account deficit which is in excess of the sum of the items to be credited to a Member's Capital Account under clause (a) of the definition of Adjusted Capital Account Deficit, then each such Member shall be allocated items of income and gain in the amount of such excess as quickly as possible provided that an allocation pursuant to this Section 6.5(h) shall only be made if and to the extent that such Member would have a Capital Account deficit in excess of such sum after accounting for all other allocations provided for in this Article VI other than that described in this Section 6.5(h). As among Members having such excess, if there are not sufficient items of income and gain to eliminate all such excess, such allocations shall be made in proportion to the amount of each Member's respective excess.

(i)    Curative Allocations. The allocations set forth in this Section 6.5 are intended to comply with certain requirements of Regulations Sections 1.704-1(b) and 1.704-2 and shall be interpreted consistently therewith. Such allocations may not be consistent with the manner in which the Members intend to divide Company distributions and to make Profit and Loss allocations. Accordingly, by the Approval of the Board, after effecting the allocations required pursuant to this Section 6.5, other allocations of Profits, Losses and items thereof shall be divided among the Members so as to prevent the allocations in this Section 6.5 from distorting the manner in which Company distributions will be divided among the Members pursuant to Sections 6.1 and 6.2 hereof. In general, the Members anticipate that this will be accomplished by specifically allocating other Profits, Losses and items of income, gain, loss and deduction among the Members so that the net amount of allocations under this Section 6.5 and allocations under this Section 6.6 to each such Member is zero. However, the Board shall have discretion to accomplish this result in any reasonable manner.

6.6    Tax Allocations and Book Allocations.

(a)    Except as otherwise provided in this Section 6.6, for federal income tax purposes, each item of income, gain, loss and deduction shall, to the extent appropriate, be

17

allocated among the Members in the same manner as its correlative item of "book" income, gain, loss or deduction has been allocated pursuant to the other provisions of this Article VI.

(b)    In accordance with Code Section 704(c) and the Regulations thereunder, depreciation, amortization, gain and loss, as determined for tax purposes, with respect to any property whose Book Value differs from its adjusted basis for federal income tax purposes shall, for tax purposes, be allocated among the Members so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its Book Value, such allocation to be made by the Approval of the Managers in any manner which is permissible under said Code Section 704(c) and the Regulations thereunder and the Regulations under Code Section 704(b).

(c)    In the event the Book Value of any property of the Company is subsequently adjusted, subsequent allocations of income, gain, loss and deduction with respect to any such property shall take into account any variation between the adjusted basis of such asset for federal income tax purposes and its respective Book Value in the manner provided under Section 704(c) of the Code and the Regulations thereunder.

(d)    Allocations pursuant to this Section 6.6 are solely for federal, state, and local income tax purposes, and shall not affect, or in any way be taken into account in computing, any Member's Capital Account or share of Profits, Losses, other items, or distributions pursuant to any provision of this Agreement.

6.7    General Allocation and Distribution Rules.

(a)    For purposes of determining the Profits, Losses, or any other items allocable to any period, Profits, Losses, and any such other items shall be determined on a daily, monthly, or other basis, as determined by the Approval of the Board of Managers using any permissible method under Code Section 706 and the Regulations thereunder. Except as otherwise provided in this Agreement, all items of income, gain, loss, and deduction shall be allocated among the Members in the same proportions as the allocations of Profits or Losses for the fiscal year in which such items are to be allocated.

(b)    Upon the admission of a new Member or the Transfer of an interest, the new and old Members or the transferor and transferee shall be allocated shares of Profits and Losses and other allocations and shall receive distributions, if any, based on the portion of the fiscal year that the new or transferred Company interest was held by the new and old Members, or the transferor and transferee, respectively. For the purpose of allocating Profits and Losses and other allocations and distributions, (i) such admission or Transfer shall be deemed to have occurred on the first day of the month in which it occurs, or if such date shall not be permitted for allocation purposes under the Code or the Regulations, on the nearest date otherwise permitted under the Code or the Regulations, and (ii) if required by the Code or the Regulations, the Company shall close its books on an interim basis on the last day of the previous calendar month.

6.8    Tax Withholding.    If the Company incurs a withholding tax obligation with respect to the share of income allocated to any Member, (a) any amount which is (i) actually

18

withheld from a distribution that would otherwise have been made to such Member and (ii) paid over in satisfaction of such withholding tax obligation shall be treated for all purposes under this Agreement as if such amount had been distributed to such Member, and (b) any amount which is so paid over by the Company, but which exceeds the amount, if any, actually withheld from a distribution which would otherwise have been made to such Member, shall be treated as an interest-free advance to such Member. Amounts treated as advanced to any Member pursuant to this Section shall be repaid by such Member to the Company within thirty (30) days after the Board, acting by Approval of the Board of Managers, give notice to such Member making demand therefore. Any amounts so advanced and not timely repaid by such Member shall bear interest, commencing on the expiration of said 30-day period, compounded monthly on unpaid balances, at an annual rate equal to the lowest Applicable Federal Rate as of such expiration date. The Company shall collect any unpaid amounts so advanced from any Company distributions that would otherwise be made to such Member.

6.9    Tax Matters Partner. The Class B Member, and if more than one Class B Member the one holding the largest number of Unit, shall be the "Tax Matters Partner" (as defined in Code Section 6231) of the Company. The Tax Matters Partner is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by tax authorities, including, without limitation, administrative and judicial proceedings (collectively, "Audits"), and to expend Company funds for professional services and costs associated therewith. The Members agree to cooperate with each other and to do or refrain from doing any and all things reasonably required to conduct such proceedings. The Company shall indemnify and hold harmless the Tax Matters Partner and if applicable the Tax Matters Partner's directors, officers, employees and agents from and against any loss, expense, damage or injury suffered or sustained by them by reason of any acts, omissions or alleged acts or omissions arising out of his, hers or its activities on behalf of the Company as Tax Matters Partner absent the gross negligence of the Tax Matter Partner. The Members specifically acknowledge that the Tax Matters Partner shall not be liable, responsible or accountable in damages or otherwise to the Company or any Member with respect to any action taken by the Tax Matters Partner with respect to an Audit absent the gross negligence of the Tax Matter Partner. The Tax Matters Partner shall take such action as may be necessary to cause each Member to be entitled to notice as set forth in Code Section 6223. The Tax Matters Partner shall not take any action contemplated by Code Section 6224 through 6230 without the prior authorization of the Members.

## ARTICLE VII
### Management

7.1    Management of the Company. The overall management and control of the business and affairs of the Company shall be vested in the Board of Managers, acting by Approval of the Board of Managers, but subject to the Member protections as set forth in Section 7.4 hereof or as otherwise provided in this Agreement. All management and other responsibilities not specifically reserved to the Members in this Agreement, or specifically requiring Class A Member and/or Class B Member Consent, shall be vested in the Board of Managers, and the Members shall have no voting rights except as specifically provided in this Agreement. Each Manager shall devote such time to the affairs of the Company as is reasonably necessary for performance by such Manager of his, her or its duties, provided such Manager

19

shall not be required to devote full time to such affairs. Moreover, each Manager shall act in good faith with the care an ordinary, prudent person in a like position would exercise under similar circumstances and in the best interest of the Company.

    7.2    <u>Board of Managers</u>. The business and affairs of the Company shall be managed by the Board of Managers.

    (a)    <u>Number, Term, Election, and Qualifications</u>. The Company shall have a panel of three (3) Managers, comprised initially of the following: Lex Reddy, Roger A. Krissman and Panch Jeyakumar, M.D. The number of Managers comprising the panel of Managers of the Company may be changed from time to time by the Supermajority Approval, provided that in no instance shall there be less than three (3) Managers. The Managers shall be elected and hold office until such time as a new slate of Managers are elected at a meeting of the Members held pursuant to a written request for such meeting by Members holding a majority of the Units then outstanding. At the meeting for the election of Managers "cumulative voting" shall apply. Cumulative voting shall permit each Member to cast a number of votes for Managers equal to such Member's number of Units multiplied by the number of Managers to be elected at such time. Each Member shall be entitled to cast one or more and up to all of such Member's votes for one candidate for Manager, or may allocate votes among the various candidates for Manager in whatever manner the Member so chooses. For example, if three Managers are to be elected, and if a Member has 10,000 Units, the Member shall be entitled to vote 30,000 votes (10,000, which is the number of votes respecting the election of a single Manager, times 3, which is the number of Managers to be elected), and may allocate his, her or its 30,000 votes to one Manager candidate or allocate such votes equally or unequally among all the Manager candidates, as the Member so chooses. A Manager need not be a Member, an individual, a resident of any particular State, or a citizen of the United States. The powers of the Board shall be exercised subject to the Member protections set forth in Section 7.4 hereof.

    (b)    Meetings of the Board of Managers and the Members may be called and scheduled by the President of the Company, the Class B Member and/or by two (2) Managers. At least four (4) days prior written notice of the time, place and purpose of the Board of Manager meetings shall be provided to all Managers, and at least ten (10) days prior written notice of the time, place and purpose of the Member meetings shall be provided to all Members.

    (c)    Special meetings of the Members also may be called at the written request of any two (2) Members delivered to the President. Upon receipt of such written request the President shall schedule a meeting of the Members within no later than thirty (30) days, and shall send advance written notice to the Members at least ten (10) days prior to the date of the meeting. The time, place and purpose or purposes for such special meeting shall be stated in the notice of such meeting.

    (d)    Managers representing a majority of Units shall constitute a quorum at any meeting of the Board of Managers. Members representing a majority of Units shall constitute a quorum at any meeting of the Members.

    (e)    Regarding Board meetings, Managers may provide a proxy to attend a Board meeting who shall have powers to vote as a Manager. For Class A Members, such proxy

CONFIDENTIAL

ALECTO_00028668
JA2731

to attend a meeting of the Members must be a Member. Members and Managers may also attend their respective Member and Board meetings by phone or video conference.

(f)     A Manager may resign from, retire from, abandon or otherwise terminate his, her or its status as a Manager upon ten (10) days prior written notice to the Board, unless the Board otherwise consents in writing.

7.3     Manner of Exercise of Board's Authority.  All responsibilities granted to the Board under this Agreement shall be exercised by the Board as a body, and no Manager, acting alone and without prior Approval of the Board, shall have the authority to act on behalf of the Board.  Unless otherwise expressly provided in this Agreement, all actions of the Board of Managers shall act by Approval of the Board.  None of the following actions shall be taken by the Company except upon Approval of the Board of Managers, subject to the requirements of Section 7.4 hereof:

(a)     Borrow money and otherwise obtain credit and other financial accommodations in the ordinary course of the business of the Company;

(b)     Enter into management agreements, leases, asset purchase agreements, financing agreements and loans in any amounts, and any other agreements wherein the financial obligations of the Company exceed on an annual basis the sum of One Hundred Thousand Dollars ($100,000.00);

(c)     Employ, engage, retain or deal with any Persons to act as agents, brokers, accountants or lawyers or outside professionals in such other capacity as may be necessary or desirable;

(d)     Appoint individuals to act as officers of the Company and delegate to such individuals such authority to act on behalf of the Company and such duties and functions as would normally be delegated to officers of a corporation holding similar offices;

(e)     Adjust, compromise, settle or refer to arbitration any claim in favor of or against the Company or any of its assets;

(f)     Make elections in connection with the preparation of any federal, state and local tax returns of the Company and to institute, prosecute, and defend any legal action or any arbitration proceeding;

(g)     Acquire and enter into any contract of insurance necessary or proper for the protection of the Company and/or any Member and/or any Manager, including without limitation to provide the indemnity described in Section 7.8 or any portion thereof;

(h)     Approve technical amendments to this Agreement or the Articles;

(i)     Approve the Transfer of Class A Units to another Class A Member or Eligible Employee;

(j)     Establish a record date for any distribution to be made under Article VI;

21

CONFIDENTIAL

ALECTO_00028669
JA2732

(k)     Enter into, renew, amend or terminate any arrangement or agreement with any Company executive or employee who is also a Manager or Member; and

(l)     Perform any other act which the Managers may deem necessary or desirable for the Company as well as the Business.

7.4     Restrictions. Notwithstanding any other provision in this Agreement to the contrary, the Company shall not take any of the following actions without Supermajority Approval:

(a)     Authorize, create, designate, determine or issue any new class of Units or issue new Units, or securities convertible into Units or issue options or warrants to purchase Units or authorize the merger, consolidation or similar combination with any other entity, or authorize the sale of all or substantially all the assets of the Company or the dissolution or liquidation of the Company;

(b)     Except as contemplated by Article IV hereof, authorize, or set aside any sums for, the purchase, repurchase, redemption or other acquisition by the Company of any Member's Units of any class or make loans or distributions to Members;

(c)     Effect any Bankruptcy event with regard to the Company;

(d)     Require a Member to make an additional Capital Contribution or guarantee an obligation of the Company; provided, the aggregate debt to which such personal liabilities relate may not exceed One Million Five Hundred Thousand Dollars ($1,000,000);

(e)     Approve any decision to not enforce the Company's rights set forth in Article X; and

(f)     Except for technical amendments, amend this Agreement or the Articles.

7.5     Binding the Company. Subject to the provisions of Sections 7.3 and 7.4 hereof, any action taken by a Manager, with Approval of the Board or, where so required, with Supermajority Approval, shall bind the Company and any other Managers and shall be deemed to be the action of the Company.

7.6     Compensation of Managers and Members. No direct or indirect payment shall be made by the Company to any Manager, Member, or officer of the Company or to any Affiliate of any Manager, Member, or officer of the Company, for such Manager's, Member's, or officer's services as a Manager, Member, or officer, except by Approval of the Board. Each Manager and officer shall be entitled to reimbursement from the Company for all reasonable expenses incurred by such Manager or officer in managing and conducting the business and affairs of the Company.

7.7     Contracts with Affiliated Persons. Subject to Section 7.4 hereof, the Company may enter into one or more agreements, leases, contracts or other arrangements for the furnishing to or by the Company of goods, services or space with any Member, Manager or Affiliated Person, and may pay compensation thereunder for such goods, services or space, provided in

22

each case the amounts payable thereunder are reasonably comparable to those which would be payable to unaffiliated Persons under similar agreements, and if the determination of such amounts is made in good faith it shall be conclusive absent manifest error.

### 7.8    Indemnification.

(a)    Notwithstanding any provision of this Agreement, common law or the Act, no member of the Board, principal officer of the Company or the Tax Matters Member (the "Covered Persons") shall be liable to the Members or to the Company for any loss suffered which arises out of an act or omission of such person, if, in good faith, it was determined by such persons that such act or omission was in the best interests of the Company and such act or omission did not constitute gross negligence or fraud. The Covered Persons shall be indemnified by the Company against any and all claims, demands and losses whatsoever if: (i) the indemnitee conducted himself in good faith; (ii) the indemnitee was not grossly negligent and the loss was not caused by the indemnitee's willful misconduct; (iii) reasonably believed (x) in the case of conduct in his, her or its official capacity with the Company, that the conduct was in its best interests and (y) in all other cases, that the conduct was at least not opposed to its best interests; and (iv) in the case of any criminal proceeding, the Covered Person had no reasonable cause to believe the conduct was unlawful. The payment of any amounts for indemnification shall be made before any distribution are made by the Company. No Member shall have any obligation to provide funds for any indemnification obligation hereunder.

(b)    The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this Article VII shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Articles, provision of this Agreement, vote of Members or otherwise.

(c)    The Company may maintain insurance, at its expense, to protect itself and any Member, the Board, Board committees, officer, employee or agent of the Company against any expense, liability or loss, whether or not the Company would have the power to indemnify such person against such expense, liability or loss under Delaware law.

(d)    Any amendment, repeal or modification of any provision of this Section 7.8 shall not adversely affect any right or protection of a Member, the Board, Board committee, officer, employee or agent of the Company existing at the time of such amendment, repeal or modification.

7.9    Other Activities. Subject to any other restrictions set forth in this Agreement, the Members, Managers and any Affiliates of any of them may engage in and possess interests in other investment opportunities of every kind and description other than those that are similar to the Business of the Company, independently or with others as long as they do not violate Article X hereof.

7.10    Financial Statements. The Board shall authorize and cause to be prepared reviewed, but not audited, financial statements on an annual basis within ninety (90) days after the end of each fiscal year of the Company.

23

## ARTICLE VIII
### Officers

8.1     Number; Election; Resignation.  The Company shall have a President (who may also be referred to as the CEO), a Chief Financial Officer, a Secretary, and such other officers as the Board may in its discretion create.  All officers shall be elected by the Board, acting by Approval, at any duly convened meeting of the Board or by written consent in lieu of a meeting. In selecting officers, the Board shall consider the skill, qualifications, dedication, and loyalty of officer candidates, and with respect to such officers, the Board shall select only those individuals who, in the Board's sole opinion, shall best promote and advance the interests of the Company. Each officer shall hold office until his or her successor is chosen and qualified, unless terminated earlier and except as otherwise provided at the meetings respectively at which he or she is elected or appointed.  Any officer may resign by delivering written resignation to the Company at its office, or to the Board, and such resignation shall be effective upon receipt, unless it is specified to be effective at some other time or upon the happening of some other event.

8.2     Same Person Holding Two or More Offices.  To the extent permitted by the Act, any two or more of the offices referred to in this Section may be filled by the same person.

8.3     Officers Need Not Be Members or Managers.  Except as otherwise provided by the Act, any person shall be eligible for election to be an officer of the Company without the necessity of being a Member or Manager.

8.4     Removal of Officers.  Any officer may be removed by the Board, acting by Approval, with or without cause.

8.5     Vacancies.  In case a vacancy in any office shall occur due to any cause, the Board of Managers, acting by Approval, may elect a person to fill such vacancy who shall hold office until the date on which the office would ordinarily be filled, and until a successor is chosen and qualified.

8.6     President.  The President shall be the chief executive officer of the Company and shall, subject to the provisions set forth hereinafter, have the authority to oversee such administrative activities and to take such administrative actions as shall be customary for a chief executive officer.  The President shall perform such additional duties as may be delegated to the President by the Board or as may be imposed by law.  It shall be the duty of the President, and the President shall have the power to see to it, that all orders and resolutions of the Board are carried into effect.  The President shall, from time to time, report to the Board all matters within his or her knowledge which the interests of the Company may require to be brought to its notice.

8.7     Chief Financial Officer.  The Chief Financial Officer shall, subject to the supervision and control of the Board, have custody of the funds and of all the valuable papers of the Company.  The Chief Financial Officer shall keep the accounts of the Company in a clear manner, and shall, at all times, when requested by the Board, exhibit a true statement of the affairs of the Company.  The Chief Financial Officer shall, if required by the Board, give a bond for the faithful discharge of his or her duties, at the expense of the Company, with satisfactory sureties in such penal sum as the Board may determine, if so required by the Board.  Except as

24

**ALECTO_00028672**
**JA2735**

the Board may otherwise order, the Chief Financial Officer shall sign and/or endorse all promissory notes, bills, checks, drafts, trade acceptances, and bankers' acceptances, and may execute all deeds, mortgages, reports, contracts, agreements, and other legal documents of the Company, but the Board may authorize any other officer or officers, or agent or agents, to sign any obligations, instruments, or papers on behalf of the Company, and/or may limit the authority of the Chief Financial Officer in any of said matters. The Chief Financial Officer shall perform such other duties as may be delegated to him or her by the Board or as may be imposed by law.

When the Chief Financial Officer shall be absent or for any other reason unable to perform his or her duties, the Chief Financial Officer may appoint any other officer of the Company to act as Treasurer, and said Treasurer shall have all the duties herein delegated to the Chief Financial Officer during the term of his or her appointment.

8.8     Secretary. The Secretary shall keep the records of the Company, of its Members, and of the Board, and shall perform such duties and have such powers additional to the foregoing as the Board shall designate.

## ARTICLE IX
## Fiscal Matters

9.1     Books and Records. The Chief Financial Officer shall oversee the day to day bookkeeping for the Company and all of its operations and facilities and shall keep complete and accurate records of the same. The Company shall keep reviewed, but not audited financial statements that are prepared on an annual basis. Upon Approval of the Board, the Company may engage the services of a certified public accounting firm ("Accounting Firm") to audit the Company's books and records using the same methods of accounting which are used in preparing the federal income tax returns of the Company to the extent applicable and otherwise in accordance with generally accepted accounting principles consistently applied.     The Company's books and records shall be maintained and updated monthly, and shall be available, in addition to any documents and information required to be furnished to the Members under the Act, at an office of the Company or the Accounting Firm (as applicable) for examination and copying by any Member, or the Member's duly authorized representative, upon reasonable request therefor and at the expense of such Member. Alternately, copies of such books, records, documents and information shall be sent by the Company to any Member, or the Member's duly authorized representative, upon reasonable request therefore and at the expense of such Member. The Company shall keep at its principal office all items required pursuant to the Act. Within ninety (90) days after the end of each fiscal year of the Company, each Member shall be furnished with financial statements which shall contain a balance sheet as of the end of the fiscal year and statements of income and cash flows for such fiscal year. Any Member may, at any time, at the Member's own expense, cause an audit or review of the Company books to be made by a certified public accountant of the Member's own selection.

9.2     Bank Accounts. Bank accounts and/or other accounts of the Company shall be maintained in such banking and/or other financial institution(s) as shall be selected by Approval of the Board, and withdrawals shall be made and other activity conducted on such signature or signatures as determined by Approval of the Board. Any and all records with respect to such bank accounts and/or other accounts, including, but not limited to, copies of any checks written

25

CONFIDENTIAL

on such account or records or other withdrawal activity, shall be available at an office of the Company or the Accounting Firm for examination and copying by any Member, or the Member's duly authorized representative, upon reasonable request therefor and at the expense of such Member. Alternately, copies of such records shall be sent by the Company to any Member, or the Member's duly authorized representative, upon reasonable request therefor and at the expense of such Member.

      9.3    Fiscal Year. The fiscal year of the Company shall end on December 31 of each year, unless otherwise Approved by the Board.

## ARTICLE X
## Transfer of Interests and Admission of Transferees

      10.1    Restriction on Transfers.

      (a)    Except as indicated below, no Class A Member may sell, Transfer, pledge, hypothecate, gift or otherwise dispose of or encumber all or any portion of his, her or its Units without Approval of the Board. Any Transfer in violation hereof shall be treated as an Adverse Terminating Event. The Units of a Member and any interest of such Member's spouse in such Units, shall remain subject to this Agreement regardless of the termination, for any reason, of the marital relationship of any Member and the Member's spouse. During the marriage of the Member and such Member's spouse, such Member's obligations to sell or offer to sell Units pursuant to this Agreement shall include any interest of such Member's spouse in the Units. Any Units transferred in contravention of this Section shall be void of all voting, inspection and other rights with respect to the pledgee/transferee and any such transfer shall be null and void ab initio and shall be subject to purchase by the Company as an Adverse Terminating Event. Each spouse of a Member shall sign a Consent of Spouse form, substantially in the form of Exhibit B, agreeing to be bound by the terms hereof including, without limitation, the term providing that ownership by a spouse is not permitted. Any transferee must sign a counterpart to this Agreement agreeing to be bound by all terms hereof prior to such Transfer being deemed effective.

      (b)    Notwithstanding anything else to the contrary in this Agreement, a Class B Member may Transfer his, her or its Units to an Affiliate or to such other Person as is approved by the affirmative vote of the holders of a majority of the outstanding Class B Units, so long as the transferor and the transferee agree to remain bound by all of the terms hereof.

      (c)    No Member may pledge his, her or its Units to a bank, financial institution, creditor or other lender.

      (d)    Notwithstanding the foregoing, a Member may transfer his or her interest to an Entity Investor in accordance with Section 2.5 hereof.

      10.2    Irreparable Harm. Each Member specifically acknowledges that a breach of Section 10.1 would cause the Company and the Members to suffer immediate and irreparable harm, which could not be remedied by the payment of money. In the event of a breach or threatened breach by a Member of the provisions of Section 10.1, the Company or other Members shall be entitled to injunctive relief to prevent or end such breach, without the

26

requirement to post bond or prove damages. Nothing herein shall be construed to prevent the Company or other Members from pursuing any other remedies available to it for such breach or such threatened breach, including the recovery of damages, reasonable attorneys' fees and expenses.

10.3    Assignee of a Member's Units. If, notwithstanding the prohibitions in Section 10.1, a Member Transfers all or any portion of his, her or its Units and a Person acquires such Units, (but is not admitted as a substituted Member pursuant to the terms of this Agreement) such Person shall:

(a)    be treated as an assignee of a Member's Units, as provided in the Act, and not as a Member of the Company;

(b)    have no right to participate in the business and affairs of the Company or to exercise any rights of a Member under this Agreement or the Act;

(c)    share in distributions from the Company with respect to the transferred Units on the same basis as the transferring Member previously had; and

(d)    be required to transfer the Units to the Company in accordance with the redemption provisions hereof relating to Adverse Terminating Events.

10.4    Obligations of Permitted Transferees. In the case of any approved Transfer or disposition of Units, the transferee shall execute and deliver an appropriate instrument agreeing to be bound by this Agreement and such additional agreements or instruments as the Board may require. Any permitted transferee of Units shall receive and hold such Units subject to this Agreement and all of the restrictions, obligations and rights created hereunder, and the Members and each transferee shall be bound by their obligations under this Agreement with respect to each subsequent transferee.

10.5    Preemptive Rights. No Member shall have any preemptive rights to purchase or otherwise acquire New Units proposed to be issued by the Company, it being expressly understood that additional Units are contemplated to be issued to Eligible Employees hired by the Company after the date of this Agreement, the terms and conditions of such subsequent issuances being subject to Approval of the Board. For purposes of applying this Section, "New Units" shall mean any Units (irrespective of class) which the Company proposes to issue on or after the date hereof, any rights or options which the Company proposes to grant for the purchase of any Units (irrespective of class), any bonds, securities or obligations of the Company which are convertible into or exchangeable for, or which carry any rights, to acquire Units (irrespective of class), whether now or hereafter authorized or created, whether issued or unissued, and whether the proposed issue, transfer or grant is for cash, property, services or any other lawful consideration, and including any issuance otherwise provided for in this Agreement.

10.6    Noncompetition. During the term of a Member's membership in the Company, and for a period of five (5) years thereafter, other than through the Company, no Member, nor any of their Affiliates, except as provided below, shall, without the prior written Approval of the Board and the Class B Members, directly or indirectly own, manage, operate, control or participate in any manner in the ownership, management, operation or control of, or serve as a

27

ALECTO_00028675
JA2738

partner, employee, principal, agent, consultant or otherwise contract with, or have any financial interest in, or aid or assist any other person or entity that operates a business that is similar to or competitive with the Business of the Company, whether or not the Company is then doing business in the same State. The preceding sentence shall not be construed to prevent a Member or any of their Affiliates from owning stock of one percent (1%) or less of any publicly traded company that engages in any of the restricted activities set forth herein so long as the Member does not actively participate in any aspect of the operations and business of such publicly traded company.

Each party understands and acknowledges that the provisions of this Section 10.6 are designed to preserve the goodwill of the parties and that the Multiple used in the Formula Amount set forth in Section 4.3 takes into consideration some allocation of such goodwill. Accordingly, each party hereby acknowledges and agrees that any breach or threatened breach of the provisions of this Section 10.6 hereof binding on a party will result in irreparable harm and injury to the other party and that monetary damages will not provide an adequate remedy to a party. Accordingly, each Member hereby agrees that in the event of a breach or threatened breach of the provisions of this Section 10.6, the non-breaching party shall be entitled to: (a) a temporary restraining order, preliminary injunction and permanent injunction to enjoin such breach or threatened breach without the requirement of the posting of a bond; (b) an accounting for any and all monies, earnings, profits and other benefits that the breaching party has derived or received, directly or indirectly, as a result of such breach or threatened breach; (c) recover from the breaching party the reasonable attorneys' fees and costs incurred by the non-breaching party in enforcing the provisions of this Section 10.6; and (d) all deferred payments due to the Member shall be suspended until final resolution of the dispute. The breaching party further agrees that in the event of a breach or threatened breach of the provisions of this Section 10.6, the restrictions set forth in this Section 10.6 shall be extended during the period of any breach or threatened breach by the breaching party. The rights and remedies set forth herein are cumulative and shall be in addition to any other rights or remedies to which a party may be entitled.

Each party hereby acknowledges that the restrictions set forth in this Section 10.6 are minimal, reasonable in scope and duration and are necessary to protect the legitimate interests of the parties and that any breach or threatened breach of these restrictions will result in irreparable harm to the non-breaching party. In the event that any of the restrictions are found by a court of competent jurisdiction to be too broad to permit enforcement to its full extent, then such restrictions shall be enforced to the maximum extent allowable by law and the parties hereby consent to and authorize the court to modify the restrictions in a manner to permit their enforcement. Notwithstanding any other provision of this Agreement, the Class B Members shall have the right to enforce, on behalf of the Company and at the Company's expense, the provisions of this Section 10.6 against any Member without relying on the Approval of the Board therefore.

10.7    Confidential Information.    Each Member acknowledges that the Confidential Information is valuable property of the Company and undertakes that for so long as he, she or it is a Member, and thereafter until such information otherwise becomes publicly available other than through breach of this Section 10.7, he, she or it shall:

        (a)    treat the Confidential Information as secret and confidential;

28

CONFIDENTIAL

(b)    not disclose (directly or indirectly, in whole or in part) the Confidential Information to any third Party except with the prior written consent of Company;

(c)    not use (or in any way appropriate) the Confidential Information for any purpose other than the performance of the business of the Company and otherwise in accordance with the provisions of this Agreement;

(d)    recognize and acknowledge that the Company's trade secrets and other confidential or proprietary information, as they may exist from time to time, are valuable, special and unique assets of the Company's business. Accordingly, during the term of the Company, each Member shall hold in strict confidence and shall not, directly or indirectly, disclose or reveal to any person, or use for its own personal benefit or for the benefit of anyone else, any trade secrets, confidential dealings or other confidential or proprietary information of any kind, nature or description (whether or not acquired, learned, obtained or developed by a Member alone or in conjunction with others) belonging to or concerning the Company, or any of its customers or clients or others with whom they now or hereafter have a business relationship, except: (i) with the prior written consent of all the other Members; (ii) in the course of the proper performance of the Member's duties hereunder; or (iii) as required by applicable law or legal process. Each Member confirms that all such information constitutes the exclusive property of the Company.

(e)    Given the secretive and competitive environment in which the Company does business and the fiduciary relationship that the Members have with the Company, each Member agrees to promptly deliver to the Company, at any time when the Company so requests, all memoranda, notes, records, drawings, manuals and other documents (and all copies thereof and therefrom) in any way relating to the business or affairs of the Company or any of its customers and clients, whether made or compiled by such Member or furnished to it by the Company or any of its employees, customers, clients, consultants or agents, which such Member may then possess or have under its control. Each Member confirms that all such memoranda, notes, records, drawings, manuals and other documents (and all copies thereof and therefrom) constitute the exclusive property of the Company. Notwithstanding the foregoing paragraph or any other provision of this Agreement, each Member shall be entitled to retain any written materials received by such Member in its capacity as a Member, and limit the dissemination of and access to the Confidential Information to such of the Company's and the Member's officers, directors, managers, employees, agents, attorneys, consultants, professional advisors or representatives as may reasonably require such information for the performance of Company business and ensure that any and all such persons observe all the obligations of confidentiality contained in this Section.

(f)    "Confidential Information" means any and all policies, procedures, quality assurance techniques, plans, projections, pro formas, financial, statistical and other information of the Company, including (but not limited to) information embodied on magnetic tape, computer software or any other medium for the storage of information, together with all notes, analyses, compilations, studies or other documents prepared by the Company or others on behalf of the Company containing or reflecting such information. Confidential Information does not include information which:

29

(i) was lawfully made available to or known by third person on a non-confidential basis prior to disclosure by a Member;

(ii) is or becomes publicly known through no wrongful act of a Member; or

(iii) is received by a Member from a third party other than in breach of confidence.

10.8 Additional Covenants.

(a) If a court of competent jurisdiction should declare this Article X, or any provision hereof, unenforceable because of any unreasonable restriction of duration, activity and/or geographical area, then the Parties hereby acknowledge and agree that such court shall have the express authority to reform this Agreement to provide for reasonable restrictions and/or grant the Company such other relief at law or in equity, reasonably necessary to protect the interests of the Company.

(b) Each Member specifically acknowledges that a breach of this Article X would cause the Company and other Members to suffer immediate and irreparable harm, which could not be remedied by the payment of money. In the event of a breach or threatened breach by a Member of any of the provisions of this Article X, the Company and other Members shall be entitled to injunctive relief to prevent or end such breach, without the requirement to post bond, and shall be entitled to recover reasonable attorneys' fees and expenses. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available to it for such breach or such threatened breach, including the recovery of damages.

(c) Each Member warrants and represents that he, she or it:

(i) Is familiar with the confidentiality and non-competition agreements contained herein.

(ii) Is acquiring such Units solely for investment and not resale, is an accredited investor, has experience and sophistication in financial matters sufficient to evaluate the merits and risks of the investment, and can afford to lose his, her or its entire investment and has not learned of this investment through any general solicitation or advertising. The Company has relied upon the fact that the Units in the Company are to be held by the Members solely for investment and on each of the representations made hereby.

(iii) Has concluded that his, her or its obligations and the Company's rights and remedies described herein, including, without limitation, the right to equitable relief contained herein, are reasonable.

(iv) Is fully aware of the duties, responsibilities, obligations and liabilities imposed upon him, her or it by this Article.

(v) Acknowledges that the covenants contained herein are fair, reasonable and just, under the circumstances, and are not a penalty.

30

(vi)    Acknowledges that no registration statement is now on file with the Securities and Exchange Commission with respect to any Units in the Company, and the Company has no obligation or current intention to register such Units under the Federal Securities Act 1933 ("33 Act").

(vii)    Acknowledges that the Units have not been registered under the 33 Act because the Company is issuing such Units in the belief that such Units are being issued in reliance upon the exceptions from registration requirements of the 33 Act providing for issuance of securities not involving a public offering, together with any corresponding exemptions of the Delaware Securities Act.

(viii)    Acknowledges that the exemptions from registration under the 33 Act would be unavailable if the Units in the Company were acquired by a Member with a view to distribution.

(ix)    Acknowledges that this Agreement does not conflict with or violate any other agreement to which the Member is party.

(x)    Agrees to be substantially involved in the operation of the Company and does not expect a return on his, her or its investment due to the efforts of others.

(xi)    Is aware that there are numerous risk factors associated with the holding of the Units, all of which each Member is aware exists and has expressly agreed to assume.

## ARTICLE XI
## Dissolution and Termination

11.1    Events Causing Dissolution.    The Company shall be dissolved and its affairs wound up upon the first to occur of the following events:

(a)    The sale or other disposition of all or substantially all of the assets of the Company, unless the disposition is a transfer of assets of the Company in return for consideration other than cash and, by Approval of the Board, a determination is made not to distribute any such non-cash items to the Members;

(b)    The election for any reason to dissolve the Company made by Supermajority Approval;

(c)    When there are no remaining Members, unless the holders of all of the financial rights in the Company agree in writing, within ninety (90) days after the cessation of membership of the last Member, to continue the legal existence and business of the Company and to appoint one or more new Members;

(d)    Any consolidation or merger of the Company with or into any entity unless the Company is the resulting or surviving entity; or

(e)    Entry of a decree of judicial dissolution.

31

ALECTO_00028679
JA2742

11.2    Procedures on Dissolution. Dissolution of the Company shall be effective on the day on which the event occurs giving rise to the dissolution, but the Company shall not terminate until the Articles shall be canceled in the manner set forth in the Act. Notwithstanding the dissolution of the Company, prior to the termination of the Company, as aforesaid, the business and the affairs of the Company shall be conducted so as to maintain the continuous operation of the Company pursuant to the terms of this Agreement. Upon dissolution of the Company and subject to the Supermajority Approval required by Section 7.4 hereof, the Board, acting by Approval, or, if none, a liquidator elected by Supermajority Approval, shall liquidate the assets of the Company, apply and distribute the proceeds thereof under Article VI, and cause the termination of this Agreement.

## ARTICLE XII
## General Provisions

12.1    Notices. Any and all notices under this Agreement shall be effective (a) on the fifth (5th) business day after being sent by registered or certified mail, return receipt requested, postage prepaid, or (b) on the first business day after being sent by express mail, telecopy, or commercial expedited delivery service providing a receipt for delivery. All such notices in order to be effective shall be addressed, if to the Company at its principal office, if to a Member at the last address of record on the Company books, and copies of such notices shall also be sent to the last address for the recipient which is known to the sender, if different from the address so specified. A Member may change its address for purposes of this Agreement by giving the Board notice of such change in the manner heretofore provided for the giving of notices.

12.2    Word Meanings. The words "herein," "hereinafter," "hereinbefore," "hereof" and "hereunder" as used in this Agreement refer to this Agreement as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires. The singular shall include the plural and the masculine gender shall include the feminine and neuter, and vice versa, unless the context otherwise requires. All section references, except as otherwise provided herein, are to sections of this Agreement.

12.3    Binding Provisions. Subject to the restrictions on transfers set forth herein, the covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the parties hereto, their heirs, Legal Representatives, successors and assigns.

12.4    Applicable Law. This Agreement shall be construed and enforced in accordance with the laws of the State of Delaware, including the Act, as interpreted by the courts of the State of Delaware, notwithstanding any rules regarding choice of law to the contrary.

12.5    Counterparts. This Agreement may be executed in several counterparts and as so executed shall constitute one agreement binding on all parties hereto, notwithstanding that all of the parties have not signed the original or the same counterpart.

12.6    Separability of Provisions. Each provision of this Agreement shall be considered separable. If for any reason any provision or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid, and if for any reason any provision or

32

CONFIDENTIAL

provisions herein would cause the Members to be liable for or bound by the obligations of the Company, such provision or provisions shall be deemed void and of no effect.

