No. 25-1853

# United States Court of Appeals
# for the Third Circuit

*In the matter of*

ALECTO HEALTHCARE SERVICES LLC,

*Debtor.*

THE REED JUDGMENT CREDITORS,

*Appellants,*

v.

ALECTO HEALTHCARE SERVICES LLC,

*Appellee.*

On appeal from the United States Bankruptcy Court
for the District of Delaware
Case No.: 23-10787-JKS

## APPELLEE'S MOTION TO DISMISS APPEAL AS
## CONSTITUTIONALLY AND EQUITABLY MOOT

Carl N. Kunz, III (DE Bar No. 3201)
Jeffrey R. Waxman (DE Bar No. 4159)
Christopher M. Donnelly (DE Bar No. 7149)
**MORRIS JAMES LLP**
3205 Avenue North Blvd., Suite 100
Wilmington, Delaware 19803
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: ckunz@morrisjames.com
         jwaxman@morrisjames.com
         cdonnelly@morrisjames.com

*Counsel for Appellee, Alecto Healthcare Services LLC*

17422597

Alecto Healthcare Services LLC ("Appellee"), the reorganized debtor and appellee in the above referenced appeal (the "Appeal"), files this motion to dismiss the Appeal filed by the Reed Judgment Creditors ("Appellants") as moot.[1]  In support hereof, Appellee submits the declaration of Michael Sarrao, Appellee's general counsel and Executive Vice President, filed concurrently herewith (the "Sarrao Declaration"), and respectfully states as follows.

## PRELIMINARY STATEMENT

The Appeal should be dismissed as moot.  On June 16, 2023 (the "Petition Date"), Appellee filed its bankruptcy petition in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to subchapter V of title 11 of the United States Code (the "Bankruptcy Code").  On April 4, 2024, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the *Small Business Debtor's Plan of Reorganization dated December 19, 2023* (the "Plan").  The Plan became effective on April 19, 2024 (the "Effective Date").  No stay of the effectiveness of the Plan or Confirmation Order has ever been sought by Appellants.  Accordingly, since the Effective Date, the Appellee has (i) continued to operate its business in accordance with the confirmed Plan, (ii) granted releases in exchange for settlement payments received by it, and obtained reductions in salaries otherwise

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan.

owed to various parties, and (iii) collected and distributed all of its disposable net income to various creditors as required by, and in accordance with, the terms of the Plan. To date, Appellee has distributed all of its disposable net income to its creditors in order of priority. These transactions cannot be unwound. Creditors who did not take issue with the Plan and voted in favor of it have relied on the effectiveness of the Plan and started to receive or will shortly receive distributions on their claims.

Likewise, in accordance with the terms of the Plan, funds have been paid to Appellee for settlements identified in the Plan and approved by the Confirmation Order. Additionally, one of the bases for the Appellants' appeal - a putative avoidance claim that was settled through the Plan and that Appellants asserted should be pursued - is now barred by the statute of limitations. Accordingly, the settlement approved by the Confirmation Order and the releases granted by and through the Plan cannot now be unwound. This Court cannot grant effective relief.

The second ground asserted by Appellants below was that the case should not have proceeded under subchapter V. While there is no merit to the Appellants' request for relief on that issue, relief could technically be granted, but granting such relief would so scramble the confirmed Plan and so prejudice creditors that it would be wholly unequitable for the Court to do so. As this Court has stated, reversal on either ground would be meaningless, or would produce "chaos in the bankruptcy

17422597

court" resulting from a Plan that will have been shattered and would produce significant injury to third parties that relied on the confirmation order. *In re Phila. Newspapers, LLC*, 690 F.3d 161, 168 (3d Cir. 2012).

Dismissing the Appeal as moot also serves the public interest by affording finality to the Plan and ensuring that creditors continue to receive the distributions to which they are entitled.

