No. 25-1853

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

### IN RE: ALECTO HEALTHCARE SERVICES, LLC

*Debtor.*

### THE REED ACTION JUDGMENT CREDITORS,

*Appellants,*

v.

### ALECTO HEALTHCARE SERVICES, LLC,

*Appellee.*

On Appeal from the United States District Court for the District of Delaware,
Cause No. 1:24-cv-00494-GBW (lead) and 1:23-cv-1442-GBW (consolidated)
Judge: Honorable Gregory B. Williams

### APPELLANTS' OPPOSITION TO APPELLEE'S MOTION TO DISMISS
### APPEAL AS CONSTITUTIONALLY AND EQUITABLY MOOT

Bren J. Pomponio, Esquire
Colten L. Fleu, Esquire
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston, WV 25301
Tel.: (304) 326-0188
Email: colten@msjlaw.org
        bren@msjlaw.org

William D. Sullivan, Esq. (No. 2820)
William A. Hazeltine, Esq. (No. 3294)
Sullivan Hazeltine Allinson LLC
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel.: (302) 428-8191
Email: bsullivan@sha-llc.com
        whazeltine@sha-llc.com

and

Maureen Davidson-Welling, Esquire
PA ID No. 206751
John Stember, Esquire
PA ID No. 23643
Stember Cohn &
      Davidson-Welling, LLC
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA  15219
Tel.: (412) 338-1445
Email: <u>mdw@stembercohn.com</u>
      <u>jstember@stembercohn.com</u>

*Attorneys for Appellants the Reed Action Judgment Creditors*

The Reed Judgment Creditors ("Appellants"), by and through their undersigned counsel, submit this Opposition to Appellee's Motion to Dismiss Appeal as Constitutionally and Equitably Moot (the "Motion to Dismiss"). In support of their Opposition, Appellants respectfully state as follows:

## Factual Background[1]

On June 16, 2023, Appellee filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the District of Delaware and elected to proceed under Subchapter V. On November 2, 2023, Appellants moved to revoke Appellee's Subchapter V designation. On December 1, 2023, the Bankruptcy Court issued an oral ruling denying the Designation Motion and, on December 4, 2023, the Bankruptcy Court entered an order (the "Designation Order"), denying the Appellants' motion to revoke Appellee's Subchapter V designation. Appellants timely appealed (the "Designation Appeal").

On December 19, 2023, Appellee filed its *Small Business Debtor's Plan of Reorganization Proposed by the Debtor* (the "Plan"). On February 22, 2024, Appellants filed their *Objection of the Reed Action Judgment Creditors to Confirmation of Small Business Debtor's Plan of Reorganization Proposed by the Debtor* (the "Plan Objection"). In the Plan Objection, Appellants objected to, among

---

[1] A complete factual background of the case can be found in Appellant's Brief, Docket No. 19-1, pp. 6-26.

other things, Appellee's release of a fraudulent transfer claim against insiders of Appellee for payment of $25,000 (the "Fraudulent Transfer Claim") because the Appellants believed that prosecution of the Fraudulent Transfer Claim would provide more value to the estate. The Bankruptcy Court held a three-day evidentiary hearing on confirmation of the Plan on March 4, 5 and 6, 2024 and took the matter under advisement. The Bankruptcy Court issued its *Confirmation Ruling* on March 20, 2024, at which time the Bankruptcy Court overruled the Appellants' objections raised in the Plan Objection. The Bankruptcy Court entered its *Finding of Facts and Conclusions of Law Confirming Small Business Debtor's Plan of Reorganization* on April 4, 2024 (Doc No. 354) (the "Confirmation Order"). Appellants timely filed a notice of appeal from the Confirmation Order on April 18, 2024 (the "Confirmation Appeal" and, together with the Designation Appeal, the "Appeals").

## Argument

Appellee incorrectly asserts that the Appeals are constitutionally and equitably moot. As set forth below, the Appeals are neither constitutionally nor equitably moot because the Court can grant effective relief to Appellees if it reverses the Designation Order and the Confirmation Order.

### I.     The Appeals are not Constitutionally Moot.

A case is constitutionally moot under art. 3, § 2, cl. 1 of the United States Constitution if there is no case or controversy. *See, e.g. In re Thorpe Insulation Co.*

(*Motor Vehicle Casualty Company v. Thorpe Insulation Co.*), 677 F.3d 869, 880 (9th Cir. 2012).  An appeal of the confirmation of a plan is not constitutionally moot because this Court can "reverse plan confirmation or require modification of the plan, thereby giving relief to Appellants." *Id.*  Appellee's contention that the Appeal is constitutionally moot appears to be solely directed at the arguments surrounding the Fraudulent Transfer Claim, which it contends is now barred by the statute of limitations.  As set forth below, the statute of limitations on the Fraudulent Transfer Claim is subject to equitable tolling.