12.7   Section Titles.   Section titles are for descriptive purposes only and shall not control or alter the meaning of this Agreement as set forth in the text.

12.8   Amendments.   This Agreement may be amended or modified only in accordance with Sections 7.3 and 7.4 hereof.

12.9   Entire Agreement.   This Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

12.10   Waiver of Partition.   Each Member agrees that irreparable damage would be done to the Company if any Member brought an action in court to dissolve the Company. Accordingly, each Member agrees that he or she shall not, either directly or indirectly, take any action to require partition or appraisement of the Company or of any of the assets or properties of the Company, and notwithstanding any provisions of this Agreement to the contrary, each Member (and his or her successors and assigns) accepts the provisions of this Agreement as his or her sole entitlement on termination, dissolution and/or liquidation of the Company and hereby irrevocably waives any and all rights to maintain any action for partition or to compel any sale or other liquidation with respect to his or her interest, in or with respect to, any assets or properties of the Company. Each Member further agrees that he or she or it will not petition a court for the dissolution, termination or liquidation of the Company.

12.11   Survival of Certain Provisions.   The Members acknowledge and agree that this Agreement contains certain terms and conditions which are intended to survive the dissolution and termination of the Company, including, but without limitation, the provisions of Sections 10.6 and 10.7. The Members agree that such provisions of this Agreement which by their terms require, given their context, that they survive the dissolution and termination of the Company so as to effectuate the intended purposes and agreements of the Members hereunder shall survive notwithstanding that such provisions had not been specifically identified as surviving and notwithstanding the dissolution and termination of the Company or the execution of any document terminating this Agreement, unless such document specifically provides for nonsurvival by reference to this Section 12.11 and to the specific provisions hereof which are intended not to survive.

12.12   No Impairment.   Except as expressly contemplated by this Agreement, the Company shall not amend, modify or repeal any provision of the Articles or this Agreement in any manner which would alter or change the rights, preferences, privileges or powers of, or the restrictions provided for the benefit of, the Members, without the express prior written consent of the holders of a majority of the Units of the class so impacted in each and every such instance; nor shall the Company, through any reorganization, transfer of assets, merger, dissolution, issue, sale or distribution of Units or any other voluntary action, avoid or seek to avoid the observance or performance of any terms of this Agreement for the benefit of the Members, without the express prior written consent of the majority of the holders of the majority of the Class so impacted in each and every such instance, as limited by Section 7.4.   The Company shall in

33

good faith take any and all actions which are necessary or appropriate in order to protect the rights of the Members.

12.13 Specific Performance or Injunctive Relief. The Members and the Company hereby declare that it is impossible to measure in money the damages which may accrue to one or more of them by reason of the failure of a Party to perform any of its obligations hereunder. Therefore, if any Party hereto shall institute any action or proceeding to enforce the provisions of this Agreement, any person (including the Company) against whom such action or proceeding is brought hereby waives the claim or defense therein that such Party has or may have an adequate remedy at law and agrees not to urge in any such action or proceeding that such a remedy exists. Furthermore, any Party seeking to enforce the provisions of this Agreement shall have the right to specific performance, injunctive or other equitable relief without the requirement to post bond.

12.14 Dispute Resolution; Limited Renegotiation; Arbitration. Except for disputes relating to breaches of Sections 10.6 through 10.9 in which the Company is seeking injunctive relief and the Arbitrator (as defined below) does not have authority to grant preliminary, temporary and/or permanent injunctive relief, all disputes shall be resolved under the following provisions of this Agreement.

This Agreement shall be construed to be in accordance with any and all federal and state statutes, rules, regulations, principles and interpretations applicable to the Company and the Members, and the relationships among them. It is the intent of this Section to set forth a procedure so that if certain legal developments occur, a dispute arises, or certain circumstances arise in which the Board of Managers should become internally deadlocked (provided, however, that a deadlock shall not be deemed to occur due to the withholding of Supermajority Approval), a procedure will be in place that will bring the terms of this Agreement back into legal compliance and/or resolve a Board deadlock while preserving, to the extent possible, the economic and governance relationships set forth here.

In the event there is any dispute among the parties or there is any legal development, including without limitation, a change in (or the interpretation of) federal or state statutes, rules, regulations, principles or interpretations, that renders any of the material terms of this Agreement unlawful or unenforceable (including any services rendered or compensation to be paid hereunder), or a definitive judicial or State of Delaware interpretation of Delaware law that substantially affects the business, governance, or economics of the Company in an adverse manner (collectively a "Negative Legal Development"), or any circumstance in which the Board itself is deadlocked in its decision making hereunder and cannot take action (a "Deadlock Event"), any Member affected by such Negative Legal Development or such Deadlock Event shall have the immediate right upon notice to the other Members (the "Notice") to initiate the renegotiation of the affected term or terms of this Agreement, so as to remedy the impacts of the Negative Legal Development or to seek resolution of the Deadlock Event, each in a manner that substantially maintains the then existing economic and governance relationships of the Members, if it is legal to accomplish the change while maintaining substantially such economic and governance relationship.

If the Parties are not able to renegotiate the affected terms of the Agreement or resolve the Deadlock Event or dispute on a mutually satisfactory basis within forty-five (45) days after

34

ALECTO_00028682
JA2745

the Notice, the Parties must submit the issues (the "Dispute") to mediation and arbitration pursuant to the procedure set forth below. The arbitrator selected in accordance with the provisions set forth below (the "Arbitrator") will be asked to determine whether there is a bona fide Negative Legal Development or Deadlock Event, and if so, the Arbitrator will decide the matter as set forth in Section 12.14 C. of this Agreement.

A.     Right to Mediate or Arbitrate. Any dispute between the Parties relating to this Agreement must first be submitted to non-binding mediation in accordance with procedures agreed upon by the Parties. If the dispute is not resolved through mediation within forty-five (45) days of the initial request for mediation or within a time frame mutually agreed upon by the Parties, the dispute must then be submitted for binding arbitration in accordance with procedures set forth by the American Health Lawyers Association.

B.     Pre-Arbitration Procedure.

1.     Any dispute shall be submitted to arbitration by notifying the other Party or Parties, as the case may be, hereto in writing of the submission of such dispute to arbitration (the "Arbitration Notice"). The Party delivering the Arbitration Notice shall specify therein, to the fullest extent then possible, its version of the facts surrounding the dispute and the amount of any damages and/or the nature of any injunctive or other relief such Party claims.

2.     The Party (or Parties, as the case may be) receiving such Arbitration Notice shall respond within sixty (60) days after receipt thereof in writing (the "Arbitration Response"), stating its version of the facts to the fullest extent then possible and, if applicable, its position as to damages or other relief sought by the Party initiating arbitration.

3.     The Parties shall then endeavor, in good faith, to resolve the dispute outlined in the Arbitration Notice and Arbitration Response. In the event the Parties are unable to resolve such dispute within sixty (60) days after receipt of the Arbitration Response, the Parties shall initiate the arbitration procedure outlined below.

C.     Arbitration Procedure.

1.     If the Parties hereto are unable to resolve the dispute within sixty (60) days after receipt of the Arbitration Response as set forth above, then the Parties must submit the dispute to binding arbitration in accordance with the American Health Lawyers arbitration program. If the Parties are unable to agree on an arbitrator within sixty (60) days after receipt of the Arbitration Response, each of the Parties shall, within sixty (60) days after receipt of the Arbitration Response, choose an arbitrator selector ("Selector"). The Selectors shall then have forty (40) days to select an arbitrator who shall serve as the final arbitrator for the dispute. (The arbitrator chosen by the Parties hereto or by the Selectors, as the case may be, shall hereinafter be as the "Arbitrator"). The Arbitrator shall not be an Affiliate of any of the Parties hereto.

2.     The arbitration shall be held in Los Angeles County, California. The Parties shall submit to the Arbitrator the Arbitration Notice and the Arbitration Response and any other facts regarding the dispute of which any Party desires.

35

3.    The Arbitrator shall apply the arbitration rules set forth below in making his or her decision. After the Arbitrator has heard the case of each Party in accordance with Section 12.14 D., the Arbitrator shall request that each Party submit an Order to resolve all matters in dispute. The Arbitrator shall then execute one of the Orders submitted by the Parties. The Arbitrator shall not be allowed to modify or amend any Orders submitted by the Parties. The decision of the Arbitrator shall be rendered within sixty (60) days of the close of the hearing record.

D.    Arbitration Rules.

1.    The Arbitrator shall allow reasonable discovery, which he determines is necessary for determination of the issues presented.

2.    The Arbitrator shall be guided by, and shall substantially comply with, the then applicable Federal Rules of Evidence.

3.    Should any Party refuse or neglect to appear or participate in the arbitration proceedings, including the procedures relating to the selection of an Arbitrator, the participating Party may select the Arbitrator and the Arbitrator is empowered to decide the controversy in accordance with whatever evidence is presented.

E.    Arbitrator's Award. The award of the Arbitrator shall be binding on the Parties and may be entered as a final judgment in a court of competent jurisdiction.

F.    Other Disputes. All disputes relating to breaches of Sections 10.6 through 10.9 in which the Company is seeking injunctive relief shall be resolved by a court of law with the site of venue in Los Angeles County, California if the Arbitrator does not have authority to grant preliminary, temporary and/or permanent injunctive relief.

12.15  Waiver of Trial by Jury. EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES TRIAL BY JURY IN CONNECTION WITH ANY ACTION OR PROCEEDING INSTITUTED UNDER OR RELATING TO THIS AGREEMENT, OR ANY OTHER DOCUMENT EXECUTED PURSUANT HERETO, OR IN CONNECTION WITH ANY COUNTERCLAIM RESULTING FROM ANY SUCH ACTION OR PROCEEDING.

CONFIDENTIAL

ALECTO_00028684
JA2747

IN WITNESS WHEREOF, the the undersigned have executed this Agreement as of the day and year first above written.

**CLASS A MEMBERS:**

_____
Lex Reddy

_____
Panch Jeyakumar, M.D.

_____
Roger A. Krissman

**CLASS B MEMBER:**

_____
Lex Reddy

**THE COMPANY:**

ALECTO HEALTHCARE SERVICES LLC

By: _____
    Lex Reddy, CEO

37

CONFIDENTIAL

## EXHIBIT A

### MEMBERS, CAPTIAL CONTRIBUTIONS AND UNITS

| NAMES AND ADDRESSES MEMBERS | TOTAL CASH CAPITAL CONTRIBUTIONS | TOTAL UNITS |
|---|---|---|
| **CLASS A MEMBERS:** | | |
| Lex Reddy | $150.00 | 21,000 |
| Panch Jeyakumar, M.D. | $100.00 | 14,000 |
| Roger A. Krissman | $100.00 | 14,000 |
| **CLASS A TOTALS** | $350.00 | 49,000 |
| **CLASS B MEMBER:** | | |
| Lex Reddy | $10,000.00 | 51,000 |
| **CLASS B TOTALS** | $10,000.00 | 51,000 |
| **TOTALS** | $10,350.00 | 100,000 |

**ALECTO_00028686**
**JA2749**

## EXHIBIT B

### CONSENT OF SPOUSE

I acknowledge that I have read the foregoing Agreement and that I understand its contents. I am aware that such Agreement contains provisions whereby my spouse agrees to sell all his/her interest, of any form, in Alecto Healthcare Services LLC (the "Company"), including, if any, our community interest in it, upon the occurrence of certain events, and that such Agreement also impose restrictions on the transfer of such ownership interest. I hereby consent to any sale of my spouse's interest in the Company pursuant to the Agreement, approve of the provisions of the Agreement, and agree that our community property interest, if any, is subject to the provisions of the Agreement and that I will take no action at any time to hinder operation of the Agreement in relation to that interest. Further, in the event of dissolution of my marriage or other event which necessitates the division of marital community property, I will assert no right, claim or other entitlement to the interest of my spouse in the Company so that full ownership of the interest therein shall thereafter remain with my spouse as his/her separate property notwithstanding that it may be subject to valuation for the purpose of achieving a fair and equitable division of our community property.

I AM AWARE THAT THE LEGAL, FINANCIAL AND OTHER MATTERS CONTAINED IN THE AGREEMENTS ARE COMPLEX AND I AM FREE TO SEEK ADVICE WITH RESPECT THERETO FROM INDEPENDENT COUNSEL. I HAVE EITHER SOUGHT SUCH ADVICE OR DETERMINED AFTER CAREFULLY REVIEWING THE AGREEMENT THAT I WILL WAIVE SUCH RIGHT.

Dated: _____, 2012.

Name of Member: _____

Name of Spouse: _____

Signature of Spouse: _____

CONFIDENTIAL

## EXHIBIT H

### CONSENT OF SPOUSE

I acknowledge that I have read the foregoing Agreement and that I understand its contents. I am aware that such Agreement contains provisions whereby my spouse agrees to sell all his/her interest, of any form, in Alecto Healthcare Services LLC (the "Company"), including, if any, our community interest in it, upon the occurrence of certain events, and that such Agreement also impose restrictions on the transfer of such ownership interest. I hereby consent to any sale of my spouse's interest in the Company pursuant to the Agreement, approve of the provisions of the Agreement, and agree that our community property interest, if any, is subject to the provisions of the Agreement and that I will take no action at any time to hinder operation of the Agreement in relation to that interest. Further, in the event of dissolution of my marriage or other event which necessitates the division of marital community property, I will assert no right, claim or other entitlement to the interest of my spouse in the Company so that full ownership of the interest therein shall thereafter remain with my spouse as his/her separate property notwithstanding that it may be subject to valuation for the purpose of achieving a fair and equitable division of our community property.

I AM AWARE THAT THE LEGAL, FINANCIAL AND OTHER MATTERS CONTAINED IN THE AGREEMENTS ARE COMPLEX AND I AM FREE TO SEEK ADVICE WITH RESPECT THERETO FROM INDEPENDENT COUNSEL. I HAVE EITHER SOUGHT SUCH ADVICE OR DETERMINED AFTER CAREFULLY REVIEWING THE AGREEMENT THAT I WILL WAIVE SUCH RIGHT.

Dated: April 29, 2013.

Name of Member: Roger Krissman

Name of Spouse: Brenda Krissman

Signature of Spouse: _Chonda Krissman_

CONFIDENTIAL

ALECTO_00028688

## EXHIBIT B

### CONSENT OF SPOUSE

I acknowledge that I have read the foregoing Agreement and that I understand its contents. I am aware that such Agreement contains provisions whereby my spouse agrees to sell all his/her interest, of any form, in Alecto Healthcare Services LLC (the "Company"), including, if any, our community interest in it, upon the occurrence of certain events, and that such Agreement also impose restrictions on the transfer of such ownership interest. I hereby consent to any sale of my spouse's interest in the Company pursuant to the Agreement, approve of the provisions of the Agreement, and agree that our community property interest, if any, is subject to the provisions of the Agreement and that I will take no action at any time to hinder operation of the Agreement in relation to that interest. Further, in the event of dissolution of my marriage or other event which necessitates the division of marital community property, I will assert no right, claim or other entitlement to the interest of my spouse in the Company so that full ownership of the interest therein shall thereafter remain with my spouse as his/her separate property notwithstanding that it may be subject to valuation for the purpose of achieving a fair and equitable division of our community property.

I AM AWARE THAT THE LEGAL, FINANCIAL AND OTHER MATTERS CONTAINED IN THE AGREEMENTS ARE COMPLEX AND I AM FREE TO SEEK ADVICE WITH RESPECT THERETO FROM INDEPENDENT COUNSEL. I HAVE EITHER SOUGHT SUCH ADVICE OR DETERMINED AFTER CAREFULLY REVIEWING THE AGREEMENT THAT I WILL WAIVE SUCH RIGHT.

Dated: April 29th, 2013.

Name of Member: Panch Jeyakumar

Name of Spouse: Haridevi Jeyakumar

Signature of Spouse: H- Jule

## EXHIBIT B

### CONSENT OF SPOUSE

I acknowledge that I have read the foregoing Agreement and that I understand its contents. I am aware that such Agreement contains provisions whereby my spouse agrees to sell all his/her interest, of any form, in Alecto Healthcare Services LLC (the "Company"), including, if any, our community interest in it, upon the occurrence of certain events, and that such Agreement also impose restrictions on the transfer of such ownership interest. I hereby consent to any sale of my spouse's interest in the Company pursuant to the Agreement, approve of the provisions of the Agreement, and agree that our community property interest, if any, is subject to the provisions of the Agreement and that I will take no action at any time to hinder operation of the Agreement in relation to that interest. Further, in the event of dissolution of my marriage or other event which necessitates the division of marital community property, I will assert no right, claim or other entitlement to the interest of my spouse in the Company so that full ownership of the interest therein shall thereafter remain with my spouse as his/her separate property notwithstanding that it may be subject to valuation for the purpose of achieving a fair and equitable division of our community property.

I AM AWARE THAT THE LEGAL, FINANCIAL AND OTHER MATTERS CONTAINED IN THE AGREEMENTS ARE COMPLEX AND I AM FREE TO SEEK ADVICE WITH RESPECT THERETO FROM INDEPENDENT COUNSEL. I HAVE EITHER SOUGHT SUCH ADVICE OR DETERMINED AFTER CAREFULLY REVIEWING THE AGREEMENT THAT I WILL WAIVE SUCH RIGHT.

Dated: _April 28_, 2013.

Name of Member: _LEX REDDY_

Name of Spouse: _ANURADHA REDDY_

Signature of Spouse: _Anuradha Reddy._

CONFIDENTIAL

ALECTO_00028690

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| ALECTO HEALTHCARE SERVICES LLC, | Case No. 23-10787 (JKS) |
| Debtor.[1] | |

## NOTICE OF ENTRY OF ORDER CONFIRMING, AND OCCURRENCE OF EFFECTIVE DATE OF SMALL BUSINESS DEBTOR'S PLAN OF <u>REORGANIZATION DATED DECEMBER 19, 2023</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

**A.    Confirmation of the Plan.**

On April 4, 2024, the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered an order [Docket No. 354] (the "<u>Confirmation Order</u>")[2] confirming the *Small Business Debtor's Plan of Reorganization dated December 19, 2023* (collectively with all exhibits and supplements and any modifications or other amendments thereto, the "<u>Plan</u>") in the Chapter 11 case (the "<u>Chapter 11 Case</u>") of the above-captioned debtor (the "<u>Debtor</u>").

**B.    Occurrence of the Effective Date**

The Plan became effective on April 19, 2024 at 12:01 a.m. (eastern) (the "<u>Effective Date</u>").

**C.    Exculpation, Releases, and Injunction**

As more fully set forth therein, Article VII of the Plan, as superseded by the Confirmation Order, contains certain exculpation, injunctions and release provisions.  Note that the Confirmation Order expressly provides that nothing in the Plan or Confirmation order herein shall be interpreted to provide any third-party releases, however no party may bring a derivative claim of the Debtor or its estate against any of the Released Parties for any Claim arising prior to the Effective Date. Before bringing any action against the Debtor or the Released Parties, parties are strongly encouraged to review Article VII of the Plan and the Confirmation Order.

---

[1] The last four digits of the Debtor's federal tax identification number are 9723. The Debtor's address is 101 N Brand Boulevard, Suite 1920, Glendale, CA 91203.

[2] Capitalized terms used but not defined in this Notice shall have the same meanings given to them in the Plan and the Confirmation Order.

### D.    Rejection of Executory Contracts and Unexpired Leases Not Assumed

Except for any Executory Contracts or Unexpired Leases of the Debtor: (i) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been filed and served prior to, and remains pending as of, Confirmation; (iii) that were previously assumed and assigned; or (iv) that are listed on the Schedule of Assumed Contracts and Unexpired Leases, each Executory Contract and Unexpired Lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. Nothing herein is intended to affect the validity of contracts and leases entered into by the Debtor on or after the Petition Date, or the rights of the Debtor thereunder, which shall remain in full force and effect after the Effective Date in accordance with their terms.  Nothing herein is intended to affect the validity of contracts and leases entered into by the Debtor on or after the Petition Date, or the rights of the Debtor thereunder, which shall remain in full force and effect after the Effective Date in accordance with their terms.

### E.    Bar Dates

Rejection Damages Bar Date. If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, and absent an order of the Court, such Claim shall be forever barred and shall not be enforceable against the Debtor, its Estate, or the Liquidating Trustee, unless a Proof of Claim is filed with the Bankruptcy Court no later than 30 days after the Effective Date; provided, however, that any counterparty or counterparties to an Executory Contract or Unexpired Lease with a Claim that arises or becomes Allowed on or after the Effective Date as a result of the rejection of such contract or lease shall have 30 days after the Effective Date to file a Proof of Claim for rejection damages with the Bankruptcy Court.

Administrative Expense and Professional Fee Deadlines.  Any request for an administrative expense, other than professional fees and expenses, shall be filed with the Bankruptcy Court no later than 30 days after the Effective Date.  Any request for payment of professional fees and expenses shall be filed with the Bankruptcy Court no later than 45 days after the Effective Date.

Any claim for rejection damages, an administrative expense, including for professional fees and expenses that is not timely filed will be forever barred.

### F.    Retention of Jurisdiction by Bankruptcy Court

Following the Effective Date, the Court will retain exclusive jurisdiction of the Chapter 11 Case to interpret the Plan or the Confirmation Order, and the Court shall retain jurisdiction for all other matters arising under title 11, or arising in or related to the Debtor's Bankruptcy Case to the maximum extent permitted by law under 28 U.S.C. §§ 157 and 1334.

16647152/1

**JA2755**

**H.        Notice Parties' Service Addresses**

For purposes of serving requests for payment of Administrative Expense Claims, applications for allowance of Professional Compensation Claims, and any other papers required to be served on the notice parties set forth in the Plan, such service should be made, as applicable, on:

(a)        If to the Debtor:

Morris James LLP
500 Delaware Avenue, Suite 1500,
Wilmington, DE 19801
Attn:   Jeffrey R. Waxman, Esquire (jwaxman@morrisjames.com)
          Tara Pakrouh, Esquire (tpakrouh@morrisjames.com)

(b)        If to the U.S. Trustee:

Office of the U.S. Trustee
844 King St., Suite 2207
Lockbox 35
Wilmington, DE 19801
Attn:   Linda J. Casey, Esquire (linda.casey@usdoj.gov)

**H.        Filing Claims with the Bankruptcy Court**

Proofs of Claim arising from the rejection of executory contracts or unexpired leases should be filed so as to be <u>received</u> by the Court on or before the applicable Bar Date at the following addresses:

**<u>If by mail</u>**        United States Bankruptcy Court
Attn:  Claims
824 Market Street, 3rd Floor
Wilmington, DE 19801

Additionally, Proofs of Claim may be delivered electronically using the interface available on the Court's website at https://ecf.deb.uscourts.gov/cgi-bin/autoFilingClaims.pl.  **All proofs of claim arising from the rejection of executory contracts or unexpired leases must no later than 30 days after the Effective Date**.  Proofs of Claim submitted by facsimile or e-mail shall not be accepted.

3

**JA2756**

## I.     Post-Confirmation Service List

Notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee, counsel to the Reorganized Debtor, and all persons on the Bankruptcy Rule 2002 service list as well as any parties who may be affected by the relief sought..  With the exception of the U.S. Trustee and the Subchapter v Trustee, any Person desiring to remain on the Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Debtor within thirty (30) days subsequent to the Effective Date.  Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order.  Persons who do not file a request for continued service within thirty (30) days subsequent to the Effective Date shall be removed from the Bankruptcy Rule 2002 service list, however nothing herein shall affect any party's right to receive electronic notice of pleadings from CM/ECF.

## J.     Copies of Confirmation Order

Copies of the Plan, the Confirmation Order, or any other pleadings filed in this Chapter 11 Case may be obtained for a fee via PACER at: http://www.deb.uscourts.gov or for free or upon request from the Debtor's counsel (jwaxman@morrisjames.com).


Dated: April 19, 2024              **MORRIS JAMES LLP**

                                   */s/ Jeffrey R. Waxman*
                                   Jeffrey R. Waxman (DE Bar No. 4159)
                                   Tara C. Pakrouh (DE Bar No. 6192)
                                   500 Delaware Avenue, Suite 1500
                                   Wilmington, DE 19801
                                   Telephone: (302) 888-6800
                                   Facsimile: (302) 571-1750
                                   E-mail: jwaxman@morrisjames.com
                                   E-mail: tpakrouh@morrisjames.com

                                   *Counsel to the Debtor and Debtor-In-Possession*

16647152/1                                                                          **JA2757**

# Produced Natively

JX2

CONFIDENTIAL

ALECTO_00027108

JA2758

**Alecto Healthcare Services, LLC**
**Income Statement**
**FY19**

| | 19_01 | 19_02 | 19_03 | 19_04 | 19_05 | 19_06 | 19_07 | 19_08 | 19_09 | 19_10 | 19_11 | 19_12 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | | |
| Inpatient Revenue - Routine | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Inpatient Revenue - Ancillary | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total IP Revenue** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Outpatient Revenue | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Patient Revenue** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Revenue Deductions | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Bad Debt | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Deductions from Revenue** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Net Patient Revenue (Excl. Suppl.)** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **SUPPLEMENTAL NET PATIENT REVENUE** | | | | | | | | | | | | | |
| WV Directed Payment Plan (DPP) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| WV Direct Medical Education (DME) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| OH Upper Payment Limit (UPL) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| OH Hospital Care Assurance Program (HCAP) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TX UPF | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Medicaid DSH | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Medicare Settlements | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Supplemental Revenue** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Patient Revenue** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Operating Revenues | 382,649 | 371,307 | 334,204 | 413,344 | 472,297 | 438,597 | 357,392 | 492,263 | 283,604 | 366,385 | 89,277 | 283,300 | 4,284,619 |
| **TOTAL NET REVENUES** | 382,649 | 371,307 | 334,204 | 413,344 | 472,297 | 438,597 | 357,392 | 492,263 | 283,604 | 366,385 | 89,277 | 283,300 | 4,284,619 |
| **OPERATING EXPENSES** | | | | | | | | | | | | | |
| Salaries and Wages | 330,323 | 280,837 | 288,665 | 292,882 | 280,767 | 259,356 | 289,740 | 256,782 | 60,397 | 240,415 | 218,823 | 158,084 | 2,957,071 |
| Benefits | 24,982 | 22,984 | 26,821 | 24,287 | 27,803 | 22,957 | 24,065 | 23,591 | 25,627 | 20,244 | 18,690 | 19,726 | 281,778 |
| Payroll Taxes | 24,981 | 19,608 | 17,431 | 19,780 | 14,620 | 9,271 | 8,104 | 5,462 | 6,015 | 5,365 | 4,190 | 10,984 | 145,810 |
| PTO | - | - | - | - | - | - | - | - | 171,886 | 17,754 | 11,636 | 31,231 | 232,507 |
| Contract Labor | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Labor Sub-Total** | 380,286 | 323,429 | 332,918 | 336,950 | 323,190 | 291,584 | 321,908 | 285,835 | 263,925 | 283,777 | 253,338 | 220,025 | 3,617,166 |
| Supplies Billable | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Supplies Non-Billable | 942 | 1,132 | 1,117 | 1,127 | 3,700 | 2,602 | 1,875 | 1,481 | 1,734 | 4,173 | 934 | 2,308 | 23,126 |
| **Total Supplies** | 942 | 1,132 | 1,117 | 1,127 | 3,700 | 2,602 | 1,875 | 1,481 | 1,734 | 4,173 | 934 | 2,308 | 23,126 |
| Purchased Services | 3,125 | 119 | 20,119 | (19,881) | 3,653 | 507 | 613 | 3,693 | 119 | 1,071 | 1,417 | 188,247 | 202,802 |
| Professional Fees | 5,214 | 6,214 | 209,038 | 5,214 | 58,605 | 234,715 | 5,214 | 5,214 | 5,214 | 5,214 | 5,214 | (317,759) | 227,313 |
| Repairs and Maintenance | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 270 | 3,240 |
| Rents and leases | 5,556 | 5,556 | 5,556 | 5,556 | 5,556 | 5,556 | 5,556 | 5,827 | 5,827 | 5,827 | 5,827 | 6,220 | 68,414 |
| Insurance | 21,437 | 21,595 | 7,329 | 7,329 | 7,329 | 7,329 | 7,431 | 19,085 | 7,377 | 7,377 | 7,377 | 7,377 | 128,373 |
| Utilities | 2,118 | 2,109 | 2,289 | 2,365 | 4,071 | 2,082 | 2,251 | 2,330 | 2,273 | 2,747 | 2,494 | 2,815 | 29,943 |
| Taxes and Licenses | - | - | - | 3,200 | - | 7,200 | - | - | - | - | (20,980) | - | (10,580) |
| Other Operating Expenses | 49,046 | 7,291 | 16,972 | 6,721 | 20,402 | 7,476 | 10,588 | (22,638) | 3,753 | 20,469 | 19,892 | 19,033 | 159,006 |
| Hospital Fees/Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Expenses** | 467,994 | 367,714 | 595,606 | 348,851 | 426,778 | 559,322 | 355,706 | 301,098 | 290,491 | 330,924 | 275,782 | 128,535 | 4,448,803 |
| **EBITDA** | (85,345) | 3,593 | (261,402) | 64,493 | 45,519 | (120,726) | 1,686 | 191,166 | (6,887) | 35,461 | (186,505) | 154,765 | (164,183) |

Income Statement

| | 19_01 | 19_02 | 19_03 | 19_04 | 19_05 | 19_06 | 19_07 | 19_08 | 19_09 | 19_10 | 19_11 | 19_12 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **NON-OPERATING EXPENSES** | | | | | | | | | | | | | |
| Depreciation | 675 | 675 | 675 | 675 | 675 | 675 | 10,999 | 374 | 374 | 374 | 374 | 374 | 16,922 |
| Interest Income | - | - | - | - | 1 | - | (2) | - | (87) | - | - | - | (88) |
| Interest Expense | 14,635 | 12,807 | 13,304 | 13,388 | 17,107 | 14,212 | 17,179 | 14,722 | 13,943 | 14,888 | 11,731 | 29,366 | 187,281 |
| MPT Building Lease / Interest | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Non-Operating Expense / (Revenue) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Gain (Loss) on Asset Sales | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Non-Operating Expenses** | 15,311 | 13,482 | 13,979 | 14,063 | 17,784 | 14,888 | 28,176 | 15,096 | 14,230 | 15,262 | 12,105 | 29,740 | 204,115 |
| **NET INCOME (LOSS)** | (100,656) | (9,889) | (275,381) | 50,430 | 27,735 | (135,614) | (26,490) | 176,069 | (21,117) | 20,199 | (198,610) | 125,025 | (368,299) |

Income Statement

**Aleto Healthcare Services, LLC**
**Balance Sheet**
**FY19**

| | 19_01 | 19_02 | 19_03 | 19_04 | 19_05 | 19_06 | 19_07 | 19_08 | 19_09 | 19_10 | 19_11 | 19_12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ASSETS:** | | | | | | | | | | | | |
| Cash and Equivalents | 73,870 | 798,530 | 67,309 | 12,665 | 45,780 | 59,484 | 317,408 | 1,468,663 | 59,188 | 17,177 | 314,488 | 356,457 |
| Accounts Receivable | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowance for Bad Debt | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowance for Contractuals & Oth Adj | - | - | - | - | - | - | - | - | - | - | - | - |
| Supplemental A/R | - | - | - | - | - | - | - | - | - | - | - | - |
| Patient Accounts Receivable | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Receivables | 378,344 | 338,818 | 335,144 | 412,895 | 474,556 | 430,133 | 34,334 | 268,094 | 9,275,171 | 9,340,090 | 9,275,375 | 9,275,530 |
| Inventories | 96,356 | 96,356 | 96,356 | 146,356 | 170,458 | 170,458 | 168,456 | 168,456 | 118,858 | 94,756 | 129,756 | 129,756 |
| Other Current Assets | 54,037 | 379,255 | 306,053 | 224,809 | 143,561 | 67,938 | (10,014) | (23,936) | (110,014) | (124,764) | (204,156) | 488,500 |
| Prepaid Insurance | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Pre-Paid Expenses | 602,608 | 1,612,959 | 804,862 | 796,726 | 834,355 | 728,014 | 510,184 | 1,881,277 | 9,343,204 | 9,327,260 | 9,515,463 | 10,250,244 |
| **Total Current Assets** | | | | | | | | | | | | |
| Land and Improvements | - | - | - | - | - | - | - | - | - | - | - | - |
| Buildings and Improvements | - | - | - | - | - | - | - | - | - | - | - | - |
| Leaseholds | - | - | - | - | - | - | - | - | - | - | - | - |
| Equipment | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 |
| Construction-in-Progress | - | - | - | - | - | 10,625 | - | - | - | - | - | - |
| Property and Equipment | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 |
| Less: Accumulated Depreciation | (8,604) | (8,978) | (9,352) | (9,726) | (10,100) | (10,475) | (10,849) | (11,223) | (11,597) | (11,971) | (12,345) | (12,719) |
| Net Property and Equipment | 4,863 | 4,489 | 4,115 | 3,741 | 3,367 | 2,993 | 2,619 | 2,244 | 1,870 | 1,496 | 1,122 | 748 |
| Net goodwill | - | - | - | - | - | - | - | - | - | - | - | - |
| Other intangible assets | 12,132 | 11,830 | 11,529 | 11,228 | 10,926 | 10,625 | - | - | - | - | - | - |
| Total Long-Term Assets | 16,995 | 16,319 | 15,644 | 14,969 | 14,293 | 13,618 | 2,619 | 2,244 | 1,870 | 1,496 | 1,122 | 748 |
| **TOTAL ASSETS** | 619,603 | 1,629,278 | 820,506 | 811,694 | 848,648 | 741,632 | 512,803 | 1,883,522 | 9,345,074 | 9,328,756 | 9,516,586 | 10,250,992 |
| **LIABILITIES:** | | | | | | | | | | | | |
| Accounts Payable | 2,491,980 | 2,346,890 | 3,268,294 | 3,239,170 | 3,468,903 | 3,197,804 | 3,211,532 | 2,747,491 | 3,014,562 | 3,281,553 | 3,219,194 | 3,187,073 |
| Notes Payable | - | - | - | - | - | - | - | - | - | - | - | - |
| Capital Leases | - | - | - | - | - | - | - | - | - | - | - | - |
| Accrued Payroll | 185,158 | 242,548 | 129,678 | 99,972 | 134,678 | 219,035 | 170,675 | 66,506 | 108,962 | 204,800 | 113,387 | 88,910 |
| Accrued PTO | 134,948 | 145,020 | 149,381 | 144,422 | 127,706 | 129,470 | 122,979 | 131,026 | 129,184 | 133,626 | 123,293 | 99,470 |
| Accrued Payroll Taxes | - | - | - | - | - | - | - | - | - | - | - | - |
| Insurance Reserve | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Accrued Expenses | - | - | - | - | - | - | - | - | - | - | - | - |
| Third-Party Settlements | - | - | - | - | - | - | - | - | - | - | - | - |
| Lines of Credit & Other Short-Term Debt | - | - | - | - | - | - | - | - | - | - | - | - |
| Current Portion of Long-Term Debt | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Liabilities | (1,321,500) | (235,505) | (1,795,593) | (1,174,119) | (1,777,981) | (1,360,366) | (942,758) | (133,242) | (1,315,352) | (1,203,778) | (371,771) | - |
| **Total Current Liabilities** | 1,490,586 | 2,380,953 | 1,751,759 | 2,309,445 | 1,953,306 | 2,185,943 | 2,562,428 | 2,811,780 | 1,937,356 | 2,416,201 | 3,084,103 | 3,375,453 |
| Mortgages and Long-Term Notes Payable | - | - | - | - | - | - | - | - | - | - | - | - |
| Intercompany Payables/(Receivables) | (14,943,753) | (14,814,555) | (14,718,752) | (15,735,710) | (15,340,353) | (15,694,394) | (16,273,215) | (15,237,918) | (15,915,303) | (16,430,664) | (16,712,126) | (16,394,094) |
| Deferred Credits | - | - | - | - | - | - | - | - | - | - | - | - |
| Balance Sheet | | | | | | | | | | | | |

| | 19_01 | 19_02 | 19_03 | 19_04 | 19_05 | 19_06 | 19_07 | 19_08 | 19_09 | 19_10 | 19_11 | 19_12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deferred Taxes | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Long-Term Liabilities | 4,229,494 | 4,229,494 | 4,229,494 | 4,629,524 | 4,599,525 | 4,749,525 | 4,749,523 | 4,749,523 | 4,749,523 | 4,749,523 | 4,749,523 | 4,749,523 |
| Total Long-Term Liabilities | (10,714,259) | (10,585,061) | (10,489,299) | (11,106,186) | (10,740,829) | (10,944,869) | (11,523,693) | (10,578,395) | (11,165,780) | (11,681,141) | (11,962,604) | (11,644,572) |
| TOTAL LIABILITIES | (9,223,673) | (8,204,108) | (8,737,499) | (8,796,741) | (8,787,523) | (8,758,925) | (8,961,265) | (7,766,615) | (9,228,424) | (9,264,940) | (8,878,500) | (8,269,119) |
| EQUITY: | | | | | | | | | | | | |
| Common Stock | - | - | - | - | - | - | - | - | - | - | - | - |
| Additional Paid-in Capital | - | - | - | - | - | - | - | - | 8,944,478 | 8,944,478 | 8,944,478 | 8,944,478 |
| Other Equity | - | - | - | - | - | - | - | - | - | - | - | - |
| Retained Earnings PY | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 | 9,943,932 |
| Distributions | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Income | (100,656) | (110,545) | (385,926) | (335,496) | (307,761) | (443,375) | (469,865) | (293,795) | (314,912) | (294,713) | (493,324) | (368,299) |
| TOTAL EQUITY | 9,843,276 | 9,833,387 | 9,558,006 | 9,608,436 | 9,636,171 | 9,500,557 | 9,474,067 | 9,650,137 | 18,573,498 | 18,593,696 | 18,395,086 | 18,520,111 |
| TOTAL LIABILITIES AND EQUITY | 619,603 | 1,629,278 | 820,506 | 811,694 | 848,648 | 741,632 | 512,803 | 1,883,522 | 9,345,074 | 9,328,756 | 9,516,586 | 10,250,992 |