## FACTUAL BACKGROUND

Appellee was formed in 2012 to serve as a holding company for healthcare-related entities. At its peak, Appellee's subsidiaries operated five (5) acute care hospitals across the country, Appellee provided management services to an acute care hospital owned by an unrelated third-party, and one of Appellee's subsidiaries provided management services to an acute care hospital owned by an unrelated third-party. (A0732)

Prior to the COVID 19 pandemic, Appellee was both solvent and profitable. (A1588) At the beginning of the pandemic, hospitals and other healthcare entities were limited in terms of the income received from certain practices, such as elective surgery. The cost from those losses were offset, however, both by the volume of patients received as well as money received from states and federal governments. (A1588-A1589) Ultimately, as the pandemic continued, the funding by governmental entities tapered off, and healthcare providers' costs significantly

4

increased, particularly employee costs.    The confluence of reduced government funding and increase of costs ultimately caused Appellee's subsidiaries to become unprofitable and eventually insolvent.

As a result, Appellee found itself faced with the choice of either (i) continuing to financially support its affiliates in order to either allow the affiliates to return to profitability or be sold as a going concern, or (ii) allowing the affiliates to fail, in which case, Appellee would be financially responsible for certain affiliates' obligations - either by agreement or by operation of law.    Appellee estimated those obligations at $30 million, including real estate lease obligations, liability as a guarantor of a potential put option, the potential return of Medicare payments valued at over $5 million, potential payroll liabilities, accrued payroll taxes, paid time off due to employees, and accrued real estate taxes (collectively, the "Springing Obligations").    Faced with those options, including avoiding liability for the Springing Obligations, Appellee's board decided to continue to fund the affiliates and seek a going-concern sale.

In the meantime, on May 11, 2023, the Reed Creditors, obtained a judgment from the United States District Court for the Northern District of West Virginia against Appellee.    On June 1, 2023, the Appellants obtained a writ of execution against Appellee in the total amount of $3,242,498.77.

Shortly thereafter, Appellee filed its subchapter V bankruptcy petition in the

Bankruptcy Court on June 16, 2023 (the "Petition Date"). Appellee's election to proceed as a small business bankruptcy under subchapter V stemmed from its having less than $7.5 million in liquidated, non-contingent debt as of the Petition Date.

Consistent with that election, Appellee timely filed its *Schedule of Assets and Liabilities* which included 17 scheduled unsecured creditors, not including affiliates or insiders, holding non-contingent and liquidated claims totaling $3,445,535.47. When Appellee filed its Schedules, the claim of the Appellants was listed as a non-contingent, liquidated claim. Appellee scheduled another potentially significant creditor, LHP, however, as having a contingent, non-liquidated, and disputed claim in an unknown amount. Thus, Appellee's non-contingent and liquidated claims were well within the then-applicable debt limit of $7,500,000 for subchapter V eligibility.

On November 2, 2023, the Appellants challenged Appellee's subchapter V election. The Bankruptcy Court and the parties recognized that whether Appellee was eligible for subchapter V relief hinged on the status of the LHP debt. Indeed, the Bankruptcy Court acknowledged that "the parties agreed that the LHP debt is the fulcrum and whether that debt is unliquidated or contingent controls the eligibility determination."

When the Bankruptcy Court conducted the hearing on the Appellants' Designation Motion, it had to determine if the LHP debt was either contingent or unliquidated as of the Petition Date. If the LHP debt were *either* contingent or

unliquidated, Appellee was eligible to be a subchapter V debtor.

Following presentation of evidence, and arguments by counsel, the Bankruptcy Court held that "the LHP debt was unliquidated as of the Petition Date," and thereby ruled that Appellee was entitled to proceed as a subchapter V debtor (the "Designation Order").  The Appellants filed a timely appeal from the Designation Order.

Thereafter, Appellee filed its Plan.  As a material part of the Plan, Appellee proposed to settle certain potential avoidance actions and claims for breach of fiduciary duty, and grant releases to targets of avoidance actions and Appellee's directors and officers in exchange for a payment of $25,000 and various salary concessions described below and in the Sarrao Declaration.