Regardless, Appellee's reliance on *In re Ahn*[2] to support its argument that Appellants' confirmation appeal is constitutionally moot because the statute of limitations has lapsed on the Fraudulent Transfer Claim is misplaced.  In *Ahn*, the court held that the appeal was equitably moot, not constitutionally moot, where the statute of limitations had run on trustee's ability to assert claims settled by the plan. *Id.* at 582 – 84.  Accordingly, Appellee's Motion lacks any supportable separate contention that the Appeals are constitutionally moot, and instead relies on the success of its arguments regarding equitable mootness, which Appellant addresses below.

---

[2] 705 Fed. Appx. 581 (9th Cir. 2017).

## II.   **The Appeals are not Equitably Moot.**

### A. **The standard for equitable mootness.**

Equitable mootness permits a federal court to dismiss and decline to consider the merits of a bankruptcy appeal following the consummation of a plan "'when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'" *In re Boy Scouts of America*, 137 F.4th 126, 159 (3d Cir. 2025) (quoting *In re Cont'l Airlines,* 91 F.3d 553, 559 (3d Cir. 1996) (en banc)). "The doctrine is invoked when 'requested relief is almost certain to produce a 'perverse' outcome—significant 'injury to third parties' and/or 'chaos in the bankruptcy court' from a plan in tatters.'" *Boy Scouts*, 137 F.4th at 159 (quoting *In re One2One Commc'ns, LLC,* 805 F.3d 428, 434 (3d Cir. 2015) (internal quotations omitted).

"In the normal course, 'there is a 'virtually unflagging obligation' of federal courts to exercise the jurisdiction conferred on them.'" *Boy Scouts*, 137 F.4th at 159 (quoting *In re SemCrude, L.P.*, 728 F.3d 314, 320 (3d Cir. 2013) (internal quotations omitted)). "So only in these limited circumstances has our Circuit adopted equitable mootness as a 'rare exception' where we "dismiss[ ] an appeal over which we have jurisdiction.'" *Boy Scouts*, 137 F.4th at 159 (quoting *SemCrude* at 321). The party seeking to invoke the doctrine bears the burden of overcoming the strong presumption that appeals from confirmation orders of reorganization plans—even

4

those not only approved by confirmation but implemented thereafter (called

"substantial consummation" or simply "consummation")—need to be decided.'"

quoting *In re Tribune*, 799 F.3d at 278. "'[A] court may fashion whatever relief is

practicable instead of declining review simply because full relief is not available.'"

*Nuverra*, 834 Fed. Appx. at 278 (quoting *In re Blast Energy Servs., Inc.*, 593 F.3d

418, 425 (5th Cir. 2010) (internal quotations omitted).

  "[A] court only should apply the equitable mootness doctrine if doing so will

"[unscramble] complex bankruptcy reorganizations when the appealing party should

have acted before the plan became extremely difficult to retract."" *Philadelphia*

*Newspapers*, 690 F.3d at 169. "[R]eversal of a confirmation order is more likely to

lead to an inequitable result 'where the reorganization involves intricate transactions

or where outside investors have relied on the confirmation of the plan.'" *One2One*,

805 F.3d at (quoting *In re Continental Airlines,*, 91 F.3d 553, 560 (3d Cir. 1996) (en

banc) (citations omitted)). For example, in *Nordhoff Invs., Inc. v. Zenith Elecs.*

*Corp.*,[3] this Court found that a plan that involved hundreds of millions of dollars, the

issuance of unretractable bonds, and restructuring the debt, assets, and management

of a major corporation "could [not] be reversed without great difficulty and

inequity." *Nordhoff*, 258 F.3d at 186. This Court has "most frequently found that a

---

[3] 258 F.3d 180, 185 (3d Cir. 2001).

plan could not be retracted when the reorganized debtor issued publicaly [sic] traded debt or securities." *See id.*

Historically, this Court has considered five factors "in determining whether it would be equitable or prudential to reach the merits of a bankruptcy appeal," including: "(1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments." *Continental*, 91 F.3d at 560. This Court's criteria for applying the equitable doctrine "have shifted over time, but as we encounter it today, the inquiry has two prongs. "First, we ask 'whether a confirmed plan has been substantially consummated.'" *Boy Scouts*, 134 F.4th at 160 (quoting *SemCrude*, 728 F.3d at 321). If the plan has been substantially consummated, this Court then considers "'whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation.'" *Tribune*, 799 F.3d at 278 (quoting *SemCrude*, 728 F.3d at 321). "The party seeking dismissal on equitable mootness grounds bears the heavy burden of proving its applicability 'based on an evidentiary record, ... not speculation." *Boy Scouts*, 137 F.4th at 160 (quoting *SemCrude* at 321). Bare assertions of inequity and "'Chicken Little' statements" do not suffice. *Boy Scouts*, 137 F.4th at 160