Balance Sheet

JA2762

Alecto Healthcare Services, LLC
Cash Flows
FY19

| | 19_01 | 19_02 | 19_03 | 19_04 | 19_05 | 19_06 | 19_07 | 19_08 | 19_09 | 19_10 | 19_11 | 19_12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Flows from Operating Activities:** | | | | | | | | | | | | |
| Change in Net Income | (100,656) | (9,889) | (275,381) | 50,430 | 27,735 | (135,614) | (26,490) | 176,069 | (21,117) | 20,199 | (198,610) | 125,025 |
| **Adj from Operating Activities:** | | | | | | | | | | | | |
| Depreciation and Amortization | 374 | 374 | 374 | 374 | 374 | 374 | 374 | 374 | 374 | 374 | 373 | 374 |
| Other Deferred Income/Expense | | | | | | | | | | | | |
| **(Increase)/Decrease in Assets:** | | | | | | | | | | | | |
| Patient Accounts Receivable | | | | | | | | | | | | |
| Supplies Inventory | | | | | | | | | | | | |
| Pre-Paid Expenses & Oth Current Assets | 398,047 | (325,218) | 73,202 | 31,244 | 57,146 | 75,623 | 79,955 | 13,922 | 135,675 | 38,852 | 44,392 | (692,656) |
| Other Receivables | (13,854) | 39,527 | 3,673 | (77,751) | (61,661) | 44,423 | 395,799 | (233,760) | (9,007,077) | (64,919) | 64,715 | (155) |
| **Increase/(Decrease) in Liabilities:** | | | | | | | | | | | | |
| Accounts and Notes Payable | 220,366 | (145,090) | 921,404 | (29,124) | 229,733 | (271,099) | 13,728 | (464,041) | 267,071 | 266,991 | (62,359) | (32,121) |
| Accrued Payroll Costs | 28,637 | (50,539) | 9,491 | (34,665) | 17,990 | 86,121 | (54,851) | (96,122) | 40,614 | 100,280 | (101,745) | (48,301) |
| IBNR | | | | | | | | | | | | |
| Other Accrued Liabilities | (1,321,500) | 1,085,995 | (1,560,088) | 621,474 | (603,862) | 417,615 | 417,608 | 809,515 | (1,182,109) | 111,574 | 832,007 | 371,771 |
| Estimated 3rd Party Settlements | | | | | | | | | | | | |
| **Net Cash From (For) Operating Activities** | (788,586) | 595,160 | (827,325) | 561,983 | (332,545) | 217,443 | 826,123 | 205,957 | (9,766,568) | 473,350 | 578,773 | (276,063) |
| **Cash Flows from Investing Activities:** | | | | | | | | | | | | |
| Capital Expenditures | | | | | | | | | | | | |
| Payments to Acquire Other Assets | 301 | 301 | 301 | 301 | 301 | 301 | 10,625 | 0 | 0 | 0 | 0 | 0 |
| **Net Cash From (For) Investing Activities** | 301 | 301 | 301 | 301 | 301 | 301 | 10,625 | 0 | 0 | 0 | 0 | 0 |
| **Cash Flows from Financing Activities:** | | | | | | | | | | | | |
| Funds Provided (to) from Intercompany | 575,881 | 129,198 | 95,802 | (1,016,958) | 395,357 | (354,040) | (578,822) | 945,297 | (587,385) | (515,361) | (281,463) | 318,032 |
| Borrow (Re-Payment) of Debt | 190,030 | 0 | 0 | 400,030 | (29,999) | 150,000 | (2) | 0 | 0 | 0 | 0 | 0 |
| Capital Lease Obligations (Re-Payment) | | | | | | | | | | | | |
| Parent Contributions / (Distributions) | | | | | | | | | 8,944,478 | | | |
| **Net Cash From (For) Financing Activities** | 765,911 | 129,198 | 95,802 | (616,928) | 365,358 | (204,040) | (578,824) | 945,297 | 8,357,093 | (515,361) | (281,463) | 318,032 |
| **Net Change in Cash and Cash Equivalents** | (22,374) | 724,659 | (731,221) | (54,643) | 33,115 | 13,704 | 257,924 | 1,151,255 | (1,409,475) | (42,011) | 297,310 | 41,969 |
| Beginning Cash Balance | 96,244 | 73,870 | 798,530 | 67,309 | 12,665 | 45,780 | 59,484 | 317,408 | 1,468,663 | 59,188 | 17,177 | 314,488 |
| Ending Cash Balance | 73,870 | 798,530 | 67,309 | 12,665 | 45,780 | 59,484 | 317,408 | 1,468,663 | 59,188 | 17,177 | 314,488 | 356,457 |

Cash Flow

# Produced Natively

JX4

CONFIDENTIAL

ALECTO_00027870

**Alecto Healthcare Services, LLC**
**Income Statement**
**FY20**

| | 20_01 | 20_02 | 20_03 | 20_04 | 20_05 | 20_06 | 20_07 | 20_08 | 20_09 | 20_10 | 20_11 | 20_12 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | | |
| Inpatient Revenue - Routine | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Inpatient Revenue - Ancillary | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total IP Revenue** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Outpatient Revenue | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Patient Revenue** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Revenue Deductions | | | | | | | | | | | | | |
| Revenue Deductions | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Bad Debt | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Deductions from Revenue** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Net Patient Revenue (Excl. Suppl.)** | | | | | | | | | | | | | |
| **SUPPLEMENTAL NET PATIENT REVENUE** | | | | | | | | | | | | | |
| WV Directed Payment Plan (DPP) | | | | | | | | | | | | | |
| WV Direct Medical Education (DME) | | | | | | | | | | | | | |
| OH Upper Payment Limit (UPL) | | | | | | | | | | | | | |
| OH Hospital Care Assurance Program (HCAP) | | | | | | | | | | | | | |
| TX UPF | | | | | | | | | | | | | |
| Medicaid DSH | | | | | | | | | | | | | |
| Medicare Settlements | | | | | | | | | | | | | |
| **Total Supplemental Revenue** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Patient Revenue** | | | | | | | | | | | | | |
| Other Operating Revenues | 899,263 | 220,461 | 518,544 | 1,110,798 | 625,967 | 386,805 | 344,908 | 239,198 | 328,707 | 360,808 | 360,409 | 430,882 | 5,826,749 |
| **TOTAL NET REVENUES** | 899,263 | 220,461 | 518,544 | 1,110,798 | 625,967 | 386,805 | 344,908 | 239,198 | 328,707 | 360,808 | 360,409 | 430,882 | 5,826,749 |
| **OPERATING EXPENSES** | | | | | | | | | | | | | |
| Salaries and Wages | 152,885 | 143,470 | 163,409 | 149,465 | 132,327 | 134,809 | 146,480 | 155,465 | 129,136 | 158,474 | 136,384 | 978,474 | 2,580,779 |
| Benefits | 21,560 | 20,087 | 39,755 | 26,420 | 25,449 | 10,050 | 26,332 | 25,477 | 29,032 | 28,751 | 29,315 | 28,524 | 310,752 |
| Payroll Taxes | 25,838 | 12,152 | 12,404 | 13,728 | 10,326 | 9,279 | 7,130 | 4,924 | 2,752 | 3,968 | 3,498 | 32,007 | 138,005 |
| PTO | 16,607 | 16,534 | (7,059) | 10,729 | 9,729 | 15,555 | 10,690 | 9,739 | 12,023 | 11,375 | 3,499 | 25,145 | 134,564 |
| Contract Labor | | | | | | | | | | | | | - |
| Labor Sub-Total | 216,890 | 192,243 | 208,510 | 200,341 | 177,831 | 169,692 | 190,632 | 195,605 | 172,943 | 202,567 | 172,696 | 1,064,151 | 3,164,100 |
| Supplies Billable | | | | | | | | | | | | | |
| Supplies Non-Billable | 15,856 | 16,985 | 17,581 | 3,040 | 1,629 | 3,800 | 3,048 | 2,035 | 3,085 | (472) | 1,907 | 2,884 | 71,378 |
| Total Supplies | 15,856 | 16,985 | 17,581 | 3,040 | 1,629 | 3,800 | 3,048 | 2,035 | 3,085 | (472) | 1,907 | 2,884 | 71,378 |
| Purchased Services | 290,956 | 2,319 | 201 | 23,078 | 11,865 | 1,123 | 15,301 | 8,360 | 5,039 | 19,255 | 20,890 | 17,367 | 417,753 |
| Professional Fees | 12,039 | | 79,290 | (30,994) | 145,878 | | | 13,334 | 26,124 | 20,213 | 7,503 | 25,103 | 298,890 |
| Repairs and Maintenance | 270 | 270 | 270 | 270 | 270 | | 525 | 270 | | 270 | 270 | 270 | 3,495 |
| Rents and leases | 6,508 | 5,827 | 5,827 | 5,827 | 5,827 | 5,827 | 5,827 | 5,827 | 6,295 | 8,302 | 3,352 | 9,391 | 74,631 |
| Insurance | 22,339 | 20,205 | 6,079 | 6,079 | 6,079 | 6,079 | 8,923 | 14,972 | 6,098 | 6,041 | 6,098 | 6,079 | 115,270 |
| Utilities | 2,359 | 2,158 | 2,102 | 2,052 | 2,032 | 2,212 | 2,291 | 2,579 | 2,640 | 1,564 | 1,564 | 1,567 | 25,120 |
| Taxes and Licenses | | | | 300 | 1,500 | 38,180 | | | 2,400 | (23,580) | | | 18,800 |
| Other Operating Expenses | 7,145 | 13,561 | 8,394 | 3,471 | 20,867 | 1,105 | 14,815 | 2,453 | 9,608 | 3,267 | 18,553 | 30,680 | 133,920 |
| Hospital Fees/Taxes | | | | | | | | | | | | | |
| **Total Operating Expenses** | 576,561 | 253,568 | 328,253 | 213,863 | 227,899 | 374,166 | 241,362 | 245,435 | 234,501 | 237,426 | 232,833 | 1,157,492 | 4,323,358 |
| **EBITDA** | 322,702 | (33,107) | 190,290 | 896,935 | 398,067 | 12,639 | 103,547 | (6,237) | 94,207 | 123,382 | 127,576 | (726,610) | 1,503,391 |

Income Statement

| | 20_01 | 20_02 | 20_03 | 20_04 | 20_05 | 20_06 | 20_07 | 20_08 | 20_09 | 20_10 | 20_11 | 20_12 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **NON-OPERATING EXPENSES** | | | | | | | | | | | | | |
| Depreciation | 374 | 374 | - | - | - | - | - | - | - | - | - | - | 748 |
| Interest Income | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest Expense | 14,539 | 12,297 | 26,850 | 7,238 | 6,031 | 6,039 | 7,089 | 6,056 | 6,789 | 6,164 | 5,701 | 6,495 | 111,288 |
| MPT Building Lease / Interest | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Non-Operating Expense / (Revenue) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Gain (Loss) on Asset Sales | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Non-Operating Expenses** | 14,913 | 12,671 | 26,850 | 7,238 | 6,031 | 6,039 | 7,089 | 6,056 | 6,789 | 6,164 | 5,701 | 6,495 | 112,036 |
| **NET INCOME (LOSS)** | 307,789 | (45,777) | 163,441 | 889,697 | 392,036 | 6,600 | 96,457 | (12,293) | 87,417 | 117,218 | 121,875 | (733,104) | 1,391,355 |

Income Statement

JA2766

**Alecto Healthcare Services, LLC**
**Balance Sheet**
**FY20**

| | 20_01 | 20_02 | 20_03 | 20_04 | 20_05 | 20_06 | 20_07 | 20_08 | 20_09 | 20_10 | 20_11 | 20_12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ASSETS:** | | | | | | | | | | | | |
| Cash and Equivalents | 52,973 | (31,974) | 1,053,373 | 14,072,113 | 13,591,779 | 19,522,447 | 21,427,952 | 19,392,334 | 18,859,381 | 19,450,649 | 21,729,676 | 13,380,240 |
| Accounts Receivable | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowance for Bad Debt | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowance for Contractuals & Oth Adj | - | - | - | - | - | - | - | - | - | - | - | - |
| Supplemental A/R | - | - | - | - | - | - | - | - | - | - | - | - |
| Patient Accounts Receivable | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Receivables | 9,322,456 | 9,203,261 | 9,419,188 | 10,074,734 | 9,420,874 | 9,340,767 | 9,303,590 | 9,199,393 | 9,228,593 | 9,274,605 | 9,306,007 | 9,378,573 |
| Inventories | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Current Assets | 139,756 | 139,756 | 139,756 | 139,756 | 139,756 | 139,756 | 139,756 | 2,639,756 | 291,695 | 291,695 | 291,695 | 291,695 |
| Prepaid Insurance | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Pre-Paid Expenses | 72,212 | 3,732,141 | 3,396,016 | 3,051,220 | 2,707,298 | 2,363,287 | 2,037,745 | 1,784,504 | 1,441,073 | 1,099,933 | 762,408 | 428,999 |
| Total Current Assets | 9,587,397 | 13,043,184 | 14,008,332 | 27,337,823 | 25,859,707 | 31,366,258 | 32,909,043 | 33,015,987 | 29,820,742 | 30,116,883 | 32,089,786 | 23,479,509 |
| Land and Improvements | - | - | - | - | - | - | - | - | - | - | - | - |
| Buildings and Improvements | - | - | - | - | - | - | - | - | - | - | - | - |
| Leaseholds | - | - | - | - | - | - | - | - | - | - | - | - |
| Equipment | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 |
| Construction-In-Progress | - | - | - | - | - | - | - | - | - | - | - | - |
| Property and Equipment | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 | 13,467 |
| Less: Accumulated Depreciation | (13,093) | (13,467) | (13,467) | (13,467) | (13,467) | (13,467) | (13,467) | (13,467) | (13,467) | (13,467) | (13,467) | (13,467) |
| Net Property and Equipment | 374 | - | - | - | - | - | - | - | - | - | - | - |
| Net goodwill | - | - | - | - | - | - | - | - | - | - | - | - |
| Other intangible assets | 374 | - | - | - | - | - | - | - | - | - | - | - |
| Total Long-Term Assets | 374 | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL ASSETS** | 9,587,771 | 13,043,184 | 14,008,332 | 27,337,823 | 25,859,707 | 31,366,258 | 32,909,043 | 33,015,987 | 29,820,742 | 30,116,883 | 32,089,786 | 23,479,509 |
| **LIABILITIES:** | | | | | | | | | | | | |
| Accounts Payable | 2,196,186 | 2,032,893 | 2,064,229 | 1,492,880 | 1,351,088 | 1,355,439 | 1,038,672 | 1,046,533 | 938,974 | 757,295 | 638,804 | 634,561 |
| Notes Payable | - | - | - | - | - | - | - | - | - | - | - | - |
| Capital Leases | - | - | - | - | - | - | - | - | - | - | - | - |
| Accrued Payroll | 45,604 | 101,391 | 55,851 | 64,397 | 69,992 | 80,336 | 39,116 | 60,506 | 60,461 | 73,832 | 73,832 | 44,276 |
| Accrued PTO | 93,493 | 82,601 | 73,460 | 80,555 | 85,895 | 93,099 | 97,876 | 107,406 | 109,174 | 120,132 | 115,946 | 120,233 |
| Accrued Payroll Taxes | - | - | - | - | - | - | - | - | - | - | - | - |
| Insurance Reserve | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Accrued Expenses | - | - | - | - | - | - | - | - | - | - | - | - |
| Third-Party Settlements | - | - | - | - | - | - | - | - | - | - | - | - |
| Lines of Credit & Other Short-Term Debt | - | - | - | - | - | - | - | - | - | - | - | - |
| Current Portion of Long-Term Debt | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Liabilities | (157,000) | 607,972 | 2,882,752 | 16,577,279 | 15,695,072 | 22,374,654 | 25,010,238 | 25,746,745 | 25,715,544 | 26,805,453 | 29,672,724 | 22,701,400 |
| Total Current Liabilities | 2,178,284 | 2,824,858 | 5,076,292 | 18,215,111 | 17,202,047 | 23,903,528 | 26,185,901 | 26,961,191 | 26,824,153 | 27,756,712 | 30,501,306 | 23,500,471 |
| Mortgages and Long-Term Notes Payable | - | 3,478,095 | 3,130,286 | 2,782,476 | 2,434,667 | 2,086,857 | 1,739,048 | 1,391,238 | 1,043,429 | 695,619 | 347,810 | - |
| Intercompany Payables/(Receivables) | (16,544,954) | (17,230,731) | (17,893,471) | (18,251,539) | (18,689,849) | (19,549,608) | (20,044,934) | (20,359,233) | (23,163,837) | (23,575,828) | (24,127,285) | (24,662,308) |

| | 20_01 | 20_02 | 20_03 | 20_04 | 20_05 | 20_06 | 20_07 | 20_08 | 20_09 | 20_10 | 20_11 | 20_12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deferred Credits | - | - | - | - | - | - | - | - | - | - | - | - |
| Deferred Taxes | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Long-Term Liabilities | 5,126,542 | 5,188,838 | 4,749,662 | 4,756,515 | 4,685,546 | 4,691,585 | 4,698,675 | 4,704,731 | 4,711,520 | 4,717,684 | 4,723,385 | 4,729,879 |
| Total Long-Term Liabilities | (11,418,413) | (8,563,797) | (10,013,523) | (10,712,548) | (11,569,636) | (12,771,166) | (13,607,211) | (14,263,264) | (17,408,889) | (18,162,525) | (19,056,090) | (19,932,429) |
| **TOTAL LIABILITIES** | **(9,240,129)** | **(5,738,939)** | **(4,937,231)** | **7,502,563** | **5,632,410** | **11,132,362** | **12,578,689** | **12,697,927** | **9,415,264** | **9,594,187** | **11,445,216** | **3,568,042** |
| **EQUITY:** | | | | | | | | | | | | |
| Common Stock | 8,944,478 | 8,944,478 | 8,944,478 | 8,944,478 | 8,944,478 | 8,944,478 | 8,944,478 | 8,944,478 | 8,944,478 | 8,944,478 | 8,944,478 | 8,944,478 |
| Additional Paid-in Capital | 9,575,633 | 9,575,633 | 9,575,633 | 9,575,633 | 9,575,633 | 9,575,633 | 9,575,633 | 9,575,633 | 9,575,633 | 9,575,633 | 9,575,633 | 9,575,633 |
| Other Equity | - | - | - | - | - | - | - | - | - | - | - | - |
| Retained Earnings PY | - | - | - | - | - | - | - | - | - | - | - | - |
| Distributions | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Income | 307,789 | 262,012 | 425,453 | 1,315,150 | 1,707,186 | 1,713,785 | 1,810,242 | 1,797,949 | 1,885,367 | 2,002,585 | 2,124,460 | 1,391,355 |
| **TOTAL EQUITY** | **18,827,900** | **18,782,123** | **18,945,563** | **19,835,261** | **20,227,297** | **20,233,896** | **20,330,353** | **20,318,060** | **20,405,478** | **20,522,696** | **20,644,571** | **19,911,466** |
| **TOTAL LIABILITIES AND EQUITY** | **9,587,771** | **13,043,184** | **14,008,332** | **27,337,823** | **25,859,707** | **31,366,258** | **32,909,043** | **33,015,987** | **29,820,742** | **30,116,883** | **32,089,786** | **23,479,509** |

Balance Sheet

**Alecto Healthcare Services, LLC**
**Cash Flows**
**FY20**

| | 20_01 | 20_02 | 20_03 | 20_04 | 20_05 | 20_06 | 20_07 | 20_08 | 20_09 | 20_10 | 20_11 | 20_12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Flows from Operating Activities:** | | | | | | | | | | | | |
| Change in Net Income | 307,789 | (45,777) | 163,441 | 889,697 | 392,036 | 6,600 | 96,457 | (12,293) | 87,417 | 117,218 | 121,875 | (733,104) |
| **Adj from Operating Activities:** | | | | | | | | | | | | |
| Depreciation and Amortization | 374 | 374 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Deferred Income/Expense | | | | | | | | | | | | |
| **(Increase)/Decrease in Assets:** | | | | | | | | | | | | |
| Patient Accounts Receivable | | | | | | | | | | | | |
| Supplies Inventory | | | | | | | | | | | | |
| Pre-Paid Expenses & Oth Current Assets | 406,288 | (3,659,929) | 336,125 | 344,796 | 343,922 | 344,011 | 325,542 | (2,246,759) | 2,691,492 | 341,139 | 337,525 | 333,408 |
| Other Receivables | (46,926) | 119,195 | (215,927) | (655,546) | 653,859 | 80,107 | 37,178 | 104,196 | (29,200) | (46,011) | (31,402) | (72,566) |
| **Increase/(Decrease) in Liabilities:** | | | | | | | | | | | | |
| Accounts and Notes Payable | (1,147,886) | 601,679 | 2,306,116 | 13,123,177 | (1,023,998) | 6,683,933 | 2,318,816 | 744,369 | (138,761) | 908,230 | 2,748,781 | (6,975,566) |
| Accrued Payroll Costs | (49,283) | 44,895 | (54,681) | 15,642 | 10,934 | 17,548 | (36,443) | 30,921 | 1,723 | 24,330 | (4,187) | (25,269) |
| IBNR | | | | | | | | | | | | |
| Other Accrued Liabilities | 377,019 | 62,297 | (439,177) | 6,853 | (70,969) | 6,039 | 7,089 | 6,056 | 6,789 | 6,164 | 5,701 | 6,495 |
| Estimated 3rd Party Settlements | | | | | | | | | | | | |
| **Net Cash From (For) Operating Activities** | (152,624) | (2,877,266) | 2,095,897 | 13,724,619 | 305,785 | 7,138,237 | 2,748,640 | (1,373,509) | 2,619,460 | 1,351,069 | 3,178,293 | (7,466,603) |
| **Cash Flows from Investing Activities:** | | | | | | | | | | | | |
| Capital Expenditures | | | | | | | | | | | | |
| Payments to Acquire Other Assets | | | | | | | | | | | | |
| **Net Cash From (For) Investing Activities** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Cash Flows from Financing Activities:** | | | | | | | | | | | | |
| Funds Provided (to) from Intercompany | (150,860) | (685,776) | (662,740) | (358,069) | (438,310) | (859,759) | (495,325) | (314,299) | (2,804,604) | (411,991) | (551,457) | (535,023) |
| Borrow (Re-Payment) of Debt | 0 | 3,478,095 | (347,810) | (347,810) | (347,810) | (347,810) | (347,810) | (347,810) | (347,810) | (347,810) | (347,810) | (347,810) |
| Capital Lease Obligations (Re-Payment) | | | | | | | | | | | | |
| Parent Contributions / (Distributions) | | | | | | | | | | | | |
| **Net Cash From (For) Financing Activities** | (150,860) | 2,792,319 | (1,010,550) | (705,878) | (786,119) | (1,207,569) | (843,135) | (662,109) | (3,152,414) | (759,801) | (899,266) | (882,833) |
| **Net Change in Cash and Cash Equivalents** | (303,485) | (84,947) | 1,085,347 | 13,018,741 | (480,335) | 5,930,669 | 1,905,505 | (2,035,618) | (532,953) | 591,269 | 2,279,027 | (8,349,436) |
| Beginning Cash Balance | 356,457 | 52,973 | (31,974) | 1,053,373 | 14,072,113 | 13,591,779 | 19,522,447 | 21,427,952 | 19,392,334 | 18,859,381 | 19,450,649 | 21,729,676 |
| Ending Cash Balance | 52,973 | (31,974) | 1,053,373 | 14,072,113 | 13,591,779 | 19,522,447 | 21,427,952 | 19,392,334 | 18,859,381 | 19,450,649 | 21,729,676 | 13,380,240 |

Cash Flow

# IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Alecto Healthcare Services LLC, | ) | Case No. 23-10787 (JKS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| The Reed Action Judgement Creditors, | ) | Civil Action No. 1:24-cv-00494-GBW |
| | ) | |
| | ) | Bankruptcy BAP No. 23-65 |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Alecto Healthcare Services LLC, | ) | |
| | ) | |
| Appellee. | ) | |

## <u>APPELLANTS' OPENING BRIEF</u>

Dated: October 15, 2024

**SULLIVAN · HAZELTINE · ALLINSON LLC**
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
        whazeltine@sha-llc.com

and

Bren J. Pomponio, Esq.
Colten L. Fleu, Esq.
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Tel: (304) 326-0188
Email:  colten@msjlaw.org
          bren@msjlaw.org

and

John Stember, Esq.
Maureen Davidson-Welling, Esq.
Stember Cohn & Davidson-Welling, LLC
The Harley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
Tel: 412-338-1445
Email:jstember@stembercohn.com
          mdavidsonwelling@stembercohn.com

*Counsel for The Reed Action*
*Judgment Creditors*

# TABLE OF CONTENTS

*Page*

Nature and Stage of Proceedings ............................................................. 1

Jurisdictional Statement ........................................................................ 3

Statement of Issues on Appeal .............................................................. 4

    Designation Appeal ......................................................................... 4

    Confirmation Appeal ....................................................................... 4

Summary of Argument .......................................................................... 5

Statement of Case ................................................................................. 9

I.     The Reed Creditors ..................................................................... 10

II.    The Designation Appeal .............................................................. 11

III.   Confirmation Appeal .................................................................. 17

    A. The Plan ................................................................................. 17

    B. Alecto's Investigation of Potential Claims Against Insiders ........ 18

    C. The Reed Creditors' Plan Objection ........................................ 20

        1. The Potential Fraudulent Transfer Claim against the
           Alecto Members ................................................................. 20

        2. Evidence Presented at the Confirmation Hearing ............... 21

        3. The Confirmation Ruling ................................................... 25

JA2772

*Page*

ARGUMENT ..................................................................................26

IV.    This Court Should Review the Designation Order because the
       Bankruptcy Court Erred in Ruling that Alecto was Eligible to be a
       Subchapter V Debtor ..........................................................26

       1.  The Debtor's lack of knowledge is not relevant in determining whether
           the LHP Claim was liquidated as of the Petition Date ...........................30

       2.  The plain language of the Leases expressly provides that the common
           area maintenance charges became due and payable monthly .................32

       3.  Whether the Debtor retains a right to dispute its obligation to LHP
           does not make the LHP Claim unliquidated ..............................................34

       4.  The 2022 Settlement Agreement between the Debtor and LHP
           has no impact on the liquidated status of the LHP obligation.................35

V.     The Confirmation Order Should Be Reversed because the Court Erred
       in Approving the Release of Claims Against the Released Parties ...............37

       A.  The Applicable Legal Standard for Evaluating fraudulent
           conveyance actions ...................................................................37

       B.  The Bankruptcy Court erred as a matter of law by placing the
           burden of proof on the Reed Creditors on the solvency issue.................39

       C.  The Bankruptcy Court erred in accepting the testimony of Mr. Balasiano
           that there were no viable causes of action against the Debtor's Insiders.41

       D.  The Bankruptcy Court erred in relying on the evidence the
           Debtor presented to argue it was solvent at the time of the
           Sunrise REH Transfer...............................................................44

       E.  The Bankruptcy Court erred in misapplying the factors for approval
           of a settlement...........................................................................47

CONCLUSION ...............................................................................49

# TABLE OF AUTHORITIES

*Page*

## Cases

*Barcal v. Laughline (In re Barcal)*, 213 B.R. 1008 (B.A.P. 8th Cir. 1997) .......32, 34

*Constructora Maza, Inc. v. Banco de Ponce*, 616 F.2d 573 (1st Cir. 1980) .....38, 39

*Hasenjeager v. Voth,* 267 P. 146 (Cal. Ct. App. 1928) ...........................................26

*In re Bernadin*, 630 B.R. 787 (Bankr. E.D. Pa. 2019)..............................................36

*In re Coram Healthcare, Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004)......6, 8, 39, 47

*In re Fidelity Tube Corp.*, 278 F.2d 776 (3d Cir. 1965) ...........................................36

*In re Fostvedt*, 823 F.2d 302 (9th Cir. 1987) ............................................................28

*In re Fountain*, 612 B.R. 743 (9th Cir. BAP 2020) ..................................................28

*In re Hall*, 650 B.R. 595 (Bankr. M.D. Fla. 2023) ................................30, 32, 34, 35

*In re Jordan*, 166 B.R. 201 (Bankr. D. Me. 1994) ...................................................28

*In re Mazzeo*, 131 F/3d 295 (2d Cir. 1997) .............................................................28

*In re McKenzie Contracting, LLC*, Case No. 8:24-bk-01255-RCT,
    2024 WL 3508375 *1, Colton, J. (Bankr. M.D. Fla. 2024)...............................31

*In re Mitchell*, 255 B.R. 246 (Bankr. D. Mass 2000) ..............................................28

*In re Spansion, Inc.*, No. 09–10690(KJC), 2009 WL 1531788,
    Carey, J. (Bankr. D. Del. June 2, 2009).......................................................39, 47

*In re Sullivan*, 245 B.R. 416 (N.D. Fla. 1999)..................................................30, 35

*In re Trans World Airlines, Inc.*, 134 F.3d 188 (3d Cir. 1998) ...............................38

iii

*In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011) ....................39

*In re Zhang Medical P.C.*, 655 B.R. 403 (Bankr. S.D.N.Y. 2023) ........................30

*Mellon Bank, N.A. v. Metro Communications, Inc.,*
    945 F.2d 635 (3d Cir. 1991)................................................................................38

*Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996))......................................48

*Nicholes v. Johnny Appleseed (In re Nicholes),*
    184 B.R. 82 (B.A.P. 9th Cir. 1995)......................................................................34

*Stearns v. Los Angeles City Sch. Dist.,* 53 Cal. Rptr. 482 (Cal. Ct. App. 1966)......26

*United States v. May*, 211 B.R. 991 (M.D. Fla. 1997)............................................32

*United States v. Speers*, 382 US 266 (1965) ............................................................36

*Whitehouse v. Six Corp.,* 48 Cal. Rptr. 2d 600 (Cal. Ct. App. 1995),
    *as modified* (Nov. 29, 1995), *as modified on denial of reh'g* (Dec. 19, 1995) ...26

## Statutes

11 U.S.C. § 1182(1) ..........................................................................................26, 27

## Other Authorities

2 L. King *Collier on Bankruptcy* ¶ 109.06[2][c] (15th ed. rev. 1997)) ...................28

iv

## **Nature and Stage of Proceedings**

On June 16, 2023 ("Petition Date"), Appellee Alecto Healthcare Services LLC ("Alecto" or the "Debtor") filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition"), 11 U.S.C. §§ 101 *et seq.*, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On Line 8 of the Petition, Alecto elected to proceed under subchapter V of chapter 11 and, in doing so, swore to its eligibility as a "debtor" under 11 U.S.C. § 1182(1).

On November 2, 2023, Appellants the Reed Action Judgment Creditors (the "Reed Creditors") timely filed their *Objection of the Reed Action Judgment Creditors to and Motion to Revoke Debtor's Designation as a Subchapter V Debtor* (the "Designation Motion") [Bankr. Ct. DI 204] Appendix Ex. 1, A.0001 – A.0015 with the Bankruptcy Court. The Bankruptcy Court held an evidentiary hearing on the Designation Motion on November 29, 2023, and, on December 1, 2023, the Bankruptcy Court ruled in open court that Alecto is eligible to be a Subchapter V Debtor. Transcript of Hearing held on December 1, 2023 8:14 – 22[1]. See Appendix Ex. 4, A0244 – A0256. On December 4, 2023, the Bankruptcy Court entered its *Order Denying Objection of the Reed Action Judgment Creditors to and Motion to Revoke Debtor's Designation as a Subchapter V Debtor* (the "Designation Order")

---

[1] The Transcript of Hearing held on December 1, 2023 shall hereinafter be referred to as the "12/1/23 Tr."

[Bankr. Ct. DI 243]. The Reed Creditors timely filed a notice of appeal from the Designation Order on December 18, 2023 [Bankr. Ct. DI 257] (the "Designation Appeal").[2]  See Appendix Ex. 6, A0260 – A0266.

On December 19, 2023, Alecto filed its *Small Business Debtor's Plan of Reorganization Proposed by the Debtor* (the "Plan") [Bankr. Ct. DI 261]. On February 22, 2024, the Reed Creditors filed the *Objection of the Reed Action Judgment Creditors to Confirmation of Small Business Debtor's Plan of Reorganization Proposed by the Debtor* (the "Plan Objection") [Bankr. Ct. DI 299]. See Appendix 34, A1013 – A1032.  The Bankruptcy Court held a two-day evidentiary hearing on confirmation of the Plan on March 4 and 5, 2024 and took the matter under advisement.

The Bankruptcy Court issued its *Confirmation Ruling* (the "Confirmation Ruling") [Bankr. Ct. DI 343] on March 20, 2024, at which time the Bankruptcy Court overruled the Reed Creditors' objections raised in the Plan Objection. The Bankruptcy Court entered its *Finding of Facts and Conclusions of Law Confirming Small Business Debtor's Plan of Reorganization* on April 4, 2024 [Bankr. Ct. DI 354] (the "Confirmation Order"). The Reed Creditors timely filed a notice of appeal

---

[2] The appeal of the Designation Order shall hereinafter be referred to as the "Designation Appeal." The District Court case number is 23-cv-01442-GBW.

from the Confirmation Order on April 18, 2024 [Bankr. Ct. DI 257] (the "Confirmation Appeal").[3]

On September 18, 2024, this Court entered an order consolidating the Designation Appeal and the Confirmation Appeal [DI 12-1]. This is the Reed Creditors' consolidated opening brief on the issues raised in the Designation Appeal and the Confirmation Appeal.

## Jurisdictional Statement

The Bankruptcy Court had jurisdiction to enter the Designation Order and the Confirmation Order pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* entered by this Court on February 29, 2012. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

The Designation Order and the Confirmation Order appeals were timely filed pursuant to Bankruptcy Rule 8002(1). The Bankruptcy Court entered the Designation Order on December 4, 2023 and the Reed Creditors filed their Notice of Appeal from the Designation Order on December 18, 2023. The Bankruptcy Court entered the Confirmation Order on April 4, 2024 and the Reed Creditors filed their Notice of Appeal from the Confirmation Order on April 18, 2024.

Both the Designation Order and the Confirmation Order are final orders.

---

[3] The appeal of the Confirmation Order shall hereinafter be referred to as the "Confirmation Appeal." The District Court case number is 24-cv-00494-GBW.

## **Statement of Issues Presented on Appeal**

### **Designation Appeal**

1.    Whether the Bankruptcy Court erred in ruling that the Debtor was eligible to proceed under Subchapter V of the Bankruptcy Code based on its determination that the claim of LHP Hospital Group, Inc. was unliquidated as of the Petition Date.

**Standard of review**: This issue is a mixed question of law and fact. The Court should accept the Bankruptcy Court's finding of historical or narrative facts unless clearly erroneous, but the Court should exercise plenary review of the Bankruptcy Court's choice and interpretation of legal precepts and its application of those precepts to the historical facts. *Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 642 (3d Cir. 1991).

### **Confirmation Appeal**

1.    Whether the Bankruptcy Court erred as a matter of law when it ruled that the Reed Creditors bore the burden of proof on the issue of insolvency.

**Standard of Review**: The Court should review this issue *de novo*.

2.    Whether the Bankruptcy Court erred in relying on the testimony of Mr. Balasiano that there were no viable causes of action against the Debtor's insiders.

**Standard of Review**: The Court should review this issue for clear error.

3.     Whether the Bankruptcy Court erred in relying on the Debtor's evidence in ruling that the Debtor was solvent at the time of the Sunrise REH Transfer (defined below).

**Standard of Review**: The Court should review this issue for clear error.

4.     Whether the Bankruptcy Court erred in misapplying the factors for approval of a settlement under Section 1123(b)(3)(A) of the Bankruptcy Code Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Standard of Review**: This issue is a mixed question of law and fact. The Court should accept the Bankruptcy Court's finding of historical or narrative facts unless clearly erroneous, but the Court should exercise plenary review of the Bankruptcy Court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.

## <u>Summary of Argument</u>

This appeal seeks the reversal of two orders of the Bankruptcy Court in Alecto's bankruptcy case.  The first, the Designation Order entered by the Bankruptcy Court on December 4, 2023, permitted Alecto's bankruptcy case to proceed under subchapter V of the Bankruptcy Code, despite clear evidence that Alecto's non-contingent and liquidated claims exceeded the subchapter V eligibility limit of $7,500,000.  The second, the Confirmation Order, approved the settlement and release of fraudulent transfer claims against insiders of the Debtor for $25,000,

which did not meet the standards established in the *Coram Healthcare* decision applicable to such settlements.

The Bankruptcy Court's ruling that Alecto was eligible to proceed as a subchapter V debtor hinged on its determination that the claim filed by LHP (defined below) in the amount of $3.74 million, for obligations of an Alecto affiliate under five leases that Alecto had guaranteed, was unliquidated and did not count toward the $7.5 million eligibility debt limit.   The Court cited two primary reasons for its determination that the LHP claim was unliquidated: (1) it included pro-rated amounts for operating expenses which were subject to reconciliation, and (2) because LHP had not made a demand for the precise amount due prior to the filing of Alecto's bankruptcy petition.