On February 22, 2024, the Appellants objected to confirmation of Appellee's Plan.  In particular, the Appellants objected that the settlements and releases contained in the Plan would release potential fraudulent conveyance and breach of fiduciary duty claims of the Debtor against parties, including Appellee's insiders.

With respect to the alleged fraudulent conveyance, the Appellants' Plan objection focused exclusively upon a transfer of certain membership interests in Sunrise Real Estate Holdings LLC to members of Appellee, who then transferred the membership interests to Sunrise MOB Holdings, LLC, an entity owned by those members (the "Sunrise Transfer").  The Appellants' objection to the Plan focused

7

on the perceived lack of Appellee receiving reasonably equivalent value for the transfer, despite that the same property was later transferred back to Appellee for no consideration.

The Appellants' Plan objection also contended there might be claims against Appellee's officers and directors for breach of fiduciary duty, arising from Appellee's advancement of funds to affiliates while Appellee was allegedly insolvent or in the zone of insolvency.

On March 20, 2024, following a two-day evidentiary confirmation hearing and a separate hearing to hear oral argument, the Bankruptcy Court confirmed Appellee's Plan over the Appellants' objections. On April 14, 2024, the Bankruptcy Court issued its Confirmation Order. On April 19, 2024, the Plan became effective.

The Appellants never sought a stay of the Confirmation Order in the Bankruptcy Court, and on April 19, 2024, Appellants appealed the Confirmation Order to the United States District Court for the District of Delaware (the "District Court"). Again, the Appellants did not seek a stay of the Confirmation Order in the District Court. On September 17, 2024, the District Court consolidated the Appellants' appeals of the Designation Order and Confirmation Order. On March 31, 2025, the District Court affirmed both the Designation Order and the Confirmation Order (the "Affirmation Order"). Appellants then appealed the

Affirmation Order to this Court.  Again, Appellants sought no stay of any of the orders.

Appellee's Plan is a single integrated transaction where parties to settlements contained in the Plan and approved by the Confirmation Order have paid in funds to the estate, made certain salary concessions, and received releases.  In addition, Appellee is required under the Plan to contribute (i) its entire projected disposable income in an aggregate amount of no less than $635,549 for a period of three (3) years, (ii) any residual value received on account of Appellee's direct and indirect subsidiaries including the claim filed in the bankruptcy case of Sherman/Grayson Hospital LLC, and (iii) the proceeds of any Cause of Action, including any settlement proceeds received on account of such claims.  Since the Effective Date, Appellee has done so.  It has so far distributed in excess of $1.6 million for the benefit of its various levels of creditors, and has received funds from its settlement of causes of action in the Plan.  Appellee has commenced distributions to unsecured creditors and those distributions have been received by the creditors and deposited – including by the Appellants.

As of this submission, nearly half of the allotted three-year period under the Plan has elapsed since confirmation.

# ARGUMENT

This Court cannot grant effective relief.  Thus, the Appeal is both constitutionally and equitably moot.

## 1.  Relief requested in the Appeal is Barred by the Statute of Limitations

First, the Appeal is constitutionally moot, and no effective relief can be granted.  Appellants asserted below, in both the Bankruptcy Court and on appeal to the District Court, that the Bankruptcy Court improvidently approved a settlement of alleged avoidance actions.  Both Courts rejected the Appellants' arguments.

At no time did the Appellants seek to stay the Confirmation Order.  On April 19, 2024, the Plan become effective, settlement funds were exchanged, Debtor's insiders made various significant salary concessions during the term of the Plan, and the potential claims against the alleged defendants were released.

Accordingly, with no stay in place of either the Confirmation Order or the Affirmation Order, on June 16, 2025, the applicable statute of limitation applicable to Appellee's ability to bring avoidance claims expired.  Section 546 of the Bankruptcy Code provides:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of – (1) the later of – (A) 2 years after the entry of the order for relief; or (B)1 year after the appointment or election of the first trustee under section 702, 104, 1163, 1202, or 1302 of this title if such appointment or election occurs before the expiration of the period specified in

17422597

subparagraph (A); or (2) the time the case is closed or dismissed.