*SemCrude* at 324).  As set forth below, Appellee has failed to bear the heavy burden of proving the applicability of the equitable mootness doctrine to either the Designation Appeal or the Confirmation Appeal.  As a result, neither the Designation Appeal nor the Confirmation Appeal is equitably moot.

**B.  <u>The Appeals are not equitably moot</u>.**

The Appeals are not equitably moot for at least two reasons. First, this is not a complex bankruptcy case of the nature that this Court has held that the appealing party "should have acted before the plan became extremely difficult to retract." *Philadelphia Newspapers*, 690 F.3d at 169 (quoting *Nordhoff*, 258 F.3d at 185)). Nor it is one where "reversal of a confirmation order is more likely to lead to an inequitable result 'where the reorganization involves intricate transactions or where outside investors have relied on the confirmation of the plan.'" *One2One*, 805 F.3d at 436 (quoting *Continental,* 91 F.3d 553, 560 (3d Cir. 1996) (en banc) (internal quotations omitted)).  Appellee's reorganization is a simple and straightforward plan under Subchapter V and does not involve intricate transactions.  There are no outside investors that have relied on confirmation, and Appellee's equity owners have remained in possession of the business and continued to operate it.  *See* Sarrao Declaration, ¶ 4.

While the Sarrao Declaration asserts that all of the Debtor's administrative claims, including the fees and expenses of professionals have been paid,

administrative claims would need to be satisfied under any approved Chapter 11 Plan.  The Declaration also notes that initial distributions to unsecured creditors have been made.  Appellants received a payment of $6,928.33 on October 30, 2025, which was the Appellants share of the First Distribution of $90,000 to unsecured creditors in the case.  *See* Ex. 1, attached.[4]  A modest distribution of $90,000 to unsecured creditors does not rise to the level of intricate transactions or extensive payments that constitute the rare case where a remedy cannot be fashioned if there is a reversal of the Designation Order and the Confirmation Order.

Second, the Appeals are not equitably moot because this Court can grant Appellants effective and equitable relief.  At a minimum, the Court can revoke Appellee's Subchapter V designation without disrupting the Plan. The Plan provides that Holders of Class 4 Equity Interests will retain their Equity Ownership Interest in the Debtor. *See* Plan, Bankr. Ct. D.I. 261 at Section IV.2.e; Joint Appendix, JA1153.  Unlike a chapter 11 case that was not filed under Subchapter V, the existing equity holders are able to retain their equity interests when creditors are not being paid in full only because it is permitted to do so pursuant to the Bankruptcy Code, Subchapter V, Section 1193(c).  If this Court determines that the Bankruptcy Court erred in denying the Designation Motion, Appellants respectfully requests that this

---

[4] No report regarding distributions made under the Plan has been filed with the Bankruptcy Court.

Court remand with a direction to the Bankruptcy Court to modify the Plan to provide that Appellee's equity interests will be distributed to creditors rather than to Appellee's equity holders as required pursuant to the absolute priority set forth in Bankruptcy Code Section 1129(b) of the Bankruptcy Code.

In addition, this Court can determine that the $25,000 settlement payment made in exchange for the release of the Fraudulent Transfer Claim against insiders approved by the Bankruptcy Court was inadequate, and direct the Bankruptcy Court to determine an adequate amount in exchange for such releases.[5]  The requirement of an increased settlement payment from the insiders that received releases would not be rendered moot by any provision of the Plan that may have been implemented to date.

Finally, the statute of limitations of the Fraudulent Transfer Claim that the Appellee failed to pursue may be subject to equitable tolling.  If this Court reverses the confirmation order, it should also determine that the Fraudulent Transfer Claim that the Debtor-Appellee failed to pursue is subject to equitable tolling under the adverse domination doctrine. *See O.E.M./ERIE, Inc. v. McCallum (In re*

---

[5] With respect to the Fraudulent Transfer Claim, defined in the Appellee's Motion as the "Sunrise Transfer," the District Court noted that the Sunrise Transfer was completed without receiving reasonably equivalent value, and noted that the Bankruptcy Court found that the validity of the fraudulent transfer claim hinges on the solvency of the Debtor at the time it was made in June 2019.  Joint Appendix, Docket No. 19-2 JA0064-65.