In fact, the LHP claim for reimbursement of sixteen monthly rental payments it made on the five leases falls squarely within the accepted definition of a liquidated claim because the amount due was readily determinable from the applicable lease documents.   These documents were easily accessible to the Debtor, since a Debtor affiliate was the tenant by assignment of the leases.   In addition, the reconciliation process could only affect amounts due for future rent payments; it would not alter the precise amounts due monthly as operating expenses under the leases through the petition date. The fact that LHP had not made a demand for the precise amount due as of the petition date did not impact its claim, which had fully accrued as of the

petition date.   In ignoring this evidence, the Bankruptcy Court erred in its determination that the LHP claim was unliquidated.

With respect to the Confirmation Order, Alecto's own forensic accountant issued a report documenting that the June 23, 2019 Sunrise Transfer (defined subsequently herein) was not made for reasonably equivalent value and that the Debtor's equity holders, including insiders, received a $22 million benefit from the transaction.   At the confirmation hearing, Alecto only argued that the Sunrise Transfer could not constitute a fraudulent transfer because Alecto was not insolvent at the time of or as a result of the transfer.   In accepting the conclusions of Steven Balasiano, the Debtor's purported independent director, that no fraudulent transfer claim could be brought and that settlement of the potential claim against insiders for $25,000 was appropriate based on the Debtor's solvency at the time of the transaction, the Bankruptcy Court committed multiple errors.

First, the Court erroneously held that the Reed Creditors, the Appellants herein, bore the burden of proof on the issue of solvency, even though it was the Debtor that had purported to investigate and settle the claim and had the burden of demonstrating that the $25,000 settlement was appropriate.   Second, the Court accepted Mr. Balasiano's testimony regarding Alecto's solvency despite his failure to conduct *any* independent investigation of it.   Third, the Court relied on factual testimony from Mr. Sarrao, Alecto's vice-president and general counsel—and a

target of the potential fraudulent transfer claims— regarding the equity figures listed on the Debtor's balance sheets and tax returns, despite recognizing that Mr. Sarrao was not qualified to render an opinion on solvency.

The Court ignored the evidence that Alecto's balance sheets relied on the value of its intercompany claims to retain a positive equity value, and those intercompany claims had no value given Alecto's long history of advancing funds to its struggling hospitals. The Court also ignored the evidence that the balance sheets did not account for the substantial obligations Alecto paid, guaranteed or was liable for, simply because the obligations were booked as obligations of a subsidiary. These errors regarding the inadequacy of the Debtor's solvency analysis resulted in the Bankruptcy Court misapplication of the *Coram Healthcare* factors used to approve the Plan settlement that released insider claims.

For the reasons set forth more fully herein, this Court should reverse the Bankruptcy Court's errors in entering the Designation Order and the Confirmation Order and remand the case to the Bankruptcy Court for further proceedings in accordance with its order.

**Statement of Case**

Alecto was formed in 2012 to serve as a holding company for healthcare-related entities, Plan § III.1 Appendix Ex. 33, A0731.  Alecto then formed various subsidiaries that it used to acquire and operate acute care hospitals, and own and operate businesses affiliated with acute care hospitals held by Debtor's subsidiaries. Plan § III.2 pp. 6 - 7. Appendix Ex. 33, A0731-0732.  Alecto rapidly expanded and, at its peak, Alecto's subsidiaries held the assets of five acute care hospitals across the country, and Alecto provided management services to another acute care hospital owned by an unrelated third-party. *Id.* At its peak, Alecto's subsidiaries operated five acute care hospitals across the country; the Debtor provided management services to an acute care hospital owned by an unrelated third-party; and one of the Debtor's subsidiaries provided management services to Hayward Sisters Hospital dba St. Rose Hospital. *Id.*

Alecto's business model was unsustainable, however, and within just 11 years of formation, the company had not only acquired, but also shuttered and no longer had any interest in three of the five acute care hospitals, while a fourth hospital Sherman/Grayson Hospital LLC filed for bankruptcy.  *Id.* p. 7. Appendix Ex. 33, A0732.

Alecto's mismanagement and rampant failure to pay its debts resulted in multiple lawsuits (and judgments) against it and/or its subsidiaries.[4] Among these was a class judgment obtained in the Reed Creditor Action, brought by former employees, the Reed Creditors, for wages owed under the WARN Act after Alecto unexpectedly closed a West Virginia hospital and laid off hundreds of workers. *Reed,* 2022 WL 4119367. After the Reed Creditors sought to execute on that judgment in the California courts where Alecto is headquartered, Alecto responded by filing its Bankruptcy Petition.

## I.    **The Reed Creditors**.

On November 28, 2022 (the "Judgment Date"), seven months prior to the Petition Date, the United States District Court for the Northern District of West Virginia entered a Judgment Order in favor of the Reed Creditors and against Alecto and its affiliate, Alecto Healthcare Services, LLC (which operated the Ohio Valley Medical Center in Wheeling, West Virginia) in the amount of $3,169,745.72 (the "Judgment Amount"). Bankr. Ct. DI 204-3. Appendix Ex. 1, A0001 – A0015 Alecto scheduled the Reed Creditors as having a noncontingent, liquidated and undisputed

---

[4] See, e.g., *Reed v. Alecto Healthcare Servs.*, LLC, 2022 WL 4119367, at *1 (N.D.W. Va. Aug. 2, 2022) (granting summary judgment to class of former employees on WARN Act claim for unpaid wages); *Miller v. Alecto Healthcare Servs. Fairmont, LLC*, 2022 WL 949899, at *1 (N.D.W. Va. Mar. 29, 2022) (ERISA lawsuit for failure to pay pension and health contributions for employees); *Snyder Bros., Inc. v. E. Ohio Reg'l Hosp. at Martin's Ferry, Inc.*, 2020 WL 3104056, at *1 (W.D. Pa. June 11, 2020) (breach of contract action against Alecto subsidiary for "not paying for certain quantities of natural gas the Hospital received and used during 2018 and 2019").

claim in the Judgment Amount on Schedule E/F of its *Schedule of Assets and Liabilities*. *See* Plan, Ex. B, Schedule E/F. Appendix Ex.7, A0267 – A0281.

On August 15, 2023, the Reed Creditors filed Claim No. 19 ("the Reed Claim") asserting a general unsecured claim in the amount of $3,275,382.64 against Alecto, which includes (i) the Judgment Amount, (ii) accrued interest at the federal judgment rate in the amount of $82,673.92 for the period from the Judgment Date through the Petition Date, and (iii) collection fees in the amount of $22,963.00 for the period from the Judgment Date through the Petition Date. Appendix Ex. 8, A0282 – A0289.

## II.   <u>The Designation Appeal</u>.

Alecto filed its *Schedule of Assets and Liabilities* on June 30, 2023 (the "Schedules"). Appendix Ex. 7, A0267 – A0281.   The Schedules include 17 scheduled creditors, not including affiliates or insiders, holding noncontingent and liquidated claims totaling $3,445,535.47, including the Reed Claim. *Id.*  The total amount of the claims scheduled as non-contingent and liquidated that were not superseded by a filed claim is $274,789.85. *See id.*

The *Notice of Filing of Chapter 11 Bankruptcy Case* [Bankr. Ct. DI 35] set August 15, 2023, as the deadline to file claims. Seven creditors (not including affiliates or insiders of Alecto) timely filed non-contingent, liquidated claims in the total amount of $7,615,746.29. These included (i) the Reed Action Judgment

Creditors, whose filed claim increased their scheduled claim to $3,275,382.64, based on accrued interest and collection fees as set forth above, (ii) Cardinal Health 110, LLC ("Cardinal 110"), whose claim was scheduled as an unliquidated claim, filed a non-contingent and liquidated claim in the amount of $419,842.62, (ii) Cardinal Health 200, LLC ("Cardinal 200"), whose claim was scheduled as an unliquidated claim in the amount of $81,318.11, filed a non-contingent and liquidated claim in the amount of $119,695.80, and (iii) LHP Hospital Group, Inc. ("LHP"), whose claim was scheduled as contingent and unliquidated, filed a non-contingent and liquidated claim in the amount of $3,739,653.77 (the "LHP Claim"). The Reed Creditors determined that the total of the Debtor's scheduled and filed non-contingent and liquidated claims was $7,890,536.14 as of the Petition Date.  A list of filed and scheduled claims was attached to the Designation Motion.  *See* Appendix Ex. 1, A0015.

Because the total of scheduled and filed non-contingent and liquidated claims exceeded the statutory limit of $7,500,000 under 11 U.S.C. § 1182(1), the Reed Creditors filed the Designation Motion on November 2, 2023. Alecto filed its Preliminary Response in Opposition to the Designation Motion ("Preliminary Response") [Bankr. Ct. DI 226] on November 22, 2023, which focused exclusively on its contention that the LHP Claim was contingent and unliquidated and must therefore be excluded from the calculation.  The Reed Creditors filed their Reply in

Response to Alecto's Preliminary Response on November 27, 2023 [Bankr. Ct. DI 227], asserting that the LHP claim was not contingent and was liquidated in the amount of $3,739,635.77, its filed amount.

The Bankruptcy Court held an evidentiary hearing on the Designation Motion on November 29, 2023. On December 1, 2023, the Bankruptcy Court issued a bench ruling denying the Designation Motion. In its ruling, the Court noted that "the LHP debt is the fulcrum and whether that debt is unliquidated or contingent controls the eligibility determination." 12/1/23 Tr. 3:2 – 4. Appendix Ex. 4, A0247 "If [the Reed Creditors] were correct [that the LHP Debt was non-contingent and liquidated] the debtor would exceed the statutory cap and be ineligible to proceed under Subchapter V." *Id*. 2:22 – 24. Appendix Ex. 4, A0246.

The LHP Claim attached documents relating to its basis.[5]  These documents indicate that on August 21, 2012, Sherman/Grayson Health System, LLC, an affiliate

---

[5] A summary of relevant provisions in the documents relating to the LHP Claim is as follows:

- Altera Highland, LLC ("Altera"), as landlord, and Sherman/Grayson Health System, LLC ("Sherman Grayson System"), as tenant, entered into five (5) lease agreements dated August 21, 2012 (the "Leases"). *See* LHP Complaint ¶ 12 Appendix Ex. 32, A0710; Lease Agreements. Appendix Exs. 10 through 14, A0379 through A0604.
- As an inducement for Altera to enter into the Lease Agreements, LHP executed five separate guarantees in favor of Altera, pursuant to which LHP guaranteed to Altera "the full prompt and timely payment of all amounts to be paid by Tenant under the Lease Agreements." *See* LHP Complaint ¶ 14. Appendix Ex. 32, A0711.
- On September 23, 2014, Sherman Grayson System and Alecto Healthcare Services Sherman LLC ("Alecto Sherman"), entered into a purchase agreement (the "Purchase Agreement") pursuant to which Alecto Sherman acquired from Sherman Grayson System all of the membership interests in Sherman/Grayson Hospital, LLC. Purchase Agreement by and among Sherman/Grayson Healthcare System, LLC and Alecto

13

of the owner and operator of the Texas Health Presbyterian Hospital, located in

Dallas, Texas, entered into 12-year lease agreements with Alterra Highland, LLC

("Landlord") for five office suites in a building adjacent to the hospital (the "Lease

Agreements"). The Landlord required LHP to execute a guarantee for the Lease

Agreements. Two years later, in the fall of 2014, when Alecto's affiliate Alecto

---

Healthcare Services Sherman LLC dated September 30, 2014 (Ex. B to Preliminary Response). Appendix Ex. 2, A0016 – A0203.

- Sherman Grayson System and Sherman/Grayson Hospital LLC ("Sherman/Grayson") entered into an Assignment and Assumption of Leases dated October 31, 2014 ("Assignment") pursuant to which Sherman Grayson System assigned its interest as tenant under each of the Lease Agreements to Sherman Grayson. LHP Complaint ¶ 15. Appendix Ex. 32, A0711-A0712.

- As part of the Assignment, Altera, Sherman Grayson System and Sherman/Grayson entered into a Consent Agreement, pursuant to which LHP agreed that its obligations under the LHP Guarantees applied to Sherman Grayson's obligations under the Lease Agreements. *Id.* ¶ 16. Appendix Ex. 32, A0712; Appendix Exs. 1- through 14 A0379 – A0604.

- Alecto executed a guarantee on September 23, 2014 (the "Guarantee") pursuant to which Alecto absolutely, unconditionally and irrevocably guaranteed the purchasers' obligations to LHP under the Purchase Agreement. Guarantee (Ex. B to Preliminary Response) ¶ 1. Appendix Ex. 2, A0162 – A0169**.**

- In 2020, LHP sued Alecto Sherman and Alecto (collectively, the Alecto Defendants") for breach of contract under the Operative Agreements. Following mediation, LHP, Alecto and Alecto Sherman entered into a Confidential Settlement Agreement (the "Settlement Agreement"). *See* Settlement Agreement (Ex. C to Preliminary Response). Appendix Ex. 2, A0170 – A0195.

- Paragraph 6 of the Settlement Agreement provides a procedure for the Alecto Defendant's payment of future expenses to LHP. Paragraph 6 provides in pertinent part that

a. LHP would make written demand on the Alecto Defendants for payment of a specified amount.

b. The Alecto Defendants would make payment of the specific amount within fifteen (15) days of such demand.

c. If the Alecto Defendants disputed the amount specified in the demand and/or were unable to make the payment, LHP would be entitled to the entry of a judgment by confession.

d. In the confession of judgment proceeding, the Alecto Defendants could only contest the computation and payment of the principal, interest, fees, and costs of the judgment.

*Id.* ¶ 6. Appendix Ex. 2, A0173 – A0174.

Healthcare Services Sherman LLC ("Alecto Sherman") acquired the entity that owned and operated the Texas Health Presbyterian Hospital, Sherman/Grayson Hospital, LLC ("Sherman/Grayson"), another Alecto affiliate, obtained an assignment of the five Lease Agreements. The Landlord would not release LHP from its guarantee of the Lease Agreements, and accordingly, LHP required Alecto and Alecto Sherman to execute guarantees in its favor, in the event that LHP was required to make any payments to the Landlord on its own guarantee.

At the hearing, the Court was provided with the following evidence regarding LHP's Claim against Alecto:

- On January 20, 2021, LHP sued Alecto Sherman (as indemnitor) and Alecto (as guarantor) for unpaid obligations under the Lease Agreements which it had paid to the Landlord under its guarantee. [204-11]. The Complaint in that action (the "Complaint") alleged that Sherman Grayson (as tenant) had stopped paying rent as of May 1, 2020 (¶ 21) and vacated the premises on October 31, 2020. LHP Complaint ¶ 15.

- The parties settled the LHP litigation on February 16, 2022, resolving all amounts owed by Alecto and Alecto Sherman to LHP through February 28, 2022. *See* Preliminary Response, Ex. 3 [Bankr, Ct. DI 226-3]. Appendix Ex. 2, A0170 – A0195.

- From March 1, 2022 through June 1, 2023, LHP made 16 monthly payments to the Landlord in the amount specified by the Lease Agreements (the 'Payment Confirmations") [Appendix Exs. 15 through 30, A0605 – A0703] totaling $3,708,475.62 paid as of the Petition Date. *See* Summary of Payments Appendix Ex. 31, Appendix A 0704 – A0705.

15

- On June 28, 2023, LHP made a demand on Alecto Sherman, a non-Debtor entity, for payment of the $3,708,475.62. Demand pursuant to Confidential Settlement Agreement ("Demand Letter) (Ex. D to Preliminary Response). Appendix Ex. 2, A0196 – A0200.

- The amount asserted in LHP's claim, filed on August 14, 2023, which indicates on its face that it includes interest, is $3,739,635.77, is $31,160.15 higher than the amount sought in the June 28, 2023 Demand Letter. *See* LHP Claim. *Id.*

The Bankruptcy Court found, contrary to the Reed Creditors' argument, that the Settlement Agreement modifies and supersedes the Operative Agreements. 12/1/2023 Tr. 4:22 - 6:18. Appendix Ex. 4, A0248 – 0250. As discussed below, this finding was essential to the Court's ruling that Alecto's debt to LHP was unliquidated. *See id.* 6:17 – 18. Appendix Ex. 4, A0250.

After issuing its ruling on December 1, 2023 that Alecto was eligible to be a Subchapter V debtor because the LHP Claim was unliquidated, the Bankruptcy Court entered the Designation Order on December 4, 2023 [Bankr. DI 243]. Appendix Ex. 5, A0257 – 0259.  The Reed Creditors timely filed a notice of appeal from the Designation Order on December 18, 2023. Appendix Ex. 6, A0260 – A0266.

## III.  **Confirmation Appeal**

### A. **The Plan**.

Alecto filed the Plan on December 19, 2023, which provides for the following

treatment for Class 3 Allowed General Unsecured Claims:

> After payment in full of all Allowed Administrative Claims, all
> Allowed Priority Claims in full, and Allowed Secured Claims (if any),
> Allowed General Unsecured Claims will be paid the Debtor's projected
> disposable income on a pro rata basis. Pro rata Distributions will be
> made to Holders of Allowed General Unsecured Claims on an annual
> basis with the first Distribution to be made twelve months after the
> Effective Date.

Plan § IV.2.d. Appendix Ex. 33, A0746 – A0747.  The Confirmation Order modified

the timing of distributions, providing that "pro rata distributions on account of

Allowed General Unsecured Claims shall be made on or about September 30, 2024,

March 31, 2025, September 30, 2025, March 31, 2026, September 30, 2026, and

March 31, 2027." Confirmation Order ¶ 53. Appendix Ex. 52, A1640 – A1641.

In the Plan, Alecto estimated that (i) the total amount of allowed general

unsecured claims will be approximately $11,000,000 and (ii) holders of allowed

general unsecured claims will receive a distribution of from 3% to 10% on account

of their general unsecured claims.  Plan § IV.2.d; Appendix Ex. 33, A0746 – A0747.

Section IV.5 of the Plan provides in pertinent part that

> The Plan will be funded by: (1) the Debtor's projected disposable
> income ($848,049) generated by the Debtor's post-confirmation
> operations, and (2) $***25,000 provided by certain of the Released
> Parties.*** The Debtor expects to have approximately $170,000 in

17

> combined cash on hand and accounts receivable on the Effective Date
> ....

Plan Section IV.5 (emphasis supplied). Appendix Ex. 31, A0751. On May 4, 2024, Alecto filed its Notice of Filing of Amended Exhibits C and G to the Plan ("Exhibit Notice") [Bankr. Ct. DI 316]. Exhibit 1 to the Exhibit Notice is a revised Income Statement projecting an increased projected disposable income amount of $1,916,510 during the three-year distribution period. *Id.* Exhibit 1.

Pursuant to Section VII.2 the Plan, Alecto proposed to release certain "Released Parties" from all claims Alecto may have against them in exchange for payment of $25,000. Plan §VII.2. Appendix Ex. 33, A0756. The Released Parties include "(a) the officers and managers of the Debtor; (b) the Debtor's Professionals, and (d) [sic] with respect to each of the foregoing Persons in clauses (a) through (b), such Entities' respective predecessors, successors and assigns, provided, however, that notwithstanding the foregoing, and for the avoidance of doubt, nothing herein shall release any Causes of Action of the Debtor or the Estate against any of the Debtor's representatives that did not serve in such capacity on or after the Petition Date." Plan § I.44. Appendix Ex. 33, A0730.

### B. Alecto's Investigation of Potential Claims Against Insiders.

At the outset of Alecto's bankruptcy case, the Reed Creditors raised a conflict of interest between Alecto and Alecto Sherman, an affiliate which had filed a separate a separate bankruptcy petition, because Alecto was a creditor of Alecto

Sherman as a result of having spent substantial sums supporting Alecto Sherman while not paying its own creditors.[6]  In response, Alecto retained separate counsel for itself and, effective as of August 4, 2023, Alecto retained Steven Balasiano as an independent director to review and advise on issues regarding Alecto's claims against Alecto-Sherman.  Appendix Ex. 38, A1173 – 1176.  Mr. Balasiano was subsequently charged with, among other things, determining whether Alecto had any potential claims against its affiliates and insiders and bringing any such claims he believed were valid.  Appendix Ex. 39, A1177 – 1179.

Alecto retained Gould Consulting Services ("GCS") as its Forensic Accounting Investigation Consultant to "conduct a forensic analysis of cash transactions into and out of the Debtor's bank accounts to identify (a) cash payments and loans to, or for the benefit of, officers, directors, shareholders, and related-parties […], and (b) potentially voidable transfers to Insiders, if any." Plan § III.9 p. 15. Appendix Ex. 33, A0740[7]" After conducting its forensic analysis, GCS presented its report to Mr. Balasiano and conferred with Mr. Balasiano in order to provide Mr. Balasiano an opportunity to ask any questions or raise any issues with respect to the estate's potential claims against the Insiders. *Id.* p. 17. Appendix Ex. 33, A0742.  At

---

[6] The Alecto and the Alecto Sherman petitions were both filed by the Shulman Bastian and Rosner Law Group firms.  Alecto retained the firm of Morris James to represent it effective as of August 11, 2023.  Shulman Bastian and Rosner Law Group continued to represent Alecto Sherman.

[7] GCS submitted the Report of Gould Consulting Services (the "GCS Report") to Alecto on or about September 28, 2023. A copy of the GCS Report is attached to the Plan as Exhibit D.

the conclusion of the conference, Mr. Balasiano determined that the estate does not have any valid claims against the Insiders for avoidable transfers." *Id*. This determination was set forth in both the Debtor's original plan filed on October 10, 2023 [Bankr. Ct. DI 170], and its subsequent Plan filed on December 18, 2023.

## C.    The Reed Creditors' Plan Objection.

The Reed Creditors filed their Plan Objection on February 22, 2024. One of their arguments against Plan confirmation was the proposed release of all claims against the Released Parties in exchange for a $25,000 payment. In particular, the Reed Creditors objected to the release of a potential fraudulent transfer claim against Alecto's members (the "Alecto Members") of approximately $22,000,000. Plan Objection § I.A, pp. 6-11. Appendix Ex. 34, A1019 – A1024.

### 1.    The Potential Fraudulent Transfer Claim against Alecto Members.

On June 19, 2019, Alecto transferred its 100% equity interest in Sunrise Real Estate Holdings, LLC ("Sunrise REH") to the Alecto Members, who formed a new entity named Sunrise MOB Holdings, LLC ("Sunrise MPB") to receive the Sunrise REH equity (the "Sunrise Transfer").[8] The Sunrise REH equity was a valuable acquisition for the Alecto Members because Sunrise REH was the 100% owner of

---

[8] GSC Report, Discussion Section A (p. 7). Appendix Ex. 33, A0831.

Plaza Medical Office Building, LLC ("Plaza MOB"), which owned a medical office building appraised at $50,700,000.[9]

Based on the Gould report, the Reed Creditors understand that Alecto received value from the Sunrise Transfer as a result of (i) the satisfaction of the existing secured loan on the building in the amount of $19,472,350[10] and (ii) a capital contribution from the members in the amount of $8,444,477.81.[11] Through the loan payoff and capital contributions, the GCS Report states that Alecto received approximately $28 million in value in exchange for its transfer of the ultimate ownership interest in the medical office building, which is $22,700,000 less than the appraised value of the Plaza MOB's medical office building.[12] The GCS Report acknowledges that Alecto did not receive reasonably equivalent value in the transaction.[13]

GCS was not asked to determine whether Alecto was solvent at the time of the Sunrise Transfer.

### 2. Evidence Presented at the Confirmation Hearing.

The Bankruptcy Court held a two-day evidentiary hearing on confirmation of the Plan on March 4, and 5, 2024. Alecto did not challenge that it did not receive

---

[9] *Id.*, Discussion Section A. 4, FN 12 (p. 6). Appendix Ex. 33, A0831.

[10] GCS Report, Summary of Observations Section A (p. 3). Appendix Ex. 33, A0828 – A0830.

[11] *Id.*, Discussion Section A. 6 (p. 6). Appendix Ex. 33, A0831.

[12] *See id.,* Findings and Observations Section A (p. 2). Appendix Ex. 33, A0827 – A0828.

[13] *See id.*

reasonably equivalent value from the Sunrise Transfer at the Confirmation Hearing, but instead introduced evidence to support its contention that Alecto remained solvent before and after the Sunrise Transfer.

In an attempt to prove solvency, the Debtor offered testimony through Michael Sarrao, the Debtor's Executive Vice President and General Counsel and a member of its Board of Managers.  The Bankruptcy Court recognized that Mr. Sarrao was not an expert on solvency.  Transcript of Hearing held on March 5, 2024 47:15 – 17.[14].Appendix Ex. 50, A1457. Mr. Sarrao testified factually regarding the Debtor's positive equity position as reflected on its balance sheets for 2019, 2020, and 2021. Specifically, he testified that the Debtor's equity was $18.5 million in December 2019,[15] $19.9 million at the end of December 2020,[16] and $19.1 million at the end of 2021[17].  Mr. Sarrao also reviewed the Debtor's 2019 tax return, which on schedule L ("Balance Sheet Per Books") reflected the Debtor's positive equity (based on the value of its partners' capital accounts) of $18.671 million.[18]  Based on Debtor's equity reflected in these four exhibits, Mr. Sarrao testified that the Debtor was not

---

[14] The Transcript of Hearing held on March 5, 2024 shall hereinafter be referred to as the "12/1/23 Tr."

[15] 3/5/2024 Tr. 39:13 – 40:4 Appendix Ex. 50, A1449 – A1450; Alecto 2019 Balance Sheet. Appendix Ex. 41, A1233 - A1226.

[16] 3/5/2024 Tr. 35:16 – 36:13 Appendix Ex. 50, A1145 – A1446; Alecto 2020 Balance Sheet. Appendix Ex. 42, A1227 – A1230.

[17] 3/5/2024 Tr. 43:25 – 44: 7 Appendix Ex. 50, A1453 – A1454; Alecto 2021 Balance Sheet. Appendix Ex. 43, A1231 – A1233.

[18] 3/5/2024 Tr. 45:5 – 46:18 Appendix Ex. 50, A1455 – A1456; Balance sheet for Alecto 2019 Tax Return. Appendix Ex. 4-, A1190

insolvent during this period and that the Sunrise transfer did not cause the Debtor to be insolvent.[19]

On cross examination, Mr. Sarrao acknowledged that the $18.6 million in Debtor's equity reflected on the 2019 Schedule L (the balance sheet in the Alecto 2019 tax return) depended on a $25.5 million intercompany receivable owed to Alecto, and that if the intercompany receivable had no value, the Debtor's equity would be negative.[20]  Mr. Sarrao also acknowledged that the 2019-2021 balance included receivables that may have been uncollectible[21] and did not include Alecto's liabilities for any obligations of its subsidiaries for which Alecto had issued guarantees.[22]

The Reed Creditors introduced evidence of substantial liabilities paid by, guaranteed by, or asserted against Alecto that were not reflected on the balance sheets.  Mr. Sarrao confirmed, for example, that in January 2021, Alecto paid $9.4 million in unpaid federal and state payroll taxes that its Olympia subsidiary and other affiliates had accrued,[23] and in August 2021, it paid an additional $10.5 million in federal and state payroll obligations its affiliates had accrued.[24]  Mr. Sarrao

---

[19] 3/5/2024 Tr. 46:19 – 47:24. Appendix Ex. 50, A1456 – A1457.

[20] 3/5/2024 Tr. 138:13 – 139:19. Appendix Ex. 50,1548 – A1549.

[21] 3/5/2024 Tr. 96:4 – 96:20. Appendix Ex. 50, A1506.

[22] 3/5/2024 Tr. 100:4 – 10 Appendix Ex. 50, A1510 and 109:22–110:8. A1519 - 1520

[23] *See* Summary of the UCLA Transaction p. 4. Appendix Ex. 46, 1246.

[24] *Id.* p. 3. Appendix Ex. 46, A1245.

confirmed that Alecto had also received a demand in September 2020 from its union pension fund for $10.8 million in withdrawal liability relating to obligations of Alecto Healthcare Services Fairmont, for former employees of the Fairmont General Hospital.[25]  Mr. Sarro confirmed that these obligations were being paid quarterly with funding from Alecto.[26]  Mr. Sarrao confirmed that Alecto had also been sued by the Centers for Medicare & Medicaid Services ("CMS"), of the U.S. Depart. of Health and Human Services, for reimbursement of more than $12 million in Medicare advance payments made to its Olympia affiliate.[27]  Mr. Sarrao acknowledged that none of these liabilities was listed on the Alecto balance sheet because the obligations originated with an affiliate or subsidiary.[28]

As for intercompany accounting, Mr. Sarrao acknowledged that all intercompany advances were booked through Alecto.[29]  The intercompany transactions reflected on the balance sheets related to five different Alecto affiliates that operated hospitals.  Mr. Sarrao acknowledged that the Sherman Grayson hospital had been supported by contributions from Alecto since 2014, which are unable to be paid back its advances to Alecto reaching $60 million before Alecto

---

[25] 3/5/2024 Tr. 100:15–101:22. Appendix Ex. 50, A1510 – A1511 (citing JX43); *see also* Summary of the UCLA Transaction p. 4. Appendix Ex. 46, A1246 (reflecting payment of $707,803 booked to Alecto with respect to the Alecto Ohio Valley Pension Plan).
[26] *Id.*
[27] 3/5/2024 Tr. 98:20–100:3, Appendix Ex. 50 , A1508 -A1510. CMS filed a claim in the Alecto bankruptcy case on December 13, 2023 for $29,126,600. Appendix Ex. 48, A 1250 – 1282.
[28] 3/5/2024 Tr. 100:4 – 10 Appendix Ex. 50, A1510 and 107:8 – 25. Appendix Ex. 50, 1517.
[29] 3/5/2024 Tr. 109:4 – 17. Appendix Ex. 50, A1519.

Sherman filed its bankruptcy petition.[30]  Three other hospitals are designated on some of the balance sheets as the discontinued entities, having been closed in 2019 (Alecto Ohio Wheeling and Alecto Martins Ferry)[31] and March 2020 (Alecto Fairmont).[32]

### The Confirmation Ruling

The Bankruptcy Court issued its Confirmation Ruling on March 20, 2024 approving confirmation of the Plan and overruling the Reed Creditors' objection to confirmation. Confirmation Ruling pp. 15 – 16. Appendix Ex. 51, A1622 – A1623.

The Court's key finding in approving the release of the Released Parties was that Alecto was solvent at the time of the Sunrise Transfer. *See* Confirmation Ruling p. 10 Appendix Ex. 51, A1617. The Court relied exclusively on Mr. Balasiano's testimony in making this finding:

> [Mr. Balasiano] reviewed the GCS Report, P&L balance sheet, cash flow, and tax returns. Mr. Balasiano relied upon the Debtor's 2019 balance sheet, which reflects the Debtor had an equity value of at least $9.4 million; and the Debtor's 2019 tax returns, which show assets in excess of $18 million. He concluded the Debtor had a positive balance sheet for 2019 (and 2020) and was able to pay its debts as they became due.

---

[30] First Supplemental Declaration of Michael Sarrao in Support of the Debtor's Retention Applications [Bankr. Ct. DI 133 ¶ 27. Appendix Ex. 37, A1074.

[31] Declaration of Michael Sarrao, Executive Vice President, General Counsel, and Secretary of Alecto Healthcare Services LLC, in Support of First Day Motions [Bankr. Ct. DI 3] ¶25. Appendix Ex. 36, A1049.

[32] 3/5/2024 Tr. 101:14 – 15. Appendix Ex. 50, A1511.

*********

Based on his investigation, Mr. Balasiano concluded that "there was no actionable cause of action that could be brought as a result of that transaction [Sunrise Transfer]" because "[t]he company was solvent." He reasoned that: "In order to bring a fraudulent conveyance action there are two factors. One is there has to be a transfer for lack of reasonably equivalent value and, number two, the company has to be insolvent at the time of that transfer. Clearly, the second fact[or] of the test was not satisfied her[e]."

The burden of proving insolvency is on the creditor by a preponderance of the evidence.[33] "As a general rule 'solvency and not insolvency is presumed.'"[34] Here, the Reed Creditors did not carry their burden to prove by a preponderance of the evidence that the Debtor was insolvent at the time of the Sunrise Transfer.

The Court finds that Mr. Balasiano's determination that there is "no actionable cause of action that could be brought" for fraudulent conveyance is a reasonable basis for the settlement.

Confirmation Ruling pp. 9-10. Appendix Ex. 51, A1616 – A1617.

The Bankruptcy Court entered the Confirmation Order on April 4, 2024 [Bankr. DI 354]. Appendix Ex. 52, A1626 – A1951. The Reed Creditors timely filed a notice of appeal from the Designation Order on April 18, 2024. Appendix Ex. 53, A1952 – 1956.

## **ARGUMENT**

### **IV. This Court Should Reverse the Designation Order because the Bankruptcy Court Erred in Ruling that Alecto was Eligible to be a Subchapter V Debtor.**

---

[33] *See Stearns v. Los Angeles City Sch. Dist.,* 53 Cal. Rptr. 482, 509 (Cal. Ct. App. 1966) (citations omitted); *Whitehouse v. Six Corp.,* 48 Cal. Rptr. 2d 600, 606 (Cal. Ct. App. 1995), *as modified* (Nov. 29, 1995), *as modified on denial of reh'g* (Dec. 19, 1995).
[34] *Stearns,* 53 Cal. Rptr. at 509 (citing *Hasenjeager v. Voth,* 267 P. 146, 147 (Cal. Ct. App. 1928)).

As of the Petition Date, Bankruptcy Code Section 1182(1)(A) defined a Subchapter V "debtor" as:

> [A] person engaged in commercial or business activities . . . that has ***aggregate non-contingent liquidated secured and unsecured debts*** as of the date of the filing of the petition or the date of the order for relief in an amount ***not more than $7,500,000****….*

11 U.S.C. § 1182(1)(a) (emphasis supplied).  The Reed Creditors submitted evidence that the filed and scheduled claims against the Debtor totaled $7,890,536.14, including the claim filed by LHP Hospital Group ("LHP") for $3,739,653.77. [Bankr. Ct. Dkt 204-2].   In opposing the Eligibility Motion, the Debtor's sole argument was that the LHP claim does not count in the statutory analysis because it was contingent and unliquidated. *See generally* Preliminary Response, App. Ex. 2, A.0016-A.0203 The Bankruptcy Court recognized that whether the LHP debt is unliquidated or contingent it the "fulcrum" that controls the eligibility determination. *See* 12/1/23 Tr. 3:1 - 4. App. Ex. 4, A.0247.

The Bankruptcy Court determined that the LHP debt was unliquidated as of the petition date, and based on that determination, found that the Debtor was eligible to proceed under Subchapter V.  *Id.* 8:14 - 22. A.0252.  As set forth below, the Bankruptcy Court erred in making this finding because (i) the amount owed to LHP by the Debtor was easily determinable from the Lease Agreements and Payment Confirmations, which were readily available to the Debtor, and (ii) the 2022 Settlement Agreement between LHP and the Debtor, to the extent it is even

applicable, did not alter the obligations between LHP and the Debtor a way that rendered the LHP Claim unliquidated as of the Petition Date.

Debtor acknowledges that a claim is liquidated if (i) it is subject to ready determination and precision in computation of the amount due, and (ii) the amount due can be readily ascertained either by reference to an agreement or by simple mathematics. Preliminary Response, App. Ex. 2, ¶ 28 [A.0027], citing *In re Mitchell*, 255 B.R. 246, 360 (Bankr. D. Mass 2000), and *In re Jordan*, 166 B.R. 201. 202 (Bankr. D. Me. 1994) ("[a] claim is liquidated 'if the amount due can be readily ascertained either by reference to an agreement or by simple mathematics.'") (quotation omitted)); s*ee also In re Fostvedt*, 823 F.2d 305, 306 ("the question whether a debt is liquidated turns on whether it is subject to "'ready determination and precision in computation of the amount due.'"  (quotation omitted)); *In re Fountain*, 612 B.R. 743, 749 (9th Cir. BAP 2020) ("[a] debt is liquidated if it is capable of 'ready determination and precision in computation of the amount due.'" (quotation omitted)); *In re Mazzeo*, 131 F.3d 295, 304 (2d Cir. 1997) ("'courts have generally held that a debt is 'liquidated' ... where the claim is determinable by reference to an agreement or by a simple computation.'" (quoting 2 L. King *Collier on Bankruptcy* ¶ 109.06[2][c] (15th ed. rev. 1997)).

The Bankruptcy Court acknowledged these standards in Confirmation Ruling noting that "[a]n unliquidated claim is a claim in which the amount owed has not

been determined. Whether a debt is liquidated turns on whether it is ... subject to ready determination and precision and computation of the amount of debt." 12/1/23 Tr. 7: 4 – 7 A.0251. However, the Bankruptcy Court simply ignored these standards in determining that the LHP Claim was unliquidated. Instead, it focused primarily on the Debtor's alleged lack of knowledge of the actual amount of the LHP claim on the Petition Date.  In so doing, the Bankruptcy Court misapplied the facts of this case to applicable law.

The Bankruptcy Court's ruling that the LHP Claim was unliquidated is based on three factual determinations it made: (1) while the Debtor was aware of its obligations to LHP, it did not know the precise amount owed as of the Petition Date; (2) the monthly operating expenses due under the Lease Agreements, which form the basis for the LHP obligation, were estimated and subject to reconciliation, and (3) the amount payable to LHP remained subject to potential dispute.[35]  12/1/23 Tr.