*See* 11 U.S.C. §546(a)(1)-(a)(2).

Here, Appellee's bankruptcy petition (i.e. the order for relief) was filed on June 16, 2023. Pursuant to Section 546(a) of the Bankruptcy Code, the Debtor's right to bring fraudulent conveyance actions based on 544 and 548 expired two years later, on June 16, 2025. Thus, even if the Confirmation Order or Affirmation Order were to be reversed now – and they should not be – no effective relief could be granted to Appellants because the Debtor and its estate no longer have the right or ability to bring fraudulent transfer claims under §§ 544 or 548, and the fully consummated settlement of those claims cannot be undone. Accordingly, this Court cannot grant any effective relief to the Appellants that would allow Appellee to pursue such claims and the Appeal on this issue is moot.[2]

As the United States Supreme Court has repeatedly stated: "Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or

---

[2]    Further, the bankruptcy estate would be required to return the $25,000 that it received as consideration for its settlement with the Debtors' insiders. Also, the bankruptcy estate would be responsible to repay one of the insiders for the reduced compensation agreed upon in connection with confirmation, and potentially any salary reductions and increases that the insiders did not have during the last 18 months.

17422597

controversy when the case was decided by the court whose judgment we are reviewing." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit[]' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016), quoting *City of Erie*, 529 U.S. at 287) (internal quotation marks omitted). Given that Appellee cannot bring fraudulent conveyance actions by virtue of the expiration of the applicable statute of limitation, there is no remedy that this Court can provide to Appellants, and thus the Appeal on this issue is constitutionally moot.

Under identical circumstances, the United States Court of Appeal for the Ninth Circuit dismissed an appeal as moot. As is the case here, in *In re Ahn*, 705 Fed. Appx. 581 (9th Cir. 2017), the appellants had not been granted any stay.[3] In *Ahn*, the appellant asserted that the bankruptcy court had abused its discretion by approving the settlement by the estate of certain avoidance claims. The Ninth Circuit noted:

> But the statute of limitations for the trustee to bring an avoidance action in the bankruptcy court has expired,

---

[3]    In footnote 1 to the *Ahn* opinion, the Ninth Circuit noted: "after being denied a stay by the Bankruptcy Appellate Panel, [appellant] did not attempt to obtain one from the court or the Circuit Justice." *In re Ahn*, 705 Fed. Appx. at 585, fn.1. In that same footnote, the Court signaled that, as a result, the appellant had not been reasonably diligent (citations omitted). Here, the Appellants never even requested a stay.

17422597

precluding recovery on those claims on behalf of the estate. *See* 11 U.S.C. § 546(a).

*In re Ahn*, 705 Fed. Appx. at 583. In dismissing the appeal, the Ninth Circuit held

the expiration of the statute of limitation rendered the appeal moot:

> "[T]he running of the statute of limitations for actions brought by the trustee on behalf of the estate is the kind of "comprehensive change of circumstances" that "render[s] it inequitable for [the] court to consider the merits of the appeal." *In re Thorpe Insulation Co.*, 677 F.3d at 880 (quoting *In re Roberts Farms, Inc.*, 652 F.2d at 798). The appeal is equitably moot and we therefore dismiss.

*Id.*

## 2. **Effective Relief Cannot be Granted on the Remainder of the Appeal.**

Likewise, the Court cannot grant any effective relief to the Appellants on their

challenge to Appellee's bankruptcy proceeding under subchapter V of Chapter 11.