*O.E.M./ERIE, Inc.*) 405 B.R. 772, 785 – 76 (Bankr. E.D. Pa. 2008). "The concept of adverse domination is an equitable tolling doctrine that will allow for the statute of limitations to be tolled where the corporate entity is controlled by the alleged wrongdoers." O.E.M./ERIE, 405 B.R. at 785, citing *In re Reading Broadcasting, Inc.*, 390 B.R. 532, 552 (Bankr. E.D. Pa. 2008) (internal quotations omitted). "The rationale behind the adverse domination doctrine is premised upon the principle that officers and directors who have harmed the entity cannot be expected to take legal action against themselves." O.E.M./ERIE, 405 B.R. at 785, (quoting *Freeland v. Enodis Corporation,* 540 F. 3d 721, 741 (7th Cir. 2008).

This Court should apply the adverse domination doctrine. The Fraudulent Transfer Claim was a claim that only the Debtor-Appellee could bring, and the Debtor's principals did not authorize it to be pursued because they were the beneficiaries of the fraudulent transfer.  Moreover, because the Fraudulent Transfer Claim was settled as part of the Plan, once the Plan was confirmed and became effective, the Debtor could only pursue the Fraudulent Transfer Claim if the parties agreed to a plan modification, which they would not and did not do, or if the Confirmation Order is reversed on appeal.

Appellee's argument as to why this Appeal is equitably moot is scant on substance and merely parrots the relevant factors. [Motion, p. 16].  While the *In re Millennium Lab Holdings II, LLC* case cited by Appellee states that satisfaction of

10

the substantial consummation standard <u>may</u> make a reversal of the Plan confirmation order imprudent [Motion, p. 17], that is not the case here.  The first prong of the substantial consummation standard is the "transfer of all or substantially all of the property proposed by the plan to be transferred."  This case is inapposite because the Bankruptcy court's error in determining that the Appellee was eligible to proceed under subchapter V of the Bankruptcy Code allowed the Appellee's equity holders to <u>retain</u> their interest in Alecto under section 1193(c) of the Bankruptcy Code.  As noted above, in a regular Chapter 11 case, the value of those equity interests would need to be transferred to creditors, which this Court can direct the Bankruptcy Court to do.

Based on the foregoing, the Appellee has not met its heavy burden of overcoming the strong presumption that appeals from confirmation orders of reorganization plans need to be decided by this Court.

## **<u>CONCLUSION</u>**

WHEREFORE, Appellants respectfully request that this Court deny the Motion to Dismiss and grant to Appellants such other and further relief as is just and proper.

Dated: December 11, 2025                    **SULLIVAN · HAZELTINE · ALLINSON LLC**

                                            */s/William D. Sullivan*
                                            William D. Sullivan, Esq. (No. 2820)
                                            William A. Hazeltine, Esq. (No. 3294)
                                            919 North Market Street, Suite 420
                                            Wilmington, DE 19801
                                            Tel.: (302) 428-8191
                                            Email: bsullivan@sha-llc.com
                                                    whazeltine@sha-llc.com

                                            Bren J. Pomponio, Esquire
                                            Colten L. Fleu, Esquire
                                            **Mountain State Justice, Inc.**
                                            1217 Quarrier Street
                                            Charleston, WV 25301
                                            Tel.: (304) 326-0188
                                            Email: colten@msjlaw.org
                                                    bren@msjlaw.org

                                            and

                                            Maureen Davidson-Welling, Esquire
                                            PA ID No. 206751
                                            John Stember, Esquire
                                            PA ID No. 23643
                                            **Stember Cohn &**
                                                    **Davidson-Welling, LLC**
                                            The Hartley Rose Building
                                            425 First Avenue, 7th Floor
                                            Pittsburgh, PA  15219
                                            Tel.: (412) 338-1445
                                            Email: mdw@stembercohn.com
                                                    jstember@stembercohn.com

                                            *Attorneys for Appellants the Reed Action*
                                            *Judgment Creditors*

## COMBINED CERTIFICATIONS

The undersigned hereby certifies:

1.      I am admitted and a member in good standing of the Bar of this Court.

2.      Pursuant to L.A.R. 31.1 (c), prior to filing, a virus check was performed on the PDF copy of the Response usings Windows Security Antivirus Version: 1.433.221.0.

3.      This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2), 32(a)(5), and 32(a)(6) because this document has been prepared using *Microsoft Word*, Time New Roman, 14-point text and contains 2,506 words.


                              */s/ William D. Sullivan*
                              William D. Sullivan

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 11th of December 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ William D. Sullivan*
William D. Sullivan