---

The transcript of the Court's December 1, 2023 ruling includes the following recitations in support of the Court's determinations:

a)  Alecto was aware that amounts were owed to LHP but did not know the amount of this liability. 12/1/2023 Tr., App. Ex. 4, 7: 8-10. A.0251.

b)  There is no evidence that Alecto received copies of invoices the landlord issued to LHP (showing the amount due for unpaid obligations under the leases). *Id.* 7: 13 – 15. A.0251.

c)  Alecto was unaware of whether LHP was making payments to the landlord or the amount of the estimated operating expenses which included, among other things, taxes, CAM, and possible subleases. *Id.* 7: 16 – 19. A.0251

d)  Prior to a June 28th, 2023 demand letter from LHP to Alecto Sherman, the debtor's affiliate, the debtor was unaware of the exact amount due to LHP. *Id.* 8: 4 – 7. A.0252

7:8-8:13. A.0251. None of these findings are relevant to whether the LHP Claim was liquidated, which is not dependent on the Debtor's knowledge of the claim amount.

### 1. The Debtor's lack of knowledge is not relevant in determining whether the LHP Claim was liquidated as of the Petition Date.

Because the amount of the LHP obligation was specified in the Lease Agreements and Payment Confirmations, the information necessary to precisely calculate the amount of the LHP Claim existed as of the Petition Date. This information was readily available to the Debtor because the tenant under the leases—Sherman/Grayson—is a Debtor affiliate. Accordingly, the Bankruptcy Court's repeated references to the Debtor's lack of knowledge of the amount due to LHP on the petition date is misplaced.

Eligibility under Subchapter V is determined by what the debtors owe on the petition date, not by what the debtors think they owe. *In re Hall*, 650 B.R. 595 (Bankr. M.D. Fla. 2023). *See also In re Sullivan*, 245 B.R. 416 (N.D. Fla. 1999)(holding that eligibility for Chapter 13 relief is determined based on the total amount of unsecured debt that debtor owes on petition date, not on what a debtor in

---

e) Each lease agreement requires payment of (i) base rent and (ii) the estimated pro rata share of operating expenses, and the amount of estimated monthly operating expenses was not consistent. *Id.* 7: 10 – 13, 19-20. A.0251

f) The landlord would reconcile the estimated operating expenses on a yearly basis and provide LHP with an operating expense reconciliation, which provided LHP with a breakdown of the actual expenses paid for the year and the pro rata share of the operating expenses due or credited. *Id.* 7: 22 – 8:3. A.0251.

good faith thinks he owes on the petition date, and there is nothing to prevent bankruptcy court from looking past a debtor's schedules to other evidence of the correct amount of such debt as of the petition date); *In re Zhang Medical P.C.*, 655 B.R. 403, 409 (Bankr. S.D.N.Y. 2023) (in determining a debtor's total noncontingent liquidated debt, the court may look both to the debtor's schedules and to creditors' proofs of claim); *In re McKenzie Contracting, LLC*, Case No. 8:24-bk-01255-RCT, 2024 WL 3508375 *1, Colton, J. (Bankr. M.D. Fla. 2024) (same). Accordingly, the Bankruptcy Court erred when it based its eligibility determination on the Debtor's lack of knowledge of the amount of the LHP Claim when the petition was filed.

To be clear, the Debtor had full knowledge of the ongoing basis for LHP's claim against it because LHP sued the Debtor in the Delaware Superior Court for the rent obligations to the Landlord for which the Debtor had an obligation to reimburse LHP. The obligations stem from the 5 Lease Agreements assigned to Sherman/ Grayson for premises adjacent to a hospital it acquired in 2014. Landlord permitted the assignment of the Leases Agreements to Sherman/Grayson but required the existing tenant, LHP, to remain obligated on the Lease Agreements. LHP required the Debtor to guarantee Sherman/Grayson's performance under the Lease Agreements. When Sherman/Grayson ceased payments to the Landlord and vacated the office suites subject to the Lease Agreements, LHP obligations to pay these obligations kicked in, as did the Debtor's obligation to reimburse LHP for the

amounts LHP paid to the landlord. *See* Designation Motion ¶ 20, App. Ex. 1, A.0009-10, and LHP Complaint. App. Ex. 32, A.0706-0719. Based on these contractual relationships, the Debtor was able to ascertain the amounts asserted against it by LHP simply by reviewing the monthly rent and other financial obligations specified in the leases it guaranteed.

Accordingly, the amount of the LHP Claim (i) was subject to ready determination and precision in computation of the amount due and (ii) the amount due is readily ascertainable by reference to the lease documents and simple mathematics. *See Hall,* 650 B.R. at 599 ("[C]ourts have generally held that a debt is liquidated if its amount is readily and precisely determinable, where the claim is determinable by reference to an agreement."), quoting *United States v. May*, 211 B.R. 991, 996 (citing Collier on Bankruptcy, 15th Ed. at 1109.06[2][c] (March 1997)). Ordinarily, debts of a contractual nature are 'subject to ready determination and precision in computation of the amount due' and, therefore, are considered liquidated, even if subject to substantial dispute. *Barcal v. Laughline (In re Barcal)*, 213 B.R. 1008, 1014 (B.A.P. 8th Cir. 1997)."

### 2.   The plain language of the Lease Agreements expressly provides that the common area maintenance charges were due and payable monthly.

In further support of its flawed conclusion that the Debtor did not know the amount of its liability to LHP, the Bankruptcy Court noted that the leases required

monthly payment of estimated pro-rated operating expenses in addition to base rent. 12/1/2023 Tr. 7:16 – 8:3. A.0251. The Bankruptcy Court noted that the amount of the estimated monthly operating expenses varied per suite and was subject to reconciliation annually. *Id.* This procedure for the payment of pro rata operating expenses does not render the amount due under the lease unliquidated, however. Written notice of the amount due annually for pro-rata operating expenses is provided under the terms of each lease, and the Lease Agreements required that that specific amount be paid in monthly increments (one-twelfth of the total) at the same time as base rent is paid.  To the extent that pro-rata operating expenses are revised through the reconciliation process, they result in an additional amount due or credit towards future rent due, and do not affect the prior payments made.[36]  Accordingly,

---

[36] The applicable lease provisions are:

- The Base Rent shall be paid by Tenant in monthly installments to Landlord on or before the first day of each calendar month during the Term hereof. Leases § 3.1(2). Appx. Ex. 10, A.0384.

- Tenant's Pro Rata Share of Operating Expenses for the remainder of the calendar year after the Commencement Date and for each subsequent calendar year shall be estimated by Landlord, and written notice thereof shall be given to Tenant. […..] For any such remainder of the calendar year after the Commencement Date, Tenant agrees to pay Landlord each month, at the same time the Base Rent Payment is due, an amount equal to the amount of such estimated monthly Pro Rata Share of Operating Expenses for the remainder of such calendar year; and during each calendar year thereafter ***Tenant agrees to pay Landlord each month, at the same time the Base Rent Payments are due, an amount equal to one-twelfth (1/12th) of the estimated annual Pro Rata Share of Operating Expenses due.*** Leases § 3.2(1)). *(emphasis supplied). Id.*, A.0385**.**

- After the end of each calendar year, Landlord shall prepare and deliver to Tenant a statement showing Tenant's Pro Rata Share of the total amount of Operating Expenses.

there is nothing unliquidated about the monthly payment obligations under the lease, and it was plainly error for the Bankruptcy Court to credit the testimony of Michael Serrao that he did not know the amount of the estimated operating expenses.  As noted, his knowledge is not relevant to this analysis. In short, the Debtor's obligation is liquidated because the amount can be ascertained by reference to the Lease Agreements and simple mathematics.

Moreover, the failure to pay the Operating Expenses when due constitutes a default under the Lease Agreements.  Accordingly, the Operating Expenses are not unliquidated because, pursuant to the Leases, they are due and payable on or before the first day of each month, when the Base Rent is due.

### 3. Whether the Debtor retains a right to dispute its obligation to LHP does not make the LHP Claim unliquidated.

The Bankruptcy Court further erred when it concluded that there was no precision to LHP's debt because the Debtor purportedly retained a right to object to the computation of amounts due to LHP under the 2022 Settlement Agreement. 12/1/2023 Tr. 8:7 – 11, A.0252.   Under the plain language of 11 U.S.C. § 1182,

---

Within ten (10) days after receipt of the aforementioned statement, Tenant agrees to pay Landlord the remaining amount owed by Tenant. However, if Tenant has paid more than its Pro Rata Share of the actual Operating Expenses, Landlord shall either pay the amount of such excess to Tenant within ten (10) days after delivery of the aforementioned statement, or, at Landlord's option, apply such excess to any sums due or to become due from Tenant to Landlord. Leases § 3.2(3)).  *Id.*

disputed debts are not excluded from the $7.5 million debt limit. *Hall, 650 B.R.* at

599. The *Barcal* court stated that "the process for determining the claim" dictates

whether the claim is liquidated or unliquidated, not the magnitude of the dispute or

the length of the trial required to resolve the dispute. *In re Barcal,* 213 B.R. at 1014.

*See also Nicholes v. Johnny Appleseed (In re Nicholes),* 184 B.R. 82, 91 (B.A.P. 9th

Cir. 1995) ("So long as a debt is subject to computation of the amount due, then it is

considered liquidated and included for eligibility purposes under § 109(e), regardless

of any dispute.").

### 4. The 2022 Settlement Agreement between the Debtor and LHP has no impact on the liquidated status of the LHP obligation.

The Bankruptcy Court's ruling included an analysis of the 2022 Settlement

Agreement between LHP and the Debtor, the terms of which the Court found

superseded the prior guarantee that the Debtor had provided to LHP. While the Reed

Creditors believe that determination was erroneous, and that the guarantee the

Debtor provided to LHP remained in effect, the relevance of that issue from the

Bankruptcy Court's perspective was the requirement in the 2022 Settlement

Agreement that LHP was to make a written demand for a specified amount to the

Debtor, and that absent such demand, the Debtor had no obligation to pay.[37] Even

---

[37] 12/1/2023 Tr. 6:19 – 25. A.0250.

accepting that as true, it has no relevance to determining of whether the claim is liquidated.

LHP filed the LHP Claim in a liquidated amount, and the filed claim amount is appropriate for the Court's consideration in determining whether the claim is liquidated. *Hall*, 650 B.R. at 599; *In re Sullivan*, 245 B.R. at 418. LHP sent the Demand to Alecto Sherman, a non-debtor, on June 28, 2023, providing notice and making its demand for reimbursement of sixteen monthly payments LHP had made to the Landlord. And LHP's proof of claim satisfied the notice and demand requirements. *See In re Fidelity Tube Corp.*, 278 F.3d 776 (holding that the IRS's proof of claim was a demand that the debtor pay prepetition taxes pursuant to former section 3670 of the Internal Revenue Code, which provided "that when a person liable to pay a tax neglects or refuses to pay it 'after demand' a lien arises in favor of the United States."), overruled on other grounds, *United States v. Speers*, 382 U.S. 266, 86 S. Ct. 411 (1965); *In re Bernadin*, 630 B.R. 787, 800 (Bankr. E.D. Pa. 2019) (finding that "[t]he purpose of a proof of claim is to demand payment from the debtor's bankruptcy estate based on an existing debt."). Accordingly, the notice provisions of the 2022 Settlement Agreement have no bearing on the inquiry as to whether the LHP Claim is liquidated. The Bankruptcy Court acknowledged that "the debtor was aware that amounts were owed to LHP, but the debtor did not know the amount of this liability." 12/1/2023 Tr. 7:8 – 10, A.0251. As set forth above, the

actual amount of the liability was readily determinable through the leases and related documents, which makes the Bankruptcy Court's determination that it was unliquidated plain error.

## V. THE CONFIRMATION ORDER SHOULD BE REVERSED BECAUSE THE COURT ERRED IN APPROVING THE RELEASE OF CLAIMS <u>AGAINST THE RELEASED PARTIES.</u>

The Bankruptcy Court erred in approving the releases of the Released Parties (the "Plan Releases") (i) when it ruled that the Reed Creditors bore the burden of proof on the insolvency issue; (ii) when it relied on the testimony of Mr. Balasiano that there were no viable causes of action against the Debtor's insiders; (iii) when it relied on the Debtor's evidence that it was solvent at the time of the Sunrise REH Transfer; and (iv) when it misapplied the factors for approval of a settlement.

### A. The applicable legal standard for evaluating fraudulent transfer actions.

The Bankruptcy Court, in its Confirmation Ruling, relied on Steven Balasiano's testimony for the standard for evaluating fraudulent transfer claims:

> Based on his investigation, Mr. Balasiano concluded that "there was no actionable cause of action that could be brought as a result of [the Sunrise Transfer] because "[t]he company was solvent." He reasoned that: "In order to bring a fraudulent conveyance action there are two factors. One is there has to be a transfer for lack of reasonably equivalent value and, number two, the company has to be insolvent at the time of that transfer. Clearly, the second fact[or] of the test was not satisfied her[e]."

******

37

The Court finds that Mr. Balasiano's determination that there is "no actionable cause of action that could be brought" for fraudulent conveyance is a reasonable basis for the settlement.

Confirmation Ruling pp. 9-10, A.1606-7.

Section 3439.02(a) of California Uniform Voidable Transfer Act provides in relevant part that "[a] debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets. Cal. Civ. Code § 3439.02(a). A debtor's assets and liabilities must be calculated at fair valuation to determine whether its debts exceed its assets. *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 648 (1991) "[A] fair valuation of assets contemplates a conversion of assets into cash during a reasonable period of time." *In re Trans World Airlines, Inc.*, 134 F.3d 188, 194 (3d Cir. 1998). If assets are not susceptible to liquidation, and thus cannot be made available for payment of debts, within a reasonable period of time, a reduction in the face value of those assets may be appropriate. *Constructora Maza, Inc. v. Banco de Ponce*, 616 F.2d 573, 577 (1st Cir. 1980). Courts should consider contingent liabilities when evaluating the solvency of a debtor. *Trans World Airlines*, 134 F.3d. at 197.

Moreover, "[r]eduction in the face value of assets may be appropriate if those assets are not susceptible to liquidation, and thus cannot be made available for payment of debts, within a reasonable period of time." *Constructora Maza*, 616 F.2d at 557.

Thus, for example, accounts receivable need not be taken at face value if circumstances cast doubt on their collectability. The prospects of collection of such assets are evaluated in light of the past record of payment of the obligors, the obligors' current solvency, and the presence or absence of any dispute over the validity of the accounts or debts owed. [] Because the value of such assets may, in certain circumstances, be discounted, it is appropriate for the trier of fact to hear qualified opinion testimony on their fairly realizable value.

*Id.*

### B. The Bankruptcy Court erred as a matter of law by placing the burden of proof on the Reed Creditors on the solvency issue.

In its Confirmation Ruling, the Court held that "the Reed Creditors did not carry their burden to prove by a preponderance of the evidence that the Debtor was insolvent at the time of the Sunrise Transfer." Confirmation Ruling p. 10. A.1616-17.  While the Bankruptcy Court is correct that a plaintiff in a fraudulent transfer action bears the burden of proof on insolvency (Confirmation Ruling p. 10. A.1617), the Reed Creditors were not plaintiffs in a fraudulent transfer action. Rather, the Reed Creditors, as creditors and parties in interest, objected to the Plan releases, which places the burden on the Debtor to prove that the settlement regarding the Plan Releases fall above the lowest range of reasonableness. *See* In re *Spansion, Inc.*, No. 09–10690(KJC), 2009 WL 1531788 *4, Carey, J. (Bankr. D. Del. June 2, 2009); *In re Washington Mutual, Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011).

One of the factors courts consider in determining whether to approve a settlement is the probability of success in the litigation. *In re Coram Healthcare,*

*Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004). In considering the probability of success on the merits, the Debtor, as a fiduciary, was required to carefully consider each of the elements of the possible fraudulent transfer claim against the Released Parties. The record demonstrates that the Debtor did not do that.

Steven Balasiano was appointed as an independent director to evaluate and bring valid causes of action against the Debtor's affiliates and insiders. GCS, a forensic accounting firm, was retained to examine whether the Debtor had any avoidance actions against the Debtor's Insiders and provide its findings to Mr. Balasiano. Plan § III.9. p. 15, A.0740 Despite their charges, the Debtor never asked GCS to perform a solvency analysis, and GCS did not perform one.

Instead, the Debtor relied on the testimony of Mr. Balasiano and Michael Sarrao, the Debtor's executive vice president and general counsel—and himself a beneficiary of the Plan Releases— to testify factually on the Debtor's solvency based exclusively on the Debtor's balance sheets and tax returns. Neither Mr. Balasiano nor Mr. Sarrao is a financial expert nor qualified to render an opinion on solvency. *See* March 4 Tr. 92:19-22; A.1375. Transcript of hearing held on March 5, 2024 (the "March 5 Tr.") 129:20-25; A.1539. In particular, no testimony was presented that either Mr. Balasiano or Mr. Sarrao considered anything other than the facial numbers on the Debtor's balance sheets.

As a result, no competent testimony was submitted to the Bankruptcy Court through which the Debtor could meet its burden of demonstrating that it was solvent, which proof is necessary to prevent the acknowledged transfer to its members for less than equivalent value ($22 million less) from being a fraudulent transfer. Since this was a cause of action purportedly investigated and resolved by the Debtor without input from its creditors, it was the Debtor that failed to meet its burden on the solvency issue.  Accordingly, the Court should rule that the Bankruptcy Court erred as a matter of law is in placing the burden of proof on the solvency issue on the Reed Creditors and remand this matter for further proceedings consistent with the Court's ruling.

## C. The Bankruptcy Court erred in accepting the testimony of Mr. Balasiano that there were no viable causes of action against the Debtor's Insiders.

The Bankruptcy Court further erred in accepting Mr. Balasiano's conclusion that there were no viable causes of action against its insiders. Confirmation Ruling pp. 9-10, A.1606-7, as Mr. Balasiano's testimony was unreliable.

At the Confirmation hearing, Mr. Balasiano testified that concluded that the Debtor had no viable causes of action against its insiders by October 9, 2023:

Q All right. And so, between the time that you received the report and the time that the plan was filed, a period of about ten days, that's when the decision -- that's when you reached the determination that there was [sic] no viable causes of action, correct?

A Is that a question?

Q Yeah, with a correct at the end. Is that correct that that's when you reached the conclusion?

A It was an iterative process. It did not happen on [a] particular date, it was a process that happened from the time that I was engaged at the end of August through the time that we receive [sic] Leanne Gould's report. Once I had time to speak to all of the respective professionals in this case, the decision was formulated, correct.

Q But that conclusion was reached by October 9th?

A Correct.

March 4 Tr. 102:10-14, A.1385. But Mr. Balasiano testified earlier during cross-examination that he could not recall (i) when he first determined that the Debtor was solvent at the time of the Sunrise REH transfer or (ii) whether he made that determination on his own or simply accepted what the Debtor told him.

Q Your testimony that the debtor was solvent and that you did an analysis of the debtor's solvency in June of -- as of June 2019 was performed prior to October 9th; is that – I just want to be clear.

A Yeah. I mean, *I'm just -- I'm trying to recount whether I literally, actually saw -- because I want to be careful with what I say -- whether I literally saw the financial statement prior to, the day before, the day after, or it was represented to me that the company was solvent at that time through the analysis.*

Q When you say it was represented to you, that would mean that it was either in writing as part of a memo that you were provided or someone told you that?

A Correct.

Q But it's fair to say that you didn't perform your own analysis to reach your own opinion on solvency up and through October 9th of 2023?

A Well, [……..] you're [sic] cutting hairs here. *The question is where -- my opinion is formulated based on the information that I received from the*

*professionals that I hired, retained in this case. So to say when my opinion was formed as opposed to receiving the information and the data and the backup and the conversations, it's very hard to be able to dissect that the way you're asking me to.*

Q Okay.

A I'm sorry.

Q Well, do you recall -- let's put aside --

A *At all time -- let me explain something. At all times in 2019, this company was solvent. I knew that this company was solvent in 2019 because it was represented to me when we knew that we had a bad transaction -- or not a bad transaction -- a transaction that was made for less than reasonable value. I said, hey, guys, were we solvent at this time, because that's the next question you would ask if you're a practicing lawyer in a bankruptcy context, or an independent director or a liquidating trustee. So that was the question I said, were we solvent? The answer was, yes, we were solvent. And when in fact I saw that financial statement, whether it was October 9th, October 7th, October 17th, I can't sit here today and tell you exactly the date.*

*Id.* at 88:9-89:24, A.1371-72 (emphasis added).

Mr. Balasiano's testimony plainly states that rather than make his own determination on solvency based on a review of the Debtor's financials, he relied on representations made to him that the Debtor was solvent. Given that GSC didn't do a solvency analysis, those representations necessarily came from the Debtor. Relying on the Debtor's representation on solvency is antithetical to Mr. Balasiano's role as the Debtor's independent director. His charge was to determine whether the Debtor had any potential claims against its insiders, especially because members of the Debtor's management are themselves beneficiaries of the Plan Releases. Mr. Balasiano abdicated his role as an independent director and a fiduciary of the

Debtor's estates in the determination of whether the Debtor was insolvent at the time of the Sunrise REH Transfer.  He simply let the Debtor decide.

### D.  The Bankruptcy Court erred in relying on the Debtor's evidence in arguing it was solvent at the time of the Sunrise REH Transfer.

Lacking a solvency expert, the Debtor relied on a simplistic solvency analysis based on the positive equity values shown on its balance sheets and tax returns, as summarized by the Court:

> [Mr. Balasiano] relied upon the Debtor's 2019 balance sheet, which reflects the Debtor had an equity value of at least $9.4 million; and the Debtor's 2019 tax returns, which show assets in excess of $18 million. He concluded the Debtor had a positive balance sheet for 2019 (and 2020) and was able to pay its debts as they became due.

Conformation Ruling p. 9,A.1615**.** While the Bankruptcy Court notes Mr. Balasiano's reliance on the balance sheets and tax returns, this evidence was actually introduced at the Confirmation Hearing by Mr. Sarrao.  The Court's Confirmation Ruling fails to mention any of the evidence presented to Mr. Sarrao of liabilities of Alecto not included in its balance sheets or limitations on the value of intercompany receivables which provided the positive equity value noted on the face of the balance sheets.

The balance sheet numbers in a vacuum do nothing to establish the fair value of Alecto's assets and liabilities and the Debtor makes no attempt to otherwise establish the fair valuation of Alecto's assets and liabilities as of June 19, 2019.  In asking this Court to rely on the face of the balance sheets to prove its solvency, the

Debtor is asking the Court to ignore the very nature of a solvency analysis.  At the outset of the case, Mr. Sarrao acknowledged that "advancing funds to its subsidiaries was Alecto's general business practice.[38]   Between 2014 and the Petition Date, Alecto had loaned Sherman Grayson in excess of $60 million that it acknowledged could not be paid back.[39]  Id., ¶ 27.  Two of the four other hospitals were closed in 2019 and a third was closed in 2020.  These struggling entities were not in a position to be paying back receivables owed to affiliates in the months before they were closed.  In fact, Alecto faced significant liabilities arising from its subsidiaries, and these liabilities were acknowledged by Mr. Sarrao.

In 2021, the Debtor paid more than $19 million in state and federal payroll taxes for its subsidiaries, all of which was booked as a loan to them, entitling the Debtor to an intercompany receivable for the loan amount. [40]  Alecto received a payment demand of more than $10 million for withdrawal liability caused by the closing of the hospital operated by Alecto Fairmont; payments toward this liability were made by Alecto.  Obligations owed pursuant to any guarantee Alecto issued with respect to an obligation of an affiliate were never booked on its balance sheet, even after claims against Alecto were made—and even after judgments were obtained.[41] Likewise, a claim asserted by a federal agency for repayment of

---

[38] First Supplemental Declaration [Bankr. Ct. DI 133] ¶ 27, A.1074
[39] Id.
[40] See Summary of the UCLA Transaction p. 4, A.1246
[41] 3/5/2024 Tr. 126:20 – 127:7, A.1536-37.

Medicaid advance payment dating back many years, originally asserted in the amount of $12 million, and through the CMS proof of claim increased to $29 million, was fully excluded from the liability section of the Alecto balance sheets. Mr. Sarrao confirmed that Alecto had also been sued by the Centers for Medicare & Medicaid Services ("CMS"), of the U.S. Depart. of Health and Human Services, for reimbursement of more than $12 million in Medicare advance payments made to its Olympia affiliate.[42] Mr. Sarrao acknowledged that none of these liabilities was listed on the Alecto balance sheet because the obligations originated with an affiliate or subsidiary.[43]

Setting aside the value that the Debtor should have attributed to these liabilities, solvency based on the 2019 balance sheet is rebuttable simply by the lack of value of its intercompany receivable. As testified by Mr. Sarrao at the confirmation hearing, the Partner's capital account figure on line 21 of Schedule L of the 2019 tax return ("Balance Sheets per Books") shows $18,671,358, which is the Debtor's equity.[44] But Mr. Sarrao also acknowledged that this equity calculation relies on the intercompany receivable amount of $25,489,819 in line 8 ("other investments", which references Statement 14 ) ("Intercompany Receivables"). Mr.

---

[42] 3/5/2024 Tr. 98:20–100:3,A.1508.    CMS filed a claim in the Alecto bankruptcy case on December 13, 2023 for $29,126,600. [App. Ex. 48, A.1250]
[43] 3/5/2024 Tr. 100:4 – 10, A.1510 and 107:8 – 25. A. 1517 .
[44] 3/5/2024 Tr. 39:13 – 40:4, A.1449; Alecto 2019 Balance Sheet, A.1223.

Sarrao further acknowledged that a reduction in the value of the intercompany receivables results in a reduction of the partner's (Debtor's) equity because "it's a sum of numbers. So, just from a mathematical proposition, it would be different."[45] As noted, evidence in the record, including Mr. Sarrao's own testimony, indicate that the substantial sums loaned to Alecto's affiliates' operating hospitals will never be repaid, rendering the intercompany receivable worthless.

Mr. Balasiano ignored all this evidence when he drew his conclusion straight from the face of the 2019 balance sheet and tax return the Debtor provided him. All of this evidence was ignored by the Court when it accepted Mr. Balasiano's conclusion without further comment. As a result, the Debtor's limited solvency analysis comes nowhere close to establishing that Alecto was solvent at the time of the Sunrise REH Transaction.

### E. The Bankruptcy Court erred in misapplying the factors for approval of a settlement.

Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may provide for the "settlement or adjustment of any claim or interest belonging to the debtor or to the estate." *In re Coram Healthcare Corp.*, 315 B.R. 321, 334-35 (Bankr. D. Del. 2004). Further, a debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the

---

[45] 3/5/2024 Tr. 138:16 – 139:19. A.1548.

debtor's business judgment, is fair, reasonable, and in the best interests of the estate." *In re Spansion, Inc.*, 426 B.R. 114, 143 (Bankr. D. Del. 2010).

As the Bankruptcy Court noted in the Confirmation Ruling, "[t]he Court determines if the released claims fall into the lowest point of reasonableness for a settlement."[46] Confirmation Ruling p. 7, A1604. When determining whether to approve a settlement, the bankruptcy court should consider: (1) the probability of success in the litigation; (2) the complexity, expense, and delay of the litigation involved; (3) the possible difficulties in collection; and (4) the paramount interests of creditors."[47]

While the Bankruptcy Court cited the correct factors for determining whether to approve a settlement, it misapplied the factors. In particular, the Bankruptcy Court erred as a matter of law in ruling that the Reed Creditors bore the burden of proof on insolvency. Having erroneously concluded there was not a probability of success for the fraudulent conveyance litigation, the Bankruptcy Court failed to consider the other factors including the cost of the litigation, the likelihood of collection and the

---

[46] Citing *Coram Healthcare, Corp.*, 315 at 330. The Bankruptcy Court further stated that "Where a compromise is part of a plan of reorganization, however, the court has the duty "to determine that a proposed compromise forming part of a reorganization plan is fair and equitable." The standards for approval of a settlement under section 1123 are generally the same as those under Rule 9019, though the court should consider all factors relevant to a "full and fair assessment of the wisdom of the proposed compromise." (citing *Id.* at 334-35).

[47] Citing *id.* at 330; *Myers v. Martin (In re Martin),* 91 F.3d 389, 39 (3d Cir. 1996)).

paramount interest of the creditors. Accordingly, the Bankruptcy Court misapplied the factors for approval of the settlement.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, the Reed Creditors respectfully request that this Court reverse the Confirmation Order and remand this matter to the Bankruptcy Court with instructions that the Bankruptcy Court make further proceedings consistent with this Court's ruling.

Dated:  October 15, 2024

**SULLIVAN · HAZELTINE · ALLINSON LLC**

        */s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
        whazeltine@sha-llc.com

and

Bren J. Pomponio, Esq.
Colten L. Fleu, Esq.
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Tel: (304) 326-0188
Email:  bren@msjlaw.org

And

John Stember, Esq.
Maureen Davidson-Welling, Esq.
Stember Cohn & Davidson-Welling, LLC
The Harley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
Tel: 412-338-1445
Email:jstember@stembercohn.com
       mdavidsonwelling@stembercohn.com

*Counsel for The Reed Action*
*Judgment Creditors*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
|  | ) |  |
| Alecto Healthcare Services LLC, | ) | Case No. 23-10787 (JKS) |
|  | ) |  |
| Debtor. | ) |  |
| _____ | ) |  |
| The Reed Action Judgment | ) | Civil Action No. 1:24-cv-00494-GBW |
| Creditors, | ) | (as consolidated) |
|  | ) |  |
| Appellants, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| Alecto Healthcare Services LLC, | ) |  |
|  | ) |  |
| Appellee. | ) |  |

## APPELLEE'S RESPONSIVE BRIEF

Dated: November 27, 2024

**MORRIS JAMES LLP**
Carl N. Kunz, III (No. 3201)
Jeffrey R. Waxman (No. 4159)
Douglas N. Candeub (No. 4211)
Christopher M. Donnelly (No. 7149)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: 302-888-6800
Facsimile: 302-571-1750
Email: ckunz@morrisjames.com
          jwaxman@morrisjames.com
          dcandeub@morrisjames.com
          cdonnelly@morrisjames.com

*Counsel for Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................**Error! Bookmark not defined.**

NATURE AND STAGE OF THE PROCEEDINGS .................................1

    A.    The Designation Motion, Evidentiary Hearing, Decision, and Appeal ............................................1

    B.    Alecto's Plan, the Confirmation Hearing, and the Appeal..........................................................2

STATEMENT OF JURISDICTION..........................................4

COUNTER-STATEMENT OF THE ISSUES ON APPEAL AND THE APPLICABLE STANDARD OF REVIEW ......................5

SUMMARY OF ARGUMENT ...............................................9

STATEMENT OF THE CASE...............................................12

    A.    Alecto's Financial Spiral. ...................................12

    B.    Alecto's Bankruptcy Filing ................................13

    C.    The Designation Motion......................................14

    D.    The Designation Hearing ..................................17

    E.    Alecto Appoints an Independent Director..........................20

    F.    The Reed Creditors Object to Confirmation of the Plan....................21

    G.    The Confirmation Hearing ..................................22

ARGUMENT ...............................................................29

I.    THE BANKRUPTCY COURT CORRECTLY FOUND, BASED ON THE EVIDENCE PRESENTED, THAT ALECTO MET THE SUBCHAPTER V DEBTOR ELIGIBILITY REQUIREMENTS.............................................29

A.     The Bankruptcy Court Correctly Concluded that Alecto's Debt to LHP Was Contingent as of the Petition Date ........................................................................31

B.     The Bankruptcy Court Correctly Concluded that Alecto's Debt to LHP Was Unliquidated as of the Petition Date ........................................................................38

II.     THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION WHEN IT APPROVED THE SETTLEMENT WITH THE RELEASED PARTIES AS A COMPONENT OF THE PLAN ....................................................42

    A.     Section 1123(b)(3)(A) Permits a Plan to Provide for Releases of Alecto's Claims..............................................42

    B.     The Reed Creditors Imply, Without Support, a Far Steeper Burden of Proof for the Bankruptcy Court to Approve the Settlement and Releases than Settled Case Law Requires..............................................44

    C.     The Reed Creditors' Challenges to the Quality of the Evidence Presented by Alecto – as to the Potential Viability of Causes of Action against Insiders and as to Solvency at the Time of the Sunrise Transfer - Are Meritless ..............................................46

       1.     The Bankruptcy Court Properly Canvassed the Issues, Considered the *Martin* Factors and Appropriately Exercised Its Discretion to Approve the Settlements and Confirm the Plan......................................46

       2.     Appellants Assert, Erroneously and Without Support, that Expert Testimony on Solvency Was Required ..............................................51

    D.     The Bankruptcy Court Properly Approved the Settlement and Confirmed the Plan Whether under *Coram Healthcare*, *Martin* or *Zenith*...............................................54

CONCLUSION ..............................................................57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adams*,
373 B.R. 116 (B.A.P. 10th Cir. 2007) ................................................................40

*Matter of Belt*,
106 B.R. 553 (Bankr. N.D. Ind. 1989) ...............................................................37

*In re Burdock & Assocs., Inc.*,
662 B.R. 16 (Bankr. M.D. Fla. 2024) .................................................................40

*Burtch v. Opus LLC (In re Opus E. LLC)*,
698 F. App'x 711 (3d Cir. 2017) ..........................................................................6

*In re Capmark Fin. Grp. Inc.*,
438 B.R. 471 (Bankr. D. Del. 2010)................................................................7, 45

*In re Commercial Financial Servs., Inc.*,
2005 WL 6499290 (Bankr. N.D. Okla. Sept. 14, 2005) ....................................52

*Depoister v. Mary M. Holloway Found.*,
36 F.3d 582 (7th Cir. 1994) ...............................................................................44

*In re DeVries*,
2014 WL 4294540 (Bankr. N.D. Tex. Aug. 27, 2014)........................................52

*F.D.I.C. v. Deglau*,
207 F.3d 153 (3d Cir. 2000) ...............................................................................57

*Fesnak & Assocs., LLP v. U.S. Bank Nat. Ass'n*,
722 F. Supp. 2d 496 (D. Del. 2010)...................................................................33

*In re Fradkov*,
2020 WL 6701335 (Bankr. D.N.J. Nov. 12, 2020) ......................................36, 41

*In re Free Speech Sys., LLC*,
649 B.R. 729 (Bankr. S.D. Tex. 2023) ...............................................................30

*In re Fruehauf Trailer Corp.*,
444 F.3d 203 (3d Cir. 2006) .................................................................................5

iii

**JA2829**

*In re Harwood*,
519 B.R. 535 (Bankr. N.D. Cal. 2014) .............................................................31

*In re Heart Heating & Cooling, LLC*,
2024 WL 1228370 (Bankr. D. Colo. Mar. 21, 2024) .........................................40

*In re Hibbard Brown & Co.*,
217 B.R. 41 (Bankr. S.D.N.Y. 1998) ..................................................................7

*In re HomeBanc Mortg. Corp.*,
945 F.3d 801 (3d Cir. 2019) ...............................................................................6

*In re Ibbott*,
637 B.R. 567 (Bankr. D. Md. 2022) ..................................................................36

*In re Isom*,
2020 WL 1950905 (B.A.P. 9th Cir. Apr. 22, 2020), *aff'd,* 836 F.
App'x 562 (9th Cir. 2020) ..................................................................................52

*In re Jasmine, Ltd.*,
258 B.R. 119 (D.N.J. 2000) ...............................................................................45

*In re Key3Media Grp., Inc.*,
336 B.R. 87 (Bankr. D. Del. 2005) ....................................................................44

*In re Lambert*,
43 B.R. 913 (Bankr. D. Utah 1984) ..............................................................39, 40

*In re LandSource Communities Dev., LLC*,
612 B.R. 484 (D. Del.), *aff'd sub nom. LandSource Communities
Dev. LLC v. Citizens Against Corp. Crime, LLC*, 834 F. App'x 747
(3d Cir. 2020).................................................................................................8, 43

*LeJeune v. Bliss-Salem, Inc.*,
85 F.3d 1069 (3d Cir. 1996) ..............................................................................33

*In re Lenox Healthcare, Inc.*,
343 B.R. 96 (Bankr. D. Del. 2006) ....................................................................48

*In re LuMee LLC*,
2023 WL 8888840 (Bankr. D. Utah Dec. 22, 2023) .........................................52

iv

*In re Martin*,
212 B.R. 316 (B.A.P. 8th Cir. 1997) ...................................................44

*In re Martin*,
91 F.3d 389 (3d Cir. 1996) ...........................................................*passim*

*In re Mazzeo*,
131 F.3d 295 (2d Cir. 1997) ..............................................................36

*Nellis v. Shugrue*,
165 B.R. 115 (S.D.N.Y. 1994) .............................................................7

*In re Neshaminy Office Bldg. Assocs.*,
62 B.R. 798 (E.D. Pa. 1986) ................................................................7

*In re Nortel Networks, Inc.*,
669 F.3d 128 (3d Cir. 2011) .................................................................6

*In re Nutraquest, Inc.*,
434 F.3d 639 (3d Cir. 2006) ...............................................................44

*Oss Nokalva, Inc. v. European Space Agency*,
617 F.3d 756 (3d Cir. 2010) ...............................................................38

*In re Parking Mgmt., Inc.*,
620 B.R. 544 (Bankr. D. Md. 2020) ......................................30, 36, 40

*In re Rea Keech Buick, Inc.*,
139 B.R. 625 (Bankr. D. Md. 1992) ...................................................37

*In re Revstone Indus. LLC*,
690 F. App'x 88 (3d Cir. 2017)............................................................6

*In re Rodriguez*,
521 F. App'x 87 (3d Cir. 2013)............................................................5

*In re Rosenberg*,
414 B.R. 826 (Bankr. S.D. Fla. 2009). *subsequently aff'd,* 472 F.
App'x 890 (11th Cir. 2012)................................................................37

*In re Slack*,
187 F.3d 1070 (9th Cir. 1999) ...........................................................31

v

*In re Summit Metals, Inc.*,
    477 F. App'x 18 (3d Cir. 2012)...............................................8, 49, 50

*United States v. State Street Bank & Tr. Co.*,
    520 B.R. 29 (Bankr. D. Del. 2014).......................................48

*In re West*,
    2017 WL 746250 (Bankr. W.D. Mo. Feb. 24, 2017) .........................................36

*In re Woodbridge Grp. of Cos., LLC*,
    617 B.R. 796 (D. Del. 2020)...................................................6

*In re World Health Alt.*,
    344 B.R. 291 (Bankr. D. Del. 2006)...................................7

*In re Zenith Elecs. Corp.*,
    241 B.R. 92 (Bankr. D. Del. 1999).......................................54, 55, 56

*In re Zhang Med. P.C.*,
    655 B.R. 403 (Bankr. S.D.N.Y. 2023)...............................................35

**Statutes**

11 U.S.C. § 101(5) ...................................................39

11 U.S.C. § 101(12) ...................................................39

11 U.S.C. § 109(e) ...................................................*passim*

11 U.S.C. § 541(a)(1)...................................................30

11 U.S.C. § 1123(b)(3)(A)...................................................6, 42

11 U.S.C. § 1182(1) ...................................................*passim*

**Rules**

Fed. R. Bankr. P. 8014(b) ...................................................4, 5

Fed. R. Bankr. P. 9019 ...................................................7, 45

## NATURE AND STAGE OF THE PROCEEDINGS

On June 16, 2023 (the "Petition Date") Appellee, Alecto Healthcare Services LLC ("Alecto" or "Appellee"), commenced its bankruptcy case under the subchapter V provisions of 11 U.S.C. § 101 et. seq. (the "Bankruptcy Code").