Despite the Bankruptcy Court holding (and the District Court affirming) that certain

debt was both contingent and unliquidated on the petition date, and Appellee was

eligible to proceed as a small business debtor under subchapter V, it is nearly

impossible to determine what meaningful relief overturning that decision would

provide. Reverting the bankruptcy case to a traditional chapter 11 case, where (i)

the statute of limitation has already run, (ii) creditors have already received certain

payments on account of their claims, (iii) the Debtor has no available funding source

to run a traditional chapter 11 case, and (iv) the Debtor needing to return funds

received (whether in payment or reduction in salary) as part of the settlement in

13

connection with confirmation of the plan, would result in chaos and almost certainly result in no further distributions to any of the Debtor's creditors.[4]  Thus, the inability to grant effective relief – or in this case, the chaos that would result from granting relief – renders the appeal moot.  *See e.g., In re Islands Bakery Partnership*, 179 B.R. 243 (W.D. Wash. 1995) (appeal of the order confirming the plan of reorganization is moot when the court cannot fashion "effective relief;" court must look to: (1) whether the reorganization plan has been substantially consummated, (2) what effect the appeal and reorganization plan will have on third parties that are not before the court, and (3) *whether relief can be granted without creating an unmanageable, uncontrollable situation for the bankruptcy court*).

Putting aside that there is no basis to overturn the Bankruptcy Court's Confirmation Order (or the District Court's Affirmation Order) holding that certain debt was both contingent and unliquidated on the Petition Date, to place Appellee back into a chapter 11 case at this stage of the case – when the Appellants took no steps to stay the effect of any order – would create an unmanageable and uncontrollable situation for the Bankruptcy Court.  Doing so would prejudice not only Appellee but also prejudice all of the creditors of the estate, including the Appellants.

---

[4]    Depending on the timing, of the Court's decision, the Debtor could seek the disgorgement of distributions received by creditors.

17422597

### 3.  The Appeal Should be Dismissed Based Upon Equitable Mootness

In addition to being legally moot, the Appeal should also be dismissed as equitably moot.  This Court's precedent supports dismissal of the Appeals as equitably moot. *See In re Nuverra Env't Sols., Inc.*, 834 F. App'x 729, 733 (3d Cir. 2021)  (upholding doctrine of equitable mootness), *as amended* (Feb. 2, 2021); *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 140–41 (3d Cir. 2019) (same); *In re Trib. Media Co.*, 799 F.3d 272, 277 (3d Cir. 2015) (same); *In re Boy Scouts of America,* 137 F.4th 126, 160 (3d Cir. 2025) ("[E]quitable mootness remains the law of our Circuit."). Dismissal on such grounds is appropriate "when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re Cont'l Airlines*, 91 F.3d 553, 559 (3d Cir. 1996).

This Court has distilled the equitable-mootness analysis into two steps: "(1) whether a confirmed plan has been substantially consummated; and (2) if so, whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on the plan's confirmation." *Trib. Media*, 799 F.3d at 278; *see also Nuverra*, 834 F. App'x at 733; *Boy Scouts*, 137 F.4th at 160 ("as we encounter [the equitable mootness doctrine] today, the inquiry has two prongs.").  Courts apply equitable mootness to prevent complex bankruptcy reorganizations from being unscrambled. *Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 185 (3d Cir. 2001). In evaluating whether to

dismiss an appeal as equitably moot, this Court considers the effect that a successful appeal would have on third parties who reasonably relied on the finality of the plan. *Millennium Lab*, 945 F.3d at 140. An appellant's failure to propose relief that would not "knock the props out from under the authorization for every transaction that has taken place" renders an appeal equitably moot. *Trib. Media*, 799 F.3d at 281. Equitable mootness should be viewed through the lens of "[t]he public policy of affording finality to bankruptcy judgments." *Id.* at 278.

Here, the evidence demonstrates that the Plan has been substantially consummated, that Appellants' desired relief would irreparably harm parties who reasonably relied on the Plan's finality, and that reversal now would destroy the single integrated transaction embodied in the Plan. Appellants fail to propose relief that would "not involve reopening" the claims settled under the Plan – claims that, as noted above, are now barred by the applicable statute of limitation. *See id.* Reversing the Confirmation Order would therefore "knock the props out" from under "every transaction that has taken place" under the Plan, "upsetting third parties' reliance on it." *Id.*

### 4.    The Plan has been Substantially Consummated

Dismissal of an appeal as equitably moot is appropriate when effective relief is not possible because the plan has been substantially consummated. "Substantial consummation" means:

17422597

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). "Satisfaction of this statutory standard indicates that implementation of the plan has progressed to the point that turning back may be imprudent." *In re Millennium Lab Holdings II, LLC*, 591 B.R. 559, 578 (D. Del. 2018).