### A.    The Designation Motion, Evidentiary Hearing, Decision, and Appeal

On November 2, 2023, certain creditors (collectively, the "Reed Creditors" or the "Appellants") filed an Objection to Debtor's Designation of This Case as a Subchapter V Case and Motion to Revoke Debtor's Designation as a Subchapter V Debtor (the "Designation Motion"), challenging Alecto's eligibility for subchapter V relief based upon the Reed Creditors' belief that Alecto's liquidated and non-contingent debt exceeded the statutory limit or subchapter V relief (A0001). On November 22, 2023, Alecto responded to the Designation Motion (A0016), and on November 27, 2023, the Reed Creditors filed their reply. (A0204)

On November 29, 2023, the Bankruptcy Court held an evidentiary hearing on the Designation Motion. (B0001-B0134)[1]  On December 1, 2023, the Bankruptcy Court issued its oral ruling on the Designation Motion (the "Designation Ruling") (A0244) and, on December 4, 2023, the Bankruptcy Court entered an order denying

---

[1] Reference to "(B_____)" herein refer to portions of the designated record that were not included in the Reed Creditors' Appendix, but are now included in the Appellee's Appendix being filed simultaneously herewith.

the Designation Motion (the "Designation Order"). (A0257)  The Reed Creditors

timely appealed the Designation Order (the "Designation Appeal"). (A0260)  The

Reed Creditors did not request a stay pending appeal with respect to the Designation

Order.

### B.    Alecto's Plan, the Confirmation Hearing, and the Appeal

On December 19, 2023, Appellant filed its Small Business Debtor's Plan of

Reorganization (as subsequently modified or supplemented, the "Plan"). (A0720)  A

hearing to consider confirmation of the Plan was set for March 4 and 5, 2024.

The Reed Creditors timely filed objections to confirmation of the Plan

(A1013, A1033),[2] and took written discovery and deposed two Alecto witnesses,

Leanne Gould ("Ms. Gould"), a forensic accountant, and Steven Balasiano, Alecto's

independent director ("Mr. Balasiano").

On March 4 and 5, 2024, the Bankruptcy Court held an evidentiary hearing to

consider confirmation of the Plan.  Alecto presented numerous exhibits in support

of confirmation and testimonial evidence from two experts, Ms. Gould and Mr.

McCutcheon, as well as from Mr. Balasiano and Michael Sarrao ("Mr. Sarrao"),

Alecto's Executive Vice President, General Counsel, and Secretary.  The Reed

---

[2] Other objections were filed, but all were resolved.  Only the objections of the
Reed Creditors are the subject of this appeal.

Creditors presented none of their own witnesses but cross-examined three of Alecto's four witnesses.

On March 20, 2024, after hearing all the evidence and conducting a separate hearing for oral arguments, the Bankruptcy Court issued a ruling (the "Confirmation Ruling") (A1607), in which it made specific findings of fact and conclusions of law overruling each of the objections to confirmation filed by the Reed Creditors. On April 4, 2024, the Bankruptcy Court entered Findings of Fact and Conclusions of Law Confirming the Plan (the "Confirmation Order"). (A1627)

The Reed Creditors timely appealed the Confirmation Order (the "Confirmation Appeal") (A1952). The Reed Creditors did not request a stay pending appeal and, on April 19, 2024 (the "Effective Date"), the Plan became effective (B0737). Since the Effective Date, the Appellee has consummated the settlement under the Plan, and made distributions contemplated by the Plan.

The Designation Appeal and Confirmation Appeal are consolidated before this Court [Dist. Ct. Docket 11].

## STATEMENT OF JURISDICTION

The Appellee agrees with the Jurisdictional Statement set forth in the Appellants' Opening Brief.  Accordingly, no counterstatement on those matters is required, per Rule 8014(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## COUNTER-STATEMENT OF THE ISSUES ON APPEAL AND
## THE APPLICABLE STANDARD OF REVIEW

The Reed Creditors have appealed from (1) the Designation Order and (2) the Confirmation Ruling and Confirmation Order.

Appellee submits that the Appellants' Statement of the Issue for their appeal from the Designation Order, and the related standard of review, should be restated as follows. *See* Fed. R. Bankr. P. 8014(b).

### As to the Appeal from the Designation Order:

Did the Bankruptcy Court err in holding that Alecto properly designated itself as a debtor under Subchapter V of Chapter 11 of the Bankruptcy Code when it filed its bankruptcy petition?

### Standard of Review:

On appeal from a final order of the Bankruptcy Court, the District Court "review[s] the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error." *In re Rodriguez*, 521 F. App'x 87, 89–90 (3d Cir. 2013), citing *In re Global Indus. Techs., Inc.,* 645 F.3d 201, 209 (3d Cir. 2011) (en banc).

When reviewing factual findings for clear error, the Bankruptcy Court's factual findings "may only be overturned if they are 'completely devoid of a credible evidentiary basis or bear[] no rational relationship to the supporting data.'" *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 210 (3d Cir. 2006) (quoting *Citicorp Venture Capital, Ltd. v. Comm. of Creditors*, 323 F.3d 228, 232 (3d Cir. 2003)); *see also*

5

*Burtch v. Opus LLC (In re Opus E. LLC)*, 698 F. App'x 711, 714 (3d Cir. 2017) ("Clear error occurs only if the court's finding is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." (internal citations omitted)).

Mixed questions of law and fact are reviewed under a mixed standard, affording a clearly erroneous standard to factual findings but exercising plenary review of the bankruptcy court's interpretation and application of those facts to legal precepts. *See, e.g.*, *In re HomeBanc Mortg. Corp.*, 945 F.3d 801, 810–11 (3d Cir. 2019); *see also In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011); *In re Woodbridge Grp. of Cos., LLC*, 617 B.R. 796, 801 (D. Del. 2020).

On appeal, the court "may affirm a judgment on any ground apparent from the record, even if the [lower] court did not reach it." *In re Revstone Indus. LLC*, 690 F. App'x 88, 89 (3d Cir. 2017), citing *Oss Nokalva, Inc. v. European Space Agency*, 617 F.3d 756, 761 (3d Cir. 2010).

**As to the Appeal from the Confirmation Order:**[3]

Did the Bankruptcy Court err in approving the settlement and releases contained in the Plan pursuant to the standards set forth in Section 1123(b)(3)(A) of

---

[3] In their opening brief, the Reed Creditors raised four (4) issues in connection with the Confirmation Appeal. In actuality, all of the issues in connection with the Confirmation Appeal relate to the approval of the releases provided by the settlement contained in the Plan.

the Bankruptcy Code and Fed. R. Bankr. P. 9019?

**Standard of Review**:

The standard to apply when reviewing the Bankruptcy Court's approval of settlements is whether the Bankruptcy Court abused its discretion.

"Whether to approve a settlement . . . is within the discretion of the bankruptcy court." *In re World Health Alt.,* 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 803 (E.D. Pa. 1986) ("Approval of the settlement lies within the sound discretion of the Bankruptcy Court."); *Nellis v. Shugrue,* 165 B.R. 115, 122–23 (S.D.N.Y. 1994). In addition, the court should exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.,* 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see also In re Martin,* 91 F.3d 389, 393 (3d Cir. 1996) ("compromises are favored in bankruptcy"); *Shugrue,* 165 B.R. at 123 (noting that "the general rule [is] that settlements are favored and, in fact, encouraged by the approval process...."); *In re Capmark Fin. Grp. Inc.,* 438 B.R. 471, 515 (Bankr. D. Del. 2010).

> Courts in this district have held that a bankruptcy court's decision should not be overturned based upon an abuse of discretion 'unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant facts.' *In re SemCrude, L.P.,* 428 B.R. 590, 593 (D. Del. 2010) (citation omitted). Thus, 'a decision should not be overturned under the abuse of discretion standard,

unless *no reasonable person would adopt the lower court's view*.' *Id.* (emphasis added).

*In re LandSource Communities Dev., LLC*, 612 B.R. 484, 493 (D. Del.), *aff'd sub nom. LandSource Communities Dev. LLC v. Citizens Against Corp. Crime, LLC*, 834 F. App'x 747 (3d Cir. 2020); *In re Summit Metals, Inc.*, 477 F. App'x 18, 20 (3d Cir. 2012).

17030076/10

**JA2840**

## SUMMARY OF ARGUMENT

Despite that the Appellee is a small business with a relatively straightforward pool of assets and future income stream, the unfortunate hallmark of the Chapter 11 Case is the endless litigation perpetuated by the Reed Creditors. Even prior to Alecto filing the final version of its Plan, the Reed Creditors announced in the Bankruptcy Court their intention to object to it.[4]

Relevant to this appeal, the Reed Creditors challenged Alecto's qualification as a subchapter V debtor by asserting that Alecto had more than the then-applicable $7.5 million in non-contingent, liquidated debt for subchapter V eligibility. In so doing, the Reed Creditors asserted that the debt of LHP Hospital Group, Inc. ("LHP"), *another* creditor, was neither contingent nor unliquidated – positions not even LHP itself asserted. Following an evidentiary hearing at which the Reed Creditors called no witnesses (including no witness from LHP), the Bankruptcy Court ruled that LHP's claim was both contingent *and* unliquidated on the Petition Date, and thus Alecto was eligible to proceed under subchapter V.

The Bankruptcy Court's decision was both legally and factually correct. As the Bankruptcy Court found, Alecto's obligation to LHP was contingent because, as of the Petition Date, "[u]nless and until LHP made a specific demand, [Alecto] had

---

[4] Bankr. Docket 220, p. 26 ("We will be filing a confirmation objection. The question is we're waiting to see what the debtor has to say.")

no obligation to pay." (A0250)  The Bankruptcy Court found that "although LHP received invoices from the landlord, there is no evidence that [Alecto] received copies of those invoices." (A0251)  The Bankruptcy Court also found the LHP debt was also unliquidated because there was no way for Alecto to readily determine the amount of debt that might be owed to LHP as of the Petition Date: "[T]here was no precision or ability to readily determine LHP's debt as of the petition date." (A0252) Consequently, the LHP debt was both contingent and unliquidated as of the petition date, making Alecto eligible to proceed as a subchapter V debtor.

The Appellants' continual references before the Bankruptcy Court and on appeal to documents that were superseded by settlement documents between Alecto and LHP are misguided.  Moreover, Appellants' argument that Alecto's obligation to LHP amounted to a guarantee still fails, as guarantees are, as a matter of law, the epitome of contingent obligations.  In sum, the Bankruptcy Court properly determined that Alecto was eligible to proceed under subchapter V of chapter 11.

The Reed Creditors then sought to deny confirmation of the Plan.  As set forth herein, following document discovery, fact and expert depositions, a two-day confirmation hearing, and oral argument, the Bankruptcy Court entered specific, detailed findings of fact and conclusions of law and overruled each of the Reed Creditors' objections to the Plan.

17030076/10

The Reed Creditors' contention that the Bankruptcy Court erred when confirming the Plan is meritless.   Principally, the Reed Creditors contest the Bankruptcy Court's approval of the settlement and associated releases in the Plan. At their core, the Reed Creditors' appeal merely contends that Alecto witnesses should not be believed.  But the Bankruptcy Court – as the finder of fact – has great latitude in considering and weighing the evidence before it.   In this light, the Bankruptcy Court's determination that Alecto's independent director appropriately exercised his business judgment in agreeing to the settlement of potential claims was supported by evidence and certainly not an abuse of discretion.   Further, the Bankruptcy Court understood and correctly applied the factors the Bankruptcy Court evaluated to approve the settlement.

In light of the foregoing, Appellants' appeals are without merit and should be rejected.

17030076/10

**JA2843**

## STATEMENT OF THE CASE

Alecto was formed in 2012 to serve as a holding company for healthcare-related entities.  Historically, Alecto formed various subsidiaries for the purposes of (a) acquiring distressed acute care hospitals; (b) operating acute care hospitals; (c) providing management services to acute care hospitals that are not owned by Alecto or its subsidiaries; and (d) owning and operating businesses affiliated with acute care hospitals operated by Alecto's subsidiaries. (A0731-32)   At its peak, Alecto's subsidiaries operated five (5) acute care hospitals across the country, Alecto provided management services to an acute care hospital owned by an unrelated third-party, and one of Alecto's subsidiaries provided management services to an acute care hospital owned by an unrelated third-party. (A0732)

### A.    Alecto's Financial Spiral.

Prior to the COVID 19 pandemic, Alecto was both solvent and profitable. (A1588) At the beginning of the pandemic, hospitals and other healthcare entities were limited in terms of the income received from certain practices, such as elective surgery.  The cost from those losses were offset, however, both by the volume of patients received as well as money received from states and federal governments. (A1588-A1589) Ultimately, as the pandemic continued, the funding by governmental entities tapered off, and healthcare providers' costs significantly increased, particularly employee costs. (A1589-A1590).  The confluence of reduced

12

government funding and increase of costs ultimately caused Alecto's subsidiaries to become unprofitable and eventually insolvent.

As a result, Alecto found itself faced with the choice of either (i) continuing to financially support its affiliates in order to either allow the affiliates to return to profitability or be sold as a going concern, or (ii) allowing the affiliates to fail, in which case, Alecto would be financially responsible for certain affiliates' obligations - either by agreement or by operation of law.  (A1463-A1474)  Alecto estimated those obligations at $30 million, including real estate lease obligations, liability as a guarantor of a potential put option, the potential return of Medicare payments valued at over $5 million, potential payroll liabilities, accrued payroll taxes, paid time off due to employees, and accrued real estate taxes (collectively, the "Springing Obligations"). (A1464-A1474)  Faced with those options, including avoiding liability for the Springing Obligations, Alecto's board decided to continue to fund the affiliates and seek a going-concern sale. (A1301)

In the meantime, on May 11, 2023, the Reed Creditors, obtained a judgment from the United States District Court for the Northern District of West Virginia against Alecto.  On June 1, 2023, the Reed Creditors obtained a writ of execution against Alecto in the total amount of $3,242,498.77 (A0734).

### B.    Alecto's Bankruptcy Filing

Shortly thereafter, Alecto filed its subchapter V bankruptcy petition in the

Bankruptcy Court on June 16, 2023 (the "Petition Date"). Alecto's election to proceed as a small business bankruptcy under subchapter V stemmed from its having less than $7.5 million in liquidated, non-contingent debt as of the Petition Date.

Consistent with that election, on June 30, 2023, Alecto timely filed its *Schedule of Assets and Liabilities* (the "Schedules"). (A0769)  The Schedules included 17 scheduled unsecured creditors, not including affiliates or insiders, holding non-contingent and liquidated claims totaling $3,445,535.47. (A0795-A0804)  When Alecto filed its Schedules, the claim of the Reed Creditors was listed as a non-contingent, liquidated claim.  Alecto scheduled LHP, however, as having a contingent, non-liquidated, and disputed claim in an unknown amount. (A0801)  Thus, Alecto's non-contingent and liquidated claims were well within the then-applicable debt limit of $7,500,000 for subchapter V eligibility.

Various creditors also timely filed proofs of claim, including the Reed Creditors and LHP.  LHP filed a proof of claim for $3,739,635.77 (the "LHP Claim"). (A0290)

### C.    The Designation Motion

On November 2, 2023, the Reed Creditors filed their Designation Motion (A0001), challenging Alecto's subchapter V election.  The Bankruptcy Court and the parties recognized that whether Alecto was eligible for subchapter V relief hinged on the status of the LHP debt.  Indeed, the Bankruptcy Court acknowledged

that "the parties agreed that the LHP debt is the fulcrum and whether that debt is unliquidated or contingent controls the eligibility determination."[5] (A0247)

Alecto's debt to LHP arose from the following circumstances.  On or about September 23, 2014, Alecto Healthcare Services Sherman LLC, an affiliate of Alecto as Purchaser, on the one hand, and Sherman/Grayson Health System, LLC as Seller, and LHP, on the other hand, entered into a purchase agreement pursuant to which the Purchaser acquired 100% of the issued and outstanding membership interests of Sherman/Grayson Hospital, LLC, Sherman/Grayson Health Services, LLC and Sherman/Grayson Sponsor, LLC. In connection with the Purchase Agreement, Alecto executed a guarantee (the "Guarantee") in favor of, *inter alia*, LHP pursuant to which Alecto unconditionally and irrevocably guaranteed the due and punctual payment, performance and discharge of each and every of Purchaser's obligations under the Purchase Agreement. (A1467; generally A0086-A0604)

On January 20, 2021, LHP filed a complaint against the Purchaser and Alecto (among others) in the Superior Court of the State of Delaware. (A0707)  LHP also filed an action against Sherman/Grayson Hospital LLC in Texas state court. (A0019)

---

[5] Notably, while its counsel was present throughout the hearing on the Reed Creditors' Designation Motion, LHP expressly did not take a position on the status of its debt: "Our understanding, clearly, was that the debtor's position with respect to today's motion was because the claim was contingent because no demand had been made . . . We don't take a position on today's hearing, Your Honor, we didn't file a pleading, we don't take a position on the [Reed Creditors'] motion." (B0119-B0120)

On February 16, 2022, LHP, Alecto and Sherman/Grayson entered into a settlement agreement (the "Settlement Agreement"). (A0171-A0179)

Among other things, the Settlement Agreement provided that any future expenses due and owing to LHP, including the future indemnification obligations of Alecto to LHP under Paragraph 6 of the Settlement Agreement, would be payable only under certain specific circumstances. (A0173)

In relevant part, Paragraph 6 of the Settlement Agreement between Alecto and LHP provides, in relevant part, as follows:

> Future Expenses – Alecto Defendants. The Alecto Defendants acknowledge and agree that, absent a resolution with Altera, LHP *may* continue to accrue expenses in connection with the MOB (as defined below), including without limitation in connection with the Lease Agreements (as defined in the Complaint in the Delaware Action) and the Ground Lease Agreement entered effective as of August 21, 2012 between Sherman/Grayson and Altera ("Ground Lease"). Accordingly, the Alecto Defendants agree to the following procedure for payment of Future Expenses: (A0173)
>
> A. LHP shall make written demand upon the Alecto Defendants for a specified amount in accordance with the forbearance schedule set forth in Paragraph 8; (A0173)
>
> B. The Alecto Defendants shall make payment of the specific amount within fifteen (15) days of such demand; (A0173)

Paragraph 8 of the Settlement Agreement, titled "Forbearance on Demand for Future Expenses," provides:

16

> LHP agrees not to make demand for future expenses,
> whether against Alecto Defendants or Sherman/Grayson
> (or if necessary, commence a proceeding pursuant to
> Section 2306 for a judgment by confession) until the
> expiration of one (1) year from the Effective Date.
> Thereafter, LHP may only seek payment of Future
> Expenses every six months from the date of the last
> payment or entry of a confessed judgment, whichever is
> applicable. (A0174-A0175)

Finally, the Settlement Agreement contained the following merger clause,

providing that the Settlement Agreement superseded all prior agreements between

the parties:

> This Agreement and the Exhibits attached hereto set forth
> the entire agreement between the parties and fully
> supersede any and all prior agreements or understandings,
> written or oral, between the parties . . . . (A0177)

Thus, among other things, the Settlement Agreement required that LHP make

a demand for a specific amount before Alecto had any liability. (A0173)

### D.    The Designation Hearing

When the Bankruptcy Court conducted the hearing on the Reed Creditors'

Designation Motion, it had to determine if the LHP debt was either contingent or

unliquidated as of the Petition Date.  If the LHP debt were *either* contingent or

unliquidated, Alecto was eligible to be a subchapter V debtor.

As adduced at the evidentiary hearing, LHP had never made the required

demand for payment.  On direct examination, Mr. Sarrao, testified:

Q.    And after the settlement agreement was reached … did you receive any

17

demand from – did Alecto Healthcare, the debtor, receive any demand from LHP prior to the petition date?

A.      The debtor did not receive any demand. (B0055-B0056)

On cross by the Reed Creditors, Mr. Sarrao reiterated the same position:

A. … But there are certain conditions precedent to those obligations that have not been met.

Q.      And what are the conditions precedent to those obligations that have not been met?

A.      There has to be a demand for payment and there has not been a demand for payment against the Debtor. (B0048)

Accordingly, consistent with the uncontroverted testimony taken at trial, the Bankruptcy Court properly found that LHP had not made any demand for future expenses pursuant to Section 6 of the Settlement Agreement, and that "Unless and until LHP made a specific demand the debtor had no obligation to pay." (A0250) In other words, Alecto's debt to LHP was contingent as of the petition date for eligibility under Subchapter V. That, in and of itself, was dispositive of Alecto's eligibility for subchapter V.

Likewise, the uncontroverted trial testimony established that Alecto's debt to LHP was also unliquidated as of the Petition Date:

A. We didn't know what, if anything, was owed to Altera Highland, LLC [by LHP] because we didn't receive those -- any invoices. (B0046)

A. Whether LHP paid the money, this is the first time I'm seeing it. The first time I saw it was on Saturday. There's the rent under the leases had slight increases, so it changed month to month. And then the records LHP produced show that there's a fluctuation in the amounts, yes. (B0046-B0047)

18

A. We didn't know what the amount of the claim is because the CAM charges are estimated. (B0055)

A. We don't know what's going to happen with respect to re-letting the premises, as well, and it's -- it's variable.  (B0055)

Q. Is there any way, without that demand, that you could have realized -- that you could have known the total amount of the rent, including the CAM charges?

A. No.  (B0056)

Q. Prior to that July -- June 28th or 29th letter, did you or anybody else at the debtor have any reason to know the amount due to LHP?

A No.  (B0058)

Q. So you would not have had a reason to know what the amount was even after the petition date, until June -- the June 28th letter. Is that correct?

A That's correct.  (B0059)

The Bankruptcy Court also rejected the Reed Creditor's argument that underlying documents that LHP might once have had with Alecto remained in effect after the Settlement. (A0250)  Specifically, the Bankruptcy Court found the merger clause in the Settlement Agreement with LHP unambiguous, holding that any prior underlying documents were expressly superseded by the Settlement Agreement – leaving the Settlement Agreement as the only document setting forth the procedures for establishing Alecto's liability.  (A0250)

Following presentation of this evidence, and arguments by counsel for Alecto and the Reed Creditors – the Bankruptcy Court entered the Designation Ruling and Designation Order, holding that "the LHP debt was unliquidated as of the Petition

Date," (A0252), and thereby ruling that Alecto was entitled to proceed as a subchapter V debtor.

### E.    Alecto Appoints an Independent Director

As of the Petition Date, Alecto had an ownership interest in two operating subsidiaries, Sherman/Grayson Hospital, LLC ("Sherman/Grayson") and Alecto Healthcare Services Hayward LLC ("Alecto Hayward") (A0732).

On June 23, 2023, Sherman/Grayson filed its own Chapter 11 bankruptcy in the District of Delaware (A0738).  On August 4, 2023, as a direct result of Alecto's claim in the Sherman/Grayson bankruptcy, Alecto retained Mr. Balasiano as an independent director (A0737; A1173; B0252).  Mr. Balasiano is an experienced attorney and advisor, with over 30 years of experience including serving as a fiduciary in his capacities as a liquidating trustee, plan administrator, and other similar roles that require Mr. Balasiano to evaluate potential claims to determine whether such claims should be brought. (A1353-56; B0255)

To that end, Mr. Balasiano's initial responsibilities specifically included (1) investigating, evaluating, and settling certain (a) claims of Alecto against Sherman/Grayson, (b) disputes between Alecto and the official committee of unsecured creditors appointed in the Sherman/Grayson bankruptcy case, and (2) handling such other issues as may arise in the Chapter 11 Case. (A1356; B0252) Further, Alecto's Board of Managers, officers, and employees consented to provide

Mr. Balasiano with such information and documents as he may request from time to time, and not to interfere or impede Mr. Balasiano's performance of his duties as an independent director/manager. (B0252)

Later, Alecto's Board of Managers, by written consent (A1177), expanded Mr. Balasiano's duties and responsibilities to include investigating potential claims against Alecto's affiliates and insiders, and bringing any such actions as he believed in his sole discretion are valid. (A1357; B0254)  Alecto's Board of Managers, officers, and employees would provide Mr. Balasiano with such information and documents as he may request from time to time and would not interfere or impede Mr. Balasiano's performance of his duties as an independent director/manager. (B0252)  Mr. Balasiano was also empowered to employ his own independent counsel in connection with his exercise of his duties.  (B0254)

### F.    The Reed Creditors Object to Confirmation of the Plan

On February 22, 2024, the Reed Creditors objected to confirmation of Alecto's Plan.  In particular, the Reed Creditors objected that the settlements and releases contained in the Plan would release potential fraudulent conveyance and breach of fiduciary duty claims of the Debtor against Alecto's insiders.

With respect to the alleged fraudulent conveyance, the Reed Creditors' objection focused exclusively upon a transfer of certain membership interests in Sunrise Real Estate Holdings LLC to members of Alecto, who then transferred the

membership interests to Sunrise MOB Holdings, LLC, an entity owned by those members (the "Sunrise Transfer"). The Sunrise Transfer occurred on June 19, 2019 as part of the refinancing of the debt of Plaza Medical Office Building, LLC ("Plaza MOB"), the owner of a medical office building and parking garage in Los Angeles, California. The Reed Creditors' objection to the Plan focused on the perceived lack of Alecto receiving reasonably equivalent value for the transfer, despite that the same property was later transferred back to Alecto for no consideration. The Reed Creditors focused only on that aspect of a claim under the California Uniform Fraudulent Conveyance Act but failed to consider the other elements to avoid a fraudulent conveyance under California law, namely insolvency.

The Reed Creditors' Plan objection also contended there might be claims against Alecto's officers and directors for breach of fiduciary duty, arising from Alecto's advancement of funds to affiliates while Alecto was allegedly insolvent or in the zone of insolvency.

### G.    The Confirmation Hearing

On March 4 and 5, 2024, the Bankruptcy Court held an evidentiary hearing on whether to confirm the Plan. In support of confirmation, Alecto submitted Declarations of Mr. Balasiano (B0250) and Mr. Sarrao. (B0258). Mr. Sarrao's declaration was admitted into evidence. (A1464)  Mr. Balasiano testified that the facts stated in his declaration were true and correct. (A1356)  Four witnesses testified

for Alecto.[6]  No other witnesses were called.

Ms. Gould testified as an expert in forensic accounting.  She was hired by Alecto to review cash transactions between Alecto and its affiliates and insiders in order to identify any potential voidable transfers.  She reviewed over 116,000 transactions over four years as well as compared Alecto's general ledger and bank statements to identify transfers to insiders.  She also reviewed cash flow from two transactions that were identified, one being the Sunrise Transfer  to the Alecto members and the other being a transfer back to Alecto, and cash flows surrounding that.

Ms. Gould also interviewed Mr. Sarrao and Alecto's Chief Financial Officer, Matt Williams, and spoke with Mr. Balasiano (A1327).  She also reviewed Alecto's tax records and financial statements (A1327).  Ultimately, Ms. Gould authored a report based on her investigation which report was entered into evidence without objection (A1328).

Ms. Gould concluded that, of the universe of transfers reviewed, only the 2019 Sunrise Transfer was done for less than reasonably equivalent value. (A1329)  With respect to direct transfers to insiders, Ms. Gould found that those transfers were for reimbursement of legitimate business expenses and/or payroll and benefits.  She

---

[6] One of them, Mr. Jeffrey McCutcheon, an expert in executive compensation, was not cross examined, and his testimony is not the subject of any portion of the Reed Creditors' appeals.

reported those findings to Alecto's independent director, Mr. Balasiano. (A1329)

Consistent with his responsibilities and directions as an independent director, Mr. Balasiano investigated potential claims against Alecto's affiliates and insiders and evaluated the potential to avoid the Sunrise Transfer as an avoidable transfer. (B0254-B0255) During those investigations, Mr. Balasiano requested documents from Alecto, had multiple conferences with Ms. Gould and Mr. Sarrao, as well as with Debtor's counsel, and Mr. Balasiano's own independent counsel. (A1358-A1361; B0254)

After reviewing Alecto's financial records including tax records, reviewing and discussing Ms. Gould's expert report, and after speaking with Mr. Sarrao, and conferring with Debtor's counsel and his own counsel, and in reliance upon the information received, Mr. Balasiano determined as a sound exercise of his business judgment that there were no valid claims against insiders for avoidance of fraudulent conveyances (A1363) or for breaches of fiduciary duty. (A1366-A1368; B0255)

With respect to his determination not to pursue fraudulent conveyance actions, Mr. Balasiano concluded: "In order to bring a fraudulent conveyance action there are two factors. One is there has to be a transfer for lack of reasonably equivalent value and number two, the company has to be insolvent at the time of the transfer. Clearly, the second fact[or] of the test was not satisfied her[e]." (A1363) In particular, Mr. Balasiano testified that his review showed that Alecto was solvent

(i.e. not insolvent) as of the time of the Sunrise Transfer:

> At all times in 2019, this company was solvent. I knew that this company was solvent in 2019 because it was represented to me when we knew that we had a bad transaction -- or not a bad transaction -- a transaction that was made for less than reasonable value. I said, hey, guys, were we solvent at this time, because that's the next question you would ask if you're a practicing lawyer in a bankruptcy context, or an independent director or a liquidating trustee. So that was the question I said, were we solvent? The answer was, yes, we were solvent. (A1372)

At trial, Mr. Sarrao, who has been an officer of Alecto since 2013, and who is a member of the California bar (A1419), ably and credibly provided detailed information about Alecto's finances, its relationship with the Debtor's subsidiaries and their operations. (A1419)  Mr. Sarrao also testified that Alecto's balance sheet showed $18.5 million in equity at the end of 2019 (A1449), and that that both equity and cash balances of Alecto grew throughout 2020.  At the end of 2021, Alecto's balance sheet showed equity of $19.1 million. (A1453)

Importantly, Mr. Sarrao also echoed Mr. Balasiano's testimony that Alecto was not insolvent at the time of the Sunrise Transfer and did not become insolvent as a result of the transaction.  Additionally, he testified that Alecto was paying its debts as they came due:

Q.    Did the Sunrise transfer cause Alecto to be insolvent?

A.    No. (A1456)

Q.    In June of 2019, was Alecto paying its debts as they became due?

A.    It was . . . . (A1456)

A.    My understanding was the debtor was solvent in June 2019.  (A1457)

Having appropriately investigated the Sunrise Transfer and the risks inherent in any litigation, Mr. Balasiano determined, in the appropriate exercise of his reasonable business judgment, that "no actionable cause of action could be brought as a result of that transaction." (A1363)

In evaluating whether viable breach of fiduciary duty claims existed that were worth pursuing, Mr. Balasiano testified that there were none. (A1366)  During his investigation, Mr. Balasiano reviewed Alecto's operating agreement, declarations and documents provided during the bankruptcy, the Sherman/Grayson bankruptcy, and documents relating to the Sherman/Grayson hospital itself.  Ultimately, after discussions with Mr. Sarrao, Debtor's counsel, Mr. Balasiano's own counsel, and Ms. Gould, and reviewing various business records and documents, Mr. Balasiano concluded that there were no breach of loyalty or breach of duty of care by Alecto's directors and officers.  (A1366)

Mr. Sarrao also testified at length about the efforts Alecto's members took to evaluate the Board's decision to continue funding the affiliates – including trying to avoid approximately $30 million of Springing Obligations. (B1463-1474)

In the end, having considered all available information, Mr. Balasiano, as a sound exercise of his reasonable business judgment, concluded:

17030076/10

**JA2858**

> all of the activities that were done, all the funds that were
> allocated to the different subsidiaries, especially to the
> Sherman/Grayson, which I believe is the biggest issue in
> the case right here, right now, especially to the
> Sherman/Grayson were allocated in a fashion with the
> appropriate judicious business judgment. The actions that
> the members took were daily conversations, daily
> decisions that were undertaken in order to keep
> Sherman/Grayson Hospital afloat to enable to sell it as a
> going concern . . . what they were doing over that period
> that we were looking at all the analysis and the
> transactions, they were propping up this company, they
> were keeping it alive, so that it would be able to sustain
> itself, maintain itself, and have the ability to sell it, which
> in fact they were able to do that. And, by doing that, the
> save to this estate was tremendous. There was probably
> close to $30 million in unsecured claims that would have
> hit this Alecto bankruptcy had it not been for the sale of
> Sherman/Grayson. (A1366)

Further, Mr. Balasiano determined that in bringing such actions, Alecto would incur significant costs, including the costs of indemnification of the members and managers' fees and expenses, pursuant to Section 7.8 of Alecto's Amended and Restated Operating Agreement, all of which would significantly reduce Alecto's disposable income to be received under the Plan. (A1368)

As a result, Mr. Balasiano approved the settlement, set forth in the Plan which provided for releases to the insiders in exchange for a payment of $25,000.[7]

Following the conclusion of the evidence on March 5, and the arguments of

---

[7] The consideration received from Alecto's insiders was subsequently increased as a result of Alecto's settlement with the United States immediately prior to confirmation.

27

counsel made at a separate hearing on March 13, 2024 (B0135-B0249), on March 20, 2024, the Bankruptcy Court issued its Confirmation Ruling - a 17 page, single-spaced, written opinion overruling the Reed Creditors' objections to confirmation (A1608-1624).  On April 14, 2024, the Bankruptcy Court issued the Confirmation Order (A1627-A1654) confirming the Plan.  On April 19, 2024, the Reed Creditors Appealed the Confirmation Order. (A1952)

## ARGUMENT

I.    **THE BANKRUPTCY COURT CORRECTLY FOUND, BASED ON THE EVIDENCE PRESENTED, THAT ALECTO MET THE SUBCHAPTER V DEBTOR ELIGIBILITY REQUIREMENTS**

In enacting Subchapter V, Congress made available to small businesses who seek bankruptcy relief various benefits available to Chapter 11 debtors that would be otherwise unavailable.  The criteria for eligibility for Subchapter V are set forth in Section 1182(1) of the Bankruptcy Code, 11 U.S.C. § 1182(1).  Broadly stated, a company is eligible if, collectively, *certain types* of its debt are at or below an amount specified in the statute.   It is uncontroverted that the statutory cap level was $7,500,000 on the Petition Date.

The phrase used in § 1182(1) to identify the point in time at which the debtor's aggregate noncontingent, liquidated, and non-insider-or-affiliate debt must be at or below the stated cap level is "as of the date of the filing of the petition."

The Small Business Reorganization Act having only became effective in February 2020 [*supra* n.1], the reported case law construing § 1182(1) is limited. That said, courts presented with this issue have all construed the phrase "as of the date of the filing of the petition," as used in § 1182(1), to mean "on the petition date," for purposes of fixing the temporal point at which the debts includable in the aggregate debt for eligibility purposes need to be *both* noncontingent and liquidated.

Among other things, courts have noted the similar construction of the phrase

"as of the commencement of the case," as used in 11 U.S.C. § 541(a)(1), where it is used in determining what constitutes "property of the estate." *See e.g.*, *In re Parking Mgmt., Inc.*, 620 B.R. 544, 552 (Bankr. D. Md. 2020) (comparing the language in §§ 541 and 1182). In § 541, "[t]he phrase 'as of' places a temporal limitation on the reach of the bankruptcy estate…. It 'establishes a clear-cut date after which property acquired by the debtor will normally not become property of the bankruptcy estate.'" *Id*. at 552 (quoting *In re Chernushin*, 911 F.3d 1265, 1269 (10th Cir. 2018)). Courts have also recognized that an alternative construction would be problematic. "If postpetition affiliate filings lead to ineligibility and revocation, it means that debtors could float in and out of Subchapter V at any time. That contradicts the text and purpose of Subchapter V." *In re Free Speech Sys., LLC*, 649 B.R. 729, 734 (Bankr. S.D. Tex. 2023).

Bankruptcy Code § 109(e), the provision governing eligibility for Chapter 13 relief, uses language that is comparable to the language in § 1182(1). The slight variation in the language used the two sections has been deemed insignificant. "The court finds no discernible difference in this language, considering how the phrase 'as of,'" as used in the Bankruptcy Code, "is interpreted by the courts" in other Code provisions such as § 541(a). *Parking Mgmt., Inc.*, 620 B.R. at 551–52. "The ... plain language of § 109(e) requires consideration of the debts as they exist as of the petition date, *irrespective of postpetition events*." *Id.* at 554 (emphasis added)

(applying that same construction to Subchapter V eligibility under § 1182(1)); *see also In re Slack*, 187 F.3d 1070, 1073 (9th Cir. 1999) (construing 11 U.S.C. § 109(e) to mean that "the amount of the debt is determined *as of* 'the date of the filing of the petition.'") (emphasis added); *In re Harwood*, 519 B.R. 535, 539 (Bankr. N.D. Cal. 2014) ("Under the plain language of 11 U.S.C. § 109(e), post-petition events are not considered in the eligibility determination.").[8]

## A.    The Bankruptcy Court Correctly Concluded that Alecto's Debt to LHP Was Contingent as of the Petition Date

The Reed Creditors challenged Alecto's subchapter V eligibility based on the level of its debt. Their challenge was based not on Alecto's debt to themselves, but rather its debt to LHP. Two months after the Petition Date, LHP filed a proof of claim against Alecto in the amount of $3,739,635.77. The Reed Creditors argued that Alecto's debt to LHP should have been included in the calculation of the debt when determining Subchapter V eligibility – an issue on which LHP itself notably took no position. (B0119-B0120). However, the evidence at trial established that the debt to LHP was both contingent and unliquidated on the Petition Date. The Bankruptcy Court, after considering all the evidence, rightly rejected the Objection.

In attempting to draw the LHP claim into the aggregate debt calculation, the Reed Creditors rely upon events and developments that occurred *after* the Petition

---

[8] Sections 109(e) and 1182(1) also both use the terms "noncontingent" and "liquidated" and "debt" – all as discussed *infra*.

Date.  The Bankruptcy Court properly rejected their attempt to do so.  (A0250-0252) (crediting testimony that critical events for determining whether the claim was contingent or unliquidated occurred no earlier than June 28, 2023 – twelve days *after* the Petition Date -- and expressly holding that the LHP debt therefore "was unliquidated as of the petition date").

Alecto's debt to LHP arises from a Settlement Agreement that was entered into in February 2022 between and among LHP, Alecto Sherman, and Alecto.  As discussed above, LHP brought a suit against Alecto Sherman and Alecto in January 2021 in Delaware Superior Court, in connection with a 2014 agreement in which LHP sold to Alecto Sherman the membership interests in certain entities that owned and operated a medical facility in Sherman, Texas.  In the 2014 agreement, Alecto Sherman undertook an obligation to LHP with respect to the varying amounts that LHP would come to owe to a landlord, Altera Highland LLC, under a set of leases for space in a medical office building owned by Altera Highland.  Alecto furnished LHP a guarantee of Alecto Sherman's obligations.  Ultimately, that suit was resolved by the parties' entry into the Settlement Agreement.

As previously noted, the merger clause in the Settlement Agreement (the "Merger Clause"), states that:

> This agreement and the exhibits attached hereto set forth the entire agreement between the parties and fully supersede any and all prior agreements or understandings, written or oral, between the parties.

The Bankruptcy Court appropriately cited the well-established principle of contract law, in Delaware (and elsewhere), that "parties to an original contract 'may agree that a mere subsequent contract to perform some specified act will be accepted in full performance and satisfaction of the pre-existing duty.' If the parties intend for the new agreement to abrogate the former contract, the parties may seek remedies only under the latter agreement." (A0249) (quoting *CitiSteel USA, Inc. v. Connell Ltd. P'ship*, 758 A.2d 928, 931 (Del. 2000)).

The Bankruptcy Court properly concluded that the Merger Clause was "unambiguous," as a matter of law. (A0252). In turn, "the court [reviewed] the LHP debt in the context of the Settlement Agreement." (A0250) "Where … a contract is unambiguous, it is appropriate for the court to determine its meaning as a matter of law." *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1073 (3d Cir. 1996); *see also Fesnak & Assocs., LLP v. U.S. Bank Nat. Ass'n*, 722 F. Supp. 2d 496, 500–01 (D. Del. 2010) ("Under Delaware law, the interpretation of contract language is a question of law…. A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction.").[9]

Construing the Settlement Agreement, including the Merger Clause, the Bankruptcy Court properly concluded that it amended and superseded all prior

---

[9] Notably, while the Reed Creditors argue that the Settlement Agreement is ambiguous, they are not a party to it. LHP, a party, has never asserted that argument.

agreements. (A0250) As such, the Bankruptcy Court rejected the Reed Creditors'

attempt to disregard the Merger Clause and proceed as though the Settlement

Agreement did not exist and the 2014 agreements remained fully in force. (A0250)

In their appeal, much of the Reed Creditors' arguments about the LHP claim remain

tied to the 2014 agreement and guarantee, without reference to the Settlement

Agreement. Appellants' Opening Brief states that "the Reed Creditors believe that"

the Bankruptcy Court's determination that the Settlement Agreement superseded

Alecto's guarantee "was erroneous." RC Brief, p. 35.[10] But the Reed Creditors offer

no argument and no case law in support of that belief. They then declare that the

Settlement Agreement "has no relevance" to determining whether the claim was

"liquidated" [*id.* at 36], while wholly disregarding its relevance to whether the LHP

claim was *contingent* on the Petition Date.

In construing the Settlement Agreement, the Bankruptcy Court found, based

on the undisputed evidence, and properly concluded that it:

> provides a procedure for payment of future expenses as
> defined in the settlement agreement from the Alecto
> Defendants to LHP. Specifically, the settlement agreement
> at Paragraph 6(a) provides that LHP "Shall make a written
> demand upon the Alecto Defendants for a specified
> amount". *Unless and until LHP made a specific demand
> the debtor had no obligation to pay*.

---

[10] Citations to Appellants' Opening Brief will be referred to herein as "RC Brief,
p. ___."

(A0250) (emphasis added).  In other words, the Bankruptcy Court concluded that, under the Settlement Agreement, a requisite condition before Alecto (or Alecto Sherman) had an obligation to pay was that LHP needed to make a specific demand for payment.

As the Bankruptcy Court found, the testimony established that LHP never made a demand upon anyone for payment in connection with its claim until June 28, 2023 – twelve days *after* the Petition Date – when LHP submitted its payment demand to Alecto Sherman (but not to Alecto itself, to avoid violating the automatic stay). (A0252)  Further, LHP's counsel, who attended the hearing, did not argue otherwise.   Indeed, vis-à-vis Alecto, LHP's June 28, 2024 demand to Alecto Sherman specifically disclaimed that it was making any demand upon Alecto: "LHP is not by this letter making demand under the Agreement or otherwise on [Alecto]." (A0197).   Accordingly, independent of the analysis of when the LHP claim became *liquidated*, the LHP claim was *contingent* as of the Petition Date, and the contingency -- the demand requirement – had not yet occurred "as of the Petition Date."

The terms "noncontingent" and "liquidated" are both used in § 109(e), in connection with the eligibility requirements for Chapter 13 debtors, as well in § 1182(1), for Subchapter V eligibility, so courts construing those terms as used in § 1182(1) have looked to case law under § 109(e) for guidance.  *See, e.g., In re Zhang*

35

*Med. P.C.*, 655 B.R. 403, 408, n.5 (Bankr. S.D.N.Y. 2023) ("The Court is aware of no reason why the Second Circuit's construction of the terms 'noncontingent' and 'liquidated' as used in § 109(e) should be any less applicable to those terms as used in § 1182(1)(A).").

"It is generally agreed that a debt is contingent if it does not become an obligation until the occurrence of a future event." *In re Mazzeo*, 131 F.3d 295, 303 (2d Cir. 1997). "A debt is contingent where 'the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'" *In re Fradkov*, 2020 WL 6701335, at *1 (Bankr. D.N.J. Nov. 12, 2020) (quoting *In re Weiss*, 251 B.R. 453, 465 (Bankr. E.D. Pa. 2000)). "[N]oncontingent debts are those where 'all events necessary to give rise to liability take place prior to filing the petition.'" *In re Ibbott*, 637 B.R. 567, 575 (Bankr. D. Md. 2022) (quoting *In re Green,* 574 B.R. 570, 576–77 (Bankr. E.D.N.C. 2017)).

Courts also recognize that "[m]any *post*-petition actions could result in contingent claims becoming noncontingent *after* the case is filed." *In re Parking Mgmt., Inc.*, 620 B.R. at 554 (emphasis added). "Postpetition events should not be considered in determining eligibility. To hold otherwise would mean that a debtor could float in and out of Chapter 13 eligibility during the course of a case, depending on what happens, which of course makes no legal or practical sense." *In re West*,

2017 WL 746250, at *16 (Bankr. W.D. Mo. Feb. 24, 2017); *see also Matter of Belt*, 106 B.R. 553, 558-59 (Bankr. N.D. Ind. 1989) (finding creditor's claim remained contingent as of the petition date "because no legal duty to pay" had yet arisen).

Plainly, making demand for payment a condition for the obligation to pay is enforceable. *See, e.g.*, *In re Rosenberg*, 414 B.R. 826, 844 (Bankr. S.D. Fla. 2009). *subsequently aff'd,* 472 F. App'x 890 (11th Cir. 2012). In *Rosenberg*, the bankruptcy court wrote:

> The claim against Rosenberg is, without dispute, contingent. The contingent nature of the purported claim is demonstrated in the Second Bucks County Petition. As set forth therein, *a demand for payment must be made upon Rosenberg before any liability matures* under the Limited Guaranty. *Likewise*, the confession of judgment as to Rosenberg contains a restriction or condition that *judgment may be confessed only upon a default* under the Limited Guaranty *and only after providing Rosenberg with written demand for payment* and the opportunity to cure such default. Thus, a default … and demand for payment are the *required extrinsic events which must occur before Rosenberg's liability, if any, is triggered*. … Because no demand for payment was formally made upon Rosenberg and no opportunity to cure was provided to him, there is no default … [and] … any claim against Rosenberg grounded on the Limited Guaranty is, at best, inchoate.

*Rosenberg*, 414 B.R. at 844 (emphasis added); *cf. In re Rea Keech Buick, Inc.*, 139 B.R. 625, 629 (Bankr. D. Md. 1992) ("[a]ny common law or statutory right to reclaim goods sold in the ordinary course of business *is contingent upon* (the seller) *making a written demand* within ten days of the Debtor's receipt of the goods.")

(emphasis added) (internal citations omitted).

The Reed Creditors present *no* challenge to the Bankruptcy Court's implicit conclusion that the LHP claim was contingent on the Petition Date, when it concluded that "[u]nless and until LHP made a specific demand the debtor had no obligation to pay." Instead, they focus only on the Bankruptcy Court's holding that the LHP was unliquidated on the petition date. *See* RC Br., pp. 27-28. That the Bankruptcy Court did not expressly apply the term "contingent" to its finding is immaterial. This court "may affirm a judgment on any ground apparent from the record, even if the [lower] court did not reach it." *Oss Nokalva, Inc. v. Eur. Space Agency*, 617 F.3d at 761.

### B. The Bankruptcy Court Correctly Concluded that Alecto's Debt to LHP Was Unliquidated as of the Petition Date

The Bankruptcy Court properly held that "the LHP debt was unliquidated as of the Petition Date" (A0252). This conclusion was amply supported by the case law and the evidence adduced at the hearing. In their appeal from that ruling, the Reed Creditors (a) ignore the significance of the Settlement Agreement, and the rights and obligations set forth in it, as superseding those in the 2014 agreement and guaranty[11]; and (b) express their disagreement with the Bankruptcy Court's findings

---

[11] The Reed Creditors acknowledge that a major factor in the Court's ruling was the fact that the Settlement Agreement superseded the 2014 agreement and guarantee, and then baselessly declare it "has no relevance." RC Brief, pp. 35-36.

of fact on this issue, principally by disputing the credibility of the only witnesses who testified regarding Subchapter V eligibility, although the Bankruptcy Court did find them credible and referenced their testimony in its ruling.  The Reed Creditors' arguments are meritless.

In the analysis of this issue, this Court should bear in mind that, per § 1182(1), the question is whether Alecto's *debt* to LHP was liquidated on the Petition Date; not LHP's *claim*.  In reference to Chapter 13, eligibility, it has been observed that "Congress made a conscious choice when it employed the term 'debt' instead of 'claim' in the context of Section 109(e)." *In re Lambert*, 43 B.R. 913, 919 (Bankr. D. Utah 1984).  "['C]laim' has a broader significance, referring to a creditor's demand for payment, regardless of the existence or validity of the underlying obligation or to the accuracy of the amount demanded, while 'debt' has a narrower significance …." *Id.* at 918.  Congress defined the term "debt" to mean "liability on a claim." 11 U.S.C. § 101(12).  The term "claim" is defined far more broadly, to mean "right to payment, whether or not such right is … liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed …." 11 U.S.C. § 101(5).  "The term 'claim' was avoided because the Congress did not wish the … eligibility determination … to be predicated upon the mere demands of creditors."[12]

---

[12] Thus, giving consideration to a creditor's proof of claim, as urged by the Reed Creditors, is of no utility in addressing the state of a debtor's liquidated, noncontingent debt on the petition date in a case such as this where there was no

*Lambert*, 43 B.R. at 919. "[A]gain, for purposes of Subchapter V and Chapter 13 eligibility, only debts that are contingent or unliquidated are excluded from the computation." *In re Heart Heating & Cooling, LLC*, 2024 WL 1228370, at *8 (Bankr. D. Colo. Mar. 21, 2024).

The Reed Creditors acknowledge judicial interpretation of the term "liquidated." *See* RC Br., pp. 28-29. "[C]ourts have generally held that a debt is liquidated if its amount is readily and precisely determinable." *In re Burdock & Assocs., Inc.*, 662 B.R. 16, 20 (Bankr. M.D. Fla. 2024). "A liquidated debt is that which has been made certain as to amount due by agreement of the parties or by operation of law." *Id.* (citation omitted).[13] As courts generally hold, the key factor is whether the "debt is readily determinable only if the process of determining the claim is fixed, certain, or otherwise determinable by a specific standard." *In re Adams*, 373 B.R. 116, 120 (B.A.P. 10th Cir. 2007); *see also In re Parking Mgmt., Inc.*, 620 B.R.

---

date upon which the debt would be determined and the "demand" had not yet occurred as of the Petition Date. The Reed Creditors' cases are inapposite: two involved tax debt, one involved a banks secured debt on a business loan, and one involved a residential mortgage. RC Brief, p.36.

[13] Similarly to the instant case, a creditor in the *Burdock & Assocs.* case objected to the debtor's eligibility for Subchapter V, arguing that Burdock's debt to it was not unliquidated but rather was based on the parties' contract and capable of simple calculation. 662 B.R. at 17-18. Burdock argued, *inter alia,* that the debt was unliquidated because the calculation would require looking beyond the parties' contract. *Id.* The court agreed with the debtor. "The fact that Paydirt's claim arises out of a contract between the parties is not enough to conclude it is liquidated." *Id.* at 18.

40

at 559 (same).

But the Reed Creditors do not focus on *Alecto's debt* to LHP. Rather, they assert that the payments that LHP *owed to the landlord*, Altera, under the Lease Agreements for space in the Medical Office Building could be "precisely calculate[d]." RC Brief, p. 30. Even if that assertion were clearly and overwhelmingly borne out by the evidence presented at the hearing (which it was not), it is insufficient to establish that Alecto's debt to LHP was liquidated on the Petition Date, because it ignores the Settlement Agreement, which altered the parties' obligations.[14]

It is undisputed that LHP had not made demand for payment prior to the Petition Date; and the evidence established that Alecto had no basis for determining when such demand would be made, or how much it might be. The Reed Creditors' repetitive discussion of calculations under the LHP Lease Agreements fails to acknowledge this basic fact. The Bankruptcy Court credited the testimony of Mr. Sarrao that, "prior to the June 28th 2023 [i.e. post-petition] demand letter to the non-debtor Alecto Defendants, at Exhibit 13, the debtor was unaware of the exact amount

---

[14] The Reed Creditors' argument would not be approved even if there were validity to ignoring the Settlement Agreement and treating Alecto's guarantee as though it remained in force (which it does not). "Courts have held that liability on a guaranty is a 'classic example' of a contingent debt." *In re Fradkov*, 2020 WL 6701335, at *1 (Bankr. D.N.J. Nov. 12, 2020), citing *In re Pennypacker*, 115 B.R. 504, 507 (Bankr. E.D. Pa. 1990).

41

due to LHP." (A0252)

Given the vagaries of *when* a demand might be made, and what expenses might be included in the demand, the Bankruptcy Court was justified in concluding that "the LHP debt was unliquidated as of the petition date." *Id.* Accordingly, this Court should reject the Reed Creditors' appeal from that ruling.

## II. THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION WHEN IT APPROVED THE SETTLEMENT WITH THE RELEASED PARTIES AS A COMPONENT OF THE PLAN

### A. Section 1123(b)(3)(A) Permits a Plan to Provide for Releases of Alecto's Claims

Section 1123(b)(3)(A) provides that a chapter 11 plan, including a plan proposed by a Subchapter V debtor, may "(3) provide for – (a) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."

Here, the Reed Creditors' stated issues on appeal from the Confirmation Order all relate to their objections to Alecto's settlement with the parties to the Sunrise Transfer, as well as releases of breach of fiduciary duty claims. RC Brief, pp. 4-5. Further in their brief, the Reed Creditors frame this as an objection to Alecto's release of its claims against the Released Parties (as defined in the Plan) (A0730). RC Brief, p. 37. However, none of the Appellants' arguments are specific to the releases.

The Plan provided for the settlement of alleged fraudulent conveyance claims and breach of fiduciary duty claims against Alecto's insiders. These were claims

that belonged to Alecto and its bankruptcy estate and the Reed Creditors do not argue

otherwise.[15]  In challenging that component of the Plan, the Reed Creditors refer to

and rely on an incomplete and thus inaccurate representation of the applicable

standard of review, as they make no mention whatsoever of the "abuse of discretion"

standard that applies to this Court's review of the Bankruptcy Court's decision to

approve the settlement.  Rather, the Reed Creditors focus on issues that have no

material bearing on the Bankruptcy Court's exercise of discretion to approve the

settlements.

The Appellants assert that the only applicable standard here is that the

Bankruptcy Court's factual findings should be reviewed for clear error, while

conclusions of law are reviewed de novo. RC Br., pp. 4-5.  That is incorrect.

> Courts in this district have held that a bankruptcy court's
> decision should not be overturned based upon an abuse of
> discretion 'unless there is a definite and firm conviction
> that the court below committed a clear error of judgment
> in the conclusion it reached upon a weighing of the
> relevant facts.' … Thus, 'a decision should not be
> overturned under the abuse of discretion standard, unless
> *no reasonable person would adopt the lower court's view*.'

*In re LandSource Communities Dev., LLC*, 612 B.R. 484, 493 (D. Del. 2020) (*aff'd*

*sub nom. LandSource Communities Dev. LLC v. Citizens Against Corp. Crime, LLC*,

834 F. App'x 747 (3d Cir. 2020)) (*quoting In re SemCrude, L.P.*, 428 B.R. 590, 593

---

[15] Any direct claims not belonging to Alecto or its estate were not released.

(D. Del. 2010) (emphasis in original)); *see also In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) ("We review the District Court's approval of the settlement for an abuse of discretion.").

Regardless, nothing in the Appellants' brief suggests that the Bankruptcy Court's factual findings were clear error or that the Bankruptcy Court abused its discretion in approving the settlement and releases.

**B.**    **The Reed Creditors Imply, Without Support, a Far Steeper Burden of Proof for the Bankruptcy Court to Approve the Settlement and Releases than Settled Case Law Requires**

The Reed Creditors' repeated references in their brief to burdens of proof and the Alecto's witnesses not being insolvency experts or obtaining an expert insolvency opinion ignores the duties placed upon the Bankruptcy Court when considering whether to approve a settlement.

First, when considering a settlement, a bankruptcy court need not probe the merits of all claims or conduct a "mini-trial" before approving the settlement; rather, avoiding litigating the issues is one of the main advantages of settlement. *See, e.g., In re Key3Media Grp., Inc.,* 336 B.R. 87, 93 (Bankr. D. Del. 2005); *see also Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586-87 (7th Cir. 1994); *In re Martin*, 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997) (noting it is "not necessary for a bankruptcy court to conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute,

for by so doing, there would be no need of settlement"). Courts normally "defer to the trustee's judgment so long as there is a legitimate business justification." *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996).

Moreover, "[u]nder Bankruptcy Rule 9019(a), the Bankruptcy Court is not required to conduct a full evidentiary hearing as a prerequisite to approving a compromise. *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010); *see also In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D.N.J. 2000) (stating that when deciding whether to approve a proposed compromise in a bankruptcy, the court is not to conduct a "mini-trial on the merits"). Rather than deciding "questions of law or fact raised by litigation," courts "should canvas the issues to determine whether the settlement falls above the lowest point in the range of reasonableness." *Capmark,* 438 B.R. at 515.

> In determining whether the Settlement is above the lowest point in the range of reasonableness, this Court must consider the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin,* 91 F.3d at 393; *accord In re Nutraquest, Inc.,* 434 F.3d at 644–45.

*Id.* Here, the question for the Bankruptcy Court was whether Alecto's settlement with the Released Parties of potential claims, as set forth in the Plan, was supportable.

C. **The Reed Creditors' Challenges to the Quality of the Evidence Presented by Alecto – as to the Potential Viability of Causes of Action against Insiders and as to Solvency at the Time of the Sunrise Transfer - Are Meritless**

The Reed Creditors argue at length that the Bankruptcy Court erred in how it construed the documentary evidence, erred in finding Alecto's witnesses credible, and erred in finding its conclusions about the potential causes of action against Alecto's insiders to be reasonable. RC Br., pp. 41-47. Upon scrutiny, those arguments all fail.

1. The Bankruptcy Court Properly Canvassed the Issues, Considered the *Martin* Factors and Appropriately Exercised Its Discretion to Approve the Settlements and Confirm the Plan.

The Bankruptcy Court considered the evidence, including Mr. Balasiano's business judgment separately as to both the potential fraudulent conveyance action, and the potential claims for breach of fiduciary duty. As the Bankruptcy Court noted in its opinion, Mr. Balasiano believed after conducting his investigation and as a sound exercise of his business judgment, that the settlement should be approved because the, among other things, he concluded that Alecto was not insolvent at the time of the Sunrise Transfer. Mr. Balasiano testified, and the Bankruptcy Court considered, Alecto's 2019 balance sheet and tax return – prepared *after* the Sunrise Transfer - indicated that Alecto's assets well-exceeded its liabilities. Likewise, Mr. Sarrao – Alecto's general counsel and Executive Vice President for 12 years testified that Alecto was not rendered insolvent by the Sunrise Transfer and was able to pay

46

its debts as they came due.  As such, the Bankruptcy Court's conclusion that "[n]o evidence was presented that Alecto intended or, in fact, would become insolvent as a result of the Sunrise Transfer" (A1615) was eminently appropriate and well within the Bankruptcy Court's discretion.

The Reed Creditors' assertion that the Bankruptcy Court legal erred by placing an affirmative burden on them to prove Alecto's solvency is both a misrepresentation of the applicable standard and a misreading of the Bankruptcy Court's decision, or is, at most, harmless error.

As a prefatory matter, no fraudulent transfer action was initiated, and therefore no party bore the burden of *proving* solvency or insolvency.  Rather, Alecto's burden was to prove that the independent director's judgment was reasonable in approving the settlement with the Released Parties that exceeded the lowest point in the range of reasonableness.  As component of that judgment, Mr. Balasiano needed to assess the likelihood that Alecto could prove insolvency if it were to undertake pursuit of a fraudulent transfer action.  Mr. Balasiano conducted an appropriate investigation, including reviewing Alecto's financial documents and conferring with Mr. Sarrao, Ms. Gould, Alecto's expert witness, Alecto's bankruptcy counsel, and his own counsel.  Based upon that investigation, Mr. Balasiano concluded that Alecto appeared to be solvent when the Sunrise Transfer took place, just short of four years

before the Petition Date – and therefore, that Alecto would not be able to prove *insolvency*.

Understanding that a plaintiff bringing a hypothetical fraudulent conveyance claim under California law would bear the burden of proving insolvency, the Bankruptcy Court's reference to the Reed Creditors "not carry[ing] their burden to prove by a preponderance of the evidence that Alecto was insolvent at the time of the Sunrise Transfer" (A1617) merely reflects that – in the face of Alecto's credible evidence on its solvency in June 2019 – it was then up to the Reed Creditors as the party challenging Alecto's evidence and conclusion from it, to come forward with contrary evidence to support their opposing position. It is a common evidentiary practice that, once one side has satisfied its burden, the other side needs to come forward with evidence of its own. *See, e.g., In re Lenox Healthcare, Inc.*, 343 B.R. 96, 107 (Bankr. D. Del. 2006) (in a summary judgment motion, "[i]f the moving party satisfies its burden, the burden then shifts to the non-moving party 'to come forward with persuasive evidence'"); *United States v. State Street Bank & Tr. Co.*, 520 B.R. 29, 87 (Bankr. D. Del. 2014) (where a proof of claim had *prima facie* validity, the objecting party had "the burden of coming forward with evidence to rebut" it). Here, where the Bankruptcy Court characterized this shift as a "burden to prove," it should be reasonably construed to reflect that the Reed Creditors failed to come forward with evidence to rebut Alecto's evidence and conclusion on solvency.

To the extent that the Bankruptcy Court's phrasing might be viewed as off the mark, it was harmless error; the Bankruptcy Court knew it was evaluating a settlement, not trying a fraudulent conveyance action.[16]   In that respect, this appeal is comparable to the one in *In re Summit Metals, Inc.*, 477 F. App'x 18, 21 (3d Cir. 2012). (rejecting creditor's appeal from bankruptcy court's approval of a settlement).

In *Summit Metals,* the appellant, Ambrose Richardson, claimed that the Bankruptcy Court's decision was "perfunctory" [a charge that could *not* plausibly be applied to the Bankruptcy Court's decision in the instant case],  and that, "in approving the … settlement, the Bankruptcy Court failed to properly consider the factors enunciated by this Court in *In re Martin* for evaluating a settlement between an estate and an adverse party."   *Summit Metals, Inc.*, 477 F. App'x at 20.   In its ruling in the appeal, the Third Circuit wrote:

> While we realize that Appellant may have desired a more thorough discussion of the *Martin* factors …, the fact remains that the Bankruptcy Court addressed each of the factors after the issues surrounding acceptance of the settlement were fully briefed and argued by the parties. . .
>
> … [W]e find that to remand the case to the Bankruptcy Court would prove needlessly futile and would result in a waste of judicial resources ….   While a remand might cause the Bankruptcy Court to more explicitly tailor its

---

[16] The Bankruptcy Court made this amply clear, in footnote 59 to the opinion, in writing: "The Court is *not* assessing the merits of the Sunrise Transfer (nor the 2021 return transfer). Here, the Court is determining whether the settlement of the causes of action in the Releases (in exchange for the Settlement Consideration) is in "the lowest range of reasonableness."" (A1617) (emphasis in original).

analysis to the *Martin* factors, we are confident that the outcome would remain unchanged.

*Id*. at 21-22.

In the Bankruptcy Court's consideration of whether the settlement of possible breach of fiduciary duty claims was within the lowest range of reasonableness, the Bankruptcy Court likewise evaluated the considerable testimony of Messrs. Balasiano and Sarrao on how and why Alecto's directors and officers did not breach fiduciary duties when they made decisions to continue to advance funds to Alecto's affiliates:

(a) Alecto Managers spoke nearly every business day regarding the oversight and management of the business and were aware of the harm to Alecto if it stopped funding the affiliates.

(b) A going concern sale of WNJ was much more valuable than a liquidation – a fact the Court noted was borne out by a subsequent sale of WNJ in the Sherman/Grayson bankruptcy.

(c) Doing so avoided some $30 million in Springing Obligations to Alecto, including:

   a. Real estate lease obligations of $7.2 million

   b. Alecto's liability as a guarantor of a potential put option if WNJ failed to operate – valued at $13-15 million.

   c. Potential return of Medicare payments to CMS if WNJ did not pay them – valued at over $5 million.

   d. $800,000 of potential payroll liabilities if WNJ did not pay.

   e. $1 million in accrued payroll taxes.

   f. $775,000 in paid time off that would impact Alecto if WNJ closed.

   g. $500,000 in accrued real estate taxes if WNJ closed.

   h. If WNJ closed, approximately $3 million in wind-down costs that would fall to Alecto.

     i.   $1 million of personal property taxes would fall to Alecto.

     j.   Avoidance of $3 to $3.2 million of WARN Act claims if WNJ closed without advance notice.  (A1463-A1474)

The testimony was uncontroverted that Alecto's board and officers considered each of these factors in the reasonable exercise of their business judgment in the first instance, and that the independent director considered them when he considered the proposed settlement and release.

The Bankruptcy Court, in canvassing all of the issues relevant in its consideration of whether the settlement of the potential fiduciary duty claims fell within the lowest range of reasonableness appropriately held: "There is no evidence that the Alecto Managers did not consider all information reasonably available to them, or that they were negligent in determining whether to make transfers to Sherman/Grayson.  Similarly, no evidence was presented that the managers acted in their own self-interests rather than the interests of the Debtor."  (A1621)

    2.    <u>Appellants Assert, Erroneously and Without Support, that Expert Testimony on Solvency Was Required</u>

The Reed Creditors assert, without legal basis, that because Alecto did not obtain an expert solvency analysis report, it therefore failed to address solvency as a component of the potential fraudulent transfer claims Alecto was evaluating.  RC Brief, pp. 40-41.  In turn, the Reed Creditors question the Bankruptcy Court's reliance on the testimony of Mr. Balasiano and Mr. Sarrao: "[n]either Mr. Balasiano

nor Mr. Sarrao is a financial expert nor qualified to render an opinion on insolvency," and "no testimony was presented that either Mr. Balasiano or Mr. Sarrao considered anything other than the facial numbers on the Debtor's balance sheets." RC Brief, p. 40. Those arguments are fruitless. Nowhere do the Reed Creditors remotely assert that the Bankruptcy Court's consideration of their testimony was such that "no reasonable person would adopt the Bankruptcy Court's view."

Rather, the Reed Creditors' focus on the qualifications of Alecto's witnesses ignores that, especially in light of the deferential standard noted above: "[T]he law does not require compliance with generally accepted accounting principles in performing a solvency analysis." *In re Commercial Financial Servs., Inc.*, 2005 WL 6499290, at *10 (Bankr. N.D. Okla. Sept. 14, 2005), citing *Official Asbestos Claimants' Committee v. Babcock & Wilson Co. (In re Babcock & Wilson Co.),* 274 B.R. 230, 260 and n.237 (Bankr. E.D. La. 2002), and cases cited therein.

Nor are experts needed. *In re Isom*, 2020 WL 1950905, at *2 (B.A.P. 9th Cir. Apr. 22, 2020), *aff'd,* 836 F. App'x 562 (9th Cir. 2020)) (Bankruptcy Appellant Panel affirmed the bankruptcy court's approval of settlement by trustee over objection that trustee had not engaged a solvency expert); *see also In re LuMee LLC*, 2023 WL 8888840, at *6 (Bankr. D. Utah Dec. 22, 2023) ("[E]xpert testimony is not necessary to reach a determination regarding [Products of Tomorrow, Inc's] solvency"); *In re DeVries*, 2014 WL 4294540, at *18 (Bankr. N.D. Tex. Aug. 27, 2014) (accepting

trustee's contention that "expert testimony is not required to make a determination regarding a debtor's solvency at the time of challenged transfers").

Substantively, as to whether Alecto considered the probability of success in the litigation, the evidence supports – and the Bankruptcy Court found – that the independent director *had* considered this factor when evaluating the settlement. Specifically, Mr. Balasiano testified that, in his opinion – particularly because "In order to bring a fraudulent conveyance action there are two factors.  One is there has to be a transfer for lack of reasonably equivalent value and number two, the company has to be insolvent at the time of the transfer.  Clearly, the second fact[or] of the test was not satisfied her[e]."  (A1363) He concluded, and the Bankruptcy Court found credible his consideration that "there is no actionable cause of action that could be brought" for fraudulent conveyance.  (A1363)

While the Reed Creditors argue that "the Debtor's limited solvency analysis comes nowhere close to establishing that Alecto was solvent at the time of the Sunrise Transaction," [RC Brief, p. 47], that misses the point.  Alecto was not charged with bringing a fraudulent conveyance claim; it was charged with trying to settle the claim "within the lowest range of reasonableness."  This unequivocally confirms that Mr. Balasiano considered the probability of success in litigation.  The Reed Creditors just do not like the conclusion.  That is not error at all.  Nor have they established – or can they establish – that "no reasonable person would adopt the

Bankruptcy Court's view" of the evidence, as is necessary to find that the Bankruptcy Court abused its discretion.

### D. The Bankruptcy Court Properly Approved the Settlement and Confirmed the Plan Whether under *Coram Healthcare*, *Martin* or *Zenith*.

The Reed Creditors concede that the Bankruptcy Court cited the correct factors for determining whether to approve a settlement. They merely challenge the Bankruptcy Court's consideration of those factors.

First, they posit that the Bankruptcy Court "erroneously concluded there was not a probability of success in the fraudulent conveyance action." RC Brief, p. 48. For all the foregoing reasons, the Reed Creditors' conclusory statement is wrong.

Second, they end their brief with an unsupported conclusion that "the Bankruptcy Court failed to consider the other factors including the cost of the litigation, the likelihood of collection and the paramount interests of the creditors. Accordingly, the Bankruptcy Court misapplied the factors for approval of the settlement." The Reed Creditors' failure to explain their circular reasoning is telling.

Not only did the Bankruptcy Court explain its findings in detail, it did so not only under the *Martin* factors, but under the Third Circuit's *Zenith* test as well – something the Reed Creditors fail to cite or mention.

Regarding the *Martin* factors the Bankruptcy Court held:

> Under the *Martin* factors, the claims have very little probability of success on the merits, if any. Absent the

54

settlement, the debtor would face increased expense, inconvenience and delay attending to litigation. These are complex claims that could cause delay in distribution of assets to the creditors. Additionally, the creditors will receive the Settlement Consideration as part of the disposable income of the debtor. There was no evidence regarding the possibility of collection on any judgment, so this factor is neutral. The other three *Martin* factors weigh in favor of approving the settlement.

The Bankruptcy Court didn't stop there. The Bankruptcy Court evaluated the settlement and releases under the *Zenith* test. *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999). That test requires that a bankruptcy court consider the following five factors:

1. An identity of interest between the debtor and non-debtor such that a suit against the non-debtor will deplete the estate's resources;

2. a substantial contribution to the plan by the non-debtor;

3. the necessity of the release to the reorganization;

4. the overwhelming acceptance of the plan and release by creditors and interest holders;

5. the payment of all or substantially all of the claims of the creditors and interest holders under the plan.

As the Bankruptcy Court noted, no one factor is dispositive nor is the plan proponent required to establish each factor for the release to be approved. (A1621)

The Bankruptcy Court determined that factor 1 was neutral. The Bankruptcy Court asserted that the potential right of indemnification by the potential targets of litigation under the Debtor's operating agreement was "subject to debate." (A1621)

The Bankruptcy Court also found factor 4 neutral "because no creditors voted to accept or reject the Plan." (A1621)  The Bankruptcy Court found that factor 2 weighed in factor of the releases because the "Released Parties are contributing the Settlement Consideration for distribution to the creditors under the Plan." (A1622) In particular, the Bankruptcy Court found that Mr. Balasiano determined "in his business judgment that the alleged claims were not actionable; under the circumstances, the Bankruptcy Court finds the contribution to be substantial.  With respect to factor 3, the Bankruptcy Court held that "uncontroverted testimony established that, absent the releases, Alecto would not proceed with the Plan.  If this case is converted to Chapter 7, the Liquidation Analysis reflects no recovery for unsecured creditors." (A1622)

Factor 5, the Bankruptcy Court found, weighed against the releases. (A1622) The Bankruptcy Court determined that while other creditors will receive payment in full, those in Class 3 will receive a pro rata recovery over a three-year period." (A1622)  Nonetheless, the Bankruptcy Court properly held that, "[o]n balance, the *Zenith* factors favor approval of the Debtor Releases." (A1622)

The Reed Creditors appeal – including their Opening Brief – take no issue with, and do not even mention, *Zenith*, or the Bankruptcy Court's conclusions thereunder. They have waived their right to challenge the Bankruptcy Court's *Zenith* holding on appeal.  As the Third Circuit has stated repeatedly, an issue not raised in

an appellant's opening brief on appeal is waived. *See, e.g., F.D.I.C. v. Deglau,* 207

F.3d 153, 169-170 (3d Cir. 2000) (citing *Brenner v. Local 514, United Brotherhood

of Carpenters,* 927 F.2d 1283, 1298 (3d Cir.1991)).

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons, the Bankruptcy Court's Designation Ruling,

Designation Order, Confirmation Ruling, and Confirmation Order should be

affirmed.

Dated: November 27, 2024          **MORRIS JAMES LLP**

         */s/ Carl N. Kunz, III*
         Carl N. Kunz, III (No. 3201)
         Jeffrey R. Waxman (No. 4159)
         Douglas N. Candeub (No. 4211)
         Christopher M. Donnelly (No. 7149)
         500 Delaware Avenue, Suite 1500
         Wilmington, DE  19801
         Telephone: 302-888-6800
         Facsimile: 302-571-1750
         Email: ckunz@morrisjames.com
             jwaxman@morrisjames.com
             dcandeub@morrisjames.com
             cdonnelly@morrisjames.com

         *Counsel for Appellee*

# CERTIFICATE OF COMPLIANCE

I am one of the attorneys representing the appellee, Alecto Healthcare Service LLC.

**This responsive brief contains 12,993 words**, excluding the items exempted by Fed. R. Bankr. P. 8015(g). The brief's type size and typeface comply with Fed. R. Bankr. P. 8015(a)(5) and (6).

I certify that this brief:

(a) Complies with the 13,000-word length limit pursuant to Federal Rule of Bankruptcy Procedure 8015(a)(7);

(b) Complies with the brief requirements designated by this Court's order dated August 14, 2024 [Dk. No. 8].

Dated:  November 27, 2024
         Wilmington, Delaware

**MORRIS JAMES LLP**

/s/ *Carl N. Kunz, III*
Carl N. Kunz, III (No. 3201)
Jeffrey R. Waxman (No. 4159)
Douglas N. Candeub (No. 4211)
Christopher M. Donnelly (No. 7149)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
Telephone: 302-888-6800
Facsimile: 302-571-1750
Email: ckunz@morrisjames.com
        jwaxman@morrisjames.com
        dcandeub@morrisjames.com
        cdonnelly@morrisjames.com

*Counsel for Appellee*

# IN THE UNITED STATE DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Alecto Healthcare Services LLC, | ) | Case No. 23-10787 (JKS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| The Reed Action Judgement Creditors, | ) | Civil Action No. 1:24-cv-00494-GBW |
| | ) | |
| | ) | Bankruptcy BAP No. 23-65 |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Alecto Healthcare Services LLC, | ) | |
| | ) | |
| Appellee. | ) | |

## <u>APPELLANTS' REPLY BRIEF</u>

Dated:  December 18, 2024

**SULLIVAN · HAZELTINE · ALLINSON LLC**
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
    whazeltine@sha-llc.com

and

Bren J. Pomponio, Esq.
Colten L. Fleu, Esq.
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Tel: (304) 326-0188
Email:  colten@msjlaw.org
          bren@msjlaw.org

and

John Stember, Esq.
Maureen Davidson-Welling, Esq.
Stember Cohn & Davidson-Welling, LLC
The Harley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
Tel: 412-338-1445
Email:jstember@stembercohn.com
          mdavidsonwelling@stembercohn.com

*Counsel for The Reed Action*
*Judgment Creditors*

# TABLE OF CONTENTS

*Page*

I.    Alecto was not eligible to be a subchapter V debtor .......................................1

A. The LHP Claim was not contingent ...........................................................1

B. The LHP Claim was liquidated ..................................................................5

II.   The Confirmation Order should be reversed ................................................10

A. The Reed Creditors correctly state the standard of review .....................10

B. Despite Debtor's efforts to downplay approval requirements, courts must "carefully" review compromise and make informed, independent judgment ...................................................................................................12

C. The Debtor bore the burden of proof on the insolvency issue ................14

D. Mr. Balasiano's testimony on solvency was not credible ........................17

E. The Debtor's evidence was insufficient to establish a *prima facie* case that the Debtor was solvent at the time of the Sunrise Transfer ....................19

F. The Bankruptcy Court erred by misapplying the factors for approval of a settlement...........................................................................................21

Conclusion ............................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

*Page*

## <u>Cases</u>

*Barcal v. Laughline (In re Barcal)*, 213 B.R. 1008 (B.A.P. 8th Cir. 1997) ..............6

*Braniff Airways, Inc. v. Exxon Co., U.S.A*, 814 F.2d 1030 (5th Cir. 1987)...............3

*In re Am.'s Ins. Ctr., Inc.*, No. 20-1506, 2021 WL 3560668,
    (3d Cir. Aug. 12, 2021)......................................................................................12

*In re Ashing Corp.*, 552 B.R. 80 (D. Del. 2015)....................................................10

*In re Fostvedt*, 823 F.2d 302 (9th Cir. 1987) ...........................................................6

*In re Hall*, 650 B.R. 595 (Bankr. M.D. Fla. 2023) ...............................................6, 7

*In Re LandSource Communities Dev., LLC*, 612 B.R. 484 (D. Del. 2020).............10

*In re McKenzie Contracting, LLC*, Case No. 8:24-bk-01255-RCT,
    2024 WL 3508375 *1, Colton, J. (Bankr. M.D. Fla. 2024).................................7

*In re Mitchell*, 255 B.R. 246 (Bankr. D. Mass 2000) ...............................................6

*In re Nortel Networks, Inc.*, 669 F.3d 128 (3d Cir. 2011) .................................10, 11

*In re Nutraquest, Inc.*, 434 F.3d 639 (3d Cir. 2006)..........................................11, 13

*In re O'Brien Env't Energy, Inc.*, 188 F.3d 116 (3d Cir. 1999) ..............................10

*In re Promise Healthcare Group, LLC*, No. 18-12491, 2023 WL 3026715,
    (Bankr. D. Del. Apr. 20, 2023) ............................................................................8

*In re Pulliam,* 90 B.R. 241 (Bankr. N.D. Tex. 1988) ...............................................4

*In re Rosenberg*, 414 B.R. 826 (Bankr S.D. Fla. 2009)............................................3

*In re SemCrude, L.P.*, 428 B.R. 590 (D. Del. 2010)...............................................10

JA2894

*In re Sullivan*, 245 B.R. 416 (N.D. Fla. 1999)............................................................7

*In re Summit Metals, Inc.*, 477 F. App'x 18 (3d Cir. 2012) ..............................16, 17

*In re Taylor*, No. 08-00526-JDP, 2008 Bankr. LEXIS 2313
    (Bankr. D. Idaho July 25, 2008) .............................................................4

*In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011) ....................15

*In re Wilson*, 9 Bankr. 723 (Bankr. E.D.N.Y. 1981) .................................................5

*In re Zhang Medical P.C.*, 655 B.R. 403 (Bankr. S.D.N.Y. 2023) ..........................7

*Myers v. Martin (In re Martin),* 91 F.3d 389 (3d Cir. 1996))...........................13, 14

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968)...............................................................................13, 14

*Sexton v. Dreyfus,* 219 U.S. 339, 344-345, 31 S. Ct. 256, 55 L. Ed. 244 (1911).......8

## Statutes

11 U.S.C. § 1182(1)(A)...............................................................................................1

## Other Authorities

Cal. Civ. Code § 3439.02(a) ....................................................................................19

The Debtor's Response Brief fails to provide legal or factual support for the Bankruptcy Court's erroneous decisions that the Debtor was eligible to be a subchapter V Debtor and that the Debtor's settlement of fraudulent transfer claims against its insiders in connection with the confirmation of its plan meets the established criteria for approval of such settlements, as set forth below.

## I.  Alecto was not eligible to be a subchapter V debtor.

As of the Petition Date, Bankruptcy Code Section 1182(1)(A) defined a Subchapter V "debtor" as:

> [A] person engaged in commercial or business  activities . . . that has ***aggregate non-contingent liquidated secured and unsecured debts*** as of the date of the filing of the petition or the date of the order for relief in an amount ***not more than $7,500,000****….*

11 U.S.C. § 1182(1)(A) (emphasis supplied). The Reed Creditors submitted evidence that the filed and scheduled liquidated and non-contingent claims against the Debtor totaled $7,890,536.14, including the claim filed by LHP Hospital Group ("LHP") for $3,739,653.77. LHP Hospital Group, Inc. Claim No. 15-1. Appendix Ex. 9, A0290 – 378.

### A. The LHP Claim was not contingent.

Although the Bankruptcy Court's designation decision rested on a finding that the LHP Claim was unliquidated [Opening Brief, pp. 27-28, citing 12/1/31 Tr. at 8:14-22, A.0252], Debtor's Response Brief recognizes that this conclusion is unsupportable under the legal standards for evaluating whether a claim is liquidated

and instead argues that this Court may affirm the Bankruptcy Court's decision on the grounds that the LHP claim was contingent. See Resp. Br. at p. 38 ("That the Bankruptcy Court did not expressly apply the term 'contingent' to its finding is immaterial. This Court 'may affirm a judgment on any ground apparent from the record, even if the [lower] court did not reach it.'") The Debtor's argument on appeal is that the LHP Claim was contingent because the LHP Settlement Agreement provided that LHP would make a demand before Alecto had the duty to pay. This is based on the Bankruptcy Court's erroneous conclusion that "Unless and until LHP made a specific demand the debtor had no obligation to pay." 12/1/2023 Tr. 6:22 - 25. Appendix Ex. 4, A250.

The fact that an agreement provides for a demand before payment is due does not render the underlying obligation contingent until a demand is made.

The Settlement Agreement only provided a *procedure* for payment:

Accordingly, the Alecto Defendants agree to the following procedure for payment of Future Expenses.

A. LHP shall make written demand upon the Alecto Defendants for a specified amount in accordance with the forbearance schedule set forth in Paragraph 8….

[Settlement Agreement, Bankr. Ct. Docket No. 226-3, ¶ 6]. This procedure for payment did not create the Debtor's liability—it only established a procedure to determine when payment must be made. The Debtor's liability to LHP arose upon Sherman/Grayson's breach of the Lease Agreements and increased monthly with

each payment made by LHP on its own guarantee. There is nothing in the Settlement Agreement that conditions Alecto's obligation on a demand for payment. *See Braniff Airways, Inc. v. Exxon Co., U.S.A.,* 814 F.2d 1030, 1036 (5ᵗʰ Cir. 1987) ("The debt owed … does not have to be calculated prior to the filing of the bankruptcy petition[.] … The debt was absolutely owed; it just was not due until a calculation of the amount … was made.")[1]

The facts here differ significantly from the facts in the *Rosenberg* case, the sole authority relied upon by the Debtor to support its contention that the LHP claim was contingent without a payment demand. [Resp. Br., pp. 37-38]. In *In re Rosenberg*, the underlying agreement specifically conditioned the debtor's obligation on a demand for payment and an opportunity to dispute: "[A] demand for payment must be made upon Rosenberg before any liability matures under the Limited Guaranty." 414 B.R. 826, 844 (Bankr. S.D. Fla. 2009). Accordingly, the court ruled that the claimant had no liability to Rosenberg. In contrast, the LHP Settlement Agreement expressly eliminated the Debtor's right to dispute the obligation as long as LHP made the payments it sought to recover and the Settlement

---

[1] Consider a residential mortgage obligation where the mortgagee agrees to send the borrower monthly mortgage statements; if the mortgagee fails to send a monthly statement, does that mean the mortgage obligation is contingent and the borrower is not obligated until such time as he receives a statement? Of course not.

3

Agreement provided a right of judgment by confession if the Debtor did not pay the amounts specified.  [Settlement Agreement, Bankr. Ct. Docket No. 226-3, ¶ 6].

Typically, with a guaranty agreement, the guarantor's liability attaches at the time of default on the debt the guarantor has guaranteed:

> A guaranty of payment, which is also known as an absolute guaranty, requires the guarantor to pay immediately upon the principal obligor's default. The guarantor's liability attaches upon the primary obligor's default even if the guarantor is not given notice of the default. *United States v. Little Joe Trawlers, Inc.*, 776 F.2d 1249, 1253 (5th Cir. 1985). "[The] demand [for payment] serves solely as a request for payment as opposed to the creation of liability." *In re Wilson*, 9 Bankr. 723, 725 (Bankr. E.D.N.Y. 1981). An absolute guaranty ceases to be contingent upon the principal obligor's default.

*In re Pulliam*, 90 B.R. 241, 243 (Bankr. N.D. Tex. 1988); *see also In re Taylor*, No. 08-00526-JDP, 2008 Bankr. LEXIS 2313, at *10 (Bankr. D. Idaho July 25, 2008) ("An absolute guaranty is an 'unconditional undertaking on the part of the guarantor that he will pay the debt or perform the obligation immediately upon the debtor's default . . . .'").

Moreover, a demand for payment in a guaranty agreement does not create the liability, the default of the principal obligor does.

> That the Bank did not make a demand for payment until March 28, 2008 is of no moment. As this Court recently explained, a demand for payment is not essential to the existence of liability for a guaranteed debt. Debtors were liable for the entire outstanding principal balance and accrued interest and late fees the moment Raftis defaulted on its obligation.

4

*Id.* at *12; *see also, e.g.*, *In re Wilson*, 9 B.R. 723, 725 (Bankr. E.D.N.Y. 1981) ("The demand serves solely as a request for payment as opposed to the creation of liability.").

When Sherman/Grayson ceased payments to the Landlord and vacated the office suites subject to the Lease Agreements, LHP's obligation to satisfy Sherman/Grayson's obligations under the Lease Agreement kicked in, as did the Debtor's obligation to reimburse LHP for the amounts LHP paid to the landlord. The Bankruptcy Court's finding that the procedure for payment by the Debtor, which included a demand by LHP, created the liability on the guaranty recognized by the Settlement Agreement, was clearly erroneous.  Accordingly, the Debtor's reliance on that finding to demonstrate that the LHP obligation was contingent as of the petition date is misplaced.

### B. The LHP Claim was liquidated.

The Debtor continues the Bankruptcy Court's conflation of the noncontingent and liquidated debt analysis in its backhanded efforts to support the Bankruptcy Court's conclusion that the LHP Claim was unliquidated.  A careful reading of the Debtor's Brief reveals that the Debtor argues the LHP Claim was not liquidated because the Claim was contingent. *See* Appellee's Br. at 41-42 ("Given the vagaries of *when* a demand might be made, and what expenses might be included in the demand, the Bankruptcy Court was justified in concluding that "the LHP debt was

unliquidated as of the petition date."). As demonstrated below, the Debtor's analysis

rests on the flawed conclusion that its knowledge on the petition date of the amount

due is relevant to the determination.

All Parties agree a claim is liquidated if (i) it is subject to ready determination

and precision in computation of the amount due, and (ii) the amount due can be

readily ascertained either by reference to an agreement or by simple mathematics.

*See*, *e.g.*, *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987); *In re Mitchell*, 255 B.R.

246, 360 (Bankr. D. Mass 2000).

> "[C]ourts have generally held that a debt is liquidated if its amount is
> readily and precisely determinable, where the claim is determinable by
> reference to an agreement." *United States v. May*, 211 B.R. 991, 996
> (citing *Collier on Bankruptcy*, 15th Ed. at 1109.06[2][c] (March 1997)).
> Ordinarily, debts of a contractual nature are "subject to ready
> determination and precision in computation of the amount due" and,
> therefore, are considered liquidated, even if subject to a substantial
> dispute. *Barcal v. Laughlin (In re Barcal)*, 213 B.R. 1008, 1014 (B.A.P.
> 8th Cir. 1997).

*In re Hall*, 650 B.R. 595, 599 (Bankr. M.D. Fla. 2023); *see also Barcal v. Laughlin*

*(In re Barcal)*, 213 B.R. 1008, 1014 (B.A.P. 8th Cir. 1997) ("a disputed contract

liability was liquidated even though adjudication of the debt required submission of

evidence at trial.").

Debtor does not dispute the amount of the LHP Claim or the calculation of

that Claim. Rather, Debtor argues that the Claim cannot be calculated by reference

to the original guaranty agreement because that agreement was superseded by the

6

Settlement Agreement. However, the guaranty is undeniably **an** agreement, and the Court may look to the agreement in order to determine if the amount of the LHP Claim is "readily precise and determinable." *In re Hall*, 650 B.R. at 599. Debtor's argument – and the Bankruptcy Court's decision finding that the Settlement Agreement superseded the guaranty agreement – are red herrings. To be sure, the fact that the Settlement Agreement superseded the guaranty is, as the Reed Creditors have explained, irrelevant. [Opening Brief, pp. 35-37]. The guaranty agreement may be referenced in order to calculate the amount of the LHP Claim.

Moreover, the Debtor's argument that the LHP Claim was unliquidated because the Debtor was unaware of the exact amount due to LHP [Resp. Br. pp. 41 – 42] is meritless. As discussed in the Opening Brief, the Debtor's lack of knowledge of the amounts owed to LHP is simply not relevant to the determination of whether the LHP Claim was liquidated. *See* Opening Brief at pp. 30-32, citing *In re Hall,*[2] *In re Sullivan,*[3] *In re Zhang Medical P.C.,*[4] *In re McKenzie Contracting, LLC.*[5] Rather, the amount of the LHP Claim was readily calculable from the Lease Agreements and readily available documentation regarding the amounts due to the Landlord under the Lease Agreements.

---

[2] 650 B.R. 595, 600 (Bankr. M.D. Fla. 2023).

[3] 245 B.R. 416, 418 (N.D. Fla. 1999).

[4] 655 B.R. 403, 409 (Bankr. S.D.N.Y. 2023).

[5] *In re McKenzie Contracting, LLC*, Case No. 8:24-bk-01255-RCT, 2024 WL 3508375 *1, Colton, J. (Bankr. M.D. Fla. 2024).

The Debtor attempts to draw a distinction between the terms "debt" and "claim" to skirt the fact that the analysis of its debts on the petition date requires the consideration of proofs of claim filed by creditors. [Resp. Br., pp. 39-42]. To the extent there is a distinction, it is meaningless in this case, as the Debtor's only expressed challenge to the LHP claim is that it did not know its precise amount on the petition date. The assertion of a claim by the claims bar date is not a post-petition event that changes the nature of the claim asserted from contingent to liquidated; it is in fact compliance with the obligations imposed on creditors as a result of the filing of the petition, the imposition of automatic stay and the Bankruptcy Court's desire to treat all creditors equally. *See In re Promise Healthcare Group, LLC*, No. 18-12491, 2023 WL 3026715 *5, (Bankr. D. Del. Apr. 20, 2023), citing *Sexton v. Dreyfus,* 219 U.S. 339, 344-345, 31 S. Ct. 256, 55 L. Ed. 244 (1911). Consistent with that purpose, Bankruptcy Code section 502(b)(1) requires that the amount of all claims be determined "in lawful currency of the United States as of the filing of the petition." *Id*. *4. While the eligibility determination is not based on the allowance of claims, the Bankruptcy Code recognizes that filed claims relate back to the petition date. This principle eliminates the Debtor's nonsensical position that it can claim lack of knowledge as of the petition date of certain debts (despite actual knowledge when claims are filed) to avoid counting them for the subchapter V eligibility determination.

8

The determination of whether a debtor is eligible to proceed under subchapter V of the Bankruptcy Code is not an academic exercise, as it has significant implications for the terms of a plan that can be confirmed and the conduct of the case. Pursuant to 11 U.S.C. § 1191, the plan of a subchapter V debtor does not need to follow the absolute priority rule as long as it meets the fair and equitable requirements of that section and does not discriminate unfairly as to each impaired class of claims and interests. This permits the shareholders of a subchapter V debtor to retain their interests in the company without paying unsecured creditors in full. In addition, no creditors committee is formed in a subchapter V case, which means that any objecting creditor must fund its own challenges to the Debtor's plan or actions taken in its case. Furthermore, only a creditors committee can seek standing to pursue causes of action for breach of fiduciary duties by a Debtor when a Debtor declines to pursue them. These provisions of subchapter V afforded the Debtor in this case significant benefits and advantage for which it was not eligible.

Based on the foregoing, the Bankruptcy Court erred in ruling the LHP Claim was unliquidated and that the Debtor was eligible to be a subchapter V debtor. This Court should reverse the Bankruptcy Court and remand the case to the Bankruptcy Court for further proceedings consistent with its status as a regular chapter 11 debtor, not a subchapter V debtor.

## II.    <u>The Confirmation Order should be reversed.</u>

### A.  The Reed Creditors correctly state the standard of review.

The Debtor contends that the Reed Creditors offer an "incomplete" standard of review for appeal of the Confirmation Order and "focus on issues that have no material bearing" on the Bankruptcy Court's "exercise of discretion."[6] Resp. Br. 43. These contentions are disingenuous and lack merit.

As an initial matter, the Reed Creditors properly stated the standard for review of a bankruptcy court's order. *See* Opening Brief, pp. 4-5; *In re Ashing Corp.*, 552 B.R. 80, 83 (D. Del. 2015) (explaining reviewing court applies a "clearly erroneous" standard to findings of fact, a plenary standard to legal conclusions, and for mixed questions of law and fact, the court must accept findings of historical or narrative facts unless clearly erroneous, but exercises plenary review of the bankruptcy court's choice and interpretation of legal precepts and its application of those precepts to the historical facts); *In re Nortel Networks, Inc.*, 669 F.3d 128, 136 (3d Cir. 2011) (describing standard of review).[7]

---

[6] The Debtor cites *In Re LandSource Communities Dev., LLC*, 612 B.R. 484 (D. Del. 2020) and *In re SemCrude, L.P.*, 428 B.R. 590 (D. Del. 2010), but these cases do not concern Rule 9019(a) or review settlements of claims.

[7] The standard of review is also sometimes described as: "we review the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof. …A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." *In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999) (int. cit. om.).

The Debtor asserts that this is not the "only applicable standard," Resp. Br., p. 43, and points out that Reed Creditors' appeal includes portions of the Confirmation Order dealing with settlement and release of claims against insiders, and that such settlements under Bankruptcy Rule 9019(a) are reviewed under an abuse of discretion standard. Resp. Br., pp. 43 - 44. However, this distinction does not meaningfully change the standard of review applicable to the Bankruptcy Court's findings and analysis here, as Third Circuit precedents illustrate.

For instance, in *In re Nutraquest, Inc.*, 434 F.3d 639 (3d Cir. 2006), a case that the Debtor cites, the Court of Appeals for the Third Circuit reviewed a lower court's approval of a bankruptcy settlement, including application of the "'fair and equitable' rubric as well as the *Martin* factors to approve the settlement." *Id.* at 645. There, the Third Circuit acknowledged that it was applying a type of "abuse of discretion" standard, but further explained:

> We do not "disturb an exercise of discretion unless there is a definite and firm conviction that the court ... committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors."…*Put another way, for us to find an abuse of discretion the District Court's decision must rest on "a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." Id. (internal quotation marks omitted).*

*In re Nutraquest*, 434 F.3d at 645 (emph. supp.) (int. citations and internal quotes omitted). This standard is strikingly similar to the general standard of review of bankruptcy court orders. *See, e.g., In re Nortel Networks, Inc.*, 669 F.3d at 136.

Specifically, the same types of errors (*i.e.*, clearly erroneous finding of fact, error of law, and error in application of law to fact) will *both* violate the general "standard of review" applicable to bankruptcy court orders *and* give rise to an abuse of discretion for purposes of settlements governed by Rule 9019(a). *See, e.g., In re Am.'s Ins. Ctr., Inc.*, No. 20-1506, 2021 WL 3560668, at *1-2 (3d Cir. Aug. 12, 2021) (vacating settlement where "court based its approval on a factual premise that is not supported by the record" undermining determination of fairness).

Thus, the Debtor's criticism that the Reed Creditors "focus on issues that have no material bearing on the Bankruptcy Court's exercise of discretion." Resp. Br., p. 43, is groundless and far off the mark. To the contrary: by pointing to clear errors of fact, errors of law, and errors in the application of law to historical/narrative facts in the Confirmation Order, the Reed Creditors highlight the very material issues that support reversal of the Confirmation Order under all applicable standards.

## B. Despite Debtor's efforts to downplay approval requirements, courts must "carefully" review compromises and make informed, independent judgments.

To downplay deficiencies in the Confirmation Order, the Debtor proclaims that bankruptcy courts need not "probe the merits," nor conduct a "mini-trial" or "full evidentiary hearing" when reviewing a settlement to determine if it falls in the "range of reasonableness." Resp. Br., pp. 44 - 45. Yet, these claims are overstated; Bankruptcy Rule 9019(a) by its terms normally requires a "hearing", *id.*, and it

12

remains the bankruptcy court's duty to conduct an informed, independent assessment of all relevant facts before approving any compromise.

Indeed, "the unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them." *In re Nutraquest*, 434 F.3d at 644. Under Rule 9019(a), bankruptcy courts have a duty to make an informed, independent judgment that a compromise is fair and equitable before approving it. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). In making this determination, a bankruptcy court must consider, "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393

Moreover, as the Supreme Court emphasized in *TMT Trailer Ferry*,

There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*TMT Trailer Ferry*, 390 U.S. at 424–25; *see also In re Martin*, 91 F.3d at 393 (bankruptcy court "must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.").

Thus, in *TMT Trailer Ferry*, the Supreme Court refused to grant approval of a compromise and remanded where the record was "devoid of facts which would have permitted a reasoned judgment that the claims of actions should be settled" or on what terms, 390 U.S. at 440-441, and where the insolvency determination was not made in accordance with applicable standards. *Id.* at 441 ("Since the determination of insolvency was not made in accordance with the proper standards of valuation, neither the approval nor the confirmation of the plan can stand.").

In short, notwithstanding the Debtor's narrow characterizations, the law requires a robust, legally-sound, fact-based analysis.

### C. The Debtor bore the burden of proof on the insolvency issue.

The sole issue on appeal from the Confirmation Ruling is whether the Bankruptcy Court erred in approving the releases of the Released Parties in consideration for the nominal payment of $25,000 (the "Insider Releases").

The Bankruptcy Court approved the Insider Releases as a settlement under Bankruptcy Rule 9019 based on application of the *Martin* factors. *See In re Martin*, 91 F.3d 389 (3d Cir. 1996). The Bankruptcy Court's primary error in applying the *Martin* factors was its finding that the potential fraudulent transfer claims against the

14

Alecto Members "have very little probability of success on the merits, if any." Confirmation Ruling p. 15. Appendix Ex. 51, A1622. In reaching this conclusion, the Bankruptcy Court found that "the Reed Creditors did not carry their burden to prove by a preponderance of the evidence that the Debtor was insolvent at the time of the Sunrise REH Transfer." Confirmation Ruling p. 10. Appendix Ex. 51, A1617. However, as discussed in the Opening Brief, it was the Debtor, not the Reed Creditors, who bore the burden of proving that the settlement regarding the Plan Releases fell above the lowest range of reasonableness. *See, e.g., In re Washington Mutual, Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011).

While acknowledging its burden of proving that the settlement fell above the lowest range of reasonableness, the Debtor argued in its Response Brief that neither party bore the burden of proof on solvency or insolvency because no fraudulent transfer claim was initiated. Resp. Br. p. 47. But this argument misses the mark. The Bankruptcy Court placed great weight on its conclusion that the potential fraudulent transfer claim had "very little probability of success on the merits." Moreover, it reached this conclusion by improperly placing the burden of proof on the probability of success on the merits on the Reed Creditors rather than the Debtor.

The Debtor attempts to analogize this case to cases where (i) a party moving for summary judgment meets its burden of proof, shifting the burden of persuasion to the other party (*In re Lenox Healthcare, Inc.*, 343 B.R. 96 (Bankr. D. Del. 2006))

15

or (ii) a claimant submits a proof of claim sufficient to establish the *prima facie* validity, shifting the burden to the objecting party to rebut the *prima facie* validity (*United States v. State Street Bank & Tr. Co.*, 520 B.R. 29 (Bankr. D. Del. 2014)). [Resp. Br. p. 48]. These cases are inapposite because, unlike here, the burden of proof shifted from the party with the initial burden of proof to the party not bearing the initial burden of proof. By contrast, in this case, the Bankruptcy Court never ruled that the Debtor met its initial burden of proof. Rather, it simply found that the Reed Creditors did not satisfy their burden of proving that the Debtor was insolvent at the time of the Sunrise REH Transfer. As discussed in the Opening Brief [pp. 44 – 47] and in Section II D, below, the Debtor failed to present evidence sufficient to establish that the Debtor was not insolvent at the time of the Sunrise Transfer. Accordingly, the Court erred in finding that potential fraudulent transfer claim had "very little probability of success on the merits."

The Debtor also argues that "to the extent that the Bankruptcy Court's phrasing might be viewed as off the mark, it was harmless error; the Bankruptcy Court knew it was evaluating a settlement, not trying a fraudulent conveyance action." Resp. Br. p. 49. Rather than explaining how its argument is relevant, the Debtor cites to *In re Summit Metals, Inc.*[8] as an analogous case. It is not.

---

[8] 477 F. App'x 18, 21 (3d Cir. 2012).

The issues on appeal in *Summit Metals*, as explained in the Response Brief, were (i) whether the bankruptcy court's decision approving a settlement was perfunctory and (ii) whether it "failed to properly consider the factors enunciated … in *In re Martin* for evaluating a settlement between an estate and an adverse party." Resp. Br. p. 49. That is not the issue here. Rather, the issue is whether the Bankruptcy Court erred as a matter law in putting the burden of proof of insolvency on the Reed Creditors. Here, it erred as a matter of law because the Debtor, not the Reed Creditors, had the burden of proving that the settlement of the Insider Releases should be approved.

### D.    Mr. Balasiano's testimony on solvency was not credible.

The Bankruptcy Court erred in relying on Mr. Balasiano's testimony on the solvency issue because his testimony was not credible. As discussed in the Opening Brief, Mr. Balasiano testified that he was unable to determine when he concluded that the Debtor was solvent at the time of the Sunrise Transfer. Opening Brief pp. 41-43, citing to March 4 Tr. 102:10-14, Appendix Ex. 49, A1385; *id*. at 88:9-89:24, A1371-72. More troubling, it appears that Mr. Balasiano's conclusion was based almost entirely on his discussions with the Debtor's professionals and Mr. Sarrao, a target of the potential fraudulent conveyance claim, rather than his own independent determination. *See id*.

17

The record reveals that Mr. Balasiano relied exclusively on Mr. Sarrao in reaching his conclusion that the Debtor was solvent at the time of the Sunrise Transfer. The Debtor submitted Mr. Sarrao's declaration in support of confirmation of the plan on February 29, 2024. Sarrao Declaration. Appendix B Ex. 4, B0258 - 0736. Mr. Sarrao's declaration contains his analysis regarding the Debtor's solvency at the time of the Sunrise Transfer. *Id.* ¶¶ 72 – 76. B0283 – 0284. In his analysis, Mr. Sarrao opined that the Debtor was solvent in 2019 and 2020 based on his review of balance sheets and tax returns. *Id.*

The Debtor also submitted the declaration of Mr. Balasiano in support of confirmation of the plan on February 29, 2024. Balasiano Declaration. Appendix B, Ex. 3, B0250 – 0257. Although Mr. Balasiano asserted in his declaration that the Debtor was solvent at the time of the Sunrise Transfer, he failed to provide any support for his assertion. *See Id*. ¶ 19. B0255. At the confirmation hearing, however, Mr. Balasiano testified that the Debtor was solvent based on his review of the Debtor's balance sheets and tax returns, merely echoing Mr. Sarrao's declaration. March 4 Tr. 89: 11 – 24, Appendix Ex. 49, A1372. The limited evidence presented makes clear that rather than discharge his fiduciary duty to render an independent judgment on solvency, Mr. Balasiano relied exclusively on information and opinion provided to him by Mr. Sarrao.

### E. The Debtor's evidence was insufficient to establish a *prima facie* case that the Debtor was solvent at the time of the Sunrise Transfer.

Section 3439.02(a) of California Uniform Voidable Transfer Act provides in relevant part that "[a] debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets." Cal. Civ. Code § 3439.02(a). As discussed in the Opening Brief, determining fair valuation requires more than simply reviewing balance sheets and tax returns. Opening Brief pp. 38 – 39. Rather, determining a fair valuation requires thorough analysis including the reduction of the face value of assets, especially assets that may be difficult to monetize. *Id.*

The Debtor, in relying solely on balance sheets and tax returns in determining the Debtor's solvency, did not perform a fair valuation. And the Debtor made no attempt to otherwise establish fair valuation of Alecto's assets and liabilities as of June 19, 2019. For example, as set forth in the Opening Brief (pp. 44 – 47), Mr. Sarrao testified at the sale hearing that,

- The Debtor made loans to its affiliates, including $60,000,000 to Sherman Grayson from 2014 to 2019 booked on the Debtor's balance sheets that Mr. Sarrao conceded that Sherman Grayson has been unable to pay back,[9] which he did not record or note in his solvency analysis.

- The Debtor failed to book a $10,000,000 withdrawal liability demand caused by the closing of a hospital operated by Alecto Fairmount for which Alecto was also liable. 3/5/2024 Tr. 100:15–101:22. Appendix Ex. 50, A1510 – 1051.

---

[9] First Supplemental Declaration of Michael Sarrao in Support of the Debtor's Retention Applications [Bankr. Ct. DI 133] ¶ 27. Appendix Ex. 37, A1074.

19

- The Debtor failed to book liabilities for debts it guaranteed even after a judgment had been entered. *Id*. 126:20 – 127:7. A1536-37.

- The Debtor failed to book liabilities for a demand for repayment by a government entity for Medicaid advance payments dating back many years, originally asserted in the amount of $12,000,000, and through the CMS proof of claim increased to $29,000,000, was totally excluded from the liability section of the Alecto balance sheets. 3/5/2024 Tr. 100:4 – 10, A1510 and 107:8 – 25, A1517.

- The Debtor failed to book a liability for a lawsuit filed by CMS against the Debtor for reimbursement of more than $12,000,000 in Medicare advance payments made to its Olympia affiliate because the liability originated with a subsidiary or affiliate. *Id*. 98:20–100:3. A1508 - 1510.

Mr. Balasiano's analysis ignores all of this evidence because he drew his conclusion straight from the face of the 2019 balance sheet and tax return the Debtor provided him.  As a consequence, all of this evidence was ignored by the Bankruptcy Court when it accepted Mr. Balasiano's conclusion without comment.

As set forth in the Opening Brief, the Debtor did not ask its expert, GCS, to perform a valuation; in fact, the GCS Report makes no mention of solvency or insolvency. Moreover, the Debtor never even raised the solvency issue until filing the declarations of Mr. Balasiano and Mr. Sarrao on February 29, 2024, one week after the Reed Creditors filed their *Objection of the Reed Action Judgment Creditors to Confirmation of the Small Business Debtor's Plan of Reorganization Proposed by the Debtor* (the "Objection") [Bankr. Docket No. 299]. Appendix Ex. 34, A1013 – 1032. The Debtor then scrambled in response to the Objection and had Mr.

Balasiano and Mr. Sarrao, neither of whom are financial experts, perform the Debtor's solvency analysis.

The Debtor cites three cases for the proposition that experts are not needed to perform a solvency analysis. Resp. Br. pp. 52 – 53. This is true under certain circumstances. To be sure, it may have been permissible for Mr. Balasiano and Mr. Sarrao to prepare a solvency analysis designed to determine a fair valuation of the Debtor's assets and liabilities, but they did not do that. Their analysis was fatally flawed because they simply took the balance sheets and tax returns at face value and made no attempt to consider (or record) (i) value reductions for uncollectible assets or (ii) its significant contingent liabilities and debts of defunct or failing affiliates guaranteed by the Debtor.  As a result, the Debtor failed to establish even a *prima facie* case that the Debtor was solvent at the time of the Sunrise Transfer.

### F.  The Bankruptcy Court erred by misapplying the factors for approval of a settlement.

In applying the *Martin* factors for approval of a settlement, the Bankruptcy Court found as follows:

> [T]he claims have very little probability of success on the merits, if any. Absent the settlement, the Debtor would face increased expense, inconvenience and delay attending to the litigation. These are complex claims that could cause delay in the distribution of any assets to the creditors. Additionally, the creditors will receive the Settlement Consideration. As part of the disposable income to the Debtor. There was no evidence regarding the possibility of collection on any judgment, so this factor is neutral. The other three *Martin* factors weighs in favor of approving the settlement.

Confirmation Ruling p. 15 - 16. Appendix Ex. 51, A1622 - 1623.

The Bankruptcy Court misapplied the *Martin* factors. As discussed at length above, the Bankruptcy Court erred in finding that "the claims have very little probability of success on the merits, if any." Moreover, while it found that (i) the Debtor would face increased expense, inconvenience and delay if the settlement is not approved and (ii) the claims are complex and could cause a delay in the distribution of assets to creditors, the Bankruptcy Court did not cite to any record evidence supporting those findings. Accordingly, none of the *Martin* factors weighed in favor of approving the settlement of the Released Claims.

## Conclusion

WHEREFORE, for the foregoing reasons and the reasons stated in the Opening Brief, the Reed Creditors respectfully request that this Court reverse the Confirmation Order and remand this matter to the Bankruptcy Court with instructions that it hold further proceedings consistent with this Court's ruling.

Dated: December 18, 2024       **SULLIVAN · HAZELTINE · ALLINSON LLC**

 */s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
        whazeltine@sha-llc.com

        and

22

Bren J. Pomponio, Esq.
Colten L. Fleu, Esq.
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Tel: (304) 326-0188
Email:  bren@msjlaw.org

     and

John Stember, Esq.
Maureen Davidson-Welling, Esq.
Stember Cohn & Davidson-Welling, LLC
The Harley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
Tel: 412-338-1445
Email: jstember@stembercohn.com
mdavidsonwelling@stembercohn.com

*Counsel for The Reed Action Judgment Creditors*

## **CERTIFICATE OF COMPLIANCE**

I am one of the attorneys representing the appellants, the Reed Action Judgement Creditors.

This reply brief contains 5,647 words, excluding the items exempted by Fed. R. Bankr. P. 8015(g). The brief's type size and typeface comply with Fed. R. Bankr. P. 8015(a)(5) and (6).

I certify that this brief:

(a) Complies with the 6,500-word length limit pursuant to Federal Rule of Bankruptcy Procedure 8015(a)(7)(ii).

Dated: December 18, 2024         **SULLIVAN · HAZELTINE · ALLINSON LLC**

 /s/ William A. Hazeltine
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
          whazeltine@sha-llc.com

*Counsel for The Reed Action Judgment Creditors*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this date, a copy of the foregoing

**JOINT APPENDIX – VOLUME 4, pp. 1996–2919** was filed electronically with

the Clerk of Court using the ECF system which will send notification to the parties

of record.  In addition, four (4) paper copies of this appendix will be delivered to

the Clerk within five (5) days of the electronic mailing:

Respectfully submitted,

Dated: September 22, 2025

/s/William D. Sullivan
William D. Sullivan, Esq. (No. 2820)
William A. Hazeltine, Esq. (No. 3294)
**Sullivan Hazeltine Allinson, LLC**
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel.: (302) 428-8191
Email: bsullivan@sha-llc.com
        whazeltine@sha-llc.com

*Attorneys for Appellants*