Here, the Plan has been substantially consummated. First, in accordance with the Plan, all of the Debtor's administrative claims, including the fees and expenses of professionals, have been paid. Sarrao Declaration at ¶5. All of the fees and expenses of the Subchapter V Trustee have been paid. *Id.* Initial distributions to Appellee's general unsecured creditors (including the Appellants) have been made and checks cashed (including by the Appellants). *Id.* As required pursuant to settlements approved by the Bankruptcy Court in the Plan, (i) a settlement payment by certain insiders has been tendered and received by Appellee, (ii) the salary of Appellee's Chief Executive Officer has been reduced and will remain at or below the reduced level for the entire term of the Plan, (iii) the salary of Appellee's Chief Financial Officer has not increased and will not increase during the entire term of

the Plan, (iv) the compensation arrangement with Appellee's Executive Vice-President and General Counsel has not changed and will not change during the entire term of the plan, and (v) approved releases have been given. *Id.* Finally, the counterparty to Appellee's sole remaining management agreement has issued formal notice of termination of the agreement. Notice of termination was not unanticipated but has now officially come to fruition. Sarrao Declaration at ¶6.

In sum, since confirmation of Appellee's Plan 18 months ago, and approval of the various material settlements and compromises set forth therein, the Plan has been substantially consummated. Appellee, its insiders, and creditors have justifiably relied upon the settlements approved made thereunder, and Appellee has distributed, and will continue to distribute, of all of its available distributable income in accordance with the terms of the Plan. Those creditors would be significantly harmed, and the Plan fatally scrambled if the Court countenanced the Appellants' belated attempt to throw the entire case back into a chapter 11 case. The Appellants' Appeal should be dismissed as moot.

[Remainder of Page Left Intentionally Blank]

Dated: November 24, 2025           **MORRIS JAMES LLP**

*/s/ Carl N. Kunz, III*
Carl N. Kunz, III (DE Bar No. 3201)
Jeffrey R. Waxman (DE Bar No. 4159)
Christopher M. Donnelly (DE Bar No. 7149)
3205 Avenue North Blvd., Suite 100
Wilmington, Delaware 19803
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail:      ckunz@morrisjames.com
                jwaxman@morrisjames.com
                cdonnelly@morrisjames.com

*Counsel for Appellee, Appellee Healthcare Services LLC*

## <u>COMBINED CERTIFICATIONS</u>

The undersigned hereby certifies:

1)  I am admitted to the United States Court of Appeals for the Third Circuit.

2)  Pursuant to L.A.R. 31.1(c), prior to filing, a virus check was performed on the PDF copy of the Motion using CrowdStrike Falcon software, version 7.29.20108.0.

3)  This Motion complies with the type-volume limit of Fed. R. App. P. 27(d)(2), 32(a)(5) and 32(a)(6) in that it was prepared using *Microsoft Word*, Times New Roman, 14-point text, and contains 3951 words.


Dated: November 24, 2025     **MORRIS JAMES LLP**

*/s/ Carl N. Kunz, III*
Carl N. Kunz, III (DE Bar No. 3201)
Jeffrey R. Waxman (DE Bar No. 4159)
Christopher M. Donnelly (DE Bar No. 7149)
3205 Avenue North Blvd., Suite 100
Wilmington, Delaware 19803
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail:    ckunz@morrisjames.com
        jwaxman@morrisjames.com
        cdonnelly@morrisjames.com

*Counsel for Appellee, Appellee Healthcare Services LLC*

17422597

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 24th of November, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Carl N. Kunz, III*
Carl N. Kunz, III

17